**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ET AL.<br><br>       Plaintiffs,<br><br>    v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.<br><br>       Defendants. | **CASE NO.** 1:21-cv-00119 (RDM) |

---

**STATE OF FLORIDA AND FLORIDA DEPARTMENT OF
ENVIRONMENTAL PROTECTION'S
STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF
MOTION TO INTERVENE**

---

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

BACKGROUND ............................................................................................................................2

ARGUMENT ..................................................................................................................................3

I. Florida Applicants Have Article III Standing. ....................................................................3

II. Florida Applicants Are Entitled to Intervene as a Matter of Right. ....................................6

    A. Florida Applicants' Motion to Intervene Is Timely and Proper. ............................ 6

    B. Florida Applicants Have Significant Sovereign and Other Interests in EPA's Final Approval of Florida's Application to Assume CWA Section 404 Regulatory Authority. ........................................................................................ 8

    C. The Disposition of this Action May Impair or Impede Florida Applicants' Ability to Protect Their Interest in the Issuance and Enforcement of CWA Section 404 Permits. ................................................................................................ 9

    D. Florida Applicants' Interests Are Not Adequately Represented by Existing Parties.................................................................................................................... 10

III. Even If Not Entitled to Intervene as a Matter of Right, Florida Applicants Should Be Granted Permissive Intervention. ................................................................................11

CONCLUSION .............................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
    584 F. Supp. 2d 1 (D.D.C. 2008) ............................................................................................. 11

*Am. Horse Prot. Ass'n, Inc. v. Veneman*,
    200 F.R.D. 153 (D.D.C. 2001) ................................................................................................. 10

*\*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) (Garland, J.) ............................................................... 6, 8, 10, 11

*Jones v. Prince George's Cty., Md.*,
    348 F.3d 1014 (D.C. Cir. 2003) ............................................................................................. 4, 6

*Massachusetts v. E.P.A.*,
    549 U.S. 497 (2007) ................................................................................................................ 4, 5

*McCarthy v. Kleindienst*,
    741 F.2d 1406 (D.C. Cir. 1984) .................................................................................................. 8

*MGM Glob. Resorts Dev., LLC v. U.S. Dep't of the Interior*,
    Civ. A. No. 19-2377 (RC), 2020 WL 5545496 (D.D.C. Sept. 16, 2020) ................................... 7

*Mova Pharm. Corp. v. Shalala*,
    140 F.3d 1060 (D.C. Cir.1998) ................................................................................................... 9

*Nat. Res. Def. Council v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977) ............................................................................................. 6, 10

*New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*,
    Civ. A. No. 16-cv-149 (KBJ), 2016 WL 10839560 (D.D.C. Apr. 29, 2016) ............................. 8

*Nuesse v. Camp*,
    385 F.2d 694 (D.C. Cir. 1967) ................................................................................................ 6, 8

*Old Dominion Elec. Coop. v. Fed. Energy Regulatory Comm'n*,
    892 F.3d 1223 (D.C. Cir. 2018) .................................................................................................. 3

*Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*,
    Civ. A. No. 20-3817 (CKK), 2021 WL 75744 (D.D.C. filed Jan. 9, 2021) .............................. 6

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ...................................................................................................................... 4

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................................................................................ 4

*Virginia v. Ferriero*,
    466 F. Supp. 3d 253 (D.D.C. 2020) .................................................................. 6, 10, 11, 12

*Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*,
    395 F. Supp. 3d 1 (D.D.C. 2019) ......................................................................................... 7

*WildEarth Guardians v. Jewell*,
    320 F.R.D. 1 (D.D.C. 2017) .............................................................................................. 11

*WildEarth Guardians v. Salazar*,
    272 F.R.D. 4 (D.D.C. 2010) ................................................................................................ 8

**Statutes**

33 U.S.C. § 1251(b) .................................................................................................................. 1, 2

33 U.S.C. § 1344(i) ...................................................................................................................... 11

33 U.S.C. § 1344(i)-(j) ................................................................................................................... 2

33 U.S.C. § 1344(a) ....................................................................................................................... 2

