IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*<br><br>Defendants. | Civil Action No. 21-cv-119 (RDM) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE REQUESTING PRE-MOTION CONFERENCE**

In December 2020, EPA approved the State of Florida's request to assume the federal permitting program for discharges of dredged and fill material pursuant to section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344. EPA published notice of that approval in the Federal Register on December 22, 2020. Pursuant to EPA's regulations, transfer of the program to Florida was effective upon publication of that notice. Plaintiffs intend to move for summary judgment challenging the December 22 effective date. Dkt. 21 (Plaintiffs' Notice Requesting Pre-Motion Conference) at 1. In their view, EPA's approval of Florida's program lacks legal effect until 30 days after EPA publishes a Federal Register notice announcing its intent to codify Florida's program in the Code of Federal Regulations. *Id.* at 3–5. Plaintiffs submit that these are purely legal claims that can be resolved on summary judgment. *Id.* at 1. Assuming without conceding that this Court has jurisdiction to hear Plaintiffs' claims, EPA agrees.

EPA disagrees, however, that a motion for summary judgment is appropriate at this juncture. Plaintiffs served their complaint just two weeks ago. The Federal Rules of Civil Procedure give the United States 60 days—until late March—to respond. Fed. R. Civ. P. 12(a)(2). The United States may do so by answering or by moving to dismiss. In cases like this one, federal agencies typically lodge their administrative records only after any such preliminary dispositive motions are resolved. Then, after records are lodged, summary judgment briefing proceeds on all remaining claims. Plaintiffs do not explain in their notice why their eighth and

1

ninth claims require immediate resolution and so offer no reason to depart from the orderly manner in which challenges to agency action usually proceed.

EPA also disagrees with the central premise of Plaintiffs' anticipated motion: that rulemaking was the only mechanism by which Florida's approved program could lawfully take effect. That position is inconsistent with the Administrative Procedure Act ("APA"), with the CWA, and with EPA's longstanding regulations. EPA properly approved Florida's section 404 program by adjudicatory order. Unlike rules, *see* 5 U.S.C. § 553, orders need not be published 30 days before their effective date. Nor are orders subject to any codification requirements. EPA therefore intends to oppose Plaintiffs' anticipated motion.

## I.     Background

Congress authorized the Secretary of the Army or qualifying states and tribes to issue permits governing the discharge of dredge and fill material into waters of the United States ("section 404 permits"). 33 U.S.C. §§ 1344(a), (g). A state or tribe wishing to administer the section 404 permitting program for waters within its jurisdiction may submit to EPA a request to do so. *Id.* § 1344(g)(1). EPA reviews the state's or tribe's submission to determine whether the state or tribe has the requisite authority to administer the section 404 program. *Id.* § 1344(h)(1). If EPA determines that the state's or tribe's proposed section 404 program satisfies certain requirements, then it will approve the program and transfer section 404 permitting authority to the state or tribe (subject to certain limitations and to continuing EPA oversight). *Id.* §§ 1344(h)(2)(A), (j), and (*l*). EPA has issued regulations to guide its review of state and tribe assumption requests and to clarify the procedural requirements for approving or disapproving a state's proposed section 404 program. Those regulations are set forth at 40 C.F.R. § 233.

In addition to Florida, EPA has transferred section 404 permitting authority to Michigan (49 Fed. Reg. 38,947 (Oct. 2, 1984)) and New Jersey (59 Fed. Reg. 9,933 (Mar. 2, 1994)). EPA has also approved programs in 47 states and one territory to issue National Pollution Discharge Elimination System ("NPDES") permits pursuant to CWA section 402, 33 U.S.C. § 1342. EPA-approved state NPDES programs are listed here: https://www.epa.gov/npdes/npdes-state-program-authority.

