**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>　　　　*Plaintiffs*,<br><br>　　v.<br><br>ANDREW WHEELER, in his official Capacity as Administrator for the United States Environmental Protection Agency, *et al.*,<br><br>　　　　*Defendants*,<br><br>　　and<br><br>STATE OF FLORIDA and FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION<br><br>　　　　*Defendant-Intervenors*. | Civil Action No. 1:21-cv-119 (RDM) |

**THE FLORIDA CHAMBER OF COMMERCE AND
ASSOCIATION OF FLORIDA COMMUNITY DEVELOPERS'
STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR *UNOPPOSED* MOTION TO INTERVENE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ iii

STATEMENT OF POINTS AND AUTHORITIES .......................................................................... 1

    I.   Introduction ............................................................................................................................. 1

    II.  Argument ................................................................................................................................. 2

        a.   The Chamber and AFCD have Article III standing ....................................................... 2

        b.   The Chamber and AFCD may intervene mas a matter of right under Rule 24(a)(2). ....... 6

        c.   At the very least, the Chamber and AFCD satisfy the requirements for permissive intervention. ............................................................................................................................. 9

    III. Conclusion ............................................................................................................................ 10

CERTIFICATE OF COMPLIANCE ................................................................................................ 11

CERTIFICATE OF SERVICE .......................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153 (D.D.C. 2001) ...................................... 9

*Bond v. United States,* 131 S. Ct. 2355 (2011) ............................................................................... 8

*\*Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312 (D.C. Cir. 2015) .......... 4, 7, 8, 9

*\*Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003) ............................................ 6, 9

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ................................................. 3

*\*Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998) ................................................ 5, 7

*Natural Res. Def. Council v. Costle*, 561 F.2d 904 (D.C. Cir. 1977) ............................................ 9

*New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 434 U.S. 1345 (1977) ............................................. 8

*Old Dominion Elec. Coop. v. Fed. Energy Regulatory Comm'n*,
   892 F.3d 1223 (D.C. Cir. 2018) ................................................................................................ 2

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .......................................................................... 2, 3

*United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704 (11th Cir. 1991) ................................ 4, 8

*Virginia v. Ferriero*, 466 F. Supp. 3d 253 (D.D.C. 2020) ............................................................. 6

*Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*,
   395 F. Supp. 3d 1 (D.D.C. 2019) ............................................................................................... 2

**Federal and State Statutes**

33 U.S.C. § 1344 ............................................................................................................................. 1

33 U.S.C. § 1344(g)(1) ................................................................................................................... 1

Fla. Stat. § 120.569 (2020) ............................................................................................................. 4

Fla. Stat. § 120.57 (2020) ............................................................................................................... 4

**Regulations**

33 C.F.R. § 331.3(a)(1) ................................................................................................................... 4

33 C.F.R. § 331.3(a)(3) .................................................................................................... 4

33 C.F.R. § 331.3(b)(2) .................................................................................................... 4

**Rules**

Fed. R. Civ. P. 24(a)(2) .................................................................................................... 6

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................................. 10

**Federal Register Publications**

EPA's Approval of Florida's Clean Water Act Section 404 Assumption Request,
   85 Fed. Reg. 83,553 (Dec. 22, 2020) ..................................................................... 1, 4

**Other Authorities**

Fla. Dep't of Envtl. Prot., *State 404 Program* ................................................................ 3

**STATEMENT OF POINTS AND AUTHORITIES**

I.    **Introduction**

The Florida Chamber of Commerce ("Chamber") and Association of Florida Community Developers ("AFCD") move to intervene in defense of Florida's newly minted Clean Water Act permitting regime that applies to Chamber and AFCD members.

