# Exhibit 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | |
| Plaintiffs, | |
| v. | **CASE NO.** 1:21-cv-00119 (RDM) |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants. | |

**DECLARATION OF LISA RINAMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, Lisa Rinaman, make the following declaration:

1.      I am a resident of Jacksonville, Florida.

2.      I am competent to make this declaration.  I provide this declaration based upon my personal and professional knowledge.  I would testify to the facts in this declaration under oath if called upon to do so.

3.      I am a member of St. Johns Riverkeeper, and I am also employed by St. Johns Riverkeeper as the Riverkeeper.

4.      At 310 miles long, the St. Johns River is the longest river in the state of Florida and is a significant waterway for commercial and recreational use.  It flows south to north and spans the northern half of the state on the eastern side.

5.      Through my work at St. Johns Riverkeeper, I have extensive experience advocating for the St. Johns River's water quality and health.  My work includes holding regulatory agencies and polluters accountable, including investigating and reporting threats and

1

monitoring for permit violations; identifying and advocating for solutions to protect and restore

the river; building coalitions across government entities, businesses, and the community to solve

problems affecting the river; working with the media to highlight river-related issues; and

educating the public about river related issues.

6.     Before being named Riverkeeper, I previously served in the St. Johns Riverkeeper

Water Policy Group, where I advocated for water conservation and reuse policies that are more

protective of our water resources.

7.     I also previously worked as a senior staff member for Jacksonville Mayor John

Peyton, where I was instrumental in leading the effort to develop and implement irrigation,

fertilizer, and Florida-friendly landscape ordinances to better protect the St. Johns River and

local waterways.  I also played a key role in securing state funding for water quality

improvements, organized Jacksonville's Manatee Protection Plan, and advocated for robust

programs to fulfill the River Accord restoration plan for the Lower St. Johns River.

8.     I graduated with a Bachelor of Arts in Communications from the University of

Arkansas in 1991.

9.     I have a deep and personal commitment to the protection and conservation of the

St. Johns River.  I regularly enjoy recreating in the river, where I kayak, swim, fish, bird-watch,

and take photos.  I also enjoy hiking and camping in the areas surrounding the river.  These are

activities that members of St. Johns Riverkeeper also regularly partake in and enjoy.  These

activities depend on there being a clean, pollution-free river whose waters are fresh and not

depleted.

10.     St. Johns Riverkeeper is a 501(c)(3) nonprofit with approximately 1,400 dues-paying members made up of businesses, families, single members.  We also receive support and funding from foundations.

11.     The core purpose of St. Johns Riverkeeper, for which my work is vitally intertwined, is to protect the river, tributaries, and watershed.  In doing so, we are also protecting the habitat of all the species who depend on the river.

12.     EPA's approval of Florida's application to assume control of section 404 permitting undermines St. John Riverkeeper's mission.  Among other failings, Florida does not commit any new financial resources to the program, it has no lawful plans to ensure that listed species are adequately protected, and analyses of section 404 permit applications issued by Florida would no longer include review under the National Environmental Policy Act ("NEPA") and consultation under section 7 of the ESA, as they would if 404 authority remained with the U.S. Army Corps of Engineers instead.

13.     Because section 404 permit applications processed by Florida will not undergo a NEPA analysis or site-specific ESA section 7 consultation, these projects will be subject to a far less rigorous environmental review, which increases risk of harm to the St. Johns River water quality and ecosystem.

14.     Overdevelopment, overpopulation, reduced water quality, and loss of critical wildlife habitat would harm my and St. Johns Riverkeeper members' ability to enjoy this natural area.

15.     The state's administration of this unlawful section 404 program will prevent St. Johns Riverkeeper from being able to monitor and engage in proposed permits to the same degree that the federal program afforded us.  As an organization, we are heavily rely on federal

3

review and analysis of projects that affect the river and its entire ecosystem.

16.    Because FDEP state assumption of the 404 program is in place, we are losing all of the protections that the federal law allows.  This means that there is no federal analysis or comment process on projects and permits.  As an organization, we do not have the ability to take on every advocacy effort so we rely on that federal review to evaluate those projects to protect the river.

17.    Our organization will be significantly harmed without these federal analyses because we would be required to hire our own experts in an attempt to otherwise assess and understand impacts of agency actions.  Experts cost thousands of dollars per case, and as a small organization, we would no longer be able to review and act on proposals or projects at the rate we normally do.  Our ability to protect the river through advocacy and litigation would be significantly hindered.

18.    One of the main tools St. Johns Riverkeeper uses to protect the river is the commenting process afforded by the NEPA.  When there is a proposed agency action, we review the applications and documents; review applicable laws and regulations; determine the scope and effects it would have on the St. Johns, its tributaries, and watershed; and submit comment letters as needed.  As with this case, we also engage in litigation when needed to carry out our organization's goals.

