**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY,
*et al.*,

       *Plaintiffs*,

   v.

MICHAEL S. REGAN, in his official
Capacity as Administrator for the United
States Environmental Protection Agency,
*et al.*,[1]

       *Defendants*,

  and

STATE OF FLORIDA and FLORIDA
DEPARTMENT OF ENVIRONMENTAL
PROTECTION

       *Defendant-Intervenors*.

Civil Action No. 1:21-cv-119 (RDM)

---

**THE FLORIDA CHAMBER OF COMMERCE AND
ASSOCIATION OF FLORIDA COMMUNITY DEVELOPERS'
AMENDED STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR RENEWED MOTION TO INTERVENE**

---

[1] Administrator Michael S. Regan was sworn in on March 11, 2021 and is "automatically substituted as a party." Fed. R. Civ. P. 25(d).

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

STATEMENT OF POINTS AND AUTHORITIES .................................................................. 1

    I.   Introduction ................................................................................................................. 1

    II.  Argument .................................................................................................................... 4

        a.   The Chamber and AFCD have Article III standing ........................................... 4

        b.   The Chamber and AFCD may intervene mas a matter of right under Rule 24(a)(2)..... 11

        c.   At the very least, the Chamber and AFCD satisfy the requirements for permissive intervention. ............................................................................................................. 16

    III.  Conclusion ............................................................................................................... 17

CERTIFICATE OF COMPLIANCE .................................................................................... 18

CERTIFICATE OF SERVICE ............................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*A. Duda & Sons, Inc. v. St. Johns River Water Mgmt. Dist.*, 17 So. 3d 738
(Fla. 5th Dist. Ct. App. 2009) ................................................... 15

*Air All. Houston v. EPA*, 906 F.3d 1049 (D.C. Cir. 2018) ............................................. 15

*Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153 (D.D.C. 2001) .................................... 14

*Appalachian Voices v. McCarthy*, 989 F. Supp. 2d 30 (D.D.C. 2013) ......................................... 15

*Ass'n of Fla. Comm. Dev. v. Fla. Dep't of Envt'l Prot.*, 943 So. 2d 989
(Fla. 1st Dist. Ct. App. 2006) ................................................. 15

*Biden, et al. v. Sierra Club, et al.*, No. 20-138 (2020) ................................................. 15

*Bond v. United States,* 131 S. Ct. 2355, 2364 (2011) ................................................. 13

*California, et al. v. Texas, et al.*, No. 19-840 (2019) ................................................. 15

*Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312 (D.C. Cir. 2015) ...... 9, 12, 14, 16

*Fla. Wildlife Fed'n v. Jackson*, 853 F. Supp. 2d 1138 (N.D. Fla. 2012) ...................................... 15

*Food & Water Watch v. EPA*, 5 F. Supp. 3d 62 (D.D.C. 2013) ................................................. 15

*Frank LLP v. C.F.P.B.*, 288 F. Supp. 3d 46 (D.D.C. 2017) ......................................... 7, 9

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003) ............................ 11, 13, 14, 16

*Hecox v. Little, et al.*, Nos. 20-35813; 20-35815 (9th Cir. 2021) ................................................. 15

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ................................................. 5

*In re Report & Recommendations of Judicial Mgmt. Council of Fla. on Privacy & Elec. Access
to Court Records*, 832 So. 2d 712 (Fla. 2002) ................................................. 7

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ................................................. 8

*Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998) ................................................. 11, 13

*Nat'l Assn. of Home Builders v. U.S. Army Corps of Eng'rs*, 440 F.3d 459 (D.C. Cir 2006) ...... 15

*Nat'l Mining Assn. v. McCarthy*, 758 F.3d 243 (D.C. Cir. 2014) ................................................. 15

*Natural Res. Def. Council v. Costle*, 561 F.2d 904 (D.C. Cir. 1977) .................................... 14, 16

*New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 434 U.S. 1345 (1977) .......................................... 13

*Old Dominion Elec. Coop. v. Fed. Energy Regulatory Comm'n*, 892 F.3d 1223
   (D.C. Cir. 2018)........................................................................................................................ 4

*Pekoske, et al. v. Innovation Law Lab, et al.,*No. 19-1212 (2019) .............................................. 15

*Soule et al. v. Conn. Ass'n of Schools, et al.*, No. 3:20-cv-00201 (D. Conn. 2020) .................... 15

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ........................................................... 4, 7, 8

*Texas, et al. v. California, et al.*, No. 19-1019 (2019) .................................................................. 15

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ......................................... 8

*United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704 (11th Cir. 1991)...................... 9, 13, 15

*Virginia v. Ferriero*, 466 F. Supp. 3d 253 (D.D.C. 2020) ........................................................... 11

*Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 395 F. Supp. 3d 1, 21
   (D.D.C. 2019)......................................................................................................................... 4

*Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1 (D.D.C. 2019) ................................................. 15

