# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY;

DEFENDERS OF WILDLIFE;

SIERRA CLUB;

CONSERVANCY OF SOUTHWEST FLORIDA;

MIAMI WATERKEEPER; and

ST. JOHNS RIVERKEEPER

                Plaintiffs,

         v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY;

MICHAEL REGAN, in his official capacity as EPA
Administrator;

RADHIKA FOX, in her official capacity as Acting
Assistant Administrator, EPA Office of Water;

MELISSA HOFFER, in her official capacity as
Acting EPA General Counsel;

LAWRENCE STARFIELD, in his official capacity
as Acting Assistant Administrator, EPA Office of
Enforcement and Compliance Insurance;

JOHN BLEVINS, in his official capacity as Acting
Regional Administrator, EPA Region 4;

U.S. FISH AND WILDLIFE SERVICE;

Case No. 1:21-cv-0119 (RDM)

MARTHA WILLIAMS, in her official capacity as
Principal Deputy Director, exercising the delegated
authority of the Director, U.S. Fish & Wildlife
Service;

LEOPOLDO MIRANDA-CASTRO, in his official
capacity as Regional Director, U.S. Fish & Wildlife
Service;

U.S. ARMY CORPS OF ENGINEERS;

LTG SCOTT A. SPELLMON, in his official capacity
as Chief of Engineers and Commanding General,
U.S. Army Corps of Engineers;

COL ANDREW KELLY, in his official capacity as
Jacksonville District Commander, U.S. Army Corps
of Engineers,

Defendants.[1]

## DEFENDANTS' COMBINED CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the caption reflects the following automatic substitutions:  MICHAEL REGAN, EPA Administrator, is substituted for ANDREW WHEELER; RADHIKA FOX, Acting Assistant Administrator, EPA Office of Water, is substituted for DAVE ROSS; MELISSA HOFFER, Acting EPA General Counsel, is substituted for DAVID FOTOUHI; LAWRENCE STARFIELD, Acting Assistant Administrator, EPA Office of Enforcement and Compliance Insurance, is substituted for SUSAN BODINE; JOHN BLEVINS, Acting Regional Administrator, EPA Region 4, is substituted for MARY WALKER; and MARTHA WILLIAMS, Principal Deputy Director, exercising the delegated authority of the Director, U.S. Fish & Wildlife Service, is substituted for AURELIA SKIPWITH.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

STATUTORY AND REGULATORY BACKGROUND .......................................... 1

I.      The Administrative Procedure Act ............................................................ 1

II.     The Clean Water Act ............................................................................... 2

FACTUAL BACKGROUND ................................................................................ 5

STANDARD OF REVIEW ................................................................................... 6

ARGUMENT ...................................................................................................... 7

I.      Plaintiffs Have Limited Standing to Bring Claim 8.  Plaintiffs Lack
        Standing to Bring Claim 9. ...................................................................... 8

        A.      Plaintiffs' standing to bring Claim 8 is narrowly constrained by
                binding D.C. Circuit precedent. ................................................... 8

        B.      Plaintiffs have no procedural right to a stay under 5 U.S.C. § 705. ..... 10

        C.      Plaintiffs' standing to bring Claim 9 fails on causation grounds. ........ 12

II.     If Plaintiffs Have Standing, the Court Should Enter Summary Judgment
        for the United States on Claims 8 and 9. ................................................. 14

        A.      EPA properly acted on Florida's section 404 assumption request
                by adjudicatory order. ............................................................... 14

                1.      EPA's action by adjudicatory order was consistent with
                        governing statutes and regulations. ................................... 15

                2.      EPA's approval of Florida's assumption request bears the
                        hallmarks of adjudicative decisionmaking. ........................ 16

                3.      The "force of law" test does not distinguish rules from
                        orders. ......................................................................... 18

4.      EPA's action of Florida's assumption request was
            consistent with past practice, though past practice is not
            determinative..............................................................................................20

B.      EPA's approval did not need to be codified before going into
        effect. ..........................................................................................................23

CONCLUSION..............................................................................................................24

# TABLE OF AUTHORITIES

## CASES

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001) ............................................................................. 2, 6

*Brock v. Cathedral Bluffs Shale Oil Co.*,
  796 F.2d 533 (D.C. Cir. 1986) ................................................................................ 24

*City of Waukesha v. EPA*,
  320 F.3d 228 (D.C. Cir. 2003) ................................................................................ 13

*Community Nutrition Institute v. Young*,
  818 F.2d 943 (D.C. Cir. 1987) ............................................................................ 19, 20

*Ctr. for L. & Educ. v. Dep't of Educ.*,
  396 F.3d 1152 (D.C. Cir. 2005) ............................................................................ 8, 10

*Davis v. FEC*,
  554 U.S. 724 (2008) ................................................................................................. 8

*Defenders of Wildlife v. Gutierrez*,
  532 F.3d 913 (D.C. Cir. 2008) ................................................................................ 10

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
  140 S. Ct. 1891 (2020) .............................................................................................. 1

*Environmental Defense Fund v. EPA*,
  No. 4:21-CV-03-BMM, 2021 WL 270246 (D. Mont. Jan. 27, 2021) ...................................... 11

*Florida Audubon Society v. Bentsen*,
  94 F.3d 658 (D.C. Cir. 1996) .................................................................................. 12

*General Motors, Corp. v. EPA*,
  363 F.3d 442 (D.C. Cir. 2004) ......................................................................... 18, 19, 20

*Innovator Enters., Inc. v. Jones*,
  28 F. Supp. 3d 14 (D.D.C. 2014) ............................................................................ 6, 7

*Louisiana v. Salazar*,
  170 F. Supp. 3d 75 (D.D.C. 2016) ............................................................................. 7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................... 6, 7, 8, 12, 13

*Menominee Indian Tribe of Wisconsin v. EPA,*
  947 F.3d 1065 (7th Cir. 2020) .................................................................. 22

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,*
  463 U.S. 29 (1983) .................................................................................. 7

*N.L.R.B. v. Bell Aerospace Co.,*
  416 U.S. 267 (1974) ........................................................................... 17, 23

*National Association of Home Builders v. United States Army Corps of Engineers,*
  417 F.3d 1272 (D.C. Cir. 2005) ............................................................... 18

*National Association of Home Health Agencies v. Schweiker,*
  690 F.2d 932 (D.C. Cir. 1982) ................................................................. 19

*Nat'l Biodiesel Bd. v. EPA,*
  843 F.3d 1010 (D.C. Cir. 2016) .......................................................... 15, 17

*Nat'l Parks Conservation Ass'n v. Manson,*
  414 F.3d 1 (D.C. Cir. 2005) ..................................................................... 13

*Neustar, Inc. v. FCC,*
  857 F.3d 886 (D.C. Cir. 2017) ................................. 2, 14, 15, 16, 17, 18, 23

*Prows v. Department of Justice,*
  938 F.2d 274 (D.C. Cir. 1991) .............................................................. 9, 10

*Safari Club Int'l v. Zinke,*
  878 F.3d 316 (D.C. Cir. 2017) .................................... 14, 15, 16, 17, 18, 19

*SEC v. Chenery Corp.,*
  332 U.S. 194 (1947) ................................................................................ 20

*Simmons v. ICC,*
  757 F.2d 296 (D.C. Cir. 1985) ................................................................. 24

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) .............................................................................. 8

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) ................................................................................ 10

*United States v. Fla. E. Coast Ry. Co.,*
  410 U.S. 224 (1973) ................................................................................ 15

