1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
2

3    CENTER FOR BIOLOGICAL
     DIVERSITY, et al.,                      Civil Action
4                                            No. 1:21-cv-0119
                  Plaintiffs,
5                                            Washington, DC
           vs.                               February 17, 2021
6
     ANDREW WHEELER, et al.,                 3:30 p.m.
7
                  Defendants.
8    _____/

9

10        TRANSCRIPT OF TELEPHONIC PRE-MOTION CONFERENCE
            BEFORE THE HONORABLE RANDOLPH D. MOSS
11               UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   For the Plaintiffs:    CHRISTINA REICHERT
                            TANIA GALLONI
15                          BONNIE MALLOY
                              Earthjustice
16                            4500 Biscayne Blvd, Suite 201
                              Miami, FL 33137
17

18

     For the Defendants:    ANDREW COGHLAN
19                          ALISON FINNEGAN
                              U.S. Department of Justice
20                            ENRD
                              150 M Street, NE
21                            Washington, DC 20002

22

     Court Reporter:        JEFF M. HOOK
23                            Official Court Reporter
                              U.S. District & Bankruptcy Courts
24                            333 Constitution Avenue, NW
                              Room 4700-C
25                            Washington, DC 20001

1    **APPEARANCES CONTINUED:**

2    **For Intervenor State**     **JEFFREY WOOD**
     **of Florida:**                Baker Botts, LLP
3                                   700 K Street, NW
                                    Washington, DC 20001
4

5                                 **LILY CHIN**
                                    Baker Botts, LLP
6                                   101 California Street, Suite 3600
                                    San Francisco, CA 94111
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  This is civil action 21-119, Center

3     for Biological Diversity, et al., versus Andrew Wheeler, et

4     al.  Appearing for plaintiffs, Tania Galloni, Bonnie Malloy

5     and Christina Reichert.  Appearing for defendants, Andrew

6     Coghlan and Alison Finnegan.  Appearing for intervenor

7     defendants, Lily Chin and Jeffrey Wood.

8          **THE COURT:**  Well, thank you everyone for joining

9     the call.  Before we get started, I wanted to remind

10    everybody that under the Court's rules and the Chief Judge's

11    standing order, it's not permitted to record or to

12    rebroadcast today's proceedings, and I'm going to direct

13    that nobody do so.  I'll ask that everyone mute your

14    microphones when you're not speaking so we don't get

15    feedback, please speak into the handset when it is your turn

16    to speak so we can hear you clearly, and introduce yourself

17    by name each time you speak so we have a clear record.

18          I have reviewed the parties' pre-motion

19    submissions which were helpful, and I appreciate that.  I'm

20    happy to hear more from the parties now.  The questions that

21    leap to my mind are the following.  First, does it make

22    sense to bifurcate -- or perhaps more than bifurcate,

23    proceedings in this case and potentially have multiple

24    rounds of summary judgment or motion to dismiss briefing or

25    does it make instead to do it all at once.  Two, where do we

1    stand with respect to the administrative record and getting

2    the administrative record certified and filed.  And three,

3    is this the type of administrative decision that is

4    potentially under review by a new administration, and is

5    there any prospect that we could see some further agency

6    action that could affect this case.  I'm happy to hear

7    anything else you would like to address, but those are the

8    questions that leap to mind for me.

9         Who's speaking on behalf of plaintiffs today?

10        **MS. REICHERT:**  Hello, your Honor.  This is

11   Christina Reichert speaking on behalf of the plaintiffs.

12        **THE COURT:**  All right.  Well, you can go ahead and

13   address those questions, and anything else you want to bring

14   up.

15        **MS. REICHERT:**  Thank you, your Honor.  On your

16   first question on bifurcating this issue from the remaining

17   merits of this case, this motion deals with threshold

18   procedural issues that implicate immediate rights of the

19   plaintiff to seek a stay pending judicial review.  It's more

20   appropriate to deal with them now while judicial review is

21   pending, and that's why we have submitted this as a partial

22   motion for summary judgment.  It's also appropriate, because

23   as the Government has agreed, this is a strictly legal issue

24   and does not require access to the administrative record.

25        And I'm happy to continue on the second question

1    regarding the administrative record.

2              THE COURT:  I'm sorry, just to pause there for a

3    minute.  I guess I can understand that it may not require

4    the full administrative record, but I would think that there

5    has to be some administrative record in the case, including

6    just the decision that was rendered; and perhaps what the

7    requests were; and whether comments were submitted; and

8    whether there was in fact opportunity to be heard, you know,

9    things like that.  I would think that there has to be some

10   record in the case.  I can't decide issues of law without a

11   record.

12             MR. COGHLAN:  Your Honor?

13             THE COURT:  Yes.

14             MR. COGHLAN:  Your Honor, this is Andrew Coghlan

15   for the federal defendants.  I just want to clarify one

16   point based on what Ms. Reichert says.

17             THE COURT:  Please.

18             MR. COGHLAN:  We don't concede that resolution of

19   this motion for summary judgment is appropriate without an

20   administrative record.  We agree that this is a matter

21   that's amenable to resolution at the summary judgment phase,

22   because we don't think that there are going to be disputes

23   of fact here.  And in that respect, we think that there's a

24   pure issue of law for the Court to resolve.  But we think

25   there's still got to be some facts to which that law is

1    applied.  And those facts and a record review case like this

2    are going to be found in the administrative record.  So we

3    think that for resolution of these claims, at least EPA's

4    record should be lodged.

5          THE COURT:  Well, while you're speaking, let me

6    ask you then when you could do that?

7          MR. COGHLAN:  Well, your Honor, for EPA, EPA's

8    prepared to file its record pretty shortly.  I think we

9    could probably get that lodged -- the certification and the

10   index lodged with the Court by the end of the week.  But

11   there are two other federal agencies here, the Army Corps of

12   Engineers and Fish and Wildlife Service, and they are not

13   going to be prepared to file their records at that point.

14   They'll likely need the full time allotted under the Federal

15   Rules and the local rules to prepare their records.

16         THE COURT:  Are there records pertinent to the

17   proposed motion that plaintiff would like to file?

18         MR. COGHLAN:  Just EPA's record, your Honor.

19         THE COURT:  Okay.  So then from your perspective,

20   at least as to just the record issues -- and you may still

21   think it's not a wise idea to proceed this way, but that we

22   could proceed this way by getting the record on file

23   promptly and dealing with issues only relating to EPA so we

24   don't have to worry about the Army Corps or Fish and

25   Wildlife at this moment.

1      **MR. COGHLAN:**  Correct, your Honor.  And I have one

2   qualification I'd make to what I said before.  I think we'd

3   be prepared to file with the Court and with the plaintiffs

4   the certified index and the certification.  The short

5   strokes of serving a record on the plaintiff might require a

6   couple more days, but I think we can probably work that out

7   offline and it shouldn't slow us down that much.  But we

8   could certainly have the index and the certification lodged

9   I think by the end of the week.

10      **THE COURT:**  That's very helpful, thank you.

11   Ms. Reichert, back to you.

12      **MS. REICHERT:**  Thank you, your Honor.  And we look

13   forward to hearing from the Government on producing that

14   record, if the Court would like us to include citations to

15   the record for a motion.  On the third question you asked, I

16   don't know the answer, whether it's the type of

17   administrative decision that's under review by the Biden

18   administration.  However, I would like to take this

19   opportunity to address some of the issues that were raised

20   by the Government and Florida in their response to our

21   notice, unless you'd like to get those answers from the

22   Government right now.

23      **THE COURT:**  No, go ahead, that's fine.

24      **MS. REICHERT:**  Okay.  So the Government and

25   Florida have cited EPA's practice for a different Clean

1 Water Act program under a different section of the statute

2 to claim that this action was an informal adjudication.

3 However, we would like to note that the relevant practice is

4 what EPA's done for every other State 404 Program approval

5 it has done in the past.  And for those, EPA has treated

6 them as rules, codified the state programs; and for the

7 other states, invoked an exception to the APA's effective

8 requirement.  However, here EPA is claiming that its action

9 was an adjudication, and they did not invoke an exception to

10 the 30-day requirement.

11         Although EPA says it has discretion to decide

12 whether to proceed by rule or adjudication, it is the

13 Court's decision on whether an agency action is a rule.  And

14 courts in this circuit look to the form and effect of an

15 agency's action to determine whether it is a rule.  If the

16 action has the force of law, that action is a substantive

17 rulemaking subject to the requirements of the APA and the

18 delay in effective date.  And the rule must be codified in

19 accordance with the Federal Register Act.  The Government

20 and Florida also have signaled that they will contest

21 plaintiffs' standing, but they have not said exactly on what

22 basis they'll do so.  So I'll address that shortly.

23         Plaintiffs do have standing.  They're conservation

24 organizations that were foreclosed from exercising their

25 procedural right to request an agency stay pending judicial

1    review.   The APA provision that authorizes agency stays only

2    allows an agency to consider one before the effective date

3    has passed.   Having been denied that right, the plaintiffs

4    and their members now face the harms of the unlawful state

5    program itself.   The state is already operating the program

6    and is considering permits, including those for major

7    development projects and a proposal to drill for oil in a

8    national park.   These permits would fill hundreds of acres

9    of wetlands that serve as habitat for the critically

10   endangered Florida panther, and are valuable for other

11   species such as the West Indies manatee and several sea

12   turtle species.

13        The Government has claimed that this motion is

14   premature, but has -- and Florida has suggested that our

15   claims are both premature and moot.   However, as I said,

16   this motion deals with threshold issues about our

17   plaintiffs' ability to seek a stay.   And the claims are not

18   moot merely because 30 days have passed since the EPA

19   published its approval notice.   The approval has not been

20   codified.   And even the pre-publication notice that EPA has

21   posted to its website has been languishing for over a month.

22        Regarding the 30 days, we're not aware of any rule

23   that would require plaintiffs to rush into court

24   immediately, request that the court act quickly and before

25   the 30 days have elapsed, and with enough time for the

1    agency to consider a stay request.  This circuit does follow

2    a general principle that a court can give effect to a rule

3    30 days after promulgation, but the case that adopted that

4    rule involved a plaintiff who was harmed after the 30-day

5    period.  And those harms were not related to anything that

6    happened during the 30-day period.  The court explicitly

7    relied on those facts to find that his claim was moot.  That

8    situation --

9         **THE COURT:**  Can I interrupt just for a second

10   here, I'm just trying to get a sense of what's going on as a

11   practical matter here.  If the Trump administration in your

12   view sort of was rushing to get this rule or determination

13   out the door and wanted to be able to, to the extent

14   possible, lock in the Biden administration, then it seems

15   improbable -- and perhaps improbable to the extent of

16   implicating the harmless error rule, that the EPA would have

17   during the Trump administration issued a stay of its own

18   rule.

