# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al*.<br><br>  Defendants. | Case No. 1:21-cv-0119 (RDM) |

## **DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.     *Prows* narrowly constrains Plaintiffs' standing to bring Claim 8.........................................1

II.    Plaintiffs' harms are not fairly traceable to the procedural violation alleged
in Claim 9.................................................................................................................................5

III.   Claims 8 and 9 fail on the merits because EPA reasonably acted on
Florida's assumption request by adjudication.........................................................................7

CONCLUSION.................................................................................................................................13

## TABLE OF AUTHORITIES

**CASES**

*Ass'n of National Advertisers v. FTC*,
   627 F.2d 1151 (D.C. Cir. 1979) ......................................................................................... 9

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ........................................................................................................... 4

*Bauer v. DeVos*,
   325 F. Supp. 3d 74 (D.D.C. 2018) ..................................................................................... 3

*City of Waukesha v. EPA*,
   320 F.3d 228 (D.C. Cir. 2003) ........................................................................................... 6

*Davis v. FEC*,
   554 U.S. 724 (2008) ........................................................................................................... 2

*Dimond v. District of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986) ........................................................................................... 7

*Florida Audubon Soc'y v. Bentsen*,
   94 F.3d 658 (1996) ............................................................................................................ 4

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002) ........................................................................................................... 4

*Goodman v. FCC*,
   182 F.3d 987 (D.C. Cir. 1999) ......................................................................................... 11

*Nat'l Ass'n of Home Builders v. United States Army Corps of Eng'rs*,
   417 F.3d 1272 (D.C. Cir. 2005) ..................................................................................... 8, 9

*Nat'l Biodeisel Bd. v. EPA*,
   843 F.3d 1010 (D.C. Cir. 2017) ......................................................................................... 9

*Neustar, Inc. v. FCC*,
   857 F.3d 886 (D.C. Cir. 2017) ............................................................................. 10, 11, 12

*Ngou v. Schweiker*,
   535 F. Supp. 1214 (D.D.C. 1982) ...................................................................................... 2

*Prows v. Department of Justice*,
   938 F.2d 274 (D.C. Cir. 1991) ................................................................................ 1, 2, 3, 5

*Rowell v. Andrus*,
  631 F.2d 699 (10th Cir. 1980) ..................................................................................2

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ..................................................................................................5

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) ..................................................................................................4

**STATUTES**

5 U.S.C. § 553(c) ...........................................................................................................3

5 U.S.C. § 553(d) ..................................................................................................1, 2, 4, 5

5 U.S.C. § 553(e) ...........................................................................................................3

5 U.S.C. § 554(c)(1) .......................................................................................................4

5 U.S.C. § 705 ............................................................................................................3, 4

33 U.S.C. § 1344(g)(1) ...................................................................................................8

33 U.S.C. § 1344(h)(1) ...................................................................................................8

33 U.S.C. § 1344(h)(2)(A) .............................................................................................8

33 U.S.C. § 1344(h)(2)(B) .............................................................................................8

33 U.S.C. § 1344(h)(3) ...................................................................................................9

**CODE OF FEDERAL REGULATIONS**

40 C.F.R. §§ 233.10–.11 ................................................................................................8

**FEDERAL REGISTER**

49 Fed. Reg. 38,947 (Oct. 2, 1984) ..............................................................................12

59 Fed. Reg. 9933 (Mar. 2, 1994) ................................................................................12

85 Fed. Reg. 83,553 (Dec. 22, 2020) .............................................................................8

The jurisdictional issues and procedural claims before the Court are unusual but their resolution requires only the application of well-settled legal principles to undisputed fact. Regarding jurisdiction, Plaintiffs have standing to bring Claim 8, but under binding precedent, their only redressable harms are those that occurred because of agency action during a narrow 30-day period. Plaintiffs lack standing to bring Claim 9, however, because the procedural violation alleged in that claim is causally unconnected to any of the harms that they have identified. Assuming standing, Plaintiffs' procedural claims fail on the merits. In Claims 8 and 9, Plaintiffs allege that EPA failed to follow certain procedural requirements applicable only to rulemakings. But EPA's approval of Florida's section 404 assumption request was an adjudication, not a rulemaking, and Plaintiffs' arguments to the contrary are unavailing. The Court should therefore deny Plaintiffs' motion for partial summary judgment and grant the United States' cross-motion for partial summary judgment.

