**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY, ET AL.

        Plaintiffs,

   v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.

        Defendants.

**CASE NO.** 1:21-cv-00119 (RDM)

---

**STATE OF FLORIDA AND FLORIDA DEPARTMENT OF ENVIRONMENTAL
PROTECTION'S REPLY IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF CROSS-MOTION TO DISMISS**

---

Jeffrey H. Wood
700 K Street, NW
Washington, D.C. 20001
Phone: (202) 639-7700
jeff.wood@bakerbotts.com

Lily N. Chinn
101 California Street
San Francisco, CA 94111
Phone: (415) 291-6200
lily.chinn@bakerbotts.com

BAKER BOTTS L.L.P.

Aaron M. Streett
Harrison Reback
910 Louisiana Street
Houston, TX 77002-4995
Phone: (713) 229-1234
aaron.streett@bakerbotts.com
harrison.reback@bakerbotts.com

*Attorneys for Florida Intervenors*

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

ARGUMENTS.....................................................................................................................2

I.    Plaintiffs Lack Standing to Bring Claims 8 and 9. ................................................ 2

    A.    Plaintiffs Lack Standing for Claim 8. .........................................................4

        1.    Plaintiffs do not show a procedural right under APA Sections 705 and 553(e) or the Klain Memo...................................................4

        2.    Plaintiffs show no cognizable injury from the lack of a 30-day delay in effective date. ..........................................................6

        3.    Plaintiffs' asserted injuries are not "fairly traceable to the challenged action of the defendant."...............................................8

        4.    Plaintiffs' asserted injuries under Claim 8 are not redressable. ....................................................................................10

    B.    Plaintiffs Lack Standing for Claim 9. .......................................................11

        1.    Plaintiffs had actual notice of Florida's program irrespective of codification...........................................................................11

        2.    Plaintiffs do not establish causation or redressability for Claim 9....................................................................................14

II.    Plaintiffs Lack Standing to Bring Claims 8 and 9 for Additional Reasons that Defeat All of Their Claims................................................................................. 15

    A.    Plaintiffs and Their Members Have Suffered No Injuries From the Transfer of *Primary* Permitting Responsibility to the State of Florida. ......................................................................................................16

    B.    The *PETA* Case Does Not Support Plaintiffs' Standing for Purported Informational Injuries. ..............................................................................17

    C.    Section 404's "Deemed Approved" Provision Requires Dismissal............19

    D.    Plaintiffs Do Not Seek Vacatur on the Basis of Claims 8 and 9. ................23

III.    Claims 8 and 9 Fail on the Merits. ..................................................................... 23

CONCLUSION .................................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

\* *Arpaio v. Obama*,
    797 F.3d 11 (D.C. Cir. 2015) ................................................................................16

*Cervase v. Off. of the Fed. Reg.*,
    580 F.2d 1166 (3d Cir. 1978)................................................................................12

*City of Dania Beach, Fla. v. Federal Aviation Administration*,
    485 F.3d 1181 (D.C. Cir. 2007) .............................................................................9

*City of Waukesha v. EPA*,
    320 F.3d 228 (D.C. Cir. 2003) ...............................................................................9

*Cooling Water Intake Structure Coal. v. EPA*,
    905 F.3d 49 (2d Cir. 2018)...................................................................................14

\* *Crow Creek Sioux Tribe v. Brownlee*,
    331 F.3d 912 (D.C. Cir. 2003) ..................................................................2, 15, 16

*Ctr. for Biological Diversity v. EPA*,
    861 F.3d 174 (D.C. Cir. 2017) ...............................................................................3

*Ctr. for Biological Diversity v. Haaland*,
    No. 20-5088, 2021 WL 2206338 (D.C. Cir. May 25, 2021) .............................3, 19

*Ctr. for Biological Diversity v. Regan*,
    No. CV 21-119 (RDM), 2021 WL 1734921 (D.D.C. May 2, 2021) ........4, 8, 10, 16

\* *Ctr. for Law and Educ. v. Dep't of Educ.*,
    396 F.3d 1152 (D.C. Cir. 2005) .....................................................................3, 5, 6

*Electronic Privacy Information Center. v. Presidential Advisory Commission on Election Integrity*,
    878 F.3d 371 (D.C. Cir. 2017) .........................................................................18, 19

*Environmental Defense Fund v. U.S. Environmental Protection Agency*
    2021 WL 270246 (D. Mont. Jan. 27, 2021) ..........................................................4

*Fed. Trade Comm'n v. Standard Oil Co.*,
    449 U.S. 232 (1980)............................................................................................22

*Fla. Audubon Soc. v. Bentsen*,
    94 F.3d 658 (D.C. Cir. 1996) .................................................................................3

*Housing Study Group v. Kemp*,
    736 F. Supp. 321 (D.D.C. 1990) .........................................................................22

*Ivy Sports Med., LLC v. Burwell*,
  767 F.3d 81 (D.C. Cir. 2014) ..................................................................................6

*Khadr v. United States*,
  529 F.3d 1112 (D.C. Cir. 2008) ............................................................................22

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ..............................................................................................13

*Nat'l Ass'n of Home Builders v. EPA*,
  667 F.3d 6 (D.C. Cir. 2011) ...............................................................................3, 6

*Omnipoint Corporation v. Federal Communications Commission*,
  78 F.3d 620, 630 (D.C. Cir. 1996) .........................................................................5

*People for the Ethical Treatment of Animals v. U.S. Department of Agriculture*,
  797 F.3d 1087 (D.C. Cir. 2015) ......................................................................17, 18

\* *Prows v. U.S. Department of Justice*,
  938 F.2d 274 (D.C. Cir. 1991) ..............................................................................10

*Pub. Citizen, Inc. v. Trump*,
  297 F. Supp. 3d 6 (D.D.C. 2018) .......................................................................3, 11

*Pub. Citizen v. Fed. Regulatory Comm'n*,
  839 F.3d 1165 ........................................................................................................21

*Ranbaxy Labs., Ltd. v. Burwell*,
  82 F. Supp. 3d 159 (D.D.C. 2015) ..........................................................................6

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................................3

*St. Croix Chippewa Indians of Wisconsin v. Kempthorne*,
  No. 07-2210 (RLJ), 2008 WL 4449620 (D.D.C. Sept. 30, 2008) ...........................5

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ................................................................................................6

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) ............................................................................................2

*WildEarth Guardians v. Jewell*,
  738 F.3d 298 (D.C. Cir. 2013) ................................................................................3

**STATUTES**

5 U.S.C. § 553(d)(3) ......................................................................................................5

5 U.S.C. § 553(e) ...................................................................................................4, 5, 6

5 U.S.C. § 704 ..............................................................................................................22

5 U.S.C. § 705 .............................................................................................................4, 5

16 U.S.C. § 824d(e) ......................................................................................................21

16 U.S.C. § 1536 ...........................................................................................................13

25 U.S.C. § 2710(d)(8)(C) ............................................................................................21

33 U.S.C. § 1342(b) ......................................................................................................24

33 U.S.C. § 1344(g)(2) ..................................................................................................24

33 U.S.C. § 1344(h)(2)(A) ............................................................................................25

33 U.S.C. § 1344(h)(2)(A)(ii) .......................................................................................25

33 U.S.C. § 1344(h)(3) .............................................................................................19, 21

