### § 470x–1. Repealed. Pub. L. 113–287, § 7, Dec. 19, 2014, 128 Stat. 3272

Section, Pub. L. 89–665, title IV, § 402, as added Pub. L. 102–575, title XL, § 4022, Oct. 30, 1992, 106 Stat. 4766, provided definitions for this part. See section 305301 of Title 54, National Park Service and Related Programs.

### § 470x–2. Repealed. Pub. L. 113–287, § 7, Dec. 19, 2014, 128 Stat. 3272

Section, Pub. L. 89–665, title IV, § 403, as added Pub. L. 102–575, title XL, § 4022, Oct. 30, 1992, 106 Stat. 4766, related to establishment of National Center for Preservation Technology and Training. See section 305302 of Title 54, National Park Service and Related Programs.

### § 470x–3. Repealed. Pub. L. 113–287, § 7, Dec. 19, 2014, 128 Stat. 3272

Section, Pub. L. 89–665, title IV, § 404, as added Pub. L. 102–575, title XL, § 4022, Oct. 30, 1992, 106 Stat. 4766; amended Pub. L. 106–208, § 5(a)(14), May 26, 2000, 114 Stat. 319, related to Preservation Technology and Training Board. See section 305303 of Title 54, National Park Service and Related Programs.

### § 470x–4. Repealed. Pub. L. 113–287, § 7, Dec. 19, 2014, 128 Stat. 3272

Section, Pub. L. 89–665, title IV, § 405, as added Pub. L. 102–575, title XL, § 4022, Oct. 30, 1992, 106 Stat. 4767, related to preservation grants. See section 305304 of Title 54, National Park Service and Related Programs.

### § 470x–5. Repealed. Pub. L. 113–287, § 7, Dec. 19, 2014, 128 Stat. 3272

Section, Pub. L. 89–665, title IV, § 406, as added Pub. L. 102–575, title XL, § 4022, Oct. 30, 1992, 106 Stat. 4767, related to grants and transfers, contracts and cooperative agreements, and appropriations. See section 305305 of Title 54, National Park Service and Related Programs.

### § 470x–6. Repealed. Pub. L. 113–287, § 7, Dec. 19, 2014, 128 Stat. 3272

Section, Pub. L. 89–665, title IV, § 407, as added Pub. L. 102–575, title XL, § 4022, Oct. 30, 1992, 106 Stat. 4768, related to National Park Service preservation. See section 305306 of Title 54, National Park Service and Related Programs.

## CHAPTER 1B—ARCHAEOLOGICAL RESOURCES PROTECTION

Sec.
470aa. Congressional findings and declaration of purpose.
470bb. Definitions.
470cc. Excavation and removal.
470dd. Custody of archaeological resources.
470ee. Prohibited acts and criminal penalties.
470ff. Civil penalties.
470gg. Enforcement.
470hh. Confidentiality of information concerning nature and location of archaeological resources.
470ii. Rules and regulations; intergovernmental coordination.
470jj. Cooperation with private individuals.
470kk. Savings provisions.
470ll. Annual report to Congress.
470mm. Surveying of lands; reporting of violations.

### § 470aa. Congressional findings and declaration of purpose

(a) The Congress finds that—

(1) archaeological resources on public lands and Indian lands are an accessible and irreplaceable part of the Nation's heritage;

(2) these resources are increasingly endangered because of their commercial attractiveness;

(3) existing Federal laws do not provide adequate protection to prevent the loss and destruction of these archaeological resources and sites resulting from uncontrolled excavations and pillage; and

(4) there is a wealth of archaeological information which has been legally obtained by private individuals for noncommercial purposes and which could voluntarily be made available to professional archaeologists and institutions.

(b) The purpose of this chapter is to secure, for the present and future benefit of the American people, the protection of archaeological resources and sites which are on public lands and Indian lands, and to foster increased cooperation and exchange of information between governmental authorities, the professional archaeological community, and private individuals having collections of archaeological resources and data which were obtained before October 31, 1979.

(Pub. L. 96–95, § 2, Oct. 31, 1979, 93 Stat. 721.)

#### SHORT TITLE

Pub. L. 96–95, § 1, Oct. 31, 1979, 93 Stat. 721, provided that: "This Act [enacting this chapter] may be cited as the 'Archaeological Resources Protection Act of 1979'."

#### GALISTEO BASIN ARCHAEOLOGICAL SITES PROTECTION

Pub. L. 108–208, Mar. 19, 2004, 118 Stat. 558, known as the "Galisteo Basin Archaeological Sites Protection Act", provided for the preservation, protection, and interpretation of nationally significant archaeological resources in the Galisteo Basin of New Mexico by designating Galisteo Basin Archaeological Protection Sites and their acreage and provided for addition, deletion or modification of the sites, administration, cooperative agreements, acquisition of land and interests, withdrawal of lands from mining and other public land laws, and construction of the Act.

### § 470bb. Definitions

As used in this chapter—

(1) The term "archaeological resource" means any material remains of past human life or activities which are of archaeological interest, as determined under uniform regulations promulgated pursuant to this chapter. Such regulations containing such determination shall include, but not be limited to: pottery, basketry, bottles, weapons, weapon projectiles, tools, structures or portions of structures, pit houses, rock paintings, rock carvings, intaglios, graves, human skeletal materials, or any portion or piece of any of the foregoing items. Nonfossilized and fossilized paleontological specimens, or any portion or piece thereof, shall not be considered archaeological resources, under the regulations under this paragraph, unless found in archaeological context. No item shall be treated as an archaeological resource under regulations under this paragraph unless such item is at least 100 years of age.

(2) The term "Federal land manager" means, with respect to any public lands, the Secretary of the department, or the head of any other

agency or instrumentality of the United States, having primary management authority over such lands. In the case of any public lands or Indian lands with respect to which no department, agency, or instrumentality has primary management authority, such term means the Secretary of the Interior. If the Secretary of the Interior consents, the responsibilities (in whole or in part) under this chapter of the Secretary of any department (other than the Department of the Interior) or the head of any other agency or instrumentality may be delegated to the Secretary of the Interior with respect to any land managed by such other Secretary or agency head, and in any such case, the term "Federal land manager" means the Secretary of the Interior.

(3) The term "public lands" means—
   (A) lands which are owned and administered by the United States as part of—
      (i) the national park system,
      (ii) the national wildlife refuge system, or
      (iii) the national forest system; and
   (B) all other lands the fee title to which is held by the United States, other than lands on the Outer Continental Shelf and lands which are under the jurisdiction of the Smithsonian Institution.

(4) The term "Indian lands" means lands of Indian tribes, or Indian individuals, which are either held in trust by the United States or subject to a restriction against alienation imposed by the United States, except for any subsurface interests in lands not owned or controlled by an Indian tribe or an Indian individual.

(5) The term "Indian tribe" means any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in, or established pursuant to, the Alaska Native Claims Settlement Act (85 Stat. 688) [43 U.S.C. 1601 et seq.].

(6) The term "person" means an individual, corporation, partnership, trust, institution, association, or any other private entity or any officer, employee, agent, department, or instrumentality of the United States, of any Indian tribe, or of any State or political subdivision thereof.

(7) The term "State" means any of the fifty States, the District of Columbia, Puerto Rico, Guam, and the Virgin Islands.

(Pub. L. 96–95, §3, Oct. 31, 1979, 93 Stat. 721; Pub. L. 100–588, §1(a), Nov. 3, 1988, 102 Stat. 2983.)

### REFERENCES IN TEXT

The Alaska Native Claims Settlement Act, referred to in par. (5), is Pub. L. 92–203, Dec. 18, 1971, 85 Stat. 688, as amended, which is classified generally to chapter 33 (§1601 et seq.) of Title 43, Public Lands. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of Title 43 and Tables.

### AMENDMENTS

1988—Par. (3). Pub. L. 100–588 substituted a period for semicolon at end.

### § 470cc. Excavation and removal

#### (a) Application for permit

Any person may apply to the Federal land manager for a permit to excavate or remove any archaeological resource located on public lands or Indian lands and to carry out activities associated with such excavation or removal. The application shall be required, under uniform regulations under this chapter, to contain such information as the Federal land manager deems necessary, including information concerning the time, scope, and location and specific purpose of the proposed work.

#### (b) Determinations by Federal land manager prerequisite to issuance of permit

A permit may be issued pursuant to an application under subsection (a) if the Federal land manager determines, pursuant to uniform regulations under this chapter, that—
   (1) the applicant is qualified, to carry out the permitted activity,
   (2) the activity is undertaken for the purpose of furthering archaeological knowledge in the public interest,
   (3) the archaeological resources which are excavated or removed from public lands will remain the property of the United States, and such resources and copies of associated archaeological records and data will be preserved by a suitable university, museum, or other scientific or educational institution, and
   (4) the activity pursuant to such permit is not inconsistent with any management plan applicable to the public lands concerned.

#### (c) Notification to Indian tribes of possible harm to or destruction of sites having religious or cultural importance

If a permit issued under this section may result in harm to, or destruction of, any religious or cultural site, as determined by the Federal land manager, before issuing such permit, the Federal land manager shall notify any Indian tribe which may consider the site as having religious or cultural importance. Such notice shall not be deemed a disclosure to the public for purposes of section 470hh of this title.

#### (d) Terms and conditions of permit

Any permit under this section shall contain such terms and conditions, pursuant to uniform regulations promulgated under this chapter, as the Federal land manager concerned deems necessary to carry out the purposes of this chapter.

