within areas that are part of an established farming or silviculture operation. It does not include drainage associated with the immediate or gradual conversion of a wetland to a non-wetland (e.g., wetland species to upland species not typically adequate to life in saturated soil conditions), or conversion from one wetland use to another (for example, silviculture to farming).

In addition, minor drainage does not include the construction of any canal, ditch, dike or other waterway or structure which drains or otherwise significantly modifies a stream, lake, swamp, bog or any other wetland or aquatic area constituting waters of the United States. Any discharge of dredged or fill material into the waters of the United States incidental to the construction of any such structure or waterway requires a permit.

(4) *Plowing* means all forms of primary tillage, including moldboard, chisel, or wide-blade plowing, discing, harrowing, and similar physical means used on farm, forest or ranch land for the breaking up, cutting, turning over, or stirring of soil to prepare it for the planting of crops. Plowing does not include the redistribution of soil, rock, sand, or other surficial materials in a manner which changes any area of the waters of the United States to dryland. For example, the redistribution of surface materials by blading, grading, or other means to fill in wetland areas is not plowing. Rock crushing activities which result in the loss of natural drainage characteristics, the reduction of water storage and recharge capabilities, or the overburden of natural water filtration capacities do not constitute plowing. Plowing, as described above, will never involve a discharge of dredged or fill material.

(5) *Seeding* means the sowing of seed and placement of seedlings to produce farm, ranch, or forest crops and includes the placement of soil beds for seeds or seedlings on established farm and forest lands.

(e) Federal projects which qualify under the criteria contained in section 404(r) of the Act are exempt from section 404 permit requirements, but may be subject to other State or Federal requirements.

# PART 233—404 STATE PROGRAM REGULATIONS

## Subpart A—General

Sec.
233.1   Purpose and scope.
233.2   Definitions.
233.3   Confidentiality of information.
233.4   Conflict of interest.

## Subpart B—Program Approval

233.10   Elements of a program submission.
233.11   Program description.
233.12   Attorney General's statement.
233.13   Memorandum of Agreement with Regional Administrator.
233.14   Memorandum of Agreement with the Secretary.
233.15   Procedures for approving State programs.
233.16   Procedures for revision of State programs.

## Subpart C—Permit Requirements

233.20   Prohibitions.
233.21   General permits.
233.22   Emergency permits.
233.23   Permit conditions.

## Subpart D—Program Operation

233.30   Application for a permit.
233.31   Coordination requirements.
233.32   Public notice.
233.33   Public hearing.
233.34   Making a decision on the permit application.
233.35   Issuance and effective date of permit.
233.36   Modification, suspension or revocation of permits.
233.37   Signatures on permit applications and reports.
233.38   Continuation of expiring permits.
233.39   Electronic reporting.

## Subpart E—Compliance Evaluation and Enforcement

233.40   Requirements for compliance evaluation programs.
233.41   Requirements for enforcement authority.

## Subpart F—Federal Oversight

233.50   Review of and objection to State permits.
233.51   Waiver of review.
233.52   Program reporting.
233.53   Withdrawal of program approval.

## Subpart G—Eligible Indian Tribes

233.60   Requirements for eligibility.
233.61   Determination of Tribal eligibility.

233.62  Procedures for processing an Indian Tribe's application.

**Subpart H—Approved State Programs**

233.70  Michigan.
233.71  New Jersey.

AUTHORITY: 33 U.S.C. 1251 *et seq.*

SOURCE: 53 FR 20776, June 1, 1988, unless otherwise noted.

## Subpart A—General

### § 233.1  Purpose and scope.

(a) This part specifies the procedures EPA will follow, and the criteria EPA will apply, in approving, reviewing, and withdrawing approval of State programs under section 404 of the Act.

(b) Except as provided in §232.3, a State program must regulate all discharges of dredged or fill material into waters regulated by the State under section 404(g)–(1). Partial State programs are not approvable under section 404. A State's decision not to assume existing Corps' general permits does not constitute a partial program. The discharges previously authorized by general permit will be regulated by State individual permits. However, in many cases, States other than Indian Tribes will lack authority to regulate activities on Indian lands. This lack of authority does not impair that State's ability to obtain full program approval in accordance with this part, i.e., inability of a State which is not an Indian Tribe to regulate activities on Indian lands does not constitute a partial program. The Secretary of the Army acting through the Corps of Engineers will continue to administer the program on Indian lands if a State which is not an Indian Tribe does not seek and have authority to regulate activities on Indian lands.

(c) Nothing in this part precludes a State from adopting or enforcing requirements which are more stringent or from operating a program with greater scope, than required under this part. Where an approved State program has a greater scope than required by Federal law, the additional coverage is not part of the Federally approved program and is not subject to Federal oversight or enforcement.

NOTE: State assumption of the section 404 program is limited to certain waters, as provided in section 404(g)(1). The Federal program operated by the Corps of Engineers continues to apply to the remaining waters in the State even after program approval. However, this does not restrict States from regulating discharges of dredged or fill material into those waters over which the Secretary retains section 404 jurisdiction.

(d) Any approved State Program shall, at all times, be conducted in accordance with the requirements of the Act and of this part. While States may impose more stringent requirements, they may not impose any less stringent requirements for any purpose.

[53 FR 20776, June 1, 1988, as amended at 58 FR 8183, Feb. 11, 1993]

### § 233.2  Definitions.

The definitions in parts 230 and 232 as well as the following definitions apply to this part.

*Act* means the Clean Water Act (33 U.S.C. 1251 *et seq.*).

*Corps* means the U.S. Army Corps of Engineers.

*Federal Indian reservation* means all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and including rights-of-way running through the reservation.

*FWS* means the U.S. Fish and Wildlife Service.

*Indian Tribe* means any Indian Tribe, band, group, or community recognized by the Secretary of the Interior and exercising governmental authority over a Federal Indian reservation.

*Interstate agency* means an agency of two or more States established by or under an agreement or compact approved by the Congress, or any other agency of two or more States having substantial powers or duties pertaining to the control of pollution.

*NMFS* means the National Marine Fisheries Service.

*State* means any of the 50 States, the District of Columbia, Guam, the Commonwealth of Puerto Rico, the Virgin Islands, American Samoa, the Commonwealth of the Northern Mariana Islands, the Trust Territory of the Pacific Islands, or an Indian Tribe, as defined in this part, which meet the requirements of §233.60. For purposes of

§ 233.3                                    40 CFR Ch. I (7–1–19 Edition)

this part, the word State also includes any interstate agency requesting program approval or administering an approved program.

*State Director* (*Director*) means the chief administrative officer of any State or interstate agency operating an approved program, or the delegated representative of the Director. If responsibility is divided among two or more State or interstate agencies, Director means the chief administrative officer of the State or interstate agency authorized to perform the particular procedure or function to which reference is made.

*State 404 program* or *State program* means a State program which has been approved by EPA under section 404 of the Act to regulate the discharge of dredged or fill material into certain waters as defined in § 232.2(p).

[53 FR 20776, June 1, 1988, as amended at 58 FR 8183, Feb. 11, 1993]

### § 233.3  Confidentiality of information.

(a) Any information submitted to EPA pursuant to these regulations may be claimed as confidential by the submitter at the time of submittal and a final determination as to that claim will be made in accordance with the procedures of 40 CFR part 2 and paragraph (c) of this section.

(b) Any information submitted to the Director may be claimed as confidential in accordance with State law, subject to paragraphs (a) and (c) of this section.

(c) Claims of confidentiality for the following information will be denied:

(1) The name and address of any permit applicant or permittee,

(2) Effluent data,

(3) Permit application, and

(4) Issued permit.

### § 233.4  Conflict of interest.

Any public officer or employee who has a direct personal or pecuniary interest in any matter that is subject to decision by the agency shall make known such interest in the official records of the agency and shall refrain from participating in any manner in such decision.

## Subpart B—Program Approval

### § 233.10  Elements of a program submission.

Any State that seeks to administer a 404 program under this part shall submit to the Regional Administrator at least three copies of the following:

(a) A letter from the Governor of the State requesting program approval.

(b) A complete program description, as set forth in § 233.11.

(c) An Attorney General's statement, as set forth in § 233.12.

(d) A Memorandum of Agreement with the Regional Administrator, as set forth in § 233.13.

(e) A Memorandum of Agreement with the Secretary, as set forth in § 233.14.

(f) Copies of all applicable State statutes and regulations, including those governing applicable State administrative procedures.

### § 233.11  Program description.

The program description as required under § 233.10 shall include:

(a) A description of the scope and structure of the State's program. The description should include extent of State's jurisdiction, scope of activities regulated, anticipated coordination, scope of permit exemptions if any, and permit review criteria;

(b) A description of the State's permitting, administrative, judicial review, and other applicable procedures;

(c) A description of the basic organization and structure of the State agency (agencies) which will have responsibility for administering the program. If more than one State agency is responsible for the administration of the program, the description shall address the responsibilities of each agency and how the agencies intend to coordinate administration and evaluation of the program;

(d) A description of the funding and manpower which will be available for program administration;

(e) An estimate of the anticipated workload, e.g., number of discharges.

