UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL WILDLIFE FEDERATION          )
and MICHIGAN UNITED                   )
CONSERVATION CLUBS,                   )
                                      )
            Plaintiffs,               )     CASE NO. 4:95-CV-131
                                      )
      v.                              )     JUDGE GORDON J. QUIST
                                      )
CAROL BROWNER, Administrator,         )     MAGISTRATE JUDGE DOYLE
U.S. Environmental Protection         )     A. ROWLAND
Agency, and VALDAS ADAMKUS,           )
Regional Administrator, U.S.          )
Environmental Protection              )
Agency, Region V,                     )
                                      )
            Defendants.               )
_____        )


DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS COMPLAINT

LOIS J. SCHIFFER
Assistant Attorney General
Environment and Natural Resources Division

JOSHUA M. LEVIN
U.S. Department of Justice
Environmental Defense Section
10th & Pennsylvania Ave., N.W.
Washington, D.C.  20530
(202) 514-4198

MICHAEL L. SHIPARSKI
Assistant United States Attorney
Federal Building and U.S. Courthouse
110 Michigan Street, N.W.
Grand Rapids, MI  49503
(616) 456-2404

Attorneys for the Defendants

Date:  March 6, 1996

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................. i

TABLE OF AUTHORITIES ........................................ iii

INTRODUCTION AND SUMMARY OF ARGUMENT ......................... 1

ARGUMENT ..................................................... 2

I.    PLAINTIFF'S ARGUMENTS REGARDING
      EXHAUSTION ARE UNAVAILING ............................. 2

      A.   Applicable Caselaw Emphasizes The Relevance of
           "Exhaustion" Principles To The Instant Case .......... 3

      B.   NWF And MUCC Have Failed To Show That They
           Exhausted Their Administrative Remedies By
           Petitioning EPA Prior To Suit ....................... 7

II.   PLAINTIFFS FAIL TO DEMONSTRATE THE EXISTENCE OF
      A MANDATORY DUTY, EITHER TO DISAPPROVE MICHIGAN'S
      PROGRAM SUBMISSION OR TO COMMENCE WITHDRAWAL
      PROCEEDINGS .......................................... 11

      A.   Plaintiffs Confuse The CWA's Requirements
           For The Approval Of New 404 Programs With The
           Requirements For The Revision Of Existing
           Programs ......................................... 11

      B.   Plaintiffs Confuse EPA's Procedures
           Governing 404 Program Revisions With
           Its Procedures Governing 404 Program
           Withdrawals ...................................... 13

      C.   The Cases Cited By Plaintiffs Fail To Show
           That Subject Matter Jurisdiction Exists Over
           Plaintiffs' Mandatory Duty Claims ................. 15

III.  PLAINTIFFS HAVE NOT SHOWN THAT THE APA ALLOWS
      THEM TO CHALLENGE EPA'S DECISION TO DEFER ITS
      REVIEW OF THEIR COMMENTS UNRELATED TO THE
      EXECUTIVE ORDER'S REVISIONS .......................... 20

      A.   Plaintiffs Fail To Demonstrate That Their
           APA Claim Challenges A Final Agency Action
           Which Is Subject To Judicial Review ............... 21

      B.   Plaintiff's Ripeness Arguments Are Unavailing ....... 23

i

    C. APA Review Is Not Available As A Means
       Of Challenging The Timing Of EPA's
       Review On Comments Which Are Not Related
       To A Current Rulemaking ............................. 25

IV.  EVEN IF THE COURT FINDS IT HAS JURISDICTION
     OVER PLAINTIFFS' CLAIMS AND CAN REVIEW THEM
     AT THIS TIME, IT SHOULD DEFER RULING ON THE
     MERITS OF PLAINTIFFS' CLAIMS .......................... 26

CONCLUSION ................................................. 28

## TABLE OF AUTHORITIES

**CASES**:

Abbott Lab. v. Gardner, 387 U.S. 136 (1967) ............ 23, 24

Alaska Ctr. for the Env't v. Browner, 20 F.3d 981
    (9th Cir. 1994)............................................. 17

Alaska Ctr. for the Env't v. Reilly, 762 F. Supp.
    1422 (W.D. Wash. 1991) .................................. 18

Brown v. General Serv. Admin., 425 U.S. 820 (1976) .......... 4

Cronin v. Browner, 898 F. Supp. 1052 (S.D.N.Y.
    1995) ..................................................... 20

Defenders of Wildlife v. Browner, 888 F. Supp.
    1005 (D. Ariz. 1995) ..................................... 20

Department of Energy v. Ohio, 503 U.S. 607 (1992) ........... 16

Environmental Defense Fund v. Thomas, 870 F.2d
    892 (2d Cir.), cert. denied,
    493 U.S. 991 (1989)............................... 18, 19, 20

Environmental Defense Fund v. Tidwell, 837 F.
    Supp. 1344 (E.D.N.C. 1992) ............................ 15-16

Franklin Fed. Sav. Bank v. Director, Office of Thrift
    Supervision, 927 F.2d 1332 (6th Cir.),
    cert. denied, 502 U.S. 937 (1991) ................... 21, 23

Friends of the Crystal River v. EPA, 794 F. Supp.
    674 (W.D. Mich. 1992), aff'd, 35 F.3d 1073 (6th
    Cir. 1994) ............................................... 24

Gibson v. Berryhill, 411 U.S. 564 (1972) ..................... 6

Home Box Office, Inc. v. FCC, 567 F.2d 9 (D.C.
    Cir.), cert. denied, 434 U.S. 829 (1977) ............... 22

Jersey Shore Broadcasting Corp. v. FCC, 37 F.3d
    1531 (D.C. Cir. 1994) ..................................... 3

McCarthy v. Madigan, 503 U.S. 140 (1992) .................. 6, 7

NRDC v. Train, 510 F.2d 692 (D.C. Cir. 1975) .............. 5-6

NWF v. Consumers Power Co., 657 F. Supp. 989 (W.D.
    Mich. 1987), rev'd on other grounds, 862 F.2d
    580 (6th Cir. 1988) .................................... 3-5

iii

NWF v. Hanson, 623 F. Supp. 1539 (E.D.N.C. 1985) ........ 15, 16

NWF v. Hanson, 859 F.2d 313 (4th Cir. 1988) ............ 15, 16

Naph-Sol Ref. Co. v. Murphy Oil Corp., 550 F.
    Supp. 297 (W.D. Mich. 1982), aff'd in part,
    rev'd in part sub nom. Mobil Oil Corp. v. DOE,
    728 F.2d 1477 (Temp. Emer. Ct. App. 1983),
    cert. denied, 467 U.S. 1255 (1984) ..................... 22

National Wildlife v. Thomas, Civil Action No.
    87-2680 (D.D.C. filed Sept. 30, 1987) ................... 10

PPG Indus., Inc. v. Costle, 630 F.2d 462 (6th Cir.
    1980) .................................................. 22

Proffitt v. Rohm & Haas, 850 F.2d 1007 (3d Cir.
    1988) ................................................. 3, 4

Scottv. City of Hammond, 741 F.2d 992 (7th Cir.
    1984), cert. denied, 469 U.S. 1196 (1985) ............ 17, 18

Sierra Club v. Browner, 843 F. Supp. 1304
    (D. Minn. 1993) ...................................... 17, 18

**STATUTES:**

Administrative Procedure Act, 5 U.S.C.
    §§ 551, 553-59, 701-06:

5 U.S.C. § 551(4) ......................................... 21

5 U.S.C. § 553 ............................................ 26

5 U.S.C. § 553(c) ......................................... 26

5 U.S.C. § 706 ............................................ 27

5 U.S.C. §§ 701-06 ......................................... 5

Clean Water Act, 33 U.S.C. §§ 1251-1387:

Section 303(d), 33 U.S.C. § 1313(d) ....................... 17

Section 303(d)(1)(A), 33 U.S.C. § 1313(d)(1)(A) ........... 17

Section 303(d)(2), 33 U.S.C. § 1313(d)(2) ............... 17-18

Section 304(b)(1)(A), 33 U.S.C. § 1314(b)(1)(A) ............ 5

Section 404, 33 U.S.C. § 1344 ......................... passim

iv

Section 404(a), (d), 33 U.S.C. § 1344(a), (d) ............... 12

Section 404(b)(1), 33 U.S.C. § 1344(b)(1) .................... 8

Section 404(g), 33 U.S.C. § 1344(g) ......................... 20

Section 404(g)(1), 33 U.S.C. § 1344(g)(1) ................... 11

Section 404(h), 33 U.S.C. § 1344(h) ......................... 12

Section 404(h)(1), 33 U.S.C. § 1344(h)(1) ................... 12

Section 404(i), 33 U.S.C. § 1344(i) .......... 1, 13, 17, 18, 19

Section 505(a)(2), 33 U.S.C. § 1365(a)(2) ................... 16

Section 505(b)(1), 33 U.S.C. § 1365(b)(1) .................... 4

Section 505(b)(2), 33 U.S.C. § 1365(b)(2) .................... 4

Clean Air Act, 42 U.S.C. §§ 7401-7671q:

Section 109(d)(1), 42 U.S.C. § 7409(d)(1) ................... 19

Section 110(a)(1), 42 U.S.C. § 7410(a)(1) ................... 19

**REGULATIONS:**

40 C.F.R. 123.64 ........................................... 10

40 C.F.R. 123.64(b)(1) ..................................... 10

40 C.F.R. Pt. 233 .......................................... 23

40 C.F.R. 233.16 ...................................... 6, 7, 11

40 C.F.R. 233.16(c) ......................................... 8

40 C.F.R. 233.16(d)(1) .................................. 13, 14

40 C.F.R. 233.16(d)(2) ..................................... 22

40 C.F.R. 233.16(d)(2), (3) ................................ 13

40 C.F.R. 233.16(d)(3) ..................................... 22

40 C.F.R. 233.53 ......................... 8, 9, 10, 14, 25

40 C.F.R. 233.53(c)(1) .................... 3, 6-7, 9, 14, 19

**<u>FEDERAL REGISTER</u>:**

59 Fed. Reg. 19,009 (Apr. 21, 1994) .............. 9, 21, 25-26

59 Fed. Reg. 19,010 ....................................... 9

59 Fed. Reg. 60,625, 60,625 (Nov. 25, 1994) ................ 22

<u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

The memorandum filed by the Plaintiffs, National Wildlife Federation ("NWF") and the Michigan United Conservation Clubs ("MUCC"), fails to undermine EPA's demonstration that the administrative prerequisite of "exhaustion" applies to Count I, and further fails to demonstrate that its exhaustion prerequisites were fulfilled.  Although NWF and MUCC's exhibits show that they were actively involved in reviewing changes to Michigan's 404 program implemented by the 1991 Executive Order, until they commented on EPA's proposed approval of these changes, Plaintiffs did not request, much less petition, EPA to commence withdrawal proceedings on any matter.

Plaintiffs also fail to demonstrate that EPA had a "mandatory duty" to disapprove Michigan's revised program submission as incomplete.  The CWA does not require approved 404 states to resubmit "full and complete" descriptions of their 404 programs each time limited aspects of the program are revised and approved.  A "full and complete" description is required only at the outset, before a state's 404 proposal is approved. Similarly, EPA did not have a mandatory duty to commence withdrawal proceedings under CWA section 404(i).  EPA's mandatory duty to commence withdrawal proceedings is triggered only <u>after</u> the agency determines that an approved state fails to administer the 404 program in accordance with the CWA.

Plaintiffs also fail to demonstrate the validity of their APA claim in Count II.  The only final agency actions taken by EPA in connection with Michigan's 404 program revision were

its decision to approve the revisions and its decision that these
revisions were not "substantial." Plaintiffs' comments on other
matters will be addressed in the future, in the course of EPA's
ongoing review of Michigan's 404 program. Thus, these comments
do not concern a final agency action and cannot serve as the
basis for an APA claim. Plaintiffs also fail shown that their
APA claim is ripe, or that it is actionable under the APA.

Finally, even if the Court denies EPA's present motion,
the Court should rule only upon the jurisdictional and "timing"
questions presented in the parties' motions. Specifically, it is
appropriate to rule on (a) whether the principle of exhaustion
applied to Plaintiffs' CWA claims and was fulfilled prior to
suit; (b) whether subject matter jurisdiction exists to hear
Plaintiffs' CWA mandatory duty claims; and (c) whether Plaintiffs
present a ripe, justiciable APA claim. A ruling on the merits of
Plaintiffs' "mandatory duty" and APA claims should await further
briefing and/or the filing of an administrative record.

<u>ARGUMENT</u>

I. <u>PLAINTIFFS' ARGUMENTS REGARDING EXHAUSTION ARE UNAVAILING</u>.

Plaintiffs make both legal and factual arguments in
their attempt to rebut EPA's discussion of exhaustion. NWF and
MUCC's legal argument is that exhaustion was not required at all,
and that the only administrative remedy imposed upon them was the
issuance of 60 days' notice. Pl. Mem. at 9-10. Plaintiffs'
factual argument is that any applicable exhaustion arguments were
met in the instant case, <u>i.e.</u>, that "NWF and MUCC have been

- 2 -

pursuing administrative remedies with EPA since 1991," in the form of repeated correspondences with both EPA and Michigan regarding the 1991 Executive Order.  Pl. Mem. at 6-9.  Neither argument has merit.

A.    Applicable Caselaw Emphasizes The Relevance of
      "Exhaustion" Principles To The Instant Case.

EPA previously provided the Court with an extensive discussion of the benefits to the administrative process served by the exhaustion doctrine.  U.S. Mem. at 23-24.  We also explained why requiring NWF and MUCC to exhaust their administrative remedies was warranted in the present case.  U.S. Mem. at 24-27.  As we noted, requiring exhaustion -- *i.e.*, requiring Plaintiffs to file a petition to commence withdrawal proceedings, in accordance with 40 C.F.R. § 233.53(c)(1) -- preserves EPA's autonomy while allowing "it to apply its expertise" to the concerns presented by NWF and MUCC.  See Jersey Shore Broadcasting Corp. v. FCC, 37 F.3d 1531, 1535 (D.C. Cir. 1994).  Administrative exhaustion also allows EPA to "develop[] . . . a factual record" for future court review, and promotes "judicial and administrative efficiency."  Id.

Rather than directly address these arguments or the cases cited by EPA, Plaintiffs assert that the sole procedural requirement they faced prior to suit was the giving of 60 days' notice to EPA.  Pl. Mem. at 9.  The cases cited by Plaintiffs do not support this proposition, however.

First, neither Proffitt v. Rohm & Haas, 850 F.2d 1007, 1011 (3d Cir. 1988), nor NWF v. Consumers Power Co., 657 F. Supp.

- 3 -

989, 1000 (W.D. Mich. 1987), rev'd on other grounds, 862 F.2d 580
(6th Cir. 1988), are "mandatory duty" suits.  To the contrary,
both cases involved citizens' suit challenges to a private
party's discharge of effluent in alleged violation of the terms
of their CWA permits.  In Proffitt, the Third Circuit recognized
that the CWA sets only two "statutory prerequisites" to the
filing of a citizens' suit, i.e., the giving of 60 days' notice
and the absence of diligent prosecution by EPA or an approved
state.  Id. at 1011 (citing 33 U.S.C. § 1365(b)(1)).[1]  EPA has
never claimed that the failure to exhaust administrative remedies
is a statutory, jurisdictional bar; we do assert, however, that
the exhaustion doctrine governs the timing of an action.  U.S.
Mem. at 24 (citing Brown v. General Serv. Admin., 425 U.S. 820,
832 (1976)).  Nothing in Proffitt undermines our arguments on
this point.

Moreover, the Consumers Power case -- in which NWF's
counsel participated -- contains language expressly recognizing
the exhaustion doctrine's applicability to certain types of
citizens' suits.  In that case, NWF challenged a Michigan
electric utility's compliance with the CWA, in connection with
its discharge of entrained fish and turbine generating water into
Lake Michigan.  657 F. Supp. at 995-96.  The defendant argued
that NWF's suit was premature because NWF failed to participate
in earlier federal and state administrative proceedings relating

---

[1]  In cases like the present one, involving EPA's alleged
failure to perform a non-discretionary duty, only the first of
these prerequisites applies.  See 33 U.S.C. § 1365(b)(2).

- 4 -

to the utility's permit.  Id. at 1000.  Much as it has here, NWF
argued that the exhaustion doctrine was inapplicable to CWA
citizens' suits.  Id.

Although the court ruled in NWF's favor under the facts
in that case, it stressed that exhaustion might be appropriate in
other citizens' suit contexts.

> It is important to distinguish between
> citizen suits that seek to determine whether
> the Act covers a particular discharge or
> whether a defendant is operating in violation
> of a NPDES permit, and suits that seek to
> challenge particular effluent limitations
> that the EPA or an appropriate state agency
> has established in the permit process.  The
> latter kind of proceeding may implicate the
> administrative exhaustion doctrine.

Id. (emphasis added).  The present case, involving a challenge to
EPA's review of Michigan's administration of the 404 permit
process, is much more closely akin to "the latter kind of
proceeding" described above than it is to Consumers Power
case itself.

Neither are the Plaintiffs aided by NRDC v. Train, 510
F.2d 692 (D.C. Cir. 1975), a suit which challenged EPA's failure
to issue effluent limitation guidelines required by CWA section
304(b)(1)(A), 33 U.S.C. § 1314(b)(1)(A).  NRDC was brought not
under the CWA citizens' suit provision but, rather, under an
array of other federal laws, including the Administrative
Procedure Act, 5 U.S.C. §§ 701-06.  Id. at 703 n.57.  As the
court noted, even in statutes for which notice is not a
jurisdictional prerequisite -- including the APA -- the "salutary
purpose" of notice may be honored by a court's "stay[ing] its

- 5 -

hand . . . where it has reason to believe that further agency
consideration may resolve the dispute and obviate the need for
further judicial action" -- the very essence of the exhaustion
doctrine.  Id. at 703.

In NRDC, the court chose not to "stay its hand," or
require further administrative exhaustion, because evidence
indicated that EPA's position on the question at hand was "firm."
510 F.2d at 703.[2]  No such conclusion is warranted here.  EPA
has never decided not to initiate withdrawal proceedings under 40
C.F.R. § 233.53(c)(1), as to the subjects raised in Count I of
Plaintiffs' Complaint.  To date, EPA has not fully addressed, nor
been required to address, the question.  All the Plaintiffs'
communications with EPA, prior to the submission of Plaintiffs'
comments on EPA's notice, were provided in the context of program
revision process.  This review invoked the program revision
procedures of 40 C.F.R. § 233.16, not the program
withdrawal procedures of section 233.53(c)(1).  Thus, Plaintiffs'
reliance on NRDC is unavailing.[3]

_____

[2]  The court also declined to give EPA's exhaustion
arguments full consideration because they were raised for the
first time on appeal.  NRDC, 510 F.2d at 703.

[3]  NWF and MUCC also cite the Supreme Court's decision in
McCarthy v. Madigan, 503 U.S. 140 (1992), in aid of their
contention that the exhaustion prerequisite can be ignored where
it would be futile.  Pl. Mem. at 10 n.8.  However, McCarthy only
stands for the proposition that exhaustion need not be required
"where the challenge is to the adequacy of the agency procedure,"
i.e., where the process prescribed by statute or regulation is
under constitutional or other facial attack.  503 U.S. at 148.
See also Gibson v. Berryhill, 411 U.S. 564, 575 (1972) (same).
Plaintiffs do not challenge the validity of the petition
(continued...)

- 6 -

B.     NWF And MUCC Have Failed To Show That They Exhausted
       Their Administrative Remedies By Petitioning EPA Prior
       To Suit.

Plaintiffs' other response to EPA's exhaustion argument

is a factual one, _i.e._, that they _have_ exhausted "the

administrative remedies EPA asserts [they] must exhaust."  Pl.

Mem. at 7.  Indeed, Plaintiffs contend that EPA misrepresented

pertinent facts by failing to reveal NWF's (and later MUCC's)

frequent communications with EPA and Michigan regarding the

changes effected by the Executive Order.  _Id._ at 7.

EPA has never suggested that Plaintiffs were absent

from its review of Michigan's Executive Order.  To the contrary,

NWF and MUCC supplied EPA with essential comments on the Order

prior to the public comment period.  Plaintiffs commented on the

Order's effect on the operation of Michigan's 404 program; they

urged EPA to commence the program revision process established by

40 C.F.R. § 233.16; and they requested EPA to provide public

notice and an opportunity for public comment on changes resulting

from the Executive Order.  The Appendix provided by the

Plaintiffs with their brief makes this clear.  _See_ Plaintiffs'

Appendix ("Pls. App."), Exhibits A, E, J, M.

The problem is that these subjects are not the basis of

Count I.  As alleged in paragraph 35 of the Complaint, Count I

concerned subjects other than the Executive Order's effect on the

Michigan program.  These subjects related to the effect of post-

---

[3](...continued)
procedure of section 233.53, but only its application to this
case.  Thus, McCarthy is inapposite.

- 7 -

1984 state court rulings regarding regulatory "takings;"
Michigan's interpretation of the Clean Water Act section
404(b)(1) Guidelines; and Michigan's compliance with the
"consultation requirements" of the Endangered Species Act.  These
subjects were never mentioned in Plaintiffs' letters to EPA, but
were _only_ addressed in 1994, when NWF and MUCC commented upon
EPA's preliminary determination of adequacy (Pls. App., Exhibit
R).

Despite their frequent correspondence with EPA -- which
contributed to EPA's decision to seek public comment on the
narrow issue of whether to approve the changes to Michigan's
program resulting from the Order -- Plaintiffs never requested
that EPA commence withdrawal proceedings.  Nor did they cite the
program withdrawal procedures set forth at 40 C.F.R. § 233.53, or
mention the word "withdrawal," in their letters.

Rather, Plaintiffs urged "EPA [to] commence the program
_revision_ procedures required by pertinent federal regulations
. . . ."  Pls. App., Exhibit A, page 1 (emphasis added).  They
stressed that Michigan's reorganization required "a formal
program _revision_ proceeding."  Pls. App., Exhibit A, pages 2-3
(citing to 40 C.F.R. § 233.16(c)) (emphasis added).[4]  Moreover,
all of Plaintiff's substantive comments pertained to deficiencies

---

    [4]  For further examples of Plaintiffs' concern with
implementation of the 404 program revision process, see Pls.
App., Exhibit E, page 1 ("the reorganization [caused by the
Executive Order] . . . requires that Michigan pursue the formal
program revision procedures cited in our earlier letter . . .
."); Pls. App., Exhibit J, page 1 (citing to 40 C.F.R.
§ 233.16(c)); Pls. App., Exhibit M, pages 5-6 (same).

resulting from the Order -- not to the subjects at issue in their Complaint.

Plaintiffs requested the commencement of formal withdrawal proceedings under 40 C.F.R. § 233.53(c)(1) in response to EPA's 1994 request for public comments.  EPA did not treat this request as a "petition" under that section because the request was made in the context of EPA's limited request for comments on the program revisions presented by Michigan.[5] Significantly, Plaintiffs' Complaint does not allege that their 1994 request for withdrawal proceedings constituted a "petition" under 40 C.F.R. § 233.53.

Moreover, Plaintiffs' own counsel is well aware of the appropriate means by which to petition EPA to withdraw a state-delegated program.  On at least one prior occasion, counsel for NWF himself filed a formal petition with EPA seeking to have the agency commence withdrawal proceedings relating to a CWA authorized state program.  Thus, NWF and its counsel were well aware of the difference between formally "petitioning" EPA, as NWF has before, and merely "requesting" that EPA act, as Plaintiffs did here.

With this brief, EPA is providing the Court with Exhibit 1, the complaint (without attachments) filed by NWF's

_____

[5]  As we noted in our opening brief, EPA's Federal Register notice asked for comments on whether any substantial revisions were effected by the reorganization, and on whether it should approve or disapprove the revisions resulting from the Order.  59 Fed. Reg. 19,009 (Apr. 21, 1994).  EPA's notice specified that it was not seeking public comments unrelated to changes initiated by the Order "at this time."  Id. at 19,010.

- 9 -

counsel Mr. Van Putten in 1987, on behalf of NWF and other
environmental groups ("citizens") in the matter of <u>National
Wildlife v. Thomas</u>, Civil Action No. 87-2680 (D.D.C. filed Sept.
30, 1987).  Unlike the present case, the citizens' complaint in
<u>Thomas</u> "challenged EPA's failure . . . to commence withdrawal
proceedings to withdraw EPA's approval of Wisconsin's [NPDES]
permit program."  Exhibit 1, Compl. ¶ 1.  The citizens' complaint
in that case recognized the existence of a petition mechanism for
NPDES programs, one comparable to that applicable to 404
programs.  <u>Id.</u> ¶ 20 (citing 40 C.F.R. § 123.64(b)(1)).  The
complaint further noted that prior to suit, the citizens
"petitioned EPA pursuant to 40 C.F.R. § 123.64 to issue an order
commencing proceedings to withdraw" Wisconsin's NPDES program.
<u>Id.</u> ¶ 24.  Also provided is a copy of this petition (without
attachments) (<u>see</u> Exhibit 2), which is drafted in language and
with a depth markedly different from the "request" to commence
withdrawal proceedings employed in Plaintiffs' 1994 comments on
the Michigan revisions.

    NWF and its counsel know how to petition EPA to
commence withdrawal proceedings when they want to.  By only
requesting withdrawal proceedings in response to EPA's public
notice on the reorganization, Plaintiffs failed to comply with
the petition provisions of 40 C.F.R. § 233.53 and failed to
exhaust their administrative remedies.

II.   **PLAINTIFFS FAIL TO DEMONSTRATE THE EXISTENCE OF A MANDATORY DUTY, EITHER TO DISAPPROVE MICHIGAN'S PROGRAM SUBMISSION OR TO COMMENCE WITHDRAWAL PROCEEDINGS.**

   A.   **Plaintiffs Confuse The CWA's Requirements For The Approval Of New 404 Programs With The Requirements For The Revision Of Existing Programs.**

Plaintiffs' characterization of "the essence" of this case, found at page 10 of their brief, makes it clear that they misread the regulatory language governing wetlands program revisions contained at 40 C.F.R. § 233.16.  This case is _not_ about whether the CWA requires EPA to possess "full and complete" information on an approved state's wetlands program, at the time the agency sets out to determine the program's "compli[ance] with all pertinent federal requirements."  Pl. Mem. at 10.  At issue is the more limited question of whether EPA has a mandatory duty to review a state's entire wetlands program each time EPA reviews the portion(s) of the program revised by an approved state.  Nothing in Plaintiffs' brief undermines EPA's opening argument that no such duty existed.

The CWA's only requirement that a state provide EPA with "full and complete" information is contained in section 404(g)(1).  In unambiguous terms, this requirement attaches to the "establish[ment]" of a new 404 program, _not_ the revision of an existing one.  See 33 U.S.C. § 1344(g)(1) ("The Governor of any State desiring to administer its own [404 permit] program for the discharge of dredged or fill material into the navigable waters . . . within its jurisdiction may submit . . . a full and complete description of the program _it proposes to establish and_

- 11 -

administer under State law . . . .") (emphasis added).  EPA's
interpretation of this section is underscored by CWA section
404(h), which requires EPA to consider comments from both the
Secretary of the Army and the Secretary of the Interior, as well
as to verify a state's compliance with the extensive permitting
requirements (see section 404(h)(1)(A) through (H)), within 120
days of any submission under section 404(g)(1).  See 33 U.S.C.
§ 1344(h)(1).

EPA's interpretation of the CWA's "full and complete"
requirement makes perfect sense.  EPA should be required to
conduct an exhaustive review of a state's program application --
including the receipt of public comments and comments from other
interested federal agencies -- before it authorizes the transfer
of the 404 permit program from the federal government (i.e., the
Army Corps of Engineers, see 33 U.S.C. § 1344(a), (d)) to a
state.  This interpretation is entitled to deference.  See U.S.
Mem. at 15-16.  By contrast, Plaintiffs' reading of section
404(g) would inject the Secretaries of the Army and Interior into
every program review -- and would compel EPA to verify a state's
continued compliance with each permitting requirement set forth
in section 404(h) -- each time an approved state's 404 program
was revised, regardless of the significance or insignificance of
the change.  Nothing in the CWA compels this outcome.

Michigan did not provide EPA with a "full and complete"
description of its entire 404 program because it was not required
to do so.  Plaintiffs' contentions to the contrary must fail.

- 12 -

B.   Plaintiffs Confuse EPA's Procedures Governing 404
     Program Revisions With Its Procedures Governing 404
     Program Withdrawals.

NWF and MUCC also confuse EPA's procedures for 404 program "revisions" with its separate procedures for 404 program "withdrawals." See Pl. Mem. at 15 ("EPA had a nondiscretionary duty to reject Michigan's revised program submission as incomplete and to proceed with the CWA § 404(i) process . . . .") The two are not the same.

EPA's regulation governing the revision of state programs ties the scope of EPA's review of program revisions only to materials submitted by a state, or requested by the agency. See, e.g., 40 C.F.R. § 233.16(d)(1) ("The Director [of an approved state agency] shall submit a modified program description or other documents which the Regional Administrator [of EPA] determines to be necessary" to evaluate program compliance).  Nothing in EPA's regulations requires that the agency request "description[s] or other documents" which Plaintiffs, or others, may "determine[] to be necessary," before EPA's 404 program review is conducted.

Similarly, nothing in EPA's program revision regulations requires EPA to respond to comments it may receive on a state's 404 program revisions, unless and until the Administrator determines that the revisions proposed by a state are "substantial;" EPA is not required to obtain public comments for program changes it deems not to be substantial, 40 C.F.R. § 233.16(d)(2), (3).  In the instant case, EPA preliminarily

- 13 -

determined that Michigan's Executive Order did not constitute a substantial revision to the 404 program, and thus could have been approved without any public input. Nonetheless, EPA elected to seek public comment on its preliminary determination, in large measure because of the interest expressed in the matter by Plaintiffs and others.

By contrast, EPA's program withdrawal regulations give "interested persons" an immediate and direct opportunity to seek the commencement of withdrawal proceedings when, in such persons' judgment, an approved state is failing to comply with the requirements of the CWA. 40 C.F.R. § 233.53(c)(1). EPA "shall respond in writing to any petition to commence withdrawal proceedings," id. (emphasis added) -- in contrast to the agency's regulations requiring EPA to provide for public comment only on "substantial" revisions.

Read as a whole, EPA's 404 regulations grant EPA the discretion to review those aspects of a state's 404 program which it "determines to be necessary" to evaluate compliance with the CWA. 40 C.F.R. § 233.16(d)(1). Dissatisfaction with EPA's decisions can be addressed by any "interested person" through the separate program withdrawal process established under CWA section 404(i) and 40 C.F.R. § 233.53. However, EPA is not required to expand its review of an approved program's interim revisions, to include any and all subjects deemed by the public to be part of a "full and complete description of the program." Despite their best efforts, nothing in NWF and MUCC's brief suggests otherwise.

- 14 -

C.   The Cases Cited By Plaintiffs Fail To Show That Subject
     Matter Jurisdiction Exists Over Plaintiffs' Mandatory
     Duty Claims.

In ruling on the pending motions, the threshold legal

question this Court must resolve is whether Plaintiffs' Complaint

identifies a nondiscretionary duty, the non-performance of which

is the basis for a CWA citizens' suit.  Hoping to evade this

jurisdictional "bullet," Plaintiffs analogize the present case to

others where the filing of a citizens' suit has been allowed.

See generally Pl. Mem. at 15-23.  Such analogies are unavailing.

First, Plaintiffs liken their case to those in which

citizens' suits challenging the administration of the 404 program

have been authorized.  Pl. Mem. at 16 n.12.  They specifically

rely on two district court decisions from North Carolina,

Environmental Defense Fund v. Tidwell, 837 F. Supp. 1344

(E.D.N.C. 1992), and NWF v. Hanson, 623 F. Supp. 1539 (E.D.N.C.

1985).  The Hanson decision was ultimately affirmed in pertinent

part by the Fourth Circuit.  See NWF v. Hanson, 859 F.2d 313, 316

(4th Cir. 1988).

Neither Tidwell nor Hanson aid Plaintiffs' case.

Tidwell did not address whether EPA has a mandatory duty to

commence withdrawal proceedings, but rather concerned whether EPA

has a mandatory duty to determine a discharger's need (or lack of

need) for a 404 permit.  See Tidwell, 837 F. Supp. at 1354.

Because the Eastern District of North Carolina is located in the

Fourth Circuit, the Tidwell court was bound to follow the

appellate court's affirmance in Hanson, where such a mandatory

- 15 -

duty was found.  <u>Id.</u>  Significantly, the <u>Tidwell</u> court referred
to the Fourth Circuit's "expansive interpretation" of non-
discretionary duty in <u>Hanson</u>, <u>id.</u> at 1355, and in the absence of
<u>Hanson</u>, it is likely that a contrary ruling in <u>Tidwell</u> would have
issued.

     As for <u>Hanson</u> itself, that case was wrongly decided.
Moreover, the holding in <u>Hanson</u> -- <u>i.e.</u>, that a citizen may bring
a mandatory duty suit challenging EPA (or Army Corps of
Engineers) permitting decisions under section 404 -- has never
been followed outside the Fourth Circuit.  The district court in
<u>Hanson</u> correctly noted that the CWA places the responsibility
with EPA and the Corps to "regulate dredge and fill activities on
wetlands."  623 F. Supp. at 1544 (citing 42 U.S.C. § 1344).
Having done so, however, the court erroneously deduced, <u>a priori</u>,
that suits challenging EPA or Corps decisionmaking were
necessarily mandatory duty suits.  <u>Id.</u>  The Fourth Circuit
accepted such reasoning without analysis.  859 F.2d at 315-16.

     Nothing supported this expansive reading of the
statute.  CWA section 505(a)(2) constitutes a limited waiver of
the Government's sovereign immunity -- one which must be strictly
construed in the Government's favor.  <u>Department of Energy v.
Ohio</u>, 503 U.S. 607, 615 (1992).  The courts in <u>Hanson</u> failed to
address, let alone apply, this legal maxim.  Consequently, <u>Hanson</u>
lends Plaintiffs little support.

     Plaintiffs also liken their case to several other
citizens' suits where they contend that a mandatory duty was

- 16 -

found "notwithstanding the lack of a statutory deadline."  Pl. Mem. at 21.  Apparently, Plaintiffs hope to rebut EPA's opening argument that CWA section 404(i) creates no mandatory, statutory duty, because it contains no "date certain" deadline for EPA's commencement of withdrawal proceedings.  <u>See</u> U.S. Mem. at 18-21.

Plaintiffs misconstrue the cases they cite.  Upon examination, it is clear that each interpreted a provision containing an express statutory deadline starkly different from the discretionary language found in CWA section 404(i).

For example, NWF and MUCC cite several mandatory duty suits brought to compel EPA's promulgation of "total maximum daily load" lists ("TMDL lists"), authorized by CWA section 303(d).  33 U.S.C. § 1313(d).  <u>See</u> Pl. Mem. at 23 (citing <u>Alaska Ctr. for the Env't v. Browner</u>, 20 F.3d 981 (9th Cir. 1994); <u>Scott v. City of Hammond</u>, 741 F.2d 992 (7th Cir. 1984), <u>cert. denied</u>, 469 U.S. 1196 (1985); <u>Sierra Club v. Browner</u>, 843 F. Supp. 1304 (D. Minn. 1993) (dicta)).  That section requires states to identify polluted "water quality limited" waters within their borders, for which TMDLs -- the total maximum amount of pollutants such waters may legally receive -- shall apply.  33 U.S.C. § 1313(d)(1)(A).  States were required to submit "water quality limited" and TMDL lists to EPA by June 1979, while EPA had a concomitant duty to approve, disapprove, or promulgate its own lists within specified time frames thereafter.  <u>Id.</u> § 1313(d)(2).

- 17 -

In each TMDL case, the courts concluded that a state's prolonged failure to submit TMDL lists in accordance with CWA section 303(d) constituted a "constructive submission" of "no TMDLs" and, thus, triggered EPA's mandatory duty to promulgate TMDL lists itself. See Scott, 741 F.2d at 998; Alaska Ctr. for the Env't v. Reilly, 762 F. Supp. 1422, 1428-29 (W.D. Wash. 1991); Sierra Club, 843 F. Supp. at 1312. However, section 303(d) contains explicit deadlines for a state's submission of TMDL lists; EPA's approval or disapproval of such lists; and EPA's promulgation of its own lists, in cases where the agency disapproves a state's submission. 33 U.S.C. § 1313(d)(2). In one court's view, such deadlines made it "strongly arguable that Congress intended that EPA's affirmative duties be triggered upon a state's failure to submit a list, or any TMDL at all." Alaska Center, 762 F. Supp. at 1427.

By contrast, CWA section 404(i) contains no deadlines of any sort. The section's only arguable mandatory duty is that EPA withdraw a state's 404 program approval "[w]henever [it] determines after public hearing" that a state's program is inadequate, where the state has failed to take corrective action "within a reasonable time, not to exceed ninety days." 33 U.S.C. § 1344(i). Neither this section nor other sections of the CWA trigger a mandatory duty to commence withdrawal proceedings.

Plaintiffs also analogize their case to Environmental Defense Fund v. Thomas ["EDF"], 870 F.2d 892 (2d Cir.), cert. denied, 493 U.S. 991 (1989), a Clean Air Act ("CAA") case in

- 18 -

which EPA was found to have a mandatory duty to review and revise National Ambient Air Quality Standards ("NAAQS"), established for "air quality control regions" within each state.  42 U.S.C. § 7410(a)(1).  Pl. Mem. at 21-23.

Plaintiffs' assertion that EDF lacks a "date certain deadline," Pl. Mem. at 21, is wrong.  EDF focused on CAA section 109(d)(1), which directs EPA at five-year intervals to "complete a thorough review" of the NAAQs published by the agency "and promulgate such new standards as may be appropriate . . . ."  42 U.S.C. § 7409(d)(1).  Section 109(d)(1) authorizes EPA to conduct its review, and decide whether to revise existing NAAQs or promulgate new NAAQs, "earlier or more frequently" than every five years, id., but not less frequently than five years.  Id.

The Second Circuit concluded that the language of CAA section 109(d)(1) -- particularly, the statute's use of the word "shall" -- placed on EPA a mandatory duty "to make some formal decision whether to revise the NAAQs" within five years, even though the content of EPA's decision remained discretionary.  870 F.2d at 899.  This conclusion is a plausible one, in light of the CAA's language directing EPA to review, revise, or promulgate NAAQs every five years, or earlier.

Plaintiffs' mandatory duty arguments might be strengthened if CWA section 404(i) contained language similar to that in EDF -- e.g., if it specified that EPA "shall conduct a thorough review of approved state 404 programs" every five years, and commence withdrawal proceedings for any state not providing a

- 19 -

full and complete descriptions of its 404 programs. No such
obligatory language exists here, however. Thus, Plaintiffs'
reliance on <u>EDF</u> is unavailing.[6]

Plaintiffs acknowledge that theirs is not a suit
alleging that EPA has violated a nondiscretionary <u>regulatory</u>
duty. <u>See</u> Pl. Mem. at 20 n.14. Consequently, any
nondiscretionary duty to commence withdrawal proceedings must
exist in the language of the CWA, or not at all. Because no such
"date certain" statutory deadline exists here, the "mandatory
duty" allegations of counts I and II must be dismissed.[7]

III. PLAINTIFFS HAVE NOT SHOWN THAT THE APA ALLOWS THEM TO
     CHALLENGE EPA'S DECISION TO DEFER ITS REVIEW OF THEIR
     <u>COMMENTS UNRELATED TO THE EXECUTIVE ORDER'S REVISIONS</u>.

In response to our APA discussion, <u>see</u> U.S. Mem. at 29-
35, NWF and MUCC suggest, first, that our "final agency action"
argument "misses the point." That is, because EPA "refus[ed] to
consider and respond" to all of NWF's and MUCC's comments when it

_____

     [6] <u>EDF</u> also undercuts Plaintiffs' argument that EPA has a
mandatory duty to require a "full and complete description" of
Michigan's 404 program, merely because such a description is
required for newly proposed programs under CWA section 404(g).
<u>See</u> Pl. Mem. at 12-21. The appellants in <u>EDF</u> argued that because
another CAA subsection placed a mandatory duty with EPA to issue
new NAAQs for additional pollutants, a comparable mandatory duty
existed to review and revise NAAQs "as a matter of statutory
construction . . . ." 870 F.2d at 898. <u>See</u> <u>also</u> 42 U.S.C.
§ 7409(a). The court disagreed, noting that a mandatory duty
cannot be inferred in one section of an act in the absence of
cross-referencing language to another statutory section. 870
F.2d at 898. A similar ruling is required here.

     [7] For additional cases recognizing this proposition, <u>see</u>
<u>Cronin v. Browner</u>, 898 F. Supp. 1052, 1059 (S.D.N.Y. 1995);
<u>Defenders of Wildlife v. Browner</u>, 888 F. Supp. 1005, 1008 (D.
Ariz. 1995).

- 20 -

"approv[ed] Michigan's revised wetlands program," the agency
"relinquished . . . 'the benefit of postponed judicial review.'"
Pl. Mem. at 24 (citing <u>Franklin Fed. Sav. Bank v. Director,
Office of Thrift Supervision</u>, 927 F.2d 1332, 1337 (6th Cir.),
<u>cert. denied</u>, 502 U.S. 937 (1991)).  NWF and MUCC also posit that
their APA claim is ripe, and that APA review is appropriate
because EPA's approval of 404 state programs constitutes a "rule"
under that act.  <u>Id.</u> at 25-28.  None of these arguments withstand
scrutiny.

> A.   Plaintiffs Fail To Demonstrate That Their APA Claim
>      Challenges A Final Agency Action Which Is Subject To
>      <u>Judicial Review.</u>

On the question of "final agency action," it is
Plaintiffs, not EPA, who "miss the point."  EPA did <u>not</u> "approve
Michigan's revised wetlands program," but only approved specified
<u>revisions</u> to that program.  Because EPA limited the scope of the
rulemaking to the review of Michigan's program revisions, it was
not obliged to consider Plaintiffs' comments on unrelated
matters.

The APA defines a "rule" as either "the whole <u>or</u> a part
of an agency statement of general or particular applicability . .
. ."  5 U.S.C. § 551(4) (emphasis added).  In accordance with
this provision, EPA limited its rulemaking on Michigan's
reorganization only to the changes "effected by the MDNR
reorganization."  59 Fed. Reg. at 19,009.  Having determined the
scope of its rule, EPA was not required to address each and every
comment it received during rulemaking, regardless of subject

- 21 -

matter.  Under the APA, the agency was required to address only
"significant comments," <u>i.e.</u>, comments which "if true, raise
points <u>relevant to [its] decision</u>." <u>See</u> Home Box Office, Inc. v.
FCC, 567 F.2d 9, 35 n.58 (D.C. Cir.), <u>cert. denied</u>, 434 U.S. 829
(1977) (emphasis added). <u>See also</u> PPG Indus., Inc. v. Costle,
630 F.2d 462, 466 (6th Cir. 1980); <u>Naph-Sol Ref. Co. v. Murphy</u>
<u>Oil Corp.</u>, 550 F. Supp. 297, 310 (W.D. Mich. 1982), <u>aff'd in</u>
<u>part, rev'd in part</u> <u>sub nom.</u> <u>Mobil Oil Corp. v. DOE</u>, 728 F.2d
1477, 1494-95 (Temp. Emer. Ct. App. 1983), <u>cert. denied</u>, 467 U.S.
1255 (1984).

 The limited scope of this rulemaking was authorized by
EPA's 404 revision regulations, set forth at 40 C.F.R. Pt. 233.
<u>See</u> 40 C.F.R. § 233.16(d)(2).  Under these regulations, program
revisions may be approved via a simple letter sent by the
appropriate Regional Administrator to the Governor of the
affected state, when EPA deems the revisions not to be
substantial. <u>Id.</u>  A public comment opportunity, in the form of a
public hearing, is required only when EPA determines that a
proposed revision <u>is</u> substantial. <u>Id.</u> § 233.16(d)(3).  EPA
clearly determined that the program "revisions [effected by this
reorganization] were not substantial" when it approved Michigan's
reorganization.  59 Fed. Reg. 60,625, 60,629 (Nov. 25, 1994).[8]

 By seeking to require EPA to consider comments other
than those related to the 1991 Executive Order, Plaintiffs hope

---

 [8]  Although a finding of "not substantial" is also a final
agency action reviewable under the APA, NWF and MUCC's Complaint
did not challenge this determination.

to impose a new regulatory scheme on EPA in addition to that established by 40 C.F.R. Pt. 233.  Such an attempt is invalid. Because Plaintiffs' comments are relevant only to <u>future</u> EPA actions addressing the entire 404 program, and not to the revisions effected by the Executive Order, the comments did not need to be considered by EPA and they do not relate to a final agency action reviewable under the APA.

B.  <u>Plaintiffs' Ripeness Arguments Are Unavailing</u>.

For similar reasons, Plaintiffs' ripeness arguments must fail.  The Supreme Court established a two-prong "ripeness" test in <u>Abbott Lab. v. Gardner</u>, 387 U.S. 136, 148-49 (1967), involving an examination of the "fitness of the issue[] for judicial decision" and the hardship to the parties from withholding review.  The "fitness of the issue" is to be determined first.  <u>Franklin Federal Savings</u>, 927 F.2d at 1336.

EPA agrees that one of the factors used to determine the "fitness of the issue" in <u>Abbott Labs</u> has been met: Plaintiffs' APA claim presents a "purely legal" issue.  <u>See</u> Pl. Mem. at 25; <u>Abbott Labs</u>, 387 U.S. at 149.  However, the second "fitness" factor has <u>not</u> been met:  Plaintiffs' APA claim does not concern a "final agency action," as required.  <u>See</u> <u>supra</u>; <u>Abbott Labs</u>, 387 U.S. at 149.

Neither have Plaintiffs' satisfied the "hardship to the parties" prerequisite.[9]  For one thing, their brief disregards

---

[9] Although Plaintiffs claim that "only the hardship to the Plaintiff is relevant," Pl. Mem. at 26 n.19, the case they cite

(continued...)

- 23 -

the fact that requiring EPA to defend against Plaintiffs' APA
claims now will divert the agency from its present review of
Michigan's program and interfere with its decisionmaking before
it has been formalized.  See U.S. Mem. at 35 (citing Abbott Lab.
v. Gardner, 387 U.S. 136, 148-49 (1967)).

Moreover, Plaintiffs' brief disregards EPA's other
"interference" point, i.e., that authorizing this challenge to
EPA's deferred consideration of Plaintiffs' unrelated comments
will guarantee future, similar suits.  U.S. Mem. at 35.  Each
time EPA postpones its review of a public comment on a state 404
program because it believes the comment is outside the scope of
the limited rule it has proposed, the courtroom door will be
thrown open.  Nothing in the APA compels such a result.

Plaintiffs identify two hardships on their own behalf,
i.e., the hardship caused by the "denial [of their] statutory
opportunity" to oversee the 404 program, and the potential
hardship to their membership from improperly-issued 404 permits.
Pl. Mem. at 26-27.  While EPA respects Plaintiffs' proven
dedication to environmental protection, the hardships they
describe are illusory or nonexistent.

NWF and MUCC had an opportunity to bring APA challenges
on two EPA actions which were "final" and ripe for review:  EPA's

9(...continued)
says no such thing.  See Friends of the Crystal River v. EPA, 794
F. Supp. 674, 689 (W.D. Mich. 1992) (weighing plaintiffs'
interest in obtaining review against "any interest the defendants
might have in precluding review at this time"), aff'd, 35 F.3d
1073 (6th Cir. 1994).

- 24 -

determination that Michigan's revisions were not "substantial," and its approval of these revisions.  Either claim would have enabled Plaintiffs to exercise their statutory right to bring an action seeking judicial review of EPA's final agency action.  For reasons best to known to Plaintiffs themselves, they did not challenge these revisions, but instead challenged other subjects.

Moreover, as EPA has noted above, its regulatory scheme _does_ afford interested persons with an opportunity to petition the agency, where they believe EPA's program review is inadequate; final agency action on such a petition is subject to judicial review.  40 C.F.R. § 233.53.  If Plaintiffs are concerned that Michigan's program fails to meet the requirements of the CWA, they should petition EPA on this matter.  To date, they have not done so.  Thus, any "hardships" to Plaintiffs are of their own making.  Their "ripeness" arguments fail.

    C.    APA Review Is Not Available As A Means Of Challenging The Timing Of EPA's Review On Comments Which Are Not Related To A Current Rulemaking.

EPA takes no issue with Plaintiffs' argument that its approval of state program submissions is a "rule" which must comply with the APA.  Pl. Mem. at 28.  Neither do we contest Plaintiffs' point that APA review applies to rulemakings even when such review is not expressly provided for by another statute.  _Id._

The problem is that it these arguments have no application to the present case, which involves a challenge to the timing of EPA's review of public comments unrelated to an

- 25 -

agency rule.  EPA's April 21, 1994, Federal Register notice

solicited public comments on whether substantial revisions to

Michigan's wetlands program "were effected by the MDNR

reorganization."  59 Fed. Reg. at 19,009.  The notice further

sought comments on its "approval or disapproval of [the]

revisions."  Id.  Because this was the scope of the rule proposed

by EPA, it was on these subjects -- and these subjects alone --

that the notice and comment requirements of the APA applied.  See

5 U.S.C. § 553(c) (requiring that interested persons receive

notice and "an opportunity to participate in the rule making").

Because Plaintiffs do not contend that the APA was

violated with regard to EPA's response to comments on the

revisions resulting from the Executive Order, their argument

regarding the applicability of the APA, 5 U.S.C. § 553, also

fails.

IV.  EVEN IF THE COURT FINDS IT HAS JURISDICTION OVER PLAINTIFFS'
     CLAIMS AND CAN REVIEW THEM AT THIS TIME, IT SHOULD DEFER
     RULING ON THE MERITS OF PLAINTIFFS' CLAIMS.

EPA's opening brief and present brief clearly

demonstrate the unavailability of judicial review in this case.

Yet even assuming, arguendo, that EPA's motion to dismiss is

denied, this Court should not rule on the merits of Plaintiffs'

claims because such a ruling is premature.

Specifically, EPA seeks a ruling that NWF and MUCC may

not challenge EPA's "failure" to commence withdrawal proceedings

in Count I at this time, because they failed to exhaust their

administrative remedies prior to suit.  This "timing" issue will

- 26 -

soon be fully briefed by Plaintiffs as well.  Thus, the Court can make a final "exhaustion" ruling at this time without need of further briefing, in accordance with Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56.

EPA also seeks a ruling under Fed. R. Civ. P. 12(b)(1) that NWF and MUCC's CWA citizens' suit -- both concerning the commencement of withdrawal proceedings and the consideration of all of Plaintiffs' comments -- is barred because of Plaintiffs' failure to identify an actionable, mandatory duty.[10]  We have not briefed the merits of Plaintiffs' citizens' suit claims because of the jurisdictional nature of EPA's motion.  Even if, _arguendo_, the Court finds that Plaintiffs' case identifies mandatory duties, EPA is entitled to respond to merits of Plaintiffs' claims prior to a ruling on their Rule 56 motion.[11]

As for Plaintiffs' APA claims, the parties are in agreement that any challenge to "final agency actions" in this case is governed by the "arbitrary and capricious" standard of the APA, 5 U.S.C. § 706.  Under this standard, the validity of EPA's actions is determined upon a "review of the whole record or those parts of it cited by a party . . . ."  _Id._  Accordingly, EPA previously informed the Court that if its motion to dismiss Plaintiffs' APA claims were denied, it would file a certified

---

[10]  It may be necessary to defer ruling on the existence of a mandatory duty to commence withdrawal proceedings until Plaintiffs' administrative remedies have been exhausted.

[11]  For example, EPA should be given the opportunity to file additional briefing showing that it has performed, or is performing, any mandatory duty imposed by the CWA.

index of the administrative record, for use in determining the merits of Plaintiffs' APA claims in Count II.  <u>See</u> First Joint Status Report at 5 (Oct. 27, 1995).  Accordingly, the Court should not rule on the APA claims until after EPA files the administrative record and the merits of this claim have been fully briefed.

CONCLUSION

For the foregoing reasons, this Court should grant the EPA's motion to dismiss and deny Plaintiffs' motion for summary judgment.

Respectfully submitted,

Assistant Attorney General
Environment and Natural Resources Division

JOSHUA M. LEVIN, Trial Attorney
U.S. Department of Justice
Environmental Defense Section
10th & Pennsylvania Ave., N.W.
Washington, D.C.  20530
(202) 514-4198

MICHAEL L. SHIPARSKI
Assistant United States Attorney
Federal Building and U.S. Courthouse
110 Michigan Street, N.W.
Grand Rapids, MI  49503
(616) 456-2404

Attorneys for the Defendants

OF COUNSEL:

CATHERINE A. WINER
Office of General Counsel
U.S. Environmental Protection Agency
401 M Street, S.W.
Washington, D.C.  20460
(202) 260-7719

GARY PRICHARD
U.S. Environmental Protection Agency
Office of Regional Counsel
Region V
77 West Jackson Boulevard
Chicago, IL 60604
(312) 886-9376


Date: March 6, 1996