**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | |
| Plaintiffs, | **CASE NO.** 1:21-cv-00119 (RDM) |
| v. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants. | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON REDRESSABILITY**

Plaintiffs, by and through undersigned counsel, respectfully submit this supplemental brief in accordance with the Court's April 19, 2022, minute entry, and in light of the Court's March 30, 2022, Memorandum Opinion and Order.  Dkt. 73 at 44–49.  As to Claim 8, the Court denied without prejudice Plaintiffs' Motion for Partial Summary Judgment (Dkt. 31), the Environmental Protection Agency's ("EPA's") Motion for Partial Summary Judgment (Dkt. 34), and Florida's Motion to Dismiss (Dkt. 36), all pending further briefing on the issue of redressability.  Dkt. 73 at 49–50.  In conjunction with the requested briefing, Plaintiffs renew their Motion for Partial Summary Judgment (Dkt. 31) as to Claim 8, and incorporate by reference their prior briefing on that claim.  See Dkt. 31, 43, 59, 65, 68, 69.  Plaintiffs cite to the now-operative Amended Complaint, filed with leave of Court on April 19, 2022 (Dkt. 77), noting that there has been no change as to how Claim 8 is pled.  For the reasons stated below, Plaintiffs respectfully request that the Court enter summary judgment in their favor on Claim 8.

1

## INTRODUCTION

In Claim 8, Plaintiffs allege that on the eve of a change in administration, EPA violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(d), by giving immediate effect to its approval of Florida's program to administer Section 404 of the Clean Water Act, claiming that this action constituted an "adjudicatory order" rather than a "rule."  Dkt. 77 at 9–10, 46–47 (Am. Compl. ¶¶ 34–36, 228-239); Dkt. 73 at 8–10.  EPA's violation deprived Plaintiffs of the opportunity to have the agency consider their request for a stay pending judicial review, because Section 705 applies only to rules (not adjudicatory orders), and an agency stay is ordinarily available only before the rule has gone into effect.  Dkt. 31 at 16–17; see also Dkt. 73 at 41–45.

The Court has asked whether Plaintiffs' 705 injury can be remedied now that the rule has gone into effect.  Dkt. 73 at 45.  At a fundamental level, the answer to that question must be yes.  To reach a different answer, the Court would have to conclude that the agency's own violation— the unlawful immediate effective date—deprives Plaintiffs of any remedy for the cognizable harm they sustained as a result *of that same violation*.  This result would render Plaintiffs' rights—and those of future, similarly-injured litigants—a nullity, and would only invite future violations of 553(d).

Under Prows v. U.S. Department of Justice, 938 F.2d 274 (D.C. Cir. 1991), Plaintiffs must be made whole for violations of Section 553(d), Dkt. 73 at 31, which in this case resulted in the deprivation of rights under Section 705.  Plaintiffs' injury is redressable because the Court has the statutory and equitable authority to set aside EPA's immediate effective date as unlawful for a period of at least 30 days, during which time the rule would not be in effect, and so EPA would have the authority to consider and grant Plaintiffs' request for a stay.

The Court's question as to whether EPA could grant the stay without notice and comment (Dkt. 73 at 45–46) may be resolved by ordering the agency to provide notice and invite comment before rendering a decision on Plaintiffs' stay request.  This would comport with the general rule that notice and comment are not required when a stay would merely preserve the status quo, Bauer v. Devos, 325 F.Supp.3d 74, 106–107 (D.D.C. 2018), but are required when a rule has already taken effect (albeit in this case, unlawfully), Clean Air Council v. Pruitt, 862 F.3d 1, 6 (D.C. Cir. 2017).

Setting aside EPA's unlawful effective date for a period of at least 30 days, and directing the agency to provide notice and invite comment as it considers Plaintiffs' stay request, would provide a remedy for EPA's violation of Plaintiffs' rights (albeit imperfectly, given the passage of time) while taking into account the interests of third parties as the agency weighs the relevant factors, including a balancing of the equities and the public interest.

## FACTS

It is worth remembering that EPA's approval of Florida's 404 program was made with unprecedented alacrity at the last possible moment before a change in administration.  These facts are not in dispute.  On August 28, 2020, EPA deemed Florida's August 20, 2020, application "complete" and then made that determination retroactive to August 20, 2020, such that the 120-day clock to act on the application would end on December 18, 2020.  Dkt. 31 at 9. On August 27, 2020, and at Florida's request, EPA reversed its longstanding position on Endangered Species Act ("ESA") consultation expressly so that EPA could use that mechanism to deliver broad protection to the state and its permittees for incidental harm to listed species.  Id. at 10.  On September 16, 2020, EPA solicited public comments on Florida's application, and

received more than 3,000 submissions by the close of the comment period on November 2, 2020.

Dkt. 73 at 7–8.  On December 17, 2020, then-Administrator Andrew Wheeler announced

approval of Florida's program.  Id. at 8.

     In the past, EPA had codified its approval of state 404 programs by incorporating the

elements of the approved program, a practice that takes several weeks after approval.  Id. at 24;

Dkt. 43 at 32 n.9; see also 1 C.F.R. § 51.5(b)(1) (requiring draft to be sent to Office of Federal

Register at least 20 working days before rule can be published in Federal Register).  In that case,

the final rule could not have been published until January 21, 2021, at the earliest, and with a 30-

day delay, it could not have taken effect until February 22, 2021.  On January 20, 2021, a White

House directive would have required EPA to "immediately withdraw" the rule so that the new

administration could review it.  86 Fed. Reg. 7,424 (Jan. 20, 2021) (Memo from Ronald A.

Klain, Assistant to the President and Chief of Staff).

     But in this case, without explanation, EPA dispensed with past practice in substance and

form.  On December 22, 2020, as the change in administration loomed, EPA published only its

approval of Florida's program and purported to give that action immediate effect, thereby

immediately transferring longstanding authority over 404 Clean Water Act permitting from the

U.S. Army Corps of Engineers to the state.  Dkt. 73 at 8.  That same day, Plaintiffs notified EPA

(and Florida) that the immediate effective date violated the APA's requirement to delay the

effective date of rules by a period of at least 30 days.  Id. at 8–9.  EPA responded by letter to the

Florida Department of Environmental Protection claiming the transfer could lawfully take

immediate effect because the agency's action was an adjudicatory order, rather than a rule.  Id. at

9–10.

On January 14, 2021, Plaintiffs filed suit challenging that action as well as EPA's approval of Florida's program and related agency actions.  Id. at 11–12.  On January 20, 2021, Plaintiffs submitted a request to EPA to acknowledge that its action was a rule, not an adjudicatory order, and to stay the effective date of the rule pending judicial review.  Dkt. 31 at 16–17.  But EPA adhered to its position and did not consider the request.  Dkt. 73 at 12, 36–37.

On January 29, 2021, Plaintiffs, in accordance with the Court's standing order, submitted a pre-filing request for conference seeking leave to move for early summary judgment on Claims 8 and 9 of their Complaint.  Dkt. 21.  In accordance with the Court's scheduling order, EPA produced an administrative record as to those claims on February 19, 2021, and Plaintiffs filed their Motion for Partial Summary Judgment on March 5, 2021 (Dkt. 31).  On March 30, 2022, the Court denied Plaintiffs' motion as to Claim 9 on the merits (and granted EPA's cross-motion as to that caim), and denied without prejudice Plaintiffs' motion as to Claim 8, requesting further briefing on the issue of redressabilty.

## ARGUMENT

On the question of redressability, and the other side of that coin—remedy—Plaintiffs begin by outlining the elements of the claim that have already been decided, identify the remedy they seek, and then address each of the Court's questions regarding the authority (both of the Court and the agency) to grant relief.  Plaintiffs note at the outset, however, that the question of judicial and agency authority in this case is not written on a blank slate, but rather arises in the context of an agency violation that has harmed the Plaintiffs and therefore calls for a remedy.

"[I]t is a general and indisputable rule[] that where there is a legal right, there is also a legal remedy."  Marbury v. Madison, 5 U.S. (1 Cranch) 137, 163 (1803) (citing 3 William

5

Blackstone, Commentaries *23).  The judiciary's authority to award appropriate relief provides "an important safeguard against abuses of legislative and executive power."  <u>Franklin v. Gwinnett Cty. Pub. Sch.</u>, 503 U.S. 60, 74 (1992).  "[A] decision that no remedy is available" would "giv[e] judges the power to render inutile causes of action authorized by Congress."  <u>Id.</u>

### 1. The Court March 30, 2022, Memorandum Opinion and Order

Although the Court was careful not to rule on the merits of Claim 8 until the threshold issue of redressability is resolved (Dkt. 73 at 45), the facts are undisputed and the Court has now ruled in Plaintiffs' favor on all other questions of law necessary to the claim.

First, the Court rejected EPA's argument that its approval of Florida's program was an adjudication, and concluded that the agency's action was a rule.  Dkt. 73 at 58–60.  Because it was a rule, EPA's approval of the state program could not have lawfully taken effect for at least 30 days after its publication in the Federal Register.  5 U.S.C. § 553(c)–(d).  EPA's immediate effective date did not claim, cite to, or rely on any exemption to the delayed effective date requirement.  EPA's immediate effective date thus violated the APA.

Second, the Court held that Section 705 conferred a procedural right on Plaintiffs to seek a stay of the final rule pending judicial review, and that they have suffered cognizable harm for purposes of standing.  Dkt. 73 at 38–41, 42–44.  The Court found that had Plaintiffs received the benefit of a 30-day delay, their stay request could have been considered before the transfer decision took effect.  <u>Id.</u> at 38.  But Plaintiffs were denied the benefit of the 30-day delay, and EPA did not consider their request.  <u>Id.</u> at 37, 40–41.  At oral argument, EPA conceded that if the Court concluded that the rule should not have been effective during the 30-day period, then EPA could consider Plaintiffs' stay request because it was timely filed.  <u>Id.</u> at 37.

Third, the Court observed that under <u>Prows v. U.S. Department of Justice</u>, 938 F.2d 274 (D.C. Cir. 1991), "a violation of Section 553(d) requires a remedy that makes 'whole' 'those who are affected by agency action taken [or refused] during the 30-day waiting period.'"  Dkt. 73 at 31.  The Court rejected EPA's argument that redress was only available for "concrete injuries between December 22, 2020, and January 21, 2021."  <u>Id.</u> at 29–30.  And it rejected Florida's argument that Plaintiffs' claim was moot because "the 30-day delay requirement has long since expired."  <u>Id.</u> at 30.  Applying <u>Prows</u>, the Court concluded that Plaintiffs' injury of being denied the opportunity to have EPA consider their stay request remains redressable if "there is 'some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant.'"  <u>Id.</u> at 48.

The only issue remaining for the Court, therefore, to decide is "what relief (if any) the EPA might be able to provide to Plaintiffs should the Court find in their favor on the merits of Count Eight."  <u>Id.</u> at 49.  For the reasons stated below, the EPA can in fact provide relief to the Plaintiffs for its violations of the APA, and the Court should afford Plaintiffs the opportunity to have their stay request considered by the agency.  Moreover, the separation of powers demands that an agency's disregard of Congressional mandates be remedied by the judiciary.  Any other result would invite disregard for the law and undermine public confidence in the rule of law.  As Plaintiffs' injury is redressable, and all other elements have been met, Plaintiffs respectfully request that the Court enter summary judgment on Claim 8 in their favor.

## 2. The Court's Authority to Set Aside an Unlawful Effective Date and Provide Equitable Remedy

The APA requires that a rule not be made effective for at least 30 days following publication in the Federal Register.  5 U.S.C. § 553(d).  And as this case illustrates, sometimes

those 30 days can be particularly consequential where, as here, they overlap with a change in administration, and the new administration has directed agencies to consider postponing rules not yet in effect so that they can be reviewed.  In that circumstance, a 30-day APA violation is particularly egregious.  While certainly outgoing administrations have an interest in finalizing their regulatory priorities within the time they are in office (Dkt. 73 at 1–2), they do not have the power to circumscribe the authority of a duly elected new administration as it takes office.  And neither administration has the authority to deprive the public (and the Plaintiffs here) of rights afforded by Congress under the APA.

The APA provides that a court shall "hold unlawful and set aside agency action" that is (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," (2) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or (3) "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (C)–(D).  As to Claim 8, Plaintiffs ask the Court to: declare that EPA violated the APA by providing an immediate-on-publication effective date for its approval of Florida's program; hold unlawful and set aside EPA's December 22, 2020, immediate effective date; issue any appropriate injunctive relief; and grant such further and additional relief as the Court may deem just and proper.  Dkt. 77 at 57–68 (Am. Compl., Prayer for Relief (i), (o), (q), (s)).

As the Court has observed, under <u>Prows</u> "a violation of Section 553(d) requires a remedy that makes 'whole' 'those who are affected by agency action taken [or refused] during the 30-day waiting period.'"  Dkt. 73 at 31.  Here, a truly complete remedy would take Plaintiffs back in time by invalidating EPA's immediate effective date, the transfer of authority to the state, and every state and federal action that has occurred since, as the prior EPA's unlawful action

8

prevented Plaintiffs (and anyone else) from seeking an agency stay of the action pending judicial review and denied the incoming Biden administration the authority to consider that request before the rule took effect.

That said, Plaintiffs understand the Court's concern that Florida's operation of the 404 program for the past year may constitute a bell that cannot be unrung.  Id. at 47–48.  However, the relief that Plaintiffs seek is far more narrow.  Because EPA's immediate effective date violated the APA, Plaintiffs request that the effective date be set aside for a period of at least 30 days from the Court's order granting summary judgment in Plaintiffs' favor on Claim 8. Although the rule has (unlawfully) taken effect, such a ruling by the Court would effectively "suspend" the state program for 30 days, restore 404 authority to the Corps in the interim, and allow EPA to consider Plaintiffs' request for a stay pending judicial review because the rule will not be in effect.  This relief would be consistent with Prows because it comes the closest to making Plaintiffs whole (at least as whole as possible in light of the intervening time during which the state has been allowed to administer the program notwithstanding the 553(d) violation) while not invalidating the rule itself (EPA's approval).  Cf. id.  Moreover, EPA's immediate transfer of authority from the Corps to the state does not involve the single ringing of a bell, since the bell rings every time Florida issues a permit (or a determination that no permit is required) to dredge and fill in wetlands in waters of the United States.  The question is whether the bell should stand silent long enough to right a wrong, so that EPA may consider Plaintiffs' stay request to restore 404 authority to the Corps pending judicial review.

The Court has asked whether "altering" the effective date in this way would conflict with Prows by "arguably invalidat[ing] or chang[ing] a portion of the rule—that is, the effective date."

Id. at 47.  But altering the effective date (and not the substance) of a rule is precisely the remedy that Prows and the APA demand.  While in some circumstances, such as under the specific facts in Prows, altering the effective date by 30 days from publication will be an adequate remedy because the only harm sustained by the Plaintiff began and ended within those 30 days, that is not always the case.  And the Circuit Court in Prows acknowledged that possibility, when it specifically held that a "regulation *may* be saved and held valid after passage of the 30-day notice period" to protect those affected during the 30-day period "without disturbing later action *that is not the product of the violation*."  938 F.2d 274, 276 (emphasis added).  The Court rejected Prows' request to remedy a harm that post-dated the lapse of the 30-day period only because that harm had no "roots" in the 30-day period.  Id.  Here, Plaintiffs' harm began during the 30-day period and has continued since.  Later action (the unabated administration of the state program without the agency having considered Plaintiffs' request for an agency stay) is the product of the violation.  The harm has its roots in the 30-day period.  Later action therefore may be disturbed—and indeed must be disturbed if only for a short period—in order to grant Plaintiffs a remedy.

While Plaintiffs have not found a case that is on par with the facts presented here (as the Court observed, this case presents "an important and novel question," Dkt. 73 at 49), there is no question that courts have fashioned equitable remedies to protect Plaintiffs' rights following a 553(d) violation.  In Lewis-Mota v. Sec'y of Labor, 469 F.2d 478, 482 (2d Cir. 1972), the court generally held an immigration directive valid thirty days after publication but also permitted plaintiffs who were adversely affected by the directive "a reasonable time within which to apply for admission under the same circumstances as if their priority position on the visa approval list

were reached" more than a year and half after the 30-day period passed.  In United States v. Gavrilovic, 551 F.2d 1099, 1106 (8th Cir. 1977), the court vacated convictions based on a change in drug law made effective two days after publication, where the charged conduct occurred during 30-day period before the rule could lawfully have taken effect.  In Ngou v. Schweiker, 535 F. Supp. 1214 (D.D.C. 1982), a class of refugees challenged the loss of financial and medical benefits resulting from a new rule slated to take effect 20 days after publication.  On a motion for preliminary injunction, the court found the plaintiffs were likely to succeed on the merits of their claim that the agency violated 553(d) and enjoined the rule's effective date for thirty days from the court's ruling for refugees residing in the state of Washington.  535 F. Supp. 1214, 1217.

 In this case, Plaintiffs' injuries are similarly redressable with an equitable remedy rooted in the APA.  The APA requires the Court to set aside EPA's effective date in such a way that will afford the Plaintiffs the opportunity to have their request for an agency 705 stay heard. Section 705 itself grants the Court authority to preserve parties' rights pending judicial review.  5 U.S.C. § 705.  Dkt. 73 at 48.  And "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."  Cobell v. Norton, 240 F.3d 1081, 1108 (D.C. Cir. 2001) (quoting Swann v. Charlotte–Mecklenburg Bd. of Educ., 402 U.S. 1, 15 (1971)).

As with any action taken by the Court (as opposed to the agency), notice and comment are not required to grant Plaintiffs relief.  Cf. Dkt. 73 at 47.  Moreover, the public has had notice of this litigation (and this motion specifically) for well over a year.  Florida has intervened to defend its interests and regulated industries have participated as amici from the start.  Minute

Order (Feb. 1, 2021) (granting motion to intervene by Florida and Florida Department of Environmental Protection); Dkt. 39 at 13 (granting the Florida Chamber of Commerce and the Association of Florida Community Developers leave to participate as amicus curiae).

And perhaps most significantly, the balancing of equities as to whether EPA should ultimately stay the state program pending judicial review is for the agency to decide, and a factor the agency will have to consider if Plaintiffs prevail.  Sierra Club v. Jackson, 833 F. Supp. 2d 11, 29–30  (D.D.C. 2012) (finding EPA is bound by its own precedents to apply four-part test for stays and injunctions, including weighing the equities and the public interest); see also Bauer, 325 F. Supp. 3d at 106 (agencies must weigh equities when considering stay requests).

### 3. The Agency's Authority to Grant a Stay

The Court has asked whether the agency has the authority to grant a Section 705 stay given that the transfer has gone into effect.  Dkt. 73 at 45.  The answer to that question is yes, because the agency has committed the violation that deprived parties of the opportunity to seek that stay.  The general principle that an agency cannot grant a 705 stay after a rule takes effect presumes that the rule has taken effect *lawfully*.  The same principle cannot rigidly be applied so as to foreclose the consideration of an agency stay request after the rule has taken effect *unlawfully*.  And Plaintiffs are not aware of any case where this principle has been applied after a rule took effect unlawfully.  Indeed, to conclude that a harm caused by an agency violation of a right cannot be remedied because of the agency's very violation of that right (unlawfully giving a rule immediate effect) would make a remedy impossible, and thereby destroy rights created by Congress.  It would invite rather than discourage violations, since an agency could always eradicate the right to seek a stay (and disregard Congress' mandate of a delayed effective date

that is the predicate to seeking an agency stay) by simply making rules effective immediately. Once in effect, no remedy could be had.

The Court has also queried whether EPA's granting of a stay now that the transfer has gone into effect would require notice and comment as it would "arguably affect the existing rights of regulated parties." Dkt. 73 at 45, 47. On this point, the Court cites Clean Air Council v. Pruitt, 862 F.3d 1, 6 (D.C. Cir. 2017), where the Circuit Court held that "an order delaying [a] rule's effective date" was "tantamount to amending or revoking a rule." But that case is inapposite for a few reasons.

By way of background, the Clean Air Act *requires* reconsideration of rules—and permits the agency to stay those rules pending such reconsideration—if certain criteria are met. 862 F.3d at 4–5. In Clean Air Council, EPA had issued a final rule on pollutant emissions in 2016. Id. Once the rule took effect, industry groups sought agency reconsideration. Id. In 2017, the agency relied on the Clean Air Act's mandatory reconsideration provision to grant reconsideration of parts of the rule and to stay certain of the rule's compliance dates pending reconsideration. Id. Ultimately the Court ruled that the criteria for mandatory reconsideration (and so the associated stay) had not been met, and so it vacated the stay. Id. at 14.

In the context of determining whether EPA's actions were subject to judicial review, the Court determined that while granting reconsideration was not final agency action, the imposition of the stay was. Id. The Court observed that this was so because the agency's stay of compliance deadlines effectively delayed the rule's effective date and was therefore tantamount to amending or revoking a rule. Id. The stay not only marked the consummation of a decisionmaking process but also affected the regulated parties' rights and obligations, since the

rule required companies to undertake monitoring surveys and certain repairs, and could subject companies to penalties, suits, fines and imprisonment.  Id. at 7.  The agency defended the stay as, among other things, within its broad discretion to reconsider its rules.  Id. at 8–9.  But the Court observed that agencies may not alter rules without notice and comment.  Id. at 9.

In the Clean Air Council decision, however, there is no indication that the agency's effective date was unlawful.  Also in that case, it was the agency itself that sought to alter the effective date, relying first on its statutory authority, and then later claiming inherent authority. Id.  Here, by contrast, the question of agency authority cannot be considered in the abstract, because this case involves an *unlawful* effective date, and because Plaintiffs are asking the *Court*, rather than the agency, to remedy the violation by setting aside the unlawful effective date.  By setting aside the unlawful effective date, the Court would create a brief window during which the rule is not in effect, which would permit the agency to consider Plaintiffs' stay request.  If the stay request were granted, EPA would not be altering the (now-lawful) effective date, but rather postponing a rule not in effect.

It is all but beyond dispute that EPA's December 22, 2020, immediate effective date *was* unlawful, because the Court has held that EPA's action was a rule and the APA requires an at least 30-day delay before rules may lawfully take effect.  Because the effective date was unlawful, the Court (rather than the agency) must set it aside.  If the Court rules in Plaintiffs' favor on the merits, then the effective date would run at least 30 days from the date of the Court's ruling.  And as discussed above, this action by the Court would not constitute agency amendment or revocation of a rule, and would therefore not require notice and comment.

The Court's setting aside of EPA's unlawful effective date would have the effect of suspending the state 404 program for at least 30 days such that EPA's rule would not be in effect.  This would open a short window to allow EPA to consider Plaintiffs' stay request.  As noted above, the APA does not require notice and comment for an agency's consideration of a 705 agency stay request, though this is likely because stays ordinarily preserve the status quo.  Bauer v. Devos, 325 F.Supp.3d 74, 106–107 (D.D.C. 2018).

The Court also cites to Sierra Club v. Jackson, 833 F. Supp. 2d 11 (D.D.C. 2012), for the proposition that "it is one thing to permit an agency to stay an administrative decision pending judicial review in order to maintain the status quo, but something altogether different to alter the status quo without providing an opportunity for notice and comment."  Dkt. 73 at 45–46.  In that case, the agency had promulgated final rules with an effective date that was not challenged as unlawful.  Shortly before the rules were to take effect, the agency issued a stay (referred to as the "Delay Notice") pending judicial review and reconsideration.  833 F. Supp. 2d at 14–15.  Sierra Club challenged the Delay Notice on several fronts, including that it was unlawful because it issued without notice and comment.  The court ruled that because the Delay Notice preserved rather than altered the status quo, it did not constitute substantive rulemaking, and therefore notice and comment were not required.  833 F. Supp. 2d at 28.

In this case, Plaintiffs were unlawfully deprived of the opportunity to seek an agency stay to preserve the status quo as a result of EPA's 553(d) violation giving immediate effect to the transfer of 404 authority from the Corps to the state.  What Plaintiffs seek is an equitable remedy that would, to the extent possible, restore the status quo ante (a brief suspension of the rule), at least long enough for the agency to consider their request for an agency stay.

15

Moreover, throughout this litigation, Florida has vigorously argued that Plaintiffs'

substantive case lacks merit because, in their view, the state 404 program is just as rigorous as

the federal program.  Dkt. 37 at 44–51; Dkt. 46 at 21–23.  Taking them at their word, pausing the

rule would not constitute a substantive change as to the regulated community, it would simply

restore the Corps rather than the state as the permitting authority pending judicial review.  Cf.

Clean Air Council v. Pruitt, 862 F.3d at 7 (D.C. Cir. 2017) (agency stayed rule that would

impose new requirements on companies, including undertaking monitoring surveys and certain

repairs, and could subject companies to penalties, suits, fines and imprisonment for failures to

comply); Council of S. Mountains, Inc. v. Donovan, 653 F.2d 573 (D.C. Cir. 1981) (agency

stayed rule that would have created new mine safety regulations).

        That said, Plaintiffs would not have an objection if, after setting aside the immediate

effective date in this case for a reasonable period of time, the Court were to order EPA to provide

notice and invite comment in its consideration of Plaintiffs' stay request.  Notice and comment

would likely benefit the agency's assessment of the equities and the public interest.

Dated:  April 26, 2022

                                            Respectfully submitted,

                                            /s/ Tania Galloni
                                            TANIA GALLONI*
                                            Fla. Bar No. 619221
                                            CHRISTINA I. REICHERT*
                                            Fla. Bar No. 0114257
                                            Earthjustice
                                            4500 Biscayne Blvd., Ste 201
                                            Miami, FL 33137
                                            T: 305-440-5432
                                            F: 850-681-0020
                                            tgalloni@earthjustice.org
                                            creichert@earthjustice.org

/s/ Bonnie Malloy
BONNIE MALLOY*
Fla. Bar No. 86109
Earthjustice
111 S. Martin Luther King Jr. Blvd
Tallahassee, FL 32301
T: 850-681-0031
F: 850-681-0020
bmalloy@earthjustice.org

/s/ Anna Sewell
ANNA SEWELL
D.C. Bar No. 241861
Earthjustice
1001 G St., Ste 1000
Washington, DC 20001
T: 202-667-4500
asewell@earthjustice.org

*Counsel for Plaintiffs*

\* Appearing *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of April 2022 I electronically filed the foregoing document using the CM/ECF system. Service was accomplished by the CM/ECF system.

Respectfully submitted,

/s/ Tania Galloni
TANIA GALLONI
Fla. Bar No. 619221
Earthjustice
4500 Biscayne Blvd., Ste 201
Miami, FL 33137
T: 305-440-5432
F: 850-681-0020
tgalloni@earthjustice.org