IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　　v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*<br><br>　　　　Defendants. | Case No. 1:21-cv-0119 (RDM) |

### DEFENDANTS' SUPPLEMENTAL BRIEF ON REMEDY

　　In Claim Eight, Plaintiffs contend that the United States Environmental Protection Agency ("EPA") violated 5 U.S.C. § 553(d) by making effective upon publication in the Federal Register its approval of Florida's request to administer a permitting program under 33 U.S.C. § 1344 ("Section 404 program"). *See* Dkt. 62-1 at 47–48 (Am. Compl. ¶¶ 228–39); *see also* Dkt. 31 at 16, 33–34 (Pls.' Mot. Partial Summ. J. at 9, 26–27). According to Plaintiffs, that immediate effective date deprived them of their right to seek an administrative stay of EPA's approval action under 5 U.S.C. § 705 ("Section 705 stay"). *See id.* The Court has requested "further briefing as to what relief (if any) the EPA might be able to provide to Plaintiffs should the Court find in their favor on the merits of Count Eight," Dkt. 73 at 49 (Mem. Op. & Order at 49). For the reasons set forth below, the answer is none.[1]

　　As relief for Claim Eight, Plaintiffs ask the Court for an order that would allow EPA to grant their request for a Section 705 stay. Dkt. 78 at 9 (Pls.' Suppl. Br. at 9). A Section 705 stay

---

[1] EPA also renews and incorporates by reference its cross-motion for partial summary judgment on Claim Eight and previously filed briefs in support thereof. *See* Dkt. 34, 45, and 66.

1

Case 1:21-cv-00119-RDM   Document 82   Filed 05/26/22   Page 2 of 7

"postpone[s]" an agency action's effective date, 5 U.S.C. § 705, and as this Court noted, an agency cannot postpone an effective date that has already come and gone. Dkt. 73 at 46 (Mem. Op. & Order at 46 (internal quotation marks omitted)). So Plaintiffs ask that the Court temporarily vacate EPA's approval of Florida's Section 404 program, creating a new, future effective date, which EPA could then postpone. Dkt. 78 at 9, 16 (Pls.' Suppl. Br. 9, 16). EPA assumes *arguendo* that the Court could theoretically craft such a remedy.[2] But even if the Court did so, it would not ultimately matter. If directed to consider Plaintiffs' Section 705 stay request, EPA would be obliged to deny it.

Agencies may only issue Section 705 stays "to maintain the status quo" during litigation. *Bauer v. DeVos*, 325 F. Supp. 3d 74, 107 (D.D.C. 2018). Thus, an agency might postpone implementation of a new regulation, temporarily leaving unchanged the rights and obligations established under the prior regulatory regime. *See Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 28 (D.D.C. 2012) (concluding that Section 705 stay of not-yet-effective regulations was "not designed to do anything other than preserve the status quo"). But given the passage of time since EPA's approval of Florida's Section 404 assumption request, that kind of "purely procedural" intervention "that operates by temporarily freezing the status quo" is no longer possible here. *Bauer*, 325 F. Supp. 3d at 110 (internal quotation marks omitted).

For more than a year, Florida has administered a Section 404 program. Any action suspending that program would necessarily transform, rather than maintain the status quo.

---

[2] The Court should not order EPA to go through a notice and comment process as part of its consideration of Plaintiffs' Section 705 stay request, as Plaintiffs suggest. The Administrative Procedure Act (APA)'s notice and comment requirements are codified at 5 U.S.C. § 553(b) and (c) and apply to rulemakings under that section. Section 705 includes no notice and comment requirement, and courts generally should not insist that agencies acting pursuant to the APA employ procedural measures beyond those required by the APA. *See Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978).

2

Consider the consequences of a Section 705 stay. During the pendency of such a stay, anyone seeking a Section 404 permit for activities in Florida's waters would have to apply to the United States Army Corps of Engineers ("the Corps"), rather than to Florida, and would have to do so following the Corps' guidelines and procedures rather than those of the State. *See* 33 U.S.C. § 1344(a), (g), and (h) (authorizing the Corps or EPA-approved states to issue Section 404 permits). Florida would need to transfer to the Corps, the roughly 1,800 applications that are currently pending before the State's Department of Environmental Protection.[3] With little-to-no opportunity to prepare for the increase in workload, the Corps would have to review all new and pending application for completeness. 33 C.F.R. § 325.2(a)(1). It would then have to initiate certain review and federal consultation processes that the National Environmental Policy Act, Endangered Species Act, the Magnuson-Stevens Fishery Conservation Management Act, and the National Historic Preservation Act (among others) require for Corps-issued Section 404 permits, but not for state-issued permits. *See* 42 U.S.C. § 4332; 16 U.S.C. § 1536(a)(2); *id.* § 1855(b)(2); 54 U.S.C. § 306108. And because federal and state Section 404 processes differ, the Corps would likely also need to request other information from applicants who originally sought permits from Florida. All of this entails substantial change. EPA cannot effect such an outcome by issuing a Section 705 stay. *See California v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1120 (N.D. Cal. 2017) (vacating a Section 705 stay because a stay issued "five months after [a rule] went into effect plainly did not 'maintain the status quo' "); *accord Becerra v. U.S. Dep't of the Interior*, 276 F. Supp. 3d 953, 964 (N.D. Cal. 2017).

---

[3] The number of pending applications, and other statistics on Florida's Section 404 program are available on the Florida Department of Environmental Protection's public database: https://fldep.dep.state.fl.us/parep/pa_query_pa_data.asp (query based on "State 404 Program" with a permit application date range of December 2020 through May 2022).

Plaintiffs' merits argument on Claim Eight underscores the point.  Their central premise is that Florida could assume Section 404 permitting functions *if and only if* EPA approved its assumption request through a rulemaking under 5 U.S.C. § 553.  Dkt. 31 at 18–29 (Pls. Mot. for Partial Summ. J. at 11–22); *see also* Dkt. 43 at 16–29 (Pls. Resp. & Reply at 3–16).  This is so, Plaintiffs argue, because EPA's approval of Florida's assumption request prospectively affected the rights and obligations of a large class of individuals by altering the permitting regime in Florida.  *See id.*  But all of that would be true of an EPA action that effectively reinstated a Corps-administered Section 404 program in Florida.  Thus, if EPA's approval of Florida's assumption request was ineluctably a rule—a proposition that EPA disputes but must assume for present purposes, Dkt. 73 at 49–50 (Mem. Op. & Order at 49–50)—then EPA's suspension of Florida's up-and-running Section 404 program would likewise be a rule.  And if that is true, then the relief that Plaintiffs seek lies outside EPA's Section 705 authority.  Rules may be issued, amended, or repealed only through rulemaking.  5 U.S.C. § 551(4).  Rules may not be issued, amended, or repealed through administrative stays.  *Bauer*, 325 F. Supp. 3d at 110; *California*, 277 F. Supp. 3d at 1121; *Becerra*, 276 F. Supp. 3d at 966; *see also Env't Def. Fund v. Gorsuch*, 713 F.2d 802, 814–17 (D.C. Cir. 1983) (concluding that an agency action suspending a rule's requirements amounted to a rule because of the suspension's substantive impacts on regulated entities).  By Plaintiffs' own logic, then, the relief that they seek for Claim Eight is foreclosed.

In response, Plaintiffs might argue that under their proposed remedy, it would be the Court, not EPA, that would "restore 404 authority to the Corps" by issuing an order that suspended Florida's Section 404 program while EPA considered a stay request.  Dkt. 78 at 9 (Pls.' Suppl. Br. at 9).  Were that true, then EPA's subsequent grant of a Section 705 stay might be said to preserve the status quo of a Corps-administered program.  The flaw in this argument is

that the transfer of Section 404 permitting functions from state to federal regulators would not happen upon the entry of a court order, as Plaintiffs assume. For context, EPA's regulations require that states wishing to relinquish Section 404 permitting authority provide EPA and the Corps with 180 days' notice (and a transition plan) precisely so that EPA and the Corps can work with the state to ensure an orderly transfer. 40 C.F.R. § 233.53(a)(1)–(3). And it took Florida more than four months to begin issuing Section 404 permits after EPA approved its assumption request. *See* Dkt. 34 at 18 (EPA's Consolidated Cross-Mot. Summ. J. & Resp. at 9 (noting that Florida had not granted a single individual Section 404 permit as of April 2021)). Those intervals provide a rough measure of the time it would take for the Corps to resume Section 404 permitting activities in state waters following the suspension of Florida's program. Given that lag, an order vacating EPA's effective date for days or weeks would not, in any meaningful sense, "restore" a Corps-administered Section 404 program. Indeed, the reasonably foreseeable effect of such an order would be to bring permitting activity to a temporary standstill. A Corps-administered Section 404 permitting program might eventually take hold again during a subsequent EPA-issued Section 705 stay (depending on the stay's duration). But the salient point is that it would be EPA's stay, and not the Court's order, that would bring about the transition from state to federal regulatory regime. That is something that Section 705 stays cannot do.

      Plaintiffs do not grapple with the limited scope of Section 705 stays. Instead they argue that it must still be possible for EPA to issue a Section 705 stay because a contrary conclusion would lead agencies to deny parties the chance to seek Section 705 stays by ignoring 5 U.S.C. § 553(d)'s 30 day requirement. As an initial matter, this argument presumes that agencies will act in bad faith, a presumption that should not be given controlling weight. Nor can agencies

unilaterally "eradicate the right to seek a stay," as Plaintiffs claim. Dkt. 78 at 12 (Pls.' Suppl. Br. at 12). While an agency may only "postpone the effective date of action taken by it," courts "may issue all necessary and appropriate process . . . to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. Thus, though Plaintiffs opted not to, a party that was denied an agency-issued Section 705 stay by virtue of an immediate effective date could still obtain equivalent interim relief the court. Finally, EPA does not argue, and the court need not hold, that there could never be redress for a violation of Section 553(d) that effectively denied a party the chance to seek an agency-issued Section 705 stay. For the reasons stated above, an order suspending the effective date of EPA's approval would not enable EPA to stay its roughly 17-month-old approval of Florida's assumption request. But the same order, issued roughly 16 months earlier, might have done so. *Cf. Env't Def. Fund v. EPA*, 515 F. Supp. 3d 1135, 1152 (D. Mont. 2021) (declaring a rule invalid until 30 days after rule's publication based on a violation of Section 553(d) and an accompanying deprivation of the plaintiffs' right to seek a Section 705 stay). Plaintiffs chose not to seek emergency relief on Claim Eight, however, and the time when an EPA-issued stay could be said to maintain the status quo has long since passed.

Plaintiffs' invocation of the general principle that "'where there is a legal right, there is also a legal remedy'" does nothing to alter this conclusion. Dkt. 78 at 5 (Pls.' Suppl. Br. at 5) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803)). Whatever the force of this argument, it cannot enlarge the limited scope of EPA's authority under Section 705.[4] Plaintiffs seek a form of administrative relief that is no longer available. That is the end of the matter.

---

[4] In noting the limitations of its Section 705 authority, EPA does not intend to suggest that it could not or will not initiate withdrawal proceedings under 33 U.S.C. § 1344(i) and 40 C.F.R. § 233.53. Nor does EPA intend to suggest here how the Court should decide the question of remedy should it eventually rule for Plaintiffs on any claim other than Claim 8.

## CONCLUSION

Plaintiffs argue that EPA must consider their request for a Section 705 stay. Were EPA to do so, it would deny that request for the foregoing reasons.