**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY,
*et al.*,

   *Plaintiffs*,

  v.

MICHAEL S. REGAN, *et al.*,

   *Defendants*.

Civil Action No. 21-119 (RDM)

———————————————

**FLORIDA INTERVENORS' SUPPLEMENTAL**
**BRIEF CONCERNING CLAIM EIGHT REMEDIES**

———————————————

I.  **Introduction**

Florida Intervenors concur with Federal Defendants that Claim Eight is not redressable. *See* Dkt. 82.[1] Federal approval of Florida's Clean Water Act ("CWA") Section 404 program lawfully went into effect upon publication in the Federal Register on December 22, 2020. Dkt. 37 at 68-70; *see* Dkt. 46 at 29-33.  Even assuming *arguendo* that Claim Eight has merit, the United States Environmental Protection Agency ("EPA") could not, now, remedy Plaintiffs' purported injury, requiring dismissal of this claim for lack of standing. EPA cannot, under Section 705 of the Administrative Procedure Act ("APA"), stay an agency action that has already gone into effect. Dkt. 82 at 1-2. And Plaintiffs have cited no cases where, as they seek here, a federal court suspended a rule that had already gone into effect to allow for agency consideration of an APA Section 705 stay request. Likewise, though they could have tried, Plaintiffs never sought interim

_____

[1] Florida Intervenors renew and incorporate by reference their cross-motion to dismiss Claim Eight and previously filed briefs in support thereof. *See* Dkt. 36, 37, 46, 67, 72.

relief from this Court for purposes of maintaining the status quo shortly after the rule took effect.

Over 500 days have elapsed since January 21, 2021—the date the approval would have gone into effect if APA Section 553(d)'s 30-day waiting period applied. In the meantime, the Corps of Engineers has transferred thousands of permit files to the state for processing. Florida Department of Environmental Protection ("FDEP") has stood up a comprehensive regulatory program and trained over 130 certified wetlands evaluators and other staff. FDEP has now received over 5,100 permit applications and is continuing to make permit determinations as appropriate, subject to EPA oversight.[2]  At this point, the "egg has been scrambled and there is no apparent way to restore the status quo ante." *See, e.g., Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002) (refusing to vacate an agency action based on APA violations where the agency's "program was launched and crops were plowed under"). Federal Defendants persuasively showed why EPA could not (and would not) remedy Plaintiffs' alleged injury for Claim Eight. *See* Dkt. 82.

Florida Intervenors will now address whether this Court should fashion a novel equitable remedy that would require EPA to consider Plaintiffs' stay request. In its March 30th order, this Court contemplated whether it could crack open the door for EPA to grant relief. Dkt. 73 at 47-49. For example, this Court questioned whether it might "alter[] the effective date itself, such that Florida's Section 404 program will not take effect until 30 days from the date of this Court's order." Dkt. 73 at 47. And this Court questioned whether it might require EPA "to consider the request for a Section 705 stay that Plaintiffs submitted on January 20, 2021, because that request

---

[2] Florida 404 statistics are posted at https://fldep.dep.state.fl.us/parep/pa_query_pa_data.asp.

fell within the 30 days in which the transfer could not permissibly have taken effect but for the Section 553(d) violation." Dkt. 73 at 47.[3]

This Court correctly noted that such a remedy would potentially conflict with *Prows v. Dep't of Justice*, 938 F.2d 274 (D.C. Cir. 1991), engender inconsistency with the APA's notice and comment requirements, and create difficulties of trying to "un-ring that bell." Dkt. 73 at 47-48. This Court listed several factors it would need to consider. Dkt. 73 at 48. In their supplemental brief, Federal Defendants "assume[] *arguendo* that the Court could theoretically craft such a remedy," Dkt. 82 at 2, but explain why EPA would not grant relief. Florida Intervenors respectfully contend that principles governing equitable remedies in APA cases demonstrate that Claim Eight is not redressable *by an order of this Court*. Nor do the various cases cited in Plaintiffs' brief change this outcome, as further explained below.

II.     **Under Traditional Principles Governing Equitable Remedies in APA Cases, No Judicial Remedy Should Be Fashioned for Claim Eight.**

The party seeking an equitable remedy bears the burden of showing that the circumstances justify an exercise of judicial discretion. *Nken v. Holder*, 556 U.S. 418, 434 (2009). In deciding whether to grant preliminary equitable relief, courts consider whether that relief would alter the legal status quo. *See id*. at 429.

A.      **An APA-based injury is not redressable unless a favorable decision is likely to cause the agency to redress the alleged injury.**

To establish standing, a plaintiff must show, among the other *Lujan* elements, "that the injury is likely to be redressed by a favorable decision." *Marino v. Nat. Oceanic & Atmos.*

---

[3] If *arguendo* a 30-day waiting period applied under APA Section 553(d), approval of Florida's program would have become effective at 12:00 a.m. ET on January 21, 2021. Plaintiffs waited *until 8:35 p.m. ET* on January 20, 2021 to seek a stay from EPA. *See* Exh. 1, Email from Plaintiffs to EPA (Jan. 20, 2021). Plaintiffs submitted a one-page letter to EPA on December 22, 2020, concerning the effective date, but Plaintiffs did not seek an APA Section 705 stay at that time. *See* Dkt. 31-1 at 100 (Exh. D to Declaration of Amber Crooks).

*Admin.*, 33 F.4th 593, 596 (D.C. Cir. 2022) (quoting *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 19 (D.C. Cir. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). A favorable decision would have to "cause" the agency "to redress their alleged injuries." *Id.* Plaintiffs must "prove 'a likelihood that the requested relief will redress the alleged injury.'" *Id.* (quoting *Steel Co. v. Cit. for Better Env't*, 523 U.S. 83, 103 (1998), where a plaintiff "did not allege an ongoing injury that could be remedied by the injunction they had requested").

Applying these principles, the D.C. Circuit recently held that an environmental plaintiff lacked standing to challenge an agency's policy concerning marine mammal permits because "the plaintiffs fail[ed] to establish that the relief they [sought] would redress the injury they allegedly suffered.…" *Id.* at 596. To be sure, the D.C. Circuit explained that a plaintiff does not need to prove that granting the requested relief is "certain" to redress their injury. *Id.* at 597 (contrasting with *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 118 (D.C. Cir. 1990), where the agency had "already shown a willingness to entertain" the request). But "redressability is established" only "where a remand would *likely result in a favorable exercise of agency discretion*," *id.* at 597 (emphasis added), which requires that the plaintiff "plausibly plead that relief is indeed likely," *id.* (*citing Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,* 366 F.3d 930, 938-39 (D.C. Cir. 2004)). Because the plaintiffs in *Marino* "fail[ed] to allege any facts from which [the court] could infer the relief they seek would likely cause the [agency] to redress their alleged harms," the court dismissed for lack of redressable injury. *Id.* at 598 (emphasis added).

Here, Plaintiffs have not shown (or even pled) that a favorable decision by this Court on the merits of Claim Eight is likely to cause EPA to give a favorable exercise of agency discretion. Nothing in the amended complaint even alleges that EPA *should* have granted the

4

January 20, 2021 stay request, let alone *likely would have granted it or likely would grant it now*.

Plaintiffs' prior statement that there is "at least 'some possibility'" that their stay request would

be granted, Dkt. 31 at 50, is far too uncertain to support standing. That outcome is especially

clear when EPA has affirmatively stated: "If directed to consider Plaintiffs' Section 705 stay

request, EPA would be obliged to deny it." Dkt. 82 at 2. This is fatal to Plaintiffs' standing for

Claim Eight.

> **B.      Courts should carefully weigh the *severity of the alleged legal violation* and the *disruptive consequences* of the requested remedies.**

When considering equitable remedies in APA cases, the D.C. Circuit considers (1) "the

seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose

correctly)" and (2) the "disruptive consequences of an interim change that may itself be

changed." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C.

Cir. 1993). Concerning the seriousness prong, Claim Eight is not based on a failure to provide

notice and comment; and whether the agency action is an "order" (as EPA and Florida contend)

or a "rule" (as Plaintiffs contend), EPA provided just as much opportunity for public notice and

comment as it would for a rule and the outcome of the approval process was not impacted by the

"order" versus "rule" distinction.  Instead, Plaintiffs merely allege a failure to delay the effective

date of EPA's approval for at least 30 days after publication in the Federal Register. They cite no

authority stating that such an alleged violation is serious enough to support vacatur or suspension

of a rule already in effect.

On the other *Allied-Signal* prong, courts also consider "public consequences" of possible

equitable remedies. This includes equities involving the parties as well as the "interests of third

parties," as this Court noted. Dkt. 73 at 48; *see Weinberger v. Romero-Barcelo*, 456 U.S. 305,

312 (1982) (reviewing district court's exercise of equitable discretion in Clean Water Act case

and instructing courts to "pay particular regard for the public consequences" of a grant of

equitable relief). As Federal Defendants have explained, consequences to the parties and third

parties foreclose any remedy for a purported Claim Eight violation here. Dkt. 82 at 3.

Overlooking the disruptive consequences, Plaintiffs ask this Court to "set aside" EPA's

effective date "for a period of at least 30 days, during which time the rule would not be in

effect." Dkt. 78 at 2. This would, according to Plaintiffs, "'suspend' the state program for 30

days, restore 404 authority to the Corps in the interim, and allow EPA to consider Plaintiffs'

request for a stay pending judicial review because the rule will not be in effect." Dkt. 78 at 9.

Plaintiffs' requested remedy is simpler said than done. They leave a host of issues unaddressed,

such as: How would a "suspension" impact prior and ongoing permitting actions in Florida,

including individual permits and general permits? How would it impact the thousands of permit

applications already in process? How would it impact enforcement of the Section 404 program in

Florida, and would Florida or EPA have primary enforcement responsibility during that time

period? How would it impact the work of FDEP Section 404 permitting staff? Would it be

tantamount to enjoining ongoing construction projects authorized by Florida 404 permits? How

would a "suspension" impact EPA's oversight authority? How would it impact the various

memoranda of agreement between the State of Florida and the federal agencies and tribal

governments? Would permitting fees need to be returned, held in escrow, or otherwise withheld

from distribution or use? These and a myriad of other issues created by Plaintiffs' unprecedented

"stay" would be impossible for the judiciary to administer. *WildEarth Guardians v. Haaland*,

2021 WL 4502054 at *7 (D.D.C. Sep. 30, 2021) ("The Court will not exercise its equitable

discretion to order an agency to comply with an order that is impossible to perform.").

C.       Applying the *Allied-Signal* test, courts choose not to disrupt agency actions where "[t]he egg has been scrambled and there is no apparent way to restore the status quo ante."

As this Court also acknowledged, in fashioning an equitable remedy, the Court would "need to consider whether it is possible at this date to restore Plaintiffs to the position they would have occupied were it not for the EPA's (alleged) failure to comply with the dictates of Section 553(d)." Dkt. 73 at 48. Here, restoring Plaintiffs to the prior status quo is not possible because the program has been fully operational for more than a year, with thousands of regulatory decisions and private sector actions already having occurred. The bell has been rung and cannot be un-rung at this late stage to allow for an agency stay. Dkt. 73 at 48; Dkt. 82 at 2-3.

Stated differently, "[t]he egg has been scrambled and there is no apparent way to restore the status quo ante." *Sugar Cane Growers Co-op. of Fla.*, 289 F.3d at 97; *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 756 (D.C. Cir. 2002) (applying the "egg has been scrambled" concept where agency already disbursed federal funds that had already been used to fund agriculture programs); *Defenders of Wildlife v. Jackson*, 791 F. Supp. 2d 96, 118 (D.D.C. 2011) (applying the "egg has been scrambled" concept to fashion remedies and refusing "invitation to chaos" in context of APA-based challenge to pesticide registration approved by EPA); *see also Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020) (relying on the "egg has been scrambled" concept to deny complete relief to plaintiffs in APA challenge). *But cf. Council of Parent Attys. & Advocates, Inc. v. Devos,* 365 F. Supp. 3d 28, 56 (D.D.C. 2019) (holding that a vacatur of a rule delaying the compliance date of an earlier rule would "simply allow [the

original rule] to take effect, as the agency originally intended" and the government did not show

sufficient evidence that vacatur would be disruptive).[4]

> ### D.     Equitable remedies must be consistent, and not interfere, with applicable law.

A court considering equitable remedies must also "consider any legal restraints on its

authority to act." Dkt. 73 at 48. The "power of federal courts of equity to enjoin unlawful

executive action is subject to express and implied statutory limitations." *Armstrong v.*

*Exceptional Child Ctr., Inc.,* 575 U.S. 320, 327 (2015). "Courts of equity can no more disregard

statutory and constitutional requirements and provisions than can courts of law." *I.N.S. v.*

*Pangilinan,* 486 U.S. 875, 883 (1988) (internal quotations omitted).

The equitable remedy sought by Plaintiffs cannot be reconciled with the relevant statutes.

For instance, an agency stay under APA Section 705 is not available when the rule has already

gone into effect. Dkt. 73 at 45-47. Section 705 speaks only in terms of "postponing" a regulation

that has not yet gone into effect. Agencies can only grant a stay under Section 705 to maintain

the status quo. *Bauer v. DeVos*, 325 F. Supp. 3d 74, 107 (D.D.C. 2018); *Sierra Club v. Jackson*,

833 F. Supp. 2d 11, 28 (D.D.C. 2012).

Likewise, CWA Section 404(h) requires transfer of permits from the Corps of Engineers

to the state upon approval of a state program. 33 U.S.C. § 1344(h)(4). Consistent with this

statutory directive, the transfer to Florida began promptly after approval of Florida's program in

---

[4] Notably, the "stay" remedy requested by Plaintiffs here would be a more drastic remedy than the "remand without vacatur" remedy often afforded by courts in the D.C. Circuit in APA cases, even when an agency altogether fails to follow notice and comment procedures. *See Sugar Cane Growers Co-op. of Fla.*, 289 F.3d at 97-98 ("We have previously remanded without vacating when the agency failed to follow notice-and-comment procedures."). Here, EPA provided adequate public notice and comment before approving Florida's program. Dkt. 37 at 22-23. A stay in these circumstances could be highly disruptive. *See supra* at 6. Additionally, Plaintiffs have expressly disavowed seeking vacatur as a remedy for Claim Eight. Dkt. 43 at 15, 49, 76 n. 48.

late December 2020 and was complete in early 2021. A stay—granted now at this late stage—

would interfere with Section 404(h).[5] And a stay now would likely interfere—or at least be

inconsistent with—regulations governing program relinquishment found at 40 C.F.R. § 233.53.

        **E.**      **Courts should consider other meaningful and adequate means of vindicating statutory rights.**

"[C]ourts of equity should not act . . . when the moving party has an adequate remedy at

law and will not suffer irreparable injury if denied equitable relief." *Morales v. Trans World*

*Airlines, Inc.,* 504 U.S. 374, 381 (1992). Here, Plaintiffs had—and still have—other meaningful

and adequate means of vindicating a right "to be heard"; i.e*.,* a right to have EPA reconsider its

decision to approve Florida's program. Plaintiffs had ample opportunity to seek interim relief

from this Court, including a preliminary injunction motion that they chose not to pursue.

Plaintiffs also could have filed, and could now file, a petition for program withdrawal or

modification under Section 404(i). *See* 40 C.F.R. § 233.53. While Florida Intervenors would

strongly oppose any such petition, the process remains open to Plaintiffs to pursue. Where the

statute provides Plaintiffs specific avenues to vindicate their interests, the Court should be wary

of fashioning a novel equitable remedy.

In light of the principles above, this Court should decline Plaintiffs' request that it try to

temporarily "unscramble the egg" to try to redress a purported infraction of 5 U.S.C. § 553(d).

**III.**      **This Court Should Reject the Unprecedented Remedies Proposed by Plaintiffs.**

Plaintiffs gave EPA less than four hours to consider their Section 705 stay request but

now ask this Court to give them an entirely new 30-day window for EPA to consider the January

---

[5] A stay would also interfere with CWA Section 404(h)'s requirement that EPA must approve or disapprove a program within 120 days of receipt of a complete application. 33 U.S.C. § 1344(h)(1).

20, 2021 stay request. Dkt. 78 at 2, 14. To support this request, Plaintiffs contend that EPA's

approval "could not have been published until January 21, 2021, at the earliest, and with a 30-

day delay, it could not have taken effect until February 22, 2021." Dkt. 78 at 4. This request has

no basis in law or fact.

First, as stated already, Plaintiffs did not formally request an APA Section 705 stay until

late on the evening of January 20, 2021—just a few hours before the 30-day window would have

closed (assuming Section 553(d) applied). Plaintiffs' litigation strategy gave EPA no meaningful

opportunity to evaluate a stay. Though Plaintiffs may wish for an entirely new 30-day window

for consideration of their stay request, Dkt. 78 at 14, they are not entitled to it. Equitable

remedies should be no broader in scope or duration than necessary to cure the alleged harm

caused by an agency's procedural missteps. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)

("injunctive relief should be no more burdensome to the defendant than necessary to provide

complete relief to the plaintiffs"); *Neb. Dep't of Health & Human Servs. v. Dep't of Health &*

*Human Servs*., 435 F.3d 326, 330 (D.C. Cir. 2006) ("an injunction must be narrowly tailored to

remedy the specific harm shown") (cleaned up). Here, the relevant duration of the injury, at

most, would be the approximately 3 hours and 25 minutes when Plaintiffs' stay request was

pending with EPA before the "rule" would have otherwise become effective. It is beyond

speculative to suppose that senior Administration officials would have reviewed, meaningfully

considered, and granted a 24-page stay request letter (with voluminous exhibits)—all during a

brief window on the evening of Inauguration Day. A review of Federal Register notices found no

instances where a federal agency granted an APA Section 705 stay request on January 20, 2021.

Belying Plaintiffs' suggestion that they would have obtained a stay if EPA had been allowed to

consider it, no rule published on or before December 22, 2020, was stayed by a federal agency

after the arrival of the new administration. *Cf.* 86 Fed. Reg. 6,847 (Jan. 25, 2021) (delaying for

60 days, via notice issued on January 21, 2021, the effective date of a federal asylum rule

originally published on December 23, 2020, with an original 30-day effective date of January 22,

2021). Nor have Plaintiffs identified any instance where EPA granted an APA Section 705 stay

in the same relevant time period.

Second, to garner a fresh 30 days for review of their January 20, 2021 stay request,

Plaintiffs suggest that EPA's approval should not have been published on December 22, 2020.

Dkt. 78 at 4. But there was nothing unlawful about the Office of Federal Register publishing

EPA's approval promptly. Even if it usually "takes several weeks after approval," Dkt. 78 at 4,

before a notice is published in the Federal Register, publishing promptly violates no law.

Plaintiffs cite 1 C.F.R. § 51.5(b)(1)[6] to divine a 20-day waiting period before publication in the

Federal Register. Dkt. 78 at 4. No such mandatory requirement exists and, as importantly,

Plaintiffs amended complaint asserts no such violation here. To the extent Plaintiffs are relying

on their codification argument to impose a waiting period, Claim Nine has been dismissed on the

merits. Dkt. 73 at 60-61. There is simply no basis for Plaintiffs' assertion that "the final rule

could not have been published until January 21, 2021," nor is there any basis for Plaintiffs'

assertion that the final rule "could not have taken effect until February 22, 2021." Dkt. 78 at 4.

Third, Plaintiffs (yet again) invoke the unenforceable Klain Memo to suggest that EPA

was "required" to "immediately withdraw" the approval notice "so that the new administration

could review it." *Id*. Not so. The Klain Memo merely directs agencies to "consider" staying rules

that have not yet gone into effect. 86 Fed. Reg. 7424, 7424-25 (Jan. 28, 2021).  It provides no

---

[6] This regulation merely describes how a federal agency requests formal approval from the
Office of Federal Register for publication of a final rule. It does not establish a 20-day waiting
period enforceable by Plaintiffs.

enforceable right to Plaintiffs. Dkt. 73 at 27 n. 6 (noting that "at the motions hearing Plaintiffs

clarified that they are not advancing any … claim" that the Klain memo "confers on Plaintiffs

any independent 'procedural right'…").

Last, Plaintiffs' other cited cases do not support their requested relief. Plaintiffs rely on

*Lewis-Mota v. Sec'y of Labor*, 469 F.2d 478 (2d Cir. 1972), as a case where "courts have

fashioned equitable remedies to protect Plaintiffs' rights following a 553(d) violation." Dkt. 78 at

10. In *Lewis-Mota*, a federal agency published an immigration directive in the Federal Register

*over a year after it was originally issued*. Finding that the directive was a rule subject to APA

Section 553, the Second Circuit considered "[w]hat relief should be or can be accorded to the

[plaintiffs]," who lost the opportunity to have their admission to the country considered on more

favorable terms while the directive was unlawfully in effect. The Second Circuit opted to

"declare the Directive invalid until 30 days after it was actually published" and "valid

thereafter," *Lewis-Mota,* 469 F.2d. at 482. This outcome was consistent with *Prows'* express

"holding that violations are remedied by denying such a rule effectiveness for the mandated 30

days, allowing it to take effect in full thereafter." 938 F.2d at 275. In *Lewis-Mota*, the lack of

compliance with Section 553 could have affected the final agency outcome. Moreover, in that

case, the agency "conceded" that plaintiffs' "priority position on the visa approval list would

have been reached" before "30 days after actual publication," which meant that the agency

would have been required to affirmatively consider plaintiffs' requests under more favorable

terms. *Lewis-Mota,* 469 F.2d. at 482. As a result, the Second Circuit fashioned a simple remedy

allowing the plaintiffs a "reasonable time within which to apply for admission *under the same*

*circumstances as if their priority position on the visa approval list were reached*." *Id.* (emphasis

added). Here, of course, the notice was published the day after EPA's approval—not a year later

as in *Lewis-Mota*. And here, no change in the "circumstances" bears on Plaintiffs' stay request,

nor is there any indication that the purported lack of compliance with Section 553(d) could have

affected the final outcome of the underlying decision to approve Florida's program. Unlike in

*Lewis-Mota*, Federal Defendants have given no indication that it would consider Plaintiffs' stay

request differently (or even favorably).

Similarly, Plaintiffs' reliance on *United States v. Gavrilovic*, 551 F.2d 1099 (8th Cir.

1977), is also misplaced. *See* Dkt. 78 at 11. *Gavrilovic* is a criminal case that did not involve a

court fashioning an equitable remedy. The Eighth Circuit vacated a conviction where a new

regulation, which formed the basis of the criminal violation, was found to be unlawfully in effect

for the 30-day period after publication in the Federal Register. *Gavrilovic*, 551 F.2d at 1106.

*Ngou v. Schweiker*, 535 F. Supp. 1214 (D.D.C. 1982), is also distinguishable. *See* Dkt. 78

at 11. In *Ngou*, a district court enjoined a new rule, which was scheduled to take effect 20 days

after publication in the Federal Register, for failing to comply with APA Section 553(d). Arising

a decade before *Prows*, the district court cited—though critically—a Tenth Circuit case as an

example where courts "held that regulations issued in violation of section 553(d) are merely

ineffective until passage of the 30-day period." *Id.* at 1217. In fashioning the equitable remedy *in

the context of a preliminary injunction motion*, the court found that the "appropriate remedy" is

to "extend the time when the regulation goes into effect" to meet the particular needs of a

specific group of refugees and to "cause only a limited delay so as to preserve the funds available

insofar as possible in the interests of the sound administration of the Refugee Resettlement

Program as a whole." *Id*. Though the timeframe extended beyond the ten days needed to fill the

initial 30-day window under Section 553(d), the court explained this was unavoidable under that

particular funding program where "any delay of the [effective date] will necessarily delay

implementation of the regulation for at least a month." *Id.* The remedy was also limited to those

specific refugees under "special circumstances." *Id.* As such, *Ngou* provides no support for

Plaintiffs, even if it remains good law after *Prows*. *See also* Dkt. 37 at 41 (explaining why

Plaintiffs' reliance on *Ngou* is misplaced).

## IV.     CONCLUSION

For the foregoing reasons, the Court should dismiss Claim Eight because Plaintiffs'

alleged injury is not redressable by order of this Court or by EPA.

Dated:  June 9, 2022                                     Respectfully submitted,

                                                         BAKER BOTTS L.L.P.


                                                         */s/ Jeffrey H. Wood*
                                                         Jeffrey H. Wood (D.C. Bar No. 1024647)
                                                         700 K Street, NW
                                                         Washington, D.C. 20001
                                                         Phone: (202) 639-7700
                                                         jeff.wood@bakerbotts.com

                                                         Lily N. Chinn (DC Bar No. 979919)
                                                         101 California Street
                                                         San Francisco, CA 94111
                                                         Phone: (415) 291-6200
                                                         lily.chinn@bakerbotts.com

                                                         Aaron M. Streett (TX Bar No. 24037561)
                                                         Harrison Reback (TX Bar No. 24012897)
                                                         (*pro hac vice*)
                                                         910 Louisiana Street
                                                         Houston, TX 77002-4995
                                                         Phone: (713) 229-1234
                                                         aaron.streett@bakerbotts.com
                                                         harrison.reback@bakerbotts.com

**CERIFICATE OF SERVICE**

I hereby certify that on this 9th day of June 2022, I electronically filed the foregoing

document using the CM/ECF system. Service was accomplished by the CM/ECF system.

Respectfully submitted,
BAKER BOTTS L.L.P.

*/s/ Jeffrey H. Wood*
Jeffrey H. Wood (D.C. Bar No. 1024647)
700 K Street, NW
Washington, D.C. 20001
Phone: (202) 639-7700
jeff.wood@bakerbotts.com