# Exhibit 1



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 4
ATLANTA FEDERAL CENTER
61 FORSYTH STREET, SW
ATLANTA, GEORGIA  30303-3104

May 23, 2022

Secretary Emile D. Hamilton
Florida Department of Environmental Protection
Marjory Stoneman Douglas Building
3900 Commonwealth Boulevard
Tallahassee, Florida 32399

Dear Secretary Hamilton:

Thank you for the revised draft annual report and supplemental information your office provided regarding the Florida Department of Environmental Protection's (FDEP) administration of its Clean Water Act (CWA) section 404 program for the reporting period, December 22, 2020, through June 30, 2021. The Environmental Protection Agency received the revised draft annual report on March 23, 2022, and supplemental information (i.e., Appendix 2 of the report) on April 22, 2022, following the EPA's request for additional information on November 12, 2021, with respect to the initial draft annual report submitted by FDEP on September 29, 2021. The FDEP's submission of the draft annual report and the EPA's comments, questions, and requests for additional information provided in this letter are issued pursuant to the program reporting requirements set forth at 40 C.F.R. § 233.52, as well as described in the Memorandum of Agreement between our two agencies regarding Florida's CWA 404 program.

The EPA's specific comments, questions, and requests for additional information regarding the annual report are enclosed. In accordance with the requirements set forth in 40 C.F.R. § 233.52(e), FDEP must finalize the annual report, incorporating and/or responding to the EPA's comments, and transmit the final report to the EPA within 30 days of receipt of this letter.

In addition to identifying issues and additional information needs related to the annual report, consistent with our oversight role, the EPA is taking this opportunity to express our concerns with FDEP's implementation of its CWA 404 program. This letter identifies those matters related to FDEP's CWA 404 program as well as issues related to the annual report. The EPA requests that FDEP work with us to set a time to discuss these matters at FDEP's earliest convenience.

- **FDEP's continued use of the vacated Navigable Waters Protection Rule.**
  FDEP continues to use the vacated Navigable Waters Protection Rule (NWPR) for interpreting waters of the United States in the implementation of its CWA 404 program. As outlined in our letters dated December 9, 2021, and January 31, 2022, the CWA and

its implementing regulations, as well as Florida's statute and regulations, require Florida to implement its program consistent with the definition of "waters of the United States," which the EPA and the U.S. Army Corps of Engineers (Corps) currently interpret to be the pre-2015 Rule regulatory regime following vacatur of the NWPR.

- **FDEP's Inconsistent Documentation for No Permit Required determinations.**
  FDEP's OCULUS database does not consistently include documentation that supports No Permit Required (NPR) determinations made by FDEP. The EPA is also unaware of any specific procedures that FDEP uses for making these determinations. FDEP should ensure that all previously-issued and all future NPR decisions are fully supported and documented in the OCULUS database. The EPA requests that FDEP develop procedures for processing and documenting NPR decisions and provide those procedures to EPA within 45 days.

- **Inconsistent Documentation of FDEP's joint coordination with the Corps.**
  FDEP's OCULUS database does not consistently include complete documentation regarding FDEP's coordination with the Corps, pursuant to the joint coordination procedures set forth in Section III of the Memorandum of Agreement between FDEP and the Corps (FDEP-Corps MOA). For any projects in assumed waters for which FDEP is coordinating with the Corps, FDEP should routinely upload to OCULUS the documentation of the coordination that was conducted and any final determination.

- **Lack of Documentation of correspondence with other resource agencies.**
  FDEP's OCULUS database also does not appear to include correspondence exchanged with other resource agencies for the respective project files regarding measures taken to ensure protection of endangered species. For any projects for which such correspondence has been issued, FDEP should routinely upload such documents into OCULUS to provide the public access to this information to inform its review of proposed projects noticed by FDEP.

- **Support on the EPA's preparation of a Biological Evaluation.**
  Pursuant to the Endangered Species Act (ESA), the EPA is in the process of preparing a Biological Evaluation regarding Florida's CWA 404 program and is having discussions with the National Marine Fisheries Service to help in that preparation. The EPA anticipates that assistance from FDEP will be important in facilitating the completion of the ESA consultation.

- **Multi-phase projects and reissuance of permits.**
  Florida must ensure that the issuance of public notices for multi-phase projects and the scope of review for the reissuance of permits and for all phases of multi-phase projects is consistent with federal regulations, including the 404(b)(1) Guidelines.

- **Public participation and access to judicial review.**
  Florida must ensure its program provides for access to judicial review and the CWA requirements for public participation are met.

- **Issuance of after-the-fact permits**
  Florida should not issue an after-the-fact permit for unauthorized discharges prior to resolution of any enforcement matters.

With the goal of facilitating coordination, transparency, and oversight, and to identify any potential resource issues, the EPA would like to discuss with FDEP the inclusion of the following information as part of Florida's future annual reporting process pursuant to 40 C.F.R. § 233.52:

- Quantification of staffing levels, including the total number of FDEP Full Time Equivalent (FTE) positions that are implementing the CWA 404 program, a breakdown of staffing levels for processing permit applications and conducting compliance and enforcement, and staff vacancy rates;

- Criteria used by FDEP for determining appropriate staffing levels;

- Demonstration of actions taken to protect federally-listed endangered species including a quantification of any critical habitat that was removed or reduced and any takings of federally-listed species;

- Activities associated with internal auditing and training regarding the delineations of waters; and

- Clarification and demonstration of how FDEP's CWA 404 program coordinates with other federal and federal-state water related planning and review processes to ensure consistency with the CWA and other applicable federal programs.

If you have any questions or wish to discuss these matters, please contact me, or have a member of your staff contact Ms. Jeaneanne M. Gettle, Director of the Water Division at gettle.jeaneanne@epa.gov or 404-562-8979.

Sincerely,

FREDERICK THOMPSON
Digitally signed by FREDERICK THOMPSON
Date: 2022.05.23 12:34:58 -04'00'

Frederick J. Thompson
Acting Deputy Regional Administrator
*Performing the functions and duties of the Regional Administrator for this matter.*

Enclosure

ENCLOSURE: Assessment of Florida's 3/24/2022 Draft Annual Report

The specific comments that follow are organized under the same headings that are included in the Florida Department of Environmental Protection's (FDEP) annual report.

## *Executive Summary*

FDEP should remove the footnote that states Florida reserves the right to object to the inclusion of information that FDEP interprets as exceeding the scope of the information required by federal law and agreed upon in the Memorandum of Agreement (MOA) between the EPA and FDEP. While the reported activities may appropriately be limited to the agreed upon timeframe set forth in the MOA, the annual report should be forward-looking regarding any issues or problems identified during the reporting period, including any planned improvements or adjustments to Florida's CWA 404 program to address such issues or problems. In addition, the specific program elements of the annual report that are specifically cited in 40 C.F.R. § 233.52 are not an exhaustive list of information that can be provided in the annual report and do not represent all of the elements of Florida's approved CWA 404 program. The annual reporting process provides an opportunity for the EPA and the public to understand all elements of FDEP's administration of its CWA 404 program and how FDEP intends to proceed with its program implementation beyond the reporting period. Further, the EPA in its oversight capacity may request additional information at any time during FDEP's administration of the CWA 404 Program.

## *Public Participation*

The draft annual report did not include some of the information previously requested by the EPA via email correspondence dated October 14, 2021, and by letter dated November 12, 2021. FDEP must include this information in its final annual report, as follows:

- Description of whether the public has raised concerns about the sufficiency of information provided in the public notices, and if so, measures FDEP is taking to address these concerns; and

- Description of whether the project files that FDEP routinely uploads into OCULUS include copies of correspondence exchanged between FDEP and other resource agencies regarding the protection of federally-listed endangered or threatened species (i.e., the Florida Fish and Wildlife Conservation Commission (FWCC), the U.S. Fish and Wildlife Service (USFWS), and the National Marine Fisheries Service).

To the extent correspondence exchanged with other resource agencies has not been routinely uploaded into OCULUS for the respective project files, FDEP should routinely upload such documents in order to provide the public access to information that can help inform their review of proposed projects noticed by FDEP.

ENCLOSURE: Assessment of Florida's 3/24/2022 Draft Annual Report

## *An Assessment of the Cumulative Impacts of the State's Permit Program on the Integrity of the State Regulated Waters*

Interpretation of the Definition of "Waters of the United States"

The annual report states that, "Florida is working cooperatively with EPA to navigate the changing definitional regimes of [waters of the United States (WOTUS)] that have arisen after this reporting period and is committed to administering its assumed CWA 404 program in accordance with the requirements of the Clean Water Act and regulations promulgated thereunder." FDEP is currently using the vacated Navigable Waters Protection Rule (NWPR) to interpret the definition of WOTUS in its administration of the CWA 404 program, which is inconsistent with the requirements of the CWA. The CWA and its implementing regulations, as well as Florida's statute and regulations, require Florida to implement its program consistent with the definition of WOTUS, which the EPA and the U.S. Army Corps of Engineers (Corps) interpret to be the pre-2015 Rule regulatory regime following vacatur of the NWPR. FDEP's current interpretation of WOTUS creates a situation whereby FDEP's CWA 404 program is narrower in scope than contemplated under the CWA. To address this inconsistency with the CWA, the EPA is objecting to projects proposed by FDEP, requiring permit conditions to ensure consistency with the CWA, and requiring FDEP and the permit applicants to spend additional time and resources to address the objections. This leads to inefficiency and confusion, specifically, potential inconsistencies between federal and state actions, inefficiencies in FDEP's program implementation, confusion on the part of the regulated community and the public, and most importantly, insufficient protections for the quality of the nation's waters. If the State does not enforce CWA 404 requirements in waters not covered by NWPR, the lack of enforcement could lead to suits brought by citizens or potential enforcement by the EPA.

No Permit Required Determinations

The draft annual report did not include some of the information about No Permit Required (NPR) determinations previously requested by the EPA by email correspondence dated October 21, 2021, and by letter dated November 12, 2021. FDEP must provide additional information regarding each of the NPR actions presented in Table 1 in the annual report to clarify whether the NPR action was based on a WOTUS determination[1] or other reasons (e.g., no impacts to state waters as defined by 62-340, F.A.C.). For NPR actions based on a WOTUS determination, FDEP should also clarify whether a Certified Wetland Evaluator (CWE) conducted a site visit to verify the proposed jurisdictional waters. If FDEP needs additional time to provide this information beyond the 30-day period when the final annual report is due, FDEP may provide this information under separate cover within 60 days.

EPA staff reviewed the available information in FDEP's OCULUS database for eleven randomly selected NPR determinations that were listed in Table 1. Available documentation for the majority of those project files did not fully demonstrate the basis for the respective determinations. Specifically, among the projects for which an applicant requested a WOTUS jurisdictional determination, the majority of those did not include documentation demonstrating

---

[1] The Navigable Waters Protection Rule was effective during the reporting period for FDEP's annual report (i.e., December 22, 2020 through June 30, 2021).

that a CWE conducted a site visit to verify the accuracy of the proposed jurisdictional waters. For one of the projects reviewed, FDEP's determination that no wetlands were present appeared to be inconsistent with the applicant's assessment that wetlands were present without any explanation of the discrepancy.

FDEP must fully document its basis for issuing NPR decisions and ensure such documentation is readily available to the EPA and the public. FDEP should ensure that all previously-issued and all future NPR decisions are fully supported and documented in its OCULUS database.

For any proposed jurisdictional WOTUS determination proposed by an applicant (i.e., jurisdictional challenges from an applicant, as characterized by the annual report), a CWE must conduct a site visit to verify the jurisdiction consistent with the requirements of Florida's CWA 404 program. FDEP's CWA 404 program requires that permitting decisions that are based on a WOTUS determination, including decisions that a permit is not required, are verified by a site visit conducted by a CWE and consistent with the federal definition of WOTUS.

Compensatory Mitigation for State 404 Permits

FDEP should clarify in the annual report that the Uniform Mitigation Assessment Method (UMAM) scores presented in the tables in Appendix 1 were verified to reflect a reasonably accurate accounting of loss and compensation and that the compensation provided for the permits is adequate to fully mitigate impacts.

***Identification of Areas of Particular Concern and/or Interest within the State***

FDEP's annual report states that no areas of particular concern and/or interest were identified during this reporting period. The EPA received correspondence from multiple third parties during the reporting period regarding proposed oil drilling in the vicinity of Big Cypress National Preserve, and we understand that FDEP also received communication from at least some of these third parties. FDEP's final annual report should include this item and any other items raised by the EPA, other federal entities, the regulated community and/or the public during the reporting period.

FDEP's annual report also references coordination with the Corps regarding the use of the Retained Waters List GIS Layer. Based on the EPA's review of the information in OCULUS for permitting decisions made by FDEP during the reporting period, we have not seen documentation of the coordination with the Corps regarding permitting decisions made in assumed waters that are in proximity to waters retained by the Corps. For any projects in assumed waters for which FDEP is coordinating with the Corps, pursuant to the joint coordination procedures set forth in Section III of the Memorandum of Agreement between FDEP and the Corps, FDEP should routinely upload to OCULUS the documentation of the coordination that was conducted and any final determination. FDEP should also update OCULUS to reflect any actions taken on prior permits.

ENCLOSURE: Assessment of Florida's 3/24/2022 Draft Annual Report

### *An Estimate of Extent of Activities Regulated by General Permits*

For future annual reports FDEP should provide additional information about the type of restoration activities, the type of enhancement activities, and the type of creation activities that were covered under the general permit for such activities pursuant to 62-331.225.

### *The Number of Violations Identified and Number and Nature of Enforcement Actions Taken and The Number of Suspected Unauthorized Activities Reported and Nature of Action Taken*

Regarding the statement in this section that "dock complaints were not included because docks are not typically regulated under the State 404 Program," FDEP should provide additional information that clarifies this statement and at a minimum address whether the subject of these complaints are referencing waters assumed by Florida or retained by the Corps.

FDEP should provide additional information that clarifies whether the "total suspected unauthorized activities with confirmed violations" from Table 9 represents the total number of violations during the reporting period.

FDEP should expand the reported information in Table 9 and/or Table 10 to include the disposition of all suspected violations during the reporting period including:

- activities that were determined to be violations, and the nature of the action taken;

- activities that were determined to not be violations, and the nature of the action taken; and

- activities that are still subject to investigation.

FDEP should expand the reported information in Table 10 to include the following additional categories of potential FDEP responses to violations, regardless of whether the reported number is zero, to help the public understand all possible responses FDEP may pursue:

- Notices of Violation issued;

- Short Form Consent Orders;

- Long Form Consent Orders;

- Settlement Agreements;

- Penalties Assessed;

- Penalties Collected; and

- Post-Enforcement Permits issued.

ENCLOSURE: Assessment of Florida's 3/24/2022 Draft Annual Report

### *Number of Permit Applications Received but not yet Processed*

FDEP should characterize whether the reported backlog is anticipated to increase, decrease, or remain level, and describe whether FDEP has any specific plans or strategies for managing permit backlog.

### *Staff Training*

FDEP should provide additional details regarding the content of the weekly training webinars that were conducted during the reporting period.

### *Historical, Cultural, and Tribal Resources*

The draft annual report did not include some of the information previously requested by the EPA by email correspondence dated October 14, 2021, and by letter dated November 12, 2021. FDEP should include this information in its final annual report, as follows:

- Description of the number of instances where FDEP received specific comments during the public comment period on potential effects to historic/cultural resources; and

- Description of any recommendations received from the State Historic Preservation Officer, the Tribal Historic Preservation Officer, or Indian Tribes during FDEP's initial review of the application.

### *Listed Species*

The draft annual report did not include some of the information previously requested by the EPA by email correspondence dated October 14, 2021, and by letter dated November 12, 2021. FDEP's annual report should explain whether there have been any instances where FDEP and/or the FWCC were not able to fully implement the provisions of the Memorandum of Understanding dated August 5, 2020, between FDEP, FWCC and USFWS. To the extent there have been such instances, please provide the details, any relevant supporting documentation and any lessons learned. In addition, the annual report should describe the challenges and/or improvements to coordination procedures that were discussed or addressed during the weekly meetings conducted by the Endangered and Threatened Species Technical Team.

### *Other Information*

FDEP should include the following additional information regarding staffing levels during the reporting period and requests that this information be provided in future annual reports:

- The total number of FDEP Full Time Equivalent (FTE) positions that are implementing the CWA 404 program including a breakdown of staffing levels for processing permit applications and conducting compliance and enforcement; and

ENCLOSURE: Assessment of Florida's 3/24/2022 Draft Annual Report

- The number of staff that received training regarding the requirements of CWA Section 404(b)(1) Guidelines, delineation of state waters pursuant to 62-340 F.A.C., WOTUS determinations, UMAM, or other relevant aspects of the CWA 404 program.