**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL
DIVERSITY, et al.,

     Plaintiffs,

     v.                                **CASE NO.** 1:21-cv-00119 (RDM)

U.S. ENVIRONMENTAL PROTECTION
AGENCY, et al.,

     Defendants.

## DECLARATION OF LISA RINAMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

I, Lisa Rinaman, make the following declaration:

1.     I am a resident of Jacksonville, Florida.

2.     I am competent to make this declaration. I provide this declaration based upon my personal and professional knowledge. I would testify to the facts in this declaration under oath if called upon to do so.

3.     I am a member of St. Johns Riverkeeper, and I am also employed by St. Johns Riverkeeper as the Riverkeeper.

4.     At 310 miles long, the St. Johns River is the longest river in the state of Florida and is a significant waterway for commercial and recreational use. It flows south to north and spans the northern half of the state on the eastern side.

5.     Through my work at St. Johns Riverkeeper, I have extensive experience advocating for the St. Johns River's water quality and health. My work includes holding regulatory agencies and polluters accountable, including investigating and reporting threats and

monitoring for permit violations; identifying and advocating for solutions to protect and restore the river; building coalitions across government entities, businesses, and the community to solve problems affecting the river; working with the media to highlight river-related issues; and educating the public about river related issues.

6.      Before being named Riverkeeper, I previously served in the St. Johns Riverkeeper Water Policy Group, where I advocated for water conservation and reuse policies that are more protective of our water resources.

7.      I also previously worked as a senior staff member for Jacksonville Mayor John Peyton, where I was instrumental in leading the effort to develop and implement irrigation, fertilizer, and Florida-friendly landscape ordinances to better protect the St. Johns River and local waterways.  I also played a key role in securing state funding for water quality improvements, organized Jacksonville's Manatee Protection Plan, and advocated for robust programs to fulfill the River Accord restoration plan for the Lower St. Johns River.

8.      I graduated with a Bachelor of Arts in Communications from the University of Arkansas in 1991.

9.      I have a deep and personal commitment to the protection and conservation of the St. Johns River.  I regularly enjoy recreating in the river, where I kayak, boat, swim, fish, bird-watch, and take photos with my husband and teenage boys.  I also regularly enjoy hiking and camping in the areas surrounding the river.  These are activities that members of St. Johns Riverkeeper also regularly partake in and enjoy.  These activities depend on there being a clean, pollution-free river whose waters are fresh and not depleted.

10. St. Johns Riverkeeper is a 501(c)(3) nonprofit with approximately 1,400 dues-paying members made up of businesses, families, single members. We also receive support and funding from foundations.

11. The core purpose of St. Johns Riverkeeper, for which my work is vitally intertwined, is to protect the river, tributaries, and watershed. In doing so, we are also protecting the habitat of all the species who depend on the river.

12. EPA's approval of Florida's application to assume control of section 404 permitting undermines St. John Riverkeeper's mission. Among other failings, when Florida submitted its application to EPA, it claimed it would not need to commit any new financial resources to the program. Additionally, the state program has no lawful plans to ensure that listed species are adequately protected, and analyses of section 404 permit applications issued by Florida would no longer include review under the National Environmental Policy Act ("NEPA") and consultation under section 7 of the Endangered Species Act ("ESA"), as they would if 404 authority remained with the U.S. Army Corps of Engineers instead.

13. Because section 404 permit applications processed by Florida do not undergo a NEPA analysis or site-specific ESA section 7 consultation, state 404 projects are subject to a far less rigorous environmental review, which is increasing risk of harm to the St. Johns River water quality and ecosystem.

14. Overdevelopment, overpopulation, reduced water quality, and loss of critical wildlife habitat would harm my and St. Johns Riverkeeper members' ability to enjoy this natural area.

15. The state's administration of this unlawful section 404 program is preventing St. Johns Riverkeeper from being able to monitor and engage in proposed permits to the same

degree that the federal program afforded us. As an organization, we heavily rely on federal review and analysis of projects that affect the river and its entire ecosystem.

16.    Because FDEP state assumption of the 404 program is in place, we are losing the protections that the federal law allows under the Clean Water Act, NEPA, and ESA. This means that there is no federal analysis or comment process on projects and permits under those laws. As an organization, we do not have the ability to take on every advocacy effort, so we rely on that federal review to evaluate those projects to protect the river. We can then review the information provided by those federal reviews to assess the impact of those projects, share that information with our members, and advocate for necessary protections. Our organization now suffers from losing that information.

17.    Our organization will be significantly harmed without these federal analyses because to advocate effectively, we will be required to hire our own experts in an attempt to otherwise assess and understand impacts of agency actions.

18.    One of the main tools St. Johns Riverkeeper uses to protect the river is the commenting process afforded by the NEPA. When there is a proposed agency action (such as a Corps 404 permit), we review the applications and documents; review applicable laws and regulations; determine the scope and effects it would have on the St. Johns, its tributaries, and watershed; and submit comment letters as needed. As with this case, we also engage in litigation when needed to carry out our organization's goals.

19.    Additionally, the environmental assessments and analyses required under NEPA are crucial to St. Johns Riverkeeper's ability to carry out its mission. We rely on this information that we otherwise would not have access to in order to fully and accurately understand the scope and impacts of a proposed agency action. In turn, we use this information

to educate our members about a proposal and how it impacts the river and their ability to utilize the river. This information is also vital for our advocacy, monitoring, and litigation efforts.

20.    Because Florida has assumed 404 wetlands permitting, we have lost NEPA review and the high-level of protections it affords for the environment and our water resources. The loss of crucial information is extremely detrimental to St. Johns Riverkeeper's ability to carry out its mission of protecting the river. And because of this loss, we would be required to hire our own experts to ascertain information previously provided under federal law. Experts costs thousands of dollars to retain, which is thousands of dollars that would otherwise go toward our programmatic goals. The loss of information from NEPA analyses will result in additional staff time to triage permits to identify harms to the river and additional costs in hiring experts.

21.    NEPA also provides our organization with an avenue for challenging 404 permits and ensuring better environmental analyses. St. Johns Riverkeeper is being harmed by the loss of federal court as a venue to challenge agency actions taken on section 404 permits. As with this case, our organization engages in federal court litigation as a tool to advocate for the river and oppose actions that would harm it. Without federal court access to challenge certain permits, we are now required to bring permit challenges in state court before the Division of Administrating Hearings ("DOAH"). Because legal proceedings in front of DOAH do not involve records review from an administrative record, St. Johns Riverkeeper would be required to spend money to hire expert witnesses if it were to bring a legal challenge. Factoring in the time and costs to build a case from the ground up in state court, one single challenge could cost upwards of several hundreds of thousands of dollars, which represents 35% of our annual operating budget. We either have to fundraise in order to cover additional costs to litigate, which would be a significant drain on our time and resources with no guarantee of success; divert

resources to cover these costs that would otherwise cover other items in our budget; or be foreclosed completely from this avenue to protect the river.

22.     Engaging in state court litigation would also risk St. Johns Riverkeeper's exposure to a mandatory "fee-shifting" provision, in which we would risk being liable for the costs and fees to engage in litigation, costs and fees that we would not be subject to if Florida was not allowed to assume the 404 program.  Such a fee-shifting provision would further diminish our ability to engage in litigation, because we would be required to weigh this financial risk in addition to the above costs, regardless of how strong our claim might be.

23.     Assuming we would be able to overcome the steep barriers to litigating a case in state court, St. Johns Riverkeeper might still be precluded from challenging a proposal or action in state court as a result of different legal requirements under state versus federal law.  It is my understanding that under Florida law, we would be required to show harm to a significant number of our members to be able to bring a claim, rather than to just one member under federal law.

24.     St. Johns Riverkeeper was also harmed by Florida's incomplete application, which did not include the technical assistance process the state proposed to use to ensure state permits will not jeopardize ESA-protected species.  In doing so, the application did not address how ESA-protected species review would occur, how a no-jeopardy determination would be made, or relevant and important information about the take of listed species.  While Florida's application referred to a "technical assistance" process that it said would be described in "an anticipated biological opinion," the biological opinion containing that information was not part of the application, frustrating St. Johns Riverkeeper's ability to analyze and comment on the process.  Florida relied on this missing information when asserting that it complied with the

Clean Water Act's Section 404(b)(1) Guidelines to protect listed species and make a finding of no jeopardy. Without being able to review these documents, it was impossible for St. Johns Riverkeeper to comment on whether the state's plan would in fact protect listed species.

25.     We were also harmed by the Corps creation and the state's use of an incomplete list of assumed versus retained waters. This harmed St. Johns Riverkeeper's ability to carry out its organizational mission. The incomplete list did not include the headwaters of the St. Johns River, which is a series of lakes and wetlands that are hydrologically connected to the river. Without the full list of retained waters, we were unable to educate our members about the impacts and decision-making process of such a momentous shift in Florida wetlands. And the headwaters that were not retained are now subject to the state's flawed 404 program.

26.     The state's enforcement of its section 404 program also harms St. Johns Riverkeeper. St. Johns Riverkeeper engages in enforcement activities to protect the river. This includes investigating and reporting pollution, monitoring for permit violations (including dredge and fill permits), and ensuring that environmental laws and regulations are implemented and enforced. To that end, we patrol the river regularly in our organization's boat, the Kingfisher, which is captained by our patrol unit. When appropriate, we refer issues to the authorities for investigation and criminal prosecution, for which we provide any necessary assistance. The state program, however, does not include the same enforcement standards and requirements as federal law.

27.     For example, in 2021, St. Johns Riverkeeper was contacted about a construction site on Pottsburg Creek that was pumping muddy water into the adjacent wetlands and that was failing to construct permit-required siltation fences to control sedimentation released into the waterways. See Pictures (Att. A). We investigated these conditions along with the neighbors,

7

who had reported the violation to FDEP.  Overall, it took months for FDEP to issue a consent order requiring the construction site to stabilize the site to ensure no further sedimentation reached the adjacent wetlands.  Because FDEP did not move with necessary speed to protect these wetlands, more polluted water being released into wetlands than should have been (over 1,000 times the amount allowed by law).

28.    My personal recreational and aesthetic interests as a member of St. Johns Riverkeeper are also being harmed by the state 404 program because the state is considering permits that would impact the headwaters of the St. Johns River.  One such project is Mattamy Homes at Fiske Blvd, which would permit Phase 1 of a project to construct and develop an approximately 246-acre site.  The permit applicant states that the project will impact 22.64 acres of jurisdictional wetlands, but the applicant used the vacated Trump definition of waters of the United States to make that assessment.  The project will also likely impact wading birds because the current site contains habitat for nesting and migratory birds.  Permit Application, ST404_398515 (Att. B); Email from FDEP to Commenting Agencies (Sept. 2, 2022) (Att. C); RAI Response, ST404_398515 (Att. D).

29.    Destruction of these wetlands so close to St. Johns River headwaters and construction of a housing development will impact the St. Johns River and my ability to enjoy recreating on the River.  The project is also concerning because its impact on wading and migratory birds, which will likely harm my interest in birdwatching on the St. Johns River.

30.    As a plaintiff to this case and for the reasons stated in this declaration, it is St. Johns Riverkeeper's position that Florida's 404 program is unlawful and will result in harms to the river that our organization strives to protect.  This was reflected in St. Johns Riverkeeper's advocacy during the state's 404 application process, during which I was engaged in our review

DocuSign Envelope ID: 6A30EF86-D439-48DD-9246-F86584EEFCD4

of Florida's proposal during EPA's public comment period and participated in the development of our comments in opposition to the program.

31.    Because the EPA granted the state's application to take over the 404 program, the state has been applying and will continue to apply its unlawful program for permits that will destroy wetlands and risk significant harm to listed species.  And our organization will now have substantial difficulty furthering our mission because of the significant barriers for advocacy, as discussed above.

32.    My recreational and aesthetic interests are also being harmed by the state's operation of the 404 program because the state is now considering permits that would affect the water quality and habitat in St. Johns River headwaters.  My ability to enjoy boating, kayaking, swimming, fishing, bird-watching, and photography on the St. Johns River depends on a healthy river with necessary water supply.  These permits threaten the St. Johns River water quality and supply.

33.    Absent EPA's unlawful approval of the state 404 program, St. Johns Riverkeeper would continue to enjoy rights and protections guaranteed by federal law, including participation in the lawful 404 program administered by the U.S. Army Corps of Engineers for more than 40 years in Florida, the public participation process afforded by NEPA, the protections afforded to species through the ESA whenever a project may affect a listed species, and the ability to enforce all these rights in federal court, where St. Johns Riverkeeper can meet more permissive standing requirements and afford to litigate based on an administrative record, unlike the undue barriers that litigation in state court present.

34.    Florida's assumption of the Section 404 program has and will lead to greater environmental harms that irreparably harms St. Johns Riverkeeper's programmatic operations

DocuSign Envelope ID: 6A30EF86-D439-49DD-9246-F86584EEFCD4

and will also harm my and our members' enjoyment and use of the river and the beautiful and unspoiled natural areas that surround it.

35.     A ruling in Plaintiffs' favor invalidating EPA's approval of Florida's program would redress St. Johns Riverkeeper's harms by restoring 404 authority over assumable waters to the Corps, restoring Section 7 and NEPA review to projects, and ensuring that all requirements of federal law are met and can be enforced in federal court.  A ruling in Plaintiffs' favor on our ESA claims would redress St. Johns Riverkeeper's harms by requiring EPA to reinitiate consultation with USFWS (and to consult with NMFS) to fully consider the effects of Florida's application on listed species and critical habitat; require the wildlife agencies to produce legally sufficient biological opinions that properly analyze the impact to listed species and critical habitat, set limits on incidental take, and impose reasonably prudent measures and triggers for reinitiation that are protective under the ESA; and prohibit EPA, the state, and state permittees from receiving incidental take coverage from an unlawful "technical assistance" process.

I declare under penalty of perjury that the foregoing is true and correct.


Executed this 24 day of February 2023.


DocuSigned by:

*Lisa Rinaman*

42AEE8821F824DB...

Lisa Rinaman
Riverkeeper at St. Johns Riverkeeper
2800 University Blvd N
Jacksonville, FL 32211

# ATTACHMENT A





# ATTACHMENT B

# Application for
# Individual and Conceptual Approval
# Environmental Resource Permit,
# State 404 Program Permit,
# and Authorization to Use State-Owned
# Submerged Lands

Florida Department of Environmental Protection/

Water Management Districts

## Effective 12/22/2020



**Form 62-330.060(1)** - Application for Individual and Conceptual Approval Environmental Resource Permit, State 404 Program Permit and Authorization to Use State-Owned Submerged Lands Incorporated by reference in subsection 62-330.060(1), F.A.C.(12/22/2020)

**Instructions for Use of This Form:**

This form is designed to assist you in submitting a complete application. All applications must include Section A- General Information for All Activities. Sections B through H list typical information that is needed based on the proposed activities and are only required as applicable. Part 1-C of Section A will guide you to the correct sections needed based on your proposed activities. Applicants are advised to consult Chapter 62-330, F.A.C., and the Environmental Resource Permit Applicant's Handbooks Volumes I and II for information regarding the ERP permitting process and requirements while preparing their application. Internet addresses for Chapter 62-330, F.A.C., and the Applicant's Handbook, Agency contact information, and additional instructions for this form can be found in Attachment 1.

# What Sections of the Application Must I Fill Out?

| Type of Activity | Section A | Section B | Section C | Section D | Section E | Section F | Section G | Section H | Section I |
|---|---|---|---|---|---|---|---|---|---|
| Fill in wetlands or waters for a single family residence? | Y | Y | N | N | N | N | N | N | Y, if in assumed waters |
| Docks, shoreline stabilization, seawalls associated with a single family residence? | Y | Y | N | N | N | Y, as needed | N | N | Y, if in assumed waters |
| Wetland impacts (other than association with an individual residence)? | Y | N | Y | N | N | N | N | N | Y, if in assumed waters |
| Boating facilities, a marina, jetty, reef, or dredging? | Y | N | Y | Y | N | Y, as needed | N | N | Y, if in assumed waters |
| Any work on state owned submerged land? | Y | N | Y | N | N | Y | N | N | Y, if in assumed waters |
| Construction of a stormwater management system? | Y | N | Y, as needed | N | Y | N | N | N | N |
| Constructing a mitigation bank? | Y | N | Y | N | Y, as needed | N | Y | N | Y, if in assumed waters |
| Creating a mine? | Y | N | Y, as needed | N | N | N | N | Y | Y, if in assumed waters |

**If you have any questions, or would like assistance completing this form, please contact the staff of the nearest office of either the Florida Department of Environmental Protection (DEP) or a Water Management District (WMD) (see Attachment 2).**

# Section A:
# General Information for All Activities

## Part 1: Name, Application Type, Location, and Description of Activity

A.     Name of project, including phase if applicable:  **Mattamy Homes at Fiske Blvd**

B.     This is for (check all that apply):

☒     Construction or operation of **new** works, activities and/ or a stormwater management system

☐     **Conceptual Approval** of proposed works, activities and/ or a stormwater management system

☐     Modification or Alteration of **existing** works activities and / or a stormwater management system. Provide the existing DEP or WMD permit #, if known: _____     Note: Minor modifications do not require completion of this form, and may instead be requested by letter in accordance with section 6.2 of Applicant's Handbook Volume I.

☐     **Maintenance or repair** of works, activities and/ or stormwater management system previously permitted by the DEP or WMD. Provide existing permit #, if known: _____

☐     Abandonment or removal of works, activities and/ or stormwater management system Provide existing DEP or WMD permit #, if known: _____

☐     Operation of an **existing unpermitted** work, activity, and/or stormwater management system.

☐     Construction of additional phases of a permitted work, activity, or system.

     Provide the existing DEP or WMD permit #, if known: _____

☒     A State 404 Program authorization:

     ☐ Exemption   ☐ General Permit   ☒ Individual Permit

     If requesting an Exemption or General Permit provide Rule #, if known:

     ☐  **By checking this box**, I hereby voluntarily waive, in accordance with Rule 62-330.090(8), F.A.C., the agency action deadlines in section 5.5.3 of Volume I in the event my project also requires a State 404 Program authorization (other than an exemption) under Chapter 62-331, F.A.C., and request that the agency actions for the ERP and State 404 Program authorizations be issued at the same time. (This is strongly recommended to ensure consistency, and to reduce the potential need for project modifications to resolve inconsistencies that may occur when the agency actions are issued at different times.) If this box is checked and the Agency(ies) determines that no State 404 Program authorization is required, the Agency will continue to abide by section 5.5.3 of Volume I.

**Form 62-330.060(1)** - Application for Individual and Conceptual Approval Environmental Resource Permit, State 404 Program Permit and Authorization to Use State-Owned Submerged Lands Incorporated by reference in subsection 62-330.060(1), F.A.C.(12/22/2020)

C. **List the type of activities proposed. Check all that apply**, **and provide the supplemental information requested in each of the referenced application sections.** Please also reference Applicant's Handbooks I and II for the type of information that may be needed.

☐    Activities associated with one single-family residence, duplex, triplex, or quadruplex that do not qualify for an exemption or a Noticed General Permit: **Provide the information requested in Section B. Do not complete Section C.**

☒    Activities within wetlands or surface waters, or within 25 feet of a wetland or surface water, (not including the activities associated with an individual single-family residence). *Examples include dredging, filling, outfall structures, docks, piers, over-water structures, shoreline stabilization, mitigation, reclamation, restoration/ enhancement.* **Provide the information requested in Section C.**

☐    Activities within navigable or flowing surface waters such as a multi-slip dock or marina, dry storage facility, dredging, bridge, breakwaters, reefs, or other offshore structures: **In addition to Section C, also provide the information requested in Section D.**

☐    Activities that are (or may be) located within, on or over state-owned submerged lands (See Chapter 18-21, F.A.C. https://www.flrules.org/gateway/ChapterHome.asp?Chapter=18-21): **In addition to Section B or C, also provide the information requested in Section F**

☒    Construction or alteration of a stormwater management system serving residential, commercial, transportation, industrial, agricultural, or other land uses, or a solid waste facility (excluding mines that are regulated by DEP). **Provide the information requested in Section E.**

☐    Creation or modification of Mitigation Bank (refer to Chapter 62-342, F.A.C. https://www.flrules.org/gateway/ChapterHome.asp?Chapter=62-342): **Provide the information requested in Section G.**

☐    Mines (as defined by in Section 2.0 of Applicant's Handbook Volume I) that are regulated by the DEP: **Provide the information requested in Section H.**

☐    Other, describe: _____    Please contact the Agency to determine which additional sections of the application are needed. See Attachment 2 for Agency contacts.

D.    Describe in general terms the proposed project, system, works, or other activities. For permit modifications, please briefly describe the changes requested to the permit: **This project consists of the construction and development of a +/- 246 acre site to include Townhouses and detached single-family units with associated drainage, utilities and roadway improvements. This will be Phase 1. Future Phases of the project will include Multi-Family units and commercial outparcels along Fiske Blvd. This application will be a master permit that will cater for the entire development.**

E.    Project/Activity Street/Road Address or other location (if applicable): **4151 FISKE TRL CELLTW**
City: **Rockledge**                    County(ies)**Brevard**            Zip: **32955**
Note: For utility, road, or ditch/canal activities, provide a starting and ending point using street names and nearest house numbers or provide length of project in miles along named streets or highways.

F.    Project location map and Section, Township, and Range information (use additional sheets if needed):

**Please attach a location map showing the location and boundaries of the proposed activity in relation to major intersections or other landmarks. The map should also contain a north arrow and a graphic scale; show Section(s), Township(s), and Range(s); and must be of sufficient detail to allow a person unfamiliar with the site to find it.**

Land Grant name, if applicable:

Section(s):   19          Township:   25S          Range:   36E

G.    Latitude (DMS)                 Longitude (DMS)                        (Taken from central location of the activity). Explain source for obtaining latitude and longitude (i.e. U.S.G.S. Quadrangle Map, GPS, online resource):

H.    Tax Parcel Identification Number(s): **25 3620-00-250, 2510453, 2510480, 2510481, 2521572, 252160**

      [Number may be obtained from property tax bill or from the county property appraiser's office; if on multiple parcels, provide multiple Tax Parcel Identification Numbers]

I.    Directions to Site (from major roads; include distances and landmarks as applicable): **From Interstate 95 (I-95), take exit 195 towards Fiske Blvd, travel southbound of S-Fiske Blvd. Turn Left on Fiske Trail after 0.5 miles. The site is located at the entrance of Fiske Trail on the south west corner of Fiske Boulevard and I-95.**

J.    Project area or phase area:      **246.16**  acres

K.    Name of waterbody(ies) (if known) in which activities will occur or into which the system will discharge:

| Receiving Waterbody | Class Type | Outstanding Florida Water | Aquatic Preserve |
|---|---|---|---|
| Saint Johns River | III Fresh | no | no |

**The following questions (L-N) are not applicable to activities related to a single-family residence, including private single-family residential docks, piers, seawalls or boat ramps.**

L.    Is it part of a larger plan of development or sale?          ☐ yes ☒ no

M.    Impervious or semi-impervious area excluding wetlands and other surface waters (if applicable): **51.05** acres or              square feet

N.    Volume of water the system is capable of impounding (if applicable):

Normal Pool:                acre-feet. Depth                ft.
Maximum Pool:               acre-feet. Depth                ft.

# Part 2: Supplemental Information, and Permit History

A. Is this an application to modify an existing Environmental Resource Permit, or to construct or implement part of a multi-phase project, such as a project with a Conceptual Approval permit?  ☐ Yes  ☒ No *If you answered "yes", please provide permit numbers below:*

| AGENCY | DATE | PERMIT/ APPLICATION NO. | PROJECT NAME |
|--------|------|-------------------------|--------------|
|        |      |                         |              |

B. Indicate if there have been any **pre-application meeting(s)** with the DEP, WMD, or delegated local government, or other discussions, meetings, or coordination with other stakeholders or agencies about the proposed project, system or activity. If so, please provide the date(s), location(s) of the meeting, and the name(s) of Agency staff that attended the meeting(s):

| AGENCY | DATE | LOCATION | MEETING ATTENDEES |
|--------|------|----------|-------------------|
| SJR | 26-APR-22 | Microsoft Teams | Richard Lee |

C. **Attach a depiction (plan and section views), which clearly shows the works or other activities proposed to be constructed.** Use multiple sheets, if necessary, a scale sufficient to show the location and type of works, and include a north arrow and a key to any symbols used. **Specific information to be included in the plans is based on the activities proposed and is further described in Sections B-H.** However, supplemental information may be required based on the specific circumstances or location of the proposed works or other activities.

D. Processing Fee: **Please submit the application processing fee along with this application form and supplemental information.** Processing fees vary based on the size of the activity, the type of permit applied for, and the reviewing Agency. Please reference Appendix D of Applicant's Handbook Volume 1 to determine the appropriate fee.

## Part 3:  Applicant and Associated Parties Information

Instructions: Please complete the following sections. For corporations, list a person who is a registered agent or officer of the corporation who has the legal authority to bind the corporation.

| A. Applicant (Entity Must Have Sufficient Real Property Interest) ☐ This is a Contact Person for Additional Information |||
|---|---|---|
| Name: Last: **Tucker** | First: **John F** | Middle: |
| Title: | Company: ||
| Address: **250 N-Orange Ave Suite 1500** |||
| City: **Orlando** | State: **FL** | Zip: **32801** |
| Home Telephone: **000-000-0000** | Work Telephone: **407 616 9554** ||
| Cell Phone: |||
| E-mail Address: **mike@bbdre.com** |||
| **Correspondence will be sent via email.** Check here to receive correspondence via US Mail:  ☒ |||

**B.   Land Owner(S) (If Different or in Addition to Applicant)**
☐ **Check here if land owner is also a co-applicant**

| Name: Last: **Tucker** | First: **John F** | Middle: |
|---|---|---|

| Title: | Company: |
|---|---|

| Address: **250 N-Orange Ave Suite 1500** |
|---|

| City: **Orlando** | State: **FL** | Zip: **32801** |
|---|---|---|

| Home Telephone:  **000-000-0000** | Work Telephone:  **407 616 9554** |
|---|---|

| Cell Phone: |
|---|

| E-mail Address: **mike@bbdre.com** |
|---|

| **Correspondence will be sent via email.** Check here to receive correspondence via US Mail:   ☒ |
|---|

**C. Operation and Maintenance Entity**          **(see Applicant's Handbook I, Section 12.3)**

| Entity Name: | Contact: Last: **Droor** | First: **Jon** | Middle: |
|---|---|---|---|

| Title: | Company: **Mattamy Homes** |
|---|---|

| Address: **2450 Maitland Center Parkway Suite 300** |
|---|

| City: **Maitland** | State: **FL** | Zip: **32751** |
|---|---|---|

| Home Telephone: | Work Telephone: **407-215-6264** |
|---|---|

| Cell Phone: |
|---|

| E-mail Address: **jon.droor@mattamycorp.com** |
|---|

| **Correspondence will be sent via email.** Check here to receive correspondence via US Mail:   ☐ |
|---|

**D. Co-Applicant (If Different or In Addition to Applicant and Owner)**

| Name: Last: **Droor** | First: **Jon** | Middle: |
|---|---|---|

| Title: **Manager** | Company: **Mattamy Homes** |
|---|---|

| Address: **2450 Maitland Center Parkway Suite 300** |
|---|

| City: **Maitland** | State: **FL** | Zip: **32751** |
|---|---|---|

| Home Telephone:  **407-215-6264** | Work Telephone: |
|---|---|

| Cell Phone: |
|---|

| E-mail Address: **jon.droor@mattamycorp.com** |
|---|

| **Correspondence will be sent via email.** Check here to receive correspondence via US Mail:   ☐ |
|---|

**E. Registered Professional Consultant**    ☒ **This is a contact person for additional information**

| Name: Last: **Petersen** | First: **Andrew** | Middle: |
|---|---|---|

| Title: | Company: **Bowman** |
|---|---|

| Address: **4450 W Eau Gallie Blvd Suite 144** |
|---|

| City: **Melbourne** | State: **FL** | Zip: **32934** |
|---|---|---|

| Home Telephone: | Work Telephone:  **321-255-5434** |
|---|---|

| Cell Phone: |
|---|

| E-mail Address: **apetersen@bowman.com** | | |
|---|---|---|
| **Correspondence will be sent via email.** Check here to receive correspondence via US Mail: ☐ | | |

| **F. Environmental Consultant**  ☒ **This is a contact person for additional information** | | |
|---|---|---|
| Name: Last: **Gough** | First: **Daniel** | Middle: |
| Title: **Manager** | Company: **Bio-Tech Consulting Inc.** | |
| Address: **3025 East South Street** | | |
| City: **Orlando** | State: **FL** | Zip: **32803** |
| Home Telephone: | Work Telephone: **407-894-5969** | |
| Cell Phone: | | |
| E-mail Address: **danny@bio-techconsulting.com** | | |
| **Correspondence will be sent via email.** Check here to receive correspondence via US Mail: ☐ | | |

| **G. Agent Authorized to Secure Permit (If Different from Consultant)**  ☐ **This is a contact person for additional information** | | |
|---|---|---|
| Name: Last: | First: | Middle: |
| Title: | Company: | |
| Address: | | |
| City: | State: | Zip: |
| Home Telephone: | Work Telephone: | |
| Cell Phone: | | |
| E-mail Address: | | |
| **Correspondence will be sent via email.** Check here to receive correspondence via US Mail: ☐ | | |

**If necessary, please add additional pages for other contacts and property owners related to this project.**

**H.  Real Property Interest**

a.  Permits are only issued to entities having sufficient real property interest as described in Section 4.2.3(d) of Applicant's Handbook Volume I**. Please attach evidence of the applicant's real property interest over the land upon which the activities subject to the application will be conducted, including mitigation areas (if applicable).** Refer to Sections 4.2.3(d)-(e) for sufficient real property interest documentation.

b.  For activities that require a recorded notice in accordance with rule 62-330.090(7), F.A.C., please provide either the complete legal description of the property or a copy of the pages of the document recorded in the public records that contains the complete legal description. If the land upon which the proposed activities are to occur is not owned by the applicant, the applicant must also provide copies of any right-of-way, leases, easements, or other legal agreement which authorizes the applicant to perform the activities on those lands.

**Additional Addresses**

| Applicant | |
|---|---|
| | , |

| Land Owner | |
|---|---|
| | , |

| Operation and Maintenance Entity | |
|---|---|
| | , |

| Registered Professional Consultant | |
|---|---|
| | , |

| Environmental Consultant | |
|---|---|
| | , |

| Agent | |
|---|---|
| | , |

| Compliance Entity | |
|---|---|
| | , |

| Consultant | |
|---|---|
| | , |

# ATTACHMENT C

**BaileyCutkomp, Laurie**

| | |
|---|---|
| **From:** | 404_DataEntry |
| **Sent:** | Friday, September 2, 2022 2:50 PM |
| **To:** | 'CompliancePermits@dos.myflorida.com'; 'ConservationPlanningServices@MyFWC.com'; 'Florida_404 @fws.gov' |
| **Cc:** | Lowenstein, Alicia; 'applicationsupport@sjrwmd.com' |
| **Subject:** | State 404 Permit App No. --SFI Individual / Associated ERP Permit App No. 183900 - 2 (SJRWMD) / Brevard County |

The above-referenced State 404 Program application was submitted to the Submerged Lands and Environmental Resources Program. We are currently processing the request as required by Chapters 253, 258, and 373, F.S. This application is being submitted for your review and comment.

Applicant Name: John F Tucker, Mattamy Homes

Project Name: Mattamy Homes at Fiske Blvd

Application Receipt Date: 8/31/22

Permit Application Link (available within 2 business days): https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_/gis-facility!search

Location Map Link (Clearly Depicting Project Boundaries): see link above

Project Location:
    Address: 4151 FISKE TRL CELLTW, Rockledge, FL 32955;
    Parcel ID: 25 3620-00-250, 2510453, 2510480, 2510481, 2521572, 252160;
    Section/Township/Range: 19 / 25S / 36E;
    Latitude/Longitude: 28.28856 N, -80.74349238 W

Project Description: This project consists of the construction and development of a +/- 246 acre site to include Townhouses and detached singlefamily units with associated drainage, utilities and roadway improvements. This will be Phase 1. Future Phases of the project will include Multi-Family units and commercial outparcels along Fiske Blvd. This application will be a master permit that will cater for the entire development.

Project Size: 246.16 ac.

DEP requires your response in order to issue a permit. If you do not have adequate information to provide comments at this time, please return written questions and/or request for additional information by the below due date. The requested information will be incorporated into the DEP response to the applicant. If you have no questions at this time but require additional time to prepare final comments, please let us know you intend to provide comments.

DEP received the application information on 8/31/22. DEP must issue a response to the applicant within 30 days of receipt. Return your comments at least two days before the 30-day deadline to allow sufficient time for DEP to process the response.

Return your comments (referencing the applicant name and file number) to our office at the following email address: DEP_CD@dep.state.fl.us. If you have questions, please call us at (407) 897-4100.

Thank you.

# ATTACHMENT D

# Bio-Tech Consulting Inc.
## Environmental and Permitting Services

October 26, 2022


Alicia Lowenstein
**FDEP**
3319 Maguire Blvd, Suite 232
Orlando, Florida  32803

**Proj:**   **Fiske Road Property; Brevard County, Florida**
            **Parcel IDs #25-36-20-00-250, #25-36-20-00-268, #25-36-20-00-501,**
            **#25-36-20-00-751, #25-36-20-00-757 and #25-36-20-00-758**
            **Section 20, Township 25 South, Range 36 East**
            **(BTC File #525-54)**
**Re:**     **Request for Additional Information**
            **App. No. 398515-002-SFI**


Dear Ms. Lowenstein

The following are the responses to the District's Environmental comments in reference to the ERP for the above referenced project.  The District comments and responses are below:

1.      The Department must conduct a site visit to verify the delineation of wetlands and other surface waters onsite in accordance with Chapter 62-340, F.A.C. and perform an assessment of the proposed impacts using the Universal Mitigation Assessment Method in accordance with Chapter 62-345, F.A.C. The site visit has been scheduled for **December 5, 2022**. Please have the wetland boundary flagged for verification by staff in advance of the scheduled site inspection. Do not survey the limits of wetland and other surface water boundaries until the Department has verified the delineation. [Chapter 62-340, F.A.C.; Section 1.1, 404 Handbook]

**A site review to approve the wetland/surface water limits was conducted with Thomas Evans of the SJRWMD, who is CWE certified, on September 9/7/2022.  The reviewed and approved wetland/surface water limits are depicted on the attached site plan.**

Orlando: Main Office
3025 East South Street
Orlando, FL 32803

Jacksonville Office
11235 St Johns Industrial Pkwy N
Suite 2
Jacksonville, FL 32246

Tampa Office
6011 Benjamin Road
Suite 101-B
Tampa, FL 33634

Vero Beach Office
4445 North A1A
Suite 221
Vero Beach, FL 32963

Key West Office
1107 Key Plaza
Suite 259
Key West, FL 33040

Land & Aquatic Management
3825 Rouse Road
Orlando, FL 32817

407.894.5969
877.894.5969
407.894.5970 fax

info@bio-techconsulting.com        www.bio-techconsulting.com

*Alicia Lowenstein, FDEP*
*Fiske Road Property (BTC File #525-54)*
*Page 2 of 7*

2.  You have requested that the Department perform a Waters of the United States (WOTUS) jurisdictional determination on the subject property. To provide certainty, streamlining, and efficiency, the State will consider that any wetlands or other surface waters delineated in accordancewith Chapter 62-340, F.A.C., that are regulated under Part IV of Chapter 373, F.S. could be considered Waters of the United States, and will treat them as if they are, unless the applicant clearlydemonstrates otherwise [State 404 Program Applicant's Handbook, section 1.1]. In order to evaluateyour request, please complete and submit the attached form *"Information Required for a WOTUS Determination in State-assumed Waters,"* including listed maps and attachments, as applicable, to clearly demonstrate the wetlands delineated are not WOTUS in accordance with 40 C.F.R. 120.

**Please see attached WOTUS form and corresponding maps and attachments.**

> Please note: Accepting WOTUS jurisdiction over all wetlands and surface waters onsite may save significant review time since WOTUS determinations require extra processing steps, time, and review effort by the Department. If you would like to accept WOTUS jurisdiction for all wetlands and other surface waters onsite to ensure expeditious project review, please indicate that you no longer request that the Department perform a WOTUS determination.

**Based on the revised site plan boundary, all onsite wetlands/surface waters will be accepted as WOTUS.**

3.  Please provide pre-addressed, stamped envelopes and/or email addresses for each adjoining propertyowner. These will be used by the Department to send the public notice. Do not include a return address; it will be added by the Department. Envelopes should be #10 size and stamped with one, US Postal Service first-class forever stamp. [62-331.060(1)(c), F.A.C.]

**Envelopes will be delivered directly to the FDEP Central Office.**

4.  The proposed project has been sent to commenting entities for review and we are awaiting responsesfrom the: Florida Fish and Wildlife Conservation Commission, State Historic Preservation Office, Tribal Historic Preservation Office(s), US Fish and Wildlife Service. The Department will forward any requests for additional information from these entities upon receipt. Such requests will become part of this request for additional information. [404 Handbook, section 5.2 and 62-331.051(4), F.A.C.]

**Acknowledged.**



5.   Please provide a copy of your Environmental Resource Permit (ERP) or provide the ERP file number for the project. To address water quality review and consistency with the Coastal Zone Management Program, the State 404 Program authorization cannot be issued until the Environmental Resource Permit for the project is issued. If no ERP has been issued or applied for, we recommend that the State 404 Program application be withdrawn and that the application for the ERP and State 404 Permit be resubmitted. [62-331.070, F.A.C.]

**The SJRWMD ERP App. No. is 183900-2.**

6.   Please complete Section I of Form 62-330.060(1), attached, including all requested supporting documentation. [62-331.051(1), F.A.C.]

**Please see attached Section I of Form 62-330.060(1).**

7.   Please submit a detailed wetland and surface water impact map. The map should depict direct, secondary, and temporary impacts with an overlay of the proposed project layout. [62-331.053,F.A.C., 62-330.301(1)(i), F.A.C.]

**See attached FDEP Wetland Impacts Map.**

8.   No dredge or fill activity shall be permitted if there is a practicable alternative to the proposed activity which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences. Please provide an alternativesanalysis prepared in accordance with Section 62-331.053(1), F.A.C. and Appendix C of the 404 Handbook.

## FISKE ALTERNATIVES ANALYSIS

An evaluation of alternatives is required under Rule 62-331.053, F.A.C. for all jurisdictional activities. An evaluation of alternatives is required under the Section 404(b) (1) Guidelines for projects that include the discharge of dredged or fill material. 404 requires discussion of Purpose and Need, to Identify Alternatives, and determine practicability of alternatives if there is a less environmentally damaging practicable alternative.

To be practicable, an alternative must be available, achieve the overall project purpose, and be feasible when considering cost, logistics, and existing technology. The following Site Selection Criteria were used for evaluating alternatives:



*Alicia Lowenstein, FDEP*
*Fiske Road Property (BTC File #525-54)*
*Page 4 of 7*

**Table 1: Site Selection Criteria**

| Category | Comparison Matrix Criteria |
|---|---|
| **Availability** | • Existing zoning appropriate or potential for change<br>• Owned by applicant or available for purchase. |
| **Logistics** | • Sufficient size parcel (80-100 acres)<br>• Access from/to a primary roadway.<br>• Located within City of Rockledge<br>• Reasonable access to existing governmental services. |
| **Cost** | • Reasonable acquisition costs.<br>• Infrastructure cost does not exceed 15% of dwelling unit market value (Cost Burden)<br>• Residual Land Value in acceptable range<br>• Fiscal Impact – will the project generate enough annual revenue to the local government to pay for public services and other public benefits?<br>• Compensatory mitigation cost |
| **Environment** | • Fill in jurisdictional wetlands.<br>• Impacts to federally listed species<br>• Project would contribute to downstream flooding<br>• Project would degrade water quality |

## ALTERNATIVE SITE ANALYSIS

### NO ACTION ALTERNATIVE:

Access to the proposed development site is limited to South Fiske Boulevard which is the only public road that accesses the subject property, which runs along the project site's eastern boundary. Due to the size, location, and orientation of the wetlands and ditches (waters) that traverse the project site, the total avoidance of work affecting these waters of the U.S. is not practical. The applicant also was unable to identify an alternate site that would not incorporate the discharge of fill into waters of the United States. As such, the "no action" alternative would prevent the implementation of the project and the attainment of the project goals and objectives.

### OFF-SITE ALTERNATIVES:

In addition to the applicant's preferred property (Alternative 4), three (3) other potential sites were identified by the applicant. Of these, all three potential alternative sites were eliminated because



they did not meet the criteria in Table 1. These three alternative sites were evaluated further using the criteria in Table 1.

**Alternative 1 – Pluckerbaum Road**

The Pluckerbaum Road site was of sufficient size (148.2 acres) and has roadway access. The site is currently zoned for Agricultural land use, is not adjacent to existing infrastructure. Additionally, there are approximately 110-acres of on-site wetlands. The majority of these wetlands, and associated surface waters would be considered jurisdictional as they connect to navigable waters.

The property has been owned by the CG Reed Land Clearing, Inc. since 2002. The owner was approached about selling the property but an offer was not made as it was determined during due diligence that the best utilization for the site would be continued agricultural operations.

Given the widespread occurrence of wetlands, current zoning designation and lack of surrounding infrastructure, development potential for this site is severely restricted. Upon analysis of these factors, Alternative 1 was considered inferior to the Fiske property.

**Alternative 2 – Tucker Ranch**

The Tucker Ranch site is of sufficient size, has roadway access but no adjacent infrastructure. The site is currently zoned for Agriculture. Of the 130-acres, approximately 90-acres, 69% of the site, would be considered federally jurisdictional wetlands. Avoiding these wetlands would not be feasible as they are located throughout the site and not concentrated in one area.

The property owner was approached about selling the property but an agreed upon purchase price could not be achieved. The current owner intends to develop the site. Given the extent of wetlands on site and inability to obtain the property, Alternative 2 was considered inferior to the Fiske property.

**Alternative 3 – Moore Property**

The property is within the target range for size (159.97 acres), currently zoned for Vacant Residential, but has roadway access issues due to the parcel configuration. Developing the site would require considerable direct impacts as the wetland extends well into the site. Of the sites 160-acres, 80-acres, or 50% of the site, would be considered federally jurisdictional wetlands.

Given the size, extent of wetlands and challenges to access the site, Alternative 3 was considered inferior to the Fiske property.



*Alicia Lowenstein, FDEP*
*Fiske Road Property (BTC File #525-54)*
*Page 6 of 7*

**Alternative 4 – Fiske Property:**

The property is of the target range for size, within the City of Rockledge and is re-zoned for Residential Use. Additionally, there is sufficient surrounding infrastructure and roadway access. Of the sites 246-acres, 22.64-acres, or 9% of the site is proposed for wetland impact.

Given the property meets the minimum size requirements, has appropriate zoning, roadway access & infrastructure, the Fiske site was considered the most practicable and desirable alternative.

| Category | Comparison Matrix Criteria | Preferred Alternative | Alternative 1: Pluckerbaum | Alternative 2: Tucker Ranch | Alternative 3: Moore |
|---|---|---|---|---|---|
| Availability | Available? | Yes | No | No | No |
| | Zoning | Yes | Yes | Yes | No |
| Logistics | Sufficient Size? | Y | Y | Y | Y |
| | Roadway Access? | Y | Y | Y | N |
| | Access to governmental/services | Excellent | Moderate | Poor | Moderate |
| Cost | Acquisition cost? | N/A | N | N | N |
| | Mitigation Cost? | Y | Y | Y | Y |
| Environment | Wetland Impacts | Y | Y | Y | Y |
| | Impacts to T&E Species | N | Potentially | Potentially | Potentially |
| | Downstream Flooding | N | N | Y | N |

9.    Please describe how the proposed project configuration avoids or minimizes secondary effects to the greatest extent practicable. [404 Handbook, section 8.3.6, A.H. Volume I, section 10.2.7]

**The proposed project will have minimal secondary effects realized. The wetland impacts are confined to the highly degraded pasture wetlands that have been utilized for agricultural purposes for decades and contain numerous cattle and land management activities that have degraded the systems significantly. The only potential future secondary effects could be in the introduction of development to impede wildlife access. The vegetative composition will likely improve due to the current domination of exotic pasture grasses in the wetland and the water quality will likely improve by removing the existing cattle and agricultural**



*Alicia Lowenstein, FDEP*
*Fiske Road Property (BTC File #525-54)*
*Page 7 of 7*

**practices. Therefore, the Applicant has minimized potential future secondary effects to the greatest extent practicable.**

10.    Please describe how the proposed project configuration avoids or minimizes cumulative effects to the greatest extent practicable. [404 Handbook, section 8.3.5]

**The only wetland/surface water impacts proposed are to highly degraded and low-quality pasture wetlands and a man-made borrow pit surface water. The cumulative effect of impacting these types of systems will have minimal effect on water resources and the productivity and water quality of aquatic ecosystems within the drainage basin and general vicinity of the subject property. Therefore, the proposed project minimizes the cumulative effects to the greatest extent practicable.**

11.    Please provide a compensatory mitigation plan that satisfies the requirements of Rule 62-331.130, F.A.C. Please note that if mitigation bank credits are proposed, federal credits are required to offset impacts under the State 404 Program. Contact your Department processor if you have questions or need guidance. See also, State 404 Program Handbook, section 8.5 and A.H. Volume I, section 10.3.

Please Note: All wetland and surface water impacts must be consistent between the ERP and State 404 permit. If the functional assessments are evaluated using different methods, a conversion tablemust be provided to show consistency.

**Federal WRAP Credits will be purchased from either TM-Econ Phases I-III or Colbert Cameron Mitigation Bank.**

Should you have any questions, please do not hesitate to contact me at (407) 894-5969.

Regards,

Daniel Gough
Project Manager

Attachments



# Section I:
# Supplemental Information for State 404 Program Permits

State 404 Program authorization is required for activities within state-assumed waters under Chapter 62-331, F.A.C. The following information is necessary to facilitate the State 404 Program review when a project is within state-assumed waters.

1.  Identify the project purpose. (*Describe the purpose and need for the proposed project. Why are you proposing the work? How will you use the proposed structure(s); and/or, how will the proposed fill area(s) be used?*) Include a description of any related activities that may be developed as a result of the proposed project. Provide the approximate dates you plan to both begin and complete all work: **The project purpose is to construct a residential subdivision in the City of Rockledge close to I-95.**

2.  List all other certificates or approvals/denials received or pending from federal, state, or local agencies for work affecting wetlands and/or other surface waters encompassed by the overall project site: (*You need not have obtained all other permits before applying for a State 404 Program permit.*)

| Agency | Action Type | ID Number | Date Applied | Date Approved/Denied |
|--------|-------------|-----------|--------------|----------------------|
| SJRWMD | ERP Application | 183900-2 | 7-3-2022 | TBD |
|        |             |           |              |                      |
|        |             |           |              |                      |

4.  Identify the specific reason/need for the proposed activity (What will the activity be used for and why? Include activities that are linked to or reasonably related to the proposed activity.) **Residential Community to address the need for housing in the City of Rockledge with easy access for commuters.**

5.  Provide an alternatives analysis as described in the 404 Handbook, Appendix C. **See attached.**

6.  Describe any listed species or designated critical habitat that might be affected by, or is in the vicinity of, the proposed activity. Include the name(s) of those listed species or critical habitat areas. Describe any actions proposed to be taken to avoid or minimize adverse effects to listed species. Provide any other available data and information necessary for purposes of reviewing impacts to state and federal listed species. **The only anticipated Listed species within the subject property limits are wading birds. The centrally located man-made borrow pit is adequate habitat for nesting and migratory birds. The majority (107.90 acres) of the borrow pond will remain intact with no alterations proposed. This will provide significant habitat for Listed wildlife and wetland/surface water dependent species.**

7.  Clearly show location and extent of all wetlands and other surface waters, delineated in accordance with Chapter 62-340, F.A.C. Label all special aquatic sites (e.g., wetlands, sanctuaries and refuges, mudflats, vegetated shallows, and riffle and pool complexes). Each type of boundary (for example, ordinary high water line, mean high water line, wetlands, or other special aquatic sites) must be clearly annotated and/or symbolized to ensure they are differentiable on the map. Unless indicated below, all wetlands and other surface waters on the site, as delineated in accordance with Chapter 62-340, F.A.C., that will be impacted by the proposed activities will be evaluated for permitting purposes under Section 404 of the Clean Water Act. **Please find the attached FDEP Wetland Impacts Map.**

     

☐ Check this box if you do not accept that all or a portion of the wetlands and other surface waters on the site are jurisdictional under Section 404 of the Clean Water Act, and provide documentation demonstrating which wetlands and other surface waters on the site are not jurisdictional, using reasonable scientific judgement.

8. Provide the complete names and full correct mailing address of the owners (public and private) of properties contiguous to the overall project site where the work is proposed. You may also provide email addresses, if available. Use additional sheets as necessary. (*This information may be obtained from your County Property Appraiser Office, which is typically accessible on the Internet; this information is needed so that, if required, the contiguous owners may be notified of the proposed activity (for example, through a public notice*.)

    1. Name: St. Johns River Water Management District
       Mailing Address: PO Box 1429
       City, State, Zip Code: Palatka, FL 32177
       Email:

    2. Name: Viera Stewardship District
       Mailing Address: 610 Sycamore Street – C/o Moyer Management Group
       City, State, Zip Code: Kissimmee, FL 34747
       Email:

    3. Name: Tuckaway Lakes Homeowners Association, Inc.
       Mailing Address: 1978 US Highway 1, Suite 106
       City, State, Zip Code: Rockledge, FL 32955
       Email:

    4. Name:
       Mailing Address:
       City, State, Zip Code:
       Email:

    5. Name:
       Mailing Address:
       City, State, Zip Code:
       Email:

    6. Name:
       Mailing Address:
       City, State, Zip Code:
       Email:



PROPERTY LINE

EXISTING WETLANDS:
45.78 AC

POST DEVELOPMENT
WETLANDS: 22.78 AC

SECONDARY IMPACT
1.62 AC (3.54%)

IMPACTED: 19.65 AC (42.91%)

SURFACE WATER IMPACT
0.39 AC (0.35%)

EXISTING WETLANDS:
110.89 AC

POST DEVELOPMENT
WETLANDS: 107.90 AC

SECONDARY IMPACT
0.39 AC (0.85%)

SURFACE WATER IMPACT
2.60 AC (2.34%)

LIMITS OF PROPOSED DEVELOPMENT

I-95

S FISKE BLVD

STADIUM PKWY

Bowman

FDEP WETLAND IMPACT MAP
MATTAMY HOMES
AT FISKE BLVD
INT OF FISKE BLVD & STADIUM PKWY

EX - 12A

# Information Required for a WOTUS Determination in State-assumed Waters

## I. General Information

The following information is required if an applicant is requesting that the Department perform a Waters of the United States (WOTUS) jurisdictional determination pursuant to the Navigable Waters Protection Rule (40 C.F.R. 120) during review of a State 404 Program permit application, a Formal Determination under Chapter 62-340, F.A.C., or a request for verification that no permit is required under the State 404 Program. This form is provided as a service to applicants and petitioners. Use of the form may assist efficient review.

## II. Findings

### A. Summary

Check all that apply. At least one box from the following list MUST be selected. Complete the corresponding sections/tables and summarize data sources.

☐ The review area is comprised entirely of dry land (i.e., there are no waters or water features, including wetlands, of any kind in the entire review area).  Rationale: (N/A or describe rationale)

☒ There are "waters of the United States" within Clean Water Act jurisdiction within the review area (complete appropriate tables in Section II.B).

☐ There are waters or water features excluded from Clean Water Act jurisdiction within the review area (complete table in Section II.C)

### B. Clean Water Act Section 404 Jurisdiction (40 C.F.R. 120)

Please expand tables or use additional sheets as needed. Include measurement units in size column (acres, linear feet, etc.).

Traditional Navigable Waters ((1)(i) waters)

| (1)(i) Name | (1)(i) Size | | (1)(i) Criteria | Rationale for (1)(i) Determination |
|---|---|---|---|---|
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |

Note: All Territorial Seas and any Traditional Navigable Water listed in Appendix B of the 404 Handbook (Retained Waters List) are not assumable under the State 404 Program. If your project site contains or borders one of these waters and you are proposing or plan to propose dredge or fill activities within 300 feet of the mean high tide line or ordinary high water mark, please apply to the US Army Corps of Engineers for a permit or jurisdictional determination under Section 404 of the Clean Water Act.

Tributaries ((1)(ii) waters)

| (1)(ii) Name | (1)(ii) Size | | (1)(ii) Criteria | Rationale for (1)(ii) Determination |
|---|---|---|---|---|
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |

Lakes and ponds, and impoundments of jurisdictional waters ((1)(iii) waters)

| (1)(iii) Name | (1)(iii) Size | | (1)(iii) Criteria | Rationale for (1)(iii) Determination |
|---|---|---|---|---|
| SW1 | 110.89 | acre(s) | (1)(iii) Intermittent tributary contributes surface water flow directly or indirectly to an (1)(i) water in a typical year. | Surface Water discharge |
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |

Adjacent wetlands ((1)(iv) waters)

| (1)(iv) Name | (1)(iv) Size | | (1)(iv) Criteria | Rationale for (1)(iv) Determination |
|---|---|---|---|---|
| W1 | 45.78 | acre(s) | (1)(iv) Wetland separated from an (1)(i)-(1)(iii) water only by an artificial structure allowing a direct hydrologic surface connection between the wetland and the (a)(1)-(a)(3) water, in a typical year. | Contiguous wetlands |
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. | N/A. |

C. Excluded Waters or Features

Excluded waters ((2)(i) – (2)(xii))

| Exclusion Name | Exclusion Size | | Exclusion[1] | Rationale for Exclusion Determination |
|---|---|---|---|---|
| N/A. | N/A. | N/A. | N/A. | N/A. |

---

[1] Because of the broad nature of the (b)(1) exclusion and in an effort to collect data on specific types of waters that would be covered by the (b)(1) exclusion, four sub-categories of (b)(1) exclusions were administratively created for the purposes of the AJD Form. These four sub-categories are not new exclusions, but are simply administrative distinctions and remain (b)(1) exclusions as defined by the NWPR.

| Exclusion Name | Exclusion Size | Exclusion[1] | Rationale for Exclusion Determination |
|---|---|---|---|
| N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. |
| N/A. | N/A. | N/A. | N/A. |

## III. Supporting Information
## A. Resources Used

Select/enter all resources that were used to aid in this determination and attach data/maps to this document and/or references/citations in the administrative record, as appropriate.

Information submitted by, or on behalf of, the applicant/consultant (Title(s) and date(s)):

☒ Current 62-340, F.A.C. delineation:

☒ Aerial photographs:

☐ Other photographs:

☐ Previous WOTUS jurisdictional determinations (Corps PJD or AJD/Department WOTUS determination):

☐ Previous or current 62-340, F.A.C. formal jurisdictional determination:

☐ Antecedent Precipitation Tool (provide detailed discussion in Section III.B.):

☒ USDA NRCS Soil Survey (Title(s) and/or date(s)):

☒ USFWS NWI maps (Title(s) and/or date(s)):

☒ USGS topographic maps (Title(s) and/or date(s)):

Other data sources used to aid in this determination:

| Data source | Name and/or date and other relevant information |
|---|---|
| USGS Sources | |
| USDA Sources | |
| NOAA Sources | |
| USACE Sources | |
| State/Local/Tribal Sources | |
| Other Sources | |

## B. Typical Year Assessments

N/A or provide typical year assessment for each relevant data source used to support the determination:

## C. Additional comments to support the WOTUS jurisdictional determination

N/A or provide additional discussion as appropriate:



## Legend

 Fiske Road Property

**Bio-Tech Consulting Inc.**
Environmental and Permitting Services
3025 E. South Street  Orlando, FL 32803
Ph: 407-894-5969  Fax: 407-894-5970
www.bio-techconsulting.com

Fiske Road Property
Brevard County, Florida
Figure 1
Location Map



Project #: 525-54
Produced By: JDH
Date: 9/9/2021





**Bio-Tech Consulting Inc.**
Environmental and Permitting Services
3025 E. South Street   Orlando, FL  32803
Ph:  407-894-5969   Fax:  407-894-5970
www.bio-techconsulting.com

Fiske Road Property
Brevard County, Florida
Figure 2
2021 Aerial Photograph



770 Feet

Project #: 525-54
Produced By: JDH
Date: 11/8/2022



Fiske Road Property
Brevard County, Florida
Figure 3
USGS Topographic Map



**Bio-Tech Consulting Inc.**
Environmental and Permitting Services
3025 E. South Street   Orlando, FL  32803
Ph:  407-894-5969   Fax:  407-894-5970
www.bio-techconsulting.com

1,900
Feet

Project #: 525-54
Produced By: JDH
Date: 11/8/2022



**Legend**

- ⬛ (red dashed) Fiske 404 Boundary
- ⬜ <all other values>
- ⬜ 3 : Anclote sand, frequently flooded
- ⬜ 19 : Riviera sand, 0 to 2 percent slopes
- ⬜ 23 : Floridana sand



**Bio-Tech Consulting Inc.**
Environmental and Permitting Services
3025 E. South Street   Orlando, FL  32803
Ph:  407-894-5969   Fax:  407-894-5970
www.bio-techconsulting.com

Fiske Road Property
Brevard County, Florida
Figure 4
USDA-NRCS Soils Map



770 Feet

Project #: 525-54
Produced By: JDH
Date: 11/8/2022



**Legend**

- [ ] Fiske Boundary
- 110, Single Family Residential
- 211, Improved Pasture
- 530, Reservoir
- 640, Vegetated Non-Forested Wetland
- 822, Transmission Tower



**Bio-Tech Consulting Inc.**
Environmental and Permitting Services
3025 E. South Street  Orlando, FL 32803
Ph: 407-894-5969  Fax: 407-894-5970
www.bio-techconsulting.com

Fiske Road Property
Brevard County, Florida
Figure 5
FLUCFCS Map



580
Feet

Project #: 525-54
Produced By: JDH
Date: 11/8/2022

WRAP SUMMARY

**Project: Fiske**　　　　10/28/2022

| 3 *Impacts :* | Habitat type | Wildlife Utilization before | after | Wetland Overstory Shrub Canopy before | after | Wetland Vegetative Groundcover before | after | Adjacent Upland/ Wetland Buffer before | after | Wetland Hydrology before | after | Water Quality & Input Treatement before | after | Acres | Functional units lost | Total Impact Acres | Total Enhancment Acres | Total Preserve Acres | Total Creation Acres |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | 24.65 | 0.00 | 0.00 | 0.00 |
| W1 | 640 | 1.00 | 0.00 | 0.00 | 0.00 | 0.50 | 0.00 | 1.00 | 0.00 | 0.50 | 0.00 | 0.50 | 0.00 | 19.65 | 3.821 | | | | |
| SW1 | 530 | 1.00 | 0.00 | 0.00 | 0.00 | 0.50 | 0.00 | 0.50 | 0.00 | 1.00 | 0.00 | 0.50 | 0.00 | 2.99 | 0.58 | **Functional Units lost** | | **Functional Units gained** | **Mitigation Acres gained** |
| W1 Sec. | 640 | 1.00 | 0.50 | 0.00 | 0.00 | 0.50 | 0.50 | 1.00 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 2.01 | 0.11 | **4.52** | | **0.000** | **0.00** |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | 24.65 | 4.514 | | | | |

| | Type | w/o | w | w/o | w | w/o | w | w/o | w | w/o | w | w/o | w | lag | factor | Factor | Gain | Provided | gained |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| creation | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| enhance | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| preserve | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | Credits | |