IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al*. <br><br> *Defendants.* | Case No. 1:21-cv-0119 (RDM) |

**THE FLORIDA CHAMBER OF COMMERCE &
THE ASSOCIATION OF FLORIDA COMMUNITY DEVELOPERS'
AMICUS BRIEF IN SUPPORT OF DEFENDANTS' AND INTERVENORS'
<u>MOTIONS FOR SUMMARY JUDGMENT</u>**

According to the Plaintiffs, they have sued "to protect our Nation's waters and the endangered species that rely on them." ECF No. 98, at 13. But the premise underlying that notion—that State assumption of the Section 404(b) permitting process is harbinger of ecological catastrophe in Florida—is demonstrably false. Indeed, the Federal Defendants have systematically demonstrated why the Plaintiffs' substantive allegations have no basis whatsoever. *See* ECF No. 100. And, similarly, the Florida State Intervenors have shown the extent to which Florida's robust Section 404 regulations protect the State's wetlands and wildlife, which underscores the extent to which the Plaintiffs' concerns are entirely unfounded. *See* ECF No. 102.

1

Amici wholeheartedly endorse and incorporate by reference the Federal Defendants' and the State Intervenors' respective analyses, and in the interest of avoiding redundancy, will decline either to repeat them or add to them unnecessarily. Instead, Amici will focus on two issues that transcend the minutia lobbed around by the Plaintiffs, now that the parties have all filed their respective summary judgment motions.

First, the combined one-hundred-fifty pages submitted by the Federal Defendants and the State Intervenors demonstrate beyond peradventure that Florida's assumption of the Section 404(b) permitting process is functioning precisely as Congress intended. Contrary to the Plaintiffs' skewed perspective as to why Congress enacted the Clean Water Act, *see* ECF No. 98, at 15, one fundamental purpose was to ensure "recognition, preservation, and protection of primary responsibilities and rights of States." 33 U.S.C.S. § 1251. Indeed, it remains "the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources, and to consult with the Administrator in the exercise of his authority under this Act." *Id.* Lest there be any confusion, it also remains "the policy of Congress that the States manage the construction grant

program under this Act," and, critically, "*implement the permit programs under section[] . . . 404 of this Act*. *Id.* (emphasis added).

In other words, Congress intended for the States to take the precise measures that Florida has taken, and that the Plaintiffs find so objectionable. The State did so through the processes that Congress intended. And it did so with tremendous attention to the challenges posed by protecting Florida's unique ecosystem and wildlife.

Since Florida assumed the Section 404(b) permitting regime from the federal government, the system has worked as Congress intended. "The Clean Water Act anticipates a partnership between the States and the Federal Government, animated by a shared objective: 'to restore and maintain the chemical, physical, and biological integrity of the Nation's waters,'" *Arkansas v. Oklahoma*, 503 U.S. 91, 101 (1992), and the harmony between the summary judgment motions the Federal Defendants and the State Intervenors have filed show that "this program of cooperative federalism," *New York v. United States*, 505 U.S. 144, 167 (1992), has been remarkably successful. That Congress intended the precise outcome achieved by the State of Florida and the federal government punctuates the notion that the Court should decide this case against the Plaintiffs.

And it also bears reminding the Court that, since Florida assumed the Section 404(b) permitting process, Florida has not experienced "disasters like the Cuyahoga

3

River catching on fire and the Hudson River filling with raw sewage and toxic waste." ECF No. 98, at 15. The Florida Panther lives, as do the Audubon's crested caracara, the Everglade snail kite, and the Florida scrub jay. *Id.* And as the Federal Defendants' motion conclusively demonstrates, these members of Florida's ecosystem will receive the same level of care and protection that they did before Florida assumed the Section 404(b) permitting process.

That brings Amici to their second point, which is comprehensively set out by the Florida Intervenor's motion. Simply put, the Plaintiffs have no more of a concrete interest in the outcome of this case than do the Amici. For that reason, the Court should conclude that the Plaintiffs have no Article III standing and dismiss their case for want of the same. As the Court has now recognized several times, the "'irreducible constitutional minimum' of standing" requires that the Plaintiffs demonstrate that they have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs, moreover, need to prove that any future injuries they fear are "imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotations omitted). Claims of future injury that are remote or speculative are inadequate to satisfy the injury-in-fact requirement. *Id*.

The imminence requirement matters. It exists "to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly impending*." *Id*. (quoting *Lujan*, 504 U.S. at 565, n.2) (emphasis in original). A "'threatened injury"—such as the Plaintiffs are alleging here—"must be *certainly impending* to constitute injury in fact'"; "'[a]llegations of possible future injury' are not sufficient" to establish Article III standing. *Id*. (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in original). A plaintiff cannot sufficiently establish an injury in fact when the alleged injury is based on "their fears of hypothetical future harm that is not certainly impending." *Id*. at 416.

According to the Court, the following injuries pleaded by Amici did not suffice for purposes of Article III standing:

- The loss of "certain procedural and appellate rights secured by the Florida Administrative Procedure Act";

- the loss of "rights under Florida's Freedom of Information Act";

- the loss of expeditious permit application adjudication; and

- the expense of resubmitting permit applications to the federal government if Florida's Section 404 program is withdrawn.

ECF No. 39. These, however, largely track the injuries alleged by the Plaintiffs themselves. They have, for instance, taken no steps to demonstrate how the injuries alleged by Amber Crooks (on behalf of the Conservancy of Southwest Florida), which include "the loss of critical information and procedural safeguards," are more

5

concrete than the loss of procedural and informational availability that Amici would lose if the Plaintiffs' action succeeds.

More fundamentally, the Plaintiffs have brought this action because they believe that Florida's assumption of the Section 404(b) permitting process will inadequately "protect our Nation's waters and the endangered species that rely on them." ECF No. 98, at 13. But while each of their declarations express "particular concern" about one anticipated Section 404(b) permit or another, they have not shown either that (1) any of these concerns are in fact likely to materialize or (2) that transferring the Section 404(b) permitting process back to the federal government would meaningfully alleviate those concerns. For this reason, the Plaintiffs have, not and likely cannot, demonstrate the Article III standing necessary to maintain this action.

## CONCLUSION

For all these reasons, the Court should grant summary judgment for the Federal Defendants and the State Intervenors.

Dated:  May 10, 2013

                Respectfully submitted,

                */s/ Edward M. Wenger*
                Edward M. Wenger (DCB 1001704)
                Mohammad O. Jazil (FBN: 72556)
                Gary V. Perko (FBN: 855898)
                HOLTZMAN VOGEL BARAN
                TORCHINSKY AND JOSEFIAK PLLC
                2300 N Street, NW, Suite 643A
                Washington, DC 20037

                emwenger@holtzmanvogel.com
                Phone: (202) 737-8808
                Fax: (540) 341-8809

                *Counsel for the Chamber and AFCD*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Local Rule 7(o)(4) because it does not exceed 25 pages. This brief complies with the typeface requirements of Local Rule 5.1(d) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Office Word processing software in a 14-point Times New Roman type style.

Dated: May 10, 2023

>  /s/ *Edward M. Wenger*
>  Edward M. Wenger
>  DCB No. 1001704

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2023, I filed this Brief with the United States District Court for the District of Columbia using the CM/ECF system, which will cause it to be served on all counsel of record.

/s/ *Edward M. Wenger*
Edward M. Wenger
DCB No. 1001704