IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants. | CASE NO. 1:21-cv-00119 (RDM) |

**SUPPLEMENTAL DECLARATION OF RACHEL SILVERSTEIN IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I, Rachel Silverstein, Ph.D., make the following declaration:

1. I am competent to make this declaration. I provide this declaration based upon my personal knowledge. I would testify to the facts in this declaration under oath if called upon to do so.

2. I am a resident of Coral Gables, Florida.

3. I am the Executive Director and Waterkeeper of Miami Waterkeeper, one of the Plaintiffs in this case. I am also a member of Miami Waterkeeper. I have been a member of Miami Waterkeeper since 2014.

4. I submitted a declaration in support of Plaintiffs' Motion for Partial Summary Judgment on March 5, 2021. Dkt. 31-3. I submitted another declaration in support of Plaintiffs' Motion for Summary Judgment on February 28, 2023. Dkt. 98-7. I incorporate by reference my prior declarations here. I am providing this supplemental declaration to provide updates in

1

response to factual matters raised by Florida, including in the Declaration by Justin Wolfe, Dkt. 102 and 102-1.

5.     **The State's Enforcement Record:**  Miami Waterkeeper has had, and continues to have, grave concerns about Florida's track record when it comes to enforcing environmental laws, particularly under the Clean Water Act.  An example of the Florida Department of Environmental Protection's ("FDEP") enforcement shortcomings concerns Clean Water Act Municipal Separate Storm Sewer (MS4) permittees.

6.     Because of the potential to carry pollution to waters of the United States, stormwater conveyance systems are regulated under the Clean Water Act.  The Environmental Protection Agency delegated authority to the state of Florida to manage stormwater pollution within its borders. The Florida Department of Environmental Protection provides regulatory oversight of the MS4 program by requiring municipal operators of stormwater systems that discharge into waters of the state to operate and maintain stormwater conveyance networks (i.e. ditches, curbs, catch basins, underground pipes, etc.) in accordance with terms and conditions set forth in state-issued MS4 permit.  FDEP, as the Clean Water Act MS4 program administrator, has the oversight responsibility to provide support, assist with compliance, and ultimately enforce the permit terms and conditions.

7.     Miami Waterkeeper reviewed the performance of 35 Phase I MS4 operators in Miami-Dade County to evaluate compliance and enforcement as measured against the permit's own terms.  The permits were issued in 2016 to the City of Miami and the City of Hialeah, and to Miami-Dade county and 32 municipal co-permittees 2017.  We examined performance in Year 3 of the 5-year permit.  After reviewing their Year 3 annual reports in comprehensive detail, we found that none of the 35 MS4 permit holders were 100% compliant with their permit

requirements, and the average compliance score was below a C-, based on a "letter of the law" application of our rubric.[1]

8. For instance, we found that nearly half of the permit holders (15 of the 35) did not have a required Stormwater Management Program (SWMP). The SWMP is a significant component of the MS4 permit requirements as it specifies the Permittee's stormwater control practices that will be implemented consistent with the permit requirements in order to minimize the discharge of pollutants from the MS4 conveyance system.

9. We also examined Oculus records for the five lowest-scoring municipalities. We found that enforcement actions, where they were started or attempted, were generally ineffectual at gaining full compliance. For instance, the 2017 permit issued to Miami-Dade County and its Co-Permittees allows stormwater discharge to enter to the Biscayne bay and other Miami-Dade waters. It includes a condition for all co-permittees to submit a Total Maximum Daily Load ("TMDL") Prioritization Plan if those co-permittees discharge into a TMDL.[2] The City of Opa-Locka discharges to the C-7 Little River Canal, which is impaired for fecal coliform and is designated as a TMDL pursuant to F.A.C. Rule Number 62-304.725. Between 2018 and 2022, FDEP sent a series of warning letters to the City of Opa-Locka without ever securing or forcing compliance with this requirement. Almost four years went by until FDEP indicated that they could not reissue a permit without the City coming into compliance with their permit, including submitting a TMDL Prioritization Plan.

---

[1] For a full review of our findings, please see: *An Audit of Miami-Dade County Stormwater Permit Compliance: 2022 Report Card and Recommendations*, Miami Waterkeeper & Everglades Law Center, July 8, 2022, https://www.miamiwaterkeeper.org/stormwater.

[2] Reference Part VIII, Paragraph B1, page 79, of Permit Number FLS000003-004: Miami-Dade County FINAL MS4 Permit, issued December 29, 2017. Available in Oculus at: https://depedms.dep.state.fl.us/Oculus/servlet/operation?action=guidHitList&SelectedGuids=29.383608.1&profile=profile&RUN_VIEW_OPERATION_ON_START=true.

10.     **The State Program's Requirements:**  Cumulative impacts are the changes in an aquatic ecosystem that are attributable to the collective effect of a number of individual discharges of dredged or fill material.  Although the impact of a particular discharge may constitute a minor change in itself, the cumulative effect of numerous such piecemeal changes can result in a major impairment of the water resources and interfere with the productivity and water quality of existing aquatic ecosystems.

11.     The Section 404(b)(1) guidelines specify that the permitting authority must determine in writing the potential short-term or long-term effects of a proposed discharge of dredged or fill material on the physical, chemical, and biological components of the aquatic environment.  The federal agency reviewer is required to determine the nature and degree of effect that the proposed discharge will have, individually and cumulatively[3], on:

- Physical substrate
- Water circulation, fluctuation, and salinity
- Suspended particulate/turbidity
- Aquatic ecosystem and organisms

These considerations are not included in the State's 404 Program Handbook at Section 8.3.5, Cumulative Impacts Analysis.

12.     **Water Quality:**  South Florida is subject to significant development pressure.  In Miami Waterkeeper's region in South Miami-Dade county, natural wetlands and large tracts of farmland, which may contain wetlands within row and furrow operations, still exist.  These areas are traversed by networks of canals and drainage features that are tributary to the bay via direct surface water connection.

---

[3] 40 C.F.R. § 230.11.

4

13.     Miami-Dade county issued an annual report card indexing the health of all segments of Biscayne Bay.[4]  The April 14, 2023, report shows that all areas score either "fair" or "poor" health, representing a decline from last year's scores.  Portions of the bay continue to show deteriorated water quality as well as declining aquatic ecosystems and organisms; the bay may be at a tipping point.  The report card states that the real key to protecting the bay is where we live and work, meaning that the management of terrestrial resources and the development that occurs above the mean high water line impacts the health of the bay.

14.     As remaining farmlands and natural wetland areas are consumed by development, piece by piece, there must be comprehensive oversight of how altering Waters of the United States will impact the watershed as a whole, and how the cumulative impacts of development will impair the following in the watershed: physical substrate; water circulation, fluctuation, and salinity, suspended particulate/turbidity; and aquatic ecosystems and organisms.  And there must be adequate enforcement of those permits to prevent further water quality impairment.

15.     **Member Harms:** The State's less stringent enforcement program and inadequate 404 program will likely lead to more water quality impacts to Biscayne bay, which harms my recreational activities in the bay, where I regularly paddle-board, kayak, boat, swim, dive, and view wildlife, including corals, manatees, herons, egrets, ibises, ospreys, sea turtles, smalltooth sawfish, and dolphins.

16.     **Organizational Harms:** Less stringent enforcement also requires Miami Waterkeeper to divert resources away from their other core program activities to fill in the gaps by conducting investigations, reporting violations, and potentially bringing enforcement actions

---

[4] Report on the 2023 Annual Report Card Program on the health of Biscayne Bay- Directive No. 180799. Reference the attached report card beginning on MDC013, accessed at: https://www.miamidade.gov/govaction/legistarfiles/Matters/Y2023/230964.pdf.

5

to bring violators into compliance. And these harms are amplified by Miami Waterkeeper's constrained ability to challenge a project's permits and harms resulting from projects due to inadequate and costly state procedures (including restrictive standing requirements, costly litigation requirements because of the need to retain expert witnesses, and potentially devastating risk of mandatory fee-shifting laws), that are not comparable to the processes or remedies available under federal law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of June, 2023.

_____
Rachel Silverstein, Ph.D.
Executive Director and Waterkeeper
Miami Waterkeeper
P.O. Box 141596
Coral Gables, FL 33114-1596
(305) 905 0856