IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al*. <br><br> *Defendants.* | Case No. 1:21-cv-0119 (RDM) |

**THE FLORIDA CHAMBER OF COMMERCE &
THE ASSOCIATION OF FLORIDA COMMUNITY DEVELOPERS
AMICUS BRIEF IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Giving credit to where it is due, Amici again wholeheartedly endorse the Federal Defendants' thorough dismantling of the Plaintiffs' merits arguments. Simply put, the Plaintiffs' hollow assertions and the applicable law conclusively demonstrate they lack standing to continue this meritless crusade and waste government litigation resources, both the United States' and Florida's. As the Supreme Court recently reiterated, "[r]egulation of land and water use lies at the core of traditional state authority." *Sackett v. EPA*, 143 S. Ct. 1322, 1341 (2023) (citing *Tarrant Regional Water Dist. v. Herrmann*, 569 U.S. 614, 631 (2013); *Solid Waste Agency of Northern Cook Cty. v. Army Corps of Engineers*, 531 U.S. 159, 174

(2001); *Hess v. Port Authority Trans-Hudson Corporation*, 513 U.S. 30, 44 (1994)). And nothing the Plaintiffs have offered can justify stripping Florida of its authority to administer the Section 404 permitting authority in the manner that Congress intended.

To be certain, the Florida Department of Environmental Protection is indeed "working cooperatively with the U.S. Environmental Protection Agency (EPA), the U.S. Army Corps of Engineers (Corps), the U.S. Fish and Wildlife Service (FWS), and other federal, state, and local agencies on implementation of the Section 404 program in Florida." ECF No. 102-1 ¶ 9. As a result, Florida "has issued approximately 460 individual permits (including modifications) under the Section 404 program" since assuming ECF No. 102-1 ¶ 9. And despite the reams of paper Plaintiffs have frittered away over this case, they have not, and cannot, point to any environmental concern or impact arising from these issuances that could possibly justify their request that the Court scrap a years' long, successful process of cooperative federalism.

Congress's explicit policy under the Clean Water Act is "to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources." 33 U.S.C. § 1251. This includes the implementation of "the permit programs under

section[] . . . 404. *Id.* In other words, Congress prefers the outcome here, Florida wants the responsibility to administer this program, and President Biden's EPA is vigorously defending Florida's right to assume this task. The Plaintiffs remain entirely isolated in their insistence that this Court must act.

But act to redress *what* legally cognizable injuries? The Plaintiffs have *alleged* harm to (1) their "organizations' access to information provided through NEPA review and ESA consultation and access to courts to challenge inadequate environmental protection," and (2) their "members' aesthetic and recreational interests in wild Florida lands, wetlands, and waters where panthers roam and sea turtles nest." ECF. No. 90, at 105. But allegations are no longer enough. Because the elements of standing are "not mere pleading requirements but rather an indispensable part of the [P]laintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Where, as here, the Plaintiffs are responding to "a summary judgment motion," they "can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" *Id.* (quoting, inter alia, Fed. Rule Civ. Proc. 56(e)).

When this Court declined to dismiss the Plaintiffs' complaint at the motion to dismiss stage, it did so because the State had "offer[ed] no evidence or factual

3

material beyond the four corners of the complaint in support of its motion." *Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 189 (D.D.C. 2022). Now, however, the State has offered an affidavit from the State Department of Environmental Protection's General Counsel. And that affidavit conclusively demonstrates that the Plaintiffs are suffering no legally cognizable injury whatsoever.

Most directly, the State's affidavit painstakingly shows that the Plaintiffs are likely to receive *more* information *faster* than they would have if Florida had not assumed the Section 404 permitting process. ECF No. 102-1 ¶¶ 16-30. It also shows that any purported injuries to their "members' aesthetic and recreational interests" are wholly speculative and anything but "certainly impending," *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), particularly given the oversight that the EPA retains, ECF No. 102-1 ¶ 31, and Florida's robust enforcement regime, ECF No. 102-1 ¶¶ 32-40. To the extent that the Plaintiffs argue that they are harmed because they must bring future challenges in a different forum, the Court should reject that purported injury for the same reasons it disallowed Amici to intervene as parties. *See* ECF No. 39. And to the extent that the Plaintiffs rely on increased litigation expenses, *see, e.g.*, ECF No. 105, at 99, the D.C. Circuit has been crystal clear that "'an organization's diversion of resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice that

4

cannot qualify as an injury in fact for purposes of standing.'" *People for the Ethical Treatment of Animals v. United States Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (quoting *Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011)).

These points demonstrate that there is nothing whatsoever to the Plaintiffs' purported injuries. And without anything in the record to support their burden (now at the summary-judgment stage) of demonstrating Article III standing, the Court must go no further. In other words, the Plaintiffs' failure to satisfy this "irreducible constitutional minimum" compels a win for the Defendants. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

## CONCLUSION

For all these reasons, the Court should grant summary judgment for the Federal Defendants and the State Intervenors.

Dated: July 7, 2023

Respectfully submitted,

*/s/ Edward M. Wenger*
Edward M. Wenger (DCB # 1001704)
Mohammad O. Jazil (FBN: 72556)
Gary V. Perko (FBN: 855898)
HOLTZMAN VOGEL BARAN
TORCHINSKY AND JOSEFIAK PLLC
2300 N Street, NW, Suite 643A
Washington, DC 20037
emwenger@holtzmanvogel.com
Phone: (202-737-8808
Fax: (540) 341-8809

*Counsel for the Chamber and AFCD*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Local Rule 7(o)(4) because it does not exceed 25 pages. This brief complies with the typeface requirements of Local Rule 5.1(d) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Office Word processing software in a 14-point Times New Roman type style.

Dated: July 7, 2023

                                          */s/ Edward M. Wenger*
                                          Edward M. Wenger (DCB No.1001704)

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, I filed this Brief with the United States District Court for the District of Columbia using the CM/ECF system, which will cause it to be served on all counsel of record.

*/s/ Edward M. Wenger*
Edward M. Wenger (DCB No. 1001704)
