# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,

      Plaintiffs,

          v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY, *et al*.,

      Defendants.

Case No. 1:21-cv-0119 (RDM)

## FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SUR-REPLY AND EXHIBIT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .......................................................................................................... 1

STANDARD OF REVIEW .............................................................................................. 1

ARGUMENT ................................................................................................................. 2

   I.   Federal Defendants did not make new arguments regarding the ESA claims. .................. 3

  II.  Federal Defendants did not make new arguments regarding CWA claims. ...................... 10

CONCLUSION .............................................................................................................. 14

## TABLE OF AUTHORITIES

## CASES

*Alavi v. Weinstein*,
No. CV 15-2146 (RBW), 2018 WL 4828401 (D.D.C. Oct. 4, 2018)...........................................3

*Banner Health v. Sebelius*,
905 F. Supp. 2d 174 (D.D.C. 2012) ..................................................................................1, 2, 6

*Bigwood v. United States Dep't of Def.*,
132 F. Supp. 3d 124 (D.D.C. 2015) ...............................................................................2, 7, 12

*City of Dania Beach v. FAA*,
628 F.3d 581 (D.C. Cir. 2010) .................................................................................................3

*City of Tacoma v. FERC*,
460 F.3d 53 (D.C. Cir. 2006) .................................................................................................10

*Crummey v. Soc. Sec. Admin.*,
794 F. Supp. 2d 46 (D.D.C. 2011),
*aff'd*, No. 11-5231, 2012 WL 556317 (D.C. Cir. Feb. 6, 2012) ..........................................2, 3, 9

*Crutchfield v. Cnty. of Hanover*,
325 F.3d 211 (4th Cir. 2003) .................................................................................................12

*Crutchfield v. U.S. Army Corps of Engineers*,
214 F. Supp. 2d 593 (E.D. Va. 2002) .....................................................................................12

*Defenders of Crooked Lake v. FDEP*,
No. 17-5328, 2018 WL 3387900 (Fla. Div. Admin. Hrgs., May 7, 2018) ................................12

*Flynn v. Veazey Constr. Corp.*,
310 F. Supp. 2d 186 (D.D.C. 2004) ..........................................................................................2

*Friends of the Earth v. Hintz*.
800 F.2d 822 (9th Cir. 1986) .................................................................................................12

*Garrison v. Ne. Georgia Med. Ctr., Inc.*,
66 F. Supp. 2d 1336 (N.D. Ga. 1999),
*aff'd*, 211 F.3d 130 (11th Cir. 2000) .........................................................................................2

*Kifafi v. Hilton Hotels Ret. Plan*,
736 F. Supp. 2d 64 (D.D.C. 2010),
*aff'd*, 701 F.3d 718 (D.C. Cir. 2012) .........................................................................................1

*Lewis v. Rumsfeld*,
  154 F. Supp. 2d 56 (D.D.C. 2001) ......................................................................2, 6

*Lu v. Lezell*,
  45 F. Supp. 3d 86 (D.D.C. 2014) ............................................................................1

*Nix El v. Williams*,
  174 F. Supp. 3d 87 (D.D.C. 2016) ........................................................................11

*Sevier v. Lowenthal*,
  302 F. Supp. 3d 312 (D.D.C. 2018) ........................................................................2

*Shafer & Freeman Lakes Env't Conservation Corp. v. FERC*,
  992 F.3d 1071 (D.C. Cir. 2021) ............................................................................10

*Shea v. Clinton*,
  Civil No. 02-577 (RCL), 2012 WL 13075787 (D.D.C. Dec. 7, 2012) ................2, 3, 7

*Stand Up for California! v. United States Dep't of Interior*,
  71 F. Supp. 3d 109 (D.D.C. 2014) ..........................................................................3

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
  238 F. Supp. 2d 270 (D.D.C. 2002) ........................................................................2

*Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*,
  No. CV 16-1170 (RBW), 2016 WL 11777731 (D.D.C. Dec. 22, 2016) ..................10

**STATUTES**

33 U.S.C. § 1319(c)(1) ..............................................................................................11

33 U.S.C. § 1344(h)(2)(A) ........................................................................................11

## INTRODUCTION

Since February 28, the parties have filed more than 350 pages of briefing to support their cross-motions for summary judgment, in accordance with the Court's order of January 31, 2023. Dkt. 98, 99, 101, 102, 104, 106, 107.  In that order, the Court declined Plaintiffs' request for a sur-reply as of right and instead directed Plaintiffs to file a separate motion for leave to file a sur-reply after briefing, "if necessary."  Plaintiffs have now moved for leave to file an additional 30-page brief.  Dkt. 109.  They have not attached to their motion a proposed sur-reply (as is customary), leaving the Court and the other parties to guess at the precise arguments that they intend to raise if afforded supplemental briefing.  But it is clear from Plaintiffs' conclusory descriptions of the purportedly "new" arguments in Federal Defendants' reply that no sur-reply is warranted.  The Court should deny Plaintiffs' motion, at least to the extent that it demands further briefing on arguments contained in Federal Defendants' briefs.

## STANDARD OF REVIEW

Sur-replies "are generally disfavored."  *Kifafi v. Hilton Hotels Ret. Plan*, 736 F. Supp. 2d 64, 69 (D.D.C. 2010), *aff'd*, 701 F.3d 718 (D.C. Cir. 2012).  Although "[t]he decision to grant or deny leave to file a sur-reply is committed to the sound discretion of the Court," *Lu v. Lezell*, 45 F. Supp. 3d 86, 91 (D.D.C. 2014), in "exercising its discretion, the court should consider whether the movant's reply in fact raises arguments or issues for the first time, whether the nonmovant's proposed sur[-]reply would be helpful to the resolution of the pending motion, and whether the movant would be unduly prejudiced were leave to be granted." *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012).

If new arguments appear for the first time in a reply, granting leave to file a sur-reply is appropriate.  *See Flynn v. Veazey Constr. Corp.*, 310 F. Supp. 2d 186, 189 (D.D.C. 2004).  But

such arguments "must be truly new." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 277 (D.D.C. 2002).  The alleged mischaracterization a party's position by an opponent in a reply does not justify granting a request to file a sur-reply.  *See Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001).  And where arguments raised in reply "fall within the scope of the matters the party seeking to file a sur-reply raised in opposition, and the reply does not expand the scope of the issues presented, leave to file a sur-reply will rarely be appropriate." *Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 154 (D.D.C. 2015) (cleaned up).  "Simply put, a sur[-]reply is not a vehicle for rehashing arguments that have already been raised and briefed by the parties.  Were that not true, briefing would become an endless pursuit." *Crummey v. Soc. Sec. Admin.*, 794 F. Supp. 2d 46, 63 (D.D.C. 2011), *aff'd*, No. 11-5231, 2012 WL 556317 (D.C. Cir. Feb. 6, 2012).

## ARGUMENT

In their reply brief, Federal Defendants expanded on arguments that they raised in their opening brief and responded to the arguments that Plaintiffs raised in their opposition/reply.  None of the issues that Plaintiffs identify as a basis for a sur-reply is "truly new." *Diabetes Treatment Ctrs.*, 238 F. Supp. 2d at 277.  To allow Plaintiffs to relitigate these issues on such a broad scale would allow them to repeat (or modify) their earlier arguments and give them an unfair advantage.  *See Sevier v. Lowenthal*, 302 F. Supp. 3d 312, 324 (D.D.C. 2018) (denying leave to file sur-reply that "merely repeats earlier arguments").  And while Plaintiffs may argue that they will be prejudiced because Federal Defendants and Florida Intervenors submitted their briefs last, any "'prejudice' that comes from not having the 'last word' is not the kind of prejudice relevant when considering whether to grant leave to file a surreply." *Shea v. Clinton*, Civ. No. 02-577 (RCL), 2012 WL 13075787, at *2 (D.D.C. Dec. 7, 2012) (quoting *Garrison v. Ne. Georgia Med. Ctr.,*

*Inc.*, 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999)), *aff'd*, 211 F.3d 130 (11th Cir. 2000)).  Nor are Plaintiffs' inaccurate claims that Federal Defendants mischaracterized their arguments sufficient reason to grant Plaintiffs' request for a sur-reply.  *Alavi v. Weinstein*, No. CV 15-2146 (RBW), 2018 WL 4828401, at *3 (D.D.C. Oct. 4, 2018).  The Court should deny Plaintiffs' motion.[1]

Below, Federal Defendants address the arguments that Plaintiffs make in support of their motion, beginning with Plaintiffs' ten arguments related to their claims under the Endangered Species Act ("ESA"), followed by their six arguments related to their claims under the Clean Water Act ("CWA").

## I.    Federal Defendants did not make new arguments regarding the ESA claims.

First, Plaintiffs allege that Federal Defendants cited *National Association of Home Builders v. Defenders of Wildlife* in their reply brief to argue for the "first time that compliance with the plain language of the ESA would purportedly conflict" with assumption under the CWA.  Dkt. 109 at 2.  Federal Defendants' opening brief, however, expressly addressed Plaintiffs' arguments regarding the loss of review under the National Environmental Policy Act and ESA Section 7 consultation, and specifically argued that the CWA's statutory scheme allows states to apply to assume the Section 404 permitting process at the State level.  Dkt. 99 at 67 n.19.   Federal

---

[1] The Court should not entertain Plaintiffs' passing request to admit an extra-record exhibit.  Dkt. 109 at 6 n.1.  Plaintiffs have had that exhibit since it was produced to them in early December 2022 in response to a FOIA request.  If they thought that EPA's internal email discussion about ongoing Corps deliberations was properly part of this case, then they should have moved to supplement or complete the administrative record and they should have done so before the conclusion of briefing.  In the two-sentence footnote that they now devote to their untimely request for admission of extra-record evidence, Plaintiffs do not acknowledge, let alone carry, their heavy burden to overcome the "strong presumption that an agency has properly compiled the entire record of materials that it considered, either directly or indirectly, in making its decision."  *Stand Up for California! v. United States Dep't of Interior*, 71 F. Supp. 3d 109, 116 (D.D.C. 2014) (internal quotation marks omitted).  Nor do they do attempt to "demonstrate unusual circumstances justifying a departure from [the] general rule" against record supplementation.  *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) (internal quotation marks omitted).

Defendants' reply brief expanded on that argument, noting that the *Home Builders* decision acknowledged that the absence of the ESA Section 7 process reflects Congress's decision to grant States the right to administer these programs under state law.  Dkt. 106 at 44.  What Plaintiffs characterize as a new argument clearly expands on points made in Federal Defendants' opening brief and responds directly to points raised by Plaintiffs in their opposition brief.

Plaintiffs next mischaracterize Federal Defendants' statements regarding general permits. Dkt. 109 at 2.  According to Plaintiffs, Federal Defendants "originally argued that the BiOp did not consider the impact on species of Florida's general permits because Florida purportedly had not issued any general permits for its 404 program."  *Id.* (citing Dkt. 99 at 66).  Plaintiffs state that Federal Defendants then "concede[d] that the State 404 program contains general permits but claim[ed] that those were not considered because they were not promulgated under the CWA and therefore did not have to be considered."  *Id.* (citing Dkt. 106 at 31).  One need only review Federal Defendants' submissions to see that Plaintiffs misstate (or perhaps misunderstand) them.  As a threshold matter, Plaintiffs summarily argued in their opening brief that the U.S. Fish and Wildlife Service ("FWS") failed to consider potential impacts to species from existing state general permits. Dkt. 98 at 38.  As Federal Defendants explained, however, Florida had not issued federal <u>Section 404</u> general permits prior to EPA's approval of Florida's assumption request; thus, an assessment of impacts from "existing" state general permits was not possible.  Dkt. 99 at 66.  Federal Defendants further stated that FWS's programmatic Biological Opinion ("BiOp") contemplated the proposed issuance of permits (i.e., the issuance of permits in the future should the assumption request be approved) as described in the State's Section 404 program rule, which allows special conditions to be attached to such permits if needed, and made other arguments regarding the role of the State 404 Handbook and FWS's processing and review of general permits.  *Id.*  In their

combined opposition/reply, Plaintiffs again argued that FWS should have analyzed "existing general permits." Dkt. 106 at 31. Noting that it was unclear whether Plaintiffs were referring to general permits issued before or after EPA approved Florida's assumption request, Federal Defendants explained that if Plaintiffs were referring to general permits issued <u>before</u> December 2020, Florida's application provided information about the number of general permits prior to EPA's approval of Florida's assumption request, but <u>those were not issued pursuant to CWA Section 404</u>. Dkt. 106 at 31.[2]  This is precisely the same argument that Federal Defendants made in their opening brief.  *See* Dkt. 99 at 66.

As to general permits issued <u>after</u> December 2020, Federal Defendants' reply brief reiterated that the BiOp evaluated the state's process for issuing general permits and EPA's oversight of that process. Dkt. 106 at 31 (citing Dkt. 99 at 66–67).  Federal Defendants also pointed out that general permits will be assessed as part of the technical assistance process, a fact that Plaintiffs already acknowledged.  *Id*. (citing Dkt. 104 at 36).  Thus, Plaintiffs cannot show that Federal Defendants made any new arguments in their reply brief on the issue of general permits.

Plaintiffs' claim that Federal Defendants raised new arguments with respect to sea turtles presents a similar issue. Dkt. 109 at 2.  According to Plaintiffs, Federal Defendants' reply brief "suggest[s] for the first time that USFWS did not need to consider the impact of Florida's program on nesting sea turtles because development in state-assumed waters near the coast likely would not harm that species." Dkt. 109 at 2. Plaintiffs further contend that Federal Defendants previously stated only that the BiOp addressed impacts to all ESA-considered species.  *Id*.  Again, Federal

---

[2]   Moreover, the fact that Florida's application package included information about state general permits and the number of those permits is not the type of "truly new" information that calls for a sur-reply. Florida's application package is in FWS's administrative record.  *E.g*., FWS-002916; FWS-003386.

Defendants' submissions show otherwise.  As explained in Federal Defendants' opening brief, Plaintiffs devoted just three sentences of their opening brief to Claim 12, which alleged that EPA failed to consult on ESA-listed sea turtles and their designated critical habitats under FWS's jurisdiction.  Dkt. 99 at 70.  Plaintiffs apparently recognized this deficiency and expanded their argument in their opposition/reply, raising new facts in their brief and accompanying declarations. Dkt. 104 at 29–30.  Accordingly, Federal Defendants' reply brief stated that Plaintiffs' argument was speculative because they had not identified any habitat that would be in or near assumed waters.  Dkt. 106 at 36.  Federal Defendants also pointed out two critical errors in Plaintiffs' argument.  *Id*.  As these facts show, Federal Defendants' arguments were not new.  Rather, they properly responded to the issues Plaintiffs raised in their opposition/reply.

Plaintiffs next argue that Federal Defendants mischaracterized their challenge to the BiOp's baseline analysis.  Dkt. 109 at 2.  As a threshold matter, the alleged mischaracterization of a moving party's position by an opponent in a reply is insufficient to justify granting a request to file a sur-reply.  *See Lewis*, 154 F. Supp. 2d at 61.  Moreover, Federal Defendants plainly did not mischaracterize Plaintiffs' argument.  In their opening brief, Plaintiffs discussed the alleged flaws in the BiOp's baseline analysis; Plaintiffs did not argue that the alleged flaws "apply equally" to the Biological Evaluation ("BE") as they now suggest.  *See* Dkt. 109 at 2 (citing Dkt. 98 at 68–69).  Plaintiffs' opposition/reply complained of the lack of "independent analysis" in the BiOp; that no deference was due to FWS's determination that "the BE was the best available information"; FWS had "an independent duty to evaluate the baseline status of species"; and FWS relied on a "self-interested submission."  Dkt. 104 at 26.  Federal Defendants responded to each of these points in their reply brief, and stated that "[t]he sole basis for Plaintiffs' attack on the BiOp's analysis of the environmental baseline is that it relied on the BE as a source."  Dkt. 106 at 34.  This

sentence summarized Plaintiffs' description of the flaws in FWS's analysis of the environmental baseline.  Plaintiffs overstate the matter by describing it as a mischaracterization of their argument.

Plaintiffs next suggest that Federal Defendants waived their opportunity to distinguish two cases Plaintiffs cited in their opening brief, thus improperly addressing them in their reply brief, and raised new arguments in response to a third case cited by Plaintiffs.  Dkt. 109 at 3.  This tells only half the story.  In their opening brief, Plaintiffs relied on *Gerber v. Norton* for their attack on the technical assistance process, which they argued is led by Florida and does not require FWS to be involved.  Dkt. 98 at 47.  Then, in their opposition/reply, Plaintiffs cited *Gerber* for an entirely different proposition:  that FWS failed to independently analyze the BE and should not be permitted to "hang its hat on the self-interested submission provided by the State and EPA."  Dkt. 104 at 26.  Federal Defendants' reply brief addressed Plaintiffs' (new) reliance on *Gerber*, explaining the difference between that case and the facts before the Court here.  Dkt. 106 at 33–34.  In short, Federal Defendants' discussion of *Gerber* was in direct response to how Plaintiffs cited and relied on it in their opposition/reply.  Granting Plaintiffs leave to file a sur-reply simply because Federal Defendants responded when Plaintiffs relied on a case for an entirely new proposition would elevate sur-relies to a "a regular practice" and "put the court in the position of refereeing an endless volley of briefs."  *Shea*, 2012 WL 13075787, at *2.

Plaintiffs also argue that sur-reply is warranted because Federal Defendants "belatedly" distinguished *National Wildlife Federation v. Brownlee*.  Dkt. 109 at 3.  Plaintiffs' opening brief contained a single parenthetical citation to *Brownlee*, which was buried in a footnote.  Dkt. 98 at 46 n.17.  Then, Plaintiffs discussed the case at length in their opposition/reply, in support of their argument that future consideration of site-specific impacts is insufficient.  Dkt. 104 at 23, 25.  In

their reply brief, Federal Defendants distinguished *Brownlee*, explaining in two sentences (in a footnote) why the case presents facts different from those at issue here.

Plaintiffs also argue that Federal Defendants "raise new arguments and cite new authority to urge the Court to ignore *Conner v. Burford*." Dkt. 109 at 3. Plaintiffs cited *Conner* just twice in their opening brief, both with parenthetical discussions, one of which was in a footnote. Dkt. 98 at 42, 46 n.17. Federal Defendants stated their disagreement with this authority in their opening brief. Dkt. 99 at 74, 78. In their opposition/reply, Plaintiffs then expanded their discussion of *Conner*, citing it at least five times and discussing it at length. Dkt. 104 at 28, 29, 38 (paragraphs-long discussion), 43, 110. The discussion of *Conner* and citation of new authority in Federal Defendants' reply brief directly responded to arguments that Plaintiffs made in their opposition/reply.

Plaintiffs' contention that Federal Defendants' reply brief improperly seeks "to defend *Cooling Water Intake Structures*" and raises "new and different arguments to claim the case is factually on point with this case," Dkt. 109 at 3, is plainly incorrect. Federal Defendants discussed the *Cooling Water Intake Structures* case throughout their opening brief. Dkt. 99 at 41, 44, 64, 65, 70–71, 72 n.25, 74–76, 78, 80–81. In turn, Plaintiffs devoted three full pages of their opposition/reply to argue that the Court should not follow the *Cooling Water Intake Structures* decision because it "was wrongly decided" and "the circumstances in that case were materially different from those presented here." Dkt. 104 at 22, 46–49. Federal Defendants responded to these arguments, reiterating their earlier contention that *Cooling Water Intake Structures* is persuasive authority and then explaining why Plaintiffs' efforts to distinguish it on its facts were misdirected. Dkt. 106 at 27–30. There can be no serious argument that Federal Defendants expressed a new position regarding *Cooling Water Intake Structures* in their reply brief.

Plaintiffs' next arguments fare no better.  They mischaracterize Federal Defendants' argument regarding the role of the annual report, claiming that Federal Defendants said that "the ESA requirement to reinitiate consultation when an ITS' take limit is exceeded can be satisfied at the program level with annual take reporting[.]"  Dkt. 109 at 3 (citing Dkt. 106 at 39).  But Plaintiffs argued in their opposition/reply that there is no measurable standard for determining when take has been exceeded at the programmatic level, thus the incidental take statement ("ITS") failed to comply with the law.  Dkt. 104 at 32.  In response, Federal Defendants explained that the ITS contains a term and condition that requires Florida to submit an annual report that must contain specific information.  Dkt. 106 at 39.  Federal Defendants explained that the annual report requirement, together with the other terms and conditions, is "intended to allow FWS to track take on an ongoing basis," thus satisfying the ESA's requirements.  *Id.*  Nor is there any merit to Plaintiffs' assertion that Federal Defendants "claim for the first time" that "effectuating the transfer of the program relieved the federal agencies of the duty to reinitiate consultation when new species are listed."  Dkt. 109 at 3.  To the contrary, Federal Defendants stated in their reply brief that the listing of a new species or critical habitat will not trigger reinitiation of consultation "because EPA transferred administration of the Section 404 Program to Florida."  Dkt. 106 at 40.  This fact is not "new":  it is stated in the BiOp.  Moreover, the crux of Federal Defendants' argument on this point was explained in both their opening and their reply brief: measures are in place to ensure that effects to newly listed species are considered during the technical assistance process.  Dkt. 99 at 79; Dkt. 106 at 40.  Thus, Federal Defendants' actual statements were made in direct response to the arguments in Plaintiffs' opposition/reply; any suggestion otherwise is easily disproven by reviewing the parties' submissions.

Finally, Plaintiffs contend that Federal Defendants mischaracterized their arguments regarding EPA's reliance on the BiOp.  Dkt. 109 at 3–4.  Plaintiffs' opposition/reply cited two cases in support of their argument, *City of Tacoma v. FERC*, 460 F.3d 53, 75–76 (D.C. Cir. 2006); *Shafer & Freeman Lakes Env't Conservation Corp. v. FERC*, 992 F.3d 1071, 1096 (D.C. Cir. 2021), and argued that the Court should apply a "standard" set forth in *Shafer*.  *See* Dkt. 104 at 49–51.  Federal Defendants responded to this argument by stating that Plaintiffs "overlook governing case law" (i.e., *City of Tacoma*) and that Plaintiffs urged this Court to apply an incorrect standard (i.e., *Shafer*).  Dkt. 106 at 46–47.  Federal Defendants never stated that Plaintiffs "cited no legal support for their arguments," and stayed well within the scope of issues already presented. *Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, No. CV 16-1170 (RBW), 2016 WL 11777731, at *2 (D.D.C. Dec. 22, 2016).  But even if Federal Defendants had "grossly mischaracterized" Plaintiffs' arguments, as they contend, that alone would be insufficient reason to allow Plaintiffs to file a sur-reply. *Nix El v. Williams*, 174 F. Supp. 3d 87, 92 (D.D.C. 2016).

In short, Plaintiffs fail to identify "truly new" arguments raised by Federal Defendants on the ESA claims and their request to file a sur-reply on these grounds should be denied.

## II.    Federal Defendants did not make new arguments regarding CWA claims.

According to Plaintiffs, Federal Defendants argued for the first time on reply that EPA must approve a state's Section 404 assumption request if the state's proposed program meets the criteria "specifically enumerated in Section 404(h)(1)." Dkt. 109 at 4.  In fact, Federal Defendants raised this point repeatedly in their opening brief, explaining that: "EPA 'shall approve' a state assumption request if, based on the materials submitted and comments received, it determines that the state's program meets the eight criteria at CWA Section 404(h)(1). [33 U.S.C.] § 1344(h)(2)(A).  These criteria define the minimum standards that a state Section 404 program

10

<u>must satisfy</u>." Dkt. 99 at 20 (emphasis added); *accord id.* at 35; *see also id.* at 51 ("Where Congress demanded equivalence between state and federal law, it made plain its intent."). And when Federal Defendants reiterated this straight-forward reading of the statute in their reply brief, Dkt. 106 at 18, they did so in direct response to Plaintiffs' claim that state Section 404 programs must meet or exceed "every Clean Water Act requirement not expressly referenced in Section 404 assumption provisions," Dkt. 104 at 57.

Plaintiffs' demand for additional pages to discuss CWA Section 309(c)(1), 33 U.S.C. § 1319(c)(1), is similarly unavailing. In their opening brief, Plaintiffs argued that Florida's culpable negligence mens rea standard "excludes an entire class of violators from criminal liability." Dkt. 98 at 56–57; *accord id.* at 58. In their opening brief, Federal Defendants explained why that is wrong. Dkt. 99 at 50–54. In their opposition/reply, Plaintiffs tweaked their argument. Section 309(c), they now insisted, defines "what *constitutes* a violation" of the CWA in the first place, Dkt. 104 at 54 (emphasis in original), and any departure from the federal standard of simple negligence would not just exclude an entire class of violators from criminal liability but would "legalize activity that is patently unlawful under" the Act, *id.* at 55. In their reply, Federal Defendants rebutted Plaintiffs' reformulated (and more extreme) position, explaining that CWA violations under federal law were violations under Florida law too, and that Florida's "negligence standard affects only whether the violation is punishable by a civil or criminal fine." Dkt. 106 at 17. Plaintiffs cry foul, but Federal Defendants properly responded to Plaintiffs' evolving legal theories.

The same goes for Federal Defendants' response to Plaintiffs' evolving arguments about Florida's water quality standards. In their opening brief, Plaintiffs claimed that by referencing those standards, Florida's Section 404 regulations limited the State's "consideration of water

quality impacts to situations where the high bar of water quality standards or toxic effluent limits will be violated." Dkt. 98 at 64. That claim rests on a selective reading of Florida's regulations, as Federal Defendants explained in their opening brief. Dkt. 99 at 48–49. In their opposition/reply, Plaintiffs sought to bolster their position by contrasting 40 C.F.R. § 230.11(d)—a provision that they did not even cite in their opening brief—with Section 8.2(g) of Florida's 404 Handbook. Dkt. 104 at 68. Federal Defendants simply responded to that line of argument, as was their right. *See* Dkt. 106 at 11–12.

Plaintiffs' reliance on other supposedly "new arguments" (Dkt. 109 at 4–5) is likewise misplaced. Though Plaintiffs suggest otherwise, Dkt. 109 at 5, Federal Defendants made no new arguments regarding *Friends of the Earth v. Hintz*. 800 F.2d 822 (9th Cir. 1986), which they cited for the same proposition in both of their briefs, even quoting the same sentence. *Compare* Dkt. 99 at 47 *with* Dkt. 106 at 14. In their reply, Federal Defendants discussed *Defenders of Crooked Lake v. FDEP*, No. 17-5328, 2018 WL 3387900 (Fla. Div. Admin. Hrgs., May 7, 2018), Dkt. 106 at 15–16, only to rebut mischaracterizations of that decision that Plaintiffs made for the first time in their opposition/reply brief, *see* Dkt. 104 at 72–73. Federal Defendants' sentence-long reference to *Crutchfield v. U.S. Army Corps of Engineers*, 214 F. Supp. 2d 593 (E.D. Va. 2002), expanded on their earlier reference to *Crutchfield v. County of Hanover*, 325 F.3d 211 (4th Cir. 2003) (Dkt. 99 at 47) and responded directly to Plaintiffs' claim that the 404(b)(1) Guidelines require the Corps to base permitting decisions "on its own independent analysis," rather than on applicant-supplied information. Dkt. 104 at 72; *cf.* Dkt. 106 at 14–15. And Federal Defendants rebutted Plaintiffs' meritless post-hoc rationalization arguments only because—it should go without saying—Plaintiffs made those arguments for the first time in their opposition/reply. *Compare* Dkt. 104 at 69–70 *with* Dkt. 106 at 12–14.

Plaintiffs also alleged for the first time in their opposition/reply that the Corps had maintained "for at least a decade" that waters characterized as traditionally navigable waters, or "TNWs," should be retained waters, and that the Corps had failed to consider certain documents that appear in its administrative record. *Compare* Dkt. 99 at 71–72 (Plaintiffs' opening brief listing four alleged flaws with the Retained Waters List but nowhere mentioning TNWs or an alleged failure to consider comments) *with* Dkt. 104 at 75–76 and n.46 (alleging that the Corps departed from its "longstanding position" on TNWs) *and id.* at 83 (Corps "ignored all public comments" on navigability of Florida waters). Federal Defendants responded to both new contentions. Dkt. 106 at 24–27. Plaintiffs' apparent desire for the last word, Dkt. 109 at 5–6, does not warrant a sur-reply.[3]

Nor does their apparent desire to raise new arguments. While Plaintiffs now suggest that "the record" shows that the Corps omitted certain waters from its Retained Waters List, Dkt. 109 at 6, Plaintiffs have had since September 2020 to level those accusations and have had 170 pages of briefing to prove to them. Plaintiffs have failed to do so. They cannot correct that failure on sur-reply.

Finally, there is no need for supplemental briefing on the contents of the Jacksonville District's website, as Plaintiffs seem to contend. Dkt. 109 at 5–6. In their opposition/reply, Plaintiffs included a footnote: "The 2017 Supplement remains posted to the Corps' website." Dkt. 104 at 80 n.48. Federal Defendants responded directly with a footnote clarifying that that the "link for the 2017 Supplement, that Plaintiffs cite . . . does not appear anywhere on the District's public

---

[3] Plaintiffs' extra-record exhibit does not show that the Corps had maintained "for more than a decade" that all TNWs should be treated as retained waters and so it does not rebut the Corps' denial that it held such a "longstanding" position, as Plaintiffs suggest.

website." Dkt. 106 at 26 n.10.  Anyone with an internet connection can verify both statements; no supplemental briefing is necessary.

## CONCLUSION

Plaintiffs have not shown that a sur-reply is necessary.  Because none of the arguments that they highlight are truly new, they cannot make the showing of prejudice needed to sustain their motion.  The Court should deny that motion and should not entertain Plaintiffs' untimely and unsupported request to admit extra-record evidence.


Dated: August 4, 2023                          Respectfully submitted,

                                               TODD KIM
                                               Assistant Attorney General
                                               Environment & Natural Resources Division
                                               United States Department of Justice

                                               /s/ Andrew S. Coghlan
                                               Andrew S. Coghlan (CA Bar 313332)
                                               Environmental Defense Section
                                               P.O. Box 7611
                                               Washington, D.C. 20044-7611
                                               Tel: (202) 514-9275
                                               Fax: (202) 514-8865
                                               Email: Andrew.Coghlan@usdoj.gov

                                               Alison C. Finnegan (PA Bar 88519)
                                               United States Department of Justice
                                               Environment & Natural Resources Division
                                               Wildlife & Marine Resources Section
                                               P.O. Box 7611
                                               Washington, DC 20044-7611
                                               Tel: 202-305-0500
                                               Email: Alison.C.Finnegan@usdoj.gov

                                               *Attorneys for Federal Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

/s/ Andrew S. Coghlan