IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ET AL.<br><br>   Plaintiffs,<br><br>   v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.<br><br>   Defendants. | CASE NO. 1:21-cv-00119 (RDM) |

_____

**FLORIDA INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SURREPLY**

_____

  The State of Florida and the Florida Department of Environmental Protection (collectively "Florida Intervenors") file this response in opposition to Plaintiffs' motion for leave to file a sur-reply in relation to pending cross-motions for summary judgment. Plaintiffs seek leave to file a 30-page surreply to address "new arguments" raised "for the first time on reply" by Federal Defendants and Florida Intervenors. Dkt. 109. Plaintiffs are wrong. None of Florida Intervenors' arguments are new. All were raised previously and are responsive to Plaintiffs' own arguments. Thus, Plaintiffs' motion should be denied. Here, Florida Intervenors do not address Plaintiffs' assertions concerning Federal Defendants' arguments, as those are being addressed separately. *See* Dkt. 116.

**I. A Surreply May be Filed Only with Leave of Court to Address Matters That Are Truly New.**

  "A surreply may be filed only by leave of Court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond." *Wada v. U.S. Secret Serv.*, 525 F. Supp. 2d 1, 10 (D.D.C. 2007) (quoting *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,

238 F. Supp. 2d 270, 276-77 (D.D.C. 2002) (explaining that "the matter must be truly new")). A party may not file a surreply as a means to reiterate previous arguments. *Robinson v. Detroit News, Inc.*, 211 F.Supp.2d 101, 113 (D.D.C. 2002). "Simply put, a surreply is not a vehicle for rehashing arguments that have already been raised and briefed by the parties. Were that not true, briefing would become an endless pursuit." *Crummey v. Social Security Admin.*, 794 F. Supp. 2d 46, 63 (D.D.C.2011), *aff'd*, 2012 WL 556317 (D.C. Cir. Feb. 6, 2012). Where the other party's reply "does not expand the scope of the issues presented, leave to file a surreply will rarely be appropriate." *Id.* This Court's briefing schedule rejected Plaintiffs' original request for an automatic surreply, Dkt. 97 at 2, and only permitted a motion for leave to file a surreply to the extent one was "necessary," *see* Minute Order (Jan. 31, 2023). Plaintiffs are not entitled to a surreply as of right.

## II. Plaintiffs Provide No Basis for Leave to File a Surreply.

Plaintiffs identify thirteen statements made in Florida Intervenors' reply brief that Plaintiffs say warrant a surreply. Dkt. 109 at 6-8. As detailed below, Plaintiffs have not carried the burden of demonstrating that a surreply is necessary as to any of the thirteen points, let alone all of them. Each assertion is addressed in turn.

*First*, Plaintiffs argue that Florida Intervenors "attach[ed] a new declaration replete with new, conclusory assertions that are either not supported by, or are refuted by, the record." Dkt. 109 at 6. They are referring to the Wolfe Supplemental Declaration, which Florida Intervenors submitted in response to *three new* declarations enclosed with Plaintiffs' reply brief. *See* Dkt. 105-1, 105-2, and 105-3. Plaintiffs' three new declarations contained 15 pages of new sworn testimony, plus 30 pages of additional exhibits. These new declarations, along with Plaintiffs' reply brief, contained various mischaracterizations of Florida's current implementation of the Section 404 program, the status of

2

EPA oversight of the program, and other post-decisional matters. *See, e.g.*, Dkt. 105 at 19. Taken together, Plaintiffs' reply brief and declarations raised numerous points outside the administrative record in an attempt to either show standing or impeach the credibility of Florida's current program implementation. In reply, Florida Intervenors attached *one* new supplemental declaration to respond to Plaintiffs' factual assertions and to address issues raised by Plaintiffs. Dkt. 107 at 8-9. To be clear, Florida Intervenors' position is that this Court should disregard Plaintiffs' reply-stage declarations in total, Dkt. 107 at 9. Florida Intervenors have sought consideration of the supplemental declaration *only* "to the extent this Court considers Plaintiffs' new declarations…" Dkt. 107 at 9.[1] Because Florida Intervenors' supplemental declaration does not raise new issues, but only responds to Plaintiffs' various new points and arguments, a surreply on this basis is not warranted.

*Second*, Plaintiffs argue that "as to organizational standing based on information loss, Florida claims for the first time that Troyer Mine likely would not have required an EIS under the Corps program. But Florida's cross-motion/response memorandum did not mention Troyer—a major project threatening the Florida panther on which Plaintiffs have long relied to demonstrate standing—at all." Dkt. 109 at 6 (internal citations omitted). Plaintiffs' argument is misplaced. Florida Intervenors have consistently argued that Plaintiffs are exaggerating any possible information loss they suffered tied to the National Environmental Policy Act ("NEPA"). *See* Dkt. 102 at 40. Florida Intervenors also discussed the Troyer Mine project in the State's opening brief (and accompanying declaration) to respond to Plaintiffs' repeated claims that the Troyer Mine project supports their standing. Dkt. 102 at 27; Dkt. 102-1 at 7 and 20. In reply, Florida Intervenors further described the

---

[1] Plaintiffs also claim that Florida's supplemental declaration makes statements "either not supported by, or are refuted by, the record." Dkt. 109 at 6. But neither Plaintiffs nor Florida Intervenors have submitted declarations for the purpose of supplementing or amending the administrative record relevant to the court's determination of the merits; to the contrary, any declarations would only be permissible here to adjudicate standing.

3

project and argued why Plaintiffs' claims of informational loss are highly speculative because the current Troyer Mine project is unlikely to require an Environmental Impact Statement. Dkt. 107 at 13-14. Thus, reference to Troyer Mine is not new and does not warrant a surreply.

*Third*, Plaintiffs say Florida Intervenors "newly suggest[ed] that disclosure of information under NEPA and the ESA is not 'private information,' the loss of which may constitute intangible harms. Previously, Florida's arguments were about whether Plaintiffs, in fact, were deprived of this information." Dkt. 109 at 7 (internal citations omitted). Plaintiffs seem to be referring to discussion about *TransUnion v. Ramirez,* 141 S. Ct. 2190 (2021), in the reply brief, where Florida Intervenors explained that Plaintiffs assert a "different kind of general environmental information that is part of the public record and not specific to Plaintiffs," which is unlike the loss of private information that is personal to a particular plaintiff. Dkt. 107 at 13. This is not a "new matter" warranting surreply. To the contrary, *TransUnion* was first raised to rebut Plaintiffs' continued reliance on the loss of NEPA information. For example, Florida Intervenors twice cited *TransUnion* in the opening brief, explaining that "Plaintiffs have made no direct showing of harm for any specific claim." Dkt. 102 at 36-38. In response, Plaintiffs acknowledged *TransUnion* and then argued that they have "satisfied" the Supreme Court's "requirement that Plaintiffs demonstrate standing as to each of these [informational harm] claims." Dkt. 104 at 94. In reply, Florida Intervenors pointed out that Plaintiffs' claim of injury is different than the injury at issue in *TransUnion*. Dkt. 107 at 13.

*Fourth*, Plaintiffs argue that Florida Intervenors "introduce[d] two entirely new arguments based on recent legal developments, namely NEPA streamlining and the Supreme Court's decision in *Sackett v. EPA*, 598 U.S. 590 (2023), to which Plaintiffs have not had the ability to respond." Dkt. 109 at 7. Florida Intervenors' references to the two legal developments are similarly not "new matters" warranting surreply.

The first development referenced by Florida Intervenors is the Supreme Court's May 25, 2023 decision in *Sackett*, which Plaintiffs themselves discuss in their reply brief. Dkt. 105 at 54-55, 59 n. 44, and 70 n. 53 (acknowledging that "*Sackett* has narrowed the scope of wetlands covered by the Clean Water Act"). Florida Intervenors' reply brief responded that a "narrower scope of Section 404 jurisdiction means that fewer permits require Section 404 permit coverage, and similarly, fewer projects that require NEPA and/or ESA procedures." Dkt. 107 at 16.

The second legal development involves legislative changes to NEPA that went into effect on June 3, 2023. These NEPA amendments were enacted *before* Plaintiffs filed their reply brief. Notably, the day before Plaintiffs filed their reply brief, a lead plaintiff in this case, Center for Biological Diversity, issued a public statement claiming that this new law "dramatically weakens" NEPA and that these "unprecedented rollbacks will make certain projects exempt from environmental review."[2] They also explained that these new "statutory changes will bring increased uncertainty and strip away one of the most crucial legal tools" that members of "the public have to contest harmful projects." *Id*. Despite awareness of these NEPA amendments, which further undercut claims of informational injury, Plaintiffs chose to not address them in their reply brief.

*Fifth*, Plaintiffs say "Florida now contends that Plaintiffs 'already' hire experts and so are not harmed by the State's restrictive access to courts." Dkt. 109 at 7. This too is not new. For standing, Plaintiffs previously asserted that they spend money on hiring experts as a result of Florida's administration of the program. *See, e.g.,* Dkt. 104 at 96-97. Florida Intervenors responded that Plaintiffs "do not address how much more they are spending *over current expenditures*." Dkt. 107 at 19.

---

[2] Center for Biological Diversity, *Press Conference Monday to Explain Harms From Environmental Law Rollbacks* (Jun. 8, 2023), available at https://biologicaldiversity.org/w/news/press-releases/press-conference-monday-to-explain-harms-from-environmental-law-rollbacks-2023-06-08/.

*Sixth*, Plaintiffs argue that "as for member standing, Plaintiffs seek to respond to arguments based on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), that Florida makes for the first time on reply. In Florida's original filing, the State cited *Clapper* merely for the proposition that speculation of future harm cannot support standing." Dkt. 109 at 7 (internal citations omitted). However, as acknowledged by Plaintiffs, reference to *Clapper* is not new. In reply to Florida Intervenors' use of *Clapper*, Dkt. 102 at 45, Plaintiffs attempted to distinguish the case by arguing that the "same attenuated chain of events" present in *Clapper* is not present in the current case. Dkt. 104 at 100-101; *see also* Dkt. 43 a 41-42 (Plaintiffs discussing *Clapper* in other filings). Florida Intervenors' reply explained why Plaintiffs' "chain of events" is not sufficient for standing under *Clapper*. Dkt. 107 at 21-22.

*Seventh*, Plaintiffs "seek leave to respond to Florida's belated attempt to distinguish *WildEarth Guardians v. Jewell*, 738 F.3d 298 (D.C. Cir. 2013), after Plaintiffs pointed out they had failed to address the case in response to Plaintiffs' Motion." Dkt. 109 at 7 (internal citations omitted). Plaintiffs only cited *WildEarth Guardians* in its opening brief but did not discuss the case in any level of detail that would have warranted a response by Florida Intervenors. Dkt. 98 at 78. Then, in reply, Plaintiffs elaborated on the case, arguing its applicability. Dkt. 104 at 101-102. Florida properly responded by explaining why reliance on the case is misplaced. Dkt. 107 at 24-25.

*Eighth*, Plaintiffs "seek leave to respond to … Florida's mischaracterization of the Court's ruling in *Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019) in an attempt to distinguish it." Dkt. 109 at 7. Plaintiffs initially argued *Mozilla's* applicability in response to Florida's opening brief. Dkt. 104 at 102. Florida's reply explained why Plaintiffs' understanding of the case was incorrect. Dkt. 107 at 24-25.

6

*Ninth*, Plaintiffs seek leave to respond to "Florida's new reliance on a Department of Justice manual." Dkt. 109 at 7. Plaintiffs' reply argues that Florida's administration of the Section 404 program injures Plaintiffs' from a lack of adequate enforcement. *See* Dkt. 104 at 103-104. Florida Intervenors have argued that federal oversight and enforcement authority eliminates that claim of injury. *See, e.g.*, Dkt. 102 at 48; Dkt. 107 at 23, n.15. In their reply, Florida Intervenors referenced the Department of Justice manual for its recognition that federal enforcement authority still exists in contexts of shared federal-state responsibility. Dkt. 107 at 23-24. This is within the scope of the prior briefs and does not warrant a surreply.

*Tenth*, Plaintiffs seek to respond to "the State's exaggeration of EPA's oversight role as a stand-in for a state meeting minimum federal standards." Dkt. 109 at 7 (internal citations omitted). As noted above, Florida Intervenors have argued that federal oversight and enforcement authority eliminates Plaintiffs' claim of injury. *See, e.g.*, Dkt. 102 at 48; Dkt. 107 at 23, n.15. In reply, Plaintiffs stated that they "have already addressed the role of that oversight, and how it does not overcome the inadequacies of the state program." Dkt. 104 at 106. Plaintiffs also include a footnote stating that "EPA does not review every permit." *Id*. at 106, n. 69. Florida Intervenors responded to clarify Plaintiffs' vague statement concerning EPA's permit review process. Dkt. 107 at 23, n.15.

*Eleventh*, Plaintiffs "seek to rebut Florida's new, and false, assertions that … Plaintiffs failed to point to specific projects that show they are harmed by the [Incidental Take Statement's] unlawful extension of take protection." Dkt. 109 at 7-8 (internal citations omitted). Plaintiffs' voluminous declarations speak for themselves. Plaintiffs even talk about the "unlawful extension of take protection" in their opening brief. Dkt. 98 at 42-45. Florida Intervenors responded to that argument, *see* Dkt. 102 at 53-55, and Plaintiffs replied that the "transfer of authority has since allowed the State to issue permits with incidental take coverage obtained through the inadequate programmatic BiOp."

7

Dkt. 105 at 111. Florida Intervenors responded, explaining that Plaintiffs "have not been harmed by the issuance of the ITS and cannot point to any FDEP 404 permits that have resulted in or will result in inadequate take provisions." Dkt. 107 at 28. Florida Intervenors also explained that, to the extent a situation arose with the potential for unlawful take, Plaintiffs would have options at that time. *Id.* at 28 n. 18. This is not new at this stage in the case and does not warrant a surreply.

*Twelfth*, Plaintiffs "seek to rebut Florida's new, and false, assertions that… Plaintiffs argued their retained waters claim falls into an exception to the ripeness doctrine." Dkt. 109 at 8 (internal citations omitted). Plaintiffs' reply suggested that their challenge to the "program as a whole" is not subject to any ripeness challenge. Dkt. 104 at 112. Florida Intervenors responded to clarify why Plaintiffs are incorrect. Dkt. 107 at 29.

*Thirteenth*, Plaintiffs "seek to address Florida's new argument regarding the purported relevance of Michigan's process for modifying the Corps' retained waters list." Dkt. 109 at 8 (internal citations omitted). Plaintiffs relied on case law involving Michigan's retained waters list. Dkt. 104 at 108 and 113. Florida Intervenors responded by distinguishing those cases and clarifying the "fact-specific distinctions" that Plaintiffs ignored. Dkt. 107 at 29.

### III.   Conclusion

For the foregoing reasons, Plaintiffs' motion for leave to file a surreply should be denied.

Dated:  August 4, 2023

Respectfully submitted,
BAKER BOTTS L.L.P.

*/s/ Jeffrey H. Wood*
Jeffrey H. Wood (D.C. Bar No. 1024647)
700 K Street, NW
Washington, D.C. 20001
Phone: (202) 639-7700
jeff.wood@bakerbotts.com

Lily N. Chinn (DC Bar No. 979919)

101 California Street  
San Francisco, CA 94111  
Phone: (415) 291-6200  
lily.chinn@bakerbotts.com

Aaron M. Streett (TX Bar No. 24037561)  
Harrison Reback (TX Bar No. 24012897)  
(*pro hac vice*)  
910 Louisiana Street  
Houston, TX 77002-4995  
Phone: (713) 229-1234  
aaron.streett@bakerbotts.com  
harrison.reback@bakerbotts.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August 2023, I electronically filed the foregoing document using the CM/ECF system. Service was accomplished by the CM/ECF system.

                                                                                            Respectfully submitted,
BAKER BOTTS L.L.P.

*/s/ Jeffrey H. Wood*
Jeffrey H. Wood (D.C. Bar No. 1024647)
700 K Street, NW
Washington, D.C. 20001
Phone: (202) 639-7700
jeff.wood@bakerbotts.com