**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | |
| Plaintiffs, | |
| v. | **CASE NO.** 1:21-cv-00119 (RDM) |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants. | |

**PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF
MOTION FOR LEAVE TO FILE SUR-REPLY AND EXHIBIT**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .......................................................................................................... 1

STANDARD OF REVIEW ............................................................................................ 1

ARGUMENT .................................................................................................................. 2

   I.    The Defendants Raised New Matters Regarding the Endangered Species Act.................. 3

   II.   The Defendants Raised New Matters Regarding the Clean Water Act............................ 8

   III.  Florida Raised New Matters as to Standing and Justiciability....................................... 12

CONCLUSION............................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                   **Page(s)**

\*  *Akel v. U.S. Dep't of Just.,*
    578 F. Supp. 3d 88 (D.D.C. 2021) ...................................................................1, 3

    *Alexander v. FBI,*
    186 F.R.D. 71 (D.D.C. 1998) ...............................................................................2

    *City of Tacoma v. FERC,*
    460 F.3d 53 (D.C. Cir. 2006) ...............................................................................8

    *Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ...........................................................................................15

    *Conner v. Burford,*
    848 F.2d 1441 (9th Cir. 1988) .............................................................................6

    *Cooling Water Intake Structure Coal. v. EPA,*
    905 F.3d 49 (2d Cir. 2018) ..................................................................................6

    *Crutchfield v. Cnty. of Hanover,*
    325 F.3d 211 (4th Cir. 2003) .............................................................................10

    *Ctr. for Biological Diversity v. Regan,*
    597 F. Supp. 3d 173 (D.D.C. 2022) .....................................................................2

    *Defs. of Crooked Lake, Inc. v. Fla. Dep't of Env't Prot.,*
    2018 WL 3387900 (Fla. Div. Amin. Hrgs., May 7, 2018) ..................................10

    *Defs. of Wildlife v. U.S. Dep't of Navy,*
    733 F.3d 1106 (11th Cir. 2013) ...........................................................................6

\*  *Edelman v. SEC,*
    239 F. Supp. 3d 45 (D.D.C. 2017) ....................................................................1, 3

    *Friends of the Earth v. Hintz,*
    800 F.2d 822 (9th Cir. 1986) .............................................................................10

    *Gerber v. Norton,*
    294 F.3d 173 (D.C. Cir. 2002) .............................................................................5

\*  *Herbert v. Nat'l Acad. of Scis.,*
    974 F.2d 192 (D.C. Cir. 1992) ..........................................................................1, 3

*Lu v. Lezell*,
   45 F. Supp. 3d 86 (D.D.C. 2014) ............................................................2

*Mozilla Corp. v. FCC*,
   940 F.3d 1 (D.C. Cir. 2019) ...........................................................15, 16

*Nat'l Wildlife Fed'n v. Brownlee*,
   402 F. Supp. 2d 1 (D.D.C. 2005) ............................................................5

\*   *Plunkett v. U.S. Dep't of Just.*,
   249 F. Supp. 3d 73 (D.D.C. 2017) ................................................ *passim*

*Sackett v. EPA*,
   598 U.S. 590 (2023) ...............................................................................14

*Shafer & Freeman Lakes Env't Conservation Corp. v. FERC*,
   992 F.3d 1071 (D.C. Cir. 2021) ..............................................................8

*TransUnion v. Ramirez*,
   141 S. Ct. 2190 (2021) ..........................................................................14

*WildEarth Guardians v. Jewell*,
   738 F.3d 298 (D.C. Cir. 2013) .......................................................15, 16

\*   *Yanofsky v. U.S. Dep't of Com.*,
   2022 WL 2980344 (D.D.C. Mar. 31, 2022) .......................................1, 3

**State Regulations**

Fla. Admin. Code R. 62-331.210–248 .........................................................4

## INTRODUCTION

Plaintiffs have established good cause to have the opportunity to respond to new matters raised for the first time on reply.  Dkt. 3 at 4 ¶ 8.c.  Allowing Plaintiffs to address these matters would aid the Court's resolution of the pending motions for summary judgment because the Court would be able to consider fully developed arguments in a particularly complex case. Importantly, neither the Defendants nor Florida have shown that they would suffer any prejudice if leave were granted or explained why a sur-reply would not aid the Court's review.  Plaintiffs therefore respectfully request that their motion, Dkt. 109, be granted.

## STANDARD OF REVIEW

The Court of Appeals has recognized that for a court "[t]o consider an argument discussed for the first time in reply would be manifestly unfair" when the other party "has no opportunity for a written response." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992).  Allowing a sur-reply under these circumstances "is one way to rebalance the scales, ensuring that the Court has before it 'developed arguments' to decide pending motions on the merits." *Yanofsky v. U.S. Dep't of Com.*, No. CV 19-2290 (FYP), 2022 WL 2980344, at *2 (D.D.C. Mar. 31, 2022), *appeal dismissed*, No. 22-5204, 2023 WL 2043341 (D.C. Cir. Feb. 16, 2023).  Courts routinely grant leave to file a sur-reply "when a party is unable to contest matters presented to the court for the first time in the last scheduled pleading." *Edelman v. SEC*, 239 F. Supp. 3d 45, 54 n.5 (D.D.C. 2017).

The decision whether to grant leave to file a sur-reply is within the sound discretion of the Court. *Plunkett v. U.S. Dep't of Just.*, 249 F. Supp. 3d 73, 75 n.2 (D.D.C. 2017), *aff'd sub nom. Plunkett v. Doe*, No. 17-5087, 2018 WL 1388574 (D.C. Cir. Feb. 21, 2018).  Granting leave is appropriate where "the surreply is helpful to the adjudication of the motion for summary judgment" and the defendant is not prejudiced. *Akel v. U.S. Dep't of Just.*, 578 F. Supp. 3d 88,

94 n.1 (D.D.C. 2021).  *Accord Plunkett*, 249 F. Supp. 3d at 75 n.2 (allowing sur-reply as this

would provide "helpful clarification" and Department of Justice "would not be prejudiced"); *see*

*also Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 185 n.4 (D.D.C. 2022).  Sur-

replies can also be warranted to respond to factual assertions made for the first time on reply.

*Alexander v. FBI*, 186 F.R.D. 71, 74 (D.D.C.1998).  Where new matters are raised, "the Court

may either ignore those arguments" or allow the opposing party "an opportunity to respond[.]"

*Lu v. Lezell*, 45 F. Supp. 3d 86, 91 (D.D.C. 2014).

## ARGUMENT

Even though the Defendants and Florida had more pages to brief the issues, and a

sequential briefing schedule that allowed them to file their cross-motions for summary judgment

after Plaintiffs filed their motion, they still raised new matters for the first time on reply.  Dkt.

106 and 107.[1]  Many of these respond to arguments Plaintiffs have made from the outset, such

that the Defendants and Florida could have raised them in their cross-motions for summary

judgment.  Others are new matters to which Plaintiffs should be able to respond so that the Court

will have complete briefing on the issue.  Contrary to the opposing parties' suggestion, Plaintiffs

are not interested in re-hashing previous arguments.  But the Court should have the benefit of

their response to new matters raised for the first time on reply.  Because this case raises several

novel and complex issues, granting leave to complete this briefing with Plaintiffs' limited sur-

reply will be helpful to the adjudication of the issues and provide necessary clarification.

At the conclusion of briefing, Plaintiffs promptly sought leave to respond only to specific

matters raised for the first time on reply that required a response, which they identified in their

---

[1] Although Plaintiffs bear the burden in this case, the Defendants and Florida have had the
opportunity to file 185 pages of briefing (addressing merits and standing, respectively) as
compared to Plaintiffs' 170 pages (addressing both), as provided by the Court's January 23,
2023, Order.  *See* Dkt. 98, 99, 102, 104, 106, 107.

motion requesting leave.  *See* Minute Order Jan. 31, 2023; Dkt. 3 at 4 ¶ 8.c. ("Sur-replies will only be permitted upon a specific showing of good cause."); Dkt. 109.  Although the Defendants complain that Plaintiffs should have filed the proposed sur-reply with the motion, Plaintiffs have understood the Court's standing order as instructing them not to.  Dkt. 3 at 4 ¶ 8.c ("A party may not file a sur-reply without first obtaining leave of the Court."); *cf.* LCvR 7(i) (motion for leave to amend must be accompanied by proposed amended pleading).

Because Plaintiffs have demonstrated good cause for the relief requested, the sur-reply will aid the Court in resolution of the pending motions, and neither the Defendants nor Florida have identified any prejudice that would befall them if the Court were to allow a sur-reply, Plaintiffs respectfully request that the motion be granted.

## I.      The Defendants Raised New Matters Regarding the Endangered Species Act.

Plaintiffs seek leave specifically to respond to new arguments from the Defendants that could have been raised in their cross-motion, and to which Plaintiffs could then have responded. Plaintiffs do not seek to re-hash prior arguments as Defendants claim.  Because Defendants raised these matters for the first time on reply, Plaintiffs have not had the opportunity to respond. *Edelman*, 239 F. Supp. 3d at 54 n.5; *Yanofsky*, 2022 WL 2980344, at *2; *Herbert*, 974 F.2d at 196.  Allowing Plaintiffs to address these re-formulations of the Defendants' arguments will also aid the Court in the resolution of the pending ESA claims.  *Akel*, 578 F. Supp. 3d at 94 n.1; *Plunkett*, 249 F. Supp. 3d at 75 n.2.

In their opening brief, Plaintiffs argued that USFWS did not abide by the plain language of the ESA that requires USFWS to analyze the baseline status of species and the impacts of EPA's decision on species.  Dkt. 98 at 36–41.  It was not until their reply brief that the Defendants argued that Congress intended the Clean Water Act to override the ESA's statutory requirements and relied on *Home Builders* for that proposition.  Dkt. 106 at 44–45.  The

Defendants initially raised *Home Builders* only on the issue of whether the BiOp considered the impacts of the loss of NEPA review and ESA consultation, Dkt. 99 at 41, 67 n.19, and now acknowledge that they "expanded" their argument on reply, Dkt. 116 at 7–8.  But this was not an "expansion" of an argument related to the loss of NEPA review and ESA consultation on permits.  It was an entirely new argument staking out a much more consequential position going to the heart of Plaintiffs' ESA claims: whether USFWS was free to disregard ESA requirements for programmatic consultation in the name of Clean Water Act assumption.  Dkt 109 at 2.

On the issue of whether the BiOp considered the impact to species of the Florida program's general permits, the Defendants' convoluted objection to Plaintiffs' sur-reply is unnecessarily confusing.  To be clear: the State did not issue any individual *or* general 404 permits before assumption, but it did *promulgate* general permits that would be issued as part of the state 404 program.  Fla. Admin. Code R. 62-331.210–248.  Plaintiffs have argued from the start that USFWS was required to evaluate the anticipated impact of those general permits during its review of Florida's program but failed to do so.[2]  Dkt. 98 at 38.  The Defendants first argued that Florida had not issued any Section 404 general permits, Dkt. 99 at 66, which was inaccurate as general permits were promulgated as part of Florida's 404 program.  Fla. Admin. Code R. 62-331.210–248.  On reply, the Defendants acknowledged Florida's 404 general permits, but for the first time argued that it was appropriate for USFWS to ignore their impacts because they were "not issued pursuant to CWA Section 404."  Dkt. 106 at 31.

---

[2] Unlike individual permits, general permits are not reviewed through the technical assistance process.  EPA-HQ-OW-2018-0640-0002-A20, at 13 (404 Handbook) (explaining that applicants need only provide notice of activity to the State to receive coverage under certain general permits and are not even required to provide notice to have coverage under others).  Therefore, contrary to the Defendants' claim, Dkt. 116 at 8–9, USFWS will *never* review the impacts of these already promulgated general permits, not even through the unlawful technical assistance process that USFWS purports it will use for new general permits.

The Defendants made a similar pivot in an effort to defend their failure to consider impacts to nesting sea turtles.  Plaintiffs' opening brief argued that Section 404 permits in state-assumed waters may affect nesting sea turtles, e.g., through light pollution and sedimentation, but that neither EPA nor USFWS considered impacts to nesting sea turtles at all.  Dkt. 98 at 41.  In response, the Defendants only made the blanket statement that "the BiOp includes all ESA–considered species and their critical habitat; species-specific impacts will be addressed in the technical assistance process and on a permit-by-permit basis."  Dkt. 99 at 70.  It was not until on reply that the Defendants defended their (in)action by claiming Plaintiffs failed to show harm to nesting sea turtles.  Dkt. 106 at 35–36.  *Contra* Dkt. 116 at 9–10.[3]

The Defendants urge the Court not to hear Plaintiffs' response to their characterizations of cases Plaintiffs cited in their motion, but that the Defendants elected only to try to distinguish on reply.  The Defendants' argument that they were simply responding to Plaintiffs' reply fails because Plaintiffs cited the cases for the same proposition in their original motion, and therefore the Defendants could have attempted to distinguish the cases in their cross-motion but chose to wait until their reply.

In their opening brief, Plaintiffs relied on *Gerber v. Norton*, 294 F.3d 173 (D.C. Cir. 2002), which held that USFWS could not allow a regulated entity to make findings that USFWS was required to make.  Dkt. 98 at 47.  Plaintiffs relied on *Gerber* for the same proposition on reply.  Dkt. 104 at 26.  The same is true for *National Wildlife Federation v. Brownlee*, 402 F. Supp. 2d 1 (D.D.C. 2005).  *Compare* Dkt. 98 at 46 n.17 (citing *Brownlee* for its holding that

---

[3] The Defendants also misleadingly state that Plaintiffs introduced new declarations regarding sea turtles to support their reply brief, Dkt. 116 at 10, but the declarations discussing impacts to sea turtles were filed with Plaintiffs' opening brief, Dkt. 104 at 29 (citing Dkts. 98-2, 98-3).

USFWS could not avoid considering the effects of an action as a whole because there would be future analyses), *with* Dkt. 104 at 39 (same).

Similarly, Plaintiffs' opening brief cited *Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988), for its holdings that (1) the ESA on its face requires USFWS to consider all phases of an agency action in a BiOp; and (2) USFWS need not know the precise location and extent of site-specific activities to be able to analyze species impacts. Dkt. 98 at 42, 46 n.17. As the Defendants themselves acknowledged, Plaintiffs "continued" to rely on *Conner* in their reply brief. Dkt. 106 at 42; Dkt. 104 at 38–39. Although the Defendants discussed *Conner* in response to Plaintiffs' opening brief, it was not until the Defendants' reply that they argued the Court should ignore *Conner*, citing other authority for the first time, *Defenders of Wildlife v. U.S. Department of Navy*, 733 F.3d 1106 (11th Cir. 2013), which was not new and would have been known to them from the start. *Compare* Dkt. 99 at 74, 78, *with* Dkt. 106 at 42–44.

Additionally, Plaintiffs from the outset argued that *Cooling Water Intake Structure Coalition v. EPA*, 905 F.3d 49 (2d Cir. 2018), was wrongly decided, Dkt. 98 at 49 n.21. The Defendants failed to address Plaintiffs' argument head on in their cross-motion. *See* Dkt. 99 at 76 (asserting that Plaintiffs only distinguished *Cooling Water*). It was not until after Plaintiffs corrected the Defendants, Dkt. 104 at 46 n.21, that the Defendants for the first time on reply introduced new arguments about the persuasiveness of *Cooling Water*'s holding, rather than just discussing whether it was distinguishable. Dkt. 106 at 27–28. Plaintiffs should not be penalized for the Defendants' failure to contend with their argument the first time around, by allowing them to deal with it in the second round when Plaintiffs are unable to respond.

The Defendants also relied on annual reporting for the first time on reply to claim that this somehow substitutes for the ITS' failure to contain a measurable standard to determine when

take has been exceeded at the programmatic level.  But Plaintiffs had raised the issue of there

being no measurable standard for take exceedance in their opening brief, Dkt. 98 at 42–43, and

so the Defendants could have responded then, but declined to do so, waiting instead until their

reply.  *Compare* Dkt. 99 at 79, *with* Dkt. 106 at 39.

Similarly, Plaintiffs argued from the outset that USFWS unlawfully abdicated its

regulatory duty to reinitiate consultation when a new species is listed, Dkt. 98 at 43, but the

Defendants did not argue that transfer alone justified this decision until their reply brief.

*Compare* Dkt. 99 at 79, *with* Dkt. 106 at 40.  The Defendants contend that this fact is stated in

the BiOp, without citing where that might be stated in the BiOp.  Dkt. 116 at 13.  Plaintiffs have

searched in vain but cannot find such a statement, nor would that justify the Defendants' failure

to raise it in their cross-motion.

Plaintiffs also seek to respond to two inaccurate assertions on ESA issues that require

clarification and would aid the Court in resolving the cross-motions.  It is within this Court's

sound discretion to grant a sur-reply on these issues.  *Plunkett*, 249 F. Supp. 3d at 75 & n.2.

First, as for the baseline analysis, Plaintiffs' opening brief specifically identified all of the

ways that the BiOp's baseline analysis was inadequate because the BiOp is the document being

challenged in this litigation.  Dkt. 98 at 38–39.  The Defendants raised the BiOp's reliance on the

BE as a saving grace, Dkt. 99 at 68, without acknowledging that the BiOp is a near carbon copy

of the BE, which Plaintiffs reasonably pointed out in their response/reply, Dkt. 104 at 25.  On

reply, the Defendants misleadingly claimed that the only issue is whether USFWS properly

adopted the BE.  Dkt. 106 at 34.

Second, on reply the Defendants misleadingly claim that Plaintiffs "overlook[]"

governing caselaw and have "no legal support" for their argument regarding EPA's unlawful

reliance on the BiOp.  Dkt. 106 at 46–47.  The Defendants also continue to mischaracterize Plaintiffs' argument.  Dkt. 116 at 14 (arguing that Plaintiffs "overlooked" *City of Tacoma v. FERC*, 460 F.3d 53 (D.C. Cir. 2006), and urged the Court to apply an incorrect standard).  Plaintiffs seek to clarify how Plaintiffs (1) addressed both *City of Tacoma* and *Shafer & Freeman Lakes Environmental Conservation Corporation v. FERC*, 992 F.3d 1071 (D.C. Cir. 2021), with which the Defendants take issue; and (2) explained the rationale behind and inapplicability of the "new information" standard applied in *City of Tacoma*.  Dkt. 98 at 51–52 & n.24; Dkt. 104 at 49–51 & n.25.  This would aid the Court in understanding the issues and resolving them.

## II.     The Defendants Raised New Matters Regarding the Clean Water Act.

As with the ESA, the Defendants attempt to argue that the new matters identified by Plaintiffs are not entirely new or sufficiently new, but that is not the case here either.  The Defendants again have not shown that they would be prejudiced in any way.  A sur-reply would also be helpful to the Court's resolution of these matters.  *Plunkett*, 249 F. Supp. 3d at 75 & n.2.

Regarding the State's less stringent mens rea, the Defendants originally argued that the statute's "abate violations" language in Section 404(h)(1)(G) was so broad that states should have flexibility in deciding what to abate.  To bolster this argument, the Defendants pointed to the fact that Section 1319, which criminalizes negligent violations, is not specifically cited in Section 404(h)(1)(G).  Dkt. 99 at 51.  But on reply, the Defendants went many steps further, claiming that states are essentially free not to meet the minimum standards of *any* provision of the Act not specifically enumerated in Section 404(h)(1)(G).  Dkt. 106 at 18 & n.5 (arguing there is no "free-floating stringency test" or "generally applicable stringency requirement" for Clean Water Act standards not referenced).  This new position has implications not only for the mens rea claim, but also for other standards a state must meet to qualify for assumption.

The Defendants' reply also introduced a new argument that would treat criminal intent not as an element of an offense (as blackletter criminal law provides) but instead as merely a penalty factor. This statutory argument is different from the Defendant's initial attempt to extend caselaw relating to penalty requirements to the very different issue of what constitutes a violation in the first place. The Defendants admit the argument is new but argue that it was in response to Plaintiffs' supposedly "evolving" legal theories and that Plaintiffs therefore should not be permitted an opportunity to respond. Dkt. 116 at 15.

Also, in their opening brief, Plaintiffs argued that the 404(b)(1) Guidelines require the Corps to evaluate chemical contamination generally, while the State program limits that consideration only to situations where that chemical contamination may violate water quality standards. Dkt. 98 at 65–66. The Defendants' cross-motion failed to respond to this argument and authority directly, instead cherry-picking *other* provisions where the State and federal programs overlap. Dkt. 99 at 48–49. It was not until reply that the Defendants relied on other terms ("possibility of presence" of contamination), testing requirements, and general contamination definitions that had not been raised before and thus are not fully briefed. Dkt. 106 at 10–12. The Defendants suggest it was "their right" to introduce these new arguments on reply because Plaintiffs' response/reply raised something new as well. Dkt. 116 at 16. But Plaintiffs made this argument at the outset in their opening brief. Dkt. 98 at 65–66 (citing 404 Handbook 8.2(g) and 40 C.F.R. § 230.60, which specifically references § 230.11).

The Defendants also raised new arguments on reply to defend EPA's unlawful approval of a state program that relies on an applicant's reasonable assurances about the impacts of a project, including water quality and wildlife, rather than the State agency's duty to make findings and independently assess about those impacts, which is required in the Corps' program. Dkt. 98

at 61–64.  The Defendants' cross-motion asserted that the State must write things down and that the Corps also relies on applicant submitted information, which it must critically evaluate.  Dkt. 99 at 46–47.  Because EPA did not claim any such thing in its response to comments when it approved Florida's program, Plaintiffs explained that the Court should not consider those *post-hoc* arguments.  Dkt. 104  at 69–70.  On reply, the Defendants introduced new authority and raised novel arguments to justify their use of *post-hoc* rationalizations.  Dkt. 106 at 12–14.

Similarly, Defendants raised new arguments on reply regarding *Crutchfield v. County of Hanover*, 325 F.3d 211 (4th Cir. 2003) and *Friends of the Earth v. Hintz*, 800 F.2d 822 (9th Cir. 1986).  The Defendants' cross-motion cited those cases in a string cite, Dkt. 99 at 47, but greatly expand their discussion and include analysis of the lower court's decision in *Crutchfield*, which it had not cited previously, Dkt. 106 at 14–15.  And as for *Defenders of Crooked Lake, Inc. v. FDEP*, No. 17-5328, 2018 WL 3387900 (Fla. Div. Amin. Hrgs. May 7, 2018), although Plaintiffs cited this case in their opening brief to show that administrative law judges do not assess whether the State had reasonably analyzed the applicant's submission nor whether an applicant's reasonable assurances were adequate, Dkt. 98 at 63, the Defendants' cross-motion did not respond to this argument head on, Dkt. 99 at 48.  It was not until reply that the Defendants disputed Plaintiffs' analysis of *Defenders of Crooked Lake*.[4]  Dkt. 106 at 15–16.

As to retained waters, the Defendants do not squarely address Plaintiffs' request to respond to their new claim that the Corps had never previously taken a position on assumable waters that it later changed at Florida's behest.  Instead, they claim that Plaintiffs' opening brief "nowhere mention[ed]" traditionally navigable waters ("TNWs") as to the retained waters list,

---

[4] Although Plaintiffs briefly discussed *Defenders of Crooked Lake* again in their reply brief, Dkt. 104 at 72–73, that does not justify the Defendants' decision to respond only on reply to the same substantive arguments that Plaintiffs made in their opening brief.

and that this issue was raised only in Plaintiffs' response/reply.  Dkt. 116 at 17.  But this is flat

wrong.  *See* Dkt. 98 at 26–27 (asserting that Corps changed its position on assumable waters,

adopting majority position of EPA's Assumable Waters Subcommittee, rather than Corps' prior

position as articulated while on Subcommittee); *id.* at 27 n.11 (Corps' prior position included

that TNWs under the Clean Water Act were retained waters); *id.* at 70–71 & nn. 34–35

(objecting to Corps' omitting of waters from the 2017 list); *id.* at 69–70.[5]  The Defendants could

have disputed that the Corps changed its position in their cross-motion.  Dkt. 99 at 27–28.  But it

was not until their reply that the Defendants claimed for the first time that the Corps *never* had a

position on assumable waters before 2018.[6]  Dkt. 109 at 5 (citing Dkt. 106 at 24–25).

The Defendants also claim that Plaintiffs failed to raise the Corps' failure to consider the

2017 list and all public comments in their opening brief.  Dkt. 116 at 17.  But from the start,

Plaintiffs averred that the Corps had used only the 2014, and not the 2017, list for its retained

waters list.  Dkt. 98 at 27, 72.  The issue appeared to be uncontested.  Dkt. 109 at 5 (citing

Defendants' cross-motion, which stated that Corps used only 2014 list and "refined" it by

removing certain waters); *see also* Dkt. 99 at 61–62 (dismissing 2017 list as merely a "draft" and

defending Corps' refusal to study 2017 list as "time-consuming and, likely, contentious," making

it reasonable for Corps to rely "instead" on 2014 list).  It was not until their reply that the

Defendants claimed that the Corps had considered the 2017 list at all.  Similarly, in their opening

brief, Plaintiffs objected to the cessation of the 2018 navigability assessment, Dkt. 98 at 72, and

---

[5] Plaintiffs also repeatedly objected to the exclusion of waters on the 2017 list, which contained
Clean Water Act TNWs, while the 2014 list did not.  *See* Dkt. 98 at 24–25; Dkt. 99 at 27, 61–62.
[6] The email Plaintiffs ask the Court to consider confirms that the Corps was proceeding with a
navigability assessment consistent with the Corps' position, as articulated on the Assumable
Waters Subcommittee, until it reversed course.  Dkt. 109 at 5–6.  The Defendants argue that
Plaintiffs should have sought to have this document added to the record sooner.  Dkt. 116 at 13.
But Plaintiffs had no reason to seek relief until the Defendants created a factual dispute on reply.

11

the Defendants could have argued in response that the Corps considered all comments submitted for that assessment.  But they did not, saving this argument instead for their reply.

The Defendants next ask the Court not to hear Plaintiffs' response to their new claim that Plaintiffs failed to identify "any flaws" in the retained waters list, Dkt. 109 at 6, on the theory that Plaintiffs have had ample opportunity to submit this information.  Dkt. 116 at 17.  But the Defendants' claim is misleading, and Plaintiffs should be permitted to point that out.[7]

Lastly, the Defendants snarkily claim that because "[a]nyone with an internet connection" can verify whether the Corps' 2017 list is available online as of *today*, there is no need for the Court to consider whether that list was published to the Corps' website at the time it was developed.[8]  Dkt. 116 at 17–18.  But the Defendants created a factual issue on reply by suggesting that the link by which Plaintiffs accessed the 2017 list *at the time* was never published to the Corps "public" website.[9]  Dkt. 109 at 6.  Plaintiffs should be permitted to respond.

## III.   Florida Raised New Matters as to Standing and Justiciability.

Despite having had four prior opportunities to brief their challenges to Plaintiffs' standing in this case (at both the partial and final summary judgment phases), Florida still raised new arguments in their reply brief.  Because these arguments are new and could have been raised previously, Plaintiffs should have the opportunity to respond.  As to ripeness, allowing Plaintiffs

---

[7] Plaintiffs have identified numerous flaws with the retained waters list, including its exclusion of Clean Water Act TNWs, historic use waters, numerous waterways identified by Plaintiffs in their comment letters, and specific waterways identified by declarants.  *See* Dkt. 98 at 25–26, 72, 81; Dkts. 98-12, 98-13, 98-14; and Dkt. 104 at 74–86, 112–114.

[8] The fact that the 2017 list was published at the time, and therefore made known to the regulated community, undermines the Defendants' argument that it was reasonable for the Corps to rely only on the 2014 list, because that list was known to the regulated community, and to disregard the 2017 list because it was merely a draft.

[9] While the Defendants could simply have conceded this fact, their obstinacy requires Plaintiffs to offer the Defendants' own internal email that confirms the list's publication.  Dkt. 109 at 6. And again, Plaintiffs had no reason to seek relief until the Defendants disputed this fact on reply.

to respond to Florida's new mischaracterizations would aid the Court in resolution of the cross-motions for summary judgment.

First, Florida objects to Plaintiffs' having the opportunity to respond to new matters raised in Justin Wolfe's supplemental declaration on the basis that the State offered that declaration only in response to declarations submitted by the Plaintiffs. Dkt. 117 at 2–3. But Wolfe's supplemental declaration was not so limited and Plaintiffs should be permitted to respond on specific points, namely: (1) his claim that water quality in Biscayne Bay is not affected by the 404 program only because the Bay itself is a retained water; (2) his incorrect suggestion that BiOps are *only* made publicly available after the federal permit process is completed; and (3) his claim that Plaintiffs are not harmed by Florida's fee shifting law because the example they cited did not involve FDEP.[10]

Regarding informational harms, Florida's claim that they did not raise new matters on reply fails. Plaintiffs demonstrated in their opening brief that they have standing for Claims Two, Seven, and Ten because Plaintiff organizations have been harmed by the loss of information that they would otherwise have through NEPA review and ESA consultation on 404 permits considered by the Corps. Dkt. 98 at 75–77, 80–81. Plaintiffs' evidence included a declaration by Ms. Crooks that specifically discussed the level of NEPA review the Corps had intended to complete for Troyer Mine. Dkt. 98-1 at 12–13 (Crooks Dec. ¶ 35). While Florida's cross-motion discussed the status and information applicants submitted for some of the projects Plaintiffs identified, including Troyer Mine, Dkt. 102 at 27; Dkt. 102-1 at 7–8, 20 (Wolfe Dec. ¶ 22 & enc. A), it did not assert that any of the projects, let alone Troyer Mine in particular,

---

[10] To be clear, Plaintiffs are not seeking leave to file a declaration, but would respond to these assertions in the sur-reply.

would not be subject to NEPA review.  Florida made this argument for the first time on reply,

Dkt. 107 at 13–15, and Plaintiffs should therefore have an opportunity to respond.

Additionally, contrary to Florida's argument, the State raised entirely new issues in their

reply brief regarding *TransUnion v. Ramirez*, 141 S. Ct. 2190 (2021), *Sackett v. EPA*, 598 U.S.

590 (2023), and the Fiscal Responsibility Act of 2023, which amended parts of NEPA.

Florida's cross-motion cited *TransUnion* only for the general proposition that standing is

not dispensed in gross, suggesting that Plaintiffs had not alleged harm as to any particular claim.

Dkt. 102 at 36, 38.  It was not until their reply that Florida argued for the first time that the type

of information loss Plaintiffs have sustained is not cognizable, relying on *TransUnion* as

recognizing only harm resulting from the disclosure of "private information."  Dkt. 107 at 13.

Florida next argues that because Plaintiffs cited *Sackett* as to merits arguments, they

should have somehow anticipated Florida's reliance on the case to challenge Plaintiffs' standing.

Dkt. 117 at 5.  But Plaintiffs do not believe the case has any bearing on their standing (as there

have been no changes to the pending project applications on which Plaintiffs rely), and therefore

had no reason to anticipate that Florida would inject *Sackett* as a standing issue.

As for the Fiscal Responsibility Act, Florida similarly avers that because changes were

made to NEPA prior to Plaintiffs' reply, Plaintiffs should have anticipated Florida's convoluted

effort to argue that these changes affect their standing.  *Id.* at 5.  But Plaintiffs do not believe

those changes—which include things such as setting page limits for certain NEPA documents,

but do not alter the information or analyses required under NEPA—affect their standing.[11]  The

---

[11] Florida's reliance on public statements by one of the Plaintiffs is misguided, as that statement
related to the impact of the Fiscal Responsibility Act on NEPA as to all major federal actions,
which is much broader than its impact on the 404 program.  The Act made no meaningful
changes to NEPA that affect Section 404 permits, nor has Florida identified any.

same is true for language regarding a federal agency's ability to independently assess and use information provided by applicants, as this was already the case in practice under NEPA and therefore has no bearing on Plaintiffs' standing. Plaintiffs were not obligated to cite that change on reply because their position is that it does not affect their standing.

In addition to informational harms, Plaintiffs have argued from the outset that their organizations are harmed by the transfer of 404 authority because to challenge a state 404 permit, they must now bear the high costs of hiring experts to testify in a de novo administrative trial. Dkt. 98 at 75–76. In their cross-motion, Florida contended that Plaintiffs are free to rely on their comments at trial, Dkt. 102 at 46 n.26, rather than presenting a full case with expert testimony and factual evidence. It was not until their reply that Florida argued that Plaintiffs are not harmed because they already hire experts. Dkt. 107 at 18–19.

Similarly, regarding member harms, Florida objects to Plaintiffs' having the opportunity to respond to their new argument that Plaintiffs' members' harms are too attenuated to satisfy the standard established in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013). Dkt. 117 at 6. But Florida does not dispute that this argument is new, and allowing Plaintiffs to respond would aid the Court and not prejudice Florida in any way. *See Plunkett*, 249 F. Supp. 3d at 75 & n.2. Plaintiffs should be afforded the opportunity to explain why Florida's attempt to artificially expand the reach of *Clapper* is erroneous and should be rejected.

Florida also raised new arguments to support its argument that Plaintiffs must separately show standing for one particular flaw in the State program, the State's less stringent mens rea. Florida objects to the Court hearing from Plaintiffs on the State's belated attempt to distinguish *WildEarth Guardians v. Jewell*, 738 F.3d 298 (D.C. Cir. 2013), and its mischaracterization of the ruling in *Mozilla Corporation v. FCC*, 940 F.3d 1 (D.C. Cir. 2019), Dkt. 117 at 6, two

15

precedential decisions Florida claimed on reply are "of no relevance" to this case.  Dkt. 107 at

24.  Florida does not dispute that it failed to distinguish (or even address) *WildEarth Guardians*

*v. Jewell* in its cross-motion, claiming instead that it could wait until its reply because the

Plaintiffs did not discuss the case "in any level of detail."  Dkt. 117 at 6.  But the Plaintiffs cited

the case as supporting their standing, and Florida said nothing in response until their reply.

Florida's mischaracterization of the Circuit Court's ruling in *Mozilla Corporation* also warrants a

response, as this will aid the Court in resolution of the arguments presented.

Florida does not dispute that its reliance on a Department of Justice manual appeared

only for the first time in its reply.  Dkt. 117 at 7.  The State's reliance on a document outside of

the administrative record, and referenced for the first time on reply, warrants a response.  Florida

offers no explanation for why it did not rely on the manual in its cross-motion.

Next, Plaintiffs seek to correct false assertions and new arguments regarding ripeness that

Florida raised for the first time in its reply.  This would provide useful clarifications and ensure

that these issues are fully briefed.  Dkt. 109 at 7–8.  Although Florida argues that none of the

issues are new, Dkt. 117 at 7–8, they fail to explain why clarification would not help the Court or

how Florida would be prejudiced by a sur-reply.  *See Plunkett*, 249 F. Supp. 3d at 75 & n.2.  As

to Plaintiffs' ITS claim specifically, when Florida raised ripeness concerns in its cross-motion, it

failed to allege that Plaintiffs had not identified any State 404 permits that have resulted in or

will result in inadequate take provisions.  It introduced that argument for the first time on reply,

ignoring Plaintiffs' identification of State 404 permits that have had inadequate take protections,

Dkt. 104 at 111.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant their motion

for leave to file a sur-reply and exhibit, Dkt. 109.

16

Dated: August 11, 2023

Respectfully submitted,

/s/ Tania Galloni
TANIA GALLONI*
Fla. Bar No. 619221
CHRISTINA I. REICHERT*
Fla. Bar No. 0114257
Earthjustice
4500 Biscayne Blvd., Ste 201
Miami, FL 33137
T: 305-440-5432
F: 850-681-0020
tgalloni@earthjustice.org
creichert@earthjustice.org

/s/ Bonnie Malloy
BONNIE MALLOY*
Fla. Bar No. 86109
Earthjustice
111 S. Martin Luther King Jr. Blvd
Tallahassee, FL 32301
T: 850-681-0031
F: 850-681-0020
bmalloy@earthjustice.org

/s/ Anna Sewell
ANNA SEWELL
D.C. Bar No. 241861
Earthjustice
1001 G St., Ste 1000
Washington, DC 20001
T: 202-667-4500
asewell@earthjustice.org

*Counsel for Plaintiffs*

* Appearing under LCvR 83.2(c)(1))

17

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of August 2023, I electronically filed the foregoing

document using the CM/ECF system. Service was accomplished by the CM/ECF system.


Respectfully submitted,

/s/ Tania Galloni
TANIA GALLONI
Fla. Bar No. 619221
Earthjustice
4500 Biscayne Blvd., Ste 201
Miami, FL 33137
T: 305-440-5432
F: 850-681-0020
tgalloni@earthjustice.org