UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CENTER FOR BIOLOGICAL DIVERSITY,
*et al.*,

       *Plaintiffs*,

    v.

MICHAEL S. REGAN, *et al.*,[1]

       *Defendants*.

Civil Action No. 21-119 (RDM)

---

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' renewed partial motion for summary judgment, Dkt. 78, Defendants' renewed partial cross-motion for summary judgment, Dkt. 82, and Intervenors' renewed partial cross-motion to dismiss, Dkt. 83; Dkt. 84.[2]  These motions pose a single question:  Whether Plaintiffs' claim that the Environmental Protection Agency ("EPA")

---

[1] The Court automatically substitutes the current Administrator of the EPA, Michael Regan, in the case caption.  *See* Fed. R. Civ. P. 25(d) (providing that "when a public officer . . . ceases to hold office while the action is pending . . . [t]he officer's successor is automatically substituted as a party").

[2] Dkt. 84 is a supplemental brief submitted by the Florida Chamber of Commerce and Association of Florida Community Developers ("Florida Amici").  As previously noted, the Florida Amici separately moved to intervene in this action.  Dkt. 29.  This Court denied that motion without prejudice, Dkt. 30, and invited both entities either to renew their motion or to seek leave to participate in this matter as amici.  The Florida Amici filed a renewed motion to intervene, Dkt. 32, and the Court again denied intervention but granted the Florida Amici leave to file a response to Plaintiffs' motion for partial summary judgment, Dkt. 38; Dkt. 39, which this Court considered in resolving those motions, *see Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 185 n.3 (D.D.C. 2022).  The Court has likewise considered the Florida Amici's supplemental brief at this juncture.

violated the Administrative Procedure Act ("APA") by making its approval of Florida's Section

404 program effective immediately upon publication in the Federal Register—rather than no less

than 30 days after publication—is redressable.  For the following reasons, the Court concludes

that it is not.  The Court, accordingly, will **DENY** Plaintiffs' renewed motion for partial

summary judgment, Dkt. 78, will **GRANT** the EPA's renewed cross-motion for partial summary

judgment, Dkt. 82, and will **GRANT** the State of Florida and Florida Department of

Environmental Protection's renewed motion to dismiss, Dkt. 83.

## I. BACKGROUND

This Court has previously described the statutory and factual background of this case in

detail, *see Center for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 180–85 (D.D.C. 2022)

(hereinafter "*CBD I*"), and, for present purposes, recounts only the context necessary for the

disposition of the pending motions.  At the core of this case is Section 404 of the Clean Water

Act, which governs the issuance of permits for "the discharge of dredged or fill material into the

navigable waters at specified disposal sites."  33 U.S.C. § 1344(a).  Although the Army Corps of

Engineers ("Corps") is usually responsible for the issuance of these permits, a state may submit

an application to the EPA, seeking authority to "administer its own individual and general permit

program for the discharge of dredged or fill material into the navigable waters . . . within its

jurisdiction."  *Id.* § 1344(g)(1); *see also* 40 C.F.R. § 233.1(a); Dkt. 1 at 16 (Compl. ¶ 68) ("The

Corps is charged with administering permits under [S]ection 404 of the Clean Water Act . . . .").

On August 18, 2020, the State of Florida applied to administer the Section 404 permitting

program within its borders.  Dkt. 55 at 433.  The EPA deemed the State's application complete

on August 20, 2020, Dkt. 56-1 at 684, triggering a statutory 120-day period for the agency to

review the application, *see* 33 U.S.C. § 1344(h)(1); 40 C.F.R. § 233.15(a).  On September 16,

2020, the EPA issued a public "[n]otice and request for comments" on Florida's Section 404 permitting program application and announced that the EPA would hold two "virtual hearings" on the application in October 2020.  Dkt. 51 at 1.  The EPA "recommend[ed] that commenters also submit the text of their oral comments . . . as written comments to the rulemaking docket." *Id.* at 2.  The EPA explained that "verbatim transcripts of the sessions w[ould] be included in the rulemaking docket."  *Id.*  If the EPA ultimately "approve[d] this program," the agency added, it planned to "codify the approved program in 40 CFR 233 subpart H," *id.* at 3, where the EPA had codified the only two state Section 404 permitting programs that the agency had approved, *see* 49 Fed. Reg. 38,947 (Oct. 2, 1984) (Michigan) (codified at 40 C.F.R. § 233.70); 59 Fed. Reg. 9,933 (Mar. 2, 1994) (New Jersey) (codified at 40 C.F.R. § 233.71).  The EPA received over 3,000 comments in response to its notice, Dkt. 56-1 at 433, including comments from the Plaintiffs in this case, who argued, among other things, that Florida's application was incomplete, Dkt. 55-3 at 69; Dkt. 56 at 17, and that Florida was "not equipped to administer and enforce Section 404," Dkt. 56 at 17.

On December 17, 2020, the EPA Administrator, Andrew Wheeler, announced approval of Florida's program, and the agency published a notice of approval in the Federal Register on December 22, 2020.  Dkt. 56-1 at 433–34; *see also* 85 Fed. Reg. 83,553 (Dec. 22, 2020).  That notice, which was signed by the Regional Administrator, asserted that the EPA had "determined that the State of Florida ha[d] the necessary authority to operate a CWA Section 404 program in accordance with the requirements found in CWA section 404(g-1) and [the] EPA's implementing regulations."  Dkt. 56-1 at 433.  The notice further asserted that the "EPA has taken final action to approve Florida's assumption of the program" and that "Florida's program assumption [was] applicable December 22, 2020," *id.*, which was the day the notice was published in the Federal

Register, *see* 85 Fed. Reg. 83,553 (Dec. 22, 2020).

That same day, Earthjustice (which serves as counsel for Plaintiffs in this matter) sent a letter to the EPA asserting that the "EPA's transfer of authority was unlawful." Dkt. 31-1 at 6 (Crooks Decl. ¶ 19); *see also id.* at 100–01 (Crooks Decl., Ex. D) (letter). Among other things, the letter argued that, under the APA, "[t]he required publication or service of a substantive rule shall be made not less than 30 days before its effective date." *Id.* at 100 (Crooks Decl., Ex. D) (quoting 5 U.S.C. § 553(d)). Because, according to the letter, the EPA's approval of Florida's Section 404 program constituted a "substantive rule" for purposes of 5 U.S.C. § 553(d) and because none of the relevant exceptions applied, the EPA lacked authority to make its approval immediately effective. *Id.* The letter further noted that the EPA had failed to "codify [Florida's] program in the Code of Federal Regulations," as was required by the Federal Register Act. *Id.* at 101 (Crooks Decl., Ex. D). The letter concluded: "The state program therefore does not have the force of law, and the authority to administer Section 404 of the Clean Water Act in Florida remains with the U.S. Army Corps of Engineers." *Id.*

The EPA did not respond to Earthjustice but, instead, sent a letter to the Florida Department of Environmental Protection ("FDEP") on December 28, 2020, asserting—"for the first time," according to Plaintiffs—that the EPA's approval of Florida's application "did not have to meet the 30-day requirement [and that the EPA did not have to] codify the state program because [the agency's approval] was an informal adjudicatory order, rather than a rule." *Id.* at 6 (Crooks Decl. ¶ 19); *see also id.* at 103–04 (Crooks Decl., Ex. E). In that letter, the EPA's acting general counsel, David Fotouhi, acknowledged the "letter from Earthjustice questioning the effective date of Florida's 404 assumption." *Id.* at 103 (Crooks Decl., Ex. E). But Fotouhi maintained that the EPA's immediate effective transfer of Section 404 authority to the State of

4

Florida complied with the Clean Water Act and its implementing regulations as well as the relevant provisions of the APA.  *Id.* at 103–04 (Crooks Decl., Ex. E).  As for Earthjustice's invocation of the APA's 30-day-notice requirement, 5 U.S.C. § 553(d), Fotouhi observed that "[a]gencies may use adjudications to apply general rules to address specialized or fact-specific questions," and he argued that the "EPA's approval of Florida's Section 404 program was an adjudication, not a rulemaking," meaning that "the APA's requirement that the effective date of a rule generally be delayed for 30 days d[id] not apply."  *Id.* at 104 (Crooks Decl., Ex. E) (internal citation omitted).

On January 14, 2021, the EPA published a "Pre-Publication Notice" indicating that the agency intended to "update[e] the Code of Federal Regulations" to "reflect its approval" of Florida's Section 404 program.  Pre-Publication Notice, EPA, *Codifying EPA's Adjudicatory Decision on Florida's Clean Water Act Section 404 Program Request*, at 1 (Jan. 14, 2021), https://www.epa.gov/sites/default/files/2021-01/documents/pre-publication_frn-_fl_404_codification_final_rule_.pdf ("Pre-Publication Notice").  That notice mirrored the Fotouhi letter and repeated his assertion that the "EPA's approval of Florida's program was not an Agency rule" subject to the 30-day-notice requirement.  *Id.* at 4.  Although the notice did acknowledge that the codification of that decision—as opposed to the decision itself—might itself constitute a rule, the EPA nonetheless concluded that (1) the codification process did not require an opportunity for notice and comment, because the EPA had "already determined that Florida ha[d] met the requirements for" assuming the CWA permitting authority, and (2) good cause existed for making "this final *rule*"—that is the *codification* of what the EPA characterized as a prior *adjudication*—"effective immediately."  *Id.* at 5 (emphases added).  According to the notice, "[b]ecause this rule merely codifies an adjudication that is already effective, the rationale

5

for delayed effectiveness . . . does not apply." *Id.*

Plaintiffs, seven environmental organizations,[3] filed this suit on January 14, 2021,
alleging that "[t]he EPA's actions failed to effectuate a lawful transfer of authority." Dkt. 1 at 3,
10–14 (Compl. ¶¶ 1, 40–53).  Plaintiffs allege, as relevant to the pending motions, that the EPA's
decision to give immediate effect to Florida's Section 404 program violated 5 U.S.C. § 553(d),
which requires agencies to publish final, substantive rules "not less than 30 days before [their]
effective date." *Id.* at 46–47 (Compl. ¶ 229–39).  On January 20, 2021— six days after bringing
suit and the day the new administration took office—Plaintiffs returned to the EPA and "asked
[the agency] to cure the immediate effective date and failure to codify violations regarding
[Florida's] program." Dkt. 31-1 at 8 (Crooks Decl. ¶ 24); *see also id.* at 106–29 (Crooks Decl.,
Ex. F) (letter).  Plaintiffs proposed two possible ways to cure these asserted defects:  First, the
EPA could either "recognize that the transfer of authority [wa]s not . . . legally effectuated, and
[to] so notify the public and the state." *Id.* at 107.  Or, alternatively, it could "publish the notice
of approval and codification of the state program as a rule" but "postpone the effective date of
that rule pending judicial review," pursuant to 5 U.S.C. § 705. *Id.*; *see id.* at 110–23.  The EPA
never responded to this request and, as Plaintiffs note, has instead "adhered to its position that
the immediate effective date was lawful," thereby "prohibiting the agency from considering"
Plaintiffs' request for a Section 705 stay. *Id.* at 8 (Crooks Decl. ¶ 24).

Plaintiffs did not seek a temporary restraining order or preliminary injunction in this
Court.  They did, however, seek leave to file an early motion for partial summary judgment,
including on Count Eight of their complaint, which alleges that the EPA failed to provide the

---

[3]  The seven organizations are the Center for Biological Diversity, Defenders of Wildlife, the
Sierra Club, the Conservancy of Southwest Florida, Florida Wildlife Federation, Miami
Waterkeeper, and St. Johns Riverkeeper. Dkt. 1 at 10–14 (Compl. ¶¶ 40–53).

required 30 days' notice between publication of the rule and its purported effective date.  *See* Dkt. 1 at 46–47 (Compl. ¶¶ 228–39); Dkt. 21 (Jan. 29, 2021).  After hearing from the parties, the Court granted that request and set a briefing schedule, *see* Min. Entry (Feb. 17, 2021), and, consistent with the Court's order, Plaintiffs filed their motion for summary judgment on Counts Eight and Nine of their complaint on March 5, 2021, Dkt. 31, and the EPA cross-moved for summary judgment on those same counts on April 26, 2021, Dkt. 34.  The State of Florida and FDEP (collectively, "Florida" or "the State") intervened to defend the EPA's decision and cross-moved to dismiss Plaintiff's complaint in its entirety for lack of standing and moved to dismiss Counts Eight and Nine for failure to state a claim, Dkt. 36; Dkt. 37.  After briefing and oral argument, the Court denied Florida's motion to dismiss Plaintiff's complaint in its entirety, denied in part Plaintiffs' motion for partial summary judgment as to Count Nine (and granted the EPA's and Florida's cross-motions on that same Count), and denied in part without prejudice Plaintiffs' motion as to Count Eight.  *CBD I*, 597 F. Supp. 3d at 213.

As for Count Eight, the Court rejected two of the three theories of procedural injury advanced by Plaintiffs.  First, the Court was "unpersuaded that Plaintiffs have standing based on the theory that the EPA's failure to delay the effective date 'forced [them] to divert resources away from core programmatic actions and focus instead on the immediately effective state 404 program.'"  *Id.* at 196 (quoting Dkt. 31 at 42).  "[E]ven if Plaintiffs suffered concrete injuries" at the time of the immediate effective date, the Court explained, "such injuries are no longer redressable" by the declaratory and injunctive relief that Plaintiffs now seek.  *Id.*  Second, the Court rejected the contention that, because of the EPA's alleged violation of Section 553(d), Plaintiffs lost the procedural right to "petition for the issuance, amendment, or repeal of [the] rule" under 5 U.S.C. § 553(e).  *Id.* at 197–98.  "[E]ven assuming the existence of a procedural

right under Section 553(e), and even assuming that the EPA deprived them of that right," the Court concluded that Plaintiffs could not "trace th[e] deprivation to the Section 553(d) violation alleged in Count Eight" because the loss of Plaintiffs' right to seek reconsideration did not flow "from the immediate effective date" on December 22, 2020, but, rather, "from the EPA's announcement" on December 28, 2020 "that its approval of Florida's Section 404 application was an informal adjudication, and not a rulemaking." *Id.* at 198. Although the Court concluded, in resolving Count Nine, that the "action that Plaintiffs challenge was, in fact, a rulemaking," *CBD I*, 597 F. Supp. 3d at 212, the Court did not reach the question with respect to Count Eight.

Plaintiffs' final theory of standing—that the alleged violation of Section 553(d) deprived Plaintiffs of their right to seek a stay under 5 U.S.C. § 705 before the rule went into effect— presented a closer question. Section 705 provides that, "[w]hen an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review." 5 U.S.C. § 705. Plaintiffs argued that "the prior Administration's immediate effective date . . . blocked the new Administration's authority to consider staying [the] EPA's actions pending judicial review and has denied Plaintiffs the right to seek that relief to protect their interests," Dkt. 31 at 15; in other words, "[t]he agency, in effect, precluded Plaintiffs from even 'ask[ing] the agency to postpone the effective date of its' transfer of Section 404 authority to the State of Florida 'pending judicial review' before this Court," *CBD I*, 597 F. Supp. 3d at 202 (quoting Dkt. 31-1 at 8 (Crooks Decl. ¶ 24)). The EPA's decision to treat its approval of Florida's assumption application as an adjudication rather than a rule, the Court concluded, plausibly led to Plaintiffs' alleged procedural injury—that is, the lost opportunity to seek a Section 705 stay and any corresponding informational injuries under the National Environmental Policy Act ("NEPA") and Section 7 of the Endangered Species Act ("ESA"). *Id.* at 202–03.

Plaintiffs were on "less sure footing, however, with respect to causation and redressability." *Id.* at 203. The Court expressed concern, in particular, that "even if the EPA were inclined to issue a Section 705 stay, it is not at all clear that the agency has the authority to do so now that the transfer has gone into effect;" any "stay would," at this point, require doing more than "postpon[ing] the effective date" of the rule, as Section 705 permits, and would, in any event, "arguably affect the existing rights of regulated parties in a manner that might itself require an opportunity for notice and comment." *Id.* at 204. Nor was it clear that the Court itself could "alter[] the effective date" of the transfer "that took effect over a year ago"—a remedy that would effectively "invalidate[] or change[] a portion of the rule" and thus "differ[] from affording Plaintiffs relief for an[] injury that they sustained during the 30 days following the final promulgation of the rule." *Id.* at 205. In any event, because "[t]hese questions force[d] the Court into largely uncharted waters, without the benefit of any relevant briefing from the parties"—and because "the EPA requested the opportunity to brief the question of remedy"—the Court directed the parties to submit further briefing as to what relief (if any) the EPA could provide Plaintiffs should the Court find in their favor on the merits of Count Eight. *Id.* at 206.

## II.  ANALYSIS

The parties' renewed motions return to the question of whether there is "some possibility that [Plaintiffs'] requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant[s]." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007). Plaintiffs originally framed their request for relief as follows: "As to Claim 8, Plaintiffs ask the Court to[] declare that [the] EPA violated the APA by providing an immediate-on-publication effective date for its approval of Florida's program; hold unlawful and set aside [the] EPA's December 22, 2020[] immediate effective date; [and] issue any appropriate injunctive relief."

Dkt. 78 at 8 (citing Am. Compl., Prayer for Relief (i), (o), (q), (s)).  In light of the Court's earlier opinion, and recognizing "the Court's concern that Florida's operation of the [Section] 404 program for the past year may constitute a bell that cannot be unrung," however, Plaintiffs now request relief that "is far more narrow." *Id.* at 9.  They ask, in particular, that the Court "set aside" the effective date of the EPA's approval of Florida's application "for a period of at least 30 days from the Court's order granting summary judgment in Plaintiffs' favor on Claim 8," which would "effectively 'suspend' the state program for 30 days, restore [Section] 404 authority to the Corps in the interim, and allow [the] EPA to consider Plaintiffs' request for a stay pending judicial review because the rule w[ould] not be in effect." *Id.*  In this way, Plaintiffs contend, the Court can comply with *Prows v. Department of Justice*, 938 F.2d 274 (D.C. Cir. 1991) (per curiam), by not invalidating the rule for failure to abide by the 30-day notice requirement; can avoid any limitation on the EPA's authority to consider "postpon[ing] the effective date" of the rule under Section 705, since the rule, at least in theory, will not yet have taken effect; and can at least put off the need, if any, for notice and comment, since the Court's order suspending the effective date of the rule would not require notice and comment, and, if the EPA is inclined to grant a further stay pending judicial review, it can, if necessary, provide an opportunity for notice and comment at that time.[4]  Dkt. 78 at 2–3, 9.

The EPA responds that a Section 705 stay merely preserves the status quo pending judicial review and, "given the passage of time since [the] EPA's approval of Florida's Section 404 assumption request, that kind of 'purely procedural' intervention 'that operates by

---

[4] Plaintiffs assert:  "The Court's question as to whether [the] EPA could grant the stay without notice and comment (Dkt. 73 at 45–46) may be resolved by *ordering* the agency to provide notice and invite comment before rendering a decision on Plaintiffs' stay request."  Dkt. 78 at 3 (emphasis added).

temporarily freezing the status quo' is no longer possible."  Dkt. 82 at 2 (quoting *Bauer v. DeVos*, 325 F. Supp. 3d 74, 110 (D.D.C. 2018)).  Moreover, the EPA continues, if Plaintiffs are correct that the agency's approval of Florida's Section 404 application was a rule (as opposed to an adjudication), "then [the] EPA's suspension of Florida's up-and-running Section 404 program would likewise be a rule," and "[r]ules may not be issued, amended, or repealed through administrative stays."  *Id.* at 4.  Nor—in the EPA's view—would a Court order briefly suspending the effective date of the rule (thereby creating a window during which Plaintiffs could petition the EPA to "postpone the effective date" under Section 705) solve this problem. To the contrary, the EPA argues, Corps would likely need months "to resume Section 404 permitting activities in state waters following the suspension of Florida's program," and thus a decision granting a Section 705 stay would not maintain the status quo—it "would bring about" an affirmative "transition from state to federal regulatory" authority.  *Id.* at 5.  According to the EPA, "[t]hat is something that Section 705 stays cannot do."  *Id.*

The State of Florida concurs, arguing that the EPA lacks authority under Section 705 to stay an agency action that has already taken effect.  Dkt. 83 at 1–2.  Like Defendants, Florida also stresses that Plaintiffs' proposed solution—an order from the Court briefly setting aside the effective date of the rule, in effect suspending the rule, to create a window for Plaintiffs to ask the EPA to "postpone" the rule's effective date—"[o]verlook[s] the disruptive consequences" of such a remedy, including the effect on ongoing permitting actions in Florida, the allocation of enforcement authority during the interim period, and the status of various memoranda of agreement between the State of Florida and various federal agencies and tribal governments.  *Id.* at 6.  Florida further argues that Plaintiffs were not previously—and are not now—without other remedies:  Plaintiffs, in Florida's view, did not meaningfully pursue appropriate administrative

relief—they did not seek an administrative stay until the literal eve of the 30-day waiting period's expiration, seeking a stay at 8:35 p.m. on the 29th day; they could have, but did not, seek a preliminary injunction from this Court before the 30-day period expired; and they have yet to file a petition for program withdrawal or modification with the EPA. *Id.* at 3 n.3, 9.

This is not the Court's first pass at the question whether the EPA's alleged violation of Section 553(d) is redressable, and there is no reason to re-plow old ground here. For one thing, the Court has previously concluded that "Section 705 confers upon interested parties a procedural right at least to be heard" on the question whether an agency should postpone the effective date of a rule pending judicial review. *CBD I*, 597 F. Supp. 3d at 200. The agency is not required to grant such a request, but it "must at least *consider*" it—assuming that the request is properly raised and that the agency has authority to grant the relief requested. *Id.* at 201–202 (emphasis in original).

The Court has also previously suggested—and now holds—that Section 705 permits an agency to "postpone the effective date" of a rule that has not yet taken effect, but does not permit an agency to suspend, without notice and comment, a rule that is already in effect. As the Court explained in *CBD I*, that understanding of Section 705 comports with: (1) the D.C. Circuit's non-precedential decision in *Safety-Kleen Corp. v. EPA*, 1996 U.S. App. LEXIS 2324, at *2–3 (D.C. Cir. Jan. 19, 1996); (2) the usual APA rule, which "mandate[s] that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance;" and (3) the plain language of Section 705, which does not grant agencies the same broad equitable authority vested in courts but, rather, merely permits agencies to "postpone"—that is, "put off for a later time"—agency action that is subject to judicial review. *CBD I*, 597 F. Supp. 3d at 204–05 (first quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015); and then

quoting *Postpone*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/postpone (last visited Mar. 28, 2022)).  None of the parties has taken issue with this line of reasoning in their renewed motions, and the Court now holds that an agency's authority to "postpone the effective date" of a rule ends when the rule takes legal effect.

That final phrase—"takes legal effect"—requires some further explanation.  As Plaintiffs observe, Dkt. 78 at 11, Judge Gesell remedied a likely violation of Section 553(d) in *Ngou v. Schweiker*, 535 F. Supp. 1214, 1217 (D.D.C. 1982), by preliminarily enjoining the rule from taking effect for 30 days.  Although the judicial authority to grant a stay under Section 705 is more expansive than the related, administrative authority, *see CBD I*, 597 F. Supp. 3d at 205 (courts are permitted to "to postpone the effective date . . . *or to preserve* status or *rights* pending conclusion of the review proceedings" (quoting 5 U.S.C. § 705 (emphasis added))), the agency at issue in that case—the Department of Health and Human Services—could likely have taken similar action.  As *Prows* and other cases suggest, absent a relevant Section 553(d) exception, a rule lacks legal effect until at least 30 days have passed from publication.  *See Prows*, 938 F.2d at 275–76; *see also United States v. Gavrilovic*, 551 F.2d 1099, 1106 (8th Cir. 1977); *Lewis-Mota v. Sec'y of Lab.*, 469 F.2d 478, 482 (2d Cir. 1972).  And, as a corollary to this rule, *Prows*, 938 F.2d at 276, and other cases also recognize that a rule made immediately effective in violation of Section 553(d) becomes "lawfully effective" 30 days after publication, *Rowell v. Andrus*, 631 F.2d 699, 704 (10th Cir. 1980); *see also Maine Ass'n of Interdependent Neighborhoods v. Petit*, 659 F. Supp. 1309, 1319 (D. Me. 1987); *Conservation Law Found. of New England, Inc. v. Clark*, 590 F. Supp. 1467, 1576 (D. Mass. 1984).  Although the Court need not resolve the question definitively for present purposes, the EPA at least arguably had authority to grant Plaintiffs' request for an administrative stay before the 30-day window closed on

13

January 21, 2021.[5]  After that date, however, the agency lost authority to "postpone the effective date" of the rule pursuant to Section 705.

Finally, as the Court has previously explained, *Prows* holds that a failure to comply with Section 553(d)'s 30-day requirement "calls for a different" type of judicial remedy than an agency's "failure to comply with the notice and comment requirements of § 553(b)."  938 F.2d at 276.  Although the latter is "fatal to the validity of the challenged rule," Section 553(d) violations "are remedied by denying such a rule effectiveness for the mandated 30 days, allowing it to take effect in full thereafter."  *Id.* at 275–76.  Prows himself was fired in 1989 on the basis of a 1987 "Inmate Financial Responsibility Program" ("IFRP") that was made effective without the 30-day window required by Section 553(d).  *Id.*  But because there was no suggestion that his 1989 dismissal "had roots in . . . agency activities under the IFRP" before the IFRP became effective on May 1, 1987, the Court upheld his dismissal.  *Id.* at 276.  That approach, the D.C. Circuit explained, "protects those who are affected by agency action taken during the 30-day waiting period without disturbing later action that is not the product of the violation."  *Id.*

Against this backdrop, the question raised by the parties' renewed motions is necessarily a narrow one.  The question is not whether the Court can or should vacate the rule itself as a remedy for the EPA's alleged violation of Section 553(d)—under *Prows*, the Court cannot do so.  The question is not whether the Court should enjoin implementation of Florida's Section 404 program pending resolution of this case—Section 705 permits Plaintiffs to seek that form of relief directly from the Court, but they have not done so.  The question is not whether the Court

---

[5] The State of Florida submits:  "If *arguendo* . . . Section 553(d)" applied to the agency's approval of Florida's program, that approval would have taken effect at 12:00 a.m. ET on January 21, 2021.  Dkt. 83 at 3 n.3.  For purposes of resolving the pending motions, the Court need not decide when on the 21st the rule would have taken effect.

can compel the EPA to grant a Section 705 stay—that authority, to the extent it exists, is vested

in the agency, and the Court can, at most, require an agency to consider whether to grant a stay in

the period before a rule has taken lawful effect.  Nor is the question whether the Court can confer

authority on the EPA to grant a Section 705 stay that does not merely "postpone the effective

date" of a rule that has yet to take effect, but that, instead, suspends a rule that, all agree, is

currently in lawful effect—the Court cannot rewrite Section 705 to expand the agency's

authority.

Instead, the only question now before the Court is whether the Court could award some

form of relief on Count Eight that would permit the EPA to consider a petition for a Section 705

stay on remand and, if persuaded by the equities, to grant that petition.  In Plaintiffs' view, the

Court could do so by (1) ruling in their favor on Count Eight and holding that the EPA erred in

giving its decision immediate effect and then (2) vacating the effective date of the rule for a short

period of time—say 30 days—to permit Plaintiffs to petition the EPA to "postpone" *that*

effective date.  Dkt. 78 at 2–3.  If, at that point, the EPA decides to grant a further stay, Plaintiffs

maintain that the agency could, if necessary, provide the public with notice and an opportunity to

comment on that proposed action.[6]  *Id.*  This approach would, in Plaintiffs' view, remedy any

violation of Section 553(d), while comporting with any APA requirement that agencies provide

an opportunity for notice and comment before altering the status quo.  *Id.*

Although Plaintiffs are correct that courts possess "broad" "equitable powers to remedy

---

[6]  Although not crystal clear on the point, Plaintiffs suggest that notice and comment might not
be required for the EPA to grant on remand a Section 705 stay.  Because the Court would have
already suspended the effective date, Plaintiffs theorize, any decision by the EPA granting a stay
would not alter the then-existing (or, as it were, freshly minted) status quo.  *See* Dkt. 78 at 14–
15; Dkt. 87 at 7 n.8.  Because the Court concludes that the EPA would, in any event, lack
authority to grant a Section 705 petition on remand, it need not decide whether the agency would
need to provide an opportunity for notice and comment before acting on such a petition.

past wrongs" and that "breadth and flexibility are inherent in equitable remedies," *id.* at 11

(quoting *Cobell v. Norton*, 240 F.3d 1081, 1108 (D.C. Cir. 2001)), not all injuries are

redressable, and, here, Plaintiffs' proposed remedy fails to cure the redressability problem

identified in the Court's prior opinion.  The Court starts by considering what Plaintiffs mean

when they ask the Court to "set aside," Dkt. 78 at 8, the effective date of the EPA's approval of

Florida's assumption application.  The Court can imagine three possibilities, none of which

achieves the end that Plaintiffs seek.  First, the Court might set aside the effective date that the

EPA announced in December 2020—that is, that the agency's decision to approve Florida's

application took effect immediately upon publication on December 22, 2020.  But if that were all

that the Court did, under *Prows* and the other cases discussed above, the rule would have taken

*legal* effect on January 21, 2021, and for the reasons given above, the EPA would lack authority

on remand to grant a Section 705 stay petition to "postpone" that effective date—it is too late to

"postpone" an event that occurred over two-and-a-half years ago.

Second, Plaintiffs might mean that the Court should set aside the January 21, 2021

effective date, but that approach fares no better.  For one thing, Plaintiffs do not, and cannot

plausibly, contend that the rule lacked legal force as of January 21, 2021.  As discussed above,

*Prows* and other cases make clear that a rule that an agency purports to give immediate effect in

violation of Section 553(d) is deemed to take lawful effect after the passage of 30 days.  And

beyond that, vacating the January 21, 2021 effective date would mean that all of the actions

taken by Florida after January 21, 2021 were taken without legal authority and would be subject

to challenge on that basis.  An interested party with standing might plausibly challenge a permit

issued by Florida during the 30-day period from December 22, 2020 to January 20, 2021.  There

is no colorable basis, however, for suggesting that any action taken by Florida after passage of

the 30-day period was unlawful—or would *become* unlawful by virtue of a decision from this Court setting aside the January 21, 2021 effective date.  *See Prows*, 938 F.2d at 276 (explaining that, as reasonably construed, Section 553(d) "protects those who are affected by agency action taken during the 30-day waiting period *without disturbing later action that is not the product of the violation.*" (emphasis added)).

        This, then, leaves the third alternative: that the Court might set aside—that is, vacate—the effective date of the rule, but only prospectively from the date of the Court's order for a period of about 30 days.  This approach avoids some of the problems posed by the first two alternatives, but exposes the fundamental flaw in Plaintiffs' argument.  It is now too late to return to the state of affairs as they existed in late December 2020 and early January 2021.  As a matter of ordinary usage and common sense, it is too late to "postpone the effective" date of a rule that indisputably took effect years ago.  On remand, the EPA would be called upon to decide whether to "postpone" the expiration of the Court's order suspending the rule for 30 days.  But the agency would not be called upon—and would not be able—to "postpone the effective date of action [that is, issuance of the rule] *taken by it.*"  5 U.S.C. § 705 (emphasis added).  In this case, the "action taken by" the agency took effect no later than January 21, 2021, and a Court order suspending the rule for 30 days from the date of remand would not restore the agency's authority to "postpone the effective date" of that long-since-effective agency action.  As a matter of law, Plaintiffs' remedial theory stretches the plain meaning of Section 705 beyond its breaking point.  Section 705 provides an agency with the authority to "postpone"—that is, to "put off"—the effective date of a rule before it takes lawful effect, and that is it.

        It would blink reality, moreover, to imagine that a Court order "suspending" the rule could, as a matter fact, simply turn the clock back to December 22, 2020 or the days that

immediately followed—and, indeed, Plaintiffs concede as much. *See* Dkt. 78 at 3 (remarking

that Plaintiffs' proposed solution would "provide a remedy for [the] EPA's violation of

Plaintiffs' rights (albeit imperfectly, given the passage of time)"). As the EPA explains, if the

Court were to suspend the rule for 30 days or so, anyone seeking a Section 404 permit for

activities in Florida's waters would have to apply to the Corps, rather than Florida. Dkt. 82 at 3.

As a result, Florida would need to transfer to the Corps nearly two thousand permit applications,

*id.* (citing https://fldep.dep.state.fl.us/parep/pa_query_pa_data.asp (last visited Aug. 23, 2023)

(query based on "State 404 Program" with permit application date range of December 2020

through August 2023)), and the Corps would need to prepare "to review all new and pending

applications for completeness," including those that were already under review in Florida, *id.*

Either way, the state of affairs would not resemble December 2020, and the EPA would be

unable to maintain (or somehow reinstate) the December 2020 status quo—as it might have been

able to do had it provided 30 days' notice before the rule took effect and had it granted a Section

705 petition at or near that time. Although, given enough time, the Corps could undoubtedly re-

assume its Section 404 permitting responsibility for the navigable waters in Florida, what matters

for present purposes is whether a Court order suspending the rule for 30 days would come

sufficiently close to restoring the pre-December 2020 status quo such that the EPA could decide

whether, as a matter of equity, it should maintain that "status quo" pending judicial review. On

the facts of this case, that "egg," however, "has been scrambled," *Sugar Cane Growers Co-op. v.*

*Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002), and, for the reasons discussed above, Section 705

does not authorize an agency to reinaugurate some post-effective date "status quo" pending

judicial review.

Nor is the Court persuaded by Plaintiffs' invocation of Blackstone's aphorism that

"where there is a legal right, there is also a legal remedy."  Dkt. 78 at 5–6 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (citing 3 William Blackstone, Commentaries *23)). Plaintiffs protest that limiting the remedies available for Section 553(d) violations to "retroactive 30-day extension[s] of the rule's effective date" would "only 'invite[] violations of section 553(d),'" Dkt. 87 at 11 (quoting *Ngou*, 535 F. Supp. at 1217), and would "render violations of 553(d)" that deprived the public of "the right to petition the agency" for a 705 stay virtually irremediable, *id.* at 13–14.  The Supreme Court, however, has rejected the proposition that someone must have standing to challenge every governmental wrong*, see Clapper v. Amnesty Int'l U.S.A.*, 568 U.S. 398, 420–21 (2013), and, in any event, as discussed above, an interested party with standing to challenge the issuance of a permit before Florida lawfully assumed permitting authority might have been able to bring suit.  But, even more importantly, Plaintiffs' argument ignores the possibility that organizations, like Plaintiffs here, that are deprived of the opportunity to seek a Section 705 stay by reason of a rule's purported, immediate-effective date can seek expedited relief from a court.  In *Environmental Defense Fund v. EPA*, 515 F. Supp. 3d 1135 (D. Mont. Jan. 27, 2021), for example, the plaintiffs challenged an EPA rule that had been published—and purportedly made immediately effective—on January 6, 2021.  *Id.* at 1143. Plaintiffs moved for expedited summary judgment in challenging the rule's immediate-effective date, and, on January 27, 2021, the district court entered summary judgment in the plaintiffs' favor, holding that "the Final Rule [was] ineffective until 30 days from its January 6, 2021, date of publication in the Federal Register: February 5, 2021."  *Id.* at 1152.

    That same approach was available to Plaintiffs, who were aware as of December 22, 2020 that the EPA purported to make "Florida's program assumption . . . applicable" on that day and who could have sought a preliminary injunction or expedited consideration of the merits of their

Section 553(d) claim shortly thereafter.  Dkt. 56-1 at 433; *see also* 85 Fed. Reg. 83,553 (Dec. 22,

2020).  Plaintiffs, however, waited until January 14, 2021 to bring suit, and they did not file a

request for expedited summary judgment briefing on Count Eight until January 29, 2021, Dkt.

21—38 days after notice of the EPA's decision granting Florida's assumption application was

published and eight days after the 30-day notice period had run.  By that time, the Court's

equitable authority to remedy a deprivation of the opportunity to seek a Section 705 stay

"without disturbing later [agency] action that [was] not the product of the [§ 553(d)] violation,"

*Prows*, 938 F.2d at 276, had passed, *see Conservation Law Found.*, 590 F. Supp. at 1476.  It was

then—and it is now—too late to "restore Plaintiffs to the position they would have had but for

[any § 553(d)] violation."  Dkt. 87 at 23.[7]

      The Court, accordingly, concludes that, even if Plaintiffs are correct and the EPA

unlawfully treated its decision prospectively granting the State of Florida Section 404 permitting

authority as an adjudication, rather than a rule,[8] and unlawfully purported to give that rule

immediate effect, the Court cannot remedy that violation by suspending the rule for 30 days from

the date of remand to permit Plaintiffs to seek a Section 705 stay, which the agency cannot grant,

from the EPA.  For that reason and for the reasons given in the Court's prior decision, *see CBD I*,

---

[7] Understood in this light, the jurisdictional defect in Plaintiffs' claim is arguably mootness, as opposed to a lack of standing at the time Plaintiffs brought suit, since Plaintiffs might have sought preliminary or expedited relief on Count Eight after filing suit (on January 14, 2021) but before January 21, 2021.  *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (a case becomes moot when "it becomes impossible for the court to grant 'any effectual relief whatever to [the] prevailing party'" (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992))).  But, either way, the bottom line is the same:  The claim asserted in Count Eight of Plaintiffs' complaint is currently non-redressable, and no exception to the mootness doctrine is available to remedy that flaw.  *See Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321–25 (D.C. Cir. 2009) (discussing exceptions).

[8] As noted above, the Court previously held, albeit in the context of Count Nine, that the "action that Plaintiffs challenge was, in fact, a rulemaking."  *CBD I*, 597 F. Supp. 3d at 212.

597 F. Supp. 3d 173, the Plaintiffs lack standing to pursue Count Eight of their amended complaint, Dkt. 77 at 46–47.[9]

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' renewed motion for partial summary judgment, Dkt. 78, is **DENIED**; the EPA's renewed cross-motion for partial summary judgment, Dkt. 82, is **GRANTED**; Florida's renewed cross-motion to dismiss, Dkt. 83, is **GRANTED**, and Count Eight of Plaintiffs' Amended Complaint is hereby **DISMISSED** without prejudice for lack of jurisdiction.

---

[9] The Court has also considered whether Plaintiffs lack standing because, as Florida suggests, they did not submit a Section 705 petition in a timely manner and because the EPA never acted on the late-in-the-day petition that Plaintiffs did file. The Court is persuaded, however, by Plaintiffs' contention that filing a Section 705 petition before January 21, 2021 would have proved futile because the outgoing administration had already conclusively opined that the EPA's decision was an adjudication and took immediate effect, and because the incoming administration had only a single day to consider the issue. Dkt. 87 at 21; *cf. Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986) (no duty to exhaust administrative remedies where doing so would be futile because of the certainty of an adverse decision). Florida faults Plaintiffs for waiting until after 8:30 p.m. on the final day of the 30-day window to file their Section 705 petition. Dkt. 83 at 3 n.3, 9. But that argument merely points out the futility of the task Plaintiffs faced. The outgoing administration had rejected their entreaties, and the incoming administration lacked sufficient time to reconsider. Finally, the fact that now, two-and-half-years later, the EPA has yet to respond to Plaintiffs' Section 705 petition merely confirms that the agency's view that its approval of Florida's assumption application was not a rule and, therefore, was not subject to Section 553(d)—and that, as a result, there was no window of time for Plaintiffs to seek a Section 705 stay—has not changed.

But, in any event, even if Florida were right and Plaintiffs could be faulted for waiting until 8:35 p.m. on the 29th day to seek a stay, that would arguably sever any causal link between the alleged agency action (the decision to give the rule immediate effect in violation of Section 553(d)) and Plaintiffs' alleged injury (the inability to obtain a Section 705 stay and the consequent concrete harms discussed in *CBD I*, 597 F. Supp. 3d at 203), and would thus merely confirm the Court's conclusion that Plaintiffs lack standing with respect to Count Eight. *Cf. Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 42–43 (concluding that causation was lacking because it was "purely speculative" whether the challenged action (a Revenue Rule) was responsible for the alleged injury (denial of medical services to the plaintiffs) or whether that denial "instead result[ed] from decisions made by the hospitals without regard to the tax implications").

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

August 23, 2023