**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY,
et al.,

      Plaintiffs,

      v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY, et al.,

      Defendants.

**CASE NO.** 1:21-cv-00119 (RDM)

## PLAINTIFFS' MOTION FOR LEAVE TO FILE SUR-REPLY AND EXHIBIT

Plaintiffs respectfully request leave to file a consolidated sur-reply of no more than 30 pages to address new arguments, factual assertions, and mischaracterizations of Plaintiffs' arguments raised by the Federal Defendants and Florida for the first time on reply, Dkt. 106, 107, 107-1. *See* Minute Order Jan. 31, 2023 (directing Plaintiffs to file a separate motion for leave to file a sur-reply, if necessary, after the conclusion of briefing). There is good cause to grant this relief so that Plaintiffs may respond to new matters raised in the opposing parties' reply memoranda. *See* Dkt. 3 at 4 (Standing Order at ¶ 8.c.); *Edelman v. SEC*, 239 F. Supp. 3d 45, 54 n.5 (D.D.C. 2017) (the decision to allow a sur-reply is withing the court's discretion, and courts routinely grant such motions to allow parties to contest matters first presented on reply); *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 85 (D.D.C. 2014).

In their reply, the Defendants resort to several new arguments, claims, and theories to try to defend USFWS' Biological Opinion ("BiOp") and Incidental Take Statement ("ITS"), the Corps' retained waters list, and EPA's approval of Florida's program. Dkt. 106. Florida's separate reply raises new matters related to standing, ripeness and justiciability. Dkt. 107.

1

As to the BiOp, the Defendants now cite *National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007), to argue for the first time that compliance with the plain language of the ESA would purportedly conflict with Clean Water Act assumption, Dkt. 106 at 44–45, and that the latter should trump the former.  Although the Defendants previously cited *Home Builders*, they did so for different propositions, namely whether there is a right to comment on a BiOp and whether ESA consultation is required for a state agency's permitting decisions.  *See* Dkt. 99 at 41, 67 n.19.

Additionally, the Defendants originally argued that the BiOp did not consider the impact on species of Florida's general permits because Florida had purportedly not issued any general permits for its 404 program.  Dkt. 99 at 66.  They now concede that the state 404 program contains general permits but claim that those were not considered because they were not promulgated under the Clean Water Act and therefore did not have to be considered.  Dkt. 106 at 31.  The Defendants also suggest for the first time that USFWS did not need to consider the impact of Florida's program on nesting sea turtles because development in state-assumed waters near the coast would not likely harm that species, Dkt. 106 at 36, whereas previously they had argued that the BiOp addressed impacts to all ESA-considered species, Dkt. 99 at 70.

As to Plaintiffs' challenge of the BiOp's inadequate baseline analysis, the Defendants originally argued that the baseline analysis was adequate because the BiOp adopted the biological evaluation ("BE").  Dkt. 99 at 68–69.  But the flaws Plaintiffs identified in the BiOp apply equally to the BE, which was cut and pasted into the BiOp.  Dkt. 98 at 38–39.  Defendants now claim that Plaintiffs only objected to their *adoption* of the BE, but that grossly mischaracterizes Plaintiffs' argument.  Dkt. 106 at 34.

Moreover, the Defendants attempt to fill holes in their legal argument for the first time on reply, belatedly attempting to distinguish *Gerber v. Norton*, 294 F.3d 173, 185 (D.C. Cir. 2002), and *National Wildlife Federation v. Brownlee*, 402 F. Supp. 2d 1, 10–11 (D.D.C. 2005), which Plaintiffs cited in their Motion for Summary Judgment, Dkt. 98 at 46 n.17, 47, but Defendants failed to address until their reply brief.  Dkt. 106 at 33–34, 42–43 n.22.  Similarly, the Defendants raise new arguments and cite new authority to urge the Court to ignore *Conner v. Burford*, 848 F.2d 1441, 1455 (9th Cir. 1988).  Dkt. 106 at 42–43.  And, for the first time on reply, the Defendants seek to defend *Cooling Water Intake Structures v. EPA*, 905 F.3d 49 (2d Cir. 2018), on the merits and raise new and different arguments to claim the case is factually on point with this case.  *Compare id.* at 27–30 *with* Dkt. 99 at 74–76.

As to the ITS, the Defendants argue for the first time that the ESA requirement to reinitiate consultation when an ITS' take limit is exceeded can be satisfied at the program level with annual take reporting by the State (even though the ITS sets no take limit).  Dkt. 106 at 39. Previously, the Defendants only claimed compliance with this requirement on the permit (rather than program) level, through permit monitoring and enforcement.  Dkt. 99 at 79.  The Defendants also claim for the first time on reply that effectuating the transfer of the program relieved the federal agencies of the duty to reinitiate consultation when new species are listed. Dkt. 106 at 40.  Previously, the Defendants relied solely on the technical assistance process for individual permits and new general permits as standing in for the requirement to reinitiate consultation when new species are listed.  Dkt. 99 at 79–80.

On reply, the Defendants also grossly mischaracterized Plaintiffs' arguments regarding EPA's unlawful reliance on the facially invalid BiOp.  Instead of disagreeing over the applicable legal standard or the relevant holdings in case law as before, Dkt. 99 at 82–83 & n.27, the

Defendants now claim that Plaintiffs omitted governing case law and cited no legal support for their arguments, Dkt. 106 at 46–47, which is demonstrably false.

As to the sufficiency of Florida's program, the Defendants for the first time make a broad assault against the Clean Water Act's core tenet that the Act sets the *minimum standards* for all states by arguing that state programs only have to be as stringent as to just four sections of the Clean Water Act specifically enumerated in Section 404(h)(1).  Dkt. 106 at 18.  Originally, the Defendants raised this specious argument only to defend EPA's approval of a state program with an inadequate mens rea standard.  Dkt. 99 at 51.  Now, they suggest that argument should apply to any requirement of the Clean Water Act not specifically enumerated in 404(h)(1).

Next, the Defendants raise a novel argument that the criminal intents set forth in 33 U.S.C. § 1319 do not constitute elements of a criminal offense but only determine penalties for those offenses, contrary to the blackletter law that criminal intent is an element of a criminal offense.  Dkt. 106 at 17.  *But see* Dkt. 99 at 50–54 (failing to make this statutory argument and instead attempting to extend case law related to penalties to the separate question of criminal intent and arguing that EPA has discretion to approve state programs with a higher mens rea than the federal program because Congress did not demand equivalence as to intent).

Regarding the state's restrictive consideration of water quality impacts, the Defendants now rely on a particular phrase (the "possibility of presence" of contamination) in one of the two provisions Plaintiffs challenge, as well as testing requirements and general contamination definitions, to claim the state program is as stringent as federal law.  Dkt. 106 at 11–12.  But previously, the Defendants pointed to *other* provisions of the state program that are parallel to *other* provisions of the federal program to claim sufficiency.  Dkt. 99 at 48–49.  Regarding the state program's reliance on an applicant's "reasonable assurances," the Defendants raise new

arguments to defend their use of *post-hoc* rationalizations and rely on new arguments regarding *Friends of the Earth v. Hintz*, 800 F.2d 822 (9th Cir. 1986); *Crutchfield v. U.S. Army Corps of Engineers*, 214 F. Supp. 2d 593 (E.D. Va. 2002); and *Defenders of Crooked Lake v. FDEP*, No. 17-5328, 2018 WL 3387900 (Fla. Div. Admin. Hrgs., May 7, 2018).  Dkt. 106 at 13–16.

As to retained waters, the Defendants originally acknowledged that the Corps began a navigability assessment in 2017 for purposes of developing Florida's retained waters list (which was consistent with the position the Corps had taken while serving on EPA's Assumable Waters Subcommittee (2015–2017), and that the Corps then took a different position in 2018.  Dkt. 99 at 27–28 (stating that Corps directed cessation of navigability assessment and then announced adoption of the Subcommittee's "majority" position on retained waters in lieu of maintaining the position expressed by the Corps on the Subcommittee).  The Defendants also acknowledged that the Corps' 2017 Supplement to the Navigable Waters List was to be posted on the Corps' website, *id.* at 27, (a fact on which Plaintiffs relied to demonstrate that the 2017 list was not, as Defendants claimed, just an internal, private draft) but that, after July 2018, the Corps used only the 2014 Navigable Waters List to develop Florida's retained waters list, *id.* at 29, 59, 60, 62.

On reply, however, the Defendants claim that the Corps never had a position on assumable waters that it later changed, Dkt. 106 at 24–25, which they base on a strained, out-of-context reading of the Assumable Waters Report.  The Defendants also claim for the first time on reply that the Corps considered the 2017 list in developing Florida's retained waters list, *id.* at 27, even though their opening brief repeatedly states only that the Corps used the 2014 list, Dkt. 99 at 29, 59, 60, 62, and "refined" the 2014 list only to remove duplicates and "historic use waters," *id.* at 29.  And the Defendants claim for the first time that the Corps considered all public comments on Florida's navigable waters, Dkt. 106 at 27, a claim not supported by

anything in the record other than the mere presence of those comments, and that Plaintiffs have not "identified any flaws" in the retained waters list, *id.* at 27 & n.11, a claim that is flatly contradicted by the record. The Defendants also suggest that the Corps did not publish its 2017 list to its public website, *id.* at 26 & n.10, even though Plaintiffs accessed the list contemporaneously on the Corps' public website.

To rebut factual inaccuracies on some of these new claims, Plaintiffs also respectfully move the Court to consider the attached EPA email which Plaintiffs obtained through FOIA, and which demonstrates that in 2018 the Corps in fact was proceeding with a navigability assessment consistent with its position on the Assumable Waters Subcommittee (until it reversed course), and that the Corps had published the 2017 list to its website at the time.[1] Plaintiffs request leave to submit the email as an exhibit to their sur-reply.

Florida similarly raises new claims and arguments for the first time on reply, as to the issues of standing, ripeness, and justiciability. Florida also attaches a new declaration replete with new, conclusory assertions that are either not supported by, or are refuted by, the record. For example, as to organizational standing based on information loss, Florida claims for the first time that Troyer Mine likely would not have required an EIS under the Corps program. Dkt. 107 at 13–14. But Florida's cross-motion/response memorandum did not mention Troyer—a major project threatening the Florida panther on which Plaintiffs have long relied to demonstrate

---

[1] Although offered for the purpose of rebuttal, Plaintiffs submit that the Court may also grant their request under the standard for completing the administrative record, as this document was created by and known to EPA, directly relates to the retained waters determination, and is adverse to the position now taken. *Bazzi v. Gacki*, No. 19-CV-484 (RDM), 2020 WL 5653599, at *5 (D.D.C. Sept. 23, 2020). To the extent EPA may claim that it did not consider this internal email, Plaintiffs submit that the Court may consider it as extra-record evidence. *Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*, No. 20-CV-103 (RDM), 2020 WL 5642287, at *9 (D.D.C. Sept. 22, 2020).

standing—at all.  Florida also newly suggests that disclosure of information under NEPA and the

ESA is not "private information," the loss of which may constitute intangible harms.  *Id.* at 13.

Previously, Florida's arguments were about whether Plaintiffs, in fact, were deprived of this

information.  Dkt. 102 at 39–40.  Florida also introduces two entirely new arguments based on

recent legal developments, namely NEPA streamlining and the Supreme Court's decision in

*Sackett v. EPA*, 598 U.S. 590 (2023), to which Plaintiffs have not had the ability to respond.

Dkt. 107 at 16.  As to organizational standing based on access to courts, Florida now contends

that Plaintiffs "already" hire experts and so are not harmed by the State's restrictive access to

courts.  *Id.* at 19.

As for member standing, Plaintiffs seek to respond to arguments based on *Clapper v.

Amnesty International USA*, 568 U.S. 398 (2013), that Florida makes for the first time on reply.

Dkt. 107 at 21–22.  In Florida's original filing, the State cited *Clapper* merely for the proposition

that speculation of future harm cannot support standing.  *See* Dkt. 102 at 45.

As to standing to challenge EPA's approval of Florida's enforcement program, Plaintiffs

seek leave to respond to Florida's belated attempt to distinguish *WildEarth Guardians v. Jewell*,

738 F.3d 298 (D.C. Cir. 2013), Dkt. 107 at 24, after Plaintiffs pointed out they had failed to

address the case in response to Plaintiffs' Motion, Dkt. 104 at 101, and to Florida's

mischaracterization of the Court's ruling in *Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019),

Dkt. 107 at 24–25, in an attempt to distinguish it.  Plaintiffs would also respond to Florida's new

reliance on a Department of Justice manual, *id.* at 24, and the State's exaggeration of EPA's

oversight role as a stand-in for a state meeting minimum federal standards, *id.* at 23 n.15.

Finally, as to ripeness, Plaintiffs seek to rebut Florida's new, and false, assertions that:

(1) Plaintiffs failed to point to specific projects that show they are harmed by the ITS' unlawful

extension of take protection, Dkt. 107 at 25–28, and that (2) Plaintiffs argued their retained

waters claim falls into an exception to the ripeness doctrine, *id*. at 29.  Plaintiffs also seek to

address Florida's new argument regarding the purported relevance of Michigan's process for

modifying the Corps' retained waters list, *id*. at 29–30.

   Based on the foregoing, Plaintiffs respectfully request the opportunity to file a sur-reply

of no more than thirty (30) pages within seven (7) days of the Court's granting of the motion.

   In accordance with LCvR 7(m), undersigned counsel certify that they conferred with

opposing counsel in a good faith effort to determine whether there is opposition to the motion.

The Federal Defendants and Florida advise that they oppose the motion for leave to file a sur-

reply.  Counsel for EPA advises that the agency will review the attached document to determine

their position as to the request for the Court to consider it.  Counsel for Florida similarly advises

that they will require additional time to ascertain their client's position as to the exhibit.

Dated: July 14, 2023

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Tania Galloni
TANIA GALLONI*
Fla. Bar No. 619221
CHRISTINA I. REICHERT*
Fla. Bar No. 0114257
Earthjustice
4500 Biscayne Blvd., Ste 201
Miami, FL 33137
T: 305-440-5432
F: 850-681-0020
tgalloni@earthjustice.org
creichert@earthjustice.org

/s/ Bonnie Malloy
BONNIE MALLOY*
Fla. Bar No. 86109
Earthjustice
111 S. Martin Luther King Jr. Blvd

</div>

Tallahassee, FL 32301
T: 850-681-0031
F: 850-681-0020
bmalloy@earthjustice.org

/s/ Anna Sewell
ANNA SEWELL
D.C. Bar No. 241861
Earthjustice
1001 G St., Ste 1000
Washington, DC 20001
T: 202-667-4500
asewell@earthjustice.org

*Counsel for Plaintiffs*

\* Appearing under LCvR 83.2(c)(1)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of July 2023, I electronically filed the foregoing

document using the CM/ECF system. Service was accomplished by the CM/ECF system.


Respectfully submitted,

/s/ Tania Galloni
TANIA GALLONI
Fla. Bar No. 619221
Earthjustice
4500 Biscayne Blvd., Ste 201
Miami, FL 33137
T: 305-440-5432
F: 850-681-0020
tgalloni@earthjustice.org