**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY, ET
AL.

        Plaintiffs,

        v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY, ET AL.

        Defendants.

**CASE NO.** 1:21-cv-00119 (RDM)

---

**FLORIDA INTERVENORS' POST-HEARING MEMORANDUM**

---

The State of Florida and the Florida Department of Environmental Protection ("FDEP") ("Florida Intervenors") respectfully submit this memorandum following the Court's October 19, 2023 summary judgment hearing, in accordance with the motion for leave filed herewith.

***Florida 404 Program Update*** – The Court has previously inquired about the status of Florida's 404 program. Since assuming the program almost three years ago, FDEP has (a) hired and trained over 300 certified wetlands evaluators ("CWEs") or other staff assisting with the state 404 program; (b) received over 8,760 applications for individual permits, coverage under general or regional permits, and/or requests for No Permit Required ("NPR") determinations, and of those, over 3,380 applications have been withdrawn (often based on requests by FDEP for more information or other concerns); (c) issued 608 individual state 404 permits (including modifications); (d) denied 270 applications (including individual permits, regional and/or general permits, and NPR requests); (e) conducted over 470 compliance inspections; (f) issued over 190 enforcement warning letters; (g) referred 57 matters for potential further enforcement; and (h) executed 22 consent orders.

***Standing Demonstrative*** – At the hearing, Florida Intervenors briefly referenced a demonstrative identifying key arguments related to justiciability for each claim and separately illustrating why Plaintiffs' assertions of injury are too speculative to support standing under *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912 (D.C. Cir. 2003), and *Waterkeeper All., Inc. v. Regan*, 41 F.4th 654 (D.C. Cir. 2022). This demonstrative is enclosed as Attachment 1.

***Endangered Species Review*** – At the hearing, Plaintiffs argued that they were unable to adequately comment on species impacts issues because they lacked access to key documents. That is not correct. The Florida 404 program's species review process was comprehensively described in the state's 404 program application including (among others) in the Memorandum of Understanding ("MOU") entered between the U.S. Fish & Wildlife Service (FWS), the Florida Fish & Wildlife Conservation Commission ("FWC"), and FDEP (EPA-HQ-OW-2018-0640-0016-A2); and in the Florida 404 Handbook (HQ-OW-2018-0640-0002-A20 at 6, 23-24). Moreover, during the public comment process, Plaintiffs had a copy of Florida's Biological Assessment ("BA"), which was attached to their comment letters.[1] Almost 300 pages in length, the BA comprehensively described the action and action area, impacted species and habitat (including for 235 listed species potentially affected by the action), baseline conditions, potential effects on species (including cumulative effects), federal-state "species coordination review" (including the anticipated Technical Assessment Process), species assessments, incidental take and prospects for incidental take statement terms and conditions, and other relevant matters. Many aspects of Florida's BA were later incorporated into EPA's Biological Evaluation ("BE") (EPA-HQ-OW-2018-0640-0649),

---

[1] *See, e.g.*, Comment submitted by Earthjustice attaching copy of Florida's BA, which is available in the EPA Administrative Record as Exhibit 58 to the document posted at EPA-HQ-OW-2018-0640-0387.

which in turn helped to support the FWS' Programmatic Biological Opinion ("BiOp") (EPA-HQ-OW-2018-0640-0642).

Likewise, Plaintiffs argued that Florida and FWS are not adequately protecting listed species during program implementation. This is both post-decisional and incorrect. Consistent with the BiOp, the MOU, and the Florida 404 Handbook, the "Endangered and Threatened Species Technical Team" (FWS, FWC, and FDEP) convenes regularly to discuss projects and implement species coordination procedures. Under those procedures, *both* FWS and FWC review each proposed project's effect on listed species using the same standards applicable to federal permits. All of these agencies – FWS, FWC, and FDEP – *must and do* participate in the species review process. Reciting "Key Commitments," the FWS' BiOp expressly states:

- "FDEP, FWC, and USFWS will participate in a State 404 program species coordination technical team."  BiOp at 67.

- "All State 404 applications will be forwarded to USFWS for review…" BiOp at 68.

- "The parties (FDEP, FWC, and USFWS) will implement the [MOU]." *Id*. at 71.

- "FDEP shall incorporate as permit conditions all recommended impact avoidance and minimization measures (protection measures) provided to FDEP by the USFWS …" *Id*.

- "FDEP will issue a Notice of Intent to Deny the permit if the USFWS concludes that a permit application is likely to jeopardize or adversely modify designated critical habitat and no protection measures are available to reduce the risk to an acceptable level." *Id*. at 72.

The MOU between FWS, FWC, and FDEP also recounts these obligations. *See also* 16 U.S.C. § 1535(a) (directing FWS to "cooperate to the maximum extent practicable with the States" to further the conservation of federally threatened and endangered species); 16 U.S.C. § 1536(a)(1) (imposing a duty of species conservation on all federal agencies). For Florida 404 permits, FWS' conclusions regarding potential species impacts and necessary measures to address those impacts are

"determinative." Dkt. 102 at 23-24. Incidental take is not authorized if a permittee fails to comply with *any* of those measures. *See* BiOp at 70. FWS is committed to the process and entitled to a presumption of regularity. And even if FWS failed at some point to perform its legal duty of participating in this species review process, recourse would be available.[2]

Plaintiffs claimed that the species review process is not protecting listed species in Florida. That is post-decisional but also plainly wrong. During the July 2022-June 2023 time period alone, this species review process involved approximately 500 species-specific "effect" determinations involving over 30 listed species. Where a proposed project is found to "may affect, likely to adversely affect listed species," the species review team (including FWS) continues to quantify the amount of estimated take (including habitat impacts); impose avoidance, minimization, and mitigation requirements; and adopt measures to protect listed species and habitat.

Ultimately, Plaintiffs' complaint does not challenge EPA's correct decision to initiate Section 7 consultation. EPA made that decision following public notice and comment,[3] and it was consistent with the Supreme Court's decision in *National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007). As to the Court's question regarding other contexts where EPA has utilized a similar programmatic approach for approving state programs, EPA consultation about state program approvals is inevitably rare because, unlike EPA's approval of state 404 programs, the other federal environmental programs subject to state delegation (such as

---

[2]  For instance, under Section IV of the MOU, any of the parties to the MOU may initiate the "Interagency Elevation Process" to resolve such a scenario.  Likewise, EPA would have oversight responsibility to take appropriate action to ensure that Florida's program remains protective of listed species.

[3] *See* 85 Fed. Reg. 30953 (May 21, 2020) (EPA-HQ-OW-2018-0640-0637); *see also* 85 Fed. Reg. 57853, 57856 (Sept. 16, 2020) (EPA-HQ-OW-2018-0640-0001) (explaining EPA decision to initiate ESA Section 7 consultation in accordance with EPA memorandum dated August 27, 2020, which is available in the Administrative Record at EPA-HQ-OW-2018-0640-0660-A1).

those under the Clean Air Act, RCRA, Safe Drinking Water Act, etc.) do not provide EPA with *discretion to consider impacts to listed species* as part of a state program approval process.[4]

The Court asked about New Jersey's ESA approach. Thirty years ago, when EPA initiated Section 7 consultation for New Jersey's 404 program, it was *not likely to adversely affect listed species*; thus, a BiOp was not prepared.[5] That was reasonable. New Jersey has only 17 listed species and less than 1,400 square miles of water area. BiOps are prepared in "formal consultation" where an agency action is *likely to adversely affect* listed species or critical habitat. However, as part of New Jersey's approval process, FWS expressly cautioned EPA in 1993 that, "**<u>future consultations on state assumptions will be conducted as programmatic formal consultations</u>**…"[6] In Florida's situation, EPA and FWS did just that. Florida has *over 130 listed species* and *over 12,000 square miles* of water area. The agencies engaged in formal consultation and FWS concurred that the action was "likely to adversely affect" listed species, which triggered the need for a BiOp and, in light of FWS' "no jeopardy" finding, an incidental take statement was adopted as part of the BiOp. This was consistent with ESA Section 7. *See Cooling Water Intake Structure Coal. v. EPA*, 898 F.3d 173 (2nd Cir. 2018), *amended*, 905 F.3d 49, 78 (2nd Cir. 2018); *see also* 16 U.S.C. § 1536(o)(2) (providing incidental take coverage for "any taking that is in compliance with the terms and conditions specified in a written statement [by FWS] provided under subsection (b)(4)(iv)"); *id*. § 1536(b)(4)(iv) (directing FWS in context of ESA Section

---

[4] *See* EPA Memorandum on Endangered Species Act Section 7(a)(2) Consultation, at 6 (Aug. 27, 2020) (<u>EPA-HQ-OW-2018-0640-0660</u>).

[5] *See* Letter from FWS Regional Director to EPA Acting Regional Administrator at 1 (Dec. 22, 1993), available at <u>https://www.fws.gov/sites/default/files/documents/MOAUSFWS.pdf</u>.

[6] *Id.* at 3.

7(a)(2) consultation to provide federal agency and applicant with incidental take statement with terms and conditions to implement species conservation "measures").

*Retained Waters* – The Court asked about implementation of the MOA between the Corps of Engineers and FDEP related to Retained Waters (EPA-HQ-OW-2018-0640-0019). The Corps and FDEP continue to implement the MOA's "Joint Coordination Procedures" and have consistently reached agreement on whether particular projects are located in "retained" or "assumed" waters. A "not us" problem has not occurred. The Retained Waters List (appended to the MOA and made available in the Florida 404 Handbook) currently lists over 500 waterbodies (including various bays, lakes, rivers, and creeks), which compares favorably with the Michigan-Corps MOA (Attachment 2, listing approximately 80 waterbodies) and the New Jersey-Corps MOA (Attachment 3, no specific list provided). "Historic use" waters are properly excluded from the scope of "retained waters." *See* FINAL REPORT OF THE ASSUMABLE WATERS SUBCOMMITTEE, at 55-61 (May 2017) (EPA-HQ-OW-2018-0640-0661) (explaining the legislative and regulatory history regarding historic use waters for purposes of 404(g) of the Clean Water Act).

*Sackett* – Plaintiffs made much about an Arizona district court decision while dismissing the Supreme Court's recent decision in *Sackett v. EPA*. This, too, is post-decisional and incorrect. Dkt. 107 at 16. The Arizona order was plainly contrary to the Supreme Court's decision in *Sackett* and has absolutely no relevance to this proceeding.

Dated:  October 26, 2023

Respectfully submitted,
BAKER BOTTS L.L.P.


*/s/ Jeffrey H. Wood*
Jeffrey H. Wood (D.C. Bar No. 1024647)
700 K Street, NW
Washington, D.C. 20001
Phone: (202) 639-7700
jeff.wood@bakerbotts.com

Lily N. Chinn (DC Bar No. 979919)
101 California Street
San Francisco, CA 94111
Phone: (415) 291-6200
lily.chinn@bakerbotts.com

Aaron M. Streett (TX Bar No. 24037561)
Harrison Reback (TX Bar No. 24012897)
(*pro hac vice*)
910 Louisiana Street
Houston, TX 77002-4995
Phone: (713) 229-1234
aaron.streett@bakerbotts.com
harrison.reback@bakerbotts.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of October 2023, I electronically filed the foregoing

document using the CM/ECF system. Service was accomplished by the CM/ECF system.

Respectfully submitted,
BAKER BOTTS L.L.P.

*/s/ Jeffrey H. Wood*
Jeffrey H. Wood (D.C. Bar No. 1024647)
700 K Street, NW
Washington, D.C. 20001
Phone: (202) 639-7700
jeff.wood@bakerbotts.com