IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants. | CASE NO. 1:21-cv-00119 (RDM) |

**PLAINTIFFS' REBUTTAL TO DEFENDANTS' SUPPLEMENTAL BRIEF**

Plaintiffs, by and through undersigned counsel, respectfully submit this rebuttal to the Defendants' Supplemental Brief on retained waters, Dkt. 131-1.  In *The Daniel Ball*, the Supreme Court defined navigable waters using virtually identical language to the language Congress used to define retained waters: waters that are used, or are susceptible to use in their natural condition, for interstate commerce.  *Compare* 77 U.S. (10 Wall.) 557, 563 (1870), *with* 33 U.S.C. § 1344(g)(1).  In *Economy Light & Power Co. v. United States*, 256 U.S. 113, 123 (1921), the Court interpreted the *Daniel Ball* test for navigability as including waters solely used for commerce in the past.  Fifty years later, Congress used virtually the same language to define retained waters (also including adjacent wetlands).  33 U.S.C. § 1344(g)(1).

Had Congress intended to limit retained waters only to Rivers and Harbors Act waters, minus "historic use" waters under that statute, it could and would have said so.  But Section 1344(g)(1) says nothing about the Rivers and Harbors Act and nothing about excluding historic use waters.  Instead, Congress used virtually the same language from the *Daniel Ball* test for navigability, which the Supreme Court has interpreted as including "historic use" waters.

1

Congress is presumed to be "aware of relevant judicial precedent" when enacting legislation. *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010).  If Congress had intended to depart from that longstanding precedent, it would have said so.  *See, e.g., Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 102–103 (2011) (where Congress uses terms with settled meaning, court presumes Congress intended to incorporate the settled meaning unless the statute otherwise dictates).

      The Defendants have no response to any of this.  Instead, they cherry-pick portions of the legislative history to support their theory that Congress intentionally omitted historic use waters from the retained waters provision as a "compromise" between the House and Senate, while ignoring the legislative history that supports Plaintiffs' view.

      First, the Defendants rely on a failed effort in the 94th Congress[1] to redefine the term "navigable waters" under Section 404 of the Clean Water Act as limited to Rivers and Harbors Act waters minus historic use waters, such that historic use waters would be regulated by the states.  Dkt. 131-1 at 2–3.  But whatever the House Committee that proposed that legislation may have intended, Dkt. 131-1 at 2–3, the effort failed.  *See Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engineers*, 531 U.S. 159, 169–70 (2001) ("[F]ailed legislative proposals are 'a particularly dangerous ground on which to rest" statutory interpretation).

      Second, the Defendants posit that because a Senate version of the bill would have explicitly referred to waters used in the past (or specifically, waters that "have been used" in commerce), the final language constituted a "compromise" intended to exclude historic use waters from the definition of retained waters.  Dkt. 131-1 at 3.  But the Defendants' theory omits key portions of the legislative history which show the opposite.

---

[1] The retained waters provision was enacted by the 95th Congress.

As the Senate Report the Defendants cite shows, the Senate intended that the Corps retain jurisdiction over "Phase 1" waters, that is, the traditionally navigable waters that formed Phase 1 of the Corps' phased-in regulations under Section 404:

> The committee amendment does not redefine navigable waters. Instead, the committee amendment intends to assure continued protection of all the Nation's waters, but allows States to assume the primary responsibility for protecting those lakes, rivers, streams, swamps, marshes, and other portions of the navigable waters outside the corps program in the so-called phase I waters. Under the committee amendment, the corps will continue to administer the section 404 permit program in all navigable waters for a discharge of dredge or fill material until the approval of a State program for phase 2 and 3 waters.

S. Rep. No. 95-370 at 75 (1977) (cited by Dkt. 131-1 at 3). Phase 1 waters included coastal waters and coastal wetlands, inland navigable waters of the United States, and adjacent or contiguous freshwater wetlands. 40 Fed. Reg. 31,320, 31,321 (July 25, 1975). These were the waters the Corps was "already regulating" under the Clean Water Act.[2] *Id.* And there is no dispute that the Corps was "already regulating" historic use waters, as it had codified the language from the *Daniel Ball* test as interpreted by the Supreme Court in *Economy Light & Power Co.* to include historic use. 40 Fed. Reg. at 31,324 (defining navigable waters of the United States as including waters used for commerce in the past). *See also* 42 Fed. Reg. 37,122, 37,124 (July 19, 1977) (describing phase 1 waters as including those that were used for commercial navigation purposes).

When the House and Senate convened in conference, they agreed that phase 1 waters would be retained by the Corps. The conference report described the agreed-upon retained

---

[2] To bolster their narrow interpretation of the retained waters provision, the Defendants describe phase 1 waters as corresponding only to waters already regulated by the Corps *under the Rivers and Harbors Act*. *See* Dkt. 131-1 at 2 n.1. But phase 1 described waters the Corps was already regulating, which necessarily included those already regulated under Section 404 of the Clean Water Act. 40 Fed. Reg. at 31,321.

waters provision as allowing states to administer Section 404 programs only for "phase 2 and 3 waters after the approval of a [state] program by the Administrator." H.R. Conf. Rep. 95-830, at 101 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 4424, 4476. The conference report further explained that this agreement allowed states to administer their own programs "for the regulation of the discharge of dredged or fill material into the navigable waters *other than traditionally navigable waters and adjacent wetlands*" if the state program met statutory requirements. *Id.* at 104, 1977 U.S.C.C.A.N. 4424, 4479 (emphasis added). The conference report which produced the final language adopted by Congress made no reference to excluding historic use waters.

      The "compromise" the Defendants ask the Court to read into the retained waters provision is not articulated in the conference report either. Instead, the Defendants rely on the statement from a House member, who characterized the conference report as excluding historic use waters, which, as shown above, it did not. Dkt. 131-1 at 3 (citing 123 Cong. Rec. 38969 (daily ed. Dec. 15, 1977) (statement of Rep. Roberts)). And even where political compromises are struck, drawing conclusions from changes to proposed legislation is dicey, because it may not "tell us precisely where the compromise was struck." *In re Google Digital Advert. Antitrust Litig.*, No. 3010, 2023 WL 3828612, at *3 (U.S. Jud. Pan. Mult. Lit. June 5, 2023).

      At conference, the House and Senate managers agreed to define retained waters as "waters which are presently used, or are susceptible to use in their natural condition or by reasonable improvement" for interstate commerce. *See* 33 U.S.C. § 1344(g)(1). As the Supreme Court has instructed, a waterway that is susceptible to use in its natural condition for interstate commerce includes waters so used in the past. *Economy Light & Power Co.*, 256 U.S. at 123. The Court should therefore interpret the retained waters provision based on its plain meaning as including waters used for commerce in the past.

Dated: November 9, 2023

Respectfully submitted,

/s/ Tania Galloni
TANIA GALLONI*
Fla. Bar No. 619221
CHRISTINA I. REICHERT*
Fla. Bar No. 0114257
Earthjustice
4500 Biscayne Blvd., Ste 201
Miami, FL 33137
T: 305-440-5432
F: 850-681-0020
tgalloni@earthjustice.org
creichert@earthjustice.org

/s/ Bonnie Malloy
BONNIE MALLOY*
Fla. Bar No. 86109
Earthjustice
111 S. Martin Luther King Jr. Blvd
Tallahassee, FL 32301
T: 850-681-0031
F: 850-681-0020
bmalloy@earthjustice.org

/s/ Anna Sewell
ANNA SEWELL
D.C. Bar No. 241861
Earthjustice
1001 G St., Ste 1000
Washington, DC 20001
T: 202-667-4500
asewell@earthjustice.org

*Counsel for Plaintiffs*

* Appearing *pro hac vice*

## CERTIFICATE OF SERVICE

     I hereby certify that on this 9th day of November 2023 I electronically filed the foregoing using the CM/ECF system. Service was accomplished by the CM/ECF system.

                                            Respectfully submitted,

                                            /s/ Tania Galloni
                                            TANIA GALLONI
                                            Fla. Bar No. 619221
                                            Earthjustice
                                            4500 Biscayne Blvd., Ste 201
                                            Miami, FL 33137
                                            T: 305-440-5432
                                            F: 850-681-0020
                                            tgalloni@earthjustice.org