**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:21-cv-0119 (RDM) |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*, | |
| Defendants. | |

**FEDERAL DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO ISSUES RAISED IN PLAINTIFFS' SUPPLEMENTAL FILINGS**

In Section 404(g)(1) of the Clean Water Act ("CWA"), Congress defined the waters over which the Corps would retain jurisdiction even after state assumption ("retained waters") as:

> waters which are presently used, or are susceptible to use in their natural condition or by reasonable improvement as a means to transport interstate or foreign commerce . . . , including all waters which are subject to the ebb and flow of the tide . . . [and] wetlands adjacent thereto.

33 U.S.C. § 1344(g)(1).  To this statutory definition, Plaintiffs would add waters that meet none of the enumerated criteria in Section 404(g)(1) but that were, at some point in the past, used to transport interstate or foreign commerce.  But Section 404(g)(1) omits such "historic use" waters and, though Plaintiffs suggest otherwise (Dkt. 123 at 18; Dkt. 129 at 3), legislative history makes clear that the omission was no accident.

Section 404(g)(1)'s definition of retained waters arose out of inter-branch debate and legislative compromise on the proper scope of CWA Section 404 generally.  In 1974, the U.S. Army Corps of Engineers issued regulations defining "navigable waters" under the CWA synonymously with "navigable waters of the United States" under the Rivers and Harbors Act, as waters "which are subject to the ebb and flow of the tide, and/or are presently, or have been in the

past, or may be in the future susceptible for use for purposes of interstate or foreign commerce."
39 Fed. Reg. 12115, 12119 (Apr. 3, 1974).  But the U.S. District Court for the District of Columbia
vacated that regulatory definition and enjoined the Corps to adopt a definition of "navigable
waters" commensurate with the CWA's "full regulatory mandate."  *NRDC v. Callaway*, 392 F.
Supp. 685, 686 (D.D.C. 1975).  The Corps then adopted a broader regulatory definition of
"navigable waters." *See* 40 Fed. Reg. 31320, 31320–21 (July 25, 1975).[1]  But many in Congress
objected to that definition, and, in 1976, the House overwhelmingly passed a bill that, among other
things, would have redefined "navigable waters" for purposes of Section 404 only.  122 Cong.
Rec. 16514–16573 (1976).  Under the House bill's definition:

> The term "navigable waters" as used in [Section 404] shall mean all waters which
> are presently used, or are susceptible to use in their natural condition or by
> reasonable improvement as a means to transport interstate or foreign commerce . . .
> including all waters which are subject to the ebb and flow of the tide.

H.R. Rep. No. 94-1107, at 63 (1976).

According to the House Committee on Public Works and Transportation, which introduced
the bill, the revised definition of "navigable waters" "is the same as the definition of navigable
waters of the United States as it has evolved over the years through court decisions," *except* that it
"omits the historical test of navigability," "whereby waters can be considered 'navigable' solely
on the basis of their historic use as part of a highway of interstate commerce." *Id.* at 23–24. "The
Committee fe[lt] strongly that" such historic use waters "should not be considered a 'navigable

---

[1] The Corps intended to implement its 1975 definition of "navigable waters" in three phases, with
Phase I corresponding to "navigable waters of the United States" under the Rivers and Harbors
Act and to "their continuous or adjacent wetlands," and Phases II and III corresponding to
additional waters not covered under the Rivers and Harbors Act.  40 Fed. Reg. at 31321.  These
phases are referenced in some of the legislative history documents cited in this brief.

water of the United States,'" *id.* at 24, and were "more appropriately and more effectively subject to regulation by the States," *id.* at 22.

When the Senate took up the House bill in 1977, it declined to redefine "navigable waters." Instead, it adopted an amendment allowing qualifying states to assume primary Section 404 permitting responsibility in certain waters.  S. Rep. No. 95-370 at 75 (1977) *reprinted in* 4 A Legislative History of the Clean Water Act of 1977 ("Legis. History 1977"), at 708.  But the Senate bill retained the Corps' primary jurisdiction over navigable waters of the United States under the Rivers and Harbors Act—including historic use waters—and in marshes, swamps, and mudflats adjacent thereto.  *See* S. 1952, 94th Cong. § 49(a)(5), 4 Legis. History 1977, at 621–22 (defining retained waters to include waters "that are used, *have been used* or are susceptible to use for transport of interstate or foreign commerce") (emphasis added).

The final bill, H.R. 3199, was a compromise.  It did not change the definition of "navigable waters" under the CWA, but it allowed states to assume Section 404 permitting authority in waters outlined in the Senate Bill *and* in historic use Section 10 waters.  123 Cong. Rec. 38969 (1977), 3 Legis. History 1977 at 358 (retained waters do not include "waters considered navigable solely because of historical use.").  To that end, Congress employed the very text that the House had used to equate CWA "navigable waters" with "navigable waters of the United States" except for those waters deemed navigable based solely on historical practice. That formulation, plus the phrase "including wetlands adjacent thereto," is Section 404(g)(1)'s definition of retained waters as it stands today.

Legislative history thus reinforces what is clear on the face of the statute:  waters that were historically used to transport interstate and foreign commerce, but that are not and could not (with reasonable improvement) be used for that purpose, are not retained waters.  The notion that

Congress implicitly intended to include such waters in the statutory definition of retained waters

is at odds with both text and with the weight of historical evidence; the Court should reject it.

Dated: November 6, 2023                          Respectfully submitted,

                                                  TODD KIM
                                                  Assistant Attorney General
                                                  Environment & Natural Resources Division
                                                  United States Department of Justice

                                                  /s/ Andrew S. Coghlan
                                                  Andrew S. Coghlan (CA Bar 313332)
                                                  Environmental Defense Section
                                                  P.O. Box 7611
                                                  Washington, D.C. 20044-7611
                                                  Tel: (202) 514-9275
                                                  Fax: (202) 514-8865
                                                  Email: Andrew.Coghlan@usdoj.gov

                                                  Alison C. Finnegan (PA Bar 88519)
                                                  United States Department of Justice
                                                  Environment & Natural Resources Division
                                                  Wildlife & Marine Resources Section
                                                  P.O. Box 7611
                                                  Washington, DC 20044-7611
                                                  Tel: 202-305-0500
                                                  Email: Alison.C.Finnegan@usdoj.gov

                                                  *Attorneys for Federal Defendants*