

**FLORIDA DEPARTMENT OF Environmental Protection**

South District
PO Box 2549
Fort Myers FL  33902-2549
SouthDistrict@FloridaDEP.gov

Ron DeSantis
Governor

Jeanette Nuñez
Lt. Governor

Shawn Hamilton
Secretary

November 17, 2023

Via E-Mail

Tania Galloni
Managing Attorney
Earthjustice
4500 Biscayne Blvd., Suite 201
Miami, Florida 33137

Dear Ms. Galloni:

Thank you for your letter of November 9, 2023 requesting that the Florida Department of Environmental Protection (FDEP) postpone the public meeting for the Bellmar Villages Project (DEP Application No. 396364-001). Your letter sought a response by November 14; however, as your e-mail providing the letter was sent after business hours on Thursday, November 9 and, due to the Veterans Day holiday on Friday, November 10, FDEP did not receive and begin to review your request until Monday, November 13.

**Public Comment Process for the Bellmar Villages Project**

FDEP received the Section 404 permit application for the Bellmar Villages Project almost three years ago. Since receipt of the application, FDEP has submitted several requests for additional information (RAIs) to the permit applicant and engaged in extensive permit review procedures including, for example, the Technical Assistance Process set forth in FDEP's Memorandum of Understanding with the U.S. Fish and Wildlife Service (USFWS). FDEP's permit file for this project contains over 800 individual records and is fully accessible to the public on a real-time basis. For Section 404 permit records related to the Bellmar Villages Project, please refer to FDEP's Information Portal.[1]

FDEP issued its first public notice[2] for this permit application on August 16, 2022, and after an additional year of review and consultation with state and federal agencies and other stakeholders, FDEP issued its second public notice on November 6, 2023 (as shown on the Information Portal), which invites additional comments from the public.  Comments should be submitted in writing through the FDEP business portal (fldepportal.com) or by submittal to Toby Schwetje at FDEP's South District Office, PO Box 2549, Fort  Myers, Florida 33902-2549. FDEP has

---

[1] https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_396364/facility!search
[2] https://prodenv.dep.state.fl.us/DepStaging/api/dms/45.62700.1

scheduled the public meeting for December 7, 2023 from 4 p.m. to 7 p.m. EST at the Collier Public Library in Naples, Florida.[3] As shown in the Information Portal, a public meeting had been requested by many citizens.

FDEP is soliciting comments from the public; federal, state, and local agencies and officials; Indian Tribes; and other interested parties in order to consider and evaluate the impacts of this proposed activity. Comments are used to assess impacts to endangered species, historic properties, water quality, general environmental effects, and other public interest factors.

Please note that all written comments will be made part of the record. Any comments received will be considered by FDEP to determine whether to issue, modify, condition, or deny a permit. The determination whether a permit will be issued is based on an evaluation of all relevant factors, including the public comments received and the effects of the proposed project on the public interest, including, but not limited to, fish, wildlife, historical resources, and pollution. The specific permit decision criteria can be found in Chapter 62-331, Florida Administrative Code (F.A.C.). All comments received will be carefully reviewed and taken into consideration as FDEP takes final action on the permit application. Comments should be submitted before the conclusion of the public meeting.

**Additional Steps Following the Public Meeting**

Your letter requests information about "any other events that will or must take place before the Bellmar permit could issue…" The end of the public meeting is *not* the end of the Section 404 permitting process. For example, pursuant to rule 62-331.060(3)(c), F.A.C., the "public notice comment period shall automatically be extended to the close of any public meeting, if one is held. The presiding officer may also extend the comment period at the public meeting." Moreover, FDEP may request additional information as necessary during its review of any information that FDEP receives during the public comment period, at a public meeting, or during federal review. Rule 62-331.052(1)(c), F.A.C.

Likewise, the federal review process would need to be completed prior to FDEP final action on the permit, per rule 62-331.052(3), F.A.C., and the Florida 404 Handbook, Section 5.2.5. EPA may request to comment on the permit application. As explained in FDEP-EPA Memorandum of Agreement for the Section 404 Program, EPA reserves the right to object within 90 days based upon information received during the public comment period. If FDEP has been so notified, the permit shall not be issued until after the receipt of such comments or 90 days of EPA's receipt of the public notice, draft general permit or FDEP's response (40 C.F.R. § 233.31(a)), whichever comes first. If, during the federal review process, FDEP receives an EPA objection or requirement for a permit condition, FDEP will not issue the permit unless the steps required by EPA to eliminate the objection or condition the permit have been taken. Rule 62-331.052(3)(b)2., F.A.C. Additionally, within 90 days after FDEP receives an EPA objection or requirement for a permit condition, FDEP or any interested party may request that the EPA hold its own separate public meeting on the objection or requirement.

---

[3] https://floridadep.gov/file/35225/download?token=NLHEVb8x ;
https://www.flrules.org/gateway/notice_Files.asp?ID=27749292

Moreover, as part of the EPA-led federal review process, EPA provides a copy of each public notice and other information needed for review of the application to the U.S. Army Corps of Engineers, the USFWS, and NMFS within 10 days of receipt. If these agencies wish to comment, they so notify EPA within 15 days, and submit their comments to EPA within 50 days of such receipt. EPA will then determine whether to comment, object, or to require permit conditions, as noted above.

To be clear, FDEP has made no decision at this time whether to grant or deny the permit for the Bellmar Villages Project. FDEP will continue to review and consider all comments received during the ongoing public notice and comment process and subsequent review periods. When a determination is made whether to grant or deny a permit request, FDEP's determination is subject to challenge in an administrative hearing before the Florida Division of Administrative Hearings. As such, FDEP's issuance or denial of a permit is not final agency action if an administrative challenge is timely filed. *See* Fla. Stat. § 120.569, § 120.57. The "administrative hearing process is designed to formulate agency action" so FDEP's "final action may be different from the proposed agency action and may result in the issuance of a permit as requested by the applicant or as modified in the course of the [administrative] proceeding or by settlement." Rule 62-110.106(7)(e)(2), F.A.C.

**Species Review**

Your letter also raises concerns about the species review process for the Bellmar Villages Project. FDEP has been involved in closely reviewing potential impacts, including species impacts, for this permit application. For Section 404 permits, FDEP "shall incorporate as permit conditions all recommended impact avoidance and minimization measures (protection measures) provided by the Florida Fish & Wildlife Conservation Commission (FWC), USFWS, or NMFS under their respective authorities…." Florida 404 Handbook, Section 5.2.3. In all respects related to impacts to federally-protected species or habitat, the position of the USFWS always controls: "With regard to conclusions about the potential effects of a project on ESA-listed species, their critical habitats, or the effectiveness of proposed protection measures, the final USFWS position is determinative." BiOp at 41. The BiOp/ITS repeats this point to make it abundantly clear: "…final FWS conclusions regarding effects to species are determinative" and "USFWS conclusions regarding potential impacts and necessary measures to address impacts are determinative." BiOp at 40. The Memorandum of Understanding between FDEP, Florida Fish & Wildlife Conservation Commission, and USFWS also expressly states that "the final FWS position" is "determinative" for purposes of "potential effects on ESA-listed species or the effectiveness of proposed mitigation measures." As such, FDEP administers the 404 program fully committed to the requirement that any such determinations by USFWS are binding.

For awareness, the publicly accessible FDEP permit file for the Bellmar Villages Project contains the USFWS Technical Assistance Process Response report.[4] As shown in the response, USFWS conducted an in-depth review whether the Bellmar Villages Project had "adequate protection measures to avoid and minimize any incidental take that is reasonably certain to

---

[4] *See* FDEP Information Portal, "20231031_404PROJECT REVIEW MEMO BELLMAR COMMUNITY ST404_396364 CORRECTED WITH ENCLOSURE_SIGNED,"
https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_396364/facility!search.

3

occur." As such, USFWS provided a list of "necessary avoidance and minimization measures (AMMs)" that FDEP must adopt in order to "ensure that the permitted activity is not likely to jeopardize any species, adversely modify or destroy critical habitat or to ensure that any incidental take is avoided or minimized."

In that response, USFWS also "provide[d] questions, comments, or any other appropriate information to assist FDEP and FWC in processing the permit application." In particular, the USFWS response provides "Additional and Necessary Avoidance and Minimization Measures" for species and critical habitat that are likely to be adversely affected by the project, including the Florida panther, the Florida bonneted bat, Audubon's crested caracara, and the tricolored bat. Among other measures, USFWS requires construction of wildlife crossings within the geographic region for the benefit of the Florida panther to provide and preserve a wildlife movement corridor. Pages 6 to 24 of the USFWS response provides analysis of the action area, status of species, effects of the action, cumulative effects, amount of take (including numeric estimates), and jeopardy assessment. USFWS determined that, "[u]pon FDEP's incorporation of the necessary avoidance and minimization measures as permit conditions, the USFWS concludes the issuance of the State 404 permit is not likely to jeopardize any federally listed species or adversely modify or destroy any critical habitat and complies with the USFWS programmatic biological opinion addressing Florida's assumption of the CWA 404 program. This is based on the information in the permit application, as well as the status of the affected species, and any cumulative effects within the permit applications' action area." The final 10 pages of the USFWS response contains a set of "Special Conditions" and "Additional Commitments."

Other relevant documents in the FDEP Information Portal file also address species impacts issues, such as (among other materials):
- Comments, recommendations, and permit conditions provided by the Florida Fish & Wildlife Conservation Commission[5];
- Proposed Wildlife Crossing Plans[6];
- Listed Species Management and Human-Wildlife Coexistence Plan[7];
- Applicant-prepared Biological Assessment[8] with Revised BA Part 1[9] and Revised BA Part 2,[10] along with a Listed Species Survey Report (July 2021); and
- Request for Additional Information Response – Biological Assessment.[11]

Altogether, the FDEP permit file currently contains extensive species-related information and analysis, including information related to the Florida panther. FDEP received a letter dated October 25, 2023 from several organizations regarding the status of an ongoing USFWS

---

[5] *See* FDEP Information Portal, "FWC'S COMMENTS FOR BELLMAR_43152_09182023," https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_396364/facility!search.
[6] *See* FDEP Information Portal, "PROPOSED WILDLIFE CROSSING PLANS," https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_396364/facility!search.
[7] *See* FDEP Information Portal, "LISTED SPECIES MANAGEMENT AND HUMAN-WILDLIFE COEXISTENCE PLAN," https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_396364/facility!search
[8] https://prodenv.dep.state.fl.us/DepStaging/api/dms/45.53826.1
[9] https://prodenv.dep.state.fl.us/DepStaging/api/dms/45.53823.1
[10] https://prodenv.dep.state.fl.us/DepStaging/api/dms/45.53824.1
[11] https://prodenv.dep.state.fl.us/DepStaging/api/dms/45.20239.1

cumulative impacts analysis. FDEP will consider any information provided by USFWS in the permit review process.

**Request for Postponement**

FDEP has considered your request for postponement of the public meeting. FDEP received the permit application for the Bellmar Villages Project almost three years ago and has undertaken a lengthy permit review process in close coordination with state and federal agencies and other stakeholders. FDEP received many requests for a public meeting to hear views and concerns from the public about the permit application. Consistent with Rule 62-331.060(4), F.A.C., FDEP may hold a public meeting for a proposed project "if it is determined that there is a significant degree of public interest in the application." FDEP has discretion to hold a public meeting when it is "useful to a decision on the permit application." To the extent new information becomes available, FDEP reserves the right to take that information into consideration as part of its determination. FDEP may also reevaluate the circumstances and conditions of a permit at any time if sufficient cause exists, including but not limited to significant new information. Rule 62-331.080(2)(e), F.A.C.  Accordingly, FDEP does not intend to postpone the December 7, 2023 public meeting at this time.

Thank you for your interest in this matter.

Sincerely,

Jennifer Carpenter
District Director
South District Office



cc:   Justin Wolfe, General Counsel (FDEP)