IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>    Defendants,<br><br>and<br><br>TARPON BLUE SILVER KING I, LLC d/b/a COLLIER ENTERPRISES,<br><br>    Movant Defendant-Intervenor. | Case No. 1:21-cv-00119 (RDM) |

**TARPON BLUE SILVER KING I, LLC D/B/A COLLIER ENTERPRISES'S UNOPPOSED MOTION TO INTERVENE AND INCORPORATED <u>MEMORANDUM OF LAW</u>**

Tarpon Blue Silver King I, LLC d/b/a Collier Enterprises ("Collier Enterprises" or the "Company") moves to intervene as a party in this action, pursuant to Federal Rule of Civil Procedure 24(a). Collier Enterprises seeks to defend against Plaintiffs' preemptive collateral attack on Florida's Department of Environmental Protection's (FDEP) ongoing processing of the Company's application for a permit under section 404 of the Clean Water Act (CWA) in connection with the Company's plan to construct a residential and commercial development in Collier County (the "Bellmar Project"). Collier Enterprises specifically seeks to file an opposition brief of no more than 10 pages by the deadline the Court has set for Defendants to respond to Plaintiffs' motion for a preliminary injunction.

Collier Enterprises is entitled to intervene as a matter of right because: (i) the Company has standing to intervene; (ii) the motion is timely; (iii) Collier Enterprises has a direct interest in

1

the subject matter of this litigation, which is inextricably linked to the Bellmar Project; (iv) said interest may be impaired or impeded by the disposition of this case; and (v) no existing party will adequately represent that interest.

In the alternative, Collier Enterprises should be granted permission to intervene pursuant to Federal Rule of Civil Procedure 24(b) because (i) this motion is timely; (ii) Collier Enterprises's defense of FDEP's section 404 permitting process and that agency's review of the Company's permit application shares questions of law and fact with the main action; and (iii) intervention will not unduly delay or prejudice the parties.

No party opposes the relief requested herein.[1]

## BACKGROUND

On December 16, 2020, Collier Enterprises filed an application for a permit under section 404 of the CWA in connection with its Bellmar Project, a planned residential and commercial development in Collier County that the Company has actively pursued and invested in over the course of more than 20 years. Ex. A ¶¶ 8, 23.[2] Despite the fact that Collier Enterprises submitted its permit application three years ago, and despite the fact that this case has been pending since 2021, Plaintiffs have only just now filed a motion for "preliminary" injunctive

---

[1] *See* LCvR7(m) Certificate of Conferral, below.

[2] Collier Enterprises Management, Inc. filed the permit application. *See* Ex. B ¶ 3. Then, in 2022, the Collier family divested most of their companies and the assets associated therewith, including the Bellmar Project, though an entity sale to Movant Defendant-Intervenor, Tarpon Blue Silver King I, LLC d/b/a Collier Enterprises. *Id.* ¶ 4. As the applicant for various applications associated with projects acquired by Tarpon Blue Silver King I, LLC, Collier Enterprises Management, Inc. is contractually obligated to assist Tarpon Blue Silver King I, LLC with those applications, including the CWA section 404 permit application for the Bellmar Project. *Id.* ¶ 7. As of today's date, Tarpon Blue Silver King I, LLC has initiated with FDEP the process of substituting Tarpon Blue Silver King I, LLC d/b/a Collier Enterprises as the name of the applicant for the Bellmar section 404 permit application. *Id.*

relief that specifically would prevent FDEP from deciding whether to grant Collier Enterprises its long-sought permit. *See* Motion for a Temporary Restraining Order (TRO) and Preliminary Injunction by Plaintiffs Center for Biological Diversity and Sierra Club, ECF No. 135. The Court should allow Collier Enterprises to intervene in this action to protect its significant interests in the FDEP permitting process and the outcome of its section 404 permit application, which are the subject of Plaintiffs' motion and this action.

## I. The Bellmar Project

The Bellmar Project is a planned residential and commercial community that includes a "village" as defined under Collier County's Rural Land Stewardship Program. Ex. A ¶¶ 9–11. Its site is located within a 5,105-acre area and is planned to include an approximately 1,000-acre residential village, a 350-acre commercial town center, 750 acres of continued agriculture activities, 400 acres of water management features, and other ancillary components. *Id.* The project is designed to incorporate preserved areas for passive enjoyment of nature. *Id.* The site is focused within the area identified for development by the Eastern Collier Multiple Species Habitat Conservation Plan (ECMSHCP) and is designed to adhere to the tenets of the ECMSHCP, including clustering residential and commercial development within areas of less valuable habitat, and permanently preserving areas with higher value habitat, such as wildlife dispersal corridors. *Id.* ¶ 21.

Consistent with the tenets of the ECMSHCP, to offset the potential impacts of constructing the Bellmar Project, over 2,570 acres of higher value habitat, wetlands, and open waters will be placed under permanent preservation and managed to maintain, and in many cases improve, their ecological values. *Id.* ¶¶ 11, 21. These areas include a regional flow-way, a wildlife corridor comprised of high value habitat within Camp Keais Strand, and high value wetlands. *Id.*

The Bellmar Project will also (i) at its sole cost and expense, construct or fund the construction of five wildlife crossings within the geographic region where the Bellmar and RLW projects are located to allow the safe movement and dispersal of panthers and other wildlife; and (ii) contribute to a funding mechanism known as the Paul J. Marinelli Fund, which is expected to generate millions of dollars through per-acre and per-unit fees tied to the Bellmar Project and other development projects and will be used for construction of additional crossings and fencing, habitat acquisition and restoration, and corridor enhancement. *Id.*

## II.  The Permitting Process

Collier Enterprises has applied for a variety of state and local permits in connection with its planned development of the Bellmar Project, *id.* ¶ 12, including the section 404 permit Plaintiffs specifically target in their motion for a preliminary injunction. *See* ECF No. 135 at 1. That permit would authorize discharges of dredged or fill material into approximately 147 acres of waters within the project site. Ex. A ¶ 12.

To obtain a section 404 permit, a company must apply with the permitting authority authorized to issue those permits. Section 404(a) of the CWA generally assigns that authority to the U.S. Army Corps of Engineers (the "Corps"). 33 U.S.C. § 1344(a); *see also Couer Alaska, Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261, 266 (2009) (stating that § 404 of the CWA grants the [Corps] the power to 'issue permits . . . for the discharge of . . . fill material'" (citing 33 U.S.C. § 1344(a))). The CWA also allows states to administer their own section 404 permitting programs with the permission of EPA. 33 U.S.C. § 1251(a).

EPA granted Florida authority to issue section 404 permits in 2020. *See* 85 Fed. Reg. 83,553, 83.553 (Dec. 22, 2020). So under both Florida and federal law, FDEP is the sole agency currently authorized to issue permits in Florida under CWA section 404. And because FDEP is a State agency, its permit decisions are subject to judicial review exclusively in Florida's state

4

courts. Fla. Stat. § 120.68 (2023) ("A party who is adversely affected by final agency action is entitled to judicial review. . . . Except in matters for which judicial review by the Supreme Court is provided by law, all proceedings for review shall be instituted by filing a petition in the district court of appeal in the appellate district where the agency maintains its headquarters or where a party resides.").[3]

Passarella & Associates, Inc. (PAI) filed for a section 404 permit on Collier Enterprises's behalf with the Corps on December 16, 2020. Ex. A ¶ 23. Shortly thereafter, the Corps transferred the application to FDEP. *Id.* ¶ 24. Since then, Collier Enterprises has worked closely and diligently with FDEP and other agencies involved in the review of its section 404 permit application. *Id.* ¶¶ 25, 27.

As per FDEP's permitting process, Collier Enterprises, through PAI, has prepared and submitted substantial documentation to the agency, including the application itself, application supplements, wildlife surveys, studies, responses to requests for information, homeowners' association documents, and other materials. *Id.* ¶ 28. In addition, Collier Enterprises has prepared responses to FDEP's extensive requests for additional information, which were submitted to FDEP by Collier Enterprises in July 2021 and April 2022. *Id.* ¶ 29. Further, at the request of FDEP and the U.S. Fish and Wildlife Service (USFWS), Collier Enterprises commissioned traffic reports for the Bellmar Project, an additional planned community named Rural Lands West, and both projects combined. *Id.* ¶ 31. The Company submitted the Bellmar Project traffic report to FDEP on December 9, 2022, the Rural Lands West traffic report on January 11, 2023, and the combined report on February 13, 2023. *Id.*

---

[3] Indeed, this Court lacks jurisdiction to review decisions by FDEP on section 404 permit applications, including Collier Enterprises's application.

There have also been two rounds of public comment on Collier Enterprises's permit application. FDEP first issued a public notice for comment regarding the Bellmar Project application on August 16, 2022. *Id.* ¶¶ 30, 33. Among those who submitted comments were Plaintiffs. *See* Joint Comment of CBD, Conservancy of Southwest Florida, and Sierra Club (Sept. 15, 2022); Joint Comment of CBD, Conservancy of Southwest Florida, and Sierra Club (Oct. 25, 2023).[4] Then, on November 6, 2023, FDEP issued a second public notice for comment in connection with its decision to hold a public meeting regarding the Bellmar Project application, which it held on December 7, 2023. Ex. A ¶ 33. At the December 7, 2023 public meeting, FDEP further extended the public comment period on Collier Enterprises's application, which was set to end on that date, through December 12, 2023. *Id.* Collier Enterprises is preparing responses to comments received at the conclusion of the first public comment period and additional comments received through the end of the second public comment period. *Id.* The responses, which include responses to Plaintiffs' comments, will be submitted to FDEP in the coming weeks. *Id.*

This process has been expensive and time-consuming for Collier Enterprises. Collier Enterprises has explained that, to date, it has spent a total of over $1.3 million dollars in consultant and legal fees to support its CWA section 404 application for Bellmar alone; Collier Enterprises has spent another $1.3 million dollars to support its CWA section 404 application for RLW; and the expenditures for consultant and legal fees associated with the ECMSHCP exceed $2 million dollars. *Id.* ¶ 36.

---

[4] Available at https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ ST404_396364/facility!search (last accessed on Dec. 16, 2023).

**ARGUMENT**

The Court should grant Collier Enterprises's motion to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a) because: (i) the Company has Article III standing to intervene; (ii) the motion is timely; (iii) Collier Enterprises has a direct interest in the subject matter of this litigation; (iv) said interest may be impaired or impeded by the disposition of this case; and (v) no existing party will adequately represent that interest. In the alternative, the Court should allow Collier Enterprises to intervene pursuant to Federal Rule of Civil Procedure 24(b), as (i) this motion is timely; (ii) Collier Enterprises's defense of FDEP's section 404 permitting process and that agency's review of the Company's permit application shares questions of law and fact with the main action; and (iii) intervention will not unduly delay or prejudice the parties.

**I.     Collier Enterprises has Article III standing to intervene in this action.**

A party seeking "to intervene as another defendant," must "demonstrate Article III standing[.]" *Crossroads Grassroots Policy Strategies v. Federal Election Com'n*, 788 F.3d 312, 316 (D.C. Cir. 2015); *see also Old Dominion Elec. Coop. v. Fed. Energy Regul. Comm'n*, 892 F.3d 1223, 1232 (D.C. Cir. 2018). In *Lujan v. Defenders of Wildlife*, the Supreme Court set out a three-part test for standing whereby a party must demonstrate: (1) concrete and imminent injury, (2) causation, and (3) redressability. 504 U.S. 555, 560–61 (1992); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732–33 (D.C. Cir. 2003) ("To establish standing under Article III, a prospective intervenor—like any party—must show (1) injury-in-fact, (2) causation, and (3) redressability."). Collier Enterprises meets these requirements.

Under *Lujan*, "a litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007). With respect to harm that is imminent, "the injury [must] proceed with a high

7

degree of immediacy. . . ." *Lujan*, 504 U.S. at 564 n.2. Here, Plaintiffs' motion for a preliminary injunction directly jeopardizes Collier Enterprises's significant reliance interests in the section 404 permitting process under Florida law as authorized by EPA. As discussed above, since EPA authorized FDEP in 2020 to exclusively administer permitting under CWA section 404, the Company has invested countless hours and substantial financial resources—approximately $1.3 million—in its pursuit of a section 404 permit for its Bellmar Project. *See* Ex. A ¶ 36. Indeed, as detailed above, Collier Enterprises has prepared and submitted voluminous documents in support of its application, ranging from wildlife surveys to responses to requests for information. *Id.* ¶¶ 28–29. The Company has also commissioned traffic reports and prepared responses to public comments, including comments submitted by Plaintiffs. *Id.* ¶¶ 31–33. After three years, the permit application review process is in its last stages, and FDEP is expected to render a decision on Collier Enterprises's section 404 permit application in the coming months. *See id.* ¶ 34. Accordingly, if Plaintiffs prevailed on their motion now—nearly three years after they initiated this lawsuit and three years after the Company filed for the permit at issue—Collier Enterprises will have incurred considerable costs in fruitless reliance on EPA's authorization of FDEP to exclusively administer section 404 permitting and FDEP's permitting process. That means Collier Enterprises's injury is concrete and imminent. *See, e.g.*, *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009) (owner of coal mine had standing to intervene in litigation that could affect future mining operations); *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 998 (8th Cir. 1993) (landowner had standing to intervene in litigation that could affect property value and rights to hunt, fish, and gather thereon).

As for causation, that requirement is satisfied when the alleged injury is "fairly traceable to the challenged conduct." *Lujan*, 504 U.S. at 560–61 (internal citation omitted). This requirement is met because Collier Enterprises's injury would directly result from Plaintiffs' effort to enjoin FDEP from deciding whether to grant the Company its section 404 permit after it spent countless hours and well over $1.3 million dollars on the application process over the past three years. *See* Ex. A ¶ 36. Moreover, were the Court to enter Plaintiffs' requested injunction, Collier Enterprises would be unable to seek permitting elsewhere, as FDEP is the only permitting body with authority under the law to issue section 404 permits in Florida. And to the extent that Plaintiffs request that the Court issue an order restoring authority to the Corps over CWA section 404 permits, such an order may—aside from significantly delaying the permit application review process—cause Collier Enterprises to have to restart the application process with a different agency that may not be staffed or prepared to process that application, and incur additional expenses in connection with its application.

Finally, with respect to redressability, that requirement is fulfilled if it is "likely" that "the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal citations omitted). Here, if the Court allowed Collier Enterprises to intervene and it, in turn, successfully opposed Plaintiffs' request, then Collier Enterprises would not be subject to the substantial delays and costs associated with having to halt or restart the permitting process.

Because Collier Enterprises satisfies all three prongs of the *Lujan* test, it has standing.

## II.   Collier Enterprises is entitled to intervene as of right.

Federal Rule of Civil Procedure 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene," who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to

9

>  protect its interest, unless existing parties adequately protect that interest.

Fed. R. Civ. P. 24(a)(2).  Collier satisfies each of these requirements.

### A. The Motion to intervene is timely.

The timeliness of a motion to intervene "is to be determined from all the circumstances" of the case. *NAACP v. New York*, 413 U.S. 345, 366 (1973).  In assessing timeliness, a court considers factors such as (1) the time elapsed since the inception of the suit, (2) the purpose for which intervention is sought, (3) the necessity for intervention as a means of preserving the applicant's rights, and (4) the improbability of prejudice to those already parties in the case. *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980) (citing *Moten v. Bricklayers, Masons & Plasterers Int'l Union*, 543 F.2d 224, 228 (D.C. Cir. 1976).

Collier Enterprises's motion is timely.  Approximately two weeks have passed since Plaintiffs filed their motion seeking to enjoin the issuance of Collier Enterprises's section 404 permit for the Bellmar Project.  *See* ECF No. 135.  Defendants have yet to respond to Plaintiffs' motion, and the Court has not ruled thereon.  Collier Enterprises filed this motion to intervene in order to submit its own opposition to Plaintiffs' motion and is fully prepared to file that opposition in accordance with the Court's schedule.  Allowing Collier Enterprises to intervene will not delay this action, nor will it otherwise prejudice the parties, who either do not oppose intervention or take no position on it.  Indeed, Collier Enterprises's participation would assist in the Court in its consideration of this matter by presenting a perspective not otherwise provided by the existing parties, as further discussed below.

### B. Collier Enterprises has a legally protectable interest in the permit application that Plaintiffs seek to enjoin Defendants from issuing.

To intervene as of right, "the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P.

10

24(a)(2).  A court's conclusion "that a putative intervenor has constitutional standing is 'alone sufficient to establish . . . [its] interest in the property or transaction which is the subject of the action.'"  *Red Lake Band of Chippewa Indians v. United States Army Corps of Engineers*, 338 F.R.D. 1, 5 (D.D.C. 2021) (quoting *Fund for Animals*, 322 F.3d at 735).  "'An intervenor's interest is obvious when [it] asserts a claim to property that is the subject matter of the suit.'"  *Fund for Animals*, 322 F.3d at 735 (quoting *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981)).

      As discussed above, Collier Enterprises has Article III standing to intervene in this action.  That "is 'alone sufficient to establish . . . [its] interest" in the subject of this action and the outcome of Plaintiffs' motion, which seeks to enjoin Defendants from taking any action furthering the issuance of the section 404 permit Collier Enterprises seeks.  *Red Lake Band of Chippewa Indians*, 338 F.R.D. at 5.  Article III standing aside, the Company has expended enormous resources over the course of many years to obtain its permit.  As detailed above, since 2020, Collier Enterprises has worked diligently and closely with FDEP to prosecute its permit application, including preparing and submitting innumerable documents in support thereof, ranging from wildlife surveys to responses to requests for information.  Ex. A ¶¶ 28–29.  The Company has also participated in two public comment periods, commissioned traffic reports, and prepared responses to extensive requests for information from FDEP and two rounds of public comments, including comments submitted by Plaintiffs.  *Id.* ¶¶ 31–33.  Indeed, to date, Collier Enterprises has spent a total of over $1.3 million dollars in support of its pending section 404 application.  *Id.* ¶ 36.

      Significantly, Collier Enterprises has no alternative course of action other than to seek its permit from FDEP, the only permitting body with authority under the law to issue section 404

11

permits in Florida. Thus, if it is unable to intervene in this suit and Plaintiffs prevail on their motion for a preliminary injunction, Collier Enterprises will have no recourse. It therefore has a direct interest in this suit such that it should be permitted to intervene. *Am. Tel. & Tel. Co.*, 642 F.2d at 1291–92 ("[I]ntervention aims to protect interests 'of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of judgment.'" (internal citations omitted)).

Collier Enterprises's direct financial interest in this litigation also entitles it to intervention. Economic or financial interests are typically sufficient bases for intervention. *See, e.g.*, *Dimond v. Dist. Of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (recognizing prospective intervenor's "financial interest" in the litigation); *Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361 (D.D.C. 2012) (recognizing intervenor's interest as the manufacturer and seller of engines plaintiff sought to have government agency recall); *County of San Miguel, Colorado v. MacDonald*, 244 F.R.D. 36, 47 (D.D.C. 2007) (recognizing intervenors' members' economic interest in lands that were the subject of the litigation for their business operations); *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 14 (D.D.C. 2010) (finding an interest sufficient for intervention as of right in part based on the agency's finding that denial of the application at issue would affect the company's finances); *see also Utahns for Better Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) ("The threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest."). If Plaintiffs obtain the relief they seek—an injunction preventing FDEP from issuing a permit required for the construction of the Bellmar Project—Collier Enterprises would have incurred significant damages resulting from its reliance on FDEP permitting process.

### C. Collier's interests may be impaired or impeded by the disposition of this litigation.

Rule 24(a) requires a proposed intervenor to demonstrate that the outcome of a case threatens to impair or impede its interest. In evaluating this factor, a court must consider "the 'practical consequences' of denying intervention." *Fund for Animals*, 322 F.3d at 735 (citing *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)).

Here, it is readily apparent that if the Court grants Plaintiffs' requested injunction, Collier Enterprises's interests will be substantially impaired or impeded. Plaintiffs ask the Court to "immediately issue a TRO enjoining the parties from taking any action furthering the issuance of the Bellmar . . . permit[], up to including issuing the permit[]; and preliminary enjoin any further action on [this permit]." ECF No. 135 at 36. An order granting Plaintiffs such relief plainly would impair Collier Enterprises's interests because it would prevent FDEP from rendering a final decision on the Company's section 404 permit application for the Bellmar Project, when the permit review process is in its final stages and after Collier Enterprises spent countless hours over three years and millions of dollars on that process.

### D. The current parties do not adequately represent Collier's interests.

To satisfy the fourth requirement of Rule 24(a)(2), a proposed intervenor must show that its interests *may* not be adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2) (emphasis added). Only a "minimal" showing is required to establish this element of the legal standard for intervention. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also Fund For Animals*, 322 F.3d at 735 (describing the inadequacy of representation requirement as "not onerous" and quoting *Dimond v. District of Columbia*, 792 F.2d at 192). The movant-intervenor "ordinarily should be allowed to intervene unless it is clear that the party

13

will provide adequate representation for the absentee." *Am. Tel. & Tel. Co.*, 322 F.3d at 1293. This minimal burden is easily met here.

Courts in this Circuit and elsewhere routinely recognize that the government agencies do not adequately represent the interests of a private party merely because the private party supports the agencies' actions. *See Fund for Animals*, 322 F.3d at 736 ("[W]e have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors."); *Dimond*, 792 F.2d at 192–93 ("A government entity. . . is charged by law with representing the public interest of its citizens. [A private company], on the other hand, is seeking to protect a more narrow and 'parochial' financial interest."); *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) ("The D.C. Circuit has repeatedly held that private companies can intervene on the side of the government, even if some of their interests converge."); *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 973-74 ("The straightforward business interests asserted by [private party] intervenors here may become lost in the thicket of sometimes inconsistent government policies."); *Bark v. Northrop*, No. 3:13-cv-01267-HZ, 2013 WL 6576306, at *6 (D. Or. 2013) ("[T]he federal government's duty to represent a much broader spectrum of interest may conflict with its ability to effectively represent more narrow economic interests of private parties." (internal citations and quotations omitted)). Government entities are charged with representing the public interest of the citizens rather than the more narrow interest of a private party. *See Dimond*, 792 F.2d at 192–93. For that reason, the D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736; *see e.g.*, *Costle*, 561 F.2d at 912 (allowing rubber and chemical companies to intervene in support of EPA because the interest "is more narrow and focused than EPA's"). Courts across the country have taken the same view. *See, e.g.*, *South Dakota v.*

*Ubbelohde*, 330 F.3d 1014, 1025–26 (8th Cir. 2003) (in suit challenging Corps policy to lower reservoir water level, Corps could not adequately represent interests of proposed intervenors—downstream users—because it was required to balance the interests of the upstream and downstream users); *Georgia v. U.S. Army Corps of Eng'rs,* 302 F.3d 1242, 1259 (11th Cir. 2002) ("a federal defendant with a primary interest in the management of a resource" does not have an "interest[] identical to those of an entity with [an] economic interest[] in the use of that resource" (citation omitted)); *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44–45 (1st Cir. 1992) ("[A] governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity . . . .").

As in the above cases, the interests of Collier Enterprises and Defendants diverge here. FDEP has authority to issue or deny section 404 permits for the discharge of dredged or fill material and impose any necessary conditions on those permits. EPA had a responsibility when it granted section 404 permitting authority to FDEP to ensure that proper regulatory procedures were implemented.[5] And Defendants' need to protect the integrity of their own decisions precludes them from "advanc[ing] the narrow[] interests of a private entity." *National Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 977 (8th Cir. 2014). These agencies will be focused on defending their policies, procedures, and decisions. Neither has any particular stake in protecting Collier Enterprises's reliance interests in FDEP's section 404 permitting process or its interest in the issuance of its permit for the Bellmar Project. These institutional interests mean that Defendants are in no position to adequately represent Collier Enterprises's interests.

---

[5] In addition, EPA currently has authority to object to or comment on pending state 404 permits if a permit does not satisfy certain requirements, such as compliance with the Endangered Species Act. 40 C.F.R. § 233.50.

15

Collier Enterprises as the permit seeker has a direct interest in the issuance of a section 404 permit for the Bellmar Project that the government agencies do not share. This interest is therefore "narrower and not subsumed by the general interest . . . " of EPA or FDEP. *See United States, et al. v. Union Elec. Co.*, 64 F.3d 1152, 1170 (8th Cir. 1995). As a result, the positions that those agencies may take during the litigation or settlement of this case will not necessarily align with the positions that Collier Enterprises would take.

In light of the Company's specific and extensive role in applying for a section 404 permit for the Bellmar Project, as well as other required federal, state, and local authorizations for that project, Collier Enterprises can draw this Court's attention to important facts in the administrative record and key points of law that the agencies may not raise. Collier Enterprises's perspective is important and necessary to defend its own interests in this suit.

Collier also has a direct, substantial interest in any settlement negotiations that may result from this litigation and in any potential appeal, and Collier Enterprises's interests are likely to deviate from the Defendants' interests. For example, Collier may have an interest in appealing certain decisions that may adversely affect it but not Defendants.

**III.  Alternatively, Collier should be granted permissive intervention.**

For the reasons stated, Collier Enterprises is entitled to intervene as of right under Rule 24(a)(2). If this Court determines otherwise, Collier requests that that it be permitted to intervene pursuant to Federal Rule of Civil Procedure 24(b)(1)(B). Under Rule 24(b)(1)(B), the Court may exercise its discretion to permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also EEOC v. Nat'l Children's Center, Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998); *Mass. School of Law v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997); *Nat'l Wildlife Fed'n v. Burford*, 676 F. Supp. 271 (D.D.C. 1985). In determining whether to permit such a party to

intervene, the "principal consideration" is whether the proposed intervention "would unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also Arizona v. California*, 460 U.S. 605, 614 (1983) (granting intervention based on the absence of any showing that the rights of the original parties would be prejudiced or the litigation unduly delayed).

Permissive intervention is fully warranted here. Plaintiffs seek a preliminary injunction preventing the issuance of a section 404 permit to Collier Enterprises. The arguments in opposition to Plaintiffs' motion that Collier Enterprises would raise as an intervenor present questions of law and fact in common with the underlying suit and would respond directly to Plaintiffs' claims. Moreover, given the unique perspective of Collier Enterprises with respect to the permit application process, its intervention would very likely aid or enhance the Court's understanding of the underlying legal and factual issues and, thereby, assist in the efficient resolution of this action.

In addition, as discussed above, this motion to intervene is timely. Plaintiffs filed their motion for TRO and Preliminary Injunction on December 4, 2023—approximately two weeks ago. Granting Collier Enterprises intervention will not delay the litigation, as it is prepared to fully comply with the Court's briefing schedule.

Finally, allowing the Company to intervene would promote judicial economy by reducing the risk of further litigation arising from the resolution of this case without Collier Enterprises's participation. *See Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) (holding that in applying Fed. R. Civ. P. 24, courts must remember that intervention is a tool of judicial efficiency—"a practical [way of] disposing of lawsuits by involving as many apparently concerned persons as is

compatible with efficiency and due process"). Taken together, these considerations clearly support Collier Enterprises's request for permission to intervene under Rule 24(b)(1)(B).

### IV. This memorandum and the supporting affidavit are sufficient to satisfy the requirements of Rule 24(c).

A motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c); *see also* LCvR 7(j). Although a defendant generally sets out its defenses in an answer, this Court has held that it "may permit[] a degree of flexibility with technical requirements when the position of the movant is apparent from other filings." *Ying Qing Lu v. Lezell*, Civil Action No. 11-1815 (JEB), 2012 U.S. Dist. LEXIS 73547, at *3 (D.D.C. May 29, 2012) (internal quotations omitted). Other courts have likewise recognized that Rule 24(c) may be satisfied by "sufficient notice to the court and the parties of [the intervenor's] interest." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (internal citations omitted); *see also Beckman Indus. v. Int'l Ins. Co.,* 966 F.2d 470, 474–75 (9th Cir. 1992) (absence of an actual pleading not fatal when "the movant describes the basis for intervention with sufficient specificity to allow the district court to rule"); *City of Bangor v. Citizen Commc'ns Co.*, Civil No. 02-183-B-S, 2007 U.S. Dist. LEXIS 38762, at *13 (D. Me. May 25, 2007) ("the Court's ultimate decision on intervention must be driven by the merits of the motion, especially when the record otherwise makes clear exactly what claims or defenses the proposed intervenor seeks to pursue or otherwise resolve").

If granted intervention, Collier Enterprises will file its opposition to the Plaintiffs' motion for a preliminary injunction per the Court's briefing schedule. The Company respectfully requests the Court take notice of this memorandum and supporting declaration, along with the forthcoming opposition, to satisfy the requirements of Rule 24(c).

## **CONCLUSION**

For the reasons set forth above, the Court should grant Collier Enterprises's unopposed motion to intervene.

Dated: December 22, 2023               Respectfully submitted,

/s/ George P. Sibley, III
George P. Sibley, III (DC Bar No. 1011939)
**HUNTON ANDREWS KURTH LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8262
gsibley@HuntonAK.com

*Counsel for Movant Defendant-Intervenor Collier Enterprises Management Inc.*

## LCvR 7(m) CERTIFICATE OF CONFERRAL

Pursuant to LCvR 7(m) of the U.S. District Court for the District of Columbia, I hereby certify that Collier Enterprises's counsel conferred on December 12, 2023, with counsel for Plaintiffs and on December 8, 2023 with counsel for Defendants. Defendants do not oppose this motion. Plaintiffs consent to intervention by Collier Enterprises for the purpose of filing an opposition to the Motion for TRO/Preliminary Injunction by January 12, 2024, of no more than 10 pages, and request an additional 5 pages for Plaintiffs' consolidated reply to respond to the additional filing. Defendants take no position on the relief herein requested.

/s/ George P. Sibley, III
George P. Sibley, III

*Counsel for Movant Defendant-Intervenor*
*Collier Enterprises Management Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that, on December 22, 2023, I electronically filed the foregoing motion with the Clerk of the Court for the U.S. District Court for the District of Columbia via the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by that system.

/s/ George P. Sibley, III
George P. Sibley, III

*Counsel for Movant Defendant-Intervenor*
*Collier Enterprises Management Inc.*