# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>    Defendants,<br><br>and<br><br>TARPON BLUE SILVER KING I, LLC d/b/a COLLIER ENTERPRISES,<br><br>    Movant Defendant-Intervenor. | Case No. 1:21-cv-00119 (RDM) |

**DECLARATION OF KENNETH C. PASSARELLA IN SUPPORT OF
<u>UNOPPOSED MOTION TO INTERVENE</u>**

I, Kenneth C. Passarella, hereby depose and state that I am over the age of 18 and in all respects competent and qualified to make this Declaration. All facts stated herein are within my personal knowledge and are true and correct.

1. I am the founder, President, and Principal Ecologist of Passarella & Associates, Inc. (PAI), a full-service ecological and environmental consulting firm that assists clients in achieving a sustainable balance between development and environmental resources. The firm has offices in Florida and South Carolina and services clients through the southeast United States.

2. Prior to founding PAI in 1996, I was an environmental consultant and ecologist in both the public and private sectors. I hold Bachelor's and Master's degrees in Marine Science from Jacksonville University and the University of South Florida, respectively, and have guided

1

a number of major public and private projects through the local, state, and federal permitting and environmental planning process.

3. I have over 30 years of experience and have been certified as a Professional Wetland Scientist by the Society of Wetland Scientists and as a Senior Ecologist by the Ecological Society of America. I have also been certified by the U.S. Army Corps of Engineers as a wetland delineator. I am a member of the Society of Wetland Scientists, Ecological Society of America, the National Association of Environmental Professionals, and the Florida Association of Environmental Professionals. I have served as president and board member of the Florida Association of Environmental Professionals and also was the founder and president of the Southwest Florida chapter.

4. PAI was hired by Collier Enterprises Management, Inc. in 2003 to assist in identifying development and conservation opportunities within the company's Collier County landholdings. Also at that time, PAI initiated extensive field surveys and studies on the company's landholdings, which included wetland delineation, protected species surveys, and habitat mapping. Since that time, PAI has assisted Collier Enterprises Management, Inc. and, later, Tarpon Blue Silver King I, LLC d/b/a Collier Enterprises (Collier Enterprises) in filing and obtaining regulatory authorizations from state, federal, and local agencies for several projects, including the Bellmar development (the "Bellmar Project") and the nearby Rural Lands West (RLW) development, among others.

5. Collier Enterprises owns over 40,000 acres of landholdings in Southwest Florida.

6. Collier Enterprises has a broad portfolio of diverse businesses and activities that spans various industries, including real estate investments and holdings, agricultural operations, and environmental preservation and restoration projects.

7.     It has been my experience that Collier Enterprises is dedicated to responsible long-range planning, stewardship, and careful development of its Southwest Florida lands.

## II.    The Bellmar Project

8.     For approximately 20 years, Collier Enterprises has been carefully planning for development of the Bellmar and RLW communities. Both of these planned communities are located in Collier County, Florida, with RLW situated just north of Bellmar.

9.     The Bellmar Project is a planned residential and commercial community in Collier County that includes a "Village" as defined under Collier County's Rural Land Stewardship Program (RLSP), and an associated commercial town center. The Bellmar Project site is located within a 5,105-acre area. Planned features within that area include an approximately 1,000-acre village, a 350-acre commercial town center, 750 acres of continued agriculture activities, and 400 acres of water management features and other ancillary components.

10.    The majority of the planned features will be constructed on lands already in active use for large-scale agricultural activities, such as tomato fields, that are located within a portion of the project site that is adjacent to existing development and will be accessible from existing roadways.

11.    To offset the impacts of construction of the Bellmar Project, over 2,570 acres of higher value habitat, wetlands, and open waters will be placed under permanent preservation and managed to maintain, and in many cases improve, their ecological values. These areas include a regional flow-way, a wildlife corridor comprised of high-value habitat within Camp Keais Strand, and high value wetlands. Collier Enterprises will also, at its sole cost and expense, construct or fund the construction of five wildlife crossings within the geographic region where

the Bellmar and RLW projects are located to allow the safe movement and dispersal of panthers and other wildlife. In addition, it will contribute to a funding mechanism known as the Paul J. Marinelli Fund that is expected to generate millions of dollars through per-acre and per-unit fees tied to the project and other area projects, and will be used for construction of additional crossings and fencing, habitat acquisition and restoration, and corridor enhancement.

12. Collier Enterprises has applied for a variety of state and local permits in connection with its planned development of the Bellmar project, including a Clean Water Act (CWA) section 404 permit to authorize discharges of dredged or fill material into approximately 147 acres of waters within the project site.

13. In addition, Plaintiffs' motion requests in the alternative that the court issue an order restoring authority to the U.S. Army Corps of Engineers (the "Corps") over permits that may affect species listed as threatened or endangered under the U.S. Endangered Species Act (ESA). Collier Enterprises is concerned that, if its applications were transferred to the Corps for processing, the Corps may restart or repeat many of the application review processes under its own procedures, and it is my understanding that the Corps may not be currently staffed to efficiently process those and potentially many other applications that would be transferred if Plaintiffs' motion is granted. As a result, if this relief were granted, both of Collier Enterprises's pending section 404 permit applications, for Bellmar and RLW, could be substantially delayed for an uncertain period if transferred to the Corps.

### III.    Collaboration with Conservation Organizations and the Eastern Collier Multiple Species Habitat Conservation Plan

14. In 2008, Collier Enterprises signed a memorandum of understanding (MOU) with several other large landowners and four leading conservation organizations, agreeing to work

together to plan for future development in eastern Collier County while protecting the endangered Florida panther.

15.     Consistent with the 2008 MOU, Collier Enterprises and its landowner partners worked with conservation organizations to develop the Eastern Collier Multiple Species Habitat Conservation Plan (ECMSHCP), designed to permanently preserve over 100,000 acres of privately owned land—including wildlife dispersal corridors that provide valuable linkages between existing public conservation lands—and limit future development to less than 40,000 acres clustered within areas closer to existing development that have lower value as habitat, such as cleared fields in active large-scale agricultural use.

16.     After working with the U.S. Fish and Wildlife Service (USFWS or the "Service") on review of the ECMSHCP for more than a decade, the landowners concluded that several important steps remained to be completed, and some planned projects had reached a point at which the landowners needed to proceed with project-specific reviews rather than continue with collective incidental take permit (ITP) applications. Accordingly, the landowners collectively withdrew their ITP applications in 2022.

17.     However, it is my understanding that the landowners have committed to continue following the tenets of the ECMSHCP, including adherence to the landscape-level planning reflected therein.

**IV.     Collier Enterprises's CWA Section 404 Applications**

18.     On behalf of Collier Enterprises, PAI originally submitted a section 404 permit application to the Corps in 2008 for the Town of Big Cypress within an area that overlaps portions of what are now the proposed RLW and Bellmar projects.

19. Shortly thereafter, during a global economic downturn, development of the Town of Big Cypress was paused.

20. In accordance with the County's RLSP, Collier Enterprises changed the Big Cypress project from a single "Town" to separate "Villages" that now comprise portions of the RLW and Bellmar projects.

21. The Bellmar and RLW project sites are focused within the area identified for development by the ECMSHCP, and the preservation lands are located within the areas identified for preservation by the ECMSHCP. Both projects are designed to adhere to the tenets of the ECMSHCP, including clustering development within areas of less valuable habitat and permanently preserving areas with higher value habitat, such as wildlife dispersal corridors.

22. In 2016, PAI submitted a CWA section 404 application to the Corps on behalf of Collier Enterprises for RLW. On November 20, 2020, PAI resubmitted the RLW application to reflect modifications that reduced the environmental impacts of that project and increased the associated mitigation.

23. On December 16, 2020, PAI submitted the Bellmar 404 permit application on behalf of Collier Enterprises to the Corps.

24. Both the RLW and Bellmar 404 permit applications were transferred to the Florida Department of Environmental Protection (FDEP) shortly after FDEP assumed CWA section 404 permitting for the State of Florida on December 22, 2020.

25. Following the Corps's transfer of its CWA section 404 permit applications to FDEP nearly three years ago, Collier Enterprises has relied upon FDEP to properly and efficiently process its CWA section 404 permit applications, and has worked diligently to

support the applications, including by providing additional information and studies requested by FDEP and other reviewing agencies including the USFWS.

26. Collier Enterprises has structured its projects to be environmentally protective and plans to incorporate all conditions and requirements proposed to date by FDEP, the Florida Fish and Wildlife Conservation Commission, and USFWS.

## V.     FDEP's Review of the 404 Permit Application for the Bellmar Project

27. Collier Enterprises has worked with FDEP and other agencies involved in the review of its 404 permit application for Bellmar since 2020.

28. Collier Enterprises, through PAI, has prepared and submitted substantial documentation including its section 404 application, application supplements, wildlife surveys, studies, responses to requests for information, homeowners' association documents, and other materials.

29. Collier Enterprises and its consultants prepared responses to FDEP's extensive requests for additional information (RAIs), which were submitted in July 2021 and April 2022.

30. FDEP issued a public notice of the Bellmar application on August 16, 2022. Collier Enterprises has considered the public comments received in response to that notice, including those submitted by Plaintiffs.

31. At the request of USFWS and FDEP, Collier Enterprises commissioned traffic reports for each of Bellmar and RLW, and for those two projects combined. Collier Enterprises submitted the Bellmar traffic report to FDEP on December 9, 2022; the RLW traffic report on January 11, 2023; and the combined report on February 13, 2023.

32. Collier Enterprises submitted responses to FDEP's post-public notice RAI on October 13, 2023.

33. FDEP issued a second public notice for the Bellmar application on November 6, 2023, in connection with its decision to hold a public meeting, which it held on December 7, 2023. At the December 7, 2023 public meeting, FDEP extended the public comment period on the application—which was set to end on that date—through December 12, 2023. Collier Enterprises is preparing responses to comments prepared at the conclusion of the first public comment period in 2022 and additional comments received through the end of this additional public comment period. The revised responses will be submitted to FDEP promptly.

34. The Bellmar 404 permit application remains pending. Collier Enterprises understands it will not be completed before some time in February 2024 at the earliest.

35. As with the section 404 application for Bellmar, Collier Enterprises has worked with USFWS, the Corps, and then FDEP and supported those agencies' review of the RLW section 404 permit application since the application was submitted. This support has included preparation and submission of extensive documentation supporting its section 404 application, responding to RAIs from FDEP, and responding to public comments received by the Corps before FDEP assumed CWA section 404 permitting for the State of Florida.

VI.    **Costs Associated with Collier Enterprises's Permit Application for the Bellmar Project**

36. Collier Enterprises has explained that, to date, it has spent a total of over $1.3 million dollars in consultant and legal fees to support its CWA section 404 application for Bellmar alone; Collier Enterprises has spent another $1.3 million dollars to support its CWA section 404 application for RLW; and the expenditures for consultant and legal fees associated with the ECMSHCP exceed $2 million dollars.

37. Collier Enterprises has no alternative means of receiving a CWA section 404 permit for the Bellmar or RLW projects other than through the FDEP review process.

38. Collier Enterprises has a strong interest in a proper and efficient continued processing of its CWA section 404 permit application.

39. None of the parties in the case adequately represent Collier Enterprises's unique interests in the permit application.

I state, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on December 18, 2023.

By: _____
Kenneth C. Passarella
President and Principal Ecologist
Passarella & Associates, Inc.