33 U.S.C. § 1344(g)(1) .................................................................................................................. 1

33 U.S.C. § 1344(g)-(h) ............................................................................................................... 12

33 U.S.C. § 1344(g)-(l) .............................................................................................................. 2, 4

33 U.S.C. § 1344(h) ....................................................................................................................... 2

33 U.S.C. § 1344(h)(1) .................................................................................................................. 1

Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* ................................................................................ 2

Fla. Stat. § 373.4146 .................................................................................................................... 12

Fla. Stat. § 403.061 ...................................................................................................................... 12

**Rules**

Fed. R. Civ. P. 24(b)(1)-(2) ......................................................................................................... 12

Fed. R. Civ. P. 24(b)(3) ............................................................................................................... 12

Fed. R. Civ. P. 24(a)(2) ................................................................................................................. 9

**Federal Register Notices**

EPA's Approval of Florida's Clean Water Act Section 404 Assumption Request,
    85 Fed. Reg. 83,553 (Dec. 22, 2020) ....................................................................................1, 3

Florida's Request to Assume Administration of a Clean Water Act Section 404
    Program, 85 Fed. Reg. 57,853 (Sept. 16, 2020) ........................................................................3

## INTRODUCTION

The State of Florida and the Florida Department of Environmental Protection ("FDEP") (collectively, "Florida Applicants") respectfully submit this statement of points and authorities in support of their motion to intervene in the above-captioned case.

Florida Applicants have a vested interest in this case that applicable law entitles them to defend. Over the past several years, and in accordance with Section 404 of the Clean Water Act ("CWA"), Florida Applicants have invested significant time and resources into the extensive federal process of applying for approval by the U.S. Environmental Protection Agency ("EPA") to administer a Section 404 Program to regulate certain dredge-and-fill permitting activities within the State of Florida. *See* Ex. 1 at ¶¶ 9-24 (Declaration of Justin Wolfe, FDEP General Counsel). The CWA expressly provides that it is "the policy of Congress that the States … implement the permit program[]" at issue in this case. 33 U.S.C. § 1251(b). That policy is further reflected in Section 404(g) of the CWA, which invites each State to submit an application to EPA to obtain approval to "administer its own individual and general permit program for the discharge of dredged or fill material into the navigable waters [that are assumable] within its jurisdiction…" *Id.* § 1344(g)(1). Section 404(h) provides that the EPA Administrator "shall approve" a state 404 program within 120 days of receipt of a complete application if EPA determines that the state program meets the statutory criteria set forth in CWA Section 404(h). *Id.* § 1344(h)(1).

On August 20, 2020, Florida Applicants filed a complete application with EPA to administer a Section 404 Program in Florida, and 120 days later, on December 17, 2020, EPA approved Florida's request. *See* EPA's Approval of Florida's Clean Water Act Section 404 Assumption Request, 85 Fed. Reg. 83,553 (Dec. 22, 2020). EPA's approval became effective as of December 22, 2020, and accordingly, Florida Applicants have begun to administer the program consistent with applicable federal and state laws. Ex. 1 at ¶¶ 19-24. Two other states – Michigan

1

and New Jersey – also currently administer a Section 404 Program within their boundaries, and have done so for decades.

Now, Plaintiffs in this action seek to nullify Florida Applicants' Section 404 Program by asking this Court to declare unlawful, invalidate, and enjoin EPA's action approving Florida's application to assume permitting authority under CWA Section 404. In seeking this remedy, Plaintiffs' action not only implicates, but also significantly threatens to impair, the sovereign and other interests of the Florida Applicants as well as the unique interests of the State of Florida under the relevant provisions of the CWA. Granting Florida Applicants' timely motion to intervene is therefore appropriate as a matter of right under Federal Rule of Civil Procedure 24(a)(2) and, independently, as a matter of this Court's discretion under Rule 24(b).

## BACKGROUND

The Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, protects the Nation's waters through a regulatory framework primarily administered and enforced by the States. *See* 33 U.S.C. § 1251(b) ("policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources…"). To that end, Section 404 of the CWA, 33 U.S.C. § 1344, initially established a program under the purview of the U.S. Army Corps of Engineers ("Corps") to issue permits authorizing the "discharge of dredged or fill material into the navigable waters at specified disposal sites," *id.* at § 1344(a), while also allowing States to apply to assume authority over the dredge-and-fill permitting program for waters of the United States found within their respective jurisdiction. *See id.* § 1344(g)-(l). EPA is responsible for determining whether to grant a State's application to assume permitting authority under CWA Section 404, *id.* § 1344(h), and after approval of a state program, EPA maintains an oversight role to ensure compliance with the requirements of federal law. *Id.* § 1344(i)-(j).

On August 20, 2020, EPA received a complete application from the Governor of the State of Florida to assume authority over the Section 404 Program. *See* Florida's Request to Assume Administration of a Clean Water Act Section 404 Program, 85 Fed. Reg. 57,853 (Sept. 16, 2020) (providing public notice of EPA's receipt of Florida's "complete application"). On December 17, 2020, in accordance with the provisions of Section 404, EPA determined that the State of Florida "has the necessary authority to operate a CWA Section 4040 program in accordance with the requirements found in CWA section 404(g-l) and EPA's implementing regulations," and therefore approved Florida's assumption of the program. 85 Fed. Reg. at 83,553-54. On December 23, FDEP notified the Corps that FDEP is now administering the Section 404 Program, as approved by EPA. Ex. 1 at ¶ 18.

Plaintiffs in this case ask the Court to declare unlawful, vacate, and enjoin EPA's approval of Florida's application and thereby to block Florida Applicants from implementing their properly assumed authority under CWA Section 404.

## ARGUMENT

Florida Applicants have a substantial interest in defending EPA's approval of Florida's Section 404 Program. The State of Florida has assumed the CWA Section 404 authority that is the subject of this lawsuit, and FDEP is the State agency that is now exercising that authority by administering the State's dredge-and-fill permitting program. As such, both are proper intervenors in this case. In addition to having Article III standing, Florida Applicants satisfy the requirements for intervention as a matter of right and, separately, for permissive intervention. For these reasons, Florida Applicants respectfully request that the Court grant their motion to intervene in this action.

**I.    Florida Applicants Have Article III Standing.**

In the D.C. Circuit, "all would-be intervenors must demonstrate Article III standing." *Old Dominion Elec. Coop. v. Fed. Energy Regulatory Comm'n*, 892 F.3d 1223, 1232 (D.C. Cir. 2018);

3

*Jones v. Prince George's Cty., Md.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003). To establish standing, a party "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citation omitted). An injury is "particularized" if it affects the party in a "personal and individual way" and is "concrete" if it actually exists. *Id.* (internal citations omitted).

The State of Florida is the State that submitted the application to assume authority under CWA Section 404 that was approved by EPA on December 17, 2020, which is the EPA action Plaintiffs challenge in their lawsuit. FDEP is the State agency now administering the State of Florida's CWA Section 404 program. Ex. 1 at ¶ 19. States are accorded "special solicitude" in the Article III standing analysis. *Massachusetts v. E.P.A.*, 549 U.S. 497, 520 (2007) (internal footnote omitted). While both the State of Florida and FDEP independently have Article III standing, only one of these applicants needs to establish standing in order for this motion to be granted. *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 52 n. 2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.") (citation omitted).

*First*, Florida Applicants show injury in fact. Plaintiffs in this action are seeking to invalidate EPA's final action approving the State of Florida's application to assume authority to issue and enforce (through FDEP) dredge-and-fill permits under CWA Section 404 within the State's jurisdiction. Ex. 1 at ¶¶ 25-26. In other words, the object of Plaintiffs' lawsuit is the legally protected interest of the Florida Applicants. *See* 33 U.S.C. § 1344(g)-(l). This interest, which is

4

unique and therefore personal to Florida Applicants, also is concrete because it is real and not hypothetical. *Massachusetts*, 549 U.S. at 526 (holding that State petitioner had standing to challenge the denial of its petition). Florida Applicants' interests would be impaired if Plaintiffs prevail in their lawsuit and obtain their requested relief to declare unlawful, vacate, and enjoin EPA's approval of Florida's Section 404 Program, in whole or in part. Ex. 1 at ¶ 26. Determinations about the adequacy of Florida's program may also impair the interests of the Florida Applicants and its citizens. *Id.* Vacatur by this Court of EPA's approval notice would, at the very least, delay full implementation of the Section 404 Program by the State of Florida. *Id.*

*Second*, the injury that Florida Applicants face is not only fairly traceable, but also directly traceable, to Plaintiff's action seeking to invalidate EPA's approval. As of December 22, 2020, Florida Applicants have begun to administer the Section 404 Program within Florida in a manner consistent with applicable federal and state laws and regulations, and in accordance with the terms and conditions of the various regulatory agreements and documents incorporated into EPA's approval of Florida's program. Ex. 1 at ¶¶ 9, 11, 14, 15, and 18 (noting, among other things, the Memoranda of Agreement with the EPA and the Corps of Engineers, the U.S. Fish & Wildlife Service's Biological Opinion accompanying EPA's Approval of Florida's program, and the Operating Agreement and Programmatic Agreement under the National Historic Preservation Act). Moreover, the existence of this lawsuit purports to threaten the legitimacy of Florida's Section 404 Program, and as such, causes harm to the Florida Applicants.

And, *third*, this Court's rejection of Plaintiffs' claims and requested relief would redress the injury facing Florida Applicants as a result of this lawsuit.

For these reasons, Florida Applicants have Article III standing.

## II. Florida Applicants Are Entitled to Intervene as a Matter of Right.

Courts apply Federal Rule of Civil Procedure 24 liberally "in favor of permitting intervention." *See Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967). Rule 24(a)(2) guarantees an applicant a right to intervene when, on a timely motion, it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Because Florida Applicants satisfy each of these requirements—"timeliness, interest, impairment of interest, and adequacy of representation"—they are entitled to intervene in this action as a matter of right. *Jones*, 348 F.3d at 1017; *see also, e.g., Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*, Civ. A. No. 20-3817 (CKK), 2021 WL 75744, at *4 (D.D.C. filed Jan. 9, 2021) (granting motion to intervene as of right when intervenor-applicant sought to defend its own permit).

### A. Florida Applicants' Motion to Intervene Is Timely and Proper.

Where an applicant seeks intervention immediately after the complaint is filed—as Florida Applicants have done here—the timeliness "element merits little discussion." *See Virginia v. Ferriero*, 466 F. Supp. 3d 253, 256 (D.D.C. 2020); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 734–35 (D.C. Cir. 2003) (Garland, J.) (stating it is "not difficult at all" to find timely a motion to intervene filed "less than two months after the plaintiffs filed their complaint and before the defendants filed an answer"). Here, Plaintiffs filed their complaint on January 14, 2021. Doc. 1. No other substantive filings have been made in the case. Florida Applicants' intervention into this case would not disrupt any proceedings before this Court or unfairly disadvantage the other parties. *See Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 907-908 (D.C. Cir. 1977). Nor will

6

Florida Applicants' intervention delay the action. Accordingly, Florida Applicants' motion to intervene is timely.

This motion is also properly filed for purposes of Federal Rule of Civil Procedure 24(c). Florida Applicants have not submitted a separate pleading under Rule 24(c) and Local Rule 7(j) at this time because, among other reasons, the intervention motion, this memorandum, and the FDEP declaration already set forth with particularity the "defense for which intervention is sought"; namely, the defense of EPA's approval of Florida's Section 404 program application *as to all claims asserted by Plaintiffs*. "[C]ourts in this Circuit have not applied [Rule 24(c)] particularly rigidly." *MGM Glob. Resorts Dev., LLC v. U.S. Dep't of the Interior*, Civ. A. No. 19-2377 (RC), 2020 WL 5545496, at *6 (D.D.C. Sept. 16, 2020) (citations omitted) ("Given the posture of the case and the arguments that Connecticut and the Tribes plan to raise, it would not make sense to require an answer from the intervenors at this time."); *id.* (citation omitted); *see also Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 395 F. Supp. 3d 1, 21 n. 4 (D.D.C. 2019) (granting intervention as of right where movant did not submit a separate pleading under Rule 24(c) because "the position of the [movants] is apparent" from the intervention motion itself which stated that the movants sought "to intervene to defend[] the legality of the … regulation at issue…") (internal citations and quotation marks omitted).

Additionally, a separate pleading under Rule 24(c) is unnecessary at this stage because the Complaint in this action expressly states that "Plaintiffs intend to amend the complaint to add [certain Endangered Species Act] claims after the required 60-day pre-suit notice . . .period has expired." Doc. 1 at 27 n. 1. It would not make sense for Florida Applicants to file an answer now where Plaintiffs already intend to amend their complaint. For another basis to not file a pleading under Rule 24(c) at this time, Florida Applicants are likely to file a motion to dismiss (instead of

7

an answer) or other dispositive motions. Such filings would likely occur according to a scheduling order entered by the Court in this case.

Accordingly, submittal of a separate pleading under Rule 24(c) setting forth the Florida Applicant's defense is not necessary for purposes of this intervention motion filed just days after the commencement of litigation. *New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*, Civ. A. No. 16-cv-149 (KBJ), 2016 WL 10839560, at *1 (D.D.C. Apr. 29, 2016) (recognizing that Rule 24(c) "permits a degree of flexibility with technical requirements" in situations where the "position of the movant is apparent" and "the opposing party will not be prejudiced" by the flexibility) (citations and internal quotation marks omitted).[1]

### B. Florida Applicants Have Significant Sovereign and Other Interests in EPA's Final Approval of Florida's Application to Assume CWA Section 404 Regulatory Authority.

"[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse*, 385 F.2d at 700 (citations omitted). And, "[i]n most instances, the standing inquiry will fold into the underlying inquiry under Rule 24(a)." *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 13 n. 5 (D.D.C. 2010). In other words, when an applicant establishes an interest sufficient to confer Article III standing, that applicant also will have established an interest sufficient for intervention as a matter of right. *See id.*; *see also Fund for Animals, Inc.*, 322 F.3d at 735 n. 9 (stating that the court's conclusion that a proposed intervenor "has constitutional standing is alone sufficient to

---

[1] To the extent this Court is inclined to require Florida Applicants to provide a separate pleading at this time, Florida Applicants respectfully request that the Court grant intervention to the Florida Applicants with leave to file an answer (or a motion to dismiss) within the same timeframe that would be required for the Federal Defendants. *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1416 (D.C. Cir. 1984) ("[P]rocedural defects in connection with intervention motions should generally be excused by a court.") (citing C. Wright, Handbook of the Law of Federal Courts 507 n. 44 (4th ed. 1983)).

establish that [it] has" an interest related to subject of the action for intervention as of right) (citing Fed. R. Civ. P. 24(a)(2); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir.1998)).

As explained above (Part I), Florida Applicants have standing to intervene and defend against Plaintiffs' lawsuit. The State of Florida is the applicant for and beneficiary of EPA's final action being challenged. And this agency action implicates the sovereign and other interests of the State. FDEP, as the State agency currently administering the Section 404 program in Florida, also is a beneficiary of EPA's final action. Florida Applicants' interest—their statutory right to assume and exercise authority to regulate dredge-and-fill permitting within Florida—is legally cognizable and significant. As such, Florida Applicants have satisfied this requirement.

**C.    The Disposition of this Action May Impair or Impede Florida Applicants' Ability to Protect Their Interest in the Issuance and Enforcement of CWA Section 404 Permits.**

If not allowed to intervene, Florida Applicants will be precluded from defending their interest in the issuance and enforcement of dredge-and-fill permits within their jurisdiction, which is the primary interest implicated in this litigation. The federal statute at issue, the Clean Water Act, expressly gives States the right to administer a Section 404 Program and requires EPA to promptly approve a State's request to administer a Section 404 Program so long as the State files a complete application that meets the statutory criteria. Plaintiffs challenge the validity of EPA's final action transferring authority to the State of Florida to assume and administer through FDEP the CWA Section 404 Program within Florida. If Plaintiffs succeed, and the Court invalidates EPA's final action, Florida Applicants will no longer be able to maintain and administer their assumed CWA Section 404 authority, or could be substantially hindered in doing so. Ex. 1 at ¶ 26. This includes harming Florida's ability to issue permits for the protection and restoration of Florida's water resources including important projects for the benefit of the Florida Everglades, along with harming Florida's ability to enforce protection of these resources. *Id.* Furthermore,

9

absent defending their interests in this Court, Florida Applicants would have no other clear recourse to protect their interests. Ex. 1 at ¶ 27. In short, "it is not difficult to conclude that [Florida Applicants'] interests will be impaired if Plaintiffs are successful in this case." *Ferriero*, 466 F. Supp. 3d at 258.

### D. Florida Applicants' Interests Are Not Adequately Represented by Existing Parties.

This element of inadequate representation requires a minimal showing of the "mere possibility" that Florida Applicants' "interests may not be adequately represented absent intervention." *Ferriero*, 466 F. Supp. 3d at 259 (citing *Fund for Animals, Inc.*, 322 F.3d at 735). The interests of the State of Florida, as the applicant to obtain federal approval for a Section 404 Program, are distinct and different from the interests of the EPA, as the federal agency tasked with adjudicating the State's application. While EPA and Florida Applicants agree that EPA's final action approving Florida's 404 Program is lawful, that common agreement is insufficient to deprive Florida Applicants of their right to intervene as of right. *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001) ("[M]erely because parties share a general interest in the legality of a program or regulation does not mean their particular interests coincide so that representation by the agency alone is justified.") (citing *Costle*, 561 F.2d at 912). Indeed, as the D.C. Circuit has recognized, a federal agency's "obligation is to represent the interests of the American people" as expressed in the federal statute(s) it administers. *Fund for Animals, Inc.*, 322 F.3d at 736. For this reason, the D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Id.*

Here, only the Florida Applicants can adequately represent the sovereign and other interests of the State of Florida. Ex. 1 at ¶¶ 1, 4, 27. While the Federal Defendants represent the federal government's interests in this case, the Florida Applicants' represent the sovereign and other

10

interests of Florida as well as its interests under federal law to establish and administer a Section 404 Program within its borders.  *Id.*  Florida Applicants are also uniquely situated to defend the merits of its Section 404 Program.  *Id.*  While there may be some overlap in interests, EPA's responsibility falls within the purview of the Federal Government and is constrained to the federal laws EPA administers, whereas Florida Applicants' responsibilities fall within the purview of the Government of the State of Florida and to the citizens of Florida.  *See WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 5 (D.D.C. 2017) ("While the Federal Defendants' duty runs to the interests of the American people as a whole, the state-intervenors will primarily consider the interests of their own citizens."); *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) (reasoning that "the existing defendants, the DOI and the Secretary, have no clear interest in protecting Alaska's sovereignty or Alaska's interest").  As in other cases, "[h]ere, it is not difficult to see that the interests of [Florida Applicants] and the federal government 'might diverge during the course of the litigation.'"  *Ferriero*, 466 F. Supp. 3d at 259 (citing *Fund for Animals, Inc.*, 322 F.3d at 736).  Additionally, EPA has responsibility to ensure that Florida's Section 404 Program continues to comply with the requirements of the federal Clean Water Act.  *See* 33 U.S.C. § 1344(i) (authorizing EPA to initiate proceedings to withdraw approval of Florida's program).  As such, EPA's oversight role is distinct and different from Florida Applicants' role of administering the program.  Ex. 1 at ¶ 30.

For these reasons, EPA cannot adequately represent Florida Applicants' unique interests in this litigation, and intervention as a matter of right is appropriate.

### III.   Even If Not Entitled to Intervene as a Matter of Right, Florida Applicants Should Be Granted Permissive Intervention.

Where a court determines that an applicant is not entitled to intervene as of right, it may nonetheless grant permissive intervention where the applicant shows on a timely motion: (1) that

11

it "has a claim or defense that shares with the main action a common question of law or fact"; or (2) where the applicant is a federal or state governmental officer or agency, and its claim or defense is based on either statute or executive order administered by the officer or agency, or based on any regulation, order, requirement, or agreement issued or made under the statute or executive order. Fed. R. Civ. P. 24(b)(1)-(2). When "exercising its discretion to allow permissive intervention, the Court also 'must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Ferriero*, 466 F. Supp. 3d at 255 (quoting Fed. R. Civ. P. 24(b)(3)).

Based on the information provided above (*e.g.*, Parts I, II.A-C) and in their supporting declaration (Ex. 1 ¶¶ 25-27), Florida Applicants unquestionably have a defense that shares with the main action a common question of law or fact. Furthermore, affording Florida Applicants the right to intervene will not unduly delay or prejudice the adjudication of these proceedings given the early stage at which Florida Applicants filed their motion. Indeed, Florida Applicants' participation as a party in this proceeding will greatly aid this Court in evaluating issues of law and fact that will arise.

Moreover, consistent with Rule 24(b)(2), the State of Florida and the FDEP both constitute a "state governmental officer or agency" with a "claim or defense" that is "based on either statute or executive order administered by the officer or agency, or based on any regulation, order, requirement, or agreement issued or made under the statute or executive order." Ex. 1 at ¶ 27. Here, Florida Applicants intend to defend Florida's Section 404 Program based on applicable state and federal statutes and regulations administered by Florida Applicants or otherwise defend its program based on regulations or agreements made under applicable state and federal statutes. *See also* 33 U.S.C. § 1344(g)-(h) (authorizing states to apply to administer a Section 404 program);

Fla. Stat. § 403.061 (authorizing FDEP to "control and prohibit pollution of air and water" in Florida); Fla. Stat. § 373.4146 (authorizing FDEP to establish a Section 404 program in Florida).

Accordingly, Florida Applicants respectfully submit that the Court has a legitimate basis for granting their motion to intervene as a matter of discretion.

## CONCLUSION

Based on the foregoing reasons, Florida Applicants respectfully request that the Court grant their motion to intervene in this action.

Dated: January 19, 2021.

Respectfully submitted,
BAKER BOTTS L.L.P.

*/s/ Jeffrey H. Wood*
Jeffrey H. Wood (D.C. Bar No. 1024647)
Jared R. Wigginton (D.C. Bar No. 1033684)
700 K Street, NW
Washington, D.C. 20001
Phone: (202) 639-7732
jeff.wood@bakerbotts.com
jared.wigginton@bakerbotts.com

Lily N. Chinn (DC Bar No. 979919)*
101 California Street
San Francisco, CA 94111
Phone: (415) 291-6200
lily.chinn@bakerbotts.com

Aaron M. Streett (TX Bar No. 24037561)*
Harrison F. Reback (TX Bar No. 24012897)*
910 Louisiana Street
Houston, TX 77002-4995
Phone: (713) 229-1234
aaron.streett@bakerbotts.com
harrison.reback@bakerbotts.com

*Counsel for Florida Applicants*

*\* Appearing under LCvR 83.2(c)(1)*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document complies with LCvR 7(e) because it does not exceed 45 pages.

Dated:  January 19, 2021.                                 Respectfully submitted,
                                                         BAKER BOTTS L.L.P.

                                                         */s/ Jeffrey H. Wood*
                                                         Jeffrey H. Wood (D.C. Bar No. 1024647)
                                                         700 K Street, NW
                                                         Washington, D.C. 20001
                                                         Phone: (202) 639-7732
                                                         jeff.wood@bakerbotts.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January 2021, I electronically filed the foregoing document using the CM/ECF system. Service was accomplished by the CM/ECF system.

    Respectfully submitted,
    BAKER BOTTS L.L.P.

    */s/ Jeffrey H. Wood*
    Jeffrey H. Wood (D.C. Bar No. 1024647)
    700 K Street, NW
    Washington, D.C. 20001
    Phone: (202) 639-7732
    jeff.wood@bakerbotts.com