## II. EPA's anticipated response to Plaintiffs' motion.

### A. Standing

Plaintiffs contend that they suffered a "cognizable procedural injury" from EPA's approval of Florida's program. Dkt. 21 at 6. But a procedural injury, without more, cannot create Article III standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Plaintiffs must also show that they or their members suffered a concrete injury in fact. *Id.* This will be difficult because Florida's section 404 program is barely a month old, and, as of this writing, the state has not yet issued a single permit. On these facts, it appears likely that Plaintiffs will have to rely on possible future injuries to support their claims of standing. If so, they will bear a "significantly more rigorous burden to establish standing than that on parties seeking redress for past injuries." *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (internal quotation marks omitted).

### B. Merits

Assuming without conceding standing, Plaintiffs' central claim—that EPA could only approve Florida's section 404 program by issuing a rule—fails on the merits.

Absent a specific statutory mandate to the contrary, and there is none here, agencies have "very broad discretion to proceed by adjudication or rulemaking." *Neustar, Inc. v. FCC*, 857 F.3d 886, 893 (D.C. Cir. 2017) (internal quotation marks omitted). "This maxim of administrative law permits an agency to develop a body of regulatory law and policy either through case-by-case decisionmaking (a quasi-adjudicative process) or through rulemaking (a quasi-legislative process)." *Id.* (internal quotation marks omitted).

In approving Florida's section 404 program by adjudication rather than rulemaking, EPA acted well within the scope of its discretion under the APA. That statute expressly allows agencies to issue adjudicatory "orders" that grant "licenses." 5 U.S.C. § 551(6), (7), and (9). A "license," in turn, means any "permit, certificate, approval . . . or other form of permission," *id.* § 551(8), an expansive definition that easily encompasses EPA's approval of Florida's section 404 program.

EPA's action also comports with this Circuit's precedents.  In reviewing Florida's submission, EPA applied 33 U.S.C. § 1344(h) and its own implementing regulations to conduct a fact-intensive assessment of Florida's proposed section 404 program.  In analogous contexts involving the application of existing rules to new facts, the D.C. Circuit has routinely upheld agencies' authority to proceed by adjudication rather than rulemaking.  *See, e.g., Neustar*, 857 F.3d at 895 (upholding FCC order applying "existing rules and regulations" to the parties in a "fact-intensive determination that occurred on a case-by-case basis"); *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 497–98 (D.C. Cir. 2015) (upholding FTC order applying a standard "consistent with Commission precedent" to the disputed facts before it, and distinguishing the order from actions making "a major substantive legal addition" to its existing standards).  The same result is warranted here.

Conversely, EPA's approval of Florida's section 404 program lacks hallmarks of quasi-legislative activity that typically proceed by rulemaking.  For instance, the Agency did not "amend[] a prior legislative rule," nor did it invoke its "general legislative authority" to regulate. *Conference Grp., LLC v. FCC*, 720 F.3d 957, 965 (D.C. Cir. 2013).  And while Plaintiffs suggest otherwise, EPA's approval of Florida's program was not a rulemaking simply because it will have prospective effect.  As the D.C. Circuit has explained: "Various agencies regularly make licensure and authorization decisions of various sorts that affect the future rights and authorizations of the parties before them. None of our precedents require that these must all be done by rulemaking rather than by informal adjudication."  *Neustar, Inc.*, 857 F.3d at 896.  *See also Conference Grp., LLC*, 720 F.3d at 966 ("The fact that an order rendered in an adjudication may affect agency policy and have general prospective application . . . does not make it rulemaking subject to APA section 553 notice and comment." (internal quotation marks omitted)).

In sum, nothing in the APA compelled EPA to approve Florida's program by rulemaking rather than adjudication.

Nor does the CWA mandate rulemaking in lieu of adjudication.  In fact, the CWA clearly allows for the kind of immediately effective adjudicatory order that EPA issued here.  Under 33

4

U.S.C. § 1344(h)(2), if the EPA Administrator approves a state's section 404 program, he must notify the state and the Secretary of the Army. The state can then assume permitting authority simply by providing "notification" to the Secretary "that it is administering" the section 404 program. There is no mention here of a delay in the effective date of EPA's approval and so the most natural reading of the CWA's text is that EPA's approval can take effect immediately. The process by which EPA approved Florida's program was thus entirely consistent with the process that Congress outlined in the CWA.

EPA's longstanding regulations implementing § 1344(h) also countenance the procedures that EPA followed in approving Florida's program. Under 40 C.F.R. § 233.15(h), "[t]ransfer of the [section 404] program to the State shall not be considered effective until such notice appears in the Federal Register." Though couched as a prohibition, the provision's strong positive implication is that once notice appears in the Federal Register, the transfer of the program to the State *can* be considered effective. Section 233.15(h)'s next sentence underscores this common-sense interpretation. It provides that the "Secretary shall suspend the issuance" of "section 404 permits in State regulated waters *on such effective date*." *Id.* (emphasis added). The only plausible meaning of "such effective date" is the date of notice in the Federal Register, which in this case was December 22, 2020.

Because EPA's approval by adjudication of Florida's section 404 program was proper under the APA and CWA, Plaintiffs' allegations of procedural defect fail. The APA's requirement to publish notice 30 days prior to an effective date, 5 U.S.C. § 553(d), applies only to "rules," which are distinguished in § 551(6), from adjudicatory "orders." Thus, nothing in the APA prevented EPA's order from taking effect upon publication in the Federal Register, as expressly contemplated in EPA's regulations. The legal effect of EPA's approval, moreover, was not conditional on EPA's publication of a notice of its intent to codify the statutory and regulatory provisions comprising Florida's section 404 program. Neither the CWA nor the APA impose any such codification requirement. Nor does 44 U.S.C. § 1501(a)(1), which Plaintiffs cite. That provision merely provides that the "Administrative Committee of the Federal Register, with the approval of the President, may require, from time to time as it considers

5

necessary," publication of the documents "relied upon," "invoked," or "used by" federal agencies.

Because EPA acted within the scope of its authority under the CWA and APA, Plaintiffs' motion should be denied. It bears mention, moreover, that the manner in which EPA approved Florida's program was consistent with EPA's past approvals of similar programs. Neither the effective date of EPA's action approving New Jersey's section 404 program nor the effective date of EPA's action approving Michigan's section 404 program were delayed by 30 days pursuant to 5 U.S.C. § 553. And EPA has repeatedly stressed that its approvals of state NPDES programs under 33 U.S.C. § 1342 are adjudications, not rulemakings. In its 2002 approval of Maine's state NPDES program, for example, EPA noted that "Based on General Counsel Opinion 78–7 (April 18, 1978), EPA has long considered a determination to approve or deny a State NPDES program submission to constitute an adjudication." 66 Fed. Reg. 12,791 (Feb. 28, 2001); *accord* 67 Fed. Reg. 79,629 (Dec. 30, 2002) (approval of Arizona's state NPDES program). Indeed, consistent with that understanding, not once in forty years has EPA codified a state NPDES program. The record thus belies Plaintiffs' allegation that EPA's approval of Florida's submission marked an unwarranted departure from the Agency's past practice.

Dated: February 5, 2021

                                                Respectfully submitted,

                                                */s/ Andrew S. Coghlan*
                                                Andrew S. Coghlan
                                                U.S. Department of Justice
                                                Environment & Natural Resources Division
                                                Environmental Defense Section
                                                P.O. Box 7611
                                                Washington, D.C. 20044
                                                (202) 514-9275 (o)
                                                (202) 532-3252 (m)
                                                andrew.coghlan@usdoj.gov
                                                Overnight delivery:
                                                150 M Street, NE
                                                WASHINGTON, D.C. 20002

**Certificate of Service**

  I certify that on February 5, 2021, I filed the foregoing with the Court's CMS/ECF system, which will notify each party.

               */s/Andrew S. Coghlan*
               ANDREW S. COGHLAN