Section 404 of the Clean Water Act requires members of the Chamber and AFCD to obtain permits before they can discharge certain materials into navigable waters. 33 U.S.C. § 1344. While the U.S. Army Corps of Engineers ("Corps") serves as the permitting agency of first resort, Section 404(g) of the Clean Water Act allows each State to apply for the right to "administer its own individual and general permit program for the discharge of dredged and fill material into navigable waters [assumable] within its jurisdiction." 33 U.S.C. § 1344(g)(1). Florida recently submitted an application with the U.S. Environmental Protection Agency ("EPA") to streamline approval of projects with the State—everything from Everglades restoration projects to homesites and schools for Florida's growing population. The EPA approved Florida's application. Since the EPA's approval, the State has administered the 404-program consistent with both the Clean Water Act and State law. *See* EPA's Approval of Florida's Clean Water Act Section 404 Assumption Request, 85 Fed. Reg. 83,553 (Dec. 22, 2020).

The Plaintiffs allege that the EPA, the Corps, the U.S. Fish and Wildlife Service ("Service"), and the State of Florida erred in the submitting, reviewing, and approving of Florida's 404-program application. *See generally* ECF 1 at ¶¶ 1-3. For that reason, the Plaintiffs ask this Court to invalidate the EPA's approval of Florida's 404-permitting program.

The Chamber and AFCD seek to intervene as Defendants. They have Article III standing because the outcome of this litigation could dramatically affect the way their members seek 404

permits. Federal Rule of Civil Procedure 24(a)(2), moreover, allows the Chamber and AFCD to participate as a matter of right because (1) their request is timely, with the case still at the pleading stage, albeit with one issue being briefed on a separate timeline; (2) their members have a right to be heard about the regime that regulates their actions before that regime is replaced with another; (3) their interests would be impeded if the Plaintiffs prevail, because Chamber and AFCD members would then have to contend with the less transparent and untimely federal 404-permitting regime; and (4) no other party adequately represents the interests of Chamber and AFCD members, because none of the existing Defendants are entities regulated by Section 404 of the Clean Water Act. At a minimum, the Court should allow the Chamber and AFCD to participate by virtue of Federal Rule of Civil Procedure 24(b), which allows for permissive intervention.[1]

## II.  Argument

### a. The Chamber and AFCD have Article III standing.

"[A]ll would-be intervenors must demonstrate Article III standing." *Old Dominion Elec. Coop. v. Fed. Energy Regulatory Comm'n*, 892 F.3d 1223, 1232 (D.C. Cir. 2018). Standing requires demonstration of an (1) injury in fact that is (2) fairly traceable to the conduct at issue and (3) likely to redressed by a favorable outcome. *See, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

---

[1] At this time, the Chamber and AFCD have not filed a responsive pleading together with its motion to intervene. This is for two reasons. First, for purposes of Rule 24(c), and Local Rule 7(j), this motion and memorandum provide an explanation for why intervention is sought: the Chamber and AFCD seek to defend the validity of the federal agency action at issue as Intervenor-Defendants. *See Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 395 F. Supp. 3d 1, 21 n. 4 (D.D.C. 2019). Second, the Plaintiffs note in their Complaint that they intend to amend the pleading once the sixty-day notice requirement for another claim expires. ECF 1 at 27, n. 1. Answers (or motions to dismiss) would thus be amended in the coming weeks to direct them at the operative complaint.

2

conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Injuries are "particularized" if they affect a party in a "personal and individual way," and injuries are "concrete" if they actually exist. *Id.* Organizations can establish standing through their association with affected members.[2] Associational standing requires an entity to show that (1) at least one of the its members has standing, (2) the interests in the litigation are germane to the organization's purpose, and (3) there is no need for the organization's individual members to participate. *See, e.g.*, *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342 (1977). The Chamber and AFCD satisfy the test for Article III standing.

*First*, the injury in fact. As detailed in the declarations accompanying this filing, both the Chamber and AFCD have members currently subject to Florida's 404-program. **Exhibit A at 4, ¶¶9-10; Exhibit B at 3, ¶8.** These members previously labored under the federally administered program. **Exhibit A at 3, ¶¶6-7; Exhibit B at 2, ¶6.** Should the Plaintiffs succeed, Florida's permitting program would be invalidated, which would harm the Chamber and AFCD's members. Specifically, success for the Plaintiffs would deprive Chamber and AFCD members of their right to timely[3] action on all permit applications consistent with the Florida Administrative Procedure

---

[2] Organizations can also establish standing in their own right through, for example, a diversion-of-resources theory. The Chamber and AFCD believe associational standing to be sufficient and omit any other discussion for the purposes of brevity and clarity.

[3] Section 120.60 of the Florida Statutes gives Florida administrative agencies 90 days to approve or deny applications; unexplained delay results in automatic approval unless the specific kind of application is otherwise exempt under Florida law. Section 404 permits are exempt from the automatic approval requirement through section 373.4146(5)(a) of the Florida Statutes; however, Chamber and AFCD members expect timely action on applications submitted to the State for two reasons. First, there is the culture of timely action as reflected in section 120.60. Second, there is the overlap between the Section 404 permits and Florida-specific Environmental Resource Permits ("ERP"). As the State of Florida explains, "projects within state-assumed waters require both an ERP and a State 404 Program authorization," with "85% of review requirements overlap between programs." Fla. Dep't of Envtl. Prot., *State 404 Program*, https://floridadep.gov/water/submerged-lands-environmental-resources-coordination/content/state-404-program (Last Visited Feb. 26, 2021). With ERP permits still subject to the 90-day requirements in section 120.60, the Chamber

Act ("Florida APA"), as well as the right to a *de novo* proceeding under the Florida APA, complete with discovery and fact-finding adduced through the presentation of evidence before an impartial administrative law judge. *See* Fla. Stat. §§ 120.569, 120.57 (2020) (providing for hearing rights). The federally administered program includes no similar protections.[4]  Reversion to a slower and less transparent permitting system would harm Chamber and AFCD members. *See* **Exhibit A at 4, ¶10; Exhibit B at 3, ¶8.**  Members should have some say in litigation that seeks to undo legal benefits and rights under the Florida APA—benefits and rights acquired through the agency action being challenged here. *See, e.g.*, *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015) ("Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit.") (collecting D.C. Circuit cases); *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 708-09 (11th Cir. 1991) (reversing trial court and allowing farmers to intervene so as not to impair their rights under the Florida APA).

*Second*, causation and redressability.  The State of Florida is currently administering the 404-permitting program.  *See* 85 Fed. Reg. at 83,554.  The Plaintiffs say it should not.  *See generally* ECF 1 at ¶¶ 1-3.  If the Plaintiffs succeed, then Florida would no longer administer the program, *id.* at 49-50, and the protections afforded to permittees under Florida law would crumble.  The injury then is directly traceable to the Plaintiffs' case—this case.  Rejecting the Plaintiffs' claims would redress the injury their lawsuit threatens.

---

has a reasonable expectation that most of the review for both Section 404 and ERP permits will be complete in 90 days.

[4] The federal review process entails a proceeding before a Corps employee (unlike the impartial administrative law judge in Florida), based on review of an administrative record (unlike the *de novo* trial-like proceeding in Florida). *See* 33 C.F.R. § 331.3(a)(1) and (3), (b)(2).

*Third*, germaneness and individual member participation. Since 1912, the Chamber has represented the interests of businesses within Florida. *See* **Exhibit A at 2, ¶3.** The Chamber currently represents the interests of thousands of members, businesses large and small, and it advocates for, among other things, "predictable, streamlined, and effective permitting that balances growth with the preservation of unique ecological treasures like the beaches and wetlands so vital to [Florida's] economy." *Id.* **at 2, ¶5**. The AFCD represents the interests of homebuilders, developers, planners, engineers, and others committed to "the creation of quality community developments and the formulation of a responsible approach to planning and development of Florida's future." *See* **Exhibit B at 2, ¶3.** Both organizations work hard to accommodate Florida's ever-increasing population in an efficient and environmentally responsible manner. **Exhibit A at 2, ¶5; Exhibit B at 2, ¶3.** Both organizations actively participated in the legislative and administrative process necessary for Florida to assume the permitting program. **Exhibit A at 3, ¶8; Exhibit B at 3, ¶7.** And both organizations remain committed to streamlining permitting for environmental restoration efforts (which helps encourage non-Floridians to visit the State's many beaches, resorts, and parks) and to streamlining permitting necessary to provide essential infrastructure to Floridians, like schools, hospitals, stores, homes, and utilities. **Exhibit A at 2, ¶5; Exhibit B at 2, ¶¶3-4.** Because no individual section 404 permit is at issue here, no individual member of the organization needs to participate. *See* ECF 1 at ¶¶ 1-3. Participation by the organizations suffices. *See, e.g.*, *Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (allowing association to intervene for members).

Thus, the Chamber and AFCD have Article III standing.

### b. The Chamber and AFCD may intervene mas a matter of right under Rule 24(a)(2).

The Chamber and AFCD also satisfy the requirements of Rule 24(a)(2), which guarantees the right to intervene for "anyone . . . who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Consistent with the rule, the D.C. Circuit requires those seeking to intervene to show "(1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citations omitted). All four requirements are met.

#### i. Timeliness

Where, as here, the motion to intervene comes "less than two months after the plaintiffs filed their complaint and before the defendants filed an answer," satisfying the timeliness requirement is "not difficult at all." *Id.* at 734-35; *see also Virginia v. Ferriero*, 466 F. Supp. 3d 253, 256 (D.D.C. 2020).

The Plaintiffs filed their Complaint on January 14, 2021, ECF 1, and they "intend to amend the complaint to add [certain Endangered Species Act] claims after the required 60-day pre-suit notice . . . period has expired." ECF 1 at 27, n. 1. The federal Defendants have yet to file their responsive pleading and have "until late March" to do so. ECF 22 at 1.

The Chamber and AFCD, for their part, intend to abide by whatever schedule this Court sets for this record-review case, thereby causing minimal, if any, disruption to this Court or the

6

existing Parties.  This is true even though this Court has recently ordered that the Plaintiffs must file a motion for partial summary judgment before March 5, 2021.  The Chamber and the AFCD's participation could not conceivably affect the "purely legal claims" that constitute the issues raised in the yet-to-be filed motion, ECF No. 21, at 1, and intervention would take effect before the response to the Plaintiffs' motion would become due.  In other words, granting intervention means this Court will benefit from the Chamber and AFCD's unique perspective from the first substantive filings without any detriment to the orderly administration of these proceedings.

Thus, the Chamber and AFCD satisfy the timeliness requirement.

### ii. Interest

The D.C. Circuit has explained that Article III standing is "alone sufficient to establish . . . [a proposed intervenor's] interest in the property or transaction which is the subject of the action."  *Fund for Animals*, 322 F.3d at 735; *see also Crossroads*, 788 F.3d at 320.  The Chamber and AFCD have Article III standing.  In Rule 24(a)(2)'s parlance, the "transaction" is EPA's approval of Florida's 404-program application, and the Chamber and AFCD have an "interest" in keeping this transaction from being undone and from their members again being subjected to federal administration of the permitting program.  This interest is sufficient for intervention just as it was in *Military Toxics Project*, a case in which the D.C. Circuit reversed the district court and allowed the Chemical Manufacturing Association to intervene and defend an EPA rule from which the Association's members benefited.  146 F.3d at 952-54.

Thus, the Chamber and AFCD satisfy the interest requirement.

### iii. Impair or Impede

The "impair or impede" inquiry calls on this Court to determine whether the proposed intervenor is "so situated that the disposition of the action may as a practical matter impede or impair [its] ability to protect its interest." *Fund for Animals*, 322 F.3d at 735.

The Chamber and AFCD's interests in preserving the current permitting regime depends on their participation. If the Plaintiffs succeed, then the State of Florida's assumption of the 404-permitting program would be undone. Individual 404 permit applications would have to be resubmitted to the Corps for review and approval without the safeguards afforded by the Florida APA. This would cause a practical impairment or impediment for Chamber and AFCD members. *See, e.g.*, *S. Fla. Water Mgmt. Dist.*, 922 F.2d at 708-09.

More broadly, there would be an impairment or impediment to the State's interests "by the very fact that the State is prevented from engaging in" its regulatory process. *New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1351 (1977). Because "States are not the sole intended beneficiaries of federalism," having members again answer to a less than responsive federal bureaucracy would harm the Chamber and AFCD's interests. *Bond v. United States,* 131 S. Ct. 2355, 2364 (2011).

Thus, the Chamber satisfies the impair or impede requirement.

### iv. Adequacy of Representation

Finally, none of the existing Parties adequately represent the Chamber and AFCD's interests. This last requirement for intervention under Rule 24(a)(2) is "not onerous," and a proposed intervenor "ordinarily should be allowed to intervene unless it is clear that [an existing] party will provide adequate representation." *Crossroads*, 788 F.3d at 321 (quoting *Fund for Animals*, 322 F.3d at 735 and *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir.

8

1980)). "[M]erely because parties share a general interest in the legality of a program or regulation does not mean their particular interests coincide so that representation by the agency alone is justified." *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001). Indeed, the D.C. Circuit has repeatedly expressed skepticism of government agencies adequately representing the interests of private parties. *See Crossroads*, 788 F.3d at 321; *Fund for Animals*, 322 F.3d at 736; *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977). Government agencies are "doubtful friends," *Crossroads*, 788 F.3d at 321, who "often . . . do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736.

The Defendants are especially "doubtful friends" here. One set of Defendants are federal agencies. The other is a State agency. Both serve as the regulators for Chamber and AFCD members. There exists an inherent tension between those who regulate and those being regulated. The former cannot be expected to provide the perspective of the latter. Nor should they. During these proceedings, the Chamber and AFCD might well disagree with both sets of Defendants about the extent of the Defendants' regulatory powers, the administrative record, and briefing strategy. This is as it should be with this Court hearing a full range of perspectives, including those of the regulated community, before resolving this case. *See Crossroads*, 788 F.3d at 321; *Fund for Animals*, 322 F.3d at 736; *Costle*, 561 F.2d at 912-13.

Thus, the Chamber and AFCD satisfy the representation requirement.

### c. At the very least, the Chamber and AFCD satisfy the requirements for permissive intervention.

If this Court decides against granting the Chamber and AFCD intervention under Rule 24(a)(2), then, in the alternative, the Chamber and AFCD ask for permissive intervention under Rule 24(b). This Court has broad discretion to grant permissive intervention where (1) the intervenor's claim or defense and the main action have a question of law or fact in common, and

(2) intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b)(1)(B).

The Chamber and AFCD intend to argue that Florida's 404-permitting program complies with all applicable statutes and regulations. The Chamber and AFCD's defenses will likely overlap with those the other Defendants are expected to raise. And the Chamber and AFCD intend to abide by this Court's order, just as the existing Defendants, in bringing this case to a swift resolution.

Thus, the Chamber and AFCD satisfy the requirements for permissive intervention.

### III. Conclusion

The Chamber and AFCD ask this Court to grant their Motion to Intervene as an Intervenor-Defendants.

Respectfully submitted,

*/s/ Mohammad O. Jazil*
MOHAMMAD O. JAZIL (FBN 72556)
GARY V. PERKO (FBN 855898)*
EDWARD M. WENGER (FBN 85568)
HOPPING GREEN AND SAMS, P.A.
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301
Phone: (850) 222-7500
Fax: (850) 224-8551
mjazil@hgslaw.com
gperko@hgslaw.com
ewenger@hgslaw.com

*Counsel for The Florida Chamber of Commerce and Association of Florida Community Developers*

Dated: February 26, 2021

*Appearing under LCvR 83.2(c)(1) and admission pending*

10

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with LCvR 7(e) because it does not exceed 45 pages.

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of February 2021, I electronically filed the foregoing document using the CM/ECF system. Service was accomplished by the CM/ECF system.

Respectfully submitted,

*/s/ Mohammad O. Jazil*
Attorney