19.    Additionally, the environmental assessments and analyses required under NEPA are crucial to St. Johns Riverkeeper's ability to carry out its mission.  We rely on this information that we otherwise would not have access to in order to fully and accurately understand the scope and impacts of a proposed agency action.  In turn, we use this information to educate our members about a proposal and how it impacts the river and their ability to utilize

the river.  This information is also vital for our advocacy, monitoring, and litigation efforts.

20.      Because Florida has assumed 404 wetlands permitting, we are losing NEPA

review and the high-level of protections they afford for the environment and our water resources.

We will either lose the expert analyses required under the law or be required to expend more

staff time commenting on individual permits and to hire our own experts to ascertain impacts of

a proposal.  The loss of crucial information under the first scenario would be extremely

detrimental to St. Johns Riverkeeper's ability to carry out its mission of protecting the river, and

the second scenario would be similarly detrimental because we would then be required to hire

our own experts to ascertain information previously provided under federal law.  Experts costs

thousands of dollars to retain, which is thousands of dollars that would otherwise go toward our

programmatic goals.  The loss of information from NEPA analyses will result in additional staff

time to triage permits to identify harms to the river and additional costs in hiring experts.

21.      NEPA also provides our organization with an avenue for challenging 404 permits

and ensuring better environmental analyses.

22.      St. Johns Rivekeeper would be harmed by the loss of federal court as a venue to

challenge proposed agency action.  As with this case, our organization engages in federal court

litigation as a tool to advocate for the river and oppose actions that would harm it.  Without

federal court access to challenge certain permits, we would be required to bring permit

challenges in state court before the Division of Administrating Hearings ("DOAH").  Because

legal proceedings in front of DOAH do not involve records review from an administrative

record, St. Johns Riverkeeper would be required to spend money to hire expert witnesses if it

were to bring a legal challenge.  Factoring in the time and costs to build a case from the ground

up in state court, one single challenge could cost upwards of several hundreds of thousands of

dollars, which represents 35% of our annual operating budget.  We would either have to

fundraise in order to cover additional costs to litigate, which would be a significant drain on our

time and resources with no guarantee of success; divert resources to cover these costs that would

otherwise cover other items in our budget; or be foreclosed completely from this avenue to

protect the river.

23.     St. Johns Riverkeeper would also risk exposure to a mandatory "fee-shifting"

provision, in which we would risk being liable for the costs and fees to engage in litigation, costs

and fees that we would not be subject to if Florida was not allowed to assume the 404 program.

Such a fee-shifting provision would further diminish our ability to engage in litigation, because

we would be required to weigh this financial risk in addition to the above costs, regardless of

how strong our claim might be.

24.     Assuming we would be able to overcome the steep barriers to litigating a case in

state court, St. Johns Riverkeeper might still be precluded from challenging a proposal or action

in state court as a result of different legal requirements under state versus federal law.  It is my

understanding that under Florida law, we would be required to show harm to a significant

number of our members to be able to bring a claim, rather than to just one member under federal

law.

25.     St. John's Riverkeeper was also harmed by Florida's incomplete application,

which contained an incomplete list of assumed versus retained waters.  This harmed St. Johns

Riverkeeper's ability to carry out its organizational mission.  The state application did not

provide a full description of the waters it would assume, and instead, provided an incomplete list

that did not include the headwaters of the St. Johns River, which is a series of lakes and wetlands

that are hydrologically connected to the river.  Without complete information as to why certain

waters were retained and others were not, St. Johns Riverkeeper was unable to adequately

evaluate and comment[1] on the impacts of the proposed state assumption.  In turn, we were

unable to educate our members about the impacts and decision-making process of such a

momentous shift in Florida wetlands.

26.     St. Johns Riverkeeper also engages in enforcement activities to protect the river.

This includes investigating and reporting pollution, monitoring for permit violations, and

ensuring that environmental laws and regulations are implemented and enforced.  To that end,

we patrol the river regularly in our organization's boat, the Kingfisher, which is captained by our

patrol unit.  When appropriate, we refer issues to the authorities for investigation and criminal

prosecution, for which we provide any necessary assistance.

27.     As a plaintiff to this case and for the reasons stated in this declaration, it is St.

Johns Riverkeeper's position that Florida's 404 program is unlawful and will result in harms to

the river that our organization strives to protect.  This was reflected in St. Johns Riverkeeper's

advocacy during the state's 404 application process, during which I was engaged in our review

of Florida's proposal during EPA's public comment period and participated in the development

of our comments in opposition to the program.

28.     In furtherance of our organizational mission, it is our duty to exercise every legal

right and avenue available to halt EPA's approval of Florida's 404 program, and one such

avenue would have been to seek agency reconsideration to fix the unlawful elements of the

program as discussed in our comments and the complaint initiating this case.

---

[1] St. Johns Riverkeeper submitted comments on the proposed 404 assumption via its attorneys at
Earthjustice in a letter dated November 2, 2020.

29.     EPA's December 22, 2020, action making its approval of the Florida program effective immediately, however, harmed St. Johns Riverkeeper by foreclosing our opportunity to petition EPA for reconsideration of the program approval prior to the transfer of authority taking effect.  By making the program effective immediately, St. Johns Riverkeeper was foreclosed from seeking a legal avenue to remedy the unlawful aspects of the program prior to its effective date.

30.     St. Johns Riverkeeper was additionally harmed by EPA's December 22, 2020, action making its approval of Florida's program effective immediately because this foreclosed our opportunity to also ask the agency to stay the effective date of the rule pending judicial review.

31.     St. Johns Riverkeeper had intended to exercise its right to request that EPA administratively postpone the effective date of its decision under Section 705 of the Administrative Procedure Act ("APA").  By deeming its decision effective immediately, however, EPA abrogated our right to seek a stay from the agency under the APA.

32.     If the Court sets aside EPA's decision to make its action effective immediately, we would promptly seek a Section 705 stay.  On January 20, 2021, St. Johns Riverkeeper and other plaintiffs in this case, asked the agency to recognize the unlawfulness of the immediate effective date and if the agency decided to promulgate its decision as a rule, we asked that the agency consider plaintiffs' request to stay the effective date of the promulgated rule.  EPA, however, has adhered to its position that the effective date was lawful.  Under that position, the agency is unable to consider the stay request.

33.     If the Court does not grant the requested relief, St. Johns Riverkeeper will be foreclosed from the opportunity of having EPA consider granting a stay request, EPA will be

unable to grant such a stay, and the state will continue administering the 404 program, to the detriment of our interests.  As a result, St. Johns Riverkeeper and its members would lose a right they otherwise would have had to avoid the state program's serious consequences for their mission pending judicial review.

34.     Because St. Johns Riverkeeper was unable to seek a stay, the state will continue to apply its unlawful program for permits that will destroy wetlands and risk significant harm to listed species.  And our organization will now have substantial difficulty furthering our mission because of the significant barriers for advocacy, as discussed in paragraphs 12–26, above.

35.     EPA's December 22, 2020, action also foreclosed our organization's ability to benefit from action that the Biden Administration took to stay rules that had not yet gone into effect as of January 20, 2021.  It is my understanding that on January 20, 2021, President Joe Biden's White House Chief of Staff Ronald A. Klain issued a memorandum to the incoming White House Senior Staff, directing agency heads to consider postponing by at least 60 days any rule that had been published in the Federal Register but had not taken effect.  It is my understanding that this postponement was intended to provide the new Administration an opportunity to review any new or pending rules made by the outgoing Administration.  Had EPA provided the required 30-day effective date from its publication in the Federal Register on December 22, 2020, it is my understanding that its decision to approve the state 404 program would have been covered by the Klain Memo.

36.     It is my understanding that EPA failed to codify the components of the program that is to operate under Section 404 in Florida in the Federal Register, thereby failing to articulate the components of, and give legal effect to, the program.  Allowing a legally deficient

program to operate without even a lawful transfer of authority harms St. Johns Riverkeeper's

ability to carry out its organizational mission of protecting the river and its wildlife.

37.    Absent this unlawful transfer of authority, St. Johns Riverkeeper would continue

to enjoy rights and protections guaranteed by federal law, including participation in the lawful

404 program administered by the U.S. Army Corps of Engineers for more than 40 years in

Florida, the public participation process afforded by NEPA, the protections afforded to species

through the ESA whenever a project may affect a listed species, and the ability to enforce all

these rights in federal court, where St. Johns Riverkeeper can meet liberal standing requirements

and afford to litigate based on an administrative record, unlike the undue barriers that litigation

in state court present.

38.    Florida's assumption of the Section 404 program would lead to greater

environmental harms that would irreparably harm St. Johns Riverkeeper's programmatic

operations and would also harm my and our members' enjoyment and use of the river and the

beautiful and unspoiled natural areas that surround it.

39.    A favorable ruling from this Court would prevent the agency from treating its

decision as if it were effective immediately thereby allowing St. Johns Riverkeeper to pursue all

avenues, as discussed above, in order to halt Florida's implementation of its permitting program.

In addition, a favorable ruling would allow the possibility that the new Administration would

grant Plaintiffs' petition to immediately postpone the rule's effective date and thereby protect

Plaintiffs' concrete interests.  As indicated by an executive order, the Biden Administration is

focused on reviewing the final actions of the outgoing Administration.  It is likely that a

favorable decision will delay temporarily—and possibly forever—issuance of permits authorized

by the state program and the associated harms to St. Johns Riverkeeper as outlined above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of March 2021.

Lisa Rinaman
Riverkeeper at St. Johns Riverkeeper
2800 University Blvd N
Jacksonville, FL 32211

11