**Federal and State Statutes**

33 U.S.C. § 1344.......................................................................................................................... 1

33 U.S.C. § 1344(g)(1) ................................................................................................................ 1

Fla. Stat. § 119.071(1)(d)1. (2020) ............................................................................................. 8

Fla. Stat. § 120.569 (2020) .......................................................................................................... 7

Fla. Stat. § 120.57 (2020) ............................................................................................................ 7

Fla. Stat. § 120.60 ....................................................................................................................... 3

Fla. Stat. § 120.68(7) (2020)........................................................................................................ 3

Fla. Stat. §§ 119.01 ..................................................................................................................... 3

**Regulations**

33 C.F.R. § 331.3(a)(1) ........................................................................................... 7

33 C.F.R. § 331.3(a)(3) ........................................................................................... 7

33 C.F.R. § 331.3(b)(2) ........................................................................................... 7

**Rules**

Fed. R. Civ. P. 24(a)(2) ......................................................................................... 11

Fed. R. Civ. P. 24(b)(1)(B) .................................................................................... 17

**Federal Register Publications**

EPA's Approval of Florida's Clean Water Act Section 404 Assumption Request, 85 Fed. Reg. 83,553 (Dec. 22, 2020) ......................................................................... 2, 9

**Other Authorities**

Fla. Dep't of Envtl. Prot., *State 404 Program* ...................................................... 2

*Admin. Pruitt Issues Directive to End EPA "Sue  & Settle"*, EPA (Oct. 16, 2017) .................... 16

*Exec. Order on Protecting Public Health & the Environ. & Restoring Science to Tackle the Climate Crisis*, The White House (Jan. 20, 2021) ..................................................... 16

## STATEMENT OF POINTS AND AUTHORITIES

### I.     Introduction

The Florida Chamber of Commerce ("Chamber") and Association of Florida Community Developers ("AFCD") move to intervene in defense of Florida's newly minted Clean Water Act permitting regime.  Many Chamber and AFCD members (including Mattamy Homes, Taylor Morrison, and Lennar Homes, *see* **Exhibit D at 2-3, ¶ 5; Exhibit E at 2-3, ¶ 5; Exhibit F at 2-3, ¶5**), benefit from Florida's assumption of the 404 permitting process, and all of these entities stand to lose valuable time and money if the Plaintiffs succeed in this case and the 404 permitting process reverts to the federal government.

Section 404 of the Clean Water Act requires any member of both the Chamber and AFCD whose business requires the discharge of materials into navigable waters to obtain permits before they can do so.  33 U.S.C. § 1344.  Discharges of this sort are part and parcel of the construction trade, which is the focus of AFCD, and an industry that is well-represented among the Chambers' members.  Although the U.S. Army Corps of Engineers ("Corps") serves as the permitting agency of first resort, Section 404(g) of the Clean Water Act allows any State to apply for the right to "administer its own individual and general permit program for the discharge of dredged and fill material into navigable waters [assumable] within its jurisdiction."  33 U.S.C. § 1344(g)(1).

Florida recently submitted an application with the U.S. Environmental Protection Agency ("EPA") to assume the responsibility of issuing 404 permits to Florida applicants.  It did so to streamline approval of projects with the State—everything from Everglades restoration projects to homesites and schools for Florida's growing population.  The EPA approved Florida's application, on December 22, 2020, and since it did, the State has administered the 404-program consistent

with both the Clean Water Act and State law.  *See* EPA's Approval of Florida's Clean Water Act Section 404 Assumption Request, 85 Fed. Reg. 83,553 (Dec. 22, 2020).

The Plaintiffs allege that the EPA, the Corps, the U.S. Fish and Wildlife Service ("Service"), and the State of Florida erred in the submitting, reviewing, and approving of Florida's 404-program application.  *See generally* ECF 1 at ¶¶ 1-3.  For that reason, the Plaintiffs ask this Court to invalidate the EPA's approval of Florida's 404-permitting program.

The Chamber and AFCD seek to intervene as Defendants.  They have Article III standing because the outcome of this litigation could dramatically affect the time and money their members need to spend to apply for, and receive, 404 permits.  As demonstrated by the experience of Chamber and AFCD members like Mattamy Homes and Taylor Morrison and Chamber member Lennar Homes—all of whom have pending 404 applications with the State—the Florida regime represents an immense improvement in time and money expenditures for entities seeking 404 permits.  Because the 404 regime overlaps with an existing State Environmental Resource Permitting ("ERP") system—with an 85% overlap, according to the Florida Department of Environmental Protection ("FDEP"),[2] the State completes its permitting work in a fraction of the time that it takes the federal government to do the same. Specifically, the State decides whether to issue ERP permits within 90 days of the submission of an application, which means that 85% of the work to process a 404 application under Florida's system is finished within 90 days.  *See* Fla. Stat. § 120.60.  Before Florida assumed the 404-permitting process, it took the federal government

---

[2] FDEP states that "projects within state-assumed waters require both an ERP and a State 404 Program authorization," with "85% of review requirements overlap between programs." Fla. Dep't of Envtl. Prot., *State 404 Program*, https://floridadep.gov/water/submerged-lands-environmental-resources-coordination/content/state-404-program (Last Visited March 31, 2021).

854 days to issue a 404 permit to Mattamy Homes and 1,313 days to issue a 404 permit to Lennar Homes.  **Exhibit E at 2, ¶ 5; Exhibit F at 2-3, ¶ 5.**

In addition to the time (and, consequentially, monetary) savings that the State-run 404 permitting process provides to the members of the Chamber and AFCD, the State's robust public-records laws—State Freedom of Information Act ("FOIA") laws, *see* Fla. Stat. §§ 119.01 *et seq.*—and trial-like administrative proceedings also allow for more transparency and adversarial testing of agency action, resulting in more predictability and consistency in agency action.  *See* Fla. Stat. § 120.68(7) (2020) (making agency exercise of discretion reversible if "[i]nconsistent with officially stated agency policy or a prior agency practice, if deviation therefrom is not explained by the agency"). The former is critical; a denial of access to governmental information provided by the federal Freedom of Information Act requests has been recognized as a cognizable Article III injury, and recent U.S. Supreme Court caselaw makes it a virtual certainty that reversion of the 404-permitting process to the federal government will mean a loss of State-FOIA guaranteed access to information for the members of the Chamber and AFCD.

In sum, all the protections afforded under Florida law allow for the Chamber and AFCD members to better gauge whether and when regulatory approval for projects can be expected, and it ultimately allows the Chamber and AFCD members to better spend their time and money.

Federal Rule of Civil Procedure 24(a)(2), moreover, allows the Chamber and AFCD to participate as a matter of right because (1) their request is timely, with the case still at the pleading stage, albeit with one issue being briefed on a separate timeline; (2) their members have a right to be heard about the regime that regulates their actions before that regime is replaced with another; (3) their interests would be impeded if the Plaintiffs prevail, because Chamber and AFCD members would then have to contend with the less transparent and inefficient federal 404-permitting regime;

3

and (4) no other party adequately represents the interests of Chamber and AFCD members, because members of the class *regulated* by the Clean Water Act (i.e., members of the Chamber and AFCD) plainly have interests, motivations, and litigation strategies that differ (and may conflict) with the entities tasked with *enforcing* the Clean Water Act (i.e., the existing Defendants).  At a minimum, the Court should allow the Chamber and AFCD to participate by virtue of Federal Rule of Civil Procedure 24(b), which allows for permissive intervention.[3]

## II.    Argument

### a. The Chamber and AFCD have Article III standing.

"[A]ll would-be intervenors must demonstrate Article III standing."  *Old Dominion Elec. Coop. v. Fed. Energy Regulatory Comm'n*, 892 F.3d 1223, 1232 (D.C. Cir. 2018).  Standing requires demonstration of an (1) injury in fact that is (2) fairly traceable to the conduct at issue and (3) likely to redressed by a favorable outcome.  *See, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Injuries are "particularized" if they affect a party in a "personal and individual way," and injuries are "concrete" if they actually exist.  *Id.*  Organizations can establish standing through

---

[3] At this time, the Chamber and AFCD have not filed a responsive pleading together with its motion to intervene.  This is for two reasons.  First, for purposes of Rule 24(c), and Local Rule 7(j), this motion and memorandum provide an explanation for why intervention is sought: the Chamber and AFCD seek to defend the validity of the federal agency action at issue as Intervenor-Defendants.  *See Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 395 F. Supp. 3d 1, 21 n. 4 (D.D.C. 2019).  Second, the Plaintiffs note in their Complaint that they intend to amend the pleading once the sixty-day notice requirement for another claim expires.  ECF 1 at 27, n. 1.  Answers (or motions to dismiss) would thus be amended in the coming weeks to direct them at the operative complaint.

their association with affected members.[4]   Associational standing requires an entity to show that (1) at least one of its members has standing, (2) the  interests in the litigation are germane to the organization's purpose, and (3) there is no need for the organization's individual members to participate.  *See, e.g.*, *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342 (1977).  The Chamber and AFCD satisfy the test for Article III standing.

*First*, the injury in fact.  As detailed in the declarations accompanying this filing, both the Chamber and AFCD have members currently subject to Florida's 404-program.  **Exhibit A at 4, ¶¶ 9-10; Exhibit B at 3, ¶ 8.**  The experience of Mattamy Homes, Taylor Morrison, and Lennar Homes is common and illustrative.   They previously labored under the federally administered program.  **Exhibit A at 3, ¶¶ 6-7; Exhibit B at 2, ¶ 6.**  Under that federally administered program, it took Mattamy Homes and Lennar Homes, for example, 854 days and 1,313 days, respectively, for final agency action on the 404-permit application even though agency action on the substantially similar ERP permit under State law took 40 days and 39 days, respectively.  *See* **Exhibit E at 2, ¶ 5; Exhibit F at 2-3, ¶ 5.**  Now that Florida has assumed the responsibility over the 404-permitting process, it is reasonable to expect the 404-permitting process to run its course in a fraction of the time—i.e., closer to the 90 days it takes the State to resolve an ERP permit application as required by section 120.60 of the Florida Statutes—because of the substantial overlap (i.e., 85%) in the work that must be accomplished for the State to issue both permits.  *See* **Exhibit C at 2, ¶ 6.**  And in the experience of the Chamber and AFCD's members, this time saving translates directly into dollars and cents; the more efficient the process, the less they must spend on the projects they pursue.  *See* **Exhibit D at 3, ¶ 8; Exhibit E at 3, ¶ 8; Exhibit F at 2-3, ¶ 8.**

---

[4] Organizations can also establish standing in their own right through, for example, a diversion-of-resources theory.  The Chamber and AFCD believe associational standing to be sufficient and omit any other discussion for the purposes of brevity and clarity.

5

Should the Plaintiffs succeed, however, Florida's permitting program would be invalidated, which would harm the Chamber and AFCD's members.

Specifically, success for the Plaintiffs would deprive Chamber and AFCD members of timely action on all permit applications.  As this Court noted in its previous order, State-issued 404 permits are exempted from the 90-day automatic approval provisions of the Florida Administrative Procedures Act ("Florida APA").[5]  Yet despite the exemption from automatic approval, Chamber and AFCD members reasonably expect timely action on applications submitted to the State for two reasons.  First, there is the culture of timely action as reflected in section 120.60 of the Florida Statutes.  Second, as noted above, there is the overlap between the Section 404 permits and Florida-specific ERP permits—"projects within state-assumed waters require both an ERP and a State 404 Program authorization," with "85% of review requirements overlap between programs."[6]  With ERP permits still subject to the 90-day requirement in section 120.60, the Chamber and AFCD have a reasonable expectation that most of the review for both Section 404 and ERP permits will be complete in 90 days.  Put bluntly, with 85% overlap between the two permitting schemes, there is no reason for ERP applications to take 40 and 39 days for approval and a 404 permit for the *same* projects to take 854 and 1,313 days; the injury inflicted by increasing by a magnitude of twenty or thirty from the time from application submission to resolution is both self-evident and well documented throughout the attached declarations.  **Exhibits A at 3, ¶ 7; Exhibit B at 2-3, ¶**

---

[5] Specifically, Section 120.60 of the Florida Statutes gives Florida administrative agencies 90 days to approve or deny applications; unexplained delay results in automatic approval unless the specific kind of application is otherwise exempt under Florida law.  But Section 404 permits issued by Florida are exempt from the automatic approval requirement. Fla. Stat. § 373.4146(5)(a) (2020).  This exemption from default permitting is necessary to ensure compliance with Section 404(j)(1)(A) of the Clean Water Act.

[6] Fla. Dep't of Envtl. Prot., State 404 Program, https://floridadep.gov/water/submerged-lands-environmental-resources-coordination/content/state-404-program (Last Visited Feb. 26, 2021).

**6; Exhibit C at 2-3, ¶ 7; Exhibit D at 2-3, ¶ 5; Exhibit E at 2-3, ¶ 5; Exhibit F at 2-3, ¶5**.  This "risk of real harm" that would accompany reversion of the 404-permitting process to the federal government "satisf[ies] the requirement of concreteness" for purposes of demonstrating injury in fact in this case.  *See Spokeo, Inc.*, 136 S. Ct. at 1549.

Lost also would be the right to a *de novo* proceeding under the Florida APA, complete with discovery and fact-finding adduced through the presentation of evidence before an impartial administrative law judge.  *See* Fla. Stat. §§ 120.569, 120.57(1) (2020) (providing for hearing rights).  The federally administered program includes no similar protections.[7]

Robust, Florida-specific public records rights—State FOIA rights—would be lost as well, because these rights apply only to information requests sought from Florida Agencies.  As this Court has recognized, the wrongful withholding of information otherwise discoverable via a Freedom of Information Act ("FOIA") request constitutes a cognizable injury for purposes of Article III.  *See, e.g.*, *Frank LLP v. C.F.P.B.*, 288 F. Supp. 3d 46, 48 (D.D.C. 2017).  Florida prides itself for having instituted one of the broadest FOIA statutes in the Nation—it serves as a "cornerstone of our political culture."  *In re Report & Recommendations of Judicial Mgmt. Council of Fla. on Privacy & Elec. Access to Court Records*, 832 So. 2d 712, 713 (Fla. 2002).  In Florida, even government attorney-work product is discoverable once litigation concludes, Fla. Stat. § 119.071(1)(d)1. (2020), and Florida has no deliberative-process exception, which means that the members of the Chamber and the AFCD have the right to access drafts and planning documents

---

[7] The federal review process entails a proceeding before a Corps employee (unlike the impartial administrative law judge in Florida), based on review of an administrative record (unlike the *de novo* trial-like proceeding in Florida).  *Compare* 33 C.F.R. §§ 331.3(a)(1) (providing for "review officer" or "RO" to conduct administer appeal process), 331.3(a)(3) (providing that "[t]he RO will be a Corps employee"), and 31.3(b)(2) (providing that RO will conduct "review of administrative record") *with* Fla. Stat. § 120.57(1) (2020) (providing for *de* novo proceedings conducted by an impartial administrative law judge based on evidence submitted by the parties).

from the FDEP.  In stark contrast, the U.S. Supreme Court has just issued an opinion expanding

the protection that the EPA (one of the existing defendants in this case) enjoys from production of

materials that fall under the deliberative-process privilege.  *See U.S. Fish & Wildlife Serv. v. Sierra

Club, Inc.*, 141 S. Ct. 777 (2021).  By virtue of the holding in *Sierra Club*, members of the Chamber

and AFCD currently have a legal right to access information regarding their 404 applications that

will be lost if the 404 process reverts to the federal government.  *See also Spokeo, Inc.*, 136 S. Ct.

at 1549 ("risk of real harm" can sometimes "satisfy the requirement of concreteness" for purposes

of demonstrating injury in fact).

Reversion to a slower, less transparent, and less predictable permitting system would harm

Chamber and AFCD members in very real ways.  Time lost is money lost, a fact reflected in the

experience of the Chamber's and AFCD's members.  *See* **Exhibit A at 4, ¶ 10; Exhibit B at 3, ¶**

**8; Exhibit D at 3, ¶ 6; Exhibit E at 3, ¶ 6; Exhibit F at 3, ¶ 6**.  This is true even though neither

the Chamber nor the AFCD have the ability to predict specifically how much money they stand to

lose if the 404 process reverts back to the federal government.  In this respect, the Chamber and

AFCD members are like the "[person] living adjacent to the site for proposed construction of a

federally licensed dam [with] standing to challenge the licensing agency's failure to prepare an

environmental impact statement, even though [the person] cannot establish with certainty that the

statement will cause the license to be withheld or altered."  *Lujan v. Defs. of Wildlife*, 504 U.S.

555, 572 n. 7 (1992).[8]  Loss of rights under Florida law would be "an imminent future injury—

one that is certainly impending or has a substantial risk of occurring," *Frank LLP*, 288 F. Supp. 3d

---

[8] *Lujan* discussed this hypothetical person in the context of explaining why "[t]here is much truth to the assertion that 'procedural injuries' are special."  504 U.S. at 572 n. 7.  As noted in the accompanying declarations, the loss of procedural rights under Florida law are procedural injuries with concrete financial impacts as well.

at 58, especially because Chamber and AFCD members currently have 404 permit applications pending before the FDEP.  **Exhibit D at 2, ¶ 4; Exhibit E at 2, ¶ 4; Exhibit F at 2, ¶ 4**.

Put another way, success for the Plaintiffs here would immediately eradicate rights under Florida law, like State FOIA rights, and members would necessarily incur the expense of re-submitting applications to the Corps and suffer the delay (and consequential monetary loss) inherent in the federal process.  Chamber and AFCD members should have some say in litigation that seeks to undo legal benefits and rights under the Florida law—benefits and rights acquired through the agency action being challenged here.  *See, e.g.*, *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015) ("Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit.") (collecting D.C. Circuit cases); *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 708-09 (11th Cir. 1991) (reversing trial court and allowing farmers to intervene so as not to impair their rights under the Florida APA).

*Second*, causation and redressability.  The State of Florida is currently administering the 404-permitting program.  *See* 85 Fed. Reg. at 83,554.  The Plaintiffs say it should not.  *See generally* ECF 1 at ¶¶ 1-3.  If the Plaintiffs succeed, then Florida would no longer administer the program, *id.* at 49-50, and the protections afforded to permittees under Florida law would disappear.  The injury then is directly traceable to the Plaintiffs' case—this case.  Rejecting the Plaintiffs' claims would redress the injury their lawsuit threatens.

*Third*, germaneness and individual member participation.  Since 1912, the Chamber has represented the interests of businesses within Florida.  *See* **Exhibit A at 2, ¶ 3.**  The Chamber currently represents the interests of thousands of members, businesses large and small, and it

advocates for, among other things, "predictable, streamlined, and effective permitting that balances growth with the preservation of unique ecological treasures like the beaches and wetlands so vital to [Florida's] economy." *Id.* **at 2, ¶ 5.** Chamber members include Mattamy Homes, Taylor Morrison, and Lennar Homes, all of whom have a profound financial and procedural interest in maintaining the current, more efficient, State-run 404-permiting regime. *See* **Exhibit D at 3, ¶ 3; Exhibit E at 3, ¶ 8; Exhibit F at 3, ¶ 8; Exhibit F at 3, ¶ 8**.

The AFCD represents the interests of homebuilders, developers, planners, engineers, and others committed to "the creation of quality community developments and the formulation of a responsible approach to planning and development of Florida's future." *See* **Exhibit B at 2, ¶3.** As with the Chamber members, AFCD members, which include Mattamy Homes, Taylor Morrison, and Dennis Breedlove and Associates, also maintain an abiding interest in preserving the new, State-administered 404-permitting regime.

Both the Chamber and AFCD work hard to accommodate Florida's ever-increasing population in an efficient and environmentally responsible manner. **Exhibit A at 2, ¶5; Exhibit B at 2, ¶3.** Both organizations actively participated in the legislative and administrative process necessary for Florida to assume the permitting program. **Exhibit A at 3, ¶8; Exhibit B at 3, ¶7.** And both organizations remain committed to streamlining permitting for environmental restoration efforts (which helps encourage non-Floridians to visit the State's many beaches, resorts, and parks) and to streamlining permitting necessary to provide essential infrastructure to Floridians, like schools, hospitals, stores, homes, and utilities. **Exhibit A at 2, ¶5; Exhibit B at 2, ¶¶3-4.** Because no individual section 404 permit is at issue here (yet permits remain pending under the regime being challenged) no individual member of the organization needs to participate. *See* ECF 1 at ¶¶

1-3.  Participation by the organizations suffices.  *See, e.g.*, *Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (allowing association to intervene for members).

Thus, the Chamber and AFCD have Article III standing.

### b.  The Chamber and AFCD may intervene as a matter of right under Rule 24(a)(2).

The Chamber and AFCD also satisfy the requirements of Rule 24(a)(2), which guarantees the right to intervene for "anyone . . . who . . . claims an interest relating to the property or transaction that is the subject of the action[] and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  Consistent with the rule, the D.C. Circuit requires one to show "(1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties."  *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citations omitted).  All four requirements are met.

### i.  Timeliness

Where, as here, the motion to intervene comes before the defendants filed an answer satisfying the timeliness requirement is "not difficult at all."  *See id.* at 734-35; *see also Virginia v. Ferriero*, 466 F. Supp. 3d 253, 256 (D.D.C. 2020).

The Plaintiffs filed their Complaint on January 14, 2021, ECF 1, and they "intend to amend the complaint to add [certain Endangered Species Act] claims after the required 60-day pre-suit notice . . . period has expired."  ECF 1 at 27, n. 1.  The federal Defendants have yet to file their responsive pleading.  *E.g.*, ECF 22 at 1.

The Chamber and AFCD, for their part, intend to abide by whatever schedule this Court sets for this record-review case, thereby causing minimal, if any, disruption to this Court or the existing Parties.  This is true even though the Plaintiffs have filed a motion for partial summary judgment.  The Chamber and the AFCD's participation could not conceivably affect the "purely legal claims" that constitute the issues raised in motion, ECF No. 21, at 1, and intervention would hopefully take effect before the response to the Plaintiffs' partial motion for summary judgment is due.  In other words, granting intervention means this Court will benefit from the Chamber and AFCD's unique perspective from the first substantive filings without any detriment to the orderly administration of these proceedings.  Indeed, the Chamber and AFCD file this motion within the timeframe set through this Court's March 4, 2021 Order.  *See* ECF No. 30, at 5.

Thus, the Chamber and AFCD satisfy the timeliness requirement.

### ii. Interest

The D.C. Circuit has explained that Article III standing is "alone sufficient to establish . . . [a proposed intervenor's] interest in the property or transaction which is the subject of the action."  *Fund for Animals*, 322 F.3d at 735; *see also Crossroads*, 788 F.3d at 320.  The Chamber and AFCD have Article III standing.  In Rule 24(a)(2)'s parlance, the "transaction" is EPA's approval of Florida's 404-program application, and the Chamber and AFCD have an "interest" in keeping this transaction from being undone and from their members again being subjected to federal administration of the permitting program.  This interest is sufficient for intervention just as it was in *Military Toxics Project*, a case in which the D.C. Circuit reversed the district court and allowed the Chemical Manufacturing Association to intervene and defend an EPA rule from which the Association's members benefited.  146 F.3d at 952-54.

Thus, the Chamber and AFCD satisfy the interest requirement.

### iii.  Impair or Impede

The "impair or impede" inquiry calls on this Court to determine whether the proposed intervenor is "so situated that the disposition of the action may as a practical matter impede or impair [its] ability to protect its interest." *Fund for Animals*, 322 F.3d at 735.

The Chamber and AFCD's interests in preserving the current permitting regime depends on their participation.  If the Plaintiffs succeed, then the State of Florida's assumption of the 404-permitting program would be undone.  Individual 404 permit applications would have to be resubmitted to the Corps for review and approval without the safeguards afforded by Florida law.  This would cause a practical impairment or impediment for Chamber and AFCD members.  *See, e.g.*, *S. Fla. Water Mgmt. Dist.*, 922 F.2d at 708-09.

More broadly, there would be an impairment or impediment to the State's interests "by the very fact that the State is prevented from engaging in" its regulatory process.  *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).  Because "States are not the sole intended beneficiaries of federalism," having members again answer to a less than responsive federal bureaucracy would harm the Chamber and AFCD's interests.  *Bond v. United States*, 131 S. Ct. 2355, 2364 (2011).

Thus, the Chamber satisfies the impair or impede requirement.

### iv.  Adequacy of Representation

Finally, none of the existing Parties adequately represent the Chamber and AFCD's interests.  This last requirement for intervention under Rule 24(a)(2) is "not onerous," and a proposed intervenor "ordinarily should be allowed to intervene unless it is clear that [an existing] party will provide adequate representation."  *Crossroads*, 788 F.3d at 321 (quoting *Fund for Animals*, 322 F.3d at 735 and *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir.

1980)). "[M]erely because parties share a general interest in the legality of a program or regulation does not mean their particular interests coincide so that representation by the agency alone is justified." *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001). This is true even if the arguments asserted by the Chamber and AFCD "overlap" with those of the governmental agencies. ECF No. 29-1, at 14. Some commonality in arguments among the Defendants is inevitable; it is a virtual certainty that the parties will identify the similar flaws in the Plaintiffs' allegations. But "overlap" does not equate to "redundancy," and it is also a virtual certainty that the entities subject to the Clean Water Act will approach the issues in a way that fundamentally differs from the governmental agencies that administer the Clean Water Act.

Binding caselaw recognizes the fundamental difference in interests (and, consequently, litigation strategy) when the regulated and the regulators find themselves aligned in litigation. The D.C. Circuit has repeatedly warned that government agencies cannot be relied upon to adequately represent the interests of private parties. *See Crossroads*, 788 F.3d at 321; *Fund for Animals*, 322 F.3d at 736; *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977). Government agencies are "doubtful friends," *Crossroads*, 788 F.3d at 321, who "often . . . do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736. This is why, as a matter of routine, the D.C. Circuit allows a wide variety of industry intervenors in cases where, as hear, groups committed to environmental protection sue the governmental agencies that have the responsibility of ensuring environmental protection—i.e., the U.S. EPA and the FDEP.[9] Now that the Executive Branch has changed hands at the federal level, and an

---

[9] *See e.g.*, *Air All. Houston v. EPA*, 906 F.3d 1049, 1057 (D.C. Cir. 2018) (group of industry interests permitted to intervene, though aligned with EPA); *Sierra Club v. EPA*, 895 F.3d 1, 7 (D.C. Cir. 2018) (same); *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 8-9 (D.D.C. 2019) (same); *Food & Water Watch v. EPA*, 5 F. Supp. 3d 62, 66 n.1 (D.D.C. 2013) (same); *Appalachian Voices v. McCarthy*, 989 F. Supp. 2d 30, 41 (D.D.C. 2013) (same).

Executive Brach election is scheduled for 2022 in Florida, it is far from clear whether the government agencies will provide the same zealous advocacy the Chamber and AFCD offer in defense of agency action at issue.[10]

In other words, the Defendants here are especially "doubtful friends."  One set of Defendants are federal agencies; the same federal agencies both the Chamber and AFCD members find themselves adverse to regularly in scores of cases.[11]  The other is a State agency; the same one that routinely finds itself at loggerheads with members of the Chamber, AFCD, and other trade associations throughout Florida.[12]  Both regulate the Chamber and AFCD members, and there will always exist inherent tension between those who regulate and those being regulated.  Indeed, there is always the possibility that, as has been the case in public-interest litigation of years past, the governmental agencies currently tasked with defending Florida's 404-permit regime will decide

---

[10] *See e.g.*, *California, et al. v. Texas, et al.*, No. 19-840 (2019) (reversing position regarding affordable care act); *Texas, et al. v. California, et al.*, No. 19-1019 (2019) (same); *Biden, et al. v. Sierra Club, et al.*, No. 20-138 (2020) (request to remove case challenging border wall construction from oral argument calendar and to hold in abeyance); *Pekoske, et al. v. Innovation Law Lab, et al.*,No. 19-1212 (2019) (request to remove case relating to "remain in Mexico" policy from oral argument calendar and to hold in abeyance); *Hecox v. Little, et al.*, Nos. 20-35813; 20-35815 (9th Cir. 2021), Dkt. 124 (withdrawing previously filed amicus brief); *Soule et al. v. Conn. Ass'n of Schools, et al.*, No. 3:20-cv-00201 (D. Conn. 2020) at ECF 172-1(withdrawing support in federal case).

[11] *See e.g.*, *S. Fla. Water Mgmt Dist.*, 922 F.2d at 706; *Fla. Wildlife Fed'n v. Jackson*, 853 F. Supp. 2d 1138 (N.D. Fla. 2012); *see generally  Nat'l Mining Assn. v. McCarthy*, 758 F.3d 243, 248 (D.C. Cir. 2014) (different trade association challenge to EPA Clean Water Act coordination policy); *Nat'l Assn. of Home Builders v. U.S. Army Corps of Eng'rs*, 440 F.3d 459, 461 (D.C. Cir 2006) (different trade association challenge to regulation regarding use of excavation equipment).

[12] *See e.g.*, *A. Duda & Sons, Inc. v. St. Johns River Water Mgmt. Dist.*, 17 So. 3d 738, 740 (Fla. 5th Dist. Ct. App. 2009); *Ass'n of Fla. Comm. Dev. v. Fla. Dep't of Envt'l Prot.*, 943 So. 2d 989 (Fla. 1st Dist. Ct. App. 2006).

to enter into a consent decree,[13] or choose not to pursue appeals, notwithstanding otherwise meritorious legal arguments that the Chamber and the AFCD are committed to advancing.

Given (1) the inherent tension between government regulators and the regulated industry, combined with (2) the change to an administration that not only has changed its litigation position in other cases but has also publicly committed itself to greater federal regulation of the environment,[14] and (3) the chance for a change in administration after a gubernatorial election in 2022, the former cannot be expected to provide the perspective of the latter. Nor should they. During these proceedings, the Chamber and AFCD might well disagree with both sets of Defendants about the extent of the Defendants' regulatory powers, the administrative record, and briefing strategy. This should not only be expected; it should be welcomed. The unique perspective of the industry regulated by Section 404 of the Clean Water Act will provide this Court with a more comprehensive set of arguments and a broader range of perspectives. *See Crossroads*, 788 F.3d at 321; *Fund for Animals*, 322 F.3d at 736; *Costle*, 561 F.2d at 912-13. And this more fulsome presentation will inevitably provide this Court with a fuller set of tools aimed at ensuring that it has all it needs to reach the correct resolution in this case.

Thus, the Chamber and AFCD satisfy the representation requirement.

    **c.**  **At the very least, the Chamber and AFCD satisfy the requirements for permissive intervention.**

---

[13] *See e.g.*, *Admin. Pruitt Issues Directive to End EPA "Sue & Settle"*, EPA (Oct. 16, 2017), https://archive.epa.gov/epa/newsreleases/administrator-pruitt-issues-directive-end-epa-sue-settle.html (Last Visited Mar. 31, 2021).

[14] *See Exec. Order on Protecting Public Health & the Environ. & Restoring Science to Tackle the Climate Crisis*, The White House (Jan. 20, 2021) https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/executive-order-protecting-public-health-and-environment-and-restoring-science-to-tackle-climate-crisis/ (Last Visited Mar. 31, 2021).

If this Court decides against granting the Chamber and AFCD intervention under Rule 24(a)(2), then, in the alternative, the Chamber and AFCD ask for permissive intervention under Rule 24(b).  This Court has broad discretion to grant permissive intervention where (1) the intervenor's claim or defense and the main action have a question of law or fact in common, and (2) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.  *See* Fed. R. Civ. P. 24(b)(1)(B).

The Chamber and AFCD intend to argue that Florida's 404-permitting program complies with all applicable statutes and regulations.  The Chamber and AFCD's defenses will likely overlap with those the other Defendants are expected to raise.  And the Chamber and AFCD intend to abide by this Court's order, just as the existing Defendants, in bringing this case to a swift resolution.

Thus, the Chamber and AFCD satisfy the requirements for permissive intervention.

## III.    Conclusion

The Chamber and AFCD ask this Court to grant their Motion to participate in this case as Intervenor-Defendants.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Mohammad O. Jazil*
MOHAMMAD O. JAZIL (FBN 72556)
GARY V. PERKO (FBN 855898)
EDWARD M. WENGER (FBN 85568)
HOPPING GREEN AND SAMS, P.A.
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301
Phone: (850) 222-7500
Fax: (850) 224-8551
mjazil@hgslaw.com
gperko@hgslaw.com
ewenger@hgslaw.com

*Counsel for The Florida Chamber of Commerce and Association of Florida Community Developers*

</div>

Dated: April 1, 2021

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with LCvR 7(e) because it does not exceed 45 pages.

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April 2021, I electronically filed the foregoing document using the CM/ECF system.  Service was accomplished by the CM/ECF system.

Respectfully submitted,

*/s/ Mohammad O. Jazil*
Attorney

18