## STATUTES

5 U.S.C. § 551(4) ................................................................................................ 2

5 U.S.C. § 551(5) ................................................................................................ 2

5 U.S.C. § 551(6) ........................................................................................... 2, 15

5 U.S.C. § 551(7) ........................................................................................... 2, 15

5 U.S.C. § 551(8) ............................................................................................. 15

5 U.S.C. § 551(9) ............................................................................................. 15

5 U.S.C. § 553(b) ............................................................................................... 9

5 U.S.C. § 553(c) ............................................................................................. 11

5 U.S.C. § 553(d) .................................... 2, 7, 8, 9, 10, 11, 12, 14, 16, 17, 21, 22, 23

5 U.S.C. § 553(d)(1)-(3) ............................................................................... 21, 22

5 U.S.C. § 553(e) ................................................................................ 10, 11, 12, 22

5 U.S.C. § 705 ................................................................................... 10, 11, 12

5 U.S.C. § 706(2)(A) ........................................................................................... 7

28 U.S.C. § 1345 ............................................................................................. 19

33 U.S.C. § 1311(a) ...................................................................................... 2, 19

33 U.S.C. § 1319(b) ......................................................................................... 19

33 U.S.C. § 1342 ............................................................................................... 5

33 U.S.C. § 1342(b) ...................................................................................... 5, 22

33 U.S.C. § 1342(c) ...................................................................................... 5, 22

33 U.S.C. § 1344 ............................................................................................... 1

33 U.S.C. § 1344(a) ...................................................................................... 1, 2, 3

33 U.S.C. § 1344(g) ...................................................................................... 5, 22

33 U.S.C. § 1344(g)(1) ........................................................................................... 3

33 U.S.C. § 1344(h) ................................................................................... 5, 15, 22

33 U.S.C. § 1344(h)(1) ......................................................................................... 17

33 U.S.C. § 1344(h)(1)(A)-(H) .............................................................................. 4

33 U.S.C. § 1344(h)(2)(A) .................................................................................... 15

33 U.S.C. § 1344(h)(3) .......................................................................................... 4

33 U.S.C. § 1344(h)(4) .......................................................................................... 4

33 U.S.C. § 1344(i) .......................................................................................... 5, 23

33 U.S.C. § 1344(j) ................................................................................................ 4

33 U.S.C. § 1344(j)-(*l*) ......................................................................................... 4

33 U.S.C. § 1365(f)(1) .......................................................................................... 19

44 U.S.C. 1510(a) ........................................................................................... 12, 23

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 56(e) ............................................................................................. 6

**CODE OF FEDERAL REGULATIONS**

1 C.F.R. § 5.9(b) .......................................................................................... 20, 22

1 C.F.R. § 5.9(c) .......................................................................................... 20, 22

40 C.F.R. § 233.2 .................................................................................................. 3

40 C.F.R. §§ 233.10–.11 ....................................................................................... 3

40 C.F.R. §§ 233.10–.14 ..................................................................................... 17

40 C.F.R. § 233.11(d) ........................................................................................... 3

40 C.F.R. § 233.11(e) ........................................................................................... 3

40 C.F.R. § 233.11(h) ........................................................................................... 3

40 C.F.R. § 233.15(a) ........................................................................................... 3

40 C.F.R. § 233.15(e)(1) ...................................................................................... 4

40 C.F.R. § 233.15(e)(2) ...................................................................................... 4

40 C.F.R. § 233.15(g) ........................................................................................... 4

40 C.F.R. § 233.15(h) ...................................................................................... 4, 16

40 C.F.R. § 233.53(c)(1)-(4) .............................................................................. 4, 5

40 C.F.R. § 233.53(c)(1) ........................................................................................ 5

40 C.F.R. § 233.53(c)(1)-(8) ............................................................................... 23

40 C.F.R. § 233.70 ................................................................................................. 5

40 C.F.R. § 233.71 ................................................................................................. 5

## FEDERAL REGISTER

49 Fed. Reg. 38,947 (Oct. 2, 1984) ........................................................... 5, 20, 21

59 Fed. Reg. 677 (Jan. 6, 1994) ........................................................................... 21

59 Fed. Reg. 9933 (Mar. 2, 1994) ............................................................... 5, 20, 21

66 Fed. Reg. 12,791 (Feb. 28, 2001) .............................................................. 21. 22

85 Fed. Reg. 57,853 (Sept. 16, 2020) .................................................................. 5, 6

85 Fed. Reg. 83,553 (Dec. 22, 2020) ................................................................. 6, 15

86 Fed. Reg. 7037 (Jan. 25, 2021) ......................................................................... 6

## LEGISLATIVE HISTORY

Senate Judiciary Committee Print, June 1945 at 38, *reprinted in* Administrative Procedure
   Act Legislative History (Comm. Print 1946) ...............................................................11

**INTRODUCTION**

In December 2020, the Environmental Protection Agency ("EPA" or "the Agency") approved the State of Florida's request to assume primary responsibility for a Clean Water Act permitting program governing the discharge of dredged and fill material into certain waters within Florida's borders.  EPA published notice of its approval in the December 22, 2020 issue of the Federal Register, and declared the approval effective as of the date of publication.  In their motion for partial summary judgment, Plaintiffs challenge that December 22, 2020 effective date.  According to Plaintiffs, EPA's approval of Florida's program could only take effect 30 days after publication (Claim 8 in Plaintiffs' Complaint), and then only after EPA codified its approval in the Code of Federal Regulations (Claim 9).

Claim 9 fails for lack of standing and Claims 8 fails on the merits.  Plaintiffs do not have standing to challenge EPA's alleged failure to codify its approval of Florida's program because that alleged failure in no way led to the Agency's approval of Florida's program and so cannot support standing's causation requirement.  While justiciable, Claim 8 rests on the faulty premise that EPA could approve Florida's program only by issuing a rule.  In fact, EPA acted well within the scope of its authority when it approved Florida's program by adjudicatory order, rather than rule.  Orders are not subject to the 30-day delay requirement applicable to rules, so Claim 8 fails. Should the Court reach the issue, Claim 9 fails on the merits for much the same reason:  there is no requirement that agencies codify orders before those orders take effect.  The Court should therefore deny Plaintiffs' motion for partial summary judgment and grant the United States' cross-motion for partial summary judgment.

**STATUTORY AND REGULATORY BACKGROUND**

**I.     The Administrative Procedure Act**

The Administrative Procedure Act ("APA") "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts."  *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) (internal quotation marks omitted).

1

Acting pursuant to the APA, "agencies perform their administrative functions both through rulemaking and by adjudication." *Neustar, Inc. v. FCC*, 857 F.3d 886, 893 (D.C. Cir. 2017). The APA defines rulemaking as an "agency process for formulating, amending, or repealing a rule," with "rule" defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. §§ 551(4), (5). The APA's procedures governing rulemakings are set forth at 5 U.S.C. § 553 and include a requirement that, with some exceptions, rules may only take effect 30 days after they are published in the Federal Register. *Id.* § 553(d).

An adjudication is an "agency process for the formulation of an order," and an "order" is "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." *Id.* §§ 551(6), (7). Adjudications may be formal or informal. A formal adjudication is one that is "required by statute to be determined on the record after opportunity for an agency hearing." *Id.* § 554(a). An "'informal adjudication' . . . is the administrative law term for agency action that is neither the product of formal adjudication or a rulemaking." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001). The APA's minimum requirements for informal adjudications are set forth at § 555. Unlike rules, there is no required 30-day delay in effective date for orders issued through adjudication.

## II.     The Clean Water Act

The Clean Water Act ("CWA") prohibits the discharge of any pollutant into waters of the United States unless done in compliance with a provision of the Act. 33 U.S.C. § 1311(a); *see also id.* § 1362(6) (defining "pollutant"); *id.* § 1362(7) (defining "navigable waters"). This case concerns CWA section 404, 33 U.S.C. § 1344, which authorizes the issuance of permits—known as "section 404 permits"—governing the discharge of dredged or fill material into waters of the United States. *Id.* §§ 1344(a), (g).

Congress empowered the Secretary of the Army to administer the section 404 program. *Id.* § 1344(a). But Congress also allowed that States and Tribes might assume administration of a section 404 permitting program for waters within their jurisdiction. *Id.* § 1344(g)(1). States or Tribes wishing to do so can submit requests to EPA. *Id.*[2]

A State's section 404 assumption request must include "a full and complete description of the program" that the State "proposes to establish and administer under State law" and "a statement from the attorney general (or the attorney for those State agencies which have independent legal counsel) . . . that the laws of such State . . . provide adequate authority to carry out the described program." *Id.* § 1344(g)(1). EPA regulations elaborate on those general requirements. *See* 40 C.F.R. §§ 233.10–.11. For example, a State's "program description" must provide, *inter alia*: a "description of the funding and manpower which will be available for program administration," *id.* § 233.11(d); an "estimate of the anticipated workload, e.g., number of discharges," *id.* § 233.11(e); a "description of the waters of the United States within a State over which the State [would] assume[] jurisdiction under the approved program," and "a description of the waters of the United States within a State over which" the Corps would "retain[] jurisdiction subsequent to program approval," *id.* § 233.11(h). The last of those requirements is necessary because States may not issue section 404 permits for discharges into waters that are or could be used "as a means to transport interstate or foreign commerce." 33 U.S.C. § 1344(g)(1). The Secretary of the Army, acting through the Army Corps of Engineers ("the Corps"), retains jurisdiction over those waters, which are referred to as "retained waters."

Once EPA receives a State's section 404 assumption request, it has 30 days to "determine whether the submission is complete." 40 C.F.R. § 233.15(a). If EPA determines that a

---

[2] The CWA refers to "State" assumption of the section 404 program. EPA's regulations define "State" to include Indian Tribes meeting certain requirements. 40 C.F.R. § 233.2. The references to "States" in the statute and regulations are therefore to be interpreted to include Tribes.

submission is complete, the Agency will publish a notice to that effect in the Federal Register and "[p]rovide for a comment period of not less than 45 days," and a "public hearing." *Id.* §§ 233.15(e)(1), (2).

Within 120 days of receiving a request, EPA must determine whether, based on the materials submitted, the State's program satisfies eight statutory criteria set forth at 33 U.S.C. § 1344(h)(1)(A)–(H).  By the end of that 120-day period, EPA must "approve or disapprove" the State's section 404 assumption request, unless the State agrees to an extension.  40 C.F.R. § 233.15(g).  If, however, EPA "fails to make a determination" within 120 days, and if the State has not agreed to extend the 120-day review period, then the State's program "shall be deemed approved."  33 U.S.C. § 1344(h)(3).  EPA's regulations add that program transfer "shall not be considered effective until . . . notice appears in the Federal Register" and that the "Secretary shall suspend the issuance by the Corps of section 404 permits in State regulated waters on such effective date."  40 C.F.R. § 233.15(h).  If EPA approves a State program, the Corps must "transfer" to the State any pending permit "applications for activities" governed by the new State program.  33 U.S.C. § 1344(h)(4).

Following approval, EPA retains oversight of State-administered section 404 programs. For example, EPA receives copies of permit applications submitted to the State, though it may waive receipt of certain categories of permit applications.  *Id.* §§ 1344(j)–(*l*).  If EPA notifies the State of its intent to comment on a permit application or draft general permit, the State must refrain from issuing the permit until it receives EPA's comments or 90 days elapse, whichever comes first.  *Id.* § 1344(j).  And if EPA objects to the issuance of a permit, the State must address those objections, or the authority to issue that permit reverts to the Corps.  *Id.*

EPA may also withdraw its approval of a program if it determines, "after public hearing," that a State "is not administering" its approved section 404 program "in accordance with" the requirements of the CWA.  *Id.* § 1344(i).  EPA's regulations provide that the statutorily prescribed public hearing take place on the record, before a Presiding Officer, and in accordance

with provisions of the "Consolidated Rules of Practice Governing the Administrative Assessment of Civil Penalties and the Revocation/Termination or Suspension of Permits."  40 C.F.R. § 233.53(c)(1)–(4).  EPA can initiate a withdrawal proceeding on its own initiative, or "in response to a petition from an interested person."  *Id.* § 233.53(c)(1).

In addition to Florida, EPA has approved State section 404 programs in Michigan (49 Fed. Reg. 38,947 (Oct. 2, 1984)) and New Jersey (59 Fed. Reg. 9933 (Mar. 2, 1994)).  Although not required by statute or regulation, EPA codified those approved section 404 programs at 40 C.F.R. § 233.70 (Michigan) and § 233.71 (New Jersey).

As with section 404 permits, States may also request from EPA the authority to issue National Pollution Discharge Elimination System ("NPDES") permits pursuant to CWA section 402, 33 U.S.C. § 1342.  The requirements for section 402 authorization requests, and the process by which EPA reviews those requests, are codified at 33 U.S.C. § 1342(b) and (c) and are very similar to the section 404 assumption requirements and procedures codified at § 1344(g) and (h). EPA has approved State NPDES programs in 47 States and one territory.  A list of approved NPDES programs is available here:  https://www.epa.gov/npdes/npdes-state-program-authority.

## FACTUAL BACKGROUND[3]

On August 20, 2020, EPA received from Florida a request to administer a section 404 program for waters within Florida's jurisdiction.  85 Fed. Reg. 57,853 (Sept. 16, 2020) (EPA-HQ-OW-2018-0640-0001); *see also* Letter from Ron DeSantis, Governor, State of Florida, to Mary S. Walker, Regional Administrator, EPA Region 4 (Aug. 18, 2020) (EPA-HQ-OW-2018-0640-0004).  On September 16, 2020, EPA published a notice in the Federal Register, announcing that it had deemed Florida's request complete, was opening a 45-day public comment period, and would hold two virtual hearings in late October.  85 Fed. Reg. at 57,853 (EPA-HQ-OW-2018-0640-0001 at *1)*.  At that time, EPA also made Florida's application

---

[3] Because Plaintiffs' motion challenges only the manner in which EPA approved Florida's program, this recitation of facts is confined to the salient procedural aspects of that approval.

available on a publicly accessible "nonrulemaking docket," available at
https://www.regulations.gov/docket/EPA-HQ-OW-2018-0640.  *See id.*  And the Agency noted
that if it approved Florida's request, it would "codify [Florida's] approved program in 40 CFR
233 subpart H."  85 Fed. Reg. at 57,855 (EPA-HQ-OW-2018-0640-0001 at *3)

On December 17, 2020, EPA informed Florida that it had approved Florida's assumption
request and that Florida could begin administering its section 404 program "upon publication of
EPA's approval in the Federal Register."  Letter from Regional Administrator Walker to
Governor DeSantis (Dec. 17, 2020) (EPA-HQ-OW-2018-0640-0566).

On December 22, 2020, EPA published notice in the Federal Register of its approval of
Florida's section 404 assumption request.  85 Fed. Reg. 83,553 (Dec. 22, 2020).  In that notice,
EPA stated that "Florida's program assumption" would be "applicable" as of that day.  *Id.*

On January 14, 2021, EPA posted to its website a "Pre-Publication Notice" announcing
its intent to codify in the Code of Federal Regulations a list of State statutes, regulations, and
interagency memoranda comprising Florida's approved section 404 program.  Codifying EPA's
Adjudicatory Decision on Florida's Clean Water Act Section 404 Program Request (Jan. 14,
2021), available at https://www.epa.gov/sites/production/files/2021-01/documents/pre-
publication_frn-_fl_404_codification_final_rule_.pdf ("Pre-Publication Notice").  At present,
EPA has not published that notice in the Federal Register.

### STANDARD OF REVIEW

"The party invoking federal jurisdiction bears the burden of establishing" standing "with
the manner and degree of evidence required at the successive stages of the litigation."  *Lujan v.
Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  On a motion for summary judgment, a plaintiff
"must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the
summary judgment motion will be taken to be true."  *Id.* at 561 (quoting Fed. R. Civ. P. 56(e)).

"[W]hen a party seeks review of agency action under the APA, the district judge sits as
an appellate tribunal" and the " 'entire case' on review is a question of law."  *Am. Bioscience,
Inc.*, 269 F.3d at 1083.  "Summary judgment . . . serves as the mechanism for deciding, as a

matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Innovator Enters., Inc. v. Jones*, 28 F. Supp. 3d 14, 20 (D.D.C. 2014). But the ordinary Rule 56 standard does not apply. *Louisiana v. Salazar*, 170 F. Supp. 3d 75, 83 (D.D.C. 2016). Instead, the APA provides the governing standard. Under it, agency action can be overturned only if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The scope of review" is "narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## ARGUMENT

Plaintiffs have standing to seek limited relief under Claim 8, but lack standing to bring Claim 9. In Claim 8, Plaintiffs contend that EPA violated the APA by making its approval of Florida's assumption request effective immediately, instead of waiting 30 days after publication of that approval, as required by 5 U.S.C. § 553(d). But under binding precedent, success on Claim 8 would only entitle Plaintiffs to remedies for injuries sustained before January 21, 2021. Such retrospective relief would redress only a subset of Plaintiffs' alleged injuries, most of which are threatened but have not yet occurred. In Claim 9, Plaintiffs argue that EPA violated a statutory obligation to codify its approval of Florida's program. But because Plaintiffs cannot establish that EPA's alleged failure to codify caused EPA to approve Florida's program, they cannot establish standing's causation requirement. The Court should therefore dismiss Claim 9 for lack of subject matter jurisdiction.

Assuming standing, Claims 8 and 9 fail on the merits. EPA properly acted on Florida's section 404 assumption request through informal adjudication and adjudicatory orders are neither subject to § 553(d)'s 30-day requirement, nor to any codification requirement. The Court should therefore deny Plaintiffs' motion for partial summary judgment and grant the United States' cross-motion for partial summary judgment.

I.      **Plaintiffs Have Limited Standing to Bring Claim 8.  Plaintiffs Lack Standing to Bring Claim 9.**

This Court, like all Article III courts, is one of limited jurisdiction.  It is "empowered to hear only 'cases or controversies.' "  *Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1156 (D.C. Cir. 2005) (quoting U.S. Const. art. III, § 2.).  A matter presents a justiciable case or controversy only where the litigants have standing.  *Id.* at 1157.

The "irreducible constitutional minimum" of standing has three elements.  *Lujan v. Defenders of Wildlife,* 504 U.S. at  560.  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

"Where plaintiffs allege injury resulting from violation of a *procedural* right afforded to them by statute and designed to protect their threatened concrete interest, the courts relax—while not wholly eliminating—the issues of imminence and redressability, but not the issues of injury in fact or causation."  *Ctr. for L. & Educ.*, 396 F.3d at 1157.

"Standing is not dispensed in gross.  Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.  *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks, citations, and alterations omitted).

Plaintiffs have moved for summary judgment on Claims 8 and 9, and our standing arguments here are addressed only to those claims.  For the reasons set forth below, binding precedent limits, but does not foreclose, Plaintiffs' standing to bring Claim 8.  Plaintiffs' standing to bring Claim 9, however, fails on causation grounds.

A.  **Plaintiffs' standing to bring Claim 8 is narrowly constrained by binding D.C. Circuit precedent.**

In Claim 8, Plaintiffs contend that they were denied their procedural right, under 5 U.S.C. § 553(d), to a 30-day period between the date on which EPA published notice that it had approved Florida's section 404 program, and the date on which that approval became effective. Dkt. 1 at 46 (Compl. ¶ 228).  According to Plaintiffs, that statutorily prescribed interval protects

their concrete interest in preparing for the consequences of EPA's approval of Florida's program *before* Florida began implementing that program. Dkt. 31 at 34–35.

We believe that the Court has jurisdiction to consider Claim 8. But Plaintiffs' claim to standing is tenuous because the remedies available for a violation of § 553(d) are extremely limited, and would not redress most of Plaintiffs' alleged injuries. This follows from the clear rule enunciated in *Prows v. Department of Justice*, 938 F.2d 274 (D.C. Cir. 1991), which Plaintiffs acknowledge in a footnote, Dkt. 31 at 50 n.10. There, the D.C. Circuit squarely held that violations of the APA's "requirement that an agency allow passage of 30 days between a final rule's publication and its effective date" are "remedied by denying such a rule effectiveness for the mandated 30 days, allowing it to take effect in full thereafter." *Prows*, 938 F.2d at 275. "This rule," the court explained, "protects those who are affected by agency action taken during the 30-day waiting period without disturbing later action that is not the product of the violation." *Id.* at 276.

Plaintiffs' problem is that nearly all of their alleged harms are from actions occurring more than 30 days after EPA's December 22, 2020 approval of Florida's program. This is certainly true of harms from yet-to-issue permits (*see, e.g.*, Dkt. 31-1 at 13–25 (Crooks Decl. ¶¶ 37–73)), from having to challenge those permits in State courts (*see, e.g.*, *id.* at 26–27 (Crooks Decl. ¶¶ 77–82)), and from the loss of NEPA and ESA processes (*see, e.g.*, *id.* at 25–26 (Crooks Decl. ¶¶ 74–77)). All of these injuries are predicated on Florida having issued individual section 404 permits—something it had not done as of mid-April, let alone late January. The only way to redress these prospective harms would be to vacate EPA's approval of Florida's program, which is exactly what Plaintiffs ask the Court to do. Dkt. 31 at 50–51. But *Prows* forecloses that outcome as a remedy for a violation of § 553(d). As the court explained, "[w]hile failure to comply with the notice and comment requirements of § 553(b) is fatal to the validity of the challenged rule, § 553(d)'s 30-day requirement calls for a different solution," namely a retroactive change in effective date. *Prows*, 938 F.2d at 276.

9

But we acknowledge that *Prows* seems to recognize the potential for remedy of injuries with their "roots" in the initial, disputed 30-day period. *Id.* Here, Plaintiffs also allege that they suffered concrete injuries between December 22, 2020, and January 21, 2021, when the Corps transferred section 404 permit applications to Florida. *See* Dkt. 31 at 42–43, 50–51. We do not dispute that those injuries were injuries-in-fact, that they were caused by "action during the 30-day waiting period," *Prows*, 938 F.2d at 276, and that Plaintiffs might seek a remedy for those harms notwithstanding the lack of available relief under Claim 8 for future injuries.[4] We therefore do not contest Plaintiffs' standing to seek some remedy for wholly past injuries associated with the alleged violation of § 553(d)'s 30-day requirement.

### B.  Plaintiffs have no procedural right to a stay under 5 U.S.C. § 705.

Plaintiffs are wrong, however, when they suggest that EPA's immediately effective approval of Florida's program also deprived them of a procedural right to seek a stay under 5 U.S.C. § 705. Dkt. 33–34. In fact, § 705 confers no such procedural right.[5]

Procedural rights "can loosen the strictures of the redressability prong of [the] standing inquiry" if they have "been accorded by Congress." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009); *see also Ctr. for L. & Educ.*, 396 F.3d at 1157 (describing procedural rights as "afforded . . . by statute"). So the question is whether Congress intended § 705 to confer a

---

[4] Consistent with the standard that courts use to review standing claims, we assume without conceding Plaintiffs' position on the merits, which is that EPA's approval of Florida's section 404 program was a legislative rule. *See Defenders of Wildlife v. Gutierrez*, 532 F.3d 913, 924 (D.C. Cir. 2008). It was not, for the reasons outlined in Part II.A, *infra*, but that is beside the point for present purposes.

[5] At times, Plaintiffs also appear to suggest that EPA's alleged violation of 5 U.S.C. § 553(d)'s 30-day requirement also deprived them of their right to petition EPA for reconsideration pursuant to § 553(e). *See, e.g.*, Dkt. 31 at 33–34. But interested parties can exercise their rights under § 553(e) before or after a rule's effective date, as is clear from that provision's allowance of petitions for "the issuance, amendment, or repeal" of a rule. Plaintiffs' right to seek reconsideration was thus unaffected by the immediate effective date of EPA's approval.

procedural right, the deprivation of which might support a claim for standing.  Consideration of plain text and statutory context show that it did not.

Section 705 provides, in relevant part, that "[w]hen an *agency* finds that justice so requires, *it may* postpone the effective date of [the] action taken by it, pending judicial review." 5 U.S.C. § 705 (emphasis added).  That is a permissive grant of agency authority and it affords agencies ample discretion in choosing whether to use the power conferred.  *See also* Senate Judiciary Committee Print, June 1945 at 38, *reprinted in* Administrative Procedure Act Legislative History (Comm. Print 1946) (explaining that the "first sentence" of the provision codified at 5 U.S.C. § 705 "merely confirms administrative authority to grant a stay") available at https://www.justice.gov/sites/default/files/jmd/legacy/2014/02/28/comprint-june-1945.pdf. Nowhere does § 705 explicitly confer a procedural right on non-agency actors.  Nor is there any basis to presume implicit congressional intent to create such a right, as Plaintiffs urge.  On the contrary, if Congress had actually intended to confer a procedural right under § 705, it would have bound agencies by imposing some kind of procedural requirement.  Elsewhere in the APA, Congress did just that.  It provided, for example, that "an agency *shall give interested persons an opportunity to participate*" in rulemakings, 5 U.S.C. § 553(c), "*shall give an interested person the right to petition* for the issuance, amendment, or repeal of a rule," *id.* § 553(e) (emphasis added), and "*shall give all interested parties* opportunity" to offer, among other things, "facts," and "arguments" at formal hearings, *id.* § 554(c)(1).  The absence of any such language in § 705 underscores what is plain enough on the face of that provision:  § 705 accords Plaintiffs no procedural right.[6]

_____

[6] A judge in the United States District Court for the District of Montana recently reached the opposite conclusion in *Environmental Defense Fund v. EPA*, No. 4:21-CV-03-BMM, 2021 WL 270246, at *5 (D. Mont. Jan. 27, 2021).  That non-binding opinion is unpersuasive, however, because it presumes the existence of a procedural right with no analysis of § 705's text.  *See id.*

Precedent affirms the basic intuition that procedural rights spring from procedural requirements, not from permissive grants of discretionary authority, like § 705.  Indeed, foundational decisions on procedural rights standing treat "procedural rights" and "procedural requirements" as opposite sides of the same coin.  For instance, in *Lujan*, the Supreme Court described NEPA as both conferring on the public a "procedural right" to an environmental impact statement, and as imposing on agencies, a "procedural requirement" to prepare such a statement.  504 U.S. at 572 & n.7.  And in *Florida Audubon Society v. Bentsen*, the D.C. Circuit sitting *en banc* held that "a procedural-rights plaintiff must . . . show . . . that the defendant's acts omitted some *procedural requirement.*"  94 F.3d 658, 664–65 (D.C. Cir. 1996) (emphasis added).  Because Plaintiffs can identify no procedural requirement in § 705, that provision cannot support their claim to procedural rights standing.

In sum, the relief available to Plaintiffs should they succeed on Claim 8 is constrained by the controlling holding in *Prows*, which forecloses the possibility of relief for prospective injuries based on § 553(d) violations.  Plaintiffs have standing to seek redress for harms that they sustained between December 22, 2020 and January 21, 2021, but, as to Claim 8, that is all.  Plaintiffs' appeal to 5 U.S.C. § 705 does nothing to alter this analysis because the APA grants Plaintiffs no absolute procedural right to petition the Agency for a stay.

### C.  Plaintiffs' standing to bring Claim 9 fails on causation grounds.

In Claim 9, Plaintiffs contend that EPA violated 44 U.S.C. § 1510(a) by, thus far, not codifying in the Code of Federal Regulations its approval of Florida's program.  Dkt. 1 at 47–48 (Compl. ¶¶ 241–47).  This too is a procedural rights claim.  Plaintiffs do not argue in their brief that they were directly harmed by a lack of codification.  And for good reason:  Florida's program is codified in the State Administrative Code, and EPA also made available through its public docket those State law provisions and any other information that it might yet codify.  *See* EPA-HQ-OW-2018-0640, available at https://www.regulations.gov/docket/EPA-HQ-OW-2018-0640.  Instead, Plaintiffs' alleged harms all flow from the substantive action (EPA's approval of

Florida's program) giving rise to the purported requirement to codify.[7] *See* Dkt. 31 at 48–49. Even assuming *arguendo* that all of Plaintiffs' purported harms are injuries-in-fact sufficient for standing, Claim 9 still fails because Plaintiffs cannot make out the second of standing's three elements:  "a causal connection" between its injury and "the conduct complained of." *Lujan*, 504 U.S. at 560.

In procedural rights cases there are "at least two links in an adequate causal chain between a procedural violation and injury-in-fact." *City of Waukesha v. EPA*, 320 F.3d 228, 234 (D.C. Cir. 2003) (internal quotation marks and alterations omitted).  To establish the first link, a plaintiff must connect "the omitted procedure to some substantive government decision that may have been wrongly decided because of the lack of the procedure." *Id.*  The second link requires a plaintiff to show that it has suffered or is likely to suffer "a particularized injury" that is "fairly traceable to the agency action that implicated the procedural requirement in question." *Id.*

Procedural rights cases usually concern an agency's alleged noncompliance with a requirement that exists to foster informed agency decision-making, so the first of these two links is usually not hard to make.  *See Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 5 (D.C. Cir. 2005) (describing the "archetypal procedural injury" as "an agency's failure to prepare a statutorily required environmental impact statement before taking action with potential adverse consequences to the environment").  But Claim 9 is not a typical procedural rights claim and Plaintiffs cannot establish that EPA's alleged failure to codify in any way caused or contributed to EPA incorrectly approving Florida's section 404 program.  Plaintiffs' problem is chronological:  EPA could not have codified (or failed to codify) its approval of Florida's program until after it granted that approval.  And codification, or the lack thereof, could not have impacted the decision that preceded it.  Without a causal nexus between alleged procedural

---

[7] In fact, there is no statutory right to codification because there is no statutory requirement that EPA codify its approval of Florida's program.  *See* Part II.B, *infra*.

violation and the underlying challenged action, Plaintiffs cannot demonstrate causation and so lack standing to bring Claim 9.  The Court should therefore dismiss that claim for lack of subject matter jurisdiction.

## II.     If Plaintiffs Have Standing, the Court Should Enter Summary Judgment for the United States on Claims 8 and 9.

If Plaintiffs have standing, their central argument—that EPA could only approve Florida's section 404 program by issuing a rule—fails on the merits.  EPA properly approved Florida's section 404 assumption request by adjudicatory order.  Orders are not subject to 5 U.S.C. § 553(d)'s requirement of a 30-day period between publication and effective date, nor are they subject to any codification requirement.  And Plaintiffs cite no authority for the position that an agency action, whether rule or order, is ineffective until it is codified.  Claims 8 and 9 therefore fail.

### A.   EPA properly acted on Florida's section 404 assumption request by adjudicatory order.

In APA cases like this one, courts proceed "against a background understanding" that agencies can and do "perform their administrative functions" by issuing both orders and rules. *Neustar, Inc.*, 857 F.3d at 893.  "This maxim of administrative law permits an agency to develop a body of regulatory law and policy either through case-by-case decisionmaking (a quasi-adjudicative process) or through rulemaking (a quasi-legislative process)." *Id.* (internal quotation marks omitted).  Absent a specific statutory mandate to the contrary, agencies have "very broad discretion to decide whether to proceed by adjudication or rulemaking." *Id.* (internal quotation marks omitted).

Two guiding principles help to sketch the outer limits of that discretion by defining the essential characteristics of rules, which must be issued by rulemaking, and orders, which may be issued by adjudication.  "First, most legislative rules are generally applicable," that is, they apply "generalized standards" or "principles" "to an open class." *Safari Club Int'l v. Zinke*, 878 F.3d 316, 332 (D.C. Cir. 2017) (internal quotations and alterations omitted).  Adjudicatory orders, by contrast, entail "case-specific individual determinations" affecting "particular" parties. *Id.* at

14

332–33 (internal quotations and alterations omitted).  "Second, rules generally have only future effect while adjudications immediately bind parties by retroactively applying law to their past actions."  *Id.* at 333.

"While the line dividing" rulemaking and adjudication "may not always be a bright one," *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245 (1973), EPA's approval of Florida's section 404 assumption request clearly falls on the adjudication side of that "sometimes-fuzzy" boundary, *Nat'l Biodiesel Bd. v. EPA*, 843 F.3d 1010, 1017 (D.C. Cir. 2016).

### 1.  EPA's action by adjudicatory order was consistent with governing statutes and regulations.

As an initial matter, EPA's approval by adjudicatory order was entirely consistent with the APA, CWA, and EPA's own regulations, none of which required EPA to approve Florida's assumption request by rule.  *Cf. Neustar*, 857 F.3d at 893 ("agencies may use informal adjudication when they are not statutorily required" to proceed by rulemaking or formal adjudication).

The APA authorizes agencies to issue "orders" that grant "licenses."  5 U.S.C. § 551(6), (7), and (9).  A "license," in turn, "includes the whole or a part of an agency permit, certificate, *approval*, . . . or other form of permission."  *Id.* § 551(8) (emphasis added).  That expansive definition expressly encompasses EPA's action here, which was, in form and substance, an "Approval of Florida's Clean Water Act Section 404 Assumption Request."  85 Fed. Reg. at 83,553; *see also* 33 U.S.C. § 1344(h) (setting forth procedures to guide EPA's "approval" of State section 404 programs).

The CWA also allows—even favors—the kind of immediately effective adjudicatory order that EPA issued here.  Under 33 U.S.C. § 1344(h)(2)(A), if the EPA Administrator approves a State's section 404 assumption request, he must notify the State and the Secretary of the Army.  The State can then assume permitting authority simply by providing "notification" to the Secretary "that it is administering" the section 404 program.  There is no mention here of a delay in the effective date of EPA's approval, and so the most natural reading of the CWA's text

is that EPA's approval can take effect immediately.  The process by which EPA approved Florida's assumption request was thus entirely consistent with the process envisioned by Congress.

EPA's longstanding regulations implementing § 1344(h) also countenance the procedures that EPA followed in approving Florida's request.  Under 40 C.F.R. § 233.15(h), "[t]ransfer of the [section 404] program to the State shall not be considered effective until such notice appears in the Federal Register."  Though couched as a prohibition, the provision's strong positive implication is that once notice appears in the Federal Register, the transfer of the program to the State can be considered effective.  Section 233.15(h)'s next sentence underscores this common-sense interpretation.  It provides that the "Secretary shall suspend the issuance" of "section 404 permits in State regulated waters on such effective date."  *Id.* (emphasis added).  The only plausible meaning of "such effective date" is the date of notice in the Federal Register, which in this case was December 22, 2020.

Plaintiffs offer a reading of the CWA from which they conclude that "[n]othing . . . prohibits EPA" from issuing approvals by rulemaking subject to 5 U.S.C. § 553(d)'s 30-day requirement.  Dkt. 31 at 30–31.  This misses the point.  Whether or not EPA might have proceeded by rulemaking, nothing in statute or regulation required that it do so.  So nothing disturbs the "background understanding" that EPA enjoyed "very broad discretion" to approve Florida's assumption request by order or by rule.  *Neustar*, 857 F.3d at 893.

### 2.  EPA's approval of Florida's assumption request bears the hallmarks of adjudicative decisionmaking.

In choosing to issue an order, EPA acted well within the permissible scope of adjudicatory action as defined by precedent.  EPA's approval concerned a "particular" entity— the State of Florida—not an "open class."  *Safari Club*, 878 F.3d at 332.  That action, moreover, was based on EPA's "highly fact-specific" review of the section 404 assumption request before it.  *Neustar*, 857 F.3d at 893.  For instance, among many other things, the Agency considered: the geographic scope of, and the activities regulated under, Florida's proposed program (EPA-

16

HQ-OW-2018-0640-0007, EPA-HQ-OW-2018-0640-0007-A1); the anticipated workload of, and the resources allocated for, implementing the program (EPA-HQ-OW-2018-0640-0011, EPA-HQ-OW-2018-0640-0010); and the specific content of State laws that would govern Florida's administration of the program (EPA-HQ-OW-2018-0640-0002-A5–0002-A54).  And in weighing the unique facts of Florida's proposed program, EPA applied existing criteria set forth in statute (33 U.S.C. § 1344(h)(1)) and regulation (40 C.F.R. §§ 233.10–.14) to reach its ultimate decision.  EPA's approval, in short, reflected precisely the sort of "case-by-case" review that the D.C. Circuit has found time and again to present "a straight forward instance of adjudication." *Nat'l Biodiesel Bd.*, 843 F.3d at 1018; *see also Neustar*, 857 F.3d at 895 (upholding FCC's authority to proceed by adjudication where the agency applied "existing rules and regulations" and rendered a "fact-intensive determination").

　　　　To be sure, EPA's approval has prospective effect in that Florida will now administer the section 404 program for waters within its jurisdiction.  But the "fact that an order rendered in an adjudication may affect agency policy and have general prospective application, does not make it rulemaking subject to APA section 553."  *Neustar*, 857 F.3d at 894 (internal quotation marks omitted); *see also N.L.R.B. v. Bell Aerospace Co.*, 416 U.S. 267, 292 (1974) ("*Bell Aerospace*") (rejecting the contention that an agency would be "required to resort . . . to its rulemaking procedures if it desired to promulgate a new standard that would govern future conduct").  Plaintiffs' argument to the contrary (Dkt. 31 at 28) "proves far too much.  Various agencies regularly make licensure and authorization decisions of various sorts that," like EPA's approval action, "affect the future rights of the parties before them.  None of our precedents," the D.C. Circuit noted, "require that these must all be done by rulemaking rather than informal adjudication."  *Neustar*, 857 F.3d at 894.  Rather, as the court suggested in *Safari Club*, an action is retroactive and thus adjudicatory in nature if it "result[s] in . . . immediate legal consequences for any specific parties."  878 F.3d at 333–34.  EPA's approval of Florida's assumption request easily satisfies that condition.

The case-specific, fact-bound nature of EPA's approval materially distinguishes this case from both *Safari Club*, 878 F.3d at 334, and *National Association of Home Builders v. United States Army Corps of Engineers*, 417 F.3d 1272, 1284 (D.C. Cir. 2005) ("*Home Builders*"), on which Plaintiffs rely (Dkt. 31 at 28–29).  *Home Builders* concerned the Corps' promulgation of "general" section 404 permits that provided blanket authorization for certain "categories" of discharge, such as the incidental discharge of dredge and fill material into less than a quarter-acre of wetlands during construction of single-family homes.  417 F.3d at 1275–76.  In *Safari Club*, the challenged agency action was an import ban on certain hunting trophies.  878 F.3d at 333. Neither the general permits in *Home Builders* nor the import ban in *Safari Club* applied to particular parties; the former governed open classes, of, *inter alia*, real estate developers, while the latter applied to an open class of game hunters.  As such, the general permits and import ban were "legal prescription[s] of general and prospective applicability" that the court deemed rules. *Home Builders*, 417 F.3d at 1284; *see also Safari Club*, 878 F.3d at 334 (describing the challenged action as "simply establish[ing] a standard binding on the agency . . . to be applied to future requests to import certain" trophies).  The actions were not, as the *Safari Club* court stressed, "highly particularized" approvals applicable to "one entity."  878 F.3d at 334.  EPA's review and approval of Florida's assumption request was precisely that.  The analysis in *Home Builders* and *Safari Club* is therefore inapposite and Plaintiffs' reliance on those cases is misplaced.

### 3. The "force of law" test does not distinguish rules from orders.

Trying a different tack, Plaintiffs argue that EPA's approval of Florida's section 404 program must have been a rule because it had "binding effects on private parties or on the agency" and thus had the "force of law."  Dkt. 31 at 19 (quoting *General Motors, Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004)); *see also id.* at 19–27.  This is a red herring.

Orders, no less than legislative rules, have binding legal effects.  Consider, for example, an individual section 404 permit that was issued in response to a specific request and that authorizes specific activities, in specific locations, by specific actors, in a specific timeframe.

18

Plaintiffs would presumably agree that such a permit could be issued by case-specific adjudication, rather than by generally-applicable rulemaking.  And yet the issuance of an individual section 404 permit "affects the rights and obligations of permit applicants," Dkt. 31 at 20, who can now discharge pollutants into waters of the United States, notwithstanding the CWA's general prohibition on such discharges, 33 U.S.C. § 1311(a).  Relatedly, the issuance of a section 404 permit also "affects the rights and obligations" of "concerned citizens, environmental nonprofits, community organizations, federally recognized tribes, and state and federal agencies," Dkt. 31 at 20, any one of which might have sued to enjoin the discharges described in the permit, but for the issuance of the permit itself, *see* 33 U.S.C. § 1365(f)(1) (providing for citizen suit); *see also* 33 U.S.C. § 1319(b) and 28 U.S.C. § 1345 (providing for federal enforcement).  The upshot is that an individual section 404 permit has the "force of law," as Plaintiffs define it, even though it assuredly need not be issued by rulemaking.

The three cases on which Plaintiffs rely for their "force of law" argument—*General Motors, Corp.*, 363 F.3d at 448, *Community Nutrition Institute v. Young*, 818 F.2d 943 (D.C. Cir. 1987), and *National Association of Home Health Agencies v. Schweiker*, 690 F.2d 932 (D.C. Cir. 1982)—simply have no bearing here.  None of those cases sorted adjudications from rulemakings.  Rather, all involved inquiries into whether certain agency statements were substantive rules, or were non-binding procedural rules, interpretative rules, or guidance documents.  *See Gen. Motors Corp.*, 363 F.3d at 448, 450 (guidance); *Cmty. Nutrition Inst.*, 818 F.2d at 945 (D.C. Cir. 1987) (interpretative rule); *Nat'l Ass'n of Home Health Agencies*, 690 F.2d at 948–49 (procedural rule).  In deciding those issues, the D.C. Circuit looked to whether the statements before them "trench[ed] on substantive rights and interests." *Nat'l Ass'n of Home Health Agencies*, 690 F.2d at 949; *accord Gen. Motors Corp.*, 363 F.3d at 450; *Cmty. Nutrition Inst.*, 818 F.2d at 948.  Answering that question reveals nothing about whether an action is appropriately classified as a rule or an order.  The presence or absence of binding legal effects

might distinguish guidance documents, procedural rules, and interpretative rules, from legislative rules; but an order without binding legal effects is no order at all—it is just a request.

The issue here is not whether EPA's approval had the force of law; rather, the issue is whether EPA appropriately issued that approval by adjudicatory order.  It clearly did.  Florida's assumption request rested on a unique set of facts.  It thus presented a matter "so specialized and varying in nature as to be impossible of capture within the boundaries of a general rule" applicable to an open class beyond Florida itself.  *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947).  In such situations, courts have long recognized that agencies "must retain power" to proceed by adjudication "on a case-by-case" basis, as EPA did here.  *Id.*

### 4.  EPA's action of Florida's assumption request was consistent with past practice, though past practice is not determinative.

Finally, Plaintiffs contend that EPA's approval of Florida's assumption request must have been a rule because EPA approved Michigan's and New Jersey's requests by rulemaking, not adjudication.  This argument is highly dubious on the facts and wrong on the law.  EPA's past section 404 approvals were, by most indications, orders.  And even if they had been rules, that alone would not preclude EPA from approving Florida's assumption request by adjudication rather than rulemaking.

In Plaintiffs' view, EPA's decisions to codify its approvals of Michigan's and New Jersey's assumption requests prove that EPA understood those approvals to be rules, not orders.  This assumes too much.  When EPA announced its plan to codify its approval of Florida's assumption request, the Agency explained that it was merely memorializing an adjudicatory decision.  Pre-Publication Notice at 3–4.[8]  Plaintiffs offer no reason to believe that EPA's decisions to codify its 1984 or 1994 approvals reflected a different understanding.

---

[8] EPA declared its intent to codify Florida's approval by "final rule."   Pre-Publication Notice at 1.  But it did so not because it viewed its prior approval to be a rule, but rather because the Office of the Federal Register requires that all amendments to the Code of Federal Regulations be made by rule.  *See id.* at 4–5; *see also* 1 C.F.R. § 5.9(b), (c).

Indeed, the weight of evidence strongly suggests that EPA understood both of its prior approvals to be orders, not rules.  As with Florida's request, EPA's approvals of both Michigan's and New Jersey's assumption requests took effect fewer than 30 days after publication.  *See* 49 Fed. Reg. at 38,947 (Michigan approval effective 14 days after publication); 59 Fed. Reg. at 9933 (New Jersey approval effective as of publication).  Yet in neither case did EPA invoke one of the statutory exceptions at 5 U.S.C. § 553(d)(1)–(3) that allow rules to take effect in fewer than 30 days.  The clear inference is that, as with its action on Florida's request, EPA did not need to invoke an exception because it did not issue its approvals by rulemaking.

Plaintiffs argue otherwise, pointing to passages in the New Jersey and Michigan approval notices where they say that EPA "expressly claim[ed]" an "exception" from the 30-day requirement.  Dkt. 31 at 24.  But neither of the cited passages actually mentions such an exception, so they are at most, implied, not express, claims.  And there is no reason to believe that an agency would invoke § 553(d)(1)–(3) by implication.  Quite the opposite:  because deviations from § 553(d)'s 30-day rule might give rise to legal challenge, an agency issuing an immediately effective rule has a strong incentive to clearly invoke an exception to the 30-day requirement.  To see this in practice, one need look no further than the October 2, 1984 Federal Register containing the notice of the Michigan approval.  In another notice in that issue, FDA announced a final rule effective immediately, noted that it was doing so "in accordance with 5 U.S.C. 553(d)(1) and (3)," and then explained why those exemptions were applicable.  49 Fed. Reg. at 38,947.  To take another example, in 1994, the same year that it approved New Jersey's assumption request, EPA issued an unrelated final rule with an immediate effective date and expressly noted that its action was "permitted by section 553(d)," namely the § 553(d)(3), exception available "when the Agency finds good cause and  publishes it with the rule."  59 Fed. Reg. 677, 678 (Jan. 6, 1994).  Against this backdrop, Plaintiffs' attempt to conjure implied invocations of § 553(d)(1)–(3) is unavailing.  EPA's approvals of Michigan's and New Jersey's

assumption requests did not conform to the 30-day requirement applicable to rules because those approvals were orders, not rules.

That conclusion draws support from EPA's treatment of State requests for NPDES permitting authorization pursuant to CWA section 402.  EPA has consistently maintained that its "determination to approve or deny" a section 402 authorization request "constitute[s] an adjudication," a position that traces all the way back to a 1978 opinion from EPA's Office of General Counsel.  66 Fed. Reg. 12,791, 12,795 (Feb. 28, 2001).  Plaintiffs summarily dismiss this fact as irrelevant, but it is hard to see why.  Dkt. 31 at 26.  Though not identical, EPA's review of section 402 authorization requests and 404 assumption requests is the same in every way that matters for purposes of classifying adjudications and rulemakings.  When it receives an authorization or assumption request under section 402 or 404, respectively, EPA undertakes a case-specific assessment of the proposed State program using evaluative criteria set forth in statute; EPA's decisions pursuant to section 402 or 404 apply to the requesting State only; and its approval of a State request under either section 402 or 404 transfers primary regulatory authority from the federal government to the requesting State.  *Compare* 33 U.S.C. § 1342(b) and (c) *with id.* § 1344(g) and (h).  There is no reason why EPA would handle section 402 authorization requests through adjudications, but section 404 assumption requests through rulemakings.

Dicta from the Seventh Circuit is weak support for Plaintiffs' contrary position.  As Plaintiffs note, one member of the panel in *Menominee Indian Tribe of Wisconsin v. EPA* opined in a concurrence that "EPA's 1984 approval of Michigan's Section 404 permit program bore the hallmarks of a legislative rule," in part because it was "was promulgated after public notice and comment."  947 F.3d 1065, 1074 (7th Cir. 2020) (Hamilton, J., concurring).  But the issue of whether EPA's approval was an order or rule was not briefed, was not argued, and did not determine the outcome in that case.  Rather, the question before the court was whether certain agency letters were reviewable final agency actions and whether EPA's decision to withdraw the

objections it raised in those letters was committed to agency discretion by law. *Id.* at 1070–73.[9]
The concurring opinion's reliance on notice and comment procedures is also misplaced because
an "agency may seek comment in either a rulemaking or an adjudicatory proceeding," so
allowance for public comment "is not determinative of whether an action qualifies as a
rulemaking or an informal adjudication." *Neustar*, 857 F.3d at 895 (internal quotation marks
omitted).

In any case, "past practice" is also "not determinative" of whether a given action
constitutes a rulemaking or an informal adjudication. *Id.* at 893. So it ultimately does not matter
whether EPA proceeded by adjudication 27 or 37 years ago. What matters is that EPA
proceeded by adjudication in 2020 and that its choice to do so was consistent with statute,
regulation, and precedent. Nothing more is required. EPA's determination that "adjudication
best serve[d] [its] purpose is entitled to great weight," *Bell Aerospace*, 416 U.S. at 294, and the
Court should enter summary judgment for the United States on Claim 8.

**B.  EPA's approval did not need to be codified before going into effect.**

In Claim 9, Plaintiffs argue that because EPA approved Florida's assumption request by
rule, that approval could not take effect until EPA published notice of its intent to codify its
approval. Both premises are flawed.

_____

[9] As Plaintiffs note, EPA stated in its brief opposing rehearing in *Menominee* that a party seeking
a modification to the boundaries of retained waters could petition for rulemaking pursuant to 5
U.S.C. § 553(e). Dkt. 31 at 26. We do not abandon that position here. The codified provisions
of a State section 404 program—including the limits of retained waters—are subject to
rulemaking petitions because rulemaking is the sole mechanism for modifying provisions in the
Code of Federal Regulations. *See* 1 C.F.R. § 5.9(b), (c). It does not follow, however, that EPA
must approve State assumption requests by rule in the first instance. Indeed, EPA can only
withdraw its approval of a State program by following the *adjudicatory* procedures set forth at
33 U.S.C. § 1344(i) and 40 C.F.R. § 233.53(c)(1)–(8). There would be no sense in imposing on
EPA a requirement to implement by rulemaking something that it could only undo by
adjudication.

For the reasons noted above, EPA's approval was not a rule, it was an order. Plaintiffs cite no statute or regulation requiring that orders, or more specifically, orders approving assumption requests, must be codified in the Code of Federal Regulations before taking effect.

More still, Plaintiffs identify no statute, regulation, or decision requiring that *rules* be codified before taking effect. Their codification argument appears to rest on 44 U.S.C. § 1510(a). Dkt. 1 at 47 (Compl. ¶ 241). But that provision merely states that the "Administrative Committee of the Federal Register, with the approval of the President, may require, from time to time as it considers necessary," publication of the documents "relied upon," "invoked," or "used by" federal agencies. 44 U.S.C. § 1510(a). It certainly does not say that an "agency must codify final rules in the Code of Federal Regulations" before those rules can take effect. Dkt. 31 at 29. *Simmons v. ICC*, 757 F.2d 296 (D.C. Cir. 1985) does not say that either. The footnote from *Simmon*s that Plaintiffs cite states only that the FCC was required to codify documents having general applicability and legal effect, not that codification was a condition precedent to those documents having legal effect. *Simmons*, 757 F.2d at 300 n.2. That statement, moreover, was dicta, since the outcome of the case in no way depended on FCC's decision not to codify its earlier policy statement. *See Simmons*, 757 F.2d at 299–300. The other case on which Plaintiffs rely, *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533 (D.C. Cir. 1986), does even less to support their argument. The section cited by Plaintiffs simply says that the Code of Federal Regulations contains documents having general applicability and legal effect, not that a document's legal effect begins when it is codified in the Code of Federal Regulations. *Brock*, 796 F.2d at 539.

Claim 9, in short, is wholly unsupported and should therefore be rejected.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Claim 9 for lack of subject matter jurisdiction. As to Claim 8 (and Claim 9, should the Court reach the merits) the Court should deny Plaintiffs' partial motion for summary judgment and grant the United States' cross-motion for partial summary judgment.

Respectfully Submitted,

Dated: April 26, 2021

Jean E. Williams
Acting Assistant Attorney General

/s/Andrew S. Coghlan
Andrew S. Coghlan (CA Bar. 313332)
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-2191
Fax: (202) 514-8865
Email: andrew.coghlan@usdoj.gov

Alison Finnegan (PA Bar. 88519)
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: 202-305-0500
Email: Alison.C.Finnegan@usdoj.gov

*Attorneys for Defendants*

25

**Certificate of Service**

I certify that on April 26, 2021, I filed the foregoing with the Court's CMS/ECF system, which will notify each party.

/s/Andrew S. Coghlan
ANDREW S. COGHLAN