19        But perhaps what you're saying -- and I'm just

20   trying to figure out what's going on here.  But perhaps what

21   you're saying is that if the rule came out in mid -- or the

22   determination was made in mid December, and at least 30 days

23   were needed for an effective date, that might have carried

24   over perhaps into the Biden administration.  And perhaps the

25   Biden administration would have stayed the effectiveness of

1    the rule long enough for a new administration to consider

2    the rule.

3                    As a practical matter, is that what's going on

4    here?

5            **MS. REICHERT:**  Yes, your Honor.  If EPA had given

6    the proper 30-day delay in effective date, the rule would

7    not have become effective until after inauguration.  And it

8    also may have been subject to the White House memo that

9    stays effective dates for all rules while the agency would

10   consider it after the administration changes over.

11           **THE COURT:**  Is there a difference in how the

12   Congressional Review Act applies to an adjudication versus a

13   notice and comment rule?

14           **MS. REICHERT:**  That's a good question, your Honor.

15   I'm not aware of how exactly the Congressional Review Act

16   would apply to an adjudication.  However, it's unclear

17   whether this situation would be an appropriate circumstance

18   to invoke that mechanism because of the implications of

19   granting -- of ordering that a rule not be promulgated in

20   any substantially similar way in the future.  I believe

21   that's the outcome of that action.

22           **THE COURT:**  And I think I -- off the top of my

23   head, I think my recollection is that the Congressional

24   Review Act also only applies to rules that have a hundred

25   million dollar or greater impact, and so perhaps this isn't

1    that type of rule.

2        I interrupted you, Ms. Reichert.  You're welcome

3    to continue with anything else you wanted to add.

4        **MS. REICHERT:**  That's perfectly all right, your

5    Honor.  And I was concluding at that point as well, so I'm

6    happy to relinquish the floor and answer any other questions

7    you may have.

8        **THE COURT:**  Let me hear then from Mr. Coghlan, and

9    then from either Mr. Chin or Mr. Wood.  So Mr. Coghlan.

10       **MR. COGHLAN:**  Thank you, your Honor.  I think

11   we've discussed the administrative record issue, so let me

12   proceed if I could to the third question you raised, which

13   is --

14       **THE COURT:**  And just before you move on to that, I

15   do want to say that I appreciate your accommodating the

16   plaintiffs with respect to the administrative record.  I

17   just wanted to put that on the record.  But go on, thank

18   you.

19       **MR. COGHLAN:**  Thank you, your Honor.  So this

20   action, as all actions of the previous administration, is

21   under review at EPA.  I don't have any information that I

22   can share with the Court about what the outcome of that

23   review will be one way or the other.  All I can say is that

24   everything is being looked at by the new leadership.  The

25   staff is briefing them up on all of the actions that were

1    undertaken in the previous administration, and that includes

2    this one.

3             **THE COURT:**  Do you know whether this is the sort

4    of action that can just be undone by a new administration?

5    So if the Biden administration were to decide that it

6    disagreed with the determination, but if it turns out that

7    it was a final adjudication that took effect, what process

8    would be necessary, if you know, for the new administration

9    to say, "We're going to change this"?

10            I assume that you might find Florida then as the

11   plaintiff in a case saying, "Wait a second, you can't just

12   undo a final determination that actually took effect without

13   appropriate process."

14            **MR. COGHLAN:**  Your Honor, the statute -- the Clean

15   Water Act provides for a process by which the EPA can take

16   back and re-federalize a section 404 program.  And the

17   requirements of that process are spelled out in the statute

18   and also in EPA's regulation.  And just in very -- at a very

19   high level, it's something that resembles in all material

20   respects a formal hearing on the record.  That's the process

21   that's prescribed.

22            I think -- again, I don't want to suggest any

23   direction by the new administration, but I think that in a

24   scenario in which there were some problems that the new

25   administration found with the approval of Florida's program,

1    I don't want to suggest or give the impression that this

2    would just be a situation where EPA would necessarily just

3    flip a switch and try to initiate a process to take it back.

4    I think there would more likely be some consultative process

5    with stakeholders certainly with the state of Florida to see

6    if there's some way to cure the defect.

7          So I think that there's likely a more drawn out

8    process in the event that the new administration did

9    identify some concerns.  So I don't think that this is --

10   this wouldn't be a situation where you'd just get a

11   180-degree reversal rule that gets issued right away, I

12   think that's fair to say.

13         **THE COURT:**  And does EPA have any type of

14   authority to stay its determination at this point?  I mean,

15   I think this goes to the argument that plaintiffs are really

16   making at this point and the reason they want to file an

17   early motion for summary judgment.  So if the answer is that

18   EPA really can't put its decision on hold while it looks at

19   whether it agrees with the decision that was made, and if

20   Florida then for six months, a year, two years might have

21   the authority to grant permits in areas where plaintiffs

22   believe that plaintiffs may sustain injury, does that

23   support the notion that the Court really ought to entertain

24   an early motion here because that is the injury that -- at

25   least one of the injuries that plaintiffs are pointing to

1    when they're saying, "Look, we could have on day one of the

2    Biden administration gone in and asked you all to put this

3    on hold while you looked at it.  You can't do that now

4    because this was done by adjudication instead of a rule, and

5    that's the problem"?

6           **MR. COGHLAN:**  So I think there are two questions

7    there, your Honor, and I'll try to handle the first one

8    first.  I think the first question was is there a mechanism

9    available to EPA to stay this.  I think that the

10   administrative stay process they're pointing to is under APA

11   section 705.  And I think there's case law to the effect

12   that once an action has gone into effect, that that

13   administrative stay is not available.  So I think the answer

14   to your first question is no, there is not a process

15   available to the EPA to put this on pause pending judicial

16   review in the way that they're seeking under APA section

17   705.

18           I think the second question you asked is does that

19   then provide the basis to bring this motion for summary

20   judgment now.  And I think that's where we disagree that

21   this is appropriate for review at this point -- or

22   potentially disagree.  And I think this gets to the standing

23   issue, because even conceding for the sake of argument that

24   there's some cognizable procedural injury there -- and I'm

25   not saying there is, but assuming it for the moment, they've

**1**  still got to demonstrate an injury in fact.  I'm not sure

**2**  how they do it.  I'm not saying that they won't do it, I'm

**3**  just saying it seems hard for me to see how that would

**4**  happen.  So there might be a situation where they move for

**5**  summary judgment here, but we bring a standing challenge

**6**  because there's no concrete injury in fact.  And so it might

**7**  not be appropriate for judicial resolution at that point for

**8**  that reason.

**9**          **THE COURT:**  I mean, I agree with you that there

**10**  will be significant threshold standing issues in the case.

**11**  My question really is one of timing, and should I in light

**12**  of what we've discussed so far this afternoon permit

**13**  plaintiffs to file their motion, permit you to move to

**14**  dismiss if you think appropriate or to oppose the motion or

**15**  both on the grounds that plaintiffs lack standing, and just

**16**  adjudicate it now rather than later in light of the fact

**17**  that what plaintiffs are complaining about, at least in

**18**  counts I think it was eight and nine of their complaint, is

**19**  the injury that they would sustain by not being able to seek

**20**  a stay over the next several months?

**21**          **MR. COGHLAN:**  Your Honor, I think where we stand

**22**  is that if plaintiffs are insistent on bringing their

**23**  summary judgment motion now, then we're prepared to oppose

**24**  that motion.  We would ask that the other deadlines in this

**25**  case -- in the normal run of things, we'd have more than

1    another month to file a responsive pleading or an answer,

2    and then some additional time under the local rules to lodge

3    the other administrative records for the Army Corps and Fish

4    and Wildlife.  I'll say, it's challenging under any

5    circumstances to defend an action that's filed two days

6    after inauguration day and a change of administration,

7    because as I said before, everyone is getting up to speed on

8    all of these issues.

9            It's especially hard if we're also going to be

10   opposing a motion for summary judgment.  And we would oppose

11   the motion that they're intending to file.  So what we would

12   ask is if we do resolve these summary judgment motions

13   before the merits of the case, that we be given some

14   additional time to get our responsive pleading or answer in

15   for the other claims, the other seven claims in their

16   complaint, and for lodging the administrative records for

17   the Corps and for Fish and Wildlife.  I think the

18   alternative approach would be -- oh, I'm sorry, go ahead.

19           THE COURT:  I was just going to ask Ms. Reichert

20   what her position was with respect to that.  Those seem like

21   reasonable requests to me.

22           MS. REICHERT:  Yes, your Honor, those are

23   reasonable and acceptable for us.

24           THE COURT:  Okay.  Mr. Coghlan, you can go on.

25           MR. COGHLAN:  Sorry, your Honor, I was just going

1    to say after the briefing on summary judgment is complete, I

2    think the Court could, if it so decided, hold those motions

3    for summary judgment in reserve allowing -- I think

4    Florida's indicated that it intends to file a motion to

5    dismiss at the deadline for doing so.  And if that resolves

6    the entire case, then so be it.  You wouldn't necessarily

7    have to rule on the motions for summary judgment before

8    allowing for briefing on the motion to dismiss, but that's

9    obviously your call, your Honor.

10           **THE COURT:**  Right, but I want to just make sure I

11   understand your position.  I take it your first preference

12   is just to slow everything down somewhat at this point and

13   follow the usual course.  But I take it your backup is that

14   if the Court is inclined to allow plaintiffs to file an

15   early motion for summary judgment on counts I believe it's

16   eight and nine, that I simultaneously extend both your time

17   and Florida's time to file an answer or other responsive

18   pleading; that I also grant you an extension of time for

19   purposes of filing the administrative record relating to the

20   actions of the Army Corps of Engineers and the Fish and

21   Wildlife Service; and finally that I do permit, though, the

22   Government and Florida to file a motion to dismiss on

23   standing grounds or other threshold grounds that relate to

24   all of the counts of the complaint, because there's no point

25   in having to engage in successive motions practice with

1    respect to standing.

2          Do I have that right?

3          **MR. COGHLAN:**  You've got it, your Honor.

4          **THE COURT:**  Okay, thank you.  Let me ask you,

5    would the standing issues be different for the different

6    counts?  I don't know the case well enough to know whether

7    they just implicate different interests.

8          **MR. COGHLAN:**  I think that the issues with respect

9    to concrete injury in fact are likely to be cross-cutting

10   across the different counts.  I haven't fully thought this

11   one through, but I think they're going to be pretty similar

12   across the different counts.  I think the issue of timing

13   here is important.  I think it's possible that as the case

14   progresses, the case for standing grows stronger as permits

15   issue.  But at this stage, certainly without any permits

16   having issued, I think the way to get to standing is much

17   more difficult for me to see.

18         **THE COURT:**  Okay.  Anything else you wanted to

19   add?

20         **MR. COGHLAN:**  No, your Honor.

21         **THE COURT:**  Okay.  Let me hear then for counsel

22   for Florida.  Who's speaking on behalf of Florida today?

23         **MR. WOOD:**  Thank you, your Honor.  Jeffrey Wood

24   and Lily Chin.  I'll speak for the state of Florida and

25   Florida DEP.

1          **THE COURT:**  Okay.

2          **MR. WOOD:**  So Florida agrees with the United

3     States and the position that Mr. Coghlan just set forth in

4     terms of the best path forward.  Our view is that

5     plaintiffs' central claim for its early summary judgment

6     motion will fail on the merits; that any early summary

7     judgment motion, like the one that's being described in

8     their notice, would be premature and early at this stage.

9     We would prefer to see the more normal APA path followed

10    here with early motions to dismiss for standing as well as

11    compilation certification of the administrative record, and

12    then on a reasonable schedule, cross-motions for summary

13    judgment.  We think that's been the typical practice in the

14    circuit, and think it makes sense for this process here.

15         I did want to address just briefly the Judge's

16    question with regard to bifurcation.  We're certainly open

17    to any approach that the Court views as being reasonable

18    under the circumstances.  And as the case moves forward,

19    there are a lot of different elements to the case that the

20    plaintiffs have brought.  Certainly the state of Florida's

21    interest is in ensuring that the case is managed in an

22    efficient, cost-effective way with full opportunity for the

23    state to defend EPA's decision on a complete record.  We

24    think that's kind of our primary focus at this stage.

25         In terms of the concern about this being a late

1    administration action which goes to the issue of the

2    effective date, it's actually a function of the statute

3    itself that required EPA to issue the decision when it did.

4    The state has the right under statute for a determination

5    within 120 days of submittal of the application.  The state

6    submitted the application in August after a two-year process

7    of enacting state legislation, promulgating via notice and

8    comment rulemaking a state regulatory program, and then

9    ultimately submitting that in August.  120 days later was

10   December 17th, which is when EPA issued the notice of

11   approval to the Governor of Florida.

12           And in fact, under the statute, had EPA taken no

13   action whatsoever, the statute provides that the program

14   would have been deemed approved anyway.  And our view, under

15   D.C. Circuit case law is that deemed approved decisions are

16   not actually subject to judicial review because it's

17   Congress approving, not the state -- or not EPA.  And in

18   fact, that goes to the whole structure of the Clean Water

19   Act section 404 program approval process which is very much

20   geared towards, in the nature of cooperative federalism,

21   inviting states to submit applications and for EPA to review

22   them in a timely way, and to approve them if they meet the

23   criteria.  We think that's what happened here.  It wasn't a

24   function of some race on the part of the last administration

25   to undercut the plaintiffs' ability to try to get some stay,

1    but in fact I think the statute sets that in place.

2         THE COURT:  Although I suppose it may be just a

3    matter of counting days backwards, and that Florida filed

4    its application when it did so it's in a position to ensure

5    that it had a decision by the end of the last

6    administration.

7         MR. WOOD:  Well, yes, your Honor.  And to be

8    candid, you certainly want to make sure that those efforts

9    that you undertake over the course of several years are then

10   resolved in a timely way.  As we're seeing now, when a new

11   administration comes in, there's obviously a time that

12   requires for new leadership to get up to speed on any number

13   of issues, the hundreds of issues they've got to tackle.

14        So Florida's view is they put together a really

15   thoughtful, fulsome application.  The program is now up and

16   running successfully.  Florida, the Army Corps of Engineers

17   and EPA have been working very well on the transition.

18   They're meeting weekly to discuss any issues that come up.

19   EPA, under the statute, maintains full oversight of

20   Florida's program.  In fact, every individual permit that

21   could have any possibility of a contentious aspect to it

22   whatsoever goes to EPA for review.  And EPA has the

23   opportunity to provide input, and even can federalize a

24   permit if EPA has serious concerns about the way the state's

25   handling it.

1    And I think as Mr. Coghlan mentioned, we don't

2  think there is a way to sort of unring the bell here.  The

3  entire Army Corps file of all the permits that have been

4  sort of applied for in Florida, that file has now been

5  handed over to Florida.  That was over the last month or so.

6  And Florida is working with over 200 employees right now

7  within Florida DEP, and then additional employees at the

8  five state water management districts to review and process

9  applications consistent with the state regulations and the

10  federal requirements.  And that process is going very well.

11    I think one thing to keep in mind is that Florida

12  actually has, from what we can tell, a more robust program

13  with more employees working on 404 applications than the

14  Army Corps was able to allocate when they were handling the

15  program themselves.  So we feel like Florida is putting

16  forward a really good program that's going to ensure that

17  the purposes, objectives and requirements of the Clean Water

18  Act are followed.

19    So our view is we want to have the opportunity to

20  defend the merits of the EPA's approval on a complete

21  administrative record.  And so for that, we think the more

22  normal APA path is the right way to go here, your Honor.

23    **THE COURT:**  And I should say that I didn't meant

24  to suggest that it would be inappropriate for Florida to

25  file when it did.  I understand your concern about wanting

1    to get a decision before the change in administrations

2    because that does tend to slow things down.  I was just

3    making the point, though, that that may explain the timing

4    in part, but I wasn't suggesting it was inappropriate to do

5    that.

6        Let me ask Ms. Reichert if the permit was -- or

7    the application was actually approved on December 17th, I

8    guess I'm not sure I follow the argument that the 30 days

9    would have gotten you to a new administration where you

10   could have asked for a stay.  Because that would have still

11   taken you -- it still would have been -- the 30 days would

12   have still been before the inauguration, so you would have

13   still had to go sometime during that period of time to the

14   administration that had just decided to take the action --

15   which is presumably not terribly likely to stay its own

16   action at that point in time.

17       **MS. REICHERT:**  Thank you, your Honor.  The

18   pre-publication notice of EPA's decision was on

19   December 17th.  However, the publication in the Federal

20   Register was on December 22nd.  So it would have passed

21   over -- 30 days would have passed over to the new

22   administration.

23       **THE COURT:**  I see, okay.

24       **MR. WOOD:**  Your Honor, this is Jeffrey Wood.  May

25   I address that point as well?

1          **THE COURT:** You may.

2          **MR. WOOD:** Thank you. Plaintiffs, in their notice

3     to the Court, didn't even reference the December 17th notice

4     of approval. But the notice of approval from EPA to the

5     Governor of Florida is the operative legal document at issue

6     here. And if you go back to the very early days of the

7     Clean Water Act and the approval of state Clean Water Act

8     programs under section 402 -- which has a very similar

9     process called a review and approval as 404, EPA has

10    consistently issued notices of approval to states and made

11    them effective immediately. Or on some occasions, going

12    back to 1974, the programs themselves were actually

13    effective months or even a year before the Federal Register

14    notice was published. It's never been the case that state

15    402 or 404 programs are not effective for 30 days. That's

16    not happened in the 40 plus years of the Clean Water Act.

17          And certainly Florida's expectation under statute

18    and regulation is that their program would be reviewed and

19    approved consistent with the criteria. And then if it met

20    the criteria, EPA would approve it. And then in a timely

21    way, publish that in the Federal Register for transparency

22    and public awareness. But the notice from EPA to the

23    Governor is the legally effective document that led to

24    Florida's program essentially going into effect. And once

25    Florida the next day informed the Army Corps that they were

1    willing and able to take it on because they had invested
2    years in the program, brought on employees, stood up an
3    internal state program and were ready to take it over, they
4    informed the Corps.  The Corps handed off those files in
5    late December.  That's the way the process is designed to
6    work, and that's the way the process has worked for over 40
7    years with section 402 and section 404 programs.  Even the
8    other two state 404 programs that had been approved,
9    Michigan and New Jersey, neither of those programs had a
10   30-day waiting period at all.

11           THE COURT:  I'm sorry, can I just interrupt for a
12   second there.  But wouldn't the agency under the APA have
13   been required to make a good cause finding in order to waive
14   the 30-day requirement?  And isn't it true that the 30-day
15   requirement runs from the date of publication for APA
16   purposes?

17           MR. WOOD:  Your Honor, respectfully I think our
18   position is we agree with EPA that this is not a subject of
19   rule and is adjudication.

20           THE COURT:  No, I know that's what the dispute is
21   about here.  I'm just trying to make sure that I understand
22   the arguments here.  I take it that the parties disagree
23   about that.  If plaintiff is right, though, that this is
24   something that had to take place or was in fact a rule and
25   not an adjudication, then under the APA aren't they also

1    right that the APA requires 30 days notice from publication;

2    and that that can be waived, but there needs to be a finding

3    of good cause that is made at that time in order to do so,

4    and cannot be done retrospectively?

5            **MR. WOOD:**  Respectfully, your Honor, we would

6    suggest that to the extent that's required, it was in the

7    EPA notice here.  We cite that and quote it in our response.

8    And if you look at the Michigan and New Jersey notices of

9    approval that were published in the Federal Register,

10   neither of them as far as I recall used the term good cause.

11   But they do have a statement in there that the programs are

12   going into effect effective immediately.  And in EPA's

13   notice of approval, they don't use exactly the same words as

14   used in that one sentence in the New Jersey and Michigan

15   approvals, but they use very similar language that could be

16   viewed as good cause.

17           But in neither of the Michigan or New Jersey cases

18   did EPA use -- you know, quote or cite the good cause

19   exception itself, but rather stated the reason why it was

20   going into effect immediately -- which was the same reason

21   this one's going into effect immediately, which is it's

22   simply EPA's approval of existing state regulatory programs

23   that the state has adopted at the state level.

24           **THE COURT:**  Right.  Well, I don't know who's right

25   or wrong about all this here.  I think there probably are

1    significant arguments to be made on both sides of all this.

2    I think there are significant issues relating to standing.

3    But I'm not inclined to essentially reject plaintiffs'

4    argument based on what's in front of me by not giving them

5    the opportunity to try and present it to the Court.

6         So I think what I should do is go ahead and allow

7    plaintiffs to file their motion for partial summary judgment

8    with respect to counts -- am I correct it's counts eight and

9    nine, Ms. Reichert?

10        **MS. REICHERT:**  Yes, that's correct, your Honor.

11        **THE COURT:**  Okay.  So I'll allow you to go ahead

12   and file your motion for summary judgment with respect to

13   counts eight or nine.  I will stay the defendants' and

14   intervenors' obligation to answer or move other than

15   responding to your motion for summary judgment.  But I will

16   allow the Government -- I shouldn't say the Government, the

17   defendants and intervenors to cross-move to dismiss on

18   standing grounds or any other jurisdictional grounds that

19   they want to raise in doing so.

20        If it turns out that there are arguments that are

21   unique to other counts, I think you should wait to raise

22   those.  But if they're cross-cutting arguments, you're

23   welcome to raise them and not direct them just at counts

24   eight and nine, but any other counts to which the arguments

25   that you're directing at counts eight or nine are

1    cross-cutting in effect other counts of the complaint.

2            I'll also direct that the EPA, by close of

3    business on Friday, file the index to the certified

4    administrative record.

5            Mr. Coghlan, tell me when it is you want to get

6    that.  I want to make sure I'm not putting you in a bind.

7    When do you think you could actually get the physical

8    administrative record to plaintiffs?

9        **MR. COGHLAN:**  Well, your Honor, we would -- two

10   options.  I think one option is we can lodge a certified

11   index that has hyperlinks to all the documents in the

12   record.  And if that will give plaintiffs what they need in

13   terms of access to documents, then we can provide the

14   documents that way by the end of the day on Friday.  If it's

15   a situation of downloading all of those documents and

16   transmitting them somehow in PDFs individually to

17   plaintiffs, then that I think will probably take us another

18   couple of days into say the middle of next week.  But if

19   plaintiffs are willing to accept a certified index with

20   hyperlinks giving them access to all of the documents, if

21   not a consolidated PDF, then we can just do that on Friday.

22       **THE COURT:**  Ms. Reichert?

23       **MS. REICHERT:**  Yes, your Honor, I think that would

24   be appropriate for the current motion.  I would have to

25   speak with co-counsel on what our preference would be -- and

1    our clients, about what our preference would be for the full

2    administration on the -- administrative record on the

3    merits.  But for this motion, the partial motion for summary

4    judgment, that would work well for us.

5            THE COURT:  And I'm staying defendants' obligation

6    to provide the index to the administrative record or the

7    administrative record more generally with respect to the

8    Army Corps and the Fish and Wildlife Service.  This is only

9    on the EPA issues at this point.

10           MS. REICHERT:  Correct, yes.  That would be all

11   right, your Honor.  Thank you.

12           THE COURT:  I appreciate that, Mr. Coghlan.  If

13   you can just simply file that and provide it to plaintiffs

14   by close of business on Friday with the hyperlinks, it

15   sounds like we're in business.

16           So with that, let me ask Ms. Reichert when it is

17   you'd like to file your motion?

18           MS. REICHERT:  Thank you, your Honor.  I think we

19   would be prepared to file our motion on March 15th -- I'm

20   sorry, on March 5th, if that's all right, with receiving the

21   record by Friday.

22           THE COURT:  Okay.  And then Mr. Coghlan, when

23   would you like to both respond to that and to cross-move?

24           MR. COGHLAN:  Your Honor, we'd ask for 60 days to

25   respond and cross-move.

1              **THE COURT:**  Any objection to that, Ms. Reichert?

2              **MS. REICHERT:**  Yes, your Honor.  Our preference

3     would be to follow the local rules, particularly because

4     these are procedural issues that don't reach the merits of

5     the case.

6              **THE COURT:**  The local rules are 14 days, which

7     seems unreasonably short given the nature of the issues and

8     everything else that counsel have on their plates at this

9     point.  I'm prepared to look at something more in the middle

10    here, but I think 14 days is not really being fair to

11    defendants and intervenors for their response.  I understand

12    your desire to move quickly here.

13             **MS. REICHERT:**  Thank you, your Honor.  Our main

14    concern is that the delay leaves us closer to a permit being

15    issued for these development projects and the oil drilling

16    in the national park.  That's why we're trying to move

17    quickly on this issue.  I do believe that we would be

18    amenable to allowing 30 days for a response, if that would

19    be sufficient for the Government.

20             **THE COURT:**  Mr. Coghlan?

21             **MR. COGHLAN:**  I think 45 would be doable, your

22    Honor, 30's going to be tight.  But we could do 45, if

23    that's okay with plaintiffs.

24             **THE COURT:**  So I'll give you then until -- and

25    intervenors as well, until April 26th to file your

1    opposition and cross-motion.

2          And then Ms. Reichert, how much time would you

3    like for your opposition and reply?

4          **MS. REICHERT:**  Thank you, your Honor.  We would

5    be -- if we are allowing 30 days for the intervenors and

6    Government to respond, we'd be amenable to having 30 days as

7    well to deal with --

8          **THE COURT:**  Yeah, I actually gave them more than

9    30 days, I gave them I think six weeks.  So if 30 days is

10   okay with you, I can give --

11         **MS. REICHERT:**  Yes.  And also, your Honor, just

12   one question.  If they are both going to move for dismissal,

13   one thing we're wondering is whether the Court would be

14   amenable to us filing a consolidated brief rather than

15   individual briefs that would not exceed the combined length?

16         **THE COURT:**  I would be appreciative of that.

17         **MS. REICHERT:**  Okay, great.  Thank you, your

18   Honor.

19         **THE COURT:**  I mean, I assume frankly that there's

20   going to be substantial overlap in many of the arguments.  I

21   hope that defendants and intervenors can consult along the

22   way and make sure that they're not just repeating each other

23   in what they're saying.  And perhaps intervenors could write

24   a brief that is a little bit shorter and more targeted if

25   they can rely on the arguments that have already been made

1    by the defendants.  Of course, that requires defendants to

2    share with intervenors what they're going to say.  So I'll

3    leave it up to them.

4         But it would be helpful to the Court to try and

5    avoid too much replication.  It would be helpful to the

6    Court for you to file a consolidated brief.  So I'll give

7    you until May 24th.

8         Is that going to give you sufficient time?  That's

9    four weeks I think.

10    **MS. REICHERT:**  Yes, your Honor.

11    **THE COURT:**  And then a final reply, I'll give two

12    weeks for that, which would be June 7th.

13         Anything else, Ms. Reichert, you wanted to raise

14    today?

15    **MS. REICHERT:**  No, your Honor.  Thank you very

16    much.

17    **THE COURT:**  Mr. Coghlan?

18    **MR. COGHLAN:**  Nothing further, your Honor.  Thank

19    you.

20    **THE COURT:**  Mr. Wood, anything further?

21    **MR. WOOD:**  No, thank you, your Honor.  We

22    appreciate your time today.

23    **THE COURT:**  Okay.  Thank you all, take care.

24         (Proceedings adjourned at 4:18 p.m.)

25

1                           **C E R T I F I C A T E**

2

3              I, **Jeff Hook, Official Court Reporter,**

4   certify that the foregoing is a true and correct transcript

5   of the remotely reported proceedings in the above-entitled

6   matter.

7                   **PLEASE NOTE:**  This hearing occurred during

8   the COVID-19 pandemic and is therefore subject to the

9   technological limitations of court reporting remotely.

10

11

12

13      __May 4, 2021__                    _____

14          **DATE**                           **Jeff M. Hook**

15

16

17

18

19

20

21

22

23

24

25

**0**

0119 [1]    1/4

**1**

101 [1]    2/6
119 [1]    3/2
120 [2]    21/5 21/9
14 [2]    31/6 31/10
150 [1]    1/20
15th [1]    30/19
17 [1]    1/5
17th [4]    21/10 24/7
  24/19 25/3
180-degree [1]
  14/11
19 [1]    34/8
1974 [1]    25/12
1:21-cv-0119 [1]
  1/4

**2**

200 [1]    23/6
20001 [2]    1/25 2/3
20002 [1]    1/21
201 [1]    1/16
2021 [1]    1/5
21-119 [1]    3/2
22nd [1]    24/20
24th [1]    33/7
26th [1]    31/25

**3**

30 [15]    9/18 9/22
  9/25 10/3 10/22
  24/8 24/11 24/21
  25/15 27/1 31/18
  32/5 32/6 32/9 32/9
30's [1]    31/22
30-day [7]    8/10
  10/4 10/6 11/6
  26/10 26/14 26/14
33137 [1]    1/16
333 [1]    1/24
3600 [1]    2/6
3:30 [1]    1/6

**4**

40 [2]    25/16 26/6
402 [3]    25/8 25/15
  26/7
404 [8]    8/4 13/16
  21/19 23/13 25/9
  25/15 26/7 26/8
45 [2]    31/21 31/22
4500 [1]    1/16
4700-C [1]    1/24
4:18 p.m [1]    33/24

**5**

5th [1]    30/20

**6**

60 [1]    30/24

**7**

700 [1]    2/3
705 [2]    15/11 15/17
7th [1]    33/12

**9**

94111 [1]    2/6

**A**

ability [2]    9/17
  21/25
able [4]    10/13
  16/19 23/14 26/1
above [1]    34/5
above-entitled [1]
  34/5
accept [1]    29/19
acceptable [1]
  17/23
access [3]    4/24
  29/13 29/20
accommodating [1]
  12/15
accordance [1]    8/19
acres [1]    9/8
across [2]    19/10
  19/12
act [12]    8/1 8/19
  9/24 11/12 11/15
  11/24 13/15 21/19
  23/18 25/7 25/7
  25/16
action [18]    1/3 3/2
  4/6 8/2 8/8 8/13
  8/15 8/16 8/16
  11/21 12/20 13/4
  15/12 17/5 21/1
  21/13 24/14 24/16
actions [3]    12/20
  12/25 18/20
actually [8]    13/12
  21/2 21/16 23/12
  24/7 25/12 29/7
  32/8
add [2]    12/3 19/19
additional [3]    17/2
  17/14 23/7
address [6]    4/7
  4/13 7/19 8/22
  20/15 24/25
adjourned [1]    33/24
adjudicate [1]
  16/16
adjudication [9]
  8/2 8/9 8/12 11/12
  11/16 13/7 15/4
  26/19 26/25
administration [27]
  4/4 7/18 10/11
  10/14 10/17 10/24
  10/25 11/1 11/10
  12/20 13/1 13/4
  13/5 13/8 13/23
  13/25 14/8 15/2
  17/6 21/1 21/24
  22/6 22/11 24/9
  24/14 24/22 30/2
administration on [1]
  30/2
administrations [1]
  24/1
administrative [24]
  4/1 4/2 4/3 4/24
  5/1 5/4 5/5 5/20

**9** (cont.)

5/22 19/10 19/12
21/25
able [4] 10/13
16/19 23/14 26/1

6/2 7/17 12/11
  12/16 15/10 15/13
  17/3 17/16 18/19
  20/11 23/21 29/4
  29/8 30/2 30/6 30/7
adopted [2]    10/3
  27/23
affect [1]    4/6
afternoon [1]    16/12
again [1]    13/22
agencies [1]    6/11
agency [8]    4/5 8/13
  8/25 9/1 9/2 10/1
  11/9 26/12
agency's [1]    8/15
agree [3]    5/20 16/9
  26/18
agreed [1]    4/23
agrees [2]    14/19
  20/2
ahead [5]    4/12 7/23
  17/18 28/6 28/11
al [4]    1/3 1/6 3/3
  3/4
ALISON [2]    1/19 3/6
allocate [1]    23/14
allotted [1]    6/14
allow [4]    18/14
  28/6 28/11 28/16
allowing [4]    18/3
  18/8 31/18 32/5
allows [1]    9/2
along [1]    32/21
alternative [1]
  17/18
Although [2]    8/11
  22/2
amenable [4]    5/21
  31/18 32/6 32/14
ANDREW [5]    1/6 1/18
  3/5 3/5 5/14
APA [10]    8/17 9/1
  15/10 15/16 20/9
  23/22 26/12 26/15
  26/25 27/1
APA's [1]    8/7
APPEARANCES [2]
  1/13 2/1
Appearing [3]    3/4
  3/5 3/6
application [5]
  21/5 21/6 22/4
  22/15 24/7
applications [3]
  21/21 23/9 23/13
applied [2]    6/1
  23/4
applies [2]    11/12
  11/24
apply [1]    11/16
appreciate [4]    3/19
  12/15 30/12 33/22
appreciative [1]
  32/16
approach [2]    17/18
  20/17
appropriate [9]
  4/20 4/22 5/19
  11/17 13/13 15/21
  16/7 16/14 29/24

approval [15]    8/4
  9/19 9/19 13/25
  21/11 21/19 23/20
  25/4 25/4 25/7 25/9
  25/10 27/9 27/13
  27/22
approvals [1]    27/15
approve [2]    21/22
  25/20
approved [5]    21/14
  21/15 24/7 25/19
  26/8
approving [1]    21/17
April [1]    31/25
April 26th [1]
  31/25
areas [1]    14/21
argument [4]    14/15
  15/23 24/8 28/4
arguments [7]    26/22
  28/1 28/20 28/22
  28/24 32/20 32/25
Army [9]    6/11 6/24
  17/3 18/20 22/16
  23/3 23/14 25/25
  30/8
aspect [1]    22/21
assume [2]    13/10
  32/19
assuming [1]    15/25
August [2]    21/6
  21/9
authority [2]    14/14
  14/21
authorizes [1]    9/1
available [3]    15/9
  15/13 15/15
Avenue [1]    1/24
avoid [1]    33/5
aware [2]    9/22
  11/15
awareness [1]    25/22
away [1]    14/11

**B**

back [5]    7/11 13/16
  14/3 25/6 25/12
backup [1]    18/13
backwards [1]    22/3
Baker [2]    2/2 2/5
Bankruptcy [1]    1/23
based [2]    5/16 28/4
basis [2]    8/22
  15/19
become [1]    11/7
behalf [3]    4/9 4/11
  19/22
bell [1]    23/2
best [1]    20/4
Biden [6]    7/17
  10/14 10/24 10/25
  13/5 15/2
bifurcate [1]    3/22
  3/22
bifurcating [1]
  4/16
bifurcation [1]
  20/16
bind [1]    29/6
BIOLOGICAL [2]    1/3

**B**

BIOLOGICAL... [1]
3/3
Biscayne [1]  1/16
bit [1]  32/24
Blvd [1]  1/16
BONNIE [2]  1/15 3/4
both [6]  9/15 16/15
18/16 28/1 30/23
32/12
Botts [2]  2/2 2/5
brief [3]  32/14
32/24 33/6
briefing [4]  3/24
12/25 18/1 18/8
briefly [1]  20/15
briefs [1]  32/15
bring [3]  4/13
15/19 16/5
bringing [1]  16/22
brought [2]  20/20
26/2
business [3]  29/3
30/14 30/15

**C**

CA [1]  2/6
California [1]  2/6
call [2]  3/9 18/9
called [1]  25/9
came [1]  10/21
can [22]  3/16 4/12
5/3 7/6 10/2 10/9
12/22 12/23 13/4
13/15 17/24 22/23
23/12 26/11 27/2
29/10 29/13 29/21
30/13 32/10 32/21
32/25
can give [1]  32/10
can't decide [1]
5/10
candid [1]  22/8
care [1]  33/23
carried [1]  10/23
case [22]  3/23 4/6
4/17 5/5 5/10 6/1
10/3 13/11 15/11
16/10 16/25 17/13
18/6 19/6 19/13
19/14 20/18 20/19
20/21 21/15 25/14
31/5
cases [1]  27/17
cause [5]  26/13
27/3 27/10 27/16
27/18
CENTER [2]  1/3 1/2
central [1]  20/5
certainly [7]  7/8
14/5 19/15 20/16
20/20 22/8 25/17
certification [4]
6/9 7/4 7/8 20/11
certified [5]  4/2
7/4 29/3 29/10
29/19
certify [1]  34/4
challenge [1]  16/5

challenging [1]
17/4
change [3]  13/9
17/6 24/1
changes [1]  11/10
Chief [1]  3/10
CHIN [4]  2/5 3/7
12/9 19/24
CHRISTINA [3]  1/14
3/5 4/11
circuit [4]  8/14
10/1 20/14 21/15
circumstance [1]
11/17
circumstances [2]
17/5 20/18
citations [1]  7/14
cite [2]  27/7 27/18
cited [1]  7/25
civil [2]  1/3 3/2
claim [3]  8/2 10/7
20/5
claimed [1]  9/13
claiming [1]  8/8
claims [5]  6/3 9/15
9/17 17/15 17/15
clarify [1]  5/15
Clean [7]  7/25
13/14 21/18 23/17
25/7 25/7 25/16
clear [1]  3/17
clearly [1]  3/16
clients [1]  30/1
close [2]  29/2
30/14
closer [1]  31/14
co [1]  29/25
co-counsel [1]
29/25
codified [3]  8/6
8/18 9/20
COGHLAN [13]  1/18
3/6 5/14 12/8 12/9
17/24 20/3 23/1
29/5 30/12 30/22
31/20 33/17
cognizable [1]
15/24
COLUMBIA [1]  1/1
combined [1]  32/15
comment [2]  11/13
21/8
comments [1]  5/7
compilation [1]
20/11
complaining [1]
16/17
complaint [4]  16/18
17/16 18/24 29/1
complete [3]  18/1
20/23 23/20
concede [1]  5/18
conceding [1]  15/23
concern [3]  20/25
23/25 31/14
concerns [2]  14/9
22/24
concluding [1]  12/5
concrete [2]  16/6
19/9

CONFERENCE [1]  1/10
Congress [1]  21/17
Congressional [3]
11/12 11/15 11/23
conservation [1]
8/23
consider [4]  9/2
10/1 11/1 11/10
considering [1]  9/6
consistent [2]  23/9
25/19
consistently [1]
25/10
consolidated [3]
29/21 32/14 33/6
Constitution [1]
1/24
consult [1]  32/21
consultative [1]
14/4
contentious [1]
22/21
contest [1]  8/20
continue [2]  4/25
12/3
CONTINUED [1]  2/1
cooperative [1]
21/20
Corps [12]  6/11
6/24 17/3 17/17
18/20 22/16 23/3
23/14 25/25 26/4
26/4 30/8
cost [1]  20/22
cost-effective [1]
20/22
counsel [3]  19/21
29/25 31/8
counting [1]  22/3
counts [14]  16/18
18/15 18/24 19/6
19/10 19/12 28/8
28/8 28/13 28/21
28/23 28/24 28/25
29/1
couple [2]  7/6
29/18
course [3]  18/13
22/9 33/1
court [23]  1/1 1/22
1/23 5/24 6/10 7/3
7/14 9/23 9/24 10/2
10/6 12/22 14/23
18/2 18/14 20/17
25/3 28/5 32/13
33/4 33/6 34/3 34/9
Court's [2]  3/10
8/13
courts [2]  1/23
8/14
COVID [1]  34/8
COVID-19 [1]  34/8
criteria [3]  21/23
25/19 25/20
critically [1]  9/9
cross [8]  19/9
20/12 28/17 28/22
29/1 30/23 30/25
32/1
cross-cutting [3]

19/9 28/22 29/1
cross-motion [1]
32/1
cross-motions [1]
20/12
cross-move [3]
28/17 30/23 30/25
cure [1]  14/6
current [1]  29/24
cutting [3]  19/9
28/22 29/1
cv [1]  1/4

**D**

D.C [1]  21/15
date [7]  8/18 9/2
10/23 11/6 21/2
26/15 34/14
dates [1]  11/9
day [11]  8/10 10/4
10/6 11/6 15/1 17/6
25/25 26/10 26/14
26/14 29/14
days [25]  7/6 9/18
9/22 9/25 10/3
10/22 17/5 21/5
21/9 22/3 24/8
24/11 24/21 25/6
25/15 27/1 29/18
30/24 31/6 31/10
31/18 32/6 32/6
32/9 32/9
DC [4]  1/5 1/21
1/25 2/3
deadline [1]  18/5
deadlines [1]  16/24
deal [2]  4/20 32/7
dealing [1]  6/23
deals [2]  4/17 9/16
December [7]  10/22
21/10 24/7 24/19
24/20 25/3 26/5
December 17th [4]
21/10 24/7 24/19
25/3
December 22nd [1]
24/20
decide [3]  5/10
8/11 13/5
decided [2]  18/2
24/14
decision [11]  4/3
5/6 7/17 8/13 14/18
14/19 20/23 21/3
22/5 24/1 24/18
decisions [1]  21/15
deemed [2]  21/14
21/15
defect [1]  14/6
defend [3]  17/5
20/23 23/20
defendants [10]  1/7
1/18 3/5 3/7 5/15
28/17 31/11 32/21
33/1 33/1
defendants' [2]
28/13 30/5
degree [1]  14/11
delay [3]  8/18 11/6
31/14

**D**

demonstrate [1]
16/1
denied [1]   9/3
DEP [2]   19/25 23/7
Department [1]   1/19
described [1]   20/7
designed [1]   26/5
desire [1]   31/12
determination [6]
10/12 10/22 13/6
13/12 14/14 21/4
determine [1]   8/15
development [2]   9/7
31/15
difference [1]
11/11
different [8]   7/25
8/1 19/5 19/5 19/7
19/10 19/12 20/19
difficult [1]   19/17
direct [3]   3/12
28/23 29/2
directing [1]   28/25
direction [1]   13/23
disagree [3]   15/20
15/22 26/22
disagreed [1]   13/6
discretion [1]   8/11
discuss [1]   22/18
discussed [2]   12/11
16/12
dismiss [7]   3/24
16/14 18/5 18/8
18/22 20/10 28/17
dismissal [1]   32/12
dispute [1]   26/20
disputes [1]   5/22
DISTRICT [4]   1/1
1/1 1/11 1/23
districts [1]   23/8
DIVERSITY [2]   1/3
3/3
doable [1]   31/21
document [2]   25/5
25/23
documents [5]   29/11
29/13 29/14 29/15
29/20
dollar [1]   11/25
done [4]   8/4 8/5
15/4 27/4
door [1]   10/13
down [3]   7/7 18/12
24/2
downloading [1]
29/15
drawn [1]   14/7
drill [1]   9/7
drilling [1]   31/15
during [4]   10/6
10/17 24/13 34/7

**E**

early [8]   14/17
14/24 18/15 20/5
20/6 20/8 20/10
25/6
Earthjustice [1]

1/15
effect [11]   8/14
10/2 13/7 13/12
15/11 15/12 15/24
27/12 27/20 27/21
29/1
effective [14]   8/7
8/18 9/2 10/23 11/6
11/7 11/9 20/22
21/2 25/11 25/13
25/15 25/23 27/12
effectiveness [1]
10/25
efficient [1]   20/22
efforts [1]   22/8
eight [6]   16/18
18/16 28/8 28/13
28/24 28/25
either [1]   12/9
elapsed [1]   9/25
elements [1]   20/19
else [6]   4/7 4/13
12/3 19/18 31/8
33/13
employees [4]   23/6
23/7 23/13 26/2
enacting [1]   21/7
end [4]   6/10 7/9
22/5 29/14
endangered [1]   9/10
engage [1]   18/25
Engineers [3]   6/12
18/20 22/16
enough [3]   9/25
11/1 19/6
ENRD [1]   1/20
ensure [2]   22/4
23/16
ensuring [1]   20/21
entertain [1]   14/23
entire [2]   18/6
23/3
entitled [1]   34/5
EPA [35]
EPA's [11]   6/3 6/7
6/18 7/25 8/4 13/18
20/23 23/20 24/18
27/12 27/22
error [1]   10/16
especially [1]   17/9
essentially [2]
25/24 28/3
et [4]   1/3 1/6 3/3
3/3
even [6]   9/20 15/23
22/23 25/3 25/13
26/7
event [1]   14/8
everybody [1]   3/10
everyone [3]   3/8
3/13 17/7
exactly [3]   8/21
11/15 27/13
exceed [1]   32/15
exception [3]   8/7
8/9 27/19
exercising [1]   8/24
existing [1]   27/22
expectation [1]
25/17

explain [1]   24/3
explicitly [1]   10/6
extend [1]   18/16
extension [1]   18/18
extent [3]   10/13
10/15 27/6

**F**

face [1]   9/4
fact [1]   5/8 5/23
16/1 16/6 16/16
19/9 21/12 21/18
22/1 22/20 26/24
facts [3]   5/25 6/1
10/7
fail [1]   20/6
fair [2]   14/12
31/10
far [2]   16/12 27/10
February [1]   1/5
federal [9]   5/15
6/11 6/14 8/19
23/10 24/19 25/13
25/21 27/9
federalism [1]
21/20
federalize [2]
13/16 22/23
feedback [1]   3/15
feel [1]   23/15
figure [1]   10/20
file [24]   6/8 6/13
6/17 6/22 7/3 14/16
16/13 17/1 17/11
18/4 18/14 18/17
18/22 23/3 23/4
23/25 28/7 28/12
29/3 30/13 30/17
30/19 31/25 33/6
filed [3]   4/2 17/5
22/3
files [1]   26/4
filing [2]   18/19
32/14
fill [1]   9/8
final [3]   13/7
13/12 33/11
finally [1]   18/21
find [2]   10/7 13/10
finding [2]   26/13
27/2
fine [1]   7/23
FINNEGAN [2]   1/19
3/6
first [7]   3/21 4/16
15/7 15/8 15/8
15/14 18/11
Fish [6]   6/12 6/24
17/3 17/17 18/20
30/8
five [2]   23/8
FL [1]   1/16
flip [1]   14/3
floor [1]   12/6
Florida [27]   2/2
7/20 7/25 8/20 9/10
9/14 13/10 14/5
14/20 18/22 19/22
19/22 19/24 19/25
20/2 21/11 22/3

22/16 23/4 23/5
23/6 23/7 23/11
23/15 23/24 25/5
25/25
Florida's [8]   13/25
18/4 18/17 20/20
22/14 22/20 25/17
25/24
focus [1]   20/24
follow [4]   10/1
18/13 24/8 31/3
followed [2]   20/9
23/18
following [1]   3/21
For the Defendants [1]
1/18
force [1]   8/16
foreclosed [1]   8/24
foregoing [1]   34/4
form [1]   8/14
formal [1]   13/20
forth [1]   20/3
forward [4]   7/13
20/4 20/18 23/16
found [2]   6/2 13/25
four [1]   33/9
Francisco [1]   2/6
frankly [1]   32/19
Friday [5]   29/3
29/14 29/21 30/14
30/21
front [1]   28/4
full [5]   5/4 6/14
20/22 22/19 30/1
fully [1]   19/10
fulsome [1]   22/15
function [2]   21/2
21/24
further [3]   4/5
33/18 33/20
future [1]   11/20

**G**

GALLONI [2]   1/14
3/4
gave [2]   32/8 32/9
geared [1]   21/20
general [1]   10/2
generally [1]   30/7
gets [2]   14/11
15/22
given [3]   11/5
17/13 31/7
giving [2]   28/4
29/20
goes [4]   14/15 21/1
21/18 22/22
good [7]   11/14
23/16 26/13 27/3
27/10 27/16 27/18
Government [12]
4/23 7/13 7/20 7/22
7/24 8/19 9/13
18/22 28/16 28/16
31/19 32/6
Governor [3]   21/11
25/5 25/23
grant [2]   14/21
18/18
granting [1]   11/19

**G**

great [1]   32/17
greater [1]   11/25
grounds [5]   16/15
18/23 18/23 28/18
28/18
grows [1]   19/14
guess [2]   5/3 24/8

**H**

habitat [1]   9/9
handed [2]   23/5
26/4
handle [1]   15/7
handling [2]   22/25
23/14
handset [1]   3/15
happen [1]   16/4
happened [3]   10/6
21/23 25/16
happy [4]   3/20 4/6
4/25 12/6
hard [2]   16/3 17/9
harmed [1]   10/4
harmless [1]   10/16
harms [2]   9/4 10/5
head [1]   11/23
hear [5]   3/16 3/20
4/6 12/8 19/21
heard [1]   5/8
hearing [3]   7/13
13/20 34/7
Hello [1]   4/10
helpful [4]   3/19
7/10 33/4 33/5
high [1]   13/19
hold [3]   14/18 15/3
18/2
Honor [44]
HONORABLE [1]   1/10
HOOK [3]   1/22 34/3
34/14
hope [1]   32/21
House [1]   11/8
hundred [1]   11/24
hundreds [2]   9/8
22/13
hyperlinks [3]
29/11 29/20 30/14

**I**

idea [1]   6/21
identify [1]   14/9
immediate [1]   4/18
immediately [5]
9/24 25/11 27/12
27/20 27/21
impact [1]   11/25
implicate [2]   4/18
19/7
implicating [1]
10/16
implications [1]
11/18
important [1]   19/13
impression [1]   14/1
improbable [2]
10/15 10/15
inappropriate [2]

23/24 24/4
inauguration [3]
11/7 17/6 24/12
inclined [2]   18/14
28/3
include [1]   7/14
includes [1]   13/1
including [2]   5/5
9/6
index [7]   6/10 7/4
7/8 29/3 29/11
29/19 30/6
indicated [1]   18/4
Indies [1]   9/11
individual [2]
22/20 32/15
individually [1]
29/16
informal [1]   8/2
information [1]
12/21
informed [2]   25/25
26/4
initiate [1]   14/3
injuries [1]   14/25
injury [7]   14/22
14/24 15/24 16/1
16/6 16/19 19/9
input [1]   22/23
insistent [1]   16/22
instead [2]   3/25
15/4
intending [1]   17/11
intends [1]   18/4
interest [1]   20/21
interests [1]   19/7
internal [1]   26/3
interrupt [2]   10/9
26/11
interrupted [1]
12/2
intervenor [2]   2/2
3/6
intervenors [7]
28/17 31/11 31/25
32/5 32/21 32/23
33/2
intervenors' [1]
28/14
into [9]   3/15 9/23
10/24 15/12 25/24
27/12 27/20 27/21
29/18
introduce [1]   3/16
invested [1]   26/1
inviting [1]   21/21
invoke [2]   8/9
11/18
invoked [1]   8/7
involved [1]   10/4
issue [11]   4/16
4/23 5/24 12/11
15/23 19/12 19/15
21/1 21/3 25/5
31/17
issued [6]   10/17
14/11 19/16 21/10
25/10 31/15
issues [17]   4/18
5/10 6/20 6/23 7/19

9/16 16/10 17/8
19/5 19/8 22/13
22/13 22/18 28/2
30/9 31/4 31/7

**J**

JEFF [3]   1/22 34/3
34/14
JEFFREY [4]   2/2 3/7
19/23 24/24
Jersey [4]   26/9
27/8 27/14 27/17
joining [1]   3/8
JUDGE [1]   1/11
Judge's [2]   3/10
20/15
judgment [21]   3/24
4/22 5/19 5/21
14/17 15/20 16/5
16/23 17/10 17/12
18/15 20/5 20/7
20/13 28/7 28/12
28/15 30/4
judicial [6]   4/19
4/20 8/25 15/15
16/7 21/16
June [1]   33/12
June 7th [1]   33/12
jurisdictional [1]
28/18
Justice [1]   1/19

**K**

keep [1]   23/11
kind [1]   20/24

**L**

lack [1]   16/15
language [1]   27/15
languishing [1]
9/21
last [3]   21/24 22/5
23/5
late [2]   20/25 26/5
later [2]   16/16
21/9
law [6]   5/10 5/24
5/25 8/16 15/11
21/15
leadership [2]
12/24 22/12
leap [2]   3/21 4/8
least [5]   6/3 6/20
10/22 14/25 16/17
leave [1]   33/3
leaves [1]   31/14
led [1]   25/23
legal [2]   4/23 25/5
legally [1]   25/23
legislation [1]
21/7
length [1]   32/15
level [2]   13/19
27/23
light [2]   16/11
16/16
likely [5]   6/14
14/4 14/7 19/9
24/15

LILY [3]   2/5 3/7
19/24
limitations [1]
34/9
little [1]   32/24
LLP [2]   2/2 2/5
local [4]   6/15 17/2
31/3 31/6
lock [1]   10/14
lodge [2]   17/2
29/10
lodged [4]   6/4 6/9
6/10 7/8
lodging [1]   17/16
long [1]   11/1
look [5]   7/12 8/14
15/1 27/8 31/9
looked [2]   12/24
15/3
looks [1]   14/18
lot [1]   20/19

**M**

main [1]   31/13
maintains [1]   22/19
major [1]   9/6
makes [1]   20/14
making [2]   14/16
24/3
MALLOY [2]   1/15 3/4
managed [1]   20/21
management [1]   23/8
manatee [1]   9/11
many [1]   32/20
March [2]   30/19
30/20
March 15th [1]
30/19
March 5th [1]   30/20
material [1]   13/19
matter [5]   5/20
10/11 11/3 22/3
34/6
may [10]   5/3 6/20
11/8 12/7 14/22
22/2 24/3 24/24
25/1 33/7
May 24th [1]   33/7
mean [3]   14/14 16/9
32/19
meant [1]   23/23
mechanism [2]   11/18
15/8
meet [1]   21/22
meeting [1]   22/18
members [1]   9/4
memo [1]   11/8
mentioned [1]   23/1
merely [1]   9/18
merits [6]   4/17
17/13 20/6 23/20
30/3 31/4
met [1]   25/19
Miami [1]   1/16
Michigan [4]   26/9
27/8 27/14 27/17
microphones [1]
3/14
mid [2]   10/21 10/22
middle [2]   29/18

**M**

middle... [1] 31/9
might [6] 7/5 10/23
13/10 14/20 16/4
16/6
million [1] 11/25
mind [3] 3/21 4/8
23/11
minute [1] 5/3
moment [2] 6/25
15/25
month [3] 9/21 17/1
23/5
months [3] 14/20
16/20 25/13
moot [3] 9/15 9/18
10/7
more [16] 3/20 3/22
4/19 7/6 14/4 14/7
16/25 19/17 20/9
23/12 23/13 23/21
30/7 31/9 32/8
32/24
MOSS [1] 1/10
motion [34] 1/10
3/18 3/24 4/17 4/22
5/19 6/17 7/15 9/13
9/16 14/17 14/24
15/19 16/13 16/14
16/23 16/24 17/10
17/11 18/4 18/8
18/15 18/22 20/6
20/7 28/7 28/12
28/15 29/24 30/3
30/3 30/17 30/19
32/1
motions [6] 17/12
18/2 18/7 18/25
20/10 20/12
move [10] 12/14
16/4 16/13 28/14
28/17 30/23 30/25
31/12 31/16 32/12
moves [1] 20/18
Mr. [13] 12/8 12/9
12/9 12/9 17/24
20/3 23/1 29/5
30/12 30/22 31/20
33/17 33/20
Mr. Chin [1] 12/9
Mr. Coghlan [10]
12/8 12/9 17/24
20/3 23/1 29/5
30/12 30/22 31/20
33/17
Mr. Wood [2] 12/9
33/20
Ms. [11] 5/16 7/11
12/2 17/19 24/6
28/9 29/22 30/16
31/1 32/2 33/13
Ms. Reichert [11]
5/16 7/11 12/2
17/19 24/6 28/9
29/22 30/16 31/1
32/2 33/13
much [6] 7/7 19/16
21/19 32/2 33/5
33/16

multiple [1] 3/23
must [1] 8/18
mute [1] 3/13

**N**

name [1] 3/17
national [2] 9/8
31/16
nature [2] 21/20
31/7
NE [1] 1/20
necessarily [2]
14/2 18/6
necessary [1] 13/8
need [2] 6/14 29/12
needed [1] 10/23
needs [1] 27/2
neither [3] 26/9
27/10 27/17
new [16] 4/4 11/1
12/24 13/4 13/8
13/23 13/24 14/8
22/10 22/12 24/9
24/21 26/9 27/8
27/14 27/17
next [3] 16/20
25/25 29/18
nine [6] 16/18
18/16 28/9 28/13
28/24 28/25
nobody [1] 3/13
normal [3] 16/25
20/9 23/22
note [2] 8/3 34/7
notice [16] 7/21
9/19 9/20 11/13
20/8 21/7 21/10
24/18 25/2 25/3
25/4 25/14 25/22
27/1 27/7 27/13
notices [2] 25/10
27/8
notion [1] 14/23
number [1] 22/12
NW [2] 1/24 2/3

**O**

objection [1] 31/1
objectives [1]
23/17
obligation [2]
28/14 30/5
obviously [2] 18/9
22/11
occasions [1] 25/11
occurred [1] 34/7
off [2] 11/22 26/4
official [2] 1/23
34/3
offline [1] 7/7
oil [2] 9/7 31/15
once [3] 3/25 15/12
25/24
one [16] 5/15 7/1
9/2 12/23 13/2
14/25 15/1 15/7
16/11 19/11 20/7
23/11 27/14 29/10
32/12 32/13
one's [1] 27/21

only [4] 6/23 9/1
11/24 30/8
open [1] 20/16
operating [1] 9/5
operative [1] 25/5
opportunity [6] 5/8
7/19 20/22 22/23
23/19 28/5
oppose [3] 16/14
16/23 17/10
opposing [1] 17/10
opposition [2] 32/1
32/3
option [1] 29/10
options [1] 29/10
order [3] 3/11
26/13 27/3
ordering [1] 11/19
organizations [1]
8/24
ought [1] 14/23
out [8] 7/6 10/13
10/20 10/21 13/6
13/17 14/7 28/20
outcome [2] 11/21
12/22
over [12] 9/21
10/24 11/10 16/20
22/9 23/5 23/5 23/6
24/21 24/21 26/3
26/6
overlap [1] 32/20
oversight [1] 22/19
own [2] 10/17 24/15

**P**

p.m [2] 1/6 33/24
pandemic [1] 34/8
panther [1] 9/10
park [2] 9/8 31/16
part [2] 21/24 24/4
partial [3] 4/21
28/7 30/3
particularly [1]
31/3
parties [2] 3/20
26/22
parties' [1] 3/18
passed [4] 9/3 9/18
24/20 24/21
past [1] 8/5
path [3] 20/4 20/9
23/22
pause [2] 5/2 15/15
PDF [1] 29/21
PDFs [1] 29/16
pending [4] 4/19
4/21 8/25 15/15
perfectly [1] 12/4
perhaps [9] 3/22
5/6 10/15 10/19
10/20 10/24 10/24
11/25 32/23
period [4] 10/5
10/6 24/13 26/10
permit [7] 16/12
16/13 18/21 22/20
22/24 24/6 31/14
permits [6] 9/6 9/8
14/21 19/14 19/15

23/3
permitted [1] 3/11
perspective [1]
6/19
pertinent [1] 6/16
phase [1] 5/21
physical [1] 29/7
place [2] 22/1
26/24
plaintiff [6] 4/19
6/17 7/5 10/4 13/11
26/23
plaintiffs [28] 1/4
1/14 3/4 4/9 4/11
7/3 8/23 9/3 9/23
12/16 14/15 14/21
14/22 14/25 16/13
16/15 16/17 16/22
18/14 20/20 25/2
28/7 29/8 29/12
29/17 29/19 30/13
31/23
plaintiffs' [5]
8/21 9/17 20/5
21/25 28/3
plates [1] 31/8
pleading [3] 17/1
17/14 18/18
please [3] 3/15
5/17 34/7
plus [1] 25/16
point [14] 5/16
6/13 12/5 14/14
14/16 15/21 16/7
18/12 18/24 24/3
24/16 24/25 30/9
31/9
pointing [2] 14/25
15/10
position [5] 17/20
18/11 20/3 22/4
26/18
possibility [1]
22/21
possible [2] 10/14
19/13
posted [1] 9/21
potentially [3]
3/23 4/4 15/22
practical [2] 10/11
11/3
practice [4] 7/25
8/3 18/25 20/13
pre [4] 1/10 3/18
9/20 24/18
pre-motion [2] 1/10
3/18
pre-publication [2]
9/20 24/18
prefer [1] 20/9
preference [4]
18/11 29/25 30/1
31/2
premature [3] 9/14
9/15 20/8
prepare [1] 6/15
prepared [6] 6/8
6/13 7/3 16/23
30/19 31/9
prescribed [1]

**P**

prescribed... [1]
13/21
present [1]   28/5
presumably [1]
24/15
pretty [2]   6/8
19/11
previous [2]   12/20
13/1
primary [1]   20/24
principle [1]   10/2
probably [4]   6/9
7/6 27/25 29/17
problem [1]   15/5
problems [1]   13/24
procedural [4]   4/18
8/25 15/24 31/4
proceed [4]   6/21
6/22 8/12 12/12
proceedings [4]
3/12 3/23 33/24
34/5
process [18]   13/7
13/13 13/15 13/17
13/20 14/3 14/4
14/8 15/10 15/14
20/14 21/6 21/19
23/8 23/10 25/9
26/5 26/6
producing [1]   7/13
program [18]   8/1
8/4 9/5 9/5 13/16
13/25 21/8 21/13
21/19 22/15 22/20
23/12 23/15 23/16
25/18 25/24 26/2
26/3
programs [9]   8/6
25/8 25/12 25/15
26/7 26/8 26/9
27/11 27/22
progresses [1]
19/14
projects [2]   9/7
31/15
promptly [1]   6/23
promulgated [1]
11/19
promulgating [1]
21/7
promulgation [1]
10/3
proper [1]   11/6
proposal [1]   9/7
proposed [1]   6/17
prospect [1]   4/5
provide [5]   15/19
22/23 29/13 30/6
30/13
provides [2]   13/15
21/13
provision [1]   9/1
public [1]   25/22
publication [5]
9/20 24/18 24/19
26/15 27/1
publish [1]   25/21
published [3]   9/19

25/14 27/9
pure [1]   5/24
purposes [3]   18/19
23/17 26/16
put [5]   12/17 14/18
15/2 15/15 22/14
putting [2]   23/15
29/6

**Q**

qualification [1]
7/2
quickly [3]   9/24
31/12 31/17
quote [2]   27/7
27/18

**R**

race [1]   21/24
raise [4]   28/19
28/21 28/23 33/13
raised [2]   7/19
12/12
RANDOLPH [1]   1/10
rather [3]   16/16
27/19 32/14
re [1]   13/16
re-federalize [1]
13/16
reach [1]   31/4
ready [1]   26/3
really [7]   14/15
14/18 14/23 16/11
22/14 23/16 31/10
reason [4]   14/16
16/8 27/19 27/20
reasonable [4]
17/21 17/23 20/12
20/17
rebroadcast [1]
3/12
recall [1]   27/10
receiving [1]   30/20
recollection [1]
11/23
record [36]
records [5]   6/13
6/15 6/16 17/3
17/16
reference [1]   25/3
regard [1]   20/16
regarding [2]   5/1
9/22
Register [5]   8/19
24/20 25/13 25/21
27/9
regulation [2]
13/18 25/18
regulations [1]
23/9
regulatory [2]   21/8
27/22
REICHERT [14]   1/14
3/5 4/11 5/16 7/11
12/2 17/19 24/6
28/9 29/22 30/16
31/1 32/2 33/13
reject [1]   28/3
relate [1]   18/23
related [1]   10/5

relating [3]   6/23
18/19 28/2
relevant [1]   8/3
relied [1]   10/7
relinquish [1]   12/6
rely [1]   32/25
remaining [1]   4/16
remind [1]   3/9
remotely [2]   34/5
34/9
rendered [1]   5/6
repeating [1]   32/22
replication [1]
33/5
reply [2]   32/3
33/11
reported [1]   34/5
Reporter [3]   1/22
1/23 34/3
reporting [1]   34/9
request [3]   8/25
9/24 10/1
requests [2]   5/7
17/21
require [4]   4/24
5/3 7/5 9/23
required [3]   21/3
26/13 27/6
requirement [4]   8/8
8/10 26/14 26/15
requirements [4]
8/17 13/17 23/10
23/17
requires [3]   22/12
27/1 33/1
resembles [1]   13/19
reserve [1]   18/3
resolution [4]   5/18
5/21 6/3 16/7
resolve [2]   5/24
17/12
resolved [1]   22/10
resolves [1]   18/5
respect [9]   4/1
5/23 12/16 17/20
19/1 19/8 28/8
28/12 30/7
respectfully [2]
26/17 27/5
respects [1]   13/20
respond [3]   30/23
30/25 32/6
responding [1]
28/15
response [4]   7/20
27/7 31/11 31/18
responsive [3]   17/1
17/14 18/17
retrospectively [1]
27/4
reversal [1]   14/11
review [18]   4/4
4/19 4/20 6/1 7/17
9/1 11/12 11/15
11/24 12/21 12/23
15/16 15/21 21/16
21/21 22/22 23/8
25/9
reviewed [2]   3/18
25/18

right [17]   4/12
7/22 8/25 9/3 12/4
14/11 18/10 19/2
21/4 23/6 23/22
26/23 27/1 27/24
27/24 30/11 30/20
rights [1]   4/18
robust [1]   23/12
Room [1]   1/24
rounds [1]   3/24
rule [22]   8/12 8/13
8/15 8/18 9/22 10/2
10/4 10/12 10/16
10/18 10/21 11/1
11/2 11/6 11/13
11/19 12/1 14/11
15/4 18/7 26/19
26/24
rulemaking [2]   8/17
21/8
rules [9]   3/10 6/15
6/15 8/6 11/9 11/24
17/2 31/3 31/6
run [1]   16/25
running [1]   22/16
runs [1]   26/15
rush [1]   9/23
rushing [1]   10/12

**S**

sake [1]   15/23
same [2]   27/13
27/20
San [1]   2/6
saying [8]   10/19
10/21 13/11 15/1
15/25 16/2 16/3
32/23
scenario [1]   13/24
schedule [1]   20/12
sea [1]   9/11
second [5]   4/25
10/9 13/11 15/18
26/12
section [8]   8/1
13/16 15/11 15/16
21/19 25/8 26/7
26/7
seeing [1]   22/10
seek [3]   4/19 9/17
16/19
seeking [1]   15/16
seem [1]   17/20
seems [3]   10/14
16/3 31/7
sense [3]   3/22
10/10 20/14
sentence [1]   27/14
serious [1]   22/24
serve [1]   9/9
Service [3]   6/12
18/21 30/8
serving [1]   7/5
set [1]   20/3
sets [1]   22/1
seven [1]   17/15
several [3]   9/11
16/20 22/9
share [2]   12/22
33/2

**S**

short [2]  7/4 31/7
shorter [1]  32/24
shortly [2]  6/8
 8/22
sides [1]  28/1
signaled [1]  8/20
significant [3]
 16/10 28/1 28/2
similar [4]  11/20
 19/11 25/8 27/15
simply [2]  27/22
 30/13
simultaneously [1]
 18/16
situation [6]  10/8
 11/17 14/2 14/10
 16/4 29/15
six [2]  14/20 32/9
slow [3]  7/7 18/12
 24/2
somehow [1]  29/16
sometime [1]  24/13
somewhat [1]  18/12
sorry [5]  5/2 17/18
 17/25 26/11 30/20
sort [4]  10/12 13/3
 23/2 23/4
sounds [1]  30/15
speak [5]  3/15 3/16
 3/17 19/24 29/25
speaking [5]  3/14
 4/9 4/11 6/5 19/22
species [2]  9/11
 9/12
speed [2]  17/7
 22/12
spelled [1]  13/17
staff [1]  12/25
stage [3]  19/15
 20/8 20/24
stakeholders [1]
 14/5
stand [2]  4/1 16/21
standing [15]  3/11
 8/21 8/23 15/22
 16/5 16/10 16/15
 18/23 19/1 19/5
 19/14 19/16 20/10
 28/2 28/18
started [1]  3/9
state [23]  2/2 8/4
 8/6 9/4 9/5 14/5
 19/24 20/20 20/23
 21/4 21/5 21/7 21/8
 21/17 23/8 23/9
 25/7 25/14 26/3
 26/8 27/22 27/23
 27/23
state's [1]  22/24
stated [1]  27/19
statement [1]  27/11
states [6]  1/1 1/11
 8/7 20/3 21/21
 25/10
statute [10]  8/1
 13/14 13/17 21/2
 21/4 21/12 21/13
 22/1 22/19 25/17

stay [14]  4/19 8/25
 9/17 10/1 10/17
 14/14 15/9 15/10
 15/13 16/20 21/25
 24/10 24/15 28/13
stayed [1]  10/25
staying [1]  30/5
stays [2]  9/1 11/9
still [7]  5/25 6/20
 16/1 24/10 24/11
 24/12 24/13
still would [1]
 24/11
stood [1]  26/2
Street [3]  1/20 2/3
 2/6
strictly [1]  4/23
strokes [1]  7/5
stronger [1]  19/14
structure [1]  21/18
subject [5]  8/17
 11/8 21/16 26/18
 34/8
submissions [1]
 3/19
submit [1]  21/21
submittal [1]  21/5
submitted [3]  4/21
 5/7 21/6
submitting [1]  21/9
substantial [1]
 32/20
substantially [1]
 11/20
substantive [1]
 8/16
successfully [1]
 22/16
successive [1]
 18/25
sufficient [2]
 31/19 33/8
suggest [4]  13/22
 14/1 23/24 27/6
suggested [1]  9/14
suggesting [1]  24/4
Suite [2]  1/16 2/6
summary [21]  3/24
 4/22 5/19 5/21
 14/17 15/19 16/5
 16/23 17/10 17/12
 18/1 18/3 18/7
 18/15 20/5 20/6
 20/12 28/7 28/12
 28/15 30/3
support [1]  14/23
suppose [1]  22/2
sure [7]  16/1 18/10
 22/8 24/8 26/21
 29/6 32/22
sustain [2]  14/22
 16/19
switch [1]  14/3

**T**

tackle [1]  22/13
TANIA [2]  1/14 3/4
targeted [1]  32/24
technological [1]
 34/9

TELEPHONIC [1]  1/10
tend [1]  24/2
term [1]  27/10
terms [3]  20/4
 20/25 29/13
terribly [1]  24/15
the administrative [1]
 5/1
therefore [1]  34/8
third [2]  7/15
 12/12
though [3]  18/21
 24/3 26/23
thought [1]  19/10
thoughtful [1]
 22/15
three [1]  4/2
threshold [4]  4/17
 9/16 16/10 18/23
tight [1]  31/22
timely [3]  21/22
 22/10 25/20
timing [3]  16/11
 19/12 24/3
today [4]  4/9 19/22
 33/14 33/22
today's [1]  3/12
together [2]  22/14
took [2]  13/7 13/12
top [1]  11/22
towards [1]  21/20
transcript [2]  1/10
 34/4
transition [1]
 22/17
transmitting [1]
 29/16
transparency [1]
 25/21
treated [1]  8/5
true [2]  26/14 34/4
Trump [2]  10/11
 10/17
try [5]  14/3 15/7
 21/25 28/5 33/4
trying [4]  10/10
 10/20 26/21 31/16
turn [1]  3/15
turns [2]  13/6
 28/20
turtle [1]  9/12
two [9]  3/25 6/11
 14/20 15/6 17/5
 21/6 26/8 29/9
 33/11
two-year [1]  21/6
type [4]  4/3 7/16
 12/1 14/13
typical [1]  20/13

**U**

U.S [2]  1/19 1/23
ultimately [1]  21/9
unclear [1]  11/16
under [19]  3/10 4/4
 6/14 7/17 8/1 12/21
 15/10 15/16 17/2
 17/4 20/18 21/4
 21/12 21/14 22/19
 25/8 25/17 26/12

26/25
undercut [1]  21/25
undertake [1]  22/9
undertaken [1]  13/1
undo [1]  13/12
undone [1]  13/4
unique [1]  28/21
UNITED [3]  1/1 1/11
 20/2
unlawful [1]  9/4
unless [1]  7/21
unreasonably [1]
 31/7
unring [1]  23/2
up [8]  4/14 12/25
 17/7 22/12 22/15
 22/18 26/2 33/3
use [3]  27/13 27/15
 27/18
used [2]  27/10
 27/14
usual [1]  18/13

**V**

valuable [1]  9/10
versus [2]  3/3
 11/12
via [1]  21/7
view [5]  10/12 20/4
 21/14 22/14 23/19
viewed [1]  27/16
views [1]  20/17

**W**

wait [2]  13/11
 28/21
waiting [1]  26/10
waive [1]  26/13
waived [1]  27/2
Washington [4]  1/5
 1/21 1/25 2/3
water [8]  8/1 13/15
 21/18 23/8 23/17
 25/7 25/7 25/16
way [18]  6/21 6/22
 11/20 12/23 14/6
 15/16 19/16 20/22
 21/22 22/10 22/24
 23/2 23/22 25/21
 26/5 26/6 29/14
 32/22
website [1]  9/21
week [3]  6/10 7/9
 29/18
weekly [1]  22/18
weeks [3]  32/9 33/9
 33/12
welcome [2]  12/2
 28/23
West [1]  9/11
wetlands [1]  9/9
what's [4]  10/10
 10/20 11/3 28/4
whatsoever [2]
 21/13 22/22
WHEELER [2]  1/6 3/3
White [1]  11/8
who's [3]  4/9 19/22
 27/24
whole [1]  21/18

**W**

wildlife [6]  6/12
 6/25 17/4 17/17
 18/21 30/8
willing [2]  26/1
 29/19
wise [1]  6/21
within [2]  21/5
 23/7
without [4]  5/10
 5/19 13/12 19/15
wondering [1]  32/13
WOOD [6]  2/2 3/7
 12/9 19/23 24/24
 33/20
words [1]  27/13
work [3]  7/6 26/6
 30/4
worked [1]  26/6
working [3]  22/17
 23/6 23/13
worry [1]  6/24
write [1]  32/23
wrong [1]  27/25

**Y**

year [3]  14/20 21/6
 25/13
years [5]  14/20
 22/9 25/16 26/2
 26/7