**I.  *Prows* narrowly constrains Plaintiffs' standing to bring Claim 8.**

In Claim 8, Plaintiffs allege that EPA's immediately effective approval of Florida's section 404 assumption request violated 5 U.S.C. § 553(d), which provides that "publication or service of a substantive rule shall be made not less than 30 days before its effective date," subject to certain exceptions.

In *Prows v. Department of Justice*, the D.C. Circuit held that violations of § 553(d)'s 30-day requirement "are remedied by denying . . . a rule effectiveness for the mandated 30 days, allowing it to take full effect thereafter." 938 F.2d 274, 275 (D.C. Cir. 1991). That "rule," the court explained, "protects those who are affected by *agency action taken during the 30-day waiting period* without disturbing *later action* that is not the product of the violation." *Id.* at 276 (emphasis added). Plaintiffs claim that they suffered discrete harms due to the transfer of permits between December 22, 2020, and January 21, 2021, the 30-day interval following EPA's approval of Florida's section 404 assumption request. *See* Dkt. 31 at 42–43. We do not dispute that those harms are legally cognizable injuries; under *Prows*, those harms are redressable. Plaintiffs also claim that they have suffered or will suffer additional harms after January 21, but

1

those harms are necessarily the result of agency action outside § 553(d)'s prescribed 30-day period. Thus, those harms lie outside the narrow scope of relief afforded by *Prows* and so are not redressable.

In their final brief, Plaintiffs try in three ways to evade this straight-forward application of the rule announced in *Prows*. First, they insist that "the 30-day clock" never began to run because EPA has not yet codified its approval of Florida's section 404 assumption request. Dkt. 43 at 44. But EPA's alleged failure to codify is the subject of Claim 9, not Claim 8. *See* Dkt. 1 at 48 (Compl. ¶ 248). And because "[s]tanding is not dispensed in gross," Plaintiffs must "demonstrate standing for each claim" they bring. *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks, citations, and alterations omitted). Thus, they cannot manufacture standing to bring Claim 8 by assuming their success on Claim 9—especially (but not only) because they lack standing to bring Claim 9. *See* pp. 5–7, *infra*.

Plaintiffs next ask the Court to read *Prows* to say that a violation of § 553(d)'s 30-day requirement can be remedied by preventing a rule from taking effect for several months. Dkt. 43 at 47–51. The far better approach is to assume that the D.C. Circuit said what it meant and meant what it said when it held that § 553(d) violations "are remedied by denying . . . a rule effectiveness *for the mandated 30 days*, allowing it to take full effect thereafter." *Prows*, 938 F.2d at 275 (emphasis added). Arguing otherwise, Plaintiffs rely heavily on *Ngou v. Schweiker*, 535 F. Supp. 1214 (D.D.C. 1982), a district court opinion which predated *Prows* by nearly a decade. Dkt. 43 at 48–49. That reliance is misplaced. It is true, as Plaintiffs note, that the court in *Ngou* refused to issue a retroactive 30-day effective date for a rule issued in violation of § 553(d). Dkt. 43 at 49 (discussing *Ngou*, 535 F. Supp. at 1217–18). But the court also explicitly rejected the rule announced in *Rowell v. Andrus*, 631 F.2d 699 (10th Cir. 1980), which provides "that regulations issued in violation of section 553(d) are merely ineffective until passage of the 30-day period." *Ngou*, 535 F. Supp. at 1217 (discussing *Rowell*, 631 F.2d at 704). *Prows*, by contrast, explicitly adopts *Rowell*'s reasoning and holding. *Prows*, 938 F.2d at 276.

2

The "more flexible standard," Dkt. 43 at 48, that Plaintiffs locate in *Ngou* is thus flatly inconsistent with the bright-line rule that the D.C. Circuit later adopted in *Prows*.

Finally, Plaintiffs attempt to reconcile their case with *Prows* by arguing that all of their past, present, or future harms from Florida's administration of its section 404 program are, in some sense, the product of EPA's alleged § 553(d) violation because that alleged violation denied Plaintiffs their procedural right to petition for an administrative stay under 5 U.S.C. § 705 and thus denied them the opportunity to block Florida's program from ever taking effect. Dkt. 43 at 45–48.

As we noted in our opening brief § 705 does not actually create the procedural right that Plaintiffs invoke because that provision says nothing about the rights of private parties to petition agencies for administrative stays.[1] Dkt. 34 at 19–21. So in their final brief, Plaintiffs ask the Court to supply the missing procedural right by inferring it from the standard that guides agencies' exercise of their § 705 authority. Dkt. 43 at 35–36. But just because an agency "may postpone the effective date of action taken by it" after considering equitable factors implicit in the phrase "[w]hen . . . justice so requires," 5 U.S.C. § 705; *Bauer v. DeVos*, 325 F. Supp. 3d 74, 106–07 (D.D.C. 2018), does not mean that agencies *must* afford certain private actors an opportunity to petition for an administrative stay. The permissive grant of broad discretion in § 705's first sentence simply does not imply that specific duty. And even if it arguably did, additional considerations would still preclude the statutory revision that Plaintiffs seek here.

For one thing, the very command that Plaintiffs would have this Court read into 5 U.S.C. § 705 actually appears in other provisions throughout the same law. Section 553(c) says that agencies "shall give interested persons an opportunity to participate in rulemaking;" § 553(e) says that agencies "shall give an interested person the right to petition for issuance, amendment,

---

[1] Nor does the legislative history that Plaintiffs' cite in their final brief contain any express statement of intent to create a procedural right to petition for an administrative stay. Dkt. 43 at 36–37.

or repeal of a rule;" and § 554(c)(1) says that agencies "shall give all interested parties opportunity" to offer evidence and argument at formal hearings.  Significantly, § 705 does not say that agencies "shall give interested parties" or "person[s]" the "opportunity" or the "right" to petition to postpone the effective date of an agency action.

Where Congress expressly provided certain rights, courts should hesitate to create others.  *Cf. Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").  That is especially true when dealing with the APA, a statute that, "generally speaking . . . establishe[s] the maximum procedural requirements which Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures." *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978).  Plaintiffs' demand for a new procedural right that is nowhere contained the APA's plain text cannot be squared with the Supreme Court's injunction against "engrafting" additional "procedures upon agencies entrusted with substantive functions by Congress."  *Id.* at 525.

Nor can Plaintiffs bootstrap a "right" from their professed "interest" in a stay during the pendency of their lawsuit.  *See* Dkt. 43 at 35 ("Section 705 makes clear it was designed to protect the interests of those who wish to challenge a rule, like Plaintiffs here.").  Rights and interests are distinct.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (holding that "it is *rights,* not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of" 42 U.S.C. § 1983).  Plaintiffs need both if they are to avail themselves of this Circuit's procedural rights standing cases.  As an *en banc* panel of the D.C. Circuit put it:  "a plaintiff may have standing to challenge the failure of an agency to abide by a *procedural requirement* only if that requirement was designed to protect some threatened *concrete interest* of the plaintiff." *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (1996) (emphasis added).  Section 705 does not require agencies to provide private parties with the opportunity to petition for a delayed effective

4

date and so Plaintiffs cannot demand that opportunity as their right, whatever their interest may be.

In sum, *Prows* affords Plaintiffs a narrow path to standing on Claim 8. We do not dispute that they have followed it here, but only so far as they seek redress for injuries-in-fact attributable to "agency action taken during the 30-day waiting period" from December 22, 2020 to January 21, 2021. *Prows*, 938 F.2d at 276. Injuries attributable to actions outside that timeframe are not redressable under the remedy prescribed by *Prows* for violations of § 553(d)'s 30-day requirement.

## II. Plaintiffs' harms are not fairly traceable to the procedural violation alleged in Claim 9.

In Claim 9, Plaintiffs allege that EPA failed to codify its approval of Florida's assumption request, or as Plaintiffs now put it, failed to include in its Federal Register notice certain required "amendatory language" that was "keyed to the Code of Federal Regulations." Dkt. 43 at 33. For Plaintiffs to have standing, that alleged procedural violation must be "fairly traceable" to a "concrete and particularized" injury in fact. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Plaintiffs cannot make that showing.

To be sure, Plaintiffs might have established a causal connection sufficient for standing to bring Claim 9 if they had suffered some concrete and particularized harm because of the procedural violation itself. *See, e.g.*, *Prows*, 938 F.2d at 276 (recognizing standing to challenge the government's alleged violation of § 553(d) 30-day requirement where a rule's immediate effective date hastened the plaintiff's loss of employment). That path is foreclosed, however, because Plaintiffs have not identified a single harm wrought by EPA's alleged failure to codify.[2]

---

[2] As we noted in our opening brief, Dkt. 34 at 21, this lack of harm is unsurprising. The only harms that might attend a failure to codify would all relate to a lack of notice. But Plaintiffs knew of Florida's assumption, knew the particulars of Florida's program by virtue of EPA's notice and comment process, and even knew exactly what "amendatory language" would look like in this context because EPA made publicly available a Pre-Publication Notice announcing its intent to codify. *See* Codifying EPA's Adjudicatory Decision on Florida's Clean Water Act

5

Plaintiffs might still have established traceability under this Circuit's procedural rights standing precedents if they had demonstrated an "adequate casual chain" between EPA's failure to codify its approval and the harms that they allegedly suffered as a result of EPA's approval. *City of Waukesha v. EPA*, 320 F.3d 228, 234 (D.C. Cir. 2003) (internal quotation marks omitted). That, however, would require showing that EPA's approval action "may have been wrongly decided because of the lack of" amendatory language, *id.*, something Plaintiffs cannot do here because the alleged failure to codify post-dated EPA's approval decision.

Plaintiffs argue that this Court should not demand any causal relationship between EPA's failure to codify and EPA's substantive approval decision because doing so would preclude Plaintiffs' attempt to enforce a "post-decisional" procedural requirement. Dkt. 43 at 50–51, 60–61. This gets things exactly backwards. If Plaintiffs have not met the applicable standard, then their claim—not the standard itself—should be dismissed. Contrary to Plaintiffs' argument, moreover, giving effect to binding precedent would not "render impossible the vindication of any procedural rights that by their nature occur after a substantive decision is made." Dkt. 43 at 51. Anybody who was actually harmed by the breach of a post-decisional procedural duty would have standing to challenge the procedural violation. Plaintiffs have not shown that they were harmed by EPA's alleged failure to codify, but the courthouse doors would be open to someone who was.

Likewise unpersuasive is Plaintiffs' claim that they have standing to pursue Claim 9 because EPA's failure to codify was "an ultra vires act, which violates the APA." Dkt. 43 at 52. While it is far from clear, the crux of Plaintiffs' position appears to be that if they were (or will be) harmed by Florida's administration of its section 404 program, then they necessarily have standing to challenge any allegedly fatal procedural defect associated with EPA's approval of

---

Section 404 Program Request (Jan. 14, 2021), available at https://www.epa.gov/sites/production/files/2021-01/documents/pre-publication_frn-_fl_404_codification_final_rule_.pdf ("Pre-Publication Notice").

Florida's assumption request. Dkt. 43 at 52–55. This argument does not address standing's traceability requirement, however; it just assumes that requirement away.

*Dimond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986) (Wald, J.), illustrates the flaw in Plaintiffs' reasoning. That case concerned a D.C. law that, according to the plaintiff, was enacted in violation of a requirement that the City Council "read [any bill] twice in substantially the same form before passage." *Dimond*, 792 F.2d at 184. Like Plaintiffs here, the plaintiff in *Dimond* claimed that the statute was "null and void" because of the alleged procedural violation. *Id.* Also like Plaintiffs, the plaintiff in *Dimond* argued that he had standing to challenge the law on both substantive and procedural grounds because he had been harmed by the law's implementation. *Id.* at 190. The D.C. Circuit disagreed. Although the plaintiff had standing to bring a substantive challenge to the law itself, the court explained that his standing to challenge the City Council's alleged procedural violation required a showing that his harms were "fairly attributable" *to that procedural violation*, not to the law more broadly. *Id.* at 191. Because it could "divine no causal connection between the procedural violation" at issue "and the injury flowing from the substantive provisions of the" challenged law, the court concluded that the plaintiff lacked standing. *Id.* at 191.

So too here. Plaintiffs may be injured by "the immediate and ongoing operation of a state 404 program," Dkt. 43 at 53, and that injury might support standing to challenge EPA's approval action. But Plaintiffs' harms are not fairly traceable to the conduct challenged in Claim 9: EPA's alleged failure to codify that approval. Dkt. 42 at 33. Claim 9 should therefore be dismissed for lack of subject matter jurisdiction.

**III. Claims 8 and 9 fail on the merits because EPA reasonably acted on Florida's assumption request by adjudication.**

Turning to the merits, the following facts are undisputed and dispositive. The State of Florida submitted to EPA a request to administer a section 404 permitting program for waters within Florida's jurisdiction. Letter from Ron DeSantis, Governor, State of Florida, to Mary S. Walker, Regional Administrator, EPA Region 4 (Aug. 18, 2020) (EPA-HQ-OW-2018-0640-

7

0004). EPA reviewed that request using criteria set forth in statute and regulations. 85 Fed. Reg. 83,553 (Dec. 22, 2020). The Agency then approved Florida's request. *Id.* EPA's approval, in other words, was a case-specific determination based on the application of existing law to Florida's unique application. For the reasons set forth in our opening brief, Dkt. 34 at 23–27, EPA's approval action was therefore adjudicative, its decision to approve Florida's assumption request by order was therefore reasonable, and Claims 8 and 9 therefore fail.

Plaintiffs argue that EPA could not act by adjudication on Florida's assumption request because the Agency's approval of that request: (1) impacted "a class of activities across the entire state of Florida by a broad and undefinable class of actors," Dkt. 43 at 18; (2) was based on facts that are "legislative in nature," *id.* at 27; (3) has "only . . . prospective effect," *id.* at 21; and (4) had formal trappings of a rulemaking, *id.* at 17. None of these arguments succeeds.

The problem with Plaintiffs' first argument is that it imputes to EPA the policymaking actions of others. In approving Florida's assumption request, EPA did not, in fact, "decide[] what the law 'will be' in Florida-assumed waters." Dkt. 43 at 21. Florida (not EPA) decided how to structure and implement its proposed section 404 program, judgments it recorded in state statutes and regulations. And Congress (not EPA) decided that Florida would administer a section 404 permitting program if the State's proposed program satisfied certain requirements. *See* 33 U.S.C. § 1344(h)(2)(A), (B) (providing that EPA "shall approve" a proposed State Section 404 program if it "determines that such State" meets certain requirements and that the Corps "shall suspend the issuance of permits" after EPA approves a state program). Acting at Congress's behest, EPA simply evaluated Florida's proposed program under the relevant statutory and regulatory provisions. 33 U.S.C. § 1344(g)(1), (h)(1); 40 C.F.R. §§ 233.10–.11. Having discharged that limited duty, the Agency announced its findings. *See* 85 Fed. Reg. 83,553 (Dec. 22, 2020) ("After careful review . . . EPA has determined that the State of Florida has the necessary authority to operate a [Clean Water Act (CWA)] Section 404 program[.]"). From there, Florida's program took effect by operation of statute, not by virtue of some agency

8

decree "'of general and prospective applicability.'" Dkt. 43 at 25 (quoting *Nat'l Ass'n of Home Builders v. United States Army Corps of Eng'rs*, 417 F.3d 1272, 1284–85 (D.C. Cir. 2005)).[3]

All of this matters because the question before the Court is whether *EPA* acted in a legislative or adjudicative capacity when it approved Florida's section 404 assumption request. Because the consequences of EPA's approval were preordained by Congress, those consequences reveal nothing about the power that EPA exercised when it issued that approval in the first instance. Thus, consistent with precedent, this case should be decided by looking to EPA's approval action and asking whether that action "reflect[ed] a highly fact-specific, case-by-case style characteristic of adjudication." *Nat'l Biodeisel Bd. v. EPA*, 843 F.3d 1010, 1018 (D.C. Cir. 2017) (internal quotation marks omitted). It did, and so EPA reasonably approved Florida's assumption request by order.

It is immaterial that EPA reached its decision by reviewing what Plaintiffs characterize as "legislative" rather than "adjudicative" facts. *Association of National Advertisers v. FTC*, the case on which Plaintiffs rely, defines "adjudicative facts" as "the facts that normally go to the jury in a jury case," such as "who did what, where, when, how, and with what motive or intent." 627 F.2d 1151, 1161 (D.C. Cir. 1979) (internal quotation marks omitted). But juries do not consider requests to implement government-created programs; agencies do. And agencies' considerations of those requests necessarily turn on a review of facts that are not prototypically "adjudicative."

---

[3] Underscoring this point, Florida would have assumed section 404 permitting responsibilities even if EPA had taken no further action after certifying that the State's application was complete. *See* 33 U.S.C. § 1344(h)(3) ("If the Administrator fails to make a determination with respect to any program submitted by a State under subsection (g)(1) of this section within one-hundred-twenty days after the date of the receipt of such program, such program shall be deemed approved[.]"). Contrary to Florida's argument (Dkt. 37 at 59–64), however, the CWA's "deemed approved" provision would not be triggered if the Court were to set aside EPA's approval. A state assumption request is "deemed approved" only "[i]f the Administrator fails to make a determination" on the adequacy of a state program. 33 U.S.C. § 1344(h)(3). EPA made a determination here so the "deemed approved" provision could not be triggered.

*Neustar, Inc. v. FCC*, 857 F.3d 886 (D.C. Cir. 2017), illustrates this point. That case concerned the FCC's selection of a company to administer a national telephone number registry program. 857 F.3d at 889–90. In making that selection, the FCC first had to determine whether the company was insulated enough from the conflicts of its corporate parent to satisfy certain neutrality requirements. *Id*. The FCC concluded that the company met those neutrality requirements, based largely on its review of the company's corporate bylaws and internal safeguards. *Id*. at 890. Those facts, which concerned the company's ability to discharge future responsibilities, are no more adjudicative in nature than the particulars of Florida's section 404 program. Yet the D.C. Circuit had no trouble classifying FCC's action as an adjudication. *Id.* at 896. The same result is warranted here.

Plaintiffs next argue that because agencies cannot use adjudication to announce rules of purely prospective effect, EPA's approval, which impacts future conduct, must have been a rule. Dkt. 43 at 21, 24, 28. While Plaintiffs correctly state a general principle, the D.C. Circuit held in *Neustar* that that rule is "inapt" where an agency simply approves an entity's bid to administer a program, as EPA did here. *Neustar*, 857 F.3d at 896. Agency actions do not become rules just because they have no "visible retroactive effects," the court explained. *Id.* Indeed, agencies "regularly make licensure and authorization decisions of various sorts that affect the future rights and authorizations of the parties before them," and nothing "require[s] that these must be done by rulemaking rather than by informal adjudication." *Id*. The essential characteristic of adjudications, the court held, is not that they are backward-looking, but that they are "specific to individuals or entities." *Id.* The question, then, is whether an agency action has an "immediate effect on the individuals concerned." *Id.*

EPA approved Florida's assumption request through an "individualized determination," *id.* at 893, based facts unique to Florida's assumption request, Dkt. 34 at 25–26, with immediate effect on Florida's authority to administer a section 404 program. EPA's action was therefore

10

"sufficiently adjudicatory in nature to fall outside the scope of any requirement" to proceed to by rulemaking. *Neustar*, 857 F.3d at 893.

Plaintiffs' last argument focuses on the form of EPA's approval action. That action was a rule, they argue, because EPA:

> published its notice and request for comments in the Federal Register, committed to codify the state program in the Code of Federal Regulations, used the "Federal eRulemaking Portal," and published its ultimate decision in the Federal Register with an "effective date," something required only for rules[.]

Dkt. 43 at 17. But EPA's provision of notice and its request for comment proves nothing since, as the D.C. Circuit has long recognized, an agency "may seek comment in either a rulemaking or adjudicatory proceeding." *Goodman v. FCC*, 182 F.3d 987, 994 (D.C. Cir. 1999). Nor does the publication of an effective date reveal anything about the nature of EPA's approval action; indeed, in the last decade alone, agencies have published effective dates in the Federal Register for roughly 17,000 non-rulemaking actions.[4] And while EPA used the "eRulemaking" portal to make documents available to the public, it did so using a "nonrulemaking docket." *See* "Florida Clean Water Act section 404 Assumption Request," https://www.regulations.gov/docket/EPA-HQ-OW-2018-0640.

Finally, while Plaintiffs are correct that the act of codification requires a rulemaking, that does not mean that the thing being codified must have been enacted by rulemaking in the first instance. In the Pre-publication Notice announcing its intent to codify Florida's section 404 program, EPA explained that it viewed codification of Florida's program as a way to memorialize the outcome of an already completed adjudicatory decision. Pre-Publication Notice

---

[4] To see a list of non-rulemaking actions with published effective dates, use the Federal Register website's advanced search function (https://www.federalregister.gov/documents/search#advanced), select a date range for "publication" and a date range for "effective date," and restrict search results to non-rulemaking actions by limiting the "Document Category" to "Notice."

at 3. Stated differently, EPA understood approval and codification of that approval as two separate actions, one an adjudication, one a rulemaking.[5]

Plaintiffs offer two arguments in response. First, they say that approval and codification are properly viewed as a single action that must be "a rule or an order" but "cannot be both." Dkt. 43 at 22. Yet Plaintiffs themselves seem to believe that EPA would follow a two-step process to withdraw its approval of a state section 404 program. To effectuate such a withdrawal, Plaintiffs contend, EPA would have to issue an adjudicatory order declaring a state's non-compliance with the CWA, and then undertake a subsequent rulemaking action to delete the previously codified provisions of state law. Dkt. 43 at 29. Why EPA could not use materially identical procedures when approving a state program is a question for which Plaintiffs provide no answer.

Second, Plaintiffs contend that agencies may not use the Code of Federal Regulations to memorialize past adjudicatory orders, only to record substantive rules promulgated by rulemaking. Dkt. 43 at 21–22. None of the cases that Plaintiffs cite for support considered that precise question, however, and so none are squarely on point. But even if Plaintiffs are right, it would not matter here. EPA has not, in fact, codified its approval of Florida's program and so has not run afoul of Plaintiffs' rigidly formalistic understanding of the Code of Federal Regulations.

---

[5] Plaintiffs vigorously argue that EPA departed from it past practice by failing to codify Florida's program in the same Federal Register notice in which the Agency announced its approval of that program. Dkt. 43 at 17, 22–23. As a legal matter, this is ultimately irrelevant because EPA's "past practice" is "not determinative" of whether its present action was a rulemaking or an adjudication. *Neustar*, 857 F.3d at 893. But in any case, while it is true that EPA announced its approval and codification of the New Jersey and Michigan programs in single Federal Register notices, the New Jersey notice describes EPA's approval as both a "Final rule" and an "approval of State program." 59 Fed. Reg. 9933 (Mar. 2, 1994). This is consistent with EPA's view here, which is that the approval and codification are distinct. The approval notice for Michigan's program lists only one action, but, tellingly, that notice describes the action as an "Approval of State Program," not a "Final rule." 49 Fed. Reg. 38,947 (Oct. 2, 1984).

In all events, there is no requirement to codify orders, a point that Plaintiffs do not and could not contest. EPA approved Florida's program by adjudication so that is the end of the matter.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Claim 9 for lack of subject matter jurisdiction. As to Claim 8 (and Claim 9, should the Court reach the merits) the Court should deny Plaintiffs' partial motion for summary judgment and grant the United States' cross-motion for partial summary judgment.

Respectfully Submitted,

Dated: June 7, 2021

Jean E. Williams
Acting Assistant Attorney General

/s/ Andrew S. Coghlan
Andrew S. Coghlan (CA Bar 313332)
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-2191
Fax: (202) 514-8865
Email: andrew.coghlan@usdoj.gov

Alison Finnegan (PA Bar 88519)
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: 202-305-0500
Email: Alison.C.Finnegan@usdoj.gov

*Attorneys for Defendants*

13

**Certificate of Service**

  I certify that on June 7, 2021, I filed the foregoing with the Court's CMS/ECF system, which will notify each party.

                /s/ Andrew S. Coghlan
                ANDREW S. COGHLAN