33 U.S.C. § 1344(i) ..................................................................................................1, 5, 21

33 U.S.C. § 1371(c)(1) ..................................................................................................14

42 U.S.C. § 4332(2)(C) .................................................................................................14

47 U.S.C. § 160(c) .........................................................................................................21

47 U.S.C. § 272(f)(1) .....................................................................................................21

Fla. Stat. § 373.4146(2) .................................................................................................12

**CODE OF FEDERAL REGULATIONS**

1 C.F.R. § 21.1 ..............................................................................................................24

40 C.F.R. § 233.10 .........................................................................................................12

40 C.F.R. § 233.53 .........................................................................................................21

40 C.F.R. § 233.53(c)(1) ..................................................................................................5

**FEDERAL REGISTER**

85 Fed. Reg. 57,853 (Sept. 16, 2020) ...............................................................12, 13, 22

86 Fed. Reg. 469 (Jan. 6, 2021) .......................................................................................5

**OTHER AUTHORITIES**

H. Rep. No. 1980, 79th Cong. 2d Sess. (1946)...............................................................................5

Klain Memorandum (Jan. 20, 2021), available at
    https://www.whitehouse.gov/briefing-room/presidential-
    actions/2021/01/20/regulatory-freeze-pending-review/.......................................................1, 4, 6

**INTRODUCTION**

Consistent with decades of Clean Water Act ("CWA") State program approvals, the U.S. Environmental Protection Agency ("EPA") approved Florida's Section 404 Program by notice effective upon publication in the Federal Register, which means Florida now has *primary* responsibility (with Federal oversight) for wetlands permitting within the State. More than five months after the arrival of a new administration, Plaintiffs continue to seek an audience to heed their unfounded objections to Florida's program. Over a dozen times in their reply brief, Plaintiffs point to the "Klain Memo"—an Inauguration Day memorandum from the White House Chief of Staff — to support procedural claims that Plaintiffs should have been able to *request* a "stay" and "reconsideration" of EPA's approval, without regard to whether those would ever have been granted. Plaintiffs press this argument even though the Klain Memo was issued several weeks *after* EPA's approval, provides no enforceable rights to third parties, and only gives guidance to the "Heads of Executive Departments and Agencies."

Dissatisfied with EPA's refusal to reconsider Florida's program approval, Plaintiffs begin their reply brief by attacking EPA's "institutionalist prerogative" and demanding that this Court give Plaintiffs the opportunity to force EPA to decide three questions. First, "whether and when to give effect to [Florida's] program." (EPA already answered this question consistent with law and past practice). Second, "whether to stay the rule's effectiveness to allow additional time to review, as intended by the Klain Memo." (EPA has consistently stated that its approval is not a "rule" and that the Klain Memo gives Plaintiffs no rights to relief). And third, "whether to reconsider or modify [Florida]'s approval." (The CWA already grants EPA authority to coordinate with Florida to modify Florida's program, if needed). In essence, Plaintiffs ask this Court to force a *policy discussion* between Plaintiffs and new EPA leadership so Plaintiffs can press them to reverse EPA's approval. There is a statute in place for that purpose. 33 U.S.C. § 1344(i). This Court should reject Plaintiffs'

efforts, especially with regard to Claims 8 and 9, which fail for lack of standing and on the merits.

However, this Court should not stop its justiciability review at Claims 8 and 9. None of Plaintiffs' claims are justiciable, for at least two reasons.

*One*, Plaintiffs do not show concrete and particularized harms arising from the mere transfer of *primary* permitting responsibility from the Federal government to the State of Florida—especially where EPA maintains permit-by-permit oversight, with the ability to federalize permits if Florida fails to resolve Federal concerns. *See Crow Creek Sioux Tribe v. Brownlee,* 331 F.3d 912, 917 (D.C. Cir. 2003). Plaintiffs relentlessly mischaracterize and speculate about how Florida's program will operate—neither of which can support standing.

*Two*, all of Plaintiffs' claims should be dismissed because Plaintiffs' requested relief (vacatur or remand of EPA's approval) would invariably lead to Florida's program being "deemed approved," per Section 404(h)(3). That outcome is not "absurd," "outlandish," or an "alternate reality," as Plaintiffs suggest. In fact, the D.C. Circuit consistently applies this logic in a line of cases holding that, when Congress "deems approved" a particular action for lapse of time, Congress creates *unreviewable* congressional action, not reviewable final agency action. Thus, because Florida's program would be "deemed approved" if it were vacated or remanded, Plaintiffs' claims are not redressable and are moot by operation of law.

Accordingly, Plaintiffs' motion for partial summary judgment should be denied and Florida's cross-motion to dismiss should be granted.

## ARGUMENTS

### I.    Plaintiffs Lack Standing to Bring Claims 8 and 9.

A basic principle of Article III jurisprudence is that "standing is not dispensed in gross." *E.g., Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citations omitted). Rather, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that

is sought." *Id*. Plaintiffs conflate their numerous standing arguments and fail to establish standing for each claim under each applicable standing doctrine.

For each of their claims, Plaintiffs must establish either "organizational standing," to sue on their own behalf, or "associational standing," to sue on behalf of their members. *See Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 17 (D.D.C. 2018). For organizational standing, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). For associational standing, Plaintiffs must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011) (citation omitted).

For procedural claims like Claims 8 and 9, courts must consider if "(1) the government violated their procedural rights designed to protect their threatened concrete interest, and (2) the violation resulted in injury to their concrete, particularized interest." *Ctr. for Law and Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005). Additionally, establishing causation for procedural injuries "requires a showing of two causal links: one connecting the omitted [procedural step] to some substantive government decision that may have been wrongly decided because of the lack of [that procedural requirement] and one connecting that substantive decision to the plaintiff's particularized injury." *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 184 (D.C. Cir. 2017) (quoting *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 668 (D.C. Cir. 1996)). In other words, to confer standing "a procedural injury must be tethered to some concrete interest adversely affected by the procedural deprivation." *Ctr. for Biological Diversity v. Haaland*, No. 20-5088, 2021 WL 2206338,

at *1 (D.C. Cir. May 25, 2021) (quoting *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013)). Plaintiffs cannot demonstrate organizational or associational standing for Claims 8 or 9. Thus, those claims should be dismissed.

### A.    Plaintiffs Lack Standing for Claim 8.

For Claim 8, Plaintiffs contend that they were deprived of certain rights: a right to petition EPA to postpone the effective date of Florida's Section 404 program approval under 5 U.S.C. § 705; a right to petition EPA to reconsider the approval under 5 U.S.C. § 553(e); and a right to utilize the Klain Memo to obtain reconsideration. Dkt. 31 at 33; Dkt. 43 at 35–44. According to Plaintiffs, they have standing because a 30-day delay in the effective date would have prevented these procedural injuries from occurring. *Id*. Plaintiffs are wrong. As this Court recently reiterated, "the irreducible constitutional minimum of standing contains three elements: (1) injury-in-fact, (2) causation, and (3) redressability." *Ctr. for Biological Diversity v. Regan*, No. CV 21-119 (RDM), 2021 WL 1734921, at *3 (D.D.C. May 2, 2021) (internal citations and quotation marks omitted). Plaintiffs do not satisfy these elements for Claim 8, on their own or on behalf of their members.

### 1.    Plaintiffs do not show a procedural right under APA Sections 705 and 553(e) or the Klain Memo.

Plaintiffs argue that they have standing to challenge the immediate effective date of EPA's approval of Florida's Section 404 program because it deprived them of their procedural rights to petition EPA to postpone or reconsider the approval and because they were unable to benefit from the Klain Memo. *See* Dkt. 1 at 47. However, Plaintiffs do not have such rights. *See* Dkt. 37 at 31-38.

Plaintiffs cite *Environmental Defense Fund v. U.S. Environmental Protection Agency*, for the proposition that § 705 affords them a procedural right to request a stay. No. 21-00003 (BMM), 2021 WL 270246 (D. Mont. Jan. 27, 2021). Dkt. 43 at 22. However, that case is not binding, involved

4

substantive rulemaking,[1] and thus is hardly persuasive, which is evident as Plaintiffs only cite it in passing. The Montana court merely presumed the existence of a procedural right under § 705 without analyzing the statutory text. Section 705 simply provides that "an agency" may postpone the effective date of its actions when it finds that justice so requires. The provision does not create an enforceable procedural right for third parties.

Plaintiffs also rely on *Omnipoint Corporation v. Federal Communications Commission* to contend that a "postponement" under § 705 necessarily "protects the interests" of persons challenging the rule. 78 F.3d 620, 630 (D.C. Cir. 1996). But *Omnipoint* does not discuss or even cite to § 705. *See id.* (discussing § 553(d)(3)'s good cause exemption and not § 705).[2]

Similarly, and contrary to Plaintiffs' assertion, § 553(e) does not entitle them to a pre-effective date reconsideration. Dkt. 43 at 39. Instead, Section 553(e) simply requires agencies to provide a general, non-time-specific right to seek "issuance, amendment, or repeal" of a rule. 5 U.S.C. § 553(e). No specific right under § 553(e) has been violated where Plaintiffs' right to seek reconsideration, if any such right exists, is unaffected. *See* Dkt. 35 at 19 n. 5; *see also St. Croix Chippewa Indians of Wisconsin v. Kempthorne*, No. 07-2210 (RLJ), 2008 WL 4449620, at *7 n.17 (D.D.C. Sept. 30, 2008) (dismissing all of plaintiff's claims because they "failed to identify a *specific* procedural right that has been violated") (emphasis added) (citing *Ctr. for Law and Educ.,* 396 F.3d at 1157). Moreover, to the extent § 553(e) requires EPA to provide an opportunity to seek reconsideration, EPA has done so. 33 U.S.C. § 1344(i); 40 C.F.R. § 233.53(c)(1) (authorizing an interested person to petition EPA to commence withdrawal proceedings for a State 404 program). In

---

[1] *See* 86 Fed. Reg. 469 (Jan. 6, 2021).
[2] Plaintiffs also incorrectly argue that the APA's legislative history recognizes a procedural right to a stay, *see* Dkt. 43 at 36. The language they cite merely recognizes that § 705 "permits either agencies or courts" to use their stay authority to preserve the status quo, and says nothing about any procedural right for others. H. Rep. No. 1980, 79th Cong. 2d Sess. 277 (1946).

any event, §553(e) gives no right to a time-specific reconsideration or stay of any kind.[3]

Similar reasoning undermines Plaintiffs' repeated reliance on the Klain Memo, which is simply an internal Executive Branch Inauguration Day memorandum that "asks" agency heads to "consider postponing" the effective date of "rules that have been published in the *Federal Register*" for 60 days. Klain Memo. (Jan. 20, 2021), available at https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/regulatory-freeze-pending-review/. The Klain Memo does not grant Plaintiffs or their members a procedural right, much less one that was injured at more than a speculative level. *See, e.g., Ctr. for Law and Educ.*, 396 F.3d at 1157; *see also* Dkt. 34 at 32-34.

### 2. Plaintiffs show no cognizable injury from the lack of a 30-day delay in effective date.

Even assuming that the APA required EPA to delay the effective date of its approval—which it does not—this alleged procedural harm cannot, on its own, sustain the Court's subject matter jurisdiction. The Supreme Court has made clear that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Yet, this is precisely what Plaintiffs claim here—a right in a void. "Without an imminent threat of injury traceable to" the alleged procedural violation, standing does not exist. *Nat'l. Ass'n of Home Builders v. EPA*, 667 F.3d 6, 15 (2011).

Plaintiffs cannot identify any concrete injuries that they, or their members, have suffered as a result of EPA's immediate approval of Florida's program. First, Plaintiffs assert that the lack of a

---

[3] Where Congress has expressly provided for avenues of altering approval of a State 404 program, no inherent reconsideration authority should be recognized. *See Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86-87 (D.C. Cir. 2014); *see also Ranbaxy Labs., Ltd. v. Burwell*, 82 F. Supp. 3d 159, 193 n.25 (D.D.C. 2015) ("Unsurprisingly, the Supreme Court found that when Congress has set forth a specific mechanism to review and revoke previous decisions, the agency may not rely on its inherent authority to act outside of the authority Congress has inferred").

30-day delay "forced [them] immediately to expend resources and staff time to gather information on new and transferred 404 permit applications … while trying to continue their advocacy against pending permit applications threatening their interests and those of their members." Dkt. 31 at 41. However, as previously detailed, these alleged injuries were self-inflicted at best and non-existent at worst. Dkt. 37 at 35-38. With this claim, Plaintiffs attempt to lower the standing bar, essentially arguing that the mere need for more time to understand Florida's program should be considered a cognizable injury for standing purposes. But, it is not.

Second, Plaintiffs have not asserted any harms that stem directly from the lack of a 30-day delay—each alleged harm flows from Florida's *future* grant of pending permit applications. Plaintiffs attempt to camouflage this deficiency by directing the Court to review nearly the entire standing argument section of its prior brief. Dkt. 43 at 40 n.21. But, Plaintiffs' "list of immediate and on-going harms" conflate organizational injuries with members' injuries, and in fact, does not show any *member* injuries other than those related to future permit grants. For its part, the United States sidesteps this issue and leaves the door to standing for Claim 8 cracked slightly open for "legally cognizable injuries" that Plaintiffs may have incurred during "the 30-day interval." *See* Dkt. 45 at 5-6. Yet neither the United States nor Plaintiffs identify any such "legally cognizable injuries" in that short time window. The United States and Florida are in full agreement that any purported harms arising after the 30-day interval (i.e., after January 21, 2021) are clearly not justiciable. Dkt. 45 at 6.

Plaintiffs' second Declaration by Amber Crooks, Dkt. 43-1, further highlights the lack of injury from Claim 8. That declaration explains that the permit file for the "Fleischmann Development" (a permit application of concern to Plaintiffs) was transferred to FDEP on February

16, 2021[4] and simply shows that FDEP is reviewing the application in the normal course, has asked the applicant for additional information, and expects to make a decision on the application in the next several months. Dkt. 43-1 at 2. FDEP's boilerplate language about a general "desire" for "prompt turnaround times" is not a basis for standing, *id*. at 2. Likewise, whether the effective date of Florida's program was earlier than discussed with FDEP staff (as asserted by Plaintiffs, Dkt. 43-1 at 3) does not support any actual injury, and the Crooks declaration makes no factual showing concerning any expectations of a 30-day delay in the effective date. At bottom, Plaintiffs cannot show that the earlier-than-desired effective date concretely impaired their ability to review or challenge any particular permit—nor could they given that Plaintiffs have had ample opportunity to participate in the process and FDEP still has not granted a single permit of concern to Plaintiffs.

### 3. Plaintiffs' asserted injuries are not "fairly traceable to the challenged action of the defendant."

A cognizable injury must be "tethered to some concrete interest adversely affected by the procedural deprivation" and "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party." *Ctr. for Biological Diversity,* 2021 WL 1734921, at *1, *3 (quotations omitted). Plaintiffs incorrectly argue that they "easily meet the causation requirement since the loss of their procedural rights is directly attributable to EPA's failure to abide by the thirty-day delay." Dkt. 43 at 50.

First, Plaintiffs try to evade the "tethering" requirement between their alleged procedural injuries and their claimed concrete interests, arguing that "courts are always careful to clarify that [standing for a procedural injury] does not require proof that the omitted procedure would have affected the substantive action." Dkt. 43 at 51. However, the single, and presumably best, case

---

[4] Note that the transfer date of this file is several weeks *after the purportedly required 30-day window* that, even if this Court accepted Claim 8, would be applicable under *Prows*, *see infra* Argument I.A.4.

Plaintiffs cite for this proposition, *City of Dania Beach, Fla. v. Federal Aviation Administration.*, 485 F.3d 1181 (D.C. Cir. 2007), involves facts that are hardly similar to the current case. In that case, plaintiffs alleged that the government rerouted aircraft to a runway near plaintiffs' homes, without first satisfying NEPA. *Id.* at 1183-84, 86. The court explained that this failure resulted in "distinct risks" to plaintiffs' "particularized interests" (i.e., severe noises, smells, and exhaust residues at their homes). *Id*. Here, Plaintiffs have not alleged "distinct risks" to their "particularized interests," like the plaintiffs in *City of Dania Beach*, but only speculative risks to their generalized interests. *See* Dkt. 37 at 34, 50-55, 58.

Second, Plaintiffs erroneously invoke *City of Waukesha v. EPA*, 320 F.3d 228 (D.C. Cir. 2003), to support their argument that "a violation of the procedural requirements of a statute is sufficient to grant a plaintiff standing to sue, so long as the procedural requirement was designed to protect some threatened concrete interest of the plaintiff." Dkt 43 at 39-40. Notably, Plaintiffs omit the court's subsequent statement that procedural injuries must be "linked to some substantive government decision that may have been wrongly decided because of the lack of the procedure." *City of Waukesha*, 320 F.3d at 234  (explaining that the failure to conduct a cost-benefit analysis is linked to whether certain regulations were overly costly compared to the benefits they would provide). Unlike in *City of Waukesha*, Plaintiffs' alleged procedural injuries are not "linked" to EPA's "substantive" decision. Indeed, the absence of a 30-day delay *post*-dates and is untethered to EPA's earlier decision to approve Florida's application.[5]

Thus, Plaintiffs cannot establish causation and lack standing to raise Claim 8.

---

[5] Although Plaintiffs state that they have shown "there has been a procedural omission, there are harms that flow from said procedural omission, and there are harms that flow from EPA's substantive decision," they tellingly stop short of addressing how EPA's alleged procedural omission is linked to EPA's substantive decision, Dkt. 43 at 51-52, as required by this Circuit, *see e.g., City of Waukesha*, 320 F.3d at 234 (citations omitted).

**4.    Plaintiffs' asserted injuries under Claim 8 are not redressable.**

For "redressability," it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision of the court." *Ctr. for Biological Diversity,* 2021 WL 1734921, at *3 (citing *Lujan*, 504 U.S. at 561). But the sole remedy for a 30-day delay violation is moving the rule's effective date to where it should have been. *Prows v. U.S. Department of Justice*, 938 F.2d 274, 276 (D.C. Cir. 1991). Merely resetting the rule's effective date from December 22, 2020, to January 21, 2021, would not redress Plaintiffs' alleged injuries. Even if Plaintiffs could circumvent *Prows*, they seek only that EPA's immediate effective date be set aside. Such a ruling would not provide Plaintiffs with any new, non-speculative opportunities to urge reconsideration of EPA's approval.

Despite Plaintiffs' assertion, *Prows* is not limited to the facts of that case. Dkt. 43 at 46-49. Instead, it speaks to *all* 30-day delay violations: "We join the other circuits that have addressed the matter in holding that violations are remedied by denying such a rule effectiveness for the mandated 30 days, allowing it to take effect in full thereafter." *Prows,* 938 F.2d at 275. As such, *Prows* controls the present case. *See* Dkt. 37 at 39-41. The *Prows* rule "protects those who are affected by agency action taken during the 30-day waiting period without disturbing later action that is not the product of the violation." *Id.* at 276. Plaintiffs have not shown that they sustained any injuries during the 30-day period that would be redressed by moving the effective date and thus lack standing on this additional basis.

As of the filing of this brief, it has been more than 290 days since EPA received Florida's complete program application and more than 165 days since EPA published its approval of Florida's program in the *Federal Register*. Plaintiffs were fully aware of the 120-day timeframe for EPA to act on Florida's application and had time to prepare for Florida's assumption. Furthermore, Florida did not approve or issue any individual permits to Section 404 permit applicants during the 30-day period when Plaintiffs contend that the program should not have been in effect, and Plaintiffs have not cited

to any permits that have actually been issued by FDEP during the preceding five months that are of specific concern to them. In fact, as of the date of filing for this brief, Florida has approved only four individual permits under its Section 404 authority (none of which involve Plaintiffs' concerned projects). As a result, Plaintiffs requested declaratory and injunctive relief would not redress the risks of their alleged harms (i.e., future permit impacts and resource diversions during the 30-day period). *Pub. Citizen,* 297 F. Supp. 3d at 21 n.5 (D.D.C. 2018) (citations omitted).

**B.      Plaintiffs Lack Standing for Claim 9.**

Plaintiffs allege that approval of Florida's program without codification in the C.F.R. caused "Plaintiffs and their members … risks of harm from 404 permits to be issued by the state." Dkt. 31 at 48-49. These "risks of harm" are unrelated to the lack of codification and are far too speculative to be "concrete injuries." Dkt. 37 at 42-43. Furthermore, Plaintiffs have not shown a procedural right to codification that is designed to protect their concrete interests. They only assert that "codification is required to legally transfer a 404 program from the federal government to the state." Dkt. 43 at 52. Setting aside the lack of substantive merit for that point, *see infra* Argument III; Dkt. 45 at 15-17. Plaintiffs simply are not harmed in any way by a lack of codification here.

**1.      Plaintiffs had actual notice of Florida's program irrespective of codification.**

Plaintiffs wrongly assert that, because Florida's program is not yet codified, it has "not received *actual notice* of what the approved program contains." Dkt. 43 at 59 (emphasis added). Florida's approved program consists of the program that it adopted by regulation in a State rulemaking process that Plaintiffs closely monitored and participated in. Dkt. 37 at 21. Even after commenting on Florida's regulations, Plaintiffs did not seek further administrative or judicial review of the State's regulations, *id.*, despite Plaintiffs knowing that the effective date of those regulations was tied to EPA's approval of Florida's program. *See* AR-002-A51; Fla. Stat. § 373.4146(2).

Plaintiffs similarly contend that they "have not received actual notice of what the approved program contains" because "it is not at all clear that [Florida's regulations] reflect the entirety of the approved program." Dkt. 43 at 59. Plaintiffs are wrong. They had actual notice of the required elements as required by 40 C.F.R. § 233.10. *See* 85 Fed. Reg. 57,853, 57,854-55 (Sept. 16, 2020) (describing the required elements for a State 404 application and stating that Florida's application contains those elements).

Plaintiffs also note that "[e]ven if actual notice were found under these facts, Plaintiffs are still being harmed by the operation of a program that was not codified." Dkt. 43 at 60. For support, they rely on a Third Circuit opinion for the proposition that the C.F.R. is "intended to give general public rights of access, especially those who by profession must have access to the law." *Id.* (quoting *Cervase v. Off. of the Fed. Reg.*, 580 F.2d 1166, 1172 (3d Cir. 1978) (internal citations omitted)). However, that statement was made in the context of a strikingly different injury than Plaintiffs allege here. *Cervase*, 580 F.2d at 1172 (alleging that the agency prepared only a table of contents of a new code "making it almost impossible for [the public] to know which federal regulations apply to them"). As previously discussed, Plaintiffs knew exactly what regulations would apply to them. *See* Dkt. 37 at 21. The plaintiff in *Cervase* did not.

Furthermore, Plaintiffs identify just one purported example of "additional components [of the program] that are not reflected in state regulations"—and that is the "technical assistance process" for considering and addressing impacts to protected fish and wildlife species. Dkt. 43 at 59. But that process was detailed in Florida's program application, including within the "Memorandum of Understanding Between the Florida Fish and Wildlife Conservation Commission, the United States Fish and Wildlife Service and the Florida Department of Environmental Protection." *See* AR-0016-Appendix J-2 at 4-11. That publicly available memorandum explains exactly how the relevant

agencies were already providing "technical assistance" on species impacts under the previous federal program and how that process would continue and expand under Florida's program. AR-0016-Appendix J-2 at 5-6. In particular, the memorandum describes the formation of an "Endangered and Threatened Species Technical Team" to ensure compliance with Federal and State endangered species requirements, along with an "interagency elevation process" to resolve "potential conflicts or disagreements." AR-0016-Appendix J-2 at 8-10. Other aspects of the technical assistance process are addressed elsewhere in Florida's application materials, which were publicly available, 85 Fed. Reg. at 57,855-56. *See* AR-0007-AI, Appendix (a)-1, at 17-18, 21-24.

With regard to the species review process, Plaintiffs' objection seems to be that the biological opinion provides *more details* about the technical assistance process than was included in the application itself. Dkt. 43 at 59. But that also does not injure Plaintiffs and is consistent with typical Endangered Species Act ("ESA") consultation processes that accompany many federal actions.

As previously explained, Dkt. 37 at 22, EPA designated FDEP as the non-Federal representative to consult with the U.S. Fish and Wildlife Service ("USFWS") under ESA Section 7, 16 U.S.C. § 1536. AR-0635, AR-0636. In turn, FDEP submitted a biological evaluation to USFWS concerning the impact of Florida's Section 404 Program on federally listed species and critical habitat, AR-0387-A8, and on November 17, 2020, USFWS issued a biological opinion to accompany EPA's determination concerning Florida's 404 assumption request. AR-0642 at 12-14.

When EPA is taking any federal action (whether approving a State 404 program or approving another order or rule), the public has no right to comment on, or otherwise access in advance, a biological opinion under ESA Section 7. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 660 n. 6 (2007) (explaining that there is not an "independent right to public comment with regard to consultations conducted under § 7(a)(2)" of the ESA). Even in a substantive rulemaking

context, courts have rejected claims for access to information in a biological opinion in advance of the final rule's publication. *Cooling Water Intake Structure Coal. v. EPA*, 905 F.3d 49, 78-79 (2d Cir. 2018) (finding no violation of notice and comment procedures arising from use of a biological opinion that accompanied rulemaking where public notice fairly apprised interested persons of the rulemaking's contents). Florida's Section 404 program does not lack any required information, and there is no requirement for advance public notice and comment on the biological opinion, as Plaintiffs assert.

Plaintiffs' contention that they have suffered informational injury because they were "denied access to critical environmental information provided as part of a federal agency's NEPA analysis and ESA consultation" is incorrect. Dkt. 43 at 67-68. NEPA does not apply to EPA's review and approval of a State Section 404 program. 33 U.S.C. § 1371(c)(1). Plaintiffs acknowledge this, but then complain that subsequent permitting actions by Florida would not be subject to NEPA, which they claim will deprive them of information. Dkt. 43 at 69-70. But, again, the alleged informational deprivation for future permitting actions is speculative and is the result of Section 404 and NEPA themselves, not EPA's lack of codification.[6]

## 2.    Plaintiffs do not establish causation or redressability for Claim 9.

As shown in the United States' reply brief, *see* Dkt. 45 at 9-11, codification is an after-the-fact process wholly unrelated to EPA's substantive approval of Florida's program, and requiring EPA to codify now would have no bearing on its underlying approval decision or any of Plaintiffs' other alleged injuries. *See* Dkt. 37 at 43; Dkt. 35 at 21-23. Thus, Plaintiffs' alleged procedural injury is not tethered to EPA's substantive decision. Likewise, Plaintiffs' requested relief for Claim 9 would not

---

[6] NEPA review is limited to "major federal actions," which excludes the issuance of state permits under federally-approved or delegated programs. *See* 42 U.S.C. § 4332(2)(C). Likewise, conducting ESA consultation for this program did not trigger a separate obligation to conduct a NEPA analysis. *Cooling Water Intake Structure Coal*, 905 F.3d at 73 n.15.

redress Plaintiffs' and their members' asserted injuries. Codification would not, for example, restrict Florida from implementing its program or issuing future permits.

## II.     Plaintiffs Lack Standing to Bring Claims 8 and 9 for Additional Reasons that Defeat All of Their Claims.

Plaintiffs' complaint should be dismissed in its entirety because Plaintiffs fail to establish any concrete, particularized injuries to support standing for any of their or their members' claims. Plaintiffs' standing theory relies on their largely unspoken contention that Florida's administration of its Section 404 permitting program will cause greater harm to Florida's natural resources than the pre-existing federally administered program. Plaintiffs' speculation conflicts with the CWA and cannot constitute a concrete injury.

Florida's program simply stands in for the Federal program in certain areas of the State, all with the substantial ongoing involvement of the Federal government to assure compliance with Federal law. Plaintiffs also retain robust rights to participate in the State permitting process and may challenge any permit they deem objectionable. *See* Dkt. 37 at 45-50.

Plaintiffs falsely assert that "EPA has waived much of its oversight" over Florida's program. Dkt. 43 at 21 n.2. To the contrary, EPA has identified categories of permitting activities that necessitate EPA's close, ongoing scrutiny consistent with Section 404(k)(1). AR-0018 at 5-6. EPA maintains significant oversight and involvement in all permitting activities Plaintiffs have cited as controversial in their complaint and briefs. Plaintiffs cannot (and do not) argue that EPA has waived oversight of any of the permitting actions that are the basis for any injury alleged here.

Thus, relative to the *status quo ante* in Florida, EPA's approval of Florida's program causes no concrete, cognizable injury to Plaintiffs. For this reason, Plaintiffs' entire complaint must be dismissed. *Crow Creek Sioux Tribe,* 331 F.3d at 917 (finding no standing where the "transfer" to State jurisdiction "effects no legal change that would lessen the protection of the Tribe's cultural

heritage" or impede the relevant federal agency from enforcing cultural protection statutes).

### A. Plaintiffs and Their Members Have Suffered No Injuries From the Transfer of *Primary* Permitting Responsibility to the State of Florida.

Plaintiffs assert that EPA's approval creates a "substantial risk" of injury to their members' interests based on the possibility that FDEP—a third party—will grant certain permit applications. Dkt. 31 at 35; Dkt. 43 at 64-65. These alleged injuries are too speculative to support standing.

For example, Plaintiffs allege that "Florida's program causes concrete injuries to Plaintiffs in two primary ways. First, it injures Plaintiffs' aesthetic, recreational, and other interests. Dkt. 43 at 75. Second, it injures Plaintiffs' organizational interests in protecting waters of the United States, including wetlands, and the threatened and endangered species which rely on them." *Id*. However, Plaintiffs have proffered no support for these assertions. *See* Dkt. 43 at 75-76.

To meet their burden, Plaintiffs must demonstrate that EPA's approval injured their aesthetic, recreational, and other interests *more than the pre-existing status quo*. *See Crow Creek Sioux Tribe*, 331 F.3d at 917. They have not and cannot do this. Plaintiffs have proffered no evidence of any concrete, particularized harms caused solely by Florida making some Section 404 permitting decisions instead of the Federal government. *See Ctr. for Biological Diversity*, 2021 WL 1734921, at *4 (D.D.C. May 2, 2021) ("[T]he mere prospect that the Florida permitting authorities might rule against one of Movants' members in the future on an issue that the member might then raise under the Florida APA, where that member would be unable to raise a similar (or equally effective) challenge under the federal APA, is too speculative to support Article III jurisdiction.").

Plaintiffs' criticism of *Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) is unfounded. Dkt. 43 at 56-57. Florida correctly cited *Arpaio* for the proposition that "Courts must reject vague and overly speculative predictions about future events. Especially for future actions to be taken by third parties and for predictions of future injury that are not normally susceptible of labeling as true or false."

Dkt. 37 at 50. In trying to distinguish its injuries from those in *Arpaio*, Plaintiffs argue that "[h]ere, the action to be taken by a third party is certain: FDEP will administer the state 404 program to issue permits; those permits will cause wetlands destruction and will likely impact protected species." Dkt. 43 at 56. But Plaintiffs never assert how FDEP permits would impact specific wetlands or species any differently than U.S. Army Corps of Engineers ("Corps") permits, particularly given ongoing federal oversight. These are exactly the types of "vague and overly speculative predictions about future events" the *Arpaio* court contemplated.

Plaintiffs also contend that Florida has conceded that a conflict could occur if FDEP implements its program "in a way that allegedly provides less substantive protection than the Corps' implementation would have." Dkt. 43 at 74. This mischaracterizes Florida's position. Florida simply explained that Section 404 provides a mechanism for EPA and the Corps to step in—before a final permitting action—to address deficiencies *if* they arise. Dkt. 37 at 54. For their part, Plaintiffs paint a caricature of State assumption that is detached from applicable law. States do not unilaterally take over and control permitting actions after assuming Section 404 responsibilities; to the contrary, under Congress's cooperative federalism framework, the Federal government and States continuously collaborate on program implementation. Plaintiffs cannot show that conflicts with Federal administration are likely to arise, much less that the Federal agencies would fail to adequately resolve any conflicts that do arise. Thus, Plaintiffs' unsubstantiated and unspecific fear of undefined future harms attributable to Florida's issuance of permits does not support standing. Dkt. 37 at 49-50.

### B.    The *PETA* Case Does Not Support Plaintiffs' Standing for Purported Informational Injuries.

Plaintiffs continue to assert that they can establish organizational standing under *People for the Ethical Treatment of Animals ("PETA") v. U.S. Department of Agriculture*, 797 F.3d 1087 (D.C. Cir. 2015). *See* Dkt. 43 at 71-72. However, as previously detailed, *PETA* is not controlling. Dkt. 37

at 58-59.[7] But even if it were, it would not confer standing on Plaintiffs.

In *PETA*, an animal rights group alleged that the government's inaction harmed PETA by depriving it of inspection reports that it uses to educate the public. *Id*. at 1095. These inspection reports would have been generated with respect to specific facilities that PETA complained were violating the Animal Welfare Act, and then made available online. *Id*. To support its allegations, PETA filed declarations identifying concrete harm to its organizational activities, including statements about its preexisting and attempted complaint filings and the amount of increased expenditures it suffered due to the government's inaction. *Id*. at 1094-96. Reasoning that the denial of this information was "concrete and specific to the work in which [PETA] [was] engaged," the D.C. Circuit held that PETA's organizational interest was harmed sufficient to confer standing. *Id*.

Plaintiffs here have not identified any loss of information that is "concrete and specific" to its mission, as PETA did. *See* Dkt. 37 at 59. Nor have Plaintiffs documented the actual amount of increased expenditures they suffered as a result of Florida's approval, as PETA did. *Id.* Instead, they allege a generalized loss of "crucial environmental information" that they expect would help them "advocate for wetlands and species protections." Dkt. 43 at 71-72. Similarly vague, they assert that they "were forced to divert resources" because Florida now administers its Section 404 program. *Id.* at 71. However, unlike PETA, Plaintiffs provide no specificity and thus lack standing under that case.

In fact, a recent D.C. Circuit opinion, *Center for Biological Diversity v. Haaland*, shows that Plaintiffs must articulate a "sufficiently concrete and particularized informational injury" for

---

[7] Additionally, Plaintiffs argue Florida is wrong to rely on *Electronic Privacy Information Center. v. Presidential Advisory Commission on Election Integrity*, 878 F.3d 371 (D.C. Cir. 2017). However, despite spending several pages attacking Florida's reasoning, Dkt. 43 at 68-71, Plaintiffs nowhere address Florida's main contention—that Plaintiffs' alleged informational injuries are too speculative to confer standing, *see* Dkt. 37 at 56. *Electronic Privacy Information Center* simply requires Plaintiffs to show that EPA's approval injured Plaintiffs' organizational interests and that Plaintiffs used their resources to counteract that harm. 878 F.3d at 378. Plaintiffs have not and could not make that showing.

standing. 2021 WL 2206338, at *1. Plaintiffs have "provided no explanation pinpointing what information they have lost." *Id*. Instead, Plaintiffs generically assert that they "have been denied access to critical environmental information provided as part of a federal agency's NEPA analysis and ESA consultation." Dkt. 43 at 67. As previously discussed, however, a NEPA analysis is not required for EPA's challenged action as a matter of Federal law, and NEPA reviews will still be required in the future for certain projects that need a separate Federal authorization (for example, projects occurring on Federal lands). Dkt. 37 at 56.

### C.    Section 404's "Deemed Approved" Provision Requires Dismissal.

Consistent with Congress's intention that States should administer Section 404 programs, a State application is "deemed approved" if EPA does not act on it within 120 days of receipt. 33 U.S.C. § 1344(h)(3). Under D.C. Circuit caselaw, this type of statutory framework limits judicial review of EPA's approval of State programs. That outcome is not "absurd," "outlandish," or an "alternate reality," as Plaintiffs suggest, Dkt. 43 at 15, 77, 80; to the contrary, it is the logical result of Congress's statutory regime.[8]

Perhaps in recognition of this statutory framework, Plaintiffs attempt to creatively stipulate that "claims 8 and 9 do not seek vacatur of EPA's approval," Dkt. 43 at 76 n. 48, as vacatur would trigger the CWA's "deemed approved" provision. Rather, Plaintiffs' motion merely asserts procedural "harms [that] can be redressed by the opportunity to seek an agency stay pending judicial review." *Id.* at 15. Yet, Plaintiffs do not contest that these procedural claims are its means to the

---

[8] The United States agrees that "Florida would have assumed section 404 permitting responsibilities even if EPA had taken no further action after certifying that the State's application was complete," Dkt. 45 at 13 n. 3, but then simply asserts that the deemed approved provision "could not be triggered" where EPA actually has made a determination. *Id*. This position overlooks the logical consequences of remand or vacatur here: in that scenario, Florida's program would be deemed approved by operation of law due to the passage of time.

reversal of EPA's approval, which is Plaintiffs' requested relief for their other claims.[9] Dkt. 1 at 49-50. As such, Plaintiffs' requested procedural *and* substantive relief are unavailable as a matter of law because EPA lacks the authority to stay or reconsider the approval of the program by virtue of the deemed approved clause.

Plaintiffs seek to avoid this clear result by distinguishing EPA's *affirmative approval* of a State program from a situation where EPA did *not* act at all. Dkt. 43 at 76-77. This misses the point. Plaintiffs effectively concede, or at least do not contest, that their case would obviously be dismissed if EPA *took no action* and simply allowed the 120-day clock to run. In that situation, which was an available option to EPA, doing nothing would have insulated EPA's approval and Florida's program from Federal judicial review. That point is beyond dispute. By logical implication, then, if Plaintiffs were to obtain vacatur or even remand for reconsideration, no such actual relief could ensue, as the agency's time for action has lapsed. In other words, Plaintiffs' requested relief places them back in the situation where the deemed approved provision is triggered.

Plaintiffs call this result "absurd" and "outlandish." Dkt. 43 at 77, 80. Though they may disagree with Congress's policy choices and with its decision to use the deemed-approved mechanism to promote its interest in the expedited State administration of Section 404 programs, Plaintiffs cannot persuasively contradict the legislative history establishing those policies. Dkt. 37 at 4-5, 65-66. Plaintiffs' quarrels lie with Congress, not with any "agency action" taken by EPA.

Even if this Court could rely on practical and prudential considerations, they would not be

_____

[9] Since vacatur is Plaintiffs' requested remedy for their other claims, their suit invariably leads to a deemed approved scenario. To avoid that outcome, Plaintiffs acknowledge that "there is precedent for courts remanding state programs to EPA without vacatur," Dkt. 43 at 82, but fail to acknowledge that courts have never ordered the vacatur of EPA's approval of any State CWA program (except once, which was reversed). A remand without vacatur scenario does not create or support justiciability, as Plaintiffs readily admit that such relief would make Florida's program a "clear candidate" for "withdrawal," "amendment," or "reconsideration"—all of which are already available to Plaintiffs without this litigation.

compelling here. *See Pub. Citizen v. Fed. Regulatory Comm'n*, 839 F.3d 1165, 1171, n.4 (noting that "practical and prudential considerations, however compelling, cannot provide the basis for [this Court's] jurisdiction absent demonstrated final agency action and clear congressional authority"). EPA's hands would never be tied in a situation where Congress approved a State program that did not comply with the Section 404 requirements. Regardless of how a program is approved, EPA remains obligated to notify an administering State of any "corrective actions" necessary to comply with Section 404 or temporarily withdraw a State's program until such action has been taken. *See* 33 U.S.C. § 1344(i). And EPA must rationally act upon requests by interested persons to withdraw State program approvals that are operating in violation of Federal law. *See* 40 C.F.R. § 233.53.

Plaintiffs do not grapple with the *Sprint Nextel* line of cases or its implications for Section 404 program approvals. In fact, the D.C. Circuit has held at least three times that "deemed approved"-type language creates unreviewable congressional action. *See* Dkt. 37 at 60-67. The D.C. Circuit has held otherwise in only one case, *Amador County*, which involved vastly different "deemed approved" language that kept the action within the ambit of reviewability. *Id.* at 62. The table below illuminates the distinctions in statutory language in the *Sprint Nextel* line of cases:

| | *Sprint Nextel*, 508 F.3d 1129 | *AT&T Corp.*, 369 F.3d 554 | *Pub. Citizen*, 839 F.3d 1165 | *Amador County*, 640 F.3d 373 | *This Case* |
|---|---|---|---|---|---|
| **Statute** | 47 U.S.C. § 160(c) | 47 U.S.C. § 272(f)(1) | 16 U.S.C. § 824d(e) | 25 U.S.C. § 2710(d)(8)(C) | 33 U.S.C. § 1344(h)(3) |
| **Result** | **Unreviewable** | **Unreviewable** | **Unreviewable** | Reviewable | |
| **Clause** | Petition is "deemed granted if the Commission does not deny the petition for failure to meet the requirements" | Provision shall "cease to apply" unless FCC "extends such 3-year period by rule or order" | "proposed change . . . shall go into effect at the end of such period" | "compact shall be considered to have been *approved by the Secretary*" | "such program shall be deemed approved pursuant to paragraph (2)(A)…" |

Plaintiffs do not succeed in aligning the statutory provisions at issue in *Amador County* with the Section 404 language here. Plaintiffs assert that the "pursuant to" language in Section 404(h)(3)

is similar to the "consistent with" language at issue in *Amador County*. *See* Dkt. 43 at 78-79. However, Plaintiffs are wrong for two reasons. First, unlike in *Amador County*, Section 404's "deemed approval" would be an act of Congress, not EPA, with no agency reasoning or standard by which to review EPA's action on an approval. 640 F.3d at 382-83. Second, the "substantive requirements" Plaintiffs reference from Section 404(h)(1) are not contained in the "deeming clause" itself, as the substantive requirements were in *Amador County*. Thus, Plaintiffs try to effectively paste language from Section 404(h)(1) into 404(h)(3)'s "deeming clause" that Congress chose not to include as a limitation on the effect of the deemed approval.

Plaintiffs also try to avoid dismissal by arguing that the 120-day clock should not have begun to run since, in their view, EPA incorrectly determined that Florida's application contained a "full and complete description of the program." Dkt. 43 at 64. Florida's voluminous application is obviously adequate to trigger Congress's 120-day timeframe for EPA review purposes. *See* 85 Fed. Reg. at 57854-55 (describing the contents of Florida's application). Moreover, EPA's determination whether an application is "complete" is not even reviewable agency action. 5 U.S.C. § 704 (only final agency action reviewable); *id.* § 701(a)(2) (agency action not reviewable if committed to agency discretion by law); *see also Fed. Trade Comm'n v. Standard Oil Co.*, 449 U.S. 232, 241 (1980) (explaining that a "threshold determination that further inquiry is warranted" is not a "definitive statement of position," thus it is not final agency action); *Housing Study Group v. Kemp*, 736 F. Supp. 321, 331 (D.D.C. 1990) ("Agency action which merely initiates proceedings has no legal force, is not a definitive statement of position, and therefore is not final agency action ripe for review.").

As previously discussed, vacatur creates a situation as though the agency never acted in the first place. Dkt. 37 at 63; *see, e.g., Khadr v. United States*, 529 F.3d 1112, 1116 (D.C. Cir. 2008) (explaining that "[i]t has long been well established" that vacatur of a decision leaves it " 'without

any validity, force, or effect,' and requires that it be treated thereafter as though it never existed."). Likewise, remand without vacatur would leave EPA with no other recourse than to acknowledge by public notice, as was done by the FCC in the *Sprint Nextel* line of cases, that the application is deemed approved. Dkt. 37 at 63.

> **D.    Plaintiffs Do Not Seek Vacatur on the Basis of Claims 8 and 9.**

Plaintiffs state that "vacatur of EPA's approval is not the only remedy that would redress Plaintiffs' harms," Dkt. 43 at 15, that "Plaintiffs did not request vacatur in this motion," *id.* at 49, and that "Claims 8 and 9 do not seek vacatur of EPA's approval," *id.* at 76 n. 48. Thus, in no event should vacatur of EPA's approval be granted based on Plaintiffs' pending motion.

Nevertheless, Plaintiffs continue to seek vacatur for their other claims, stating: "if the Court were to vacate EPA's approval, this would not mean that the agency had never acted," *id.* at 77, and that, "even if EPA's decision is vacated and void, that does not mean that Florida's program would be deemed approved," *id.* at 80, and "the Court can vacate EPA's decision," *id.* at 81. The problem for Plaintiffs is that, if vacatur is their remedy for the other claims, their suit invariably leads to a deemed approved scenario that defeats redressability.

## III.    Claims 8 and 9 Fail on the Merits.

The United States has shown in its briefing (Dkt. 34 at 23-33, Dkt 45 at 11-17) why Plaintiffs eighth and ninth claims fail on the merits irrespective of justiciability. Florida agrees that Claims 8 and 9 lack merit. *See* Dkt. 37 at 67-74. Florida writes separately to address several specific arguments raised by Plaintiffs.

*First*, to downplay EPA's consistent track record, Plaintiffs conjure an erroneous distinction between EPA approvals of CWA programs under Section 402 and Section 404. Although there are

some important differences between those two programs,[10] none are relevant to the question of whether Section 402 and Section 404 program approvals may be treated as adjudicatory orders instead of substantive rules. EPA has consistently treated its approvals under both programs as notices that are effective immediately, and EPA has *never* delayed the effective date for a State CWA program for 30 days or more. Dkt. 37 at 18-19, 67-69; *see also* Dkt. 35 at 29-32.

Here, Plaintiffs erroneously argue that Sections 402 and 404 are "not the same" because "EPA has no discretion when approving state 402 programs," but "it does for 404 programs," citing a recent agency memorandum regarding ESA consultation where EPA "concluded that it has discretion regarding its approval of state 404 programs." Dkt. 43 at 22-23. Plaintiffs have a basic misunderstanding of the *kind* of discretion at issue in that memorandum, AR-0388-A2, which causes them to incorrectly draw parallels between *the lack of any discretion to approve a program that meets the statutory criteria* and *the presence of discretion to consider species impacts when evaluating a program* (which is present under Section 404 but not Section 402).

Nor are Section 402 or Section 404 approvals   "check the box" exercises, as Plaintiffs suggest. Dkt. 43 at 22. Both statutes have specific criteria that  EPA must consider when evaluating applications; Plaintiffs are wrong in saying "EPA has discretion when deciding whether to approve a 404 program." *Id.* at 22. Section 404, like Section 402, uses "shall approve" language, which provides no discretion. 33 U.S.C. § 1344(g)(2); *see also* 33 U.S.C. § 1342(b) (stating that EPA "shall approve" a State 402 program unless the criteria are not met). Again, this distinction is not relevant to whether EPA may properly treat approvals of State CWA programs as adjudicatory orders.

*Second*, contrary to Plaintiffs' insistence, *see* Dkt. 43 at 33-34; Dkt. 31 at 30, 1 C.F.R. § 21.1

---

[10] For example, unlike Section 404, Section 402 does not "deem approve" State program applications if no action is taken within a certain timeframe.

does not impose a codification requirement, *see* Dkt. 37 at 71. Plaintiffs have put forth no authority to support their novel position that Federal agencies are required to publish State laws in the Code of Federal Regulations. Section 404(h) details the State 404 program approval process. 33 U.S.C. § 1344(h)(2)(A). Per that process, Florida's program was approved on December 17, 2020, and became effective upon publication in the Federal Register on December 22, 2020. As directed by the statute, Florida notified the Corps "that it is administering" the Section 404 program on December 23, 2020. *See* Dkt. 37 at 24. The CWA does not require EPA to then codify Florida's program before the program is effective. The statute simply directs the Corps, upon notification by the State, to suspend the issuance of the Federal permits, 33 U.S.C. § 1344(h)(2)(A)(ii), and to transfer permit files to the State, *id.* § 1344(h)(4). And even if codification is somehow required (which it is not), Plaintiffs would not have suffered any injuries to their concrete and particularized interests from any lack of or delay in codification.

Even if Claims 8 and 9 had merit (which they do not), Florida previously showed that EPA's approval without a 30-day delay in effective date or codification is harmless error. Dkt. 37 at 72-74. Plaintiffs' reply brief say nothing to contradict the application of harmless error principles to the merits here.

## CONCLUSION

Accordingly, Plaintiffs' motion for partial summary judgment should be denied and Florida's cross-motion to dismiss is due to be granted.

Dated:  June 7, 2021.

Respectfully submitted,
BAKER BOTTS L.L.P.


*/s/ Jeffrey H. Wood*
Jeffrey H. Wood (D.C. Bar No. 1024647)
700 K Street, NW
Washington, D.C. 20001
Phone: (202) 639-7700
jeff.wood@bakerbotts.com

Lily N. Chinn (DC Bar No. 979919)
101 California Street
San Francisco, CA 94111
Phone: (415) 291-6200
lily.chinn@bakerbotts.com

Aaron M. Streett (TX Bar No. 24037561)
Harrison Reback (TX Bar No. 24012897)
(*pro hac vice*)
910 Louisiana Street
Houston, TX 77002-4995
Phone: (713) 229-1234
aaron.streett@bakerbotts.com
harrison.reback@bakerbotts.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of June 2021, I electronically filed the foregoing document using the CM/ECF system. Service was accomplished by the CM/ECF system.

Respectfully submitted,
BAKER BOTTS L.L.P.

*/s/ Jeffrey H. Wood*
Jeffrey H. Wood (D.C. Bar No. 1024647)
700 K Street, NW
Washington, D.C. 20001
Phone: (202) 639-7700
jeff.wood@bakerbotts.com