#### (e) Identification of individuals responsible for complying with permit terms and conditions and other applicable laws

Each permit under this section shall identify the individual who shall be responsible for carrying out the terms and conditions of the permit and for otherwise complying with this chapter and other law applicable to the permitted activity.

#### (f) Suspension or revocation of permits; grounds

Any permit issued under this section may be suspended by the Federal land manager upon his determination that the permittee has violated any provision of subsection (a), (b), or (c) of section 470ee of this title. Any such permit may be

revoked by such Federal land manager upon assessment of a civil penalty under section 470ff of this title against the permittee or upon the permittee's conviction under section 470ee of this title.

#### (g) Excavation or removal by Indian tribes or tribe members; excavation or removal of resources located on Indian lands

(1) No permit shall be required under this section or under the Act of June 8, 1906 (16 U.S.C. 431),[1] for the excavation or removal by any Indian tribe or member thereof of any archaeological resource located on Indian lands of such Indian tribe, except that in the absence of tribal law regulating the excavation or removal of archaeological resources on Indian lands, an individual tribal member shall be required to obtain a permit under this section.

(2) In the case of any permits for the excavation or removal of any archaelogical[2] resource located on Indian lands, the permit may be granted only after obtaining the consent of the Indian or Indian tribe owning or having jurisdiction over such lands. The permit shall include such terms and conditions as may be requested by such Indian or Indian tribe.

#### (h) Permits issued under chapter 3203 of title 54

(1) No permit or other permission shall be required under chapter 3203 of title 54 for any activity for which a permit is issued under this section.

(2) Any permit issued under chapter 3203 of title 54 shall remain in effect according to its terms and conditions following the enactment of this chapter. No permit under this chapter shall be required to carry out any activity under a permit issued under chapter 3203 of title 54 before October 31, 1979, which remains in effect as provided in this paragraph, and nothing in this chapter shall modify or affect any such permit.

#### (i) Compliance with provisions relating to undertakings on property listed in the National Register not required

Issuance of a permit in accordance with this section and applicable regulations shall not require compliance with section 306108 of title 54.

#### (j) Issuance of permits to State Governors for archaeological activities on behalf of States or their educational institutions

Upon the written request of the Governor of any State, the Federal land manager shall issue a permit, subject to the provisions of subsections (b)(3), (b)(4), (c), (e), (f), (g), (h), and (i) of this section for the purpose of conducting archaeological research, excavation, removal, and curation, on behalf of the State or its educational institutions, to such Governor or to such designee as the Governor deems qualified to carry out the intent of this chapter.

(Pub. L. 96–95, §4, Oct. 31, 1979, 93 Stat. 722; Pub. L. 113–287, §5(d)(6), Dec. 19, 2014, 128 Stat. 3264.)

#### REFERENCES IN TEXT

The Act of June 8, 1906, referred to in subsec. (g)(1), is act June 8, 1906, ch. 3060, 34 Stat. 225, known as the Antiquities Act of 1906, which was classified generally to sections 431, 432, and 433 of this title. The Act was repealed and restated as section 1866(b) of Title 18, Crimes and Criminal Procedure, and sections 320301(a) to (c), 320302, and 320303 of Title 54, National Park Service and Related Programs, by Pub. L. 113–287, §§3, 4(a)(1), 7, Dec. 19, 2014, 128 Stat. 3094, 3260, 3272. For complete classification of this Act to the Code, see Tables. For disposition of former sections of this title, see Disposition Table preceding section 100101 of Title 54.

Following the enactment of this chapter, referred to in subsec. (h)(2), means following the enactment of Pub. L. 96–95, approved Oct. 31, 1979.

#### AMENDMENTS

2014—Subsec. (h)(1). Pub. L. 113–287, §5(d)(6)(A)(i), substituted "chapter 3203 of title 54" for "the Act of June 8, 1906 (16 U.S.C. 431–433),".

Subsec. (h)(2). Pub. L. 113–287, §5(d)(6)(A)(ii), substituted "chapter 3203 of title 54" for "the Act of June 8, 1906," in two places.

Subsec. (i). Pub. L. 113–287, §5(d)(6)(B), substituted "section 306108 of title 54" for "section 470f of this title".

### § 470dd. Custody of archaeological resources

The Secretary of the Interior may promulgate regulations providing for—

(1) the exchange, where appropriate, between suitable universities, museums, or other scientific or educational institutions, of archaeological resources removed from public lands and Indian lands pursuant to this chapter, and

(2) the ultimate disposition of such resources and other resources removed pursuant to chapter 3125 or chapter 3203 of title 54.

Any exchange or ultimate disposition under such regulation of archaeological resources excavated or removed from Indian lands shall be subject to the consent of the Indian or Indian tribe which owns or has jurisdiction over such lands. Following promulgation of regulations under this section, notwithstanding any other provision of law, such regulations shall govern the disposition of archaeological resources removed from public lands and Indian lands pursuant to this chapter.

(Pub. L. 96–95, §5, Oct. 31, 1979, 93 Stat. 724; Pub. L. 113–287, §5(d)(7), Dec. 19, 2014, 128 Stat. 3264.)

#### AMENDMENTS

2014—Par. (2). Pub. L. 113–287 substituted "chapter 3125 or chapter 3203 of title 54" for "the Act of June 27, 1960 (16 U.S.C. 469–469c) or the Act of June 8, 1906 (16 U.S.C. 431–433)".

### § 470ee. Prohibited acts and criminal penalties

#### (a) Unauthorized excavation, removal, damage, alteration, or defacement of archaeological resources

No person may excavate, remove, damage, or otherwise alter or deface, or attempt to excavate, remove, damage, or otherwise alter or deface any archaeological resource located on public lands or Indian lands unless such activity is pursuant to a permit issued under section 470cc of this title, a permit referred to in section 470cc(h)(2) of this title, or the exemption contained in section 470cc(g)(1) of this title.

#### (b) Trafficking in archaeological resources the excavation or removal of which was wrongful under Federal law

No person may sell, purchase, exchange, transport, receive, or offer to sell, purchase, or ex-

---

[1] See References in Text note below.

[2] So in original. Probably should be "archaeological".

change any archaeological resource if such resource was excavated or removed from public lands or Indian lands in violation of—

(1) the prohibition contained in subsection (a), or

(2) any provision, rule, regulation, ordinance, or permit in effect under any other provision of Federal law.

**(c) Trafficking in interstate or foreign commerce in archaeological resources the excavation, removal, sale, purchase, exchange, transportation or receipt of which was wrongful under State or local law**

No person may sell, purchase, exchange, transport, receive, or offer to sell, purchase, or exchange, in interstate or foreign commerce, any archaeological resource excavated, removed, sold, purchased, exchanged, transported, or received in violation of any provision, rule, regulation, ordinance, or permit in effect under State or local law.

**(d) Penalties**

Any person who knowingly violates, or counsels, procures, solicits, or employs any other person to violate, any prohibition contained in subsection (a), (b), or (c) of this section shall, upon conviction, be fined not more than $10,000 or imprisoned not more than one year, or both: *Provided, however*, That if the commercial or archaeological value of the archaeological resources involved and the cost of restoration and repair of such resources exceeds the sum of $500, such person shall be fined not more than $20,000 or imprisoned not more than two years, or both. In the case of a second or subsequent such violation upon conviction such person shall be fined not more than $100,000, or imprisoned not more than five years, or both.

**(e) Effective date**

The prohibitions contained in this section shall take effect on October 31, 1979.

**(f) Prospective application**

Nothing in subsection (b)(1) of this section shall be deemed applicable to any person with respect to an archaeological resource which was in the lawful possession of such person prior to October 31, 1979.

**(g) Removal of arrowheads located on ground surface**

Nothing in subsection (d) of this section shall be deemed applicable to any person with respect to the removal of arrowheads located on the surface of the ground.

(Pub. L. 96-95, §6, Oct. 31, 1979, 93 Stat. 724; Pub. L. 100-588, §1(b), (c), Nov. 3, 1988, 102 Stat. 2983.)

AMENDMENTS

1988—Subsec. (a). Pub. L. 100-588, §1(b), inserted ", or attempt to excavate, remove, damage, or otherwise alter or deface" after "deface".

Subsec. (d). Pub. L. 100-588, §1(c), substituted "$500" for "$5,000".

## § 470ff. Civil penalties

**(a) Assessment by Federal land manager**

(1) Any person who violates any prohibition contained in an applicable regulation or permit issued under this chapter may be assessed a civil penalty by the Federal land manager concerned. No penalty may be assessed under this subsection unless such person is given notice and opportunity for a hearing with respect to such violation. Each violation shall be a separate offense. Any such civil penalty may be remitted or mitigated by the Federal land manager concerned.

(2) The amount of such penalty shall be determined under regulations promulgated pursuant to this chapter, taking into account, in addition to other factors—

(A) the archaeological or commercial value of the archaeological resource involved, and

(B) the cost of restoration and repair of the resource and the archaeological site involved.

Such regulations shall provide that, in the case of a second or subsequent violation by any person, the amount of such civil penalty may be double the amount which would have been assessed if such violation were the first violation by such person. The amount of any penalty assessed under this subsection for any violation shall not exceed an amount equal to double the cost of restoration and repair of resources and archaeological sites damaged and double the fair market value of resources destroyed or not recovered.

(3) No penalty shall be assessed under this section for the removal of arrowheads located on the surface of the ground.

**(b) Judicial review of assessed penalties; collection of unpaid assessments**

(1) Any person aggrieved by an order assessing a civil penalty under subsection (a) may file a petition for judicial review of such order with the United States District Court for the District of Columbia or for any other district in which such a person resides or transacts business. Such a petition may only be filed within the 30-day period beginning on the date the order making such assessment was issued. The court shall hear such action on the record made before the Federal land manager and shall sustain his action if it is supported by substantial evidence on the record considered as a whole.

(2) If any person fails to pay an assessment of a civil penalty—

(A) after the order making the assessment has become a final order and such person has not filed a petition for judicial review of the order in accordance with paragraph (1), or

(B) after a court in an action brought under paragraph (1) has entered a final judgment upholding the assessment of a civil penalty,

the Federal land managers may request the Attorney General to institute a civil action in a district court of the United States for any district in which such person is found, resides, or transacts business to collect the penalty and such court shall have jurisdiction to hear and decide any such action. In such action, the validity and amount of such penalty shall not be subject to review.

**(c) Hearings**

Hearings held during proceedings for the assessment of civil penalties authorized by subsection (a) shall be conducted in accordance

with section 554 of title 5. The Federal land manager may issue subpenas for the attendance and testimony of witnesses and the production of relevant papers, books, and documents, and administer oaths. Witnesses summoned shall be paid the same fees and mileage that are paid to witnesses in the courts of the United States. In case of contumacy or refusal to obey a subpena served upon any person pursuant to this paragraph, the district court of the United States for any district in which such person is found or resides or transacts business, upon application by the United States and after notice to such person, shall have jurisdiction to issue an order requiring such person to appear and give testimony before the Federal land manager or to appear and produce documents before the Federal land manager, or both, and any failure to obey such order of the court may be punished by such court as a contempt thereof.

(Pub. L. 96–95, §7, Oct. 31, 1979, 93 Stat. 725.)

## § 470gg. Enforcement

### (a) Rewards

Upon the certification of the Federal land manager concerned, the Secretary of the Treasury is directed to pay from penalties and fines collected under sections 470ee and 470ff of this title an amount equal to one-half of such penalty or fine, but not to exceed $500, to any person who furnishes information which leads to the finding of a civil violation, or the conviction of criminal violation, with respect to which such penalty or fine was paid. If several persons provided such information, such amount shall be divided among such persons. No officer or employee of the United States or of any State or local government who furnishes information or renders service in the performance of his official duties shall be eligible for payment under this subsection.

### (b) Forfeitures

All archaeological resources with respect to which a violation of subsection (a), (b), or (c) of section 470ee of this title occurred and which are in the possession of any person, and all vehicles and equipment of any person which were used in connection with such violation, may be (in the discretion of the court or administrative law judge, as the case may be) subject to forfeiture to the United States upon—

(1) such person's conviction of such violation under section 470ee of this title,

(2) assessment of a civil penalty against such person under section 470ff of this title with respect to such violation, or

(3) a determination by any court that such archaeological resources, vehicles, or equipment were involved in such violation.

### (c) Disposition of penalties collected and items forfeited in cases involving archaeological resources excavated or removed from Indian lands

In cases in which a violation of the prohibition contained in subsection (a), (b), or (c) of section 470ee of this title involve archaeological resources excavated or removed from Indian lands, the Federal land manager or the court, as the case may be, shall provide for the payment to the Indian or Indian tribe involved of all penalties collected pursuant to section 470ff of this title and for the transfer to such Indian or Indian tribe of all items forfeited under this section.

(Pub. L. 96–95, §8, Oct. 31, 1979, 93 Stat. 726.)

## § 470hh. Confidentiality of information concerning nature and location of archaeological resources

### (a) Disclosure of information

Information concerning the nature and location of any archaeological resource for which the excavation or removal requires a permit or other permission under this chapter or under any other provision of Federal law may not be made available to the public under subchapter II of chapter 5 of title 5 or under any other provision of law unless the Federal land manager concerned determines that such disclosure would—

(1) further the purposes of this chapter or chapter 3125 of title 54, and

(2) not create a risk of harm to such resources or to the site at which such resources are located.

### (b) Request for disclosure by Governors

Notwithstanding the provisions of subsection (a), upon the written request of the Governor of any State, which request shall state—

(1) the specific site or area for which information is sought,

(2) the purpose for which such information is sought,

(3) a commitment by the Governor to adequately protect the confidentiality of such information to protect the resource from commercial exploitation,

the Federal land manager concerned shall provide to the Governor information concerning the nature and location of archaeological resources within the State of the requesting Governor.

(Pub. L. 96–95, §9, Oct. 31, 1979, 93 Stat. 727; Pub. L. 113–287, §5(d)(8), Dec. 19, 2014, 128 Stat. 3265.)

#### AMENDMENTS

2014—Subsec. (a)(1). Pub. L. 113–287, which directed substitution of "chapter 3125 of title 54" for "the Act of June 27, 1960 (16 U.S.C. 469–469c)" in subsec. (a)(2), was executed by making the substitution in subsec. (a)(1), to reflect the probable intent of Congress.

## § 470ii. Rules and regulations; intergovernmental coordination

### (a) Promulgation; effective date

The Secretaries of the Interior, Agriculture and Defense and the Chairman of the Board of the Tennessee Valley Authority, after consultation with other Federal land managers, Indian tribes, representatives of concerned State agencies, and after public notice and hearing, shall promulgate such uniform rules and regulations as may be appropriate to carry out the purposes of this chapter. Such rules and regulations may be promulgated only after consideration of the provisions of the American Indian Religious Freedom Act (92 Stat. 469; 42 U.S.C. 1996 [, 1996a]). Each uniform rule or regulation promulgated under this chapter shall be submitted

on the same calendar day to the Committee on Energy and Natural Resources of the United States Senate and to the Committee on Natural Resources of the United States House of Representatives, and no such uniform rule or regulation may take effect before the expiration of a period of ninety calendar days following the date of its submission to such Committees.

#### (b) Federal land managers' rules

Each Federal land manager shall promulgate such rules and regulations, consistent with the uniform rules and regulations under subsection (a), as may be appropriate for the carrying out of his functions and authorities under this chapter.

#### (c) Federal land managers' public awareness program of archaeological resources on public lands and Indian lands

Each Federal land manager shall establish a program to increase public awareness of the significance of the archaeological resources located on public lands and Indian lands and the need to protect such resources.

(Pub. L. 96-95, §10, Oct. 31, 1979, 93 Stat. 727; Pub. L. 100-588, §1(d), Nov. 3, 1988, 102 Stat. 2983; Pub. L. 103-437, §6(d)(30), Nov. 2, 1994, 108 Stat. 4584; Pub. L. 104-333, div. I, title VIII, §814(d)(2)(A), Nov. 12, 1996, 110 Stat. 4196.)

##### REFERENCES IN TEXT

The American Indian Religious Freedom Act, referred to in subsec. (a), is Pub. L. 95-341, Aug. 11, 1978, 92 Stat. 469, as amended, which is classified to sections 1996 and 1996a of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see Short Title note set out under section 1996 of Title 42 and Tables.

##### AMENDMENTS

1996—Subsec. (c). Pub. L. 104-333 struck out at end "Each such land manager shall submit an annual report to the Committee on Natural Resources of the United States House of Representatives and to the Committee on Energy and Natural Resources of the United States Senate regarding the actions taken under such program."

1994—Subsecs. (a), (c). Pub. L. 103-437 substituted "Natural Resources" for "Interior and Insular Affairs" after "Committee on".

1988—Subsec. (c). Pub. L. 100-588 added subsec. (c).

### §470jj. Cooperation with private individuals

The Secretary of the Interior shall take such action as may be necessary, consistent with the purposes of this chapter, to foster and improve the communication, cooperation, and exchange of information between—

   (1) private individuals having collections of archaeological resources and data which were obtained before the date of the enactment of this chapter, and

   (2) Federal authorities responsible for the protection of archaeological resources on the public lands and Indian lands and professional archaeologists and associations of professional archaeologists.

In carrying out this section, the Secretary shall, to the extent practicable and consistent with the provisions of this chapter, make efforts to expand the archaeological data base for the archaeological resources of the United States through increased cooperation between private individuals referred to in paragraph (1) and professional archaeologists and archaeological organizations.

(Pub. L. 96-95, §11, Oct. 31, 1979, 93 Stat. 727.)

### §470kk. Savings provisions

#### (a) Mining, mineral leasing, reclamation, and other multiple uses

Nothing in this chapter shall be construed to repeal, modify, or impose additional restrictions on the activities permitted under existing laws and authorities relating to mining, mineral leasing, reclamation, and other multiple uses of the public lands.

#### (b) Private collections

Nothing in this chapter applies to, or requires a permit for, the collection for private purposes of any rock, coin, bullet, or mineral which is not an archaeological resource, as determined under uniform regulations promulgated under section 470bb(1) of this title.

#### (c) Lands within chapter

Nothing in this chapter shall be construed to affect any land other than public land or Indian land or to affect the lawful recovery, collection, or sale of archaeological resources from land other than public land or Indian land.

(Pub. L. 96-95, §12, Oct. 31, 1979, 93 Stat. 728.)

### §470*ll*. Annual report to Congress

As part of the annual report required to be submitted to the specified committees of the Congress pursuant to section 469a-3(c)[1] of this title, the Secretary of the Interior shall comprehensively report as a separate component on the activities carried out under the provisions of this chapter, and he shall make such recommendations as he deems appropriate as to changes or improvements needed in the provisions of this chapter. Such report shall include a brief summary of the actions undertaken by the Secretary under section 470jj of this title, relating to cooperation with private individuals.

(Pub. L. 96-95, §13, Oct. 31, 1979, 93 Stat. 728.)

##### REFERENCES IN TEXT

Section 469a-3 of this title, referred to in text, was repealed and restated as section 312504 of Title 54, National Park Service and Related Programs, by Pub. L. 113-287, §§3, 7, Dec. 19, 2014, 128 Stat. 3094, 3272. Prior to repeal of section 469a-3, language in subsec. (c) of that section that required submission of an annual report was struck out by Pub. L. 104-333.

### §470mm. Surveying of lands; reporting of violations

The Secretaries of the Interior, Agriculture, and Defense and the Chairman of the Board of the Tennessee Valley Authority shall—

   (a) develop plans for surveying lands under their control to determine the nature and extent of archaeological resources on those lands;

   (b) prepare a schedule for surveying lands that are likely to contain the most scientifically valuable archeological resources; and

---

[1] See References in Text note below.

(c) develop documents for the reporting of suspected violations of this chapter and establish when and how those documents are to be completed by officers, employees, and agents of their respective agencies.

(Pub. L. 96–95, § 14, as added Pub. L. 100–555, Oct. 28, 1988, 102 Stat. 2778.)

## CHAPTER 1C—PALEONTOLOGICAL RESOURCES PRESERVATION

Sec.
470aaa.     Definitions.
470aaa–1.   Management.
470aaa–2.   Public awareness and education program.
470aaa–3.   Collection of paleontological resources.
470aaa–4.   Curation of resources.
470aaa–5.   Prohibited acts; criminal penalties.
470aaa–6.   Civil penalties.
470aaa–7.   Rewards and forfeiture.
470aaa–8.   Confidentiality.
470aaa–9.   Regulations.
470aaa–10.  Savings provisions.
470aaa–11.  Authorization of appropriations.

### § 470aaa. Definitions

In this chapter:

#### (1) Casual collecting

The term "casual collecting" means the collecting of a reasonable amount of common invertebrate and plant paleontological resources for non-commercial personal use, either by surface collection or the use of non-powered hand tools resulting in only negligible disturbance to the Earth's surface and other resources. As used in this paragraph, the terms "reasonable amount", "common invertebrate and plant paleontological resources" and "negligible disturbance" shall be determined by the Secretary.

#### (2) Federal land

The term "Federal land" means—
(A) land controlled or administered by the Secretary of the Interior, except Indian land; or
(B) National Forest System land controlled or administered by the Secretary of Agriculture.

#### (3) Indian Land

The term "Indian Land" means land of Indian tribes, or Indian individuals, which are either held in trust by the United States or subject to a restriction against alienation imposed by the United States.

#### (4) Paleontological resource

The term "paleontological resource" means any fossilized remains, traces, or imprints of organisms, preserved in or on the earth's crust, that are of paleontological interest and that provide information about the history of life on earth, except that the term does not include—
(A) any materials associated with an archaeological resource (as defined in section 470bb(1) of this title;[1] or
(B) any cultural item (as defined in section 3001 of title 25).

---
[1] So in original. A closing parenthesis probably should precede the semicolon.

#### (5) Secretary

The term "Secretary" means the Secretary of the Interior with respect to land controlled or administered by the Secretary of the Interior or the Secretary of Agriculture with respect to National Forest System land controlled or administered by the Secretary of Agriculture.

#### (6) State

The term "State" means the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, and any other territory or possession of the United States.

(Pub. L. 111–11, title VI, § 6301, Mar. 30, 2009, 123 Stat. 1172.)

### § 470aaa–1. Management

#### (a) In general

The Secretary shall manage and protect paleontological resources on Federal land using scientific principles and expertise. The Secretary shall develop appropriate plans for inventory, monitoring, and the scientific and educational use of paleontological resources, in accordance with applicable agency laws, regulations, and policies. These plans shall emphasize interagency coordination and collaborative efforts where possible with non-Federal partners, the scientific community, and the general public.

#### (b) Coordination

To the extent possible, the Secretary of the Interior and the Secretary of Agriculture shall coordinate in the implementation of this chapter.

(Pub. L. 111–11, title VI, § 6302, Mar. 30, 2009, 123 Stat. 1173.)

### § 470aaa–2. Public awareness and education program

The Secretary shall establish a program to increase public awareness about the significance of paleontological resources.

(Pub. L. 111–11, title VI, § 6303, Mar. 30, 2009, 123 Stat. 1173.)

### § 470aaa–3. Collection of paleontological resources

#### (a) Permit requirement

##### (1) In general

Except as provided in this chapter, a paleontological resource may not be collected from Federal land without a permit issued under this chapter by the Secretary.

##### (2) Casual collecting exception

The Secretary shall allow casual collecting without a permit on Federal land controlled or administered by the Bureau of Land Management, the Bureau of Reclamation, and the Forest Service, where such collection is consistent with the laws governing the management of those Federal land[1] and this chapter.

##### (3) Previous permit exception

Nothing in this section shall affect a valid permit issued prior to March 30, 2009.

---
[1] So in original. Probably should be "lands".

grams and competitive programs, see section 5 of Pub. L. 114–95, set out as a note under section 6301 of Title 20, Education.

EFFECTIVE DATE OF 2002 AMENDMENT

Amendment by Pub. L. 107–110 effective Jan. 8, 2002, except with respect to certain noncompetitive programs and competitive programs, see section 5 of Pub. L. 107–110, set out as an Effective Date note under section 6301 of Title 20, Education.

### § 2903. Declaration of policy

It is the policy of the United States to—

(1) preserve, protect, and promote the rights and freedom of Native Americans to use, practice, and develop Native American languages;

(2) allow exceptions to teacher certification requirements for Federal programs, and programs funded in whole or in part by the Federal Government, for instruction in Native American languages when such teacher certification requirements hinder the employment of qualified teachers who teach in Native American languages, and to encourage State and territorial governments to make similar exceptions;

(3) encourage and support the use of Native American languages as a medium of instruction in order to encourage and support—

(A) Native American language survival,

(B) educational opportunity,

(C) increased student success and performance,

(D) increased student awareness and knowledge of their culture and history, and

(E) increased student and community pride;

(4) encourage State and local education programs to work with Native American parents, educators, Indian tribes, and other Native American governing bodies in the implementation of programs to put this policy into effect;

(5) recognize the right of Indian tribes and other Native American governing bodies to use the Native American languages as a medium of instruction in all schools funded by the Secretary of the Interior;

(6) fully recognize the inherent right of Indian tribes and other Native American governing bodies, States, territories, and possessions of the United States to take action on, and give official status to, their Native American languages for the purpose of conducting their own business;

(7) support the granting of comparable proficiency achieved through course work in a Native American language the same academic credit as comparable proficiency achieved through course work in a foreign language, with recognition of such Native American language proficiency by institutions of higher education as fulfilling foreign language entrance or degree requirements; and

(8) encourage all institutions of elementary, secondary and higher education, where appropriate, to include Native American languages in the curriculum in the same manner as foreign languages and to grant proficiency in Native American languages the same full academic credit as proficiency in foreign languages.

(Pub. L. 101–477, title I, § 104, Oct. 30, 1990, 104 Stat. 1155.)

### § 2904. No restrictions

The right of Native Americans to express themselves through the use of Native American languages shall not be restricted in any public proceeding, including publicly supported education programs.

(Pub. L. 101–477, title I, § 105, Oct. 30, 1990, 104 Stat. 1155.)

### § 2905. Evaluations

(a) The President shall direct the heads of the various Federal departments, agencies, and instrumentalities to—

(1) evaluate their policies and procedures in consultation with Indian tribes and other Native American governing bodies as well as traditional leaders and educators in order to determine and implement changes needed to bring the policies and procedures into compliance with the provisions of this chapter;

(2) give the greatest effect possible in making such evaluations, absent a clear specific Federal statutory requirement to the contrary, to the policies and procedures which will give the broadest effect to the provisions of this chapter; and

(3) evaluate the laws which they administer and make recommendations to the President on amendments needed to bring such laws into compliance with the provisions of this chapter.

(b) By no later than the date that is 1 year after October 30, 1990, the President shall submit to the Congress a report containing recommendations for amendments to Federal laws that are needed to bring such laws into compliance with the provisions of this chapter.

(Pub. L. 101–477, title I, § 106, Oct. 30, 1990, 104 Stat. 1156.)

### § 2906. Use of English

Nothing in this chapter shall be construed as precluding the use of Federal funds to teach English to Native Americans.

(Pub. L. 101–477, title I, § 107, Oct. 30, 1990, 104 Stat. 1156.)

## CHAPTER 32—NATIVE AMERICAN GRAVES PROTECTION AND REPATRIATION

Sec.
3001. Definitions.
3002. Ownership.
3003. Inventory for human remains and associated funerary objects.
3004. Summary for unassociated funerary objects, sacred objects, and cultural patrimony.
3005. Repatriation.
3006. Review committee.
3007. Penalty.
3008. Grants.
3009. Savings provision.
3010. Special relationship between Federal Government and Indian tribes and Native Hawaiian organizations.
3011. Regulations.
3012. Authorization of appropriations.
3013. Enforcement.

§ 3001. Definitions

For purposes of this chapter, the term—

(1) "burial site" means any natural or prepared physical location, whether originally below, on, or above the surface of the earth, into which as a part of the death rite or ceremony of a culture, individual human remains are deposited.

(2) "cultural affiliation" means that there is a relationship of shared group identity which can be reasonably traced historically or prehistorically between a present day Indian tribe or Native Hawaiian organization and an identifiable earlier group.

(3) "cultural items" means human remains and—

(A) "associated funerary objects" which shall mean objects that, as a part of the death rite or ceremony of a culture, are reasonably believed to have been placed with individual human remains either at the time of death or later, and both the human remains and associated funerary objects are presently in the possession or control of a Federal agency or museum, except that other items exclusively made for burial purposes or to contain human remains shall be considered as associated funerary objects.[1]

(B) "unassociated funerary objects" which shall mean objects that, as a part of the death rite or ceremony of a culture, are reasonably believed to have been placed with individual human remains either at the time of death or later, where the remains are not in the possession or control of the Federal agency or museum and the objects can be identified by a preponderance of the evidence as related to specific individuals or families or to known human remains or, by a preponderance of the evidence, as having been removed from a specific burial site of an individual culturally affiliated with a particular Indian tribe,

(C) "sacred objects" which shall mean specific ceremonial objects which are needed by traditional Native American religious leaders for the practice of traditional Native American religions by their present day adherents, and

(D) "cultural patrimony" which shall mean an object having ongoing historical, traditional, or cultural importance central to the Native American group or culture itself, rather than property owned by an individual Native American, and which, therefore, cannot be alienated, appropriated, or conveyed by any individual regardless of whether or not the individual is a member of the Indian tribe or Native Hawaiian organization and such object shall have been considered inalienable by such Native American group at the time the object was separated from such group.

(4) "Federal agency" means any department, agency, or instrumentality of the United States. Such term does not include the Smithsonian Institution.

(5) "Federal lands" means any land other than tribal lands which are controlled or owned by the United States, including lands selected by but not yet conveyed to Alaska Native Corporations and groups organized pursuant to the Alaska Native Claims Settlement Act of 1971 [43 U.S.C. 1601 et seq.].

(6) "Hui Malama I Na Kupuna O Hawai'i Nei" means the nonprofit, Native Hawaiian organization incorporated under the laws of the State of Hawaii by that name on April 17, 1989, for the purpose of providing guidance and expertise in decisions dealing with Native Hawaiian cultural issues, particularly burial issues.

(7) "Indian tribe" means any tribe, band, nation, or other organized group or community of Indians, including any Alaska Native village (as defined in, or established pursuant to, the Alaska Native Claims Settlement Act [43 U.S.C. 1601 et seq.]), which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians.

(8) "museum" means any institution or State or local government agency (including any institution of higher learning) that receives Federal funds and has possession of, or control over, Native American cultural items. Such term does not include the Smithsonian Institution or any other Federal agency.

(9) "Native American" means of, or relating to, a tribe, people, or culture that is indigenous to the United States.

(10) "Native Hawaiian" means any individual who is a descendant of the aboriginal people who, prior to 1778, occupied and exercised sovereignty in the area that now constitutes the State of Hawaii.

(11) "Native Hawaiian organization" means any organization which—

(A) serves and represents the interests of Native Hawaiians,

(B) has as a primary and stated purpose the provision of services to Native Hawaiians, and

(C) has expertise in Native Hawaiian Affairs, and

shall include the Office of Hawaiian Affairs and Hui Malama I Na Kupuna O Hawai'i Nei.

(12) "Office of Hawaiian Affairs" means the Office of Hawaiian Affairs established by the constitution of the State of Hawaii.

(13) "right of possession" means possession obtained with the voluntary consent of an individual or group that had authority of alienation. The original acquisition of a Native American unassociated funerary object, sacred object or object of cultural patrimony from an Indian tribe or Native Hawaiian organization with the voluntary consent of an individual or group with authority to alienate such object is deemed to give right of possession of that object, unless the phrase so defined would, as applied in section 3005(c) of this title, result in a Fifth Amendment taking by the United States as determined by the United States Court of Federal Claims pursuant to 28 U.S.C. 1491 in which event the "right of possession" shall be as provided under otherwise applicable property law. The original acquisition of Native American human remains and associated funerary objects which were excavated, ex-

---

[1] So in original. The period probably should be a comma.

humed, or otherwise obtained with full knowledge and consent of the next of kin or the official governing body of the appropriate culturally affiliated Indian tribe or Native Hawaiian organization is deemed to give right of possession to those remains.

(14) "Secretary" means the Secretary of the Interior.

(15) "tribal land" means—

(A) all lands within the exterior boundaries of any Indian reservation;

(B) all dependent Indian communities;[2]

(C) any lands administered for the benefit of Native Hawaiians pursuant to the Hawaiian Homes Commission Act, 1920, and section 4 of Public Law 86–3.

(Pub. L. 101–601, §2, Nov. 16, 1990, 104 Stat. 3048; Pub. L. 102–572, title IX, §902(b)(1), Oct. 29, 1992, 106 Stat. 4516.)

### REFERENCES IN TEXT

This chapter, referred to in text, was in the original "this Act", meaning Pub. L. 101–601, Nov. 16, 1990, 104 Stat. 3048, known as the Native American Graves Protection and Repatriation Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out below and Tables.

The Alaska Native Claims Settlement Act of 1971, referred to in par. (5), probably means the Alaska Native Claims Settlement Act. See note below.

The Alaska Native Claims Settlement Act, referred to in par. (7), is Pub. L. 92–203, Dec. 18, 1971, 85 Stat. 688, as amended, which is classified generally to chapter 33 (§ 1601 et seq.) of Title 43, Public Lands. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of Title 43 and Tables.

The Hawaiian Homes Commission Act, 1920, referred to in par. (15)(C), is act July 9, 1921, ch. 42, 42 Stat. 108, as amended, which was classified generally to sections 691 to 718 of Title 48, Territories and Insular Possessions, and was omitted from the Code.

Section 4 of Public Law 86–3, referred to in par. (15)(C), is section 4 of Pub. L. 86–3, which is set out as a note preceding section 491 of Title 48.

### AMENDMENTS

1992—Par. (13). Pub. L. 102–572 substituted "United States Court of Federal Claims" for "United States Claims Court".

### EFFECTIVE DATE OF 1992 AMENDMENT

Amendment by Pub. L. 102–572 effective Oct. 29, 1992, see section 911 of Pub. L. 102–572, set out as a note under section 171 of Title 28, Judiciary and Judicial Procedure.

### SHORT TITLE

Pub. L. 101–601, §1, Nov. 16, 1990, 104 Stat. 3048, provided that: "This Act [enacting this chapter and section 1170 of Title 18, Crimes and Criminal Procedure] may be cited as the 'Native American Graves Protection and Repatriation Act'."

## § 3002. Ownership

### (a) Native American human remains and objects

The ownership or control of Native American cultural items which are excavated or discovered on Federal or tribal lands after November 16, 1990, shall be (with priority given in the order listed)—

(1) in the case of Native American human remains and associated funerary objects, in the lineal descendants of the Native American; or

(2) in any case in which such lineal descendants cannot be ascertained, and in the case of unassociated funerary objects, sacred objects, and objects of cultural patrimony—

(A) in the Indian tribe or Native Hawaiian organization on whose tribal land such objects or remains were discovered;

(B) in the Indian tribe or Native Hawaiian organization which has the closest cultural affiliation with such remains or objects and which, upon notice, states a claim for such remains or objects; or

(C) if the cultural affiliation of the objects cannot be reasonably ascertained and if the objects were discovered on Federal land that is recognized by a final judgment of the Indian Claims Commission or the United States Court of Claims as the aboriginal land of some Indian tribe—

(1) in the Indian tribe that is recognized as aboriginally occupying the area in which the objects were discovered, if upon notice, such tribe states a claim for such remains or objects, or

(2) if it can be shown by a preponderance of the evidence that a different tribe has a stronger cultural relationship with the remains or objects than the tribe or organization specified in paragraph (1), in the Indian tribe that has the strongest demonstrated relationship, if upon notice, such tribe states a claim for such remains or objects.

### (b) Unclaimed Native American human remains and objects

Native American cultural items not claimed under subsection (a) shall be disposed of in accordance with regulations promulgated by the Secretary in consultation with the review committee established under section 3006 of this title, Native American groups, representatives of museums and the scientific community.

### (c) Intentional excavation and removal of Native American human remains and objects

The intentional removal from or excavation of Native American cultural items from Federal or tribal lands for purposes of discovery, study, or removal of such items is permitted only if—

(1) such items are excavated or removed pursuant to a permit issued under section 470cc of title 16 which shall be consistent with this chapter;

(2) such items are excavated or removed after consultation with or, in the case of tribal lands, consent of the appropriate (if any) Indian tribe or Native Hawaiian organization;

(3) the ownership and right of control of the disposition of such items shall be as provided in subsections (a) and (b); and

(4) proof of consultation or consent under paragraph (2) is shown.

### (d) Inadvertent discovery of Native American remains and objects

(1) Any person who knows, or has reason to know, that such person has discovered Native American cultural items on Federal or tribal lands after November 16, 1990, shall notify, in writing, the Secretary of the Department, or head of any other agency or instrumentality of

---

[2] So in original. Probably should be followed by "and".

the United States, having primary management authority with respect to Federal lands and the appropriate Indian tribe or Native Hawaiian organization with respect to tribal lands, if known or readily ascertainable, and, in the case of lands that have been selected by an Alaska Native Corporation or group organized pursuant to the Alaska Native Claims Settlement Act of 1971 [43 U.S.C. 1601 et seq.], the appropriate corporation or group. If the discovery occurred in connection with an activity, including (but not limited to) construction, mining, logging, and agriculture, the person shall cease the activity in the area of the discovery, make a reasonable effort to protect the items discovered before resuming such activity, and provide notice under this subsection. Following the notification under this subsection, and upon certification by the Secretary of the department or the head of any agency or instrumentality of the United States or the appropriate Indian tribe or Native Hawaiian organization that notification has been received, the activity may resume after 30 days of such certification.

(2) The disposition of and control over any cultural items excavated or removed under this subsection shall be determined as provided for in this section.

(3) If the Secretary of the Interior consents, the responsibilities (in whole or in part) under paragraphs (1) and (2) of the Secretary of any department (other than the Department of the Interior) or the head of any other agency or instrumentality may be delegated to the Secretary with respect to any land managed by such other Secretary or agency head.

### (e) Relinquishment

Nothing in this section shall prevent the governing body of an Indian tribe or Native Hawaiian organization from expressly relinquishing control over any Native American human remains, or title to or control over any funerary object, or sacred object.

(Pub. L. 101–601, § 3, Nov. 16, 1990, 104 Stat. 3050.)

REFERENCES IN TEXT

The Indian Claims Commission, referred to in subsec. (a)(2)(C), terminated Sept. 30, 1978. See Codification note set out under former section 70 et seq. of this title.

The United States Court of Claims, referred to in subsec. (a)(2)(C), and the United States Court of Customs and Patent Appeals were merged effective Oct. 1, 1982, into a new United States Court of Appeals for the Federal Circuit by Pub. L. 97–164, Apr. 2, 1982, 96 Stat. 25, which also created a United States Claims Court [now United States Court of Federal Claims] that inherited the trial jurisdiction of the Court of Claims. See sections 48, 171 et seq., 791 et seq., and 1491 et seq. of Title 28, Judiciary and Judicial Procedure.

This chapter, referred to in subsec. (c)(1), was in the original "this Act", meaning Pub. L. 101–601, Nov. 16, 1990, 104 Stat. 3048, known as the Native American Graves Protection and Repatriation Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 3001 of this title and Tables.

The Alaska Native Claims Settlement Act of 1971, referred to in subsec. (d)(1), probably means the Alaska Native Claims Settlement Act, Pub. L. 92–203, Dec. 18, 1971, 85 Stat. 688, as amended, and which is classified generally to chapter 33 (§ 1601 et seq.) of Title 43, Public Lands. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of Title 43 and Tables.

### § 3003. Inventory for human remains and associated funerary objects

#### (a) In general

Each Federal agency and each museum which has possession or control over holdings or collections of Native American human remains and associated funerary objects shall compile an inventory of such items and, to the extent possible based on information possessed by such museum or Federal agency, identify the geographical and cultural affiliation of such item.[1]

#### (b) Requirements

(1) The inventories and identifications required under subsection (a) shall be—

(A) completed in consultation with tribal government and Native Hawaiian organization officials and traditional religious leaders;

(B) completed by not later than the date that is 5 years after November 16, 1990, and

(C) made available both during the time they are being conducted and afterward to a review committee established under section 3006 of this title.

(2) Upon request by an Indian tribe or Native Hawaiian organization which receives or should have received notice, a museum or Federal agency shall supply additional available documentation to supplement the information required by subsection (a) of this section. The term "documentation" means a summary of existing museum or Federal agency records, including inventories or catalogues, relevant studies, or other pertinent data for the limited purpose of determining the geographical origin, cultural affiliation, and basic facts surrounding acquisition and accession of Native American human remains and associated funerary objects subject to this section. Such term does not mean, and this chapter shall not be construed to be an authorization for, the initiation of new scientific studies of such remains and associated funerary objects or other means of acquiring or preserving additional scientific information from such remains and objects.

#### (c) Extension of time for inventory

Any museum which has made a good faith effort to carry out an inventory and identification under this section, but which has been unable to complete the process, may appeal to the Secretary for an extension of the time requirements set forth in subsection (b)(1)(B). The Secretary may extend such time requirements for any such museum upon a finding of good faith effort. An indication of good faith shall include the development of a plan to carry out the inventory and identification process.

#### (d) Notification

(1) If the cultural affiliation of any particular Native American human remains or associated funerary objects is determined pursuant to this section, the Federal agency or museum concerned shall, not later than 6 months after the completion of the inventory, notify the affected Indian tribes or Native Hawaiian organizations.

(2) The notice required by paragraph (1) shall include information—

---

[1] So in original. Probably should be "items."

(A) which identifies each Native American human remains or associated funerary objects and the circumstances surrounding its acquisition;

(B) which lists the human remains or associated funerary objects that are clearly identifiable as to tribal origin; and

(C) which lists the Native American human remains and associated funerary objects that are not clearly identifiable as being culturally affiliated with that Indian tribe or Native Hawaiian organization, but which, given the totality of circumstances surrounding acquisition of the remains or objects, are determined by a reasonable belief to be remains or objects culturally affiliated with the Indian tribe or Native Hawaiian organization.

(3) A copy of each notice provided under paragraph (1) shall be sent to the Secretary who shall publish each notice in the Federal Register.

(e) Inventory

For the purposes of this section, the term "inventory" means a simple itemized list that summarizes the information called for by this section.

(Pub. L. 101–601, §5, Nov. 16, 1990, 104 Stat. 3052.)

REFERENCES IN TEXT

This chapter, referred to in subsec. (b)(2), was in the original "this Act", meaning Pub. L. 101–601, Nov. 16, 1990, 104 Stat. 3048, known as the Native American Graves Protection and Repatriation Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 3001 of this title and Tables.

§ 3004. Summary for unassociated funerary objects, sacred objects, and cultural patrimony

(a) In general

Each Federal agency or museum which has possession or control over holdings or collections of Native American unassociated funerary objects, sacred objects, or objects of cultural patrimony shall provide a written summary of such objects based upon available information held by such agency or museum. The summary shall describe the scope of the collection, kinds of objects included, reference to geographical location, means and period of acquisition and cultural affiliation, where readily ascertainable.

(b) Requirements

(1) The summary required under subsection (a) shall be—

(A) in lieu of an object-by-object inventory;
(B) followed by consultation with tribal government and Native Hawaiian organization officials and traditional religious leaders; and
(C) completed by not later than the date that is 3 years after November 16, 1990.

(2) Upon request, Indian Tribes[1] and Native Hawaiian organizations shall have access to records, catalogues, relevant studies or other pertinent data for the limited purposes of determining the geographic origin, cultural affiliation, and basic facts surrounding acquisition and accession of Native American objects subject to this section. Such information shall be provided in a reasonable manner to be agreed upon by all parties.

(Pub. L. 101–601, §6, Nov. 16, 1990, 104 Stat. 3053.)

§ 3005. Repatriation

(a) Repatriation of Native American human remains and objects possessed or controlled by Federal agencies and museums

(1) If, pursuant to section 3003 of this title, the cultural affiliation of Native American human remains and associated funerary objects with a particular Indian tribe or Native Hawaiian organization is established, then the Federal agency or museum, upon the request of a known lineal descendant of the Native American or of the tribe or organization and pursuant to subsections (b) and (e) of this section, shall expeditiously return such remains and associated funerary objects.

(2) If, pursuant to section 3004 of this title, the cultural affiliation with a particular Indian tribe or Native Hawaiian organization is shown with respect to unassociated funerary objects, sacred objects or objects of cultural patrimony, then the Federal agency or museum, upon the request of the Indian tribe or Native Hawaiian organization and pursuant to subsections (b), (c) and (e) of this section, shall expeditiously return such objects.

(3) The return of cultural items covered by this chapter shall be in consultation with the requesting lineal descendant or tribe or organization to determine the place and manner of delivery of such items.

(4) Where cultural affiliation of Native American human remains and funerary objects has not been established in an inventory prepared pursuant to section 3003 of this title, or the summary pursuant to section 3004 of this title, or where Native American human remains and funerary objects are not included upon any such inventory, then, upon request and pursuant to subsections (b) and (e) and, in the case of unassociated funerary objects, subsection (c), such Native American human remains and funerary objects shall be expeditiously returned where the requesting Indian tribe or Native Hawaiian organization can show cultural affiliation by a preponderance of the evidence based upon geographical, kinship, biological, archaeological, anthropological, linguistic, folkloric, oral traditional, historical, or other relevant information or expert opinion.

(5) Upon request and pursuant to subsections (b), (c) and (e), sacred objects and objects of cultural patrimony shall be expeditiously returned where—

(A) the requesting party is the direct lineal descendant of an individual who owned the sacred object;
(B) the requesting Indian tribe or Native Hawaiian organization can show that the object was owned or controlled by the tribe or organization; or
(C) the requesting Indian tribe or Native Hawaiian organization can show that the sacred object was owned or controlled by a member thereof, provided that in the case where a

---

[1] So in original. Probably should not be capitalized.

sacred object was owned by a member thereof, there are no identifiable lineal descendants of said member or the lineal descendants, upon notice, have failed to make a claim for the object under this chapter.

### (b) Scientific study

If the lineal descendant, Indian tribe, or Native Hawaiian organization requests the return of culturally affiliated Native American cultural items, the Federal agency or museum shall expeditiously return such items unless such items are indispensable for completion of a specific scientific study, the outcome of which would be of major benefit to the United States. Such items shall be returned by no later than 90 days after the date on which the scientific study is completed.

### (c) Standard of repatriation

If a known lineal descendant or an Indian tribe or Native Hawaiian organization requests the return of Native American unassociated funerary objects, sacred objects or objects of cultural patrimony pursuant to this chapter and presents evidence which, if standing alone before the introduction of evidence to the contrary, would support a finding that the Federal agency or museum did not have the right of possession, then such agency or museum shall return such objects unless it can overcome such inference and prove that it has a right of possession to the objects.

### (d) Sharing of information by Federal agencies and museums

Any Federal agency or museum shall share what information it does possess regarding the object in question with the known lineal descendant, Indian tribe, or Native Hawaiian organization to assist in making a claim under this section.

### (e) Competing claims

Where there are multiple requests for repatriation of any cultural item and, after complying with the requirements of this chapter, the Federal agency or museum cannot clearly determine which requesting party is the most appropriate claimant, the agency or museum may retain such item until the requesting parties agree upon its disposition or the dispute is otherwise resolved pursuant to the provisions of this chapter or by a court of competent jurisdiction.

### (f) Museum obligation

Any museum which repatriates any item in good faith pursuant to this chapter shall not be liable for claims by an aggrieved party or for claims of breach of fiduciary duty, public trust, or violations of state[1] law that are inconsistent with the provisions of this chapter.

(Pub. L. 101–601, §7, Nov. 16, 1990, 104 Stat. 3054.)

#### REFERENCES IN TEXT

This chapter, referred to in subsecs. (a)(3), (5)(C), (c), (e), and (f), was in the original "this Act", meaning Pub. L. 101–601, Nov. 16, 1990, 104 Stat. 3048, known as the Native American Graves Protection and Repatriation Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 3001 of this title and Tables.

## § 3006. Review committee

### (a) Establishment

Within 120 days after November 16, 1990, the Secretary shall establish a committee to monitor and review the implementation of the inventory and identification process and repatriation activities required under sections 3003, 3004 and 3005 of this title.

### (b) Membership

(1) The Committee[1] established under subsection (a) shall be composed of 7 members,

(A) 3 of whom shall be appointed by the Secretary from nominations submitted by Indian tribes, Native Hawaiian organizations, and traditional Native American religious leaders with at least 2 of such persons being traditional Indian religious leaders;

(B) 3 of whom shall be appointed by the Secretary from nominations submitted by national museum organizations and scientific organizations; and

(C) 1 who shall be appointed by the Secretary from a list of persons developed and consented to by all of the members appointed pursuant to subparagraphs (A) and (B).

(2) The Secretary may not appoint Federal officers or employees to the committee.

(3) In the event vacancies shall occur, such vacancies shall be filled by the Secretary in the same manner as the original appointment within 90 days of the occurrence of such vacancy.

(4) Members of the committee established under subsection (a) shall serve without pay, but shall be reimbursed at a rate equal to the daily rate for GS–18 of the General Schedule for each day (including travel time) for which the member is actually engaged in committee business. Each member shall receive travel expenses, including per diem in lieu of subsistence, in accordance with sections 5702 and 5703 of title 5.

### (c) Responsibilities

The committee established under subsection (a) shall be responsible for—

(1) designating one of the members of the committee as chairman;

(2) monitoring the inventory and identification process conducted under sections 3003 and 3004 of this title to ensure a fair, objective consideration and assessment of all available relevant information and evidence;

(3) upon the request of any affected party, reviewing and making findings related to—

(A) the identity or cultural affiliation of cultural items, or

(B) the return of such items;

(4) facilitating the resolution of any disputes among Indian tribes, Native Hawaiian organizations, or lineal descendants and Federal agencies or museums relating to the return of such items including convening the parties to the dispute if deemed desirable;

(5) compiling an inventory of culturally unidentifiable human remains that are in the

---

[1] So in original. Probably should be capitalized.

[1] So in original. Probably should not be capitalized.

possession or control of each Federal agency and museum and recommending specific actions for developing a process for disposition of such remains;

(6) consulting with Indian tribes and Native Hawaiian organizations and museums on matters within the scope of the work of the committee affecting such tribes or organizations;

(7) consulting with the Secretary in the development of regulations to carry out this chapter;

(8) performing such other related functions as the Secretary may assign to the committee; and

(9) making recommendations, if appropriate, regarding future care of cultural items which are to be repatriated.

### (d) Admissibility of records and findings

Any records and findings made by the review committee pursuant to this chapter relating to the identity or cultural affiliation of any cultural items and the return of such items may be admissible in any action brought under section 3013 of this title.

### (e) Recommendations and report

The committee shall make the recommendations under paragraph[2] (c)(5) in consultation with Indian tribes and Native Hawaiian organizations and appropriate scientific and museum groups.

### (f) Access

The Secretary shall ensure that the committee established under subsection (a) and the members of the committee have reasonable access to Native American cultural items under review and to associated scientific and historical documents.

### (g) Duties of Secretary

The Secretary shall—
(1) establish such rules and regulations for the committee as may be necessary, and
(2) provide reasonable administrative and staff support necessary for the deliberations of the committee.

### (h) Annual report

The committee established under subsection (a) shall submit an annual report to the Congress on the progress made, and any barriers encountered, in implementing this section during the previous year.

### (i) Termination

The committee established under subsection (a) shall terminate at the end of the 120-day period beginning on the day the Secretary certifies, in a report submitted to Congress, that the work of the committee has been completed.

(Pub. L. 101–601, §8, Nov. 16, 1990, 104 Stat. 3055.)

#### REFERENCES IN TEXT

This chapter, referred to in subsecs. (c)(7) and (d), was in the original "this Act", meaning Pub. L. 101–601, Nov. 16, 1990, 104 Stat. 3048, known as the Native American Graves Protection and Repatriation Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 3001 of this title and Tables.

#### REFERENCES IN OTHER LAWS TO GS–16, 17, OR 18 PAY RATES

References in laws to the rates of pay for GS–16, 17, or 18, or to maximum rates of pay under the General Schedule, to be considered references to rates payable under specified sections of Title 5, Government Organization and Employees, see section 529 [title I, §101(c)(1)] of Pub. L. 101–509, set out in a note under section 5376 of Title 5.

## § 3007. Penalty

### (a) Penalty

Any museum that fails to comply with the requirements of this chapter may be assessed a civil penalty by the Secretary of the Interior pursuant to procedures established by the Secretary through regulation. A penalty assessed under this subsection shall be determined on the record after opportunity for an agency hearing. Each violation under this subsection shall be a separate offense.

### (b) Amount of penalty

The amount of a penalty assessed under subsection (a) shall be determined under regulations promulgated pursuant to this chapter, taking into account, in addition to other factors—
(1) the archaeological, historical, or commercial value of the item involved;
(2) the damages suffered, both economic and noneconomic, by an aggrieved party,[1] and
(3) the number of violations that have occurred.

### (c) Actions to recover penalties

If any museum fails to pay an assessment of a civil penalty pursuant to a final order of the Secretary that has been issued under subsection (a) and not appealed or after a final judgment has been rendered on appeal of such order, the Attorney General may institute a civil action in an appropriate district court of the United States to collect the penalty. In such action, the validity and amount of such penalty shall not be subject to review.

### (d) Subpoenas

In hearings held pursuant to subsection (a), subpoenas may be issued for the attendance and testimony of witnesses and the production of relevant papers, books, and documents. Witnesses so summoned shall be paid the same fees and mileage that are paid to witnesses in the courts of the United States.

(Pub. L. 101–601, §9, Nov. 16, 1990, 104 Stat. 3057.)

#### REFERENCES IN TEXT

This chapter, referred to in subsecs. (a) and (b), was in the original "this Act", meaning Pub. L. 101–601, Nov. 16, 1990, 104 Stat. 3048, known as the Native American Graves Protection and Repatriation Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 3001 of this title and Tables.

## § 3008. Grants

### (a) Indian tribes and Native Hawaiian organizations

The Secretary is authorized to make grants to Indian tribes and Native Hawaiian organizations

---

[2] So in original. Probably should be "subsection".

[1] So in original. The comma probably should be a semicolon.

for the purpose of assisting such tribes and organizations in the repatriation of Native American cultural items.

**(b) Museums**

The Secretary is authorized to make grants to museums for the purpose of assisting the museums in conducting the inventories and identification required under sections 3003 and 3004 of this title.

(Pub. L. 101–601, § 10, Nov. 16, 1990, 104 Stat. 3057.)

### § 3009. Savings provision

Nothing in this chapter shall be construed to—
(1) limit the authority of any Federal agency or museum to—
(A) return or repatriate Native American cultural items to Indian tribes, Native Hawaiian organizations, or individuals, and
(B) enter into any other agreement with the consent of the culturally affiliated tribe or organization as to the disposition of, or control over, items covered by this chapter;

(2) delay actions on repatriation requests that are pending on November 16, 1990;
(3) deny or otherwise affect access to any court;
(4) limit any procedural or substantive right which may otherwise be secured to individuals or Indian tribes or Native Hawaiian organizations; or
(5) limit the application of any State or Federal law pertaining to theft or stolen property.

(Pub. L. 101–601, § 11, Nov. 16, 1990, 104 Stat. 3057.)

REFERENCES IN TEXT

This chapter, referred to in text, was in the original "this Act", meaning Pub. L. 101–601, Nov. 16, 1990, 104 Stat. 3048, known as the Native American Graves Protection and Repatriation Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 3001 of this title and Tables.

### § 3010. Special relationship between Federal Government and Indian tribes and Native Hawaiian organizations

This chapter reflects the unique relationship between the Federal Government and Indian tribes and Native Hawaiian organizations and should not be construed to establish a precedent with respect to any other individual, organization or foreign government.

(Pub. L. 101–601, § 12, Nov. 16, 1990, 104 Stat. 3058.)

REFERENCES IN TEXT

This chapter, referred to in text, was in the original "This Act", meaning Pub. L. 101–601, Nov. 16, 1990, 104 Stat. 3048, known as the Native American Graves Protection and Repatriation Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 3001 of this title and Tables.

### § 3011. Regulations

The Secretary shall promulgate regulations to carry out this chapter within 12 months of November 16, 1990.

(Pub. L. 101–601, § 13, Nov. 16, 1990, 104 Stat. 3058.)

REFERENCES IN TEXT

This chapter, referred to in text, was in the original "this Act", meaning Pub. L. 101–601, Nov. 16, 1990, 104 Stat. 3048, known as the Native American Graves Protection and Repatriation Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 3001 of this title and Tables.

### § 3012. Authorization of appropriations

There is authorized to be appropriated such sums as may be necessary to carry out this chapter.

(Pub. L. 101–601, § 14, Nov. 16, 1990, 104 Stat. 3058.)

REFERENCES IN TEXT

This chapter, referred to in text, was in the original "this Act", meaning Pub. L. 101–601, Nov. 16, 1990, 104 Stat. 3048, known as the Native American Graves Protection and Repatriation Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 3001 of this title and Tables.

### § 3013. Enforcement

The United States district courts shall have jurisdiction over any action brought by any person alleging a violation of this chapter and shall have the authority to issue such orders as may be necessary to enforce the provisions of this chapter.

(Pub. L. 101–601, § 15, Nov. 16, 1990, 104 Stat. 3058.)

REFERENCES IN TEXT

This chapter, referred to in text, was in the original "this Act", meaning Pub. L. 101–601, Nov. 16, 1990, 104 Stat. 3048, known as the Native American Graves Protection and Repatriation Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 3001 of this title and Tables.

## CHAPTER 32A—CULTURAL AND HERITAGE COOPERATION AUTHORITY

Sec.
3051. Purposes.
3052. Definitions.
3053. Reburial of human remains and cultural items.
3054. Temporary closure for traditional and cultural purposes.
3055. Forest products for traditional and cultural purposes.
3056. Prohibition on disclosure.
3057. Severability and savings provisions.

### § 3051. Purposes

The purposes of this chapter are—
(1) to authorize the reburial of human remains and cultural items on National Forest System land, including human remains and cultural items repatriated under the Native American Graves Protection and Repatriation Act (25 U.S.C. 3001 et seq.);
(2) to prevent the unauthorized disclosure of information regarding reburial sites, including the quantity and identity of human remains and cultural items on sites and the location of sites;
(3) to authorize the Secretary of Agriculture to ensure access to National Forest System land, to the maximum extent practicable, by Indians and Indian tribes for traditional and cultural purposes;
(4) to authorize the Secretary to provide forest products, without consideration, to Indian tribes for traditional and cultural purposes;



assume an authorization under an NWP. This assumption is subject to the DE's authority to determine if an activity complies with the terms and conditions of an NWP. If requested by the permittee in writing, the DE will verify in writing that the permittee's proposed activity complies with the terms and conditions of the NWP. A written verification may contain activity-specific conditions and regional conditions which a permittee must satisfy for the authorization to be valid.

(d) *Headwaters* means non-tidal rivers, streams, and their lakes and impoundments, including adjacent wetlands, that are part of a surface tributary system to an interstate or navigable water of the United States upstream of the point on the river or stream at which the average annual flow is less than five cubic feet per second. The DE may estimate this point from available data by using the mean annual area precipitation, area drainage basin maps, and the average runoff coefficient, or by similar means. For streams that are dry for long periods of the year, DEs may establish the point where headwaters begin as that point on the stream where a flow of five cubic feet per second is equaled or exceeded 50 percent of the time.

(e) *Isolated waters* means those non-tidal waters of the United States that are:

(1) Not part of a surface tributary system to interstate or navigable waters of the United States; and

(2) Not adjacent to such tributary waterbodies.

(f) *Filled area* means the area within jurisdictional waters which is eliminated or covered as a direct result of the discharge (*i.e.*, the area actually covered by the discharged material). It does not include areas excavated nor areas impacted as an indirect effect of the fill.

(g) *Discretionary authority* means the authority described in §§ 330.1(d) and 330.4(e) which the Chief of Engineers delegates to division or district engineers to modify an NWP authorization by adding conditions, to suspend an NWP authorization, or to revoke an NWP authorization and thus require individual permit authorization.

(h) *Terms and conditions.* The "terms" of an NWP are the limitations and provisions included in the description of the NWP itself. The "conditions" of NWPs are additional provisions which place restrictions or limitations on all of the NWPs. These are published with the NWPs. Other conditions may be imposed by district or division engineers on a geographic, category-of-activity, or activity-specific basis (See 33 CFR 330.4(e)).

(i) *Single and complete project* means the total project proposed or accomplished by one owner/developer or partnership or other association of owners/developers. For example, if construction of a residential development affects several different areas of a headwater or isolated water, or several different headwaters or isolated waters, the cumulative total of all filled areas should be the basis for deciding whether or not the project will be covered by an NWP. For linear projects, the "single and complete project" (*i.e.*, single and complete crossing) will apply to each crossing of a separate water of the United States (*i.e.*, single waterbody) at that location; except that for linear projects crossing a single waterbody several times at separate and distant locations, each crossing is considered a single and complete project. However, individual channels in a braided stream or river, or individual arms of a large, irregularly-shaped wetland or lake, etc., are not separate waterbodies.

(j) *Special aquatic sites* means wetlands, mudflats, vegetated shallows, coral reefs, riffle and pool complexes, sanctuaries, and refuges as defined at 40 CFR 230.40 through 230.45.

§ 330.3  Activities occurring before certain dates.

The following activities were permitted by NWPs issued on July 19, 1977, and, unless the activities are modified, they do not require further permitting:

(a) Discharges of dredged or fill material into waters of the United States outside the limits of navigable waters of the United States that occurred before the phase-in dates which extended Section 404 jurisdiction to all waters of the United States. The phase-in dates were: After July 25, 1975, discharges into navigable waters of the United

**Corps of Engineers, Dept. of the Army, DoD** §330.4

States and adjacent wetlands; after September 1, 1976, discharges into navigable waters of the United States and their primary tributaries, including adjacent wetlands, and into natural lakes, greater than 5 acres in surface area; and after July 1, 1977, discharges into all waters of the United States, including wetlands. (section 404)

(b) Structures or work completed before December 18, 1968, or in waterbodies over which the DE had not asserted jurisdiction at the time the activity occurred, provided in both instances, there is no interference with navigation. Activities completed shoreward of applicable Federal Harbor lines before May 27, 1970 do not require specific authorization. (section 10)

### §330.4 Conditions, limitations, and restrictions.

(a) *General.* A prospective permittee must satisfy all terms and conditions of an NWP for a valid authorization to occur. Some conditions identify a "threshold" that, if met, requires additional procedures or provisions contained in other paragraphs in this section. It is important to remember that the NWPs only authorize activities from the perspective of the Corps regulatory authorities and that other Federal, state, and local permits, approvals, or authorizations may also be required.

(b) *Further information.* (1) DEs have authority to determine if an activity complies with the terms and conditions of an NWP.

(2) NWPs do not obviate the need to obtain other Federal, state, or local permits, approvals, or authorizations required by law.

(3) NWPs do not grant any property rights or exclusive privileges.

(4) NWPs do not authorize any injury to the property or rights of others.

(5) NWPs do not authorize interference with any existing or proposed Federal project.

(c) *State 401 water quality certification.* (1) State 401 water quality certification pursuant to section 401 of the Clean Water Act, or waiver thereof, is required prior to the issuance or reissuance of NWPs authorizing activities which may result in a discharge into waters of the United States.

(2) If, prior to the issuance or reissuance of such NWPs, a state issues a 401 water quality certification which includes special conditions, the division engineer will make these special conditions regional conditions of the NWP for activities which may result in a discharge into waters of United States in that state, unless he determines that such conditions do not comply with the provisions of 33 CFR 325.4. In the latter case, the conditioned 401 water quality certification will be considered a denial of the certification (see paragraph (c)(3) of this section).

(3) If a state denies a required 401 water quality certification for an activity otherwise meeting the terms and conditions of a particular NWP, that NWP's authorization for all such activities within that state is denied without prejudice until the state issues an individual 401 water quality certification or waives its right to do so. State denial of 401 water quality certification for any specific NWP affects only those activities which may result in a discharge. That NWP continues to authorize activities which could not reasonably be expected to result in discharges into waters of the United States.[1]

(4) DEs will take appropriate measures to inform the public of which activities, waterbodies, or regions require an individual 401 water quality certification before authorization by NWP.

(5) The DE will not require or process an individual permit application for an

---

[1] NWPs numbered 1, 2, 8, 9, 10, 11, 19, 24, 28, and 35, do not require 401 water quality certification since they would authorize activities which, in the opinion of the Corps, could not reasonably be expected to result in a discharge and in the case of NWP 8 is seaward of the territorial seas. NWPs numbered 3, 4, 5, 6, 7, 13, 14, 18, 20, 21, 22, 23, 27, 32, 36, 37, and 38, involve various activities, some of which may result in a discharge and require 401 water quality certification, and others of which do not. State denial of 401 water quality certification for any specific NWP in this category affects only those activities which may result in a discharge. For those activities not involving discharges, the NWP remains in effect. NWPs numbered 12, 15, 16, 17, 25, 26, and 40 involve activities which would result in discharges and therefore 401 water quality certification is required.