(f) Copies of permit application forms, permit forms, and reporting forms;

(g) A description of the State's compliance evaluation and enforcement

328

**Environmental Protection Agency**                    **§ 233.13**

programs, including a description of how the State will coordinate its enforcement strategy with that of the Corps and EPA;

(h) A description of the waters of the United States within a State over which the State assumes jurisdiction under the approved program; a description of the waters of the United States within a State over which the Secretary retains jurisdiction subsequent to program approval; and a comparison of the State and Federal definitions of wetlands.

NOTE: States should obtain from the Secretary an identification of those waters of the U.S. within the State over which the Corps retains authority under section 404(g) of the Act.

(i) A description of the specific best management practices proposed to be used to satisfy the exemption provisions of section 404(f)(1)(E) of the Act for construction or maintenance of farm roads, forest roads, or temporary roads for moving mining equipment.

**§ 233.12   Attorney General's statement.**

(a) Any State that seeks to administer a program under this part shall submit a statement from the State Attorney General (or the attorney for those State or interstate agencies which have independence legal counsel), that the laws and regulations of the State, or an interstate compact, provide adequate authority to carry out the program and meet the applicable requirements of this part. This statement shall cite specific statutes and administrative regulations which are lawfully adopted at the time the statement is signed and which shall be fully effective by the time the program is approved, and, where appropriate, judicial decisions which demonstrate adequate authority. The attorney signing the statement required by this section must have authority to represent the State agency in court on all matters pertaining to the State program.

(b) If a State seeks approval of a program covering activities on Indian lands, the statement shall contain an analysis of the State's authority over such activities.

(c) The State Attorney General's statement shall contain a legal analysis of the effect of State law regarding the prohibition on taking private property without just compensation on the successful implementation of the State's program.

(d) In those States where more than one agency has responsibility for administering the State program, the statement must include certification that each agency has full authority to administer the program within its category of jurisdiction and that the State, as a whole, has full authority to administer a complete State section 404 program.

**§ 233.13   Memorandum of Agreement with Regional Administrator.**

(a) Any State that seeks to administer a program under this part shall submit a Memorandum of Agreement executed by the Director and the Regional Administrator. The Memorandum of Agreement shall become effective upon approval of the State program. When more than one agency within a State has responsibility for administering the State program, Directors of each of the responsible State agencies shall be parties to the Memorandum of Agreement.

(b) The Memorandum of Agreement shall set out the State and Federal responsibilities for program administration and enforcement. These shall include, but not be limited to:

(1) Provisions specifying classes and categories of permit applications for which EPA will waive Federal review (as specified in § 233.51).

(2) Provisions specifying the frequency and content of reports, documents and other information which the State may be required to submit to EPA in addition to the annual report, as well as a provision establishing the submission date for the annual report. The State shall also allow EPA routinely to review State records, reports and files relevant to the administration and enforcement of the approved program.

(3) Provisions addressing EPA and State roles and coordination with respect to compliance monitoring and enforcement activities.

(4) Provisions addressing modification of the Memorandum of Agreement.

## § 233.14 Memorandum of Agreement with the Secretary.

(a) Before a State program is approved under this part, the Director shall enter into a Memorandum of Agreement with the Secretary. When more than one agency within a State has responsibility for administering the State program, Directors of each of the responsible agencies shall be parties of the Memorandum of Agreement.

(b) The Memorandum of Agreement shall include:

(1) A description of waters of the United States within the State over which the Secretary retains jurisdiction, as identified by the Secretary.

(2) Procedures whereby the Secretary will, upon program approval, transfer to the State pending 404 permit applications for discharges in State regulated waters and other relevant information not already in the possession of the Director.

NOTE: Where a State permit program includes coverage of those traditionally navigable waters in which only the Secretary may issue section 404 permits, the State is encouraged to establish in this MOA procedures for joint processing of Federal and State permits, including joint public notices and public hearings.

(3) An identification of all general permits issued by the Secretary the terms and conditions of which the State intends to administer and enforce upon receiving approval of its program, and a plan for transferring responsibility for these general permits to the State, including procedures for the prompt transmission from the Secretary to the Director of relevant information not already in the possession of the Director, including support files for permit issuance, compliance reports and records of enforcement actions.

## § 233.15 Procedures for approving State programs.

(a) The 120 day statutory review period shall commence on the date of receipt of a complete State program submission as set out in § 233.10 of this part. EPA shall determine whether the submission is complete within 30 days of receipt of the submission and shall notify the State of its determination. If EPA finds that a State's submission is incomplete, the statutory review period shall not begin until all the necessary information is received by EPA.

(b) If EPA determines the State significantly changes its submission during the review period, the statutory review period shall begin again upon the receipt of a revised submission.

(c) The State and EPA may extend the statutory review period by agreement.

(d) Within 10 days of receipt of a complete State section 404 program submission, the Regional Administrator shall provide copies of the State's submission to the Corps, FWS, and NMFS (both Headquarters and appropriate Regional organizations.)

(e) After determining that a State program submission is complete, the Regional Administrator shall publish notice of the State's application in the FEDERAL REGISTER and in enough of the largest newspapers in the State to attract statewide attention. The Regional Administrator shall also mail notice to persons known to be interested in such matters. Existing State, EPA, Corps, FWS, and NMFS mailing lists shall be used as a basis for this mailing. However, failure to mail all such notices shall not be grounds for invalidating approval (or disapproval) of an otherwise acceptable (or unacceptable) program. This notice shall:

(1) Provide for a comment period of not less than 45 days during which interested members of the public may express their views on the State program.

(2) Provide for a public hearing within the State to be held not less than 30 days after notice of hearing is published in the FEDERAL REGISTER;

(3) Indicate where and when the State's submission may be reviewed by the public;

(4) Indicate whom an interested member of the public with questions should contact; and

(5) Briefly outline the fundamental aspects of the State's proposed program and the process for EPA review and decision.

(f) Within 90 days of EPA's receipt of a complete program submission, the Corps, FWS, and NMFS shall submit to EPA any comments on the State's program.

**Environmental Protection Agency**                                      **§ 233.16**

(g) Within 120 days of receipt of a complete program submission (unless an extension is agreed to by the State), the Regional Administrator shall approve or disapprove the program based on whether the State's program fulfills the requirements of this part and the Act, taking into consideration all comments received. The Regional Administrator shall prepare a responsiveness summary of significant comments received and his response to these comments. The Regional Administrator shall respond individually to comments received from the Corps, FWS, and NMFS.

(h) If the Regional Administrator approves the State's section 404 program, he shall notify the State and the Secretary of the decision and publish notice in the FEDERAL REGISTER. Transfer of the program to the State shall not be considered effective until such notice appears in the FEDERAL REGISTER. The Secretary shall suspend the issuance by the Corps of section 404 permits in State regulated waters on such effective date.

(i) If the Regional Administrator disapproves the State's program based on the State not meeting the requirements of the Act and this part, the Regional Administrator shall notify the State of the reasons for the disapproval and of any revisions or modifications to the State's program which are necessary to obtain approval. If the State resubmits a program submission remedying the identified problem areas, the approval procedure and statutory review period shall begin upon receipt of the revised submission.

**§ 233.16 Procedures for revision of State programs.**

(a) The State shall keep the Regional Administrator fully informed of any proposed or actual changes to the State's statutory or regulatory authority or any other modifications which are significant to administration of the program.

(b) Any approved program which requires revision because of a modification to this part or to any other applicable Federal statute or regulation shall be revised within one year of the date of promulgation of such regulation, except that if a State must amend or enact a statute in order to make the required revision, the revision shall take place within two years.

(c) States with approved programs shall notify the Regional Administrator whenever they propose to transfer all or part of any program from the approved State agency to any other State agency. The new agency is not authorized to administer the program until approved by the Regional Administrator under paragraph (d) of this section.

(d) Approval of revision of a State program shall be accomplished as follows:

(1) The Director shall submit a modified program description or other documents which the Regional Administrator determines to be necessary to evaluate whether the program complies with the requirements of the Act and this part.

(2) Notice of approval of program changes which are not substantial revisions may be given by letter from the Regional Administrator to the Governor or his designee.

(3) Whenever the Regional Administrator determines that the proposed revision is substantial, he shall publish and circulate notice to those persons known to be interested in such matters, provide opportunity for a public hearing, and consult with the Corps, FWS, and NMFS. The Regional Administrator shall approve or disapprove program revisions based on whether the program fulfills the requirements of the Act and this part, and shall publish notice of his decision in the FEDERAL REGISTER. For purposes of this paragraph, substantial revisions include, but are not limited to, revisions that affect the area of jurisdiction, scope of activities regulated, criteria for review of permits, public participation, or enforcement capability.

(4) Substantial program changes shall become effective upon approval by the Regional Administrator and publication of notice in the FEDERAL REGISTER.

(e) Whenever the Regional Administrator has reason to believe that circumstances have changed with respect to a State's program, he may request and the State shall provide a supplemental Attorney General's statement,

331

program description, or such other documents or information as are necessary to evaluate the program's compliance with the requirements of the Act and this part.

## Subpart C—Permit Requirements

### § 233.20  Prohibitions.

No permit shall be issued by the Director in the following circumstances:

(a) When permit does not comply with the requirements of the Act or regulations thereunder, including the section 404(b)(1) Guidelines (part 230 of this chapter).

(b) When the Regional Administrator has objected to issuance of the permit under § 233.50 and the objection has not been resolved.

(c) When the proposed discharges would be in an area which has been prohibited, withdrawn, or denied as a disposal site by the Administrator under section 404(c) of the Act, or when the discharge would fail to comply with a restriction imposed thereunder.

(d) If the Secretary determines, after consultation with the Secretary of the Department in which the Coast Guard is operating, that anchorage and navigation of any of the navigable waters would be substantially impaired.

### § 233.21  General permits.

(a) Under section 404(h)(5) of the Act, States may, after program approval, administer and enforce general permits previously issued by the Secretary in State regulated waters.

NOTE: If States intend to assume existing general permits, they must be able to ensure compliance with existing permit conditions an any reporting monitoring, or prenotification requirements.

(b) The Director may issue a general permit for categories of similar activities if he determines that the regulated activities will cause only minimal adverse environmental effects when performed separately and will have only minimal cumulative adverse effects on the environment. Any general permit issued shall be in compliance with the section 404(b)(1) Guidelines.

(c) In addition to the conditions specified in § 233.23, each general permit shall contain:

(1) A specific description of the type(s) of activities which are authorized, including limitations for any single operation. The description shall be detailed enough to ensure that the requirements of paragraph (b) of this section are met. (This paragraph supercedes § 233.23(c)(1) for general permits.)

(2) A precise description of the geographic area to which the general permit applies, including limitations on the type(s) of water where operations may be conducted sufficient to ensure that the requirements of paragraph (b) of this section are met.

(d) Predischarge notification or other reporting requirements may be required by the Director on a permit-by-permit basis as appropriate to ensure that the general permit will comply with the requirement (section 404(e) of the Act) that the regulated activities will cause only minimal adverse environmental effects when performed separately and will have only minimal cumulative adverse effects on the environment.

(e) The Director may, without revoking the general permit, require any person authorized under a general permit to apply for an individual permit. This discretionary authority will be based on concerns for the aquatic environment including compliance with paragraph (b) of this section and the 404(b)(1) Guidelines (40 CFR part 230.)

(1) This provision in no way affects the legality of activities undertaken pursuant to the general permit prior to notification by the Director of such requirement.

(2) Once the Director notifies the discharger of his decision to exercise discretionary authority to require an individual permit, the discharger's activity is no longer authorized by the general permit.

### § 233.22  Emergency permits.

(a) Notwithstanding any other provision of this part, the Director may issue a temporary emergency permit for a discharge of dredged or fill material if unacceptable harm to life or severe loss of physical property is likely to occur before a permit could be issued or modified under procedures normally required.

**Environmental Protection Agency**                                      **§ 233.23**

(b) Emergency permits shall incorporate, to the extent possible and not inconsistent with the emergency situation, all applicable requirements of § 233.23.

(1) Any emergency permit shall be limited to the duration of time (typically no more than 90 days) required to complete the authorized emergency action.

(2) The emergency permit shall have a condition requiring appropriate restoration of the site.

(c) The emergency permit may be terminated at any time without process (§ 233.36) if the Director determines that termination is necessary to protect human health or the environment.

(d) The Director shall consult, in an expeditious manner, such as by telephone, with the Regional Administrator, the Corps, FWS, and NMFS about issuance of an emergency permit.

(e) The emergency permit may be oral or written. If oral, it must be followed within 5 days by a written emergency permit. A copy of the written permit shall be sent to the Regional Administrator.

(f) Notice of the emergency permit shall be published and public comments solicited in accordance with § 233.32 as soon as possible but no later than 10 days after the issuance date.

## § 233.23  Permit conditions.

(a) For each permit the Director shall establish conditions which assure compliance with all applicable statutory and regulatory requirements, including the 404(b)(1) Guidelines, applicable section 303 water quality standards, and applicable section 307 effluent standards and prohibitions.

(b) Section 404 permits shall be effective for a fixed term not to exceed 5 years.

(c) Each 404 permit shall include conditions meeting or implementing the following requirements:

(1) A specific identification and complete description of the authorized activity including name and address of permittee, location and purpose of discharge, type and quantity of material to be discharged. (This subsection is not applicable to general permits).

(2) Only the activities specifically described in the permit are authorized.

(3) The permittee shall comply with all conditions of the permit even if that requires halting or reducing the permitted activity to maintain compliance. Any permit violation constitutes a violation of the Act as well as of State statute and/or regulation.

(4) The permittee shall take all reasonable steps to minimize or prevent any discharge in violation of this permit.

(5) The permittee shall inform the Director of any expected or known actual noncompliance.

(6) The permittee shall provide such information to the Director, as the Director requests, to determine compliance status, or whether cause exists for permit modification, revocation or termination.

(7) Monitoring, reporting and record-keeping requirements as needed to safeguard the aquatic environment. (Such requirements will be determined on a case-by-case basis, but at a minimum shall include monitoring and reporting of any expected leachates, reporting of noncompliance, planned changes or transfer of the permit.)

(8) Inspection and entry. The permittee shall allow the Director, or his authorized representative, upon presentation of proper identification, at reasonable times to:

(i) Enter upon the permittee's premises where a regulated activity is located or where records must be kept under the conditions of the permit,

(ii) Have access to and copy any records that must be kept under the conditions of the permit,

(iii) Inspect operations regulated or required under the permit, and

(iv) Sample or monitor, for the purposes of assuring permit compliance or as otherwise authorized by the Act, any substances or parameters at any location.

(9) Conditions assuring that the discharge will be conducted in a manner which minimizes adverse impacts upon the physical, chemical and biological integrity of the waters of the United States, such as requirements for restoration or mitigation.

§ 233.30                                                    40 CFR Ch. I (7–1–19 Edition)

## Subpart D—Program Operation

### § 233.30  Application for a permit.

(a) Except when an activity is authorized by a general permit issued pursuant to § 233.21 or is exempt from the requirements to obtain a permit under § 232.3, any person who proposes to discharge dredged or fill material into State regulated waters shall complete, sign and submit a permit application to the Director. Persons proposing to discharge dredged or fill material under the authorization of a general permit must comply with any reporting requirements of the general permit.

(b) A complete application shall include:

(1) Name, address, telephone number of the applicant and name(s) and address(es) of adjoining property owners.

(2) A complete description of the proposed activity including necessary drawings, sketches or plans sufficient for public notice (the applicant is not generally expected to submit detailed engineering plans and specifications); the location, purpose and intended use of the proposed activity; scheduling of the activity; the location and dimensions of adjacent structures; and a list of authorizations required by other Federal, interstate, State or local agencies for the work, including all approvals received or denials already made.

(3) The application must include a description of the type, composition, source and quantity of the material to be discharged, the method of discharge, and the site and plans for disposal of the dredged or fill material.

(4) A certification that all information contained in the application is true and accurate and acknowledging awareness of penalties for submitting false information.

(5) All activities which the applicant plans to undertake which are reasonably related to the same project should be included in the same permit application.

(c) In addition to the information indicated in § 233.30(b), the applicant will be required to furnish such additional information as the Director deems appropriate to assist in the evaluation of the application. Such additional information may include environmental data and information on alternate methods and sites as may be necessary for the preparation of the required environmental documentation.

(d) The level of detail shall be reasonably commensurate with the type and size of discharge, proximity to critical areas, likelihood of long-lived toxic chemical substances, and potential level of environmental degradation.

NOTE: EPA encourages States to provide permit applicants guidance regarding the level of detail of information and documentation required under this subsection. This guidance can be provided either through the application form or on an individual basis. EPA also encourages the State to maintain a program to inform potential applicants for permits of the requirements of the State program and of the steps required to obtain permits for activities in State regulated waters.

### § 233.31  Coordination requirements.

(a) If a proposed discharge may affect the biological, chemical, or physical integrity of the waters of any State(s) other than the State in which the discharge occurs, the Director shall provide an opportunity for such State(s) to submit written comments within the public comment period and to suggest permit conditions. If these recommendations are not accepted by the Director, he shall notify the affected State and the Regional Administrator prior to permit issuance in writing of his failure to accept these recommendations, together with his reasons for so doing. The Regional Administrator shall then have the time provided for in § 233.50(d) to comment upon, object to, or make recommendations.

(b) State section 404 permits shall be coordinated with Federal and Federal-State water related planning and review processes.

### § 233.32  Public notice.

(a) Applicability.

(1) The Director shall give public notice of the following actions:

(i) Receipt of a permit application.

(ii) Preparation of a draft general permit.

(iii) Consideration of a major modification to an issued permit.

(iv) Scheduling of a public hearing.

334

(v) Issuance of an emergency permit.

(2) Public notices may describe more than one permit or action.

(b) Timing.

(1) The public notice shall provide a reasonable period of time, normally at least 30 days, within which interested parties may express their views concerning the permit application.

(2) Public notice of a public hearing shall be given at least 30 days before the hearing.

(3) The Regional Administrator may approve a program with shorter public notice timing if the Regional Administrator determines that sufficient public notice is provided for.

(c) The Director shall give public notice by each of the following methods:

(1) By mailing a copy of the notice to the following persons (any person otherwise entitled to receive notice under this paragraph may waive his rights to receive notice for any classes or categories of permits):

(i) The applicant.

(ii) Any agency with jurisdiction over the activity or the disposal site, whether or not the agency issues a permit.

(iii) Owners of property adjoining the property where the regulated activity will occur.

(iv) All persons who have specifically requested copies of public notices. (The Director may update the mailing list from time to time by requesting written indication of continued interest from those listed. The Director may delete from the list the name of any person who fails to respond to such a request.)

(v) Any State whose waters may be affected by the proposed discharge.

(2) In addition, by providing notice in at least one other way (such as advertisement in a newspaper of sufficient circulation) reasonably calculated to cover the area affected by the activity.

(d) All public notices shall contain at least the following information:

(1) The name and address of the applicant and, if different, the address or location of the activity(ies) regulated by the permit.

(2) The name, address, and telephone number of a person to contact for further information.

(3) A brief description of the comment procedures and procedures to request a public hearing, including deadlines.

(4) A brief description of the proposed activity, its purpose and intended use, so as to provide sufficient information concerning the nature of the activity to generate meaningful comments, including a description of the type of structures, if any, to be erected on fills, and a description of the type, composition and quantity of materials to be discharged.

(5) A plan and elevation drawing showing the general and specific site location and character of all proposed activities, including the size relationship of the proposed structures to the size of the impacted waterway and depth of water in the area.

(6) A paragraph describing the various evaluation factors, including the 404(b)(1) Guidelines or State-equivalent criteria, on which decisions are based.

(7) Any other information which would significantly assist interested parties in evaluating the likely impact of the proposed activity.

(e) Notice of public hearing shall also contain the following information:

(1) Time, date, and place of hearing.

(2) Reference to the date of any previous public notices relating to the permit.

(3) Brief description of the nature and purpose of the hearing.

### §233.33  Public hearing.

(a) Any interested person may request a public hearing during the public comment period as specified in §233.32. Requests shall be in writing and shall state the nature of the issues proposed to be raised at the hearing.

(b) The Director shall hold a public hearing whenever he determines there is a significant degree of public interest in a permit application or a draft general permit. He may also hold a hearing, at his discretion, whenever he determines a hearing may be useful to a decision on the permit application.

(c) At a hearing, any person may submit oral or written statements or data concerning the permit application or draft general permit. The public comment period shall automatically be extended to the close of any public hearing under this section. The presiding

officer may also extend the comment period at the hearing.

(d) All public hearings shall be reported verbatim. Copies of the record of proceedings may be purchased by any person from the Director or the reporter of such hearing. A copy of the transcript (or if none is prepared, a tape of the proceedings) shall be made available for public inspection at an appropriate State office.

### § 233.34 Making a decision on the permit application.

(a) The Director will review all applications for compliance with the 404(b)(1) Guidelines and/or equivalent State environmental criteria as well as any other applicable State laws or regulations.

(b) The Director shall consider all comments received in response to the public notice, and public hearing if a hearing is held. All comments, as well as the record of any public hearing, shall be made part of the official record on the application.

(c) After the Director has completed his review of the application and consideration of comments, the Director will determine, in accordance with the record and all applicable regulations, whether or not the permit should be issued. No permit shall be issued by the Director under the circumstances described in § 233.20. The Director shall prepare a written determination on each application outlining his decision and rationale for his decision. The determination shall be dated, signed and included in the official record prior to final action on the application. The official record shall be open to the public.

### § 233.35 Issuance and effective date of permit.

(a) If the Regional Administrator comments on a permit application or draft general permit under § 233.50, the Director shall follow the procedures specified in that section in issuing the permit.

(b) If the Regional Administrator does not comment on a permit application or draft general permit, the Director shall make a final permit decision after the close of the public comment period and shall notify the applicant.

(1) If the decision is to issue a permit, the permit becomes effective when it is signed by the Director and the applicant.

(2) If the decision is to deny the permit, the Director will notify the applicant in writing of the reason(s) for denial.

### § 233.36 Modification, suspension or revocation of permits.

(a) *General.* The Director may reevaluate the circumstances and conditions of a permit either on his own motion or at the request of the permittee or of a third party and initiate action to modify, suspend, or revoke a permit if he determines that sufficient cause exists. Among the factors to be considered are:

(1) Permittee's noncompliance with any of the terms or conditions of the permit;

(2) Permittee's failure in the application or during the permit issuance process to disclose fully all relevant facts or the permittee's misrepresentation of any relevant facts at the time;

(3) Information that activities authorized by a general permit are having more than minimal individual or cumulative adverse effect on the environment, or that the permitted activities are more appropriately regulated by individual permits;

(4) Circumstances relating to the authorized activity have changed since the permit was issued and justify changed permit conditions or temporary or permanent cessation of any discharge controlled by the permit;

(5) Any significant information relating to the activity authorized by the permit if such information was not available at the time the permit was issued and would have justified the imposition of different permit conditions or denial at the time of issuance;

(6) Revisions to applicable statutory or regulatory authority, including toxic effluent standards or prohibitions or water quality standards.

(b) *Limitations.* Permit modifications shall be in compliance with § 233.20.

(c) *Procedures.* (1) The Director shall develop procedures to modify, suspend or revoke permits if he determines cause exists for such action (§ 233.36(a)).

Such procedures shall provide opportunity for public comment (§ 233.32), coordination with the Federal review agencies (§ 233.50), and opportunity for public hearing (§ 233.33) following notification of the permittee. When permit modification is proposed, only the conditions subject to modification need be reopened.

(2) *Minor modification of permits.* The Director may, upon the consent of the permittee, use abbreviated procedures to modify a permit to make the following corrections or allowance for changes in the permitted activity:

(i) Correct typographical errors;

(ii) Require more frequent monitoring or reporting by permittee;

(iii) Allow for a change in ownership or operational control of a project or activity where the Director determines that no other change in the permit is necessary, provided that a written agreement containing a specific date for transfer of permit responsibility, coverage, and liability between the current and new permittees has been submitted to the Director;

(iv) Provide for minor modification of project plans that do not significantly change the character, scope, and/or purpose of the project or result in significant change in environmental impact;

(v) Extend the term of a permit, so long as the modification does not extend the term of the permit beyond 5 years from its original effective date and does not result in any increase in the amount of dredged or fill material allowed to be discharged.

**§ 233.37  Signatures on permit applications and reports.**

The application and any required reports must be signed by the person who desires to undertake the proposed activity or by that person's duly authorized agent if accompanied by a statement by that person designating the agent. In either case, the signature of the applicant or the agent will be understood to be an affirmation that he possesses or represents the person who possesses the requisite property interest to undertake the activity proposed in the application.

**§ 233.38  Continuation of expiring permits.**

A Corps 404 permit does not continue in force beyond its expiration date under Federal law if, at that time, a State is the permitting authority. States authorized to administer the 404 Program may continue Corps or State-issued permits until the effective date of the new permits, if State law allows. Otherwise, the discharge is being conducted without a permit from the time of expiration of the old permit to the effective date of a new State-issued permit, if any.

**§ 233.39  Electronic reporting.**

States that choose to receive electronic documents must satisfy the requirements of 40 CFR Part 3—(Electronic reporting) in their state program.

[70 FR 59888, Oct. 13, 2005]

## Subpart E—Compliance Evaluation and Enforcement

**§ 233.40  Requirements for compliance evaluation programs.**

(a) In order to abate violations of the permit program, the State shall maintain a program designed to identify persons subject to regulation who have failed to obtain a permit or to comply with permit conditions.

(b) The Director and State officers engaged in compliance evaluation, upon presentation of proper identification, shall have authority to enter any site or premises subject to regulation or in which records relevant to program operation are kept in order to copy any records, inspect, monitor or otherwise investigate compliance with the State program.

(c) The State program shall provide for inspections to be conducted, samples to be taken and other information to be gathered in a manner that will produce evidence admissible in an enforcement proceeding.

(d) The State shall maintain a program for receiving and ensuring proper consideration of information submitted by the public about violations.

§ 233.41 Requirements for enforcement authority.

(a) Any State agency administering a program shall have authority:

(1) To restrain immediately and effectively any person from engaging in any unauthorized activity;

(2) To sue to enjoin any threatened or continuing violation of any program requirement;

(3) To assess or sue to recover civil penalties and to seek criminal remedies, as follows:

(i) The agency shall have the authority to assess or recover civil penalties for discharges of dredged or fill material without a required permit or in violation of any section 404 permit condition in an amount of at least $5,000 per day of such violation.

(ii) The agency shall have the authority to seek criminal fines against any person who willfully or with criminal negligence discharges dredged or fill material without a required permit or violates any permit condition issued under section 404 in the amount of at least $10,000 per day of such violation.

(iii) The agency shall have the authority to seek criminal fines against any person who knowingly makes false statements, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under the Act, these regulations or the approved State program, or who falsifies, tampers with, or knowingly renders inaccurate any monitoring device or method required to be maintained under the permit, in an amount of at least $5,000 for each instance of violation.

(b)(1) The approved maximum civil penalty or criminal fine shall be assessable for each violation and, if the violation is continuous, shall be assessable in that maximum amount for each day of violation.

(2) The burden of proof and degree of knowledge or intent required under State law for establishing violations under paragraph (a)(3) of this section, shall be no greater than the burden of proof or degree of knowledge or intent EPA must bear when it brings an action under the Act.

(c) The civil penalty assessed, sought, or agreed upon by the Director under paragraph (a)(3) of this section shall be appropriate to the violation.

NOTE: To the extent that State judgments or settlements provide penalties in amounts which EPA believes to be substantially inadequate in comparison to the amounts which EPA would require under similar facts, EPA may, when authorized by section 309 of the Act, commence separate action for penalties.

(d)(1) The Regional Administrator may approve a State program where the State lacks authority to recover penalties of the levels required under paragraphs (a)(3)(i)–(iii) of this section only if the Regional Administrator determines, after evaluating a record of at least one year for an alternative enforcement program, that the State has an alternate, demonstrably effective method of ensuring compliance which has both punitive and deterrence effects.

(2) States whose programs were approved via waiver of monetary penalties shall keep the Regional Administrator informed of all enforcement actions taken under any alternative method approved pursuant to paragraph (d)(1) of this section. The manner of reporting will be established in the Memorandum of Agreement with the Regional Administrator (§ 233.13).

(e) Any State administering a program shall provide for public participation in the State enforcement process by providing either:

(1) Authority which allows intervention of right in any civil or administrative action to obtain remedies specified in paragraph (a)(3) of this section by any citizen having an interest which is or may be adversely affected, or

(2) Assurance that the State agency or enforcement authority will:

(i) Investigate and provide written responses to all citizen complaints submitted pursuant to State procedures;

(ii) Not oppose intervention by any citizen when permissive intervention may be authorized by statute, rule, or regulation; and

(iii) Publish notice of and provide at least 30 days for public comment on any proposed settlement of a State enforcement action.

(f) *Provision for Tribal criminal enforcement authority.* To the extent that an

**Environmental Protection Agency** §233.50

Indian Tribe does not assert or is precluded from asserting criminal enforcement authority (§233.41(a)(3) (ii) and (iii)), the Federal government will continue to exercise primary criminal enforcement responsibility. The Tribe, with the EPA Region and Corps District(s) with jurisdiction, shall develop a system where the Tribal agency will refer such a violation to the Regional Administrator or the District Engineer(s), as agreed to by the parties, in an appropriate and timely manner. This agreement shall be incorporated into joint or separate Memorandum of Agreement with the EPA Region and the Corps District(s), as appropriate.

[53 FR 20776, June 1, 1988, as amended at 58 FR 8183, Feb. 11, 1993]

## Subpart F—Federal Oversight

**§233.50  Review of and objection to State permits.**

(a) The Director shall promptly transmit to the Regional Administrator:

(1) A copy of the public notice for any complete permit applications received by the Director, except those for which permit review has been waived under §233.51. The State shall supply the Regional Administrator with copies of public notices for permit applications for which permit review has been waived whenever requested by EPA.

(2) A copy of a draft general permit whenever the State intends to issue a general permit.

(3) Notice of every significant action taken by the State agency related to the consideration of any permit application except those for which Federal review has been waived or draft general permit.

(4) A copy of every issued permit.

(5) A copy of the Director's response to another State's comments/recommendations, if the Director does not accept these recommendations (§233.32(a)).

(b) Unless review has been waived under §233.51, the Regional Administrator shall provide a copy of each public notice, each draft general permit, and other information needed for review of the application to the Corps, FWS, and NMFS, within 10 days of receipt. These agencies shall notify the Regional Administrator within 15 days of their receipt if they wish to comment on the public notice or draft general permit. Such agencies should submit their evaluation and comments to the Regional Administrator within 50 days of such receipt. The final decision to comment, object or to require permit conditions shall be made by the Regional Administrator. (These times may be shortened by mutual agreement of the affected Federal agencies and the State.)

(c) If the information provided is inadequate to determine whether the permit application or draft general permit meets the requirements of the Act, these regulations, and the 404(b)(1) Guidelines, the Regional Administrator may, within 30 days of receipt, request the Director to transmit to the Regional Administrator the complete record of the permit proceedings before the State, or any portions of the record, or other information, including a supplemental application, that the Regional Administrator determines necessary for review.

(d) If the Regional Administrator intends to comment upon, object to, or make recommendations with respect to a permit application, draft general permit, or the Director's failure to accept the recommendations of an affected State submitted pursuant to §233.31(a), he shall notify the Director of his intent within 30 days of receipt. If the Director has been so notified, the permit shall not be issued until after the receipt of such comments or 90 days of the Regional Administrator's receipt of the public notice, draft general permit or Director's response (§233.31(a)), whichever comes first. The Regional Administrator may notify the Director within 30 days of receipt that there is no comment but that he reserves the right to object within 90 days of receipt, based on any new information brought out by the public during the comment period or at a hearing.

(e) If the Regional Administrator has given notice to the Director under paragraph (d) of this section, he shall submit to the Director, within 90 days of receipt of the public notice, draft general permit, or Director's response (§233.31(a)), a written statement of his

comments, objections, or recommendations; the reasons for the comments, objections, or recommendations; and the actions that must be taken by the Director in order to eliminate any objections. Any such objection shall be based on the Regional Administrator's determination that the proposed permit is (1) the subject of an interstate dispute under § 233.31(a) and/or (2) outside requirements of the Act, these regulations, or the 404(b)(1) Guidelines. The Regional Administrator shall make available upon request a copy of any comment, objection, or recommendation on a permit application or draft general permit to the permit applicant or to the public.

(f) When the Director has received an EPA objection or requirement for a permit condition to a permit application or draft general permit under this section, he shall not issue the permit unless he has taken the steps required by the Regional Administrator to eliminate the objection.

(g) Within 90 days of receipt by the Director of an objection or requirement for a permit condition by the Regional Administrator, the State or any interested person may request that the Regional Administrator hold a public hearing on the objection or requirement. The Regional Administrator shall conduct a public hearing whenever requested by the State proposing to issue the permit, or if warranted by significant public interest based on requests received.

(h) If a public hearing is held under paragraph (g) of this section, the Regional Administrator shall, following that hearing, reaffirm, modify or withdraw the objection or requirement for a permit condition, and notify the Director of this decision.

(1) If the Regional Administrator withdraws his objection or requirement for a permit condition, the Director may issue the permit.

(2) If the Regional Administrator does not withdraw the objection or requirement for a permit condition, the Director must issue a permit revised to satisfy the Regional Administrator's objection or requirement for a permit condition or notify EPA of its intent to deny the permit within 30 days of receipt of the Regional Administrator's notification.

(i) If no public hearing is held under paragraph (g) of this section, the Director within 90 days of receipt of the objection or requirement for a permit condition shall either issue the permit revised to satisfy EPA's objections or notify EPA of its intent to deny the permit.

(j) In the event that the Director neither satisfies EPA's objections or requirement for a permit condition nor denies the permit, the Secretary shall process the permit application.

[53 FR 20776, June 1, 1988; 53 FR 41649, Oct. 24, 1988]

§ 233.51  Waiver of review.

(a) The MOA with the Regional Administrator shall specify the categories of discharge for which EPA will waive Federal review of State permit applications. After program approval, the MOA may be modified to reflect any additions or deletions of categories of discharge for which EPA will waive review. The Regional Administrator shall consult with the Corps, FWS, and NMFS prior to specifying or modifying such categories.

(b) With the following exceptions, any category of discharge is eligible for consideration for waiver:

(1) Draft general permits;

(2) Discharges with reasonable potential for affecting endangered or threatened species as determined by FWS;

(3) Discharges with reasonable potential for adverse impacts on waters of another State;

(4) Discharges known or suspected to contain toxic pollutants in toxic amounts (section 101(a)(3) of the Act) or hazardous substances in reportable quantities (section 311 of the Act);

(5) Discharges located in proximity of a public water supply intake;

(6) Discharges within critical areas established under State or Federal law, including but not limited to National and State parks, fish and wildlife sanctuaries and refuges, National and historical monuments, wilderness areas and preserves, sites identified or proposed under the National Historic Preservation Act, and components of the National Wild and Scenic Rivers System.

(c) The Regional Administrator retains the right to terminate a waiver as to future permit actions at any time by sending the Director written notice of termination.

### § 233.52  Program reporting.

(a) The starting date for the annual period to be covered by reports shall be established in the Memorandum of Agreement with the Regional Administrator (§ 233.13.)

(b) The Director shall submit to the Regional Administrator within 90 days after completion of the annual period, a draft annual report evaluating the State's administration of its program identifying problems the State has encountered in the administration of its program and recommendations for resolving these problems. Items that shall be addressed in the annual report include an assessment of the cumulative impacts of the State's permit program on the integrity of the State regulated waters; identification of areas of particular concern and/or interest within the State; the number and nature of individual and general permits issued, modified, and denied; number of violations identified and number and nature of enforcement actions taken; number of suspected unauthorized activities reported and nature of action taken; an estimate of extent of activities regulated by general permits; and the number of permit applications received but not yet processed.

(c) The State shall make the draft annual report available for public inspection.

(d) Within 60 days of receipt of the draft annual report, the Regional Administrator will complete review of the draft report and transmit comments, questions, and/or requests for additional evaluation and/or information to the Director.

(e) Within 30 days of receipt of the Regional Administrator's comments, the Director will finalize the annual report, incorporating and/or responding to the Regional Administrator's comments, and transmit the final report to the Regional Administrator.

(f) Upon acceptance of the annual report, the Regional Administrator shall publish notice of availability of the final annual report.

### § 233.53  Withdrawal of program approval.

(a) A State with a program approved under this part may voluntarily transfer program responsibilities required by Federal law to the Secretary by taking the following actions, or in such other manner as may be agreed upon with the Administrator.

(1) The State shall give the Administrator and the Secretary 180 days notice of the proposed transfer. The State shall also submit a plan for the orderly transfer of all relevant program information not in the possession of the Secretary (such as permits, permit files, reports, permit applications) which are necessary for the Secretary to administer the program.

(2) Within 60 days of receiving the notice and transfer plan, the Administrator and the Secretary shall evaluate the State's transfer plan and shall identify for the State any additional information needed by the Federal government for program administration.

(3) At least 30 days before the transfer is to occur the Administrator shall publish notice of transfer in the FEDERAL REGISTER and in a sufficient number of the largest newspapers in the State to provide statewide coverage, and shall mail notice to all permit holders, permit applicants, other regulated persons and other interested persons on appropriate EPA, Corps and State mailing lists.

(b) The Administrator may withdraw program approval when a State program no longer complies with the requirements of this part, and the State fails to take corrective action. Such circumstances include the following:

(1) When the State's legal authority no longer meets the requirements of this part, including:

(i) Failure of State to promulgate or enact new authorities when necessary; or

(ii) Action by a State legislature or court striking down or limiting State authorities.

(2) When the operation of the State program fails to comply with the requirements of this part, including:

(i) Failure to exercise control over activities required to be regulated under this part, including failure to issue permits;

(ii) Issuance of permits which do not conform to the requirements of this part; or

(iii) Failure to comply with the public participation requirements of this part.

(3) When the State's enforcement program fails to comply with the requirements of this part, including:

(i) Failure to act on violations of permits or other program requirements;

(ii) Failure to seek adequate enforcement penalties or to collect administrative fines when imposed, or to implement alternative enforcement methods approved by the Administrator; or

(iii) Failure to inspect and monitor activities subject to regulation.

(4) When the State program fails to comply with the terms of the Memorandum of Agreement required under § 233.13.

(c) The following procedures apply when the Administrator orders the commencement of proceedings to determine whether to withdraw approval of a State program:

(1) *Order.* The Administrator may order the commencement of withdrawal proceedings on the Administrator's initiative or in response to a petition from an interested person alleging failure of the State to comply with the requirements of this part as set forth in subsection (b) of this section. The Administrator shall respond in writing to any petition to commence withdrawal proceedings. He may conduct an informal review of the allegations in the petition to determine whether cause exists to commence proceedings under this paragraph. The Administrator's order commencing proceedings under this paragraph shall fix a time and place for the commencement of the hearing, shall specify the allegations against the State which are to be considered at the hearing, and shall be published in the FEDERAL REGISTER. Within 30 days after publication of the Administrator's order in the FEDERAL REGISTER, the State shall admit or deny these allegations in a written answer. The party seeking withdrawal of the State's program shall have the burden of coming forward with the evidence in a hearing under this paragraph.

(2) *Definitions.* For purposes of this paragraph the definition of *Administrative Law Judge, Hearing Clerk,* and *Presiding Officer* in 40 CFR 22.03 apply in addition to the following:

(i) *Party* means the petitioner, the State, the Agency, and any other person whose request to participate as a party is granted.

(ii) *Person* means the Agency, the State and any individual or organization having an interest in the subject matter of the proceedings.

(iii) *Petitioner* means any person whose petition for commencement of withdrawal proceedings has been granted by the Administrator.

(3) *Procedures.* (i) The following provisions of 40 CFR Part 22 [Consolidated Rules of Practice] are applicable to proceedings under this paragraph:

(A) Section 22.02—(use of number/gender);

(B) Section 22.04—(authorities of Presiding Officer);

(C) Section 22.06—(filing/service of rulings and orders);

(D) Section 22.09—(examination of filed documents);

(E) Section 22.19 (a), (b) and (c)—(prehearing conference);

(F) Section 22.22—(evidence);

(G) Section 22.23—(objections/offers of proof);

(H) Section 22.25—(filing the transcript; and

(I) Section 22.26—(findings/conclusions).

(ii) The following provisions are also applicable:

(A) Computation and extension of time.

(*1*) *Computation.* In computing any period of time prescribed or allowed in these rules of practice, except as otherwise provided, the day of the event from which the designated period begins to run shall not be included. Saturdays, Sundays, and Federal legal holidays shall be included. When a stated time expires on a Saturday, Sunday or Federal legal holiday, the stated time period shall be extended to include the next business day.

(*2*) *Extensions of time.* The Administrator, Regional Administrator, or Presiding Officer, as appropriate, may

grant an extension of time for the filing of any pleading, document, or motion (*i*) upon timely motion of a party to the proceeding, for good cause shown and after consideration of prejudice to other parties, or (*ii*) upon his own motion. Such a motion by a party may only be made after notice to all other parties, unless the movant can show good cause why serving notice is impracticable. The motion shall be filed in advance of the date on which the pleading, document or motion is due to be filed, unless the failure of a party to make timely motion for extension of time was the result of excusable neglect.

(*3*) The time for commencement of the hearing shall not be extended beyond the date set in the Administrator's order without approval of the Administrator.

(B) Ex parte discussion of proceeding. At no time after the issuance of the order commencing proceedings shall the Administrator, the Regional Administrator, the Regional Judicial Officer, the Presiding Officer, or any other person who is likely to advise these officials in the decisions on the case, discuss ex parte the merits of the proceeding with any interested person outside the Agency, with any Agency staff member who performs a prosecutorial or investigative function in such proceeding or a factually related proceeding, or with any representative of such person. Any ex parte memorandum or other communication addressed to the Administrator, the Regional Administrator, the Regional Judicial Officer, or the Presiding Officer during the pendency of the proceeding and relating to the merits thereof, by or on behalf of any party shall be regarded as argument made in the proceeding and shall be served upon all other parties. The other parties shall be given an opportunity to reply to such memorandum or communication.

(C) Intervention—(*1*) *Motion.* A motion for leave to intervene in any proceeding conducted under these rules of practice must set forth the grounds for the proposed intervention, the position and interest of the movant and the likely impact that intervention will have on the expeditious progress of the proceeding. Any person already a party to the proceeding may file an answer to a motion to intervene, making specific reference to the factors set forth in the foregoing sentence and paragraph (b)(3)(ii)(C)(*3*) of this section, within ten (10) days after service of the motion for leave to intervene.

(*2*) However, motions to intervene must be filed within 15 days from the date the notice of the Administrator's order is published in the FEDERAL REGISTER.

(*3*) *Disposition.* Leave to intervene may be granted only if the movant demonstrates that (*i*) his presence in the proceeding would not unduly prolong or otherwise prejudice the adjudication of the rights of the original parties; (*ii*) the movant will be adversely affected by a final order; and (*iii*) the interests of the movant are not being adequately represented by the original parties. The intervenor shall become a full party to the proceeding upon the granting of leave to intervene.

(*4*) *Amicus curiae.* Persons not parties to the proceeding who wish to file briefs may so move. The motion shall identify the interest of the applicant and shall state the reasons why the proposed amicus brief is desirable. If the motion is granted, the Presiding Officer or Administrator shall issue an order setting the time for filing such brief. An amicus curiae is eligible to participate in any briefing after his motion is granted, and shall be served with all briefs, reply briefs, motions, and orders relating to issues to be briefed.

(*D*) Motions—(*1*) *General.* All motions, except those made orally on the record during a hearing, shall (*i*) be in writing; (*ii*) state the grounds therefore with particularity; (*iii*) set forth the relief or order sought; and (*iv*) be accompanied by any affidavit, certificate, other evidence, or legal memorandum relied upon. Such motions shall be served as provided by paragraph (b)(4) of this section.

(*2*) *Response to motions.* A party's response to any written motion must be filed within ten (10) days after service of such motion, unless additional time is allowed for such response. The response shall be accompanied by any affidavit, certificate, other evidence, or

legal memorandum relied upon. If no response is filed within the designated period, the parties may be deemed to have waived any objection to the granting of the motion. The Presiding Officer, Regional Administrator, or Administrator, as appropriate, may set a shorter time for response, or make such other orders concerning the disposition of motions as they deem appropriate.

(3) *Decision.* The Administrator shall rule on all motions filed or made after service of the recommended decision upon the parties. The Presiding Officer shall rule on all other motions. Oral argument on motions will be permitted where the Presiding Officer, Regional Administrator, or the Administrator considers it necessary or desirable.

(4) *Record of proceedings.* (i) The hearing shall be either stenographically reported verbatim or tape recorded, and thereupon transcribed by an official reporter designated by the Presiding Officer;

(ii) All orders issued by the Presiding Officer, transcripts of testimony, written statements of position, stipulations, exhibits, motions, briefs, and other written material of any kind submitted in the hearing shall be a part of the record and shall be available for inspection or copying in the Office of the Hearing Clerk, upon payment of costs. Inquiries may be made at the Office of the Administrative Law Judges, Hearing Clerk, 1200 Pennsylvania Ave., NW., Washington, DC 20460;

(iii) Upon notice to all parties the Presiding Officer may authorize corrections to the transcript which involve matters of substance;

(iv) An original and two (2) copies of all written submissions to the hearing shall be filed with the Hearing Clerk;

(v) A copy of each such submission shall be served by the person making the submission upon the Presiding Officer and each party of record. Service under this paragraph shall take place by mail or personal delivery;

(vi) Every submission shall be accompanied by acknowledgement of service by the person served or proof of service in the form of a statement of the date, time, and manner of service and the names of the persons served, certified by the person who made service; and

(vii) The Hearing Clerk shall maintain and furnish to any person upon request, a list containing the name, service address, and telephone number of all parties and their attorneys or duly authorized representatives.

(5) *Participation by a person not a party.* A person who is not a party may, in the discretion of the Presiding Officer, be permitted to make a limited appearance by making an oral or written statement of his/her position on the issues within such limits and on such conditions as may be fixed by the Presiding Officer, but he/she may not otherwise participate in the proceeding.

(6) *Rights of parties.* (i) All parties to the proceeding may:

(A) Appear by counsel or other representative in all hearing and prehearing proceedings;

(B) Agree to stipulations of facts which shall be made a part of the record.

(7) *Recommended decision.* (i) Within 30 days after the filing of proposed findings and conclusions and reply briefs, the Presiding Officer shall evaluate the record before him/her, the proposed findings and conclusions and any briefs filed by the parties, and shall prepare a recommended decision, and shall certify the entire record, including the recommended decision, to the Administrator.

(ii) Copies of the recommended decision shall be served upon all parties.

(iii) Within 20 days after the certification and filing of the record and recommended decision, all parties may file with the Administrator exceptions to the recommended decision and a supporting brief.

(8) *Decision by Administrator.* (i) Within 60 days after certification of the record and filing of the Presiding Officer's recommended decision, the Administrator shall review the record before him and issue his own decision.

(ii) If the Administrator concludes that the State has administered the program in conformity with the Act and this part, his decision shall constitute "final agency action" within the meaning of 5 U.S.C. 704.

(iii) If the Administrator concludes that the State has not administered the program in conformity with the Act and regulations, he shall list the

deficiencies in the program and provide the State a reasonable time, not to exceed 90 days, to take such appropriate corrective action as the Administrator determines necessary.

(iv) Within the time prescribed by the Administrator the State shall take such appropriate corrective action as required by the Administrator and shall file with the Administrator and all parties a statement certified by the State Director that appropriate corrective action has been taken.

(v) The Administrator may require a further showing in addition to the certified statement that corrective action has been taken.

(vi) If the state fails to take appropriate corrective action and file a certified statement thereof within the time prescribed by the Administrator, the Administrator shall issue a supplementary order withdrawing approval of the State program. If the State takes appropriate corrective action, the Administrator shall issue a supplementary order stating that approval of authority is not withdrawn.

(vii) The Administrator's supplementary order shall constitute final Agency action within the meaning of 5 U.S. 704.

(d) Withdrawal of authorization under this section and the Act does not relieve any person from complying with the requirements of State law, nor does it affect the validity of actions taken by the State prior to withdrawal.

[53 FR 20776, June 1, 1988, as amended at 57 FR 5346, Feb. 13, 1992]

## Subpart G—Eligible Indian Tribes

Source: 58 FR 8183, Feb. 11, 1993, unless otherwise noted.

### § 233.60  Requirements for eligibility.

Section 518(e) of the CWA, 33 U.S.C. 1378(e), authorizes the Administrator to treat an Indian Tribe as eligible to apply for the 404 permit program under section 404(g)(1) if it meets the following criteria:

(a) The Indian Tribe is recognized by the Secretary of the Interior.

(b) The Indian Tribe has a governing body carrying out substantial governmental duties and powers.

(c) The functions to be exercised by the Indian Tribe pertain to the management and protection of water resources which are held by an Indian Tribe, held by the Untied States in trust for the Indians, held by a member of an Indian Tribe if such property interest is subject to a trust restriction on alienation, or otherwise within the borders of the Indian reservation.

(d) The Indian Tribe is reasonably expected to be capable, in the Administrator's judgment, of carrying out the functions to be exercised, in a manner consistent with the terms and purposes of the Act and applicable regulations, of an effective section 404 dredge and fill permit program.

[58 FR 8183, Feb. 11, 1993, as amended at 59 FR 64345, Dec. 14, 1994]

### § 233.61  Determination of Tribal eligibility.

An Indian Tribe may apply to the Regional Administrator for a determination that it meets the statutory criteria which authorize EPA to treat the Tribe in a manner similar to that in which it treats a State, for purposes of the section 404 program. The application shall be concise and describe how the Indian Tribe will meet each of the requirements of § 233.60. The application should include the following information:

(a) A statement that the Tribe is recognized by the Secretary of the Interior.

(b) A descriptive statement demonstrating that the Tribal governing body is currently carrying out substantial governmental duties and powers over a defined area. This Statement should:

(1) Describe the form of the Tribal government.

(2) Describe the types of governmental functions currently performed by the Tribal governing body, such as, but not limited to, the exercise of police powers affecting (or relating to) the health, safety, and welfare of the affected population; taxation; and the exercise of the power of eminent domain; and

(3) Identify the source of the Tribal government's authority to carry out the governmental functions currently being performed.

(c)(1) A map or legal description of the area over which the Indian Tribe asserts regulatory authority pursuant to section 518(e)(2) of the CWA and § 233.60(c);

(2) A statement by the Tribal Attorney General (or equivalent official) which describes the basis for the Tribe's assertion under section 518(e)(2) (including the nature or subject matter of the asserted regulatory authority) which may include a copy of documents such as Tribal constitutions, by-laws, charters, executive orders, codes, ordinances, and/or resolutions which support the Tribe's assertion of authority;

(d) A narrative statement describing the capability of the Indian Tribe to administer an effective 404 permit program. The Statement may include:

(1) A description of the Indian Tribe's previous management experience which may include the administration of programs and services authorized by the Indian Self Determination & Education Act (25 U.S.C. 450 *et seq.*), The Indian Mineral Development Act (25 U.S.C. 2101 *et seq.*), or the Indian Sanitation Facility Construction Activity Act (42 U.S.C. 2004a).

(2) A list of existing environmental or public health programs administered by the Tribal governing body, and a copy of related Tribal laws, regulations, and policies;

(3) A description of the entity (or entities) which exercise the executive, legislative, and judicial functions of the Tribal government.

(4) A description of the existing, or proposed, agency of the Indian Tribe which will assume primary responsibility for establishing and administering a section 404 dredge and fill permit program or plan which proposes how the Tribe will acquire additional administrative and technical expertise. The plan must address how the Tribe will obtain the funds to acquire the administrative and technical expertise.

(5) A description of the technical and administrative abilities of the staff to administer and manage an effective,

environmentally sound 404 dredge and fill permit program.

(e) The Administrator may, at his discretion, request further documentation necessary to support a Tribal application.

(f) If the Administrator has previously determined that a Tribe has met the requirements for eligibility or for "treatment as a State" for programs authorized under the Safe Drinking Water Act or the Clean Water Act, then that Tribe need only provide additional information unique to the particular statute or program for which the Tribe is seeking additional authorization.

(Approved by the Office of Management and Budget under control number 2040–0140)

[58 FR 8183, Feb. 11, 1993, as amended at 59 FR 64345, Dec. 14, 1994]

§ 233.62 Procedures for processing an Indian Tribe's application.

(a) The Regional Administrator shall process an application of an Indian Tribe submitted pursuant to § 233.61 in a timely manner. He shall promptly notify the Indian Tribe of receipt of the application.

(b) The Regional Administrator shall follow the procedures described in § 233.15 in processing a Tribe's request to assume the 404 dredge and fill permit program.

[58 FR 8183, Feb. 11, 1993, as amended at 59 FR 64346, Dec. 14, 1994]

## Subpart H—Approved State Programs

§ 233.70 Michigan.

The applicable regulatory program for discharges of dredged or fill material into waters of the United States in Michigan that are not presently used, or susceptible for use in their natural condition or by reasonable improvement as a means to transport interstate or foreign commerce shoreward to the ordinary high water mark, including wetlands adjacent thereto, except those on Indian lands, is the program administered by the Michigan Department of Natural Resources, approved by EPA, pursuant to section 404 of the CWA. Notice of this approval

**Environmental Protection Agency**                                      **§ 233.71**

was published in the FEDERAL REGISTER on October 2, 1984; the effective date of this program is October 16, 1984. This program consists of the following elements, as submitted to EPA in the State's program application.

(a) *Incorporation by reference.* The requirements set forth in the State statutes and regulations cited in this paragraph are hereby incorporated by reference and made a part of the applicable 404 Program under the CWA for the State of Michigan. This incorporation by reference was approved by the Director of the Federal Register on October 16, 1984.

(1) The Great Lakes Submerged Lands Act, MCL 322.701 *et seq.*, reprinted in Michigan 1983 Natural Resources Law.

(2) The Water Resources Commission Act, MCL 323.1 *et seq.*, reprinted in Michigan 1983 Natural Resources Law.

(3) The Goemaere-Anderson Wetland Protection Act, MCL 281.701 *et seq.*, reprinted in Michigan 1983 Natural Resources Law.

(4) The Inland Lakes and Stream Act, MCL 281.951 *et seq.*, reprinted in Michigan 1983 Natural Resources Law.

(5) The Michigan Administrative Procedures Act of 1969, MCL 24–201 *et seq.*

(6) An act concerning the Erection of Dams, MCL 281.131 *et seq.*, reprinted in Michigan 1983 Natural Resources Law.

(7) R 281.811 through R 281.819 inclusive, R 281.821, R 281.823, R 281.824, R 281.832 through R 281.839 inclusive, and R 281.841 through R 281.845 inclusive of the Michigan Administrative Code (1979 ed., 1982 supp.).

(b) *Other Laws.* The following statutes and regulations, although not incorporated by reference, also are part of the approved State-administered program:

(1) Administrative Procedures Act, MCLA 24.201 *et seq.*

(2) Freedom of Information Act, MCLA 15.231 *et seq.*

(3) Open Meetings Act, MCLA 15.261 *et seq.*

(4) Michigan Environmental Protection Act, MCLA 691.1201 *et seq.*

(c) *Memoranda of Agreement.* (1) The Memorandum of Agreement between EPA Region V and the Michigan Department of Natural resources, signed by the EPA Region V Administrator on December 9, 1983.

(2) The Memorandum of Agreement between the U.S. Army Corps of Engineers and the Michigan Department of Natural Resources, signed by the Commander, North Central Division, on March 27, 1984.

(d) *Statement of Legal Authority.* (1) "Attorney General Certification section 404/State of Michigan", signed by Attorney General of Michigan, as submitted with the request for approval of "The State of Michigan 404 Program", October 26, 1983.

(e) The Program description and any other materials submitted as part of the original application or supplements thereto.

(33 U.S.C. 13344, CWA 404)

[49 FR 38948, Oct. 2, 1984. Redesignated at 53 FR 20776, June 6, 1988. Redesignated at 58 FR 8183, Feb. 11, 1993]

**§ 233.71  New Jersey.**

The applicable regulatory program for discharges of dredged or fill material into waters of the United States in New Jersey that are not presently used, or susceptible for use in their natural condition or by reasonable improvement as a means to transport interstate or foreign commerce shoreward to the ordinary high water mark, including wetlands adjacent thereto, except those on Indian lands, is the program administered by the New Jersey Department of Environmental Protection and Energy, approved by EPA, pursuant to section 404 of the CWA. The program becomes effective March 2, 1994. This program consists of the following elements, as submitted to EPA in the State's program application:

(a) *Incorporation by reference.* The requirements set forth in the State statutes and regulations cited in paragraph (b) of this section are hereby incorporated by reference and made a part of the applicable 404 Program under the CWA for the State of New Jersey, for incorporation by reference by the Director of the Federal Register in accordance with 552(a) and 1 CFR part 51. Material is incorporated as it exists at 1 p.m. on March 2, 1994 and notice of any change in the material will be published in the FEDERAL REGISTER.

(b) Copies of materials incorporated by reference may be inspected at the National Archives and Records Administration (NARA). For information on the availability of this material at NARA, call 202–741–6030, or go to: *http://www.archives.gov/federal_register/code_of_federal_regulations/ibr_locations.html.* Copies of materials incorporated by reference may be obtained or inspected at the EPA UST Docket, located at 1235 Jefferson Davis Highway, First Floor , Arlington, VA 22202 (telephone number: 703–603–9231), or send mail to Mail Code 5305G, 1200 Pennsylvania Ave., NW., Washington, DC 20460, and at the Library of the Region 2 Regional Office, Federal Office Building, 26 Federal Plaza, New York, NY 10278.

(1) New Jersey Statutory Requirements Applicable to the Freshwater Wetlands Program, 1994.

(2) New Jersey Regulatory Requirements Applicable to the Freshwater Wetlands Program, 1994.

(c) *Other laws.* The following statutes and regulations, although not incorporated by reference, also are part of the approved State-administered program:

(1) Administrative Procedure Act, N.J.S.A. 52:14B–1 *et seq.*

(2) New Jersey Uniform Administrative Procedure Rules, N.J.A.C. 1:1–1.1 *et seq.*

(3) Open Public Meetings Act, N.J.S.A. 10:4–6 *et seq.*

(4) Examination and Copies of Public Records, N.J.S.A. 47:1A–1 *et seq.*

(5) Environmental Rights Act, N.J.S.A. 2A:35A–1 *et seq.*

(6) Department of Environmental Protection (and Energy), N.J.S.A. 13:1D–1 *et seq.*

(7) Water Pollution Control Act, N.J.S.A. 58:10A–1 *et seq.*

(d) *Memoranda of agreement.* The following memoranda of agreement, although not incorporated by reference also are part of the approved State administered program:

(1) The Memorandum of Agreement between EPA Region II and the New Jersey Department of Environmental Protection and Energy, signed by the EPA Region II Acting Regional Administrator on June 15, 1993.

(2) The Memorandum of Agreement between the U.S. Army Corps of Engineers and the New Jersey Department of Environmental Protection and Energy, signed by the Division Engineer on March 4, 1993.

(3) The Memorandum of Agreement between EPA Region II, the New Jersey Department of Environmental Protection and Energy, and the U.S. Fish and Wildlife Service, signed by all parties on December 22, 1993.

(e) *Statement of legal authority.* The following documents, although not incorporated by reference, also are part of the approved State administered program:

(1) Attorney General's Statement, signed by the Attorney General of New Jersey, as submitted with the request for approval of The State of New Jersey's 404 Program.

(2) The program description and any other materials submitted as part of the original application or supplements thereto.

[59 FR 9933, Mar. 2, 1994, as amended at 65 FR 47325, Aug. 2, 2000; 69 FR 18801, Apr. 9, 2004]

# PART 238—DEGRADABLE PLASTIC RING CARRIERS

## Subpart A—General Provisions

Sec.
238.10  Purpose and applicability.
238.20  Definitions.

## Subpart B—Requirement

238.30  Requirement.

    AUTHORITY: 42 U.S.C. 6914b–1.

    SOURCE: 59 FR 9870, Mar. 1, 1994, unless otherwise noted.

## Subpart A—General Provisions

### § 238.10  Purpose and applicability.

The purpose of this part is to require that plastic ring carriers be made of degradable materials as described in §§ 238.20 and 238.30. The requirements of this part apply to all processors and importers of plastic ring carriers in the United States as defined in § 238.20.

### § 238.20  Definitions.

For the purpose of this part: