**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | |
| Plaintiffs, | |
| v. | Case No. 1:21-cv-00119 (RDM) |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants, | |
| and | |
| TARPON BLUE SILVER KING I, LLC d/b/a COLLIER ENTERPRISES, | |
| Defendant-Intervenor. | |

**COLLIER ENTERPRISES'S OPPOSITION TO PLAINTIFFS' MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## INTRODUCTION

Collier Enterprises ("Collier" or the "Company")[1] is a land company.  It owns significant acreage in Southwest Florida and routinely undertakes projects to improve that land for agricultural, residential, commercial or conservation uses.  Like any similar company in any State, Collier relies on permits issued under section 404 of the Clean Water Act (CWA) for projects that require work in waters subject to the CWA.  In most States, the section 404 permitting authority is the U.S. Army Corps of Engineers (Corps).  But in Florida since 2020, the section 404 permitting authority for most inland wetlands and streams (including all wetlands and streams on Collier's property) is the Florida Department of Environmental Protection (FDEP).  FDEP, and only FDEP, can issue Collier the permits it needs for its Florida projects.

Collier appreciates the efficiency afforded by FDEP's assumption of the 404 permitting program.  But what is especially critical to Collier (like any company in any industry that uses section 404 permits) is to know who the permitting agency is, and for the process to be predictable and specified in advance.  Because section 404 permits for large projects are the result of years of work and study by companies and the relevant permitting authority, changing the rules midstream can be enormously costly, especially when change comes at the end of the process.

The two moving Plaintiffs here seek to change the rules at the eleventh hour.  In a years-pending challenge to a years-in-place permitting program, Plaintiffs now ask that the years-long and still-ongoing permitting process for one of Collier's projects be indefinitely halted in favor of some new unspecified process.  Granting that relief is jurisdictionally improper.  And granting

---

[1] Tarpon Blue Silver King I, LLC is the official name of the business entity that does business as Collier Enterprises.

it now would impose substantial additional cost on Collier that could have been avoided had Plaintiffs moved successfully at the outset of this case.  The motion should be denied.

## BACKGROUND

I.    **The Bellmar Project has been designed through extensive collaboration with leading conservation agencies and organizations to benefit wildlife and habitat.**

For over two decades, Collier has worked with wildlife agencies and leading conservation organizations to plan for the development of its privately owned land in Collier County.  In 2008, the Company and a group of Collier County landowners joined four leading conservation organizations—Plaintiff Defenders of Wildlife, Plaintiff Florida Wildlife Federation, Audubon of Florida, and Audubon Western Everglades[2]—in a collaborative effort to plan development in a way that achieves greater protection of the Florida panther and its habitat than otherwise would be achieved under existing zoning and preservation programs.[3]  The result was the group's creation of the Florida Panther Protection Program (FPPP), which is designed to promote the conservation of the Florida panther through strategic and coordinated preservation of privately-owned land in eastern Collier County as habitat for panthers (including panther dispersal corridors), panther prey base, and other wildlife, and by concentrating development in areas with less valuable habitat.  *See* MOU at 6; Passarella Decl.¶ 15.  The coalition agreed to create a conservation agreement or equivalent instrument to achieve their goals.  MOU at 5, 9.

Consistent with the MOU, the Company worked with its landowner and conservation-group partners through the FPPP to develop the Eastern Collier Multi-Species Habitat

---

[2] Audubon Western Everglades was previously known as Collier County Audubon Society, Inc.

[3] *See* https://www.floridapantherprotection.com (linking June 2, 2008 Memorandum of Understanding (MOU), last visited Jan. 5, 2024); *see also* Declaration of Kenneth C. Passarella in Support of Unopposed Motion to Intervene, ECF No. 139-1 ("Passarella Decl.") ¶ 14.  Collier incorporates herein the factual background and supporting exhibits presented in its Unopposed Motion to Intervene, ECF Nos. 139, 139-1, and 139-2.

Conservation Plan (the "Conservation Plan"). Passarella Decl. ¶ 15. The Conservation Plan, originally intended to support incidental take permit (ITP) applications, is designed to permanently preserve over 100,000 acres of privately-owned land, including wildlife dispersal corridors that provide valuable linkages between existing public conservation lands. *Id.* ¶¶ 15, 16. It also aims to limit future concentrated development in the Conservation Plan area to a total of less than 40,000 acres, clustered within areas closer to existing development that have lower value habitat, such as cleared fields in active large-scale agricultural use. *Id.* ¶ 15. Although the Company and its landowner partners withdrew their ITP applications in 2022, they remain committed to continue following the tenets of the Conservation Plan. *Id.* ¶¶ 16, 17.

Bellmar, a planned residential and commercial project in Collier County, is located within the area identified for development by the Conservation Plan. So situated, it is designed to adhere to the tenets of the Conservation Plan, including clustering residential and commercial development within areas of less valuable habitat and permanently preserving areas with higher value habitat. *Id.* ¶ 21. Indeed, to offset the impacts of constructing the Bellmar Project, over 2,570 acres of higher value habitat, wetlands, and open waters will be placed under permanent preservation and managed to maintain, and in many cases improve, their ecological values. *Id.* ¶ 11. These areas include a regional flow-way, a wildlife corridor comprised of high value habitat within Camp Keais Strand, and high value wetlands. *Id.* The Project also includes substantial contributions to the Marinelli Fund to pay for additional conservation projects, consistent with the tenets of the Conservation Plan, as well as construction of wildlife crossings.[4]

---

[4] Collier will construct or fund the construction of five wildlife crossings within the geographic region where the Bellmar Project and the nearby Rural Lands West Project are located, to allow the safe movement and dispersal of panthers and other wildlife; and will contribute to the Paul J. Marinelli Fund, which is expected to generate millions of dollars through per-acre and per-unit fees tied to the Bellmar Project and other development projects, to be used for construction of

II.    **For over three years FDEP has processed Collier's CWA section 404 application.**

Because building the Bellmar Project would require the discharge of fill material into "waters of the United States," Collier had to obtain a section 404 permit.  It applied to the Corps for that permit in December 2020, but a few weeks later federal agencies approved Florida's assumption of the section 404 program,[5] so the Corps transferred the permit application to FDEP, the sole agency currently authorized to issue CWA section 404 permits for the Project.

FDEP's process has been thorough.  Since 2020, Collier Enterprises has worked closely and diligently with FDEP and other agencies involved in the review of its section 404 permit application.  Passarella Decl. ¶¶ 25, 27.  Indeed, over the past three years, Collier has prepared and submitted to the agency substantial documentation, including the application itself, application supplements, wildlife surveys, traffic reports, studies, responses to requests for information, homeowners' association documents, and other materials.  *Id.* ¶¶ 28, 31.  In addition, Collier has participated in two rounds of public comment on its section 404 permit application and prepared responses to those comments.  *Id.* ¶¶ 30, 33.

Well aware of the Bellmar Project, certain Plaintiffs have opposed Collier's efforts to obtain the section 404 permit at every turn.  The Center for Biological Diversity (CBD), the Conservancy of Southwest Florida, and Sierra Club have submitted several letters to FDEP as well as other agencies, including the U.S. Fish and Wildlife Service (USFWS) and the U.S. Environmental Protection Agency (EPA), regarding Collier's application, both in response to FDEP's invitation for public comment and on their own initiative, outside the public comment

---

additional crossings and fencing, habitat acquisition and restoration, and corridor enhancement. ECF No. 139-1 ¶¶ 11, 21.

[5] 85 Fed. Reg. 83,553, 83,553 (Dec. 22, 2020).

periods.[6]  Plaintiffs also have highlighted the Bellmar Project's pending application in this

litigation in multiple filings, including their Motion for Summary Judgment and three supporting

declarations.  *See* ECF No. 98 at 14 (noting that "[t]he State is currently considering Section 404

permits for several projects . . . includ[ing] . . . Bellmar Development (a mixed-use community

covering 1,500 acres) . . ."); ECF No. 98-1 Crooks Decl. ¶¶ 65–75; ECF No. 98-4 Hartl Decl. ¶¶

34–37; ECF No. 98–10 Umpierre Decl. ¶16.  And, of course, Collier's application and related

documentation are publicly available on FDEP's website.[7]

## III.   Plaintiffs unjustifiably wait three years to seek jurisdictionally improper "preliminary" injunctive relief.

Plaintiffs filed this suit in January 2021.  They challenge actions by federal agencies in

2020 to approve Florida's assumption of section-404 permitting.  Plaintiffs did not, because they

could not, challenge any action by FDEP, let alone any aspect of the permitting process for

Collier's Bellmar Project.[8]  Nor did Plaintiffs seek to enjoin the effectiveness of the federal

approval of Florida's new permitting program during the preliminary stages of the litigation,

when motions for "preliminary" injunctions are supposed to be filed.  Instead, they waited for

three years, and even then only targeted separate, specific applications for state permits for two

---

[6] *See* Joint Comment of CBD and Conservancy of Southwest Florida (June 3, 2021), *available at* http://tinyurl.com/43cuzju4 ; Joint Comment of CBD, Conservancy of Southwest Florida, and Sierra Club (August 25, 2022) *available at* http://tinyurl.com/ 4mr58pxr ; Joint Comment of CBD, Conservancy of Southwest Florida, and Sierra Club (Sept. 15, 2022), *available at* http://tinyurl.com/mwcdjrmk ; Joint Comment of CBD, Conservancy of Southwest Florida, and Sierra Club (Oct. 25, 2023), *available at* http://tinyurl.com/26hvk49b.

[7] *See* FDEP Information Portal, DEP Facility/Site Details and Associated Documents, Facility/Site Name = Collier Enterprises Management Inc. / Bellmar Community, *available at* http://tinyurl.com/3f3az9u5 (last accessed Jan. 4, 2024).

[8] Because FDEP is a State agency, its permit decisions are subject to judicial review exclusively in Florida's state courts.  *See* Fla. Stat. § 120.68 (2023) ("A party who is adversely affected by final agency action is entitled to judicial review. . . . Judicial review shall be sought in the appellate district where the agency maintains its headquarters or where a party resides or as otherwise provided by law.").

individual projects, one of them the Bellmar Project, which Plaintiffs have long opposed. Plaintiffs have no jurisdictional or statutory basis for their collateral attack on ongoing permit processes, and provide no justification for their years-long delay in filing this motion.

## ARGUMENT

**I.      Plaintiffs' motion must be denied because it is premised on nonjusticiable claims.**

Plaintiffs ask this Court to enjoin an ongoing process—FDEP's potential issuance of a section 404 permit for the Bellmar Project—the Court lacks jurisdiction to review.

The Plaintiffs in this lawsuit named three defendants—EPA, USFWS and the Corps.  The actions they challenge are EPA's 2020 approval of CWA 404 assumption, USFWS' 2020 biological opinion as to that approval, and the Corps' determination of waters over which it will retain 404 jurisdiction.  But their motion is directed to none of those actions.

Rather than seek to enjoin the implementation of the 2020 actions actually under review in this case (more than three years after those actions were taken), two of the seven Plaintiffs in this case only now seek to prevent the "issuance of two state 404 permits."  ECF 135 at 7.  But Florida's ongoing review of Collier's section 404 permit application is not an action subject to APA review or this Court's jurisdiction.  The APA allows this Court to review *final* actions by *federal* agencies.  Florida's review of Collier's state 404 application is neither.  For much the same reason, the challenge to a prospective permitting decision is not ripe under Article III.

**A.      The ongoing review of the Bellmar application is not a final federal agency action subject to this Court's review.**

The APA authorizes judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  The APA defines "agency" as an "authority of the Government of the United States," and "agency action" as "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or

failure to act." 5 U.S.C. §§ 551(1), (13), and 701(b).  The APA further specifies that a

"preliminary, procedural, or intermediate agency action or ruling not directly reviewable is

subject to review on the review of the final agency action."  5 U.S.C. § 704.  And any review of

agency action must be based on the agency's administrative record.  *Id.*

Plaintiffs' motion cites no authority for the proposition that Florida or any of its agencies

(including FDEP) is an "agency" under the APA, that Florida's review of CE's application is

"agency action," or that any ongoing consideration of that application by FDEP, the Florida Fish

and Wildlife Conservation Commission, USFWS, or EPA are "final agency action."  Nor have

they made any effort to submit FDEP's still-developing administrative record for any future

permit decision for Bellmar.

Plaintiffs' motion thus seeks to accomplish what the APA does not authorize: an order

halting an ongoing review of a state section 404 permit application absent review of anything

approximating a complete administrative record.  Plaintiffs may be frustrated that over three

years have passed since the actions challenged in their Complaint occurred, but that frustration

does not allow an end run around basic jurisdictional requirements.  *See Lujan v. National*

*Wildlife Federation*, 497 U.S. 871, 894 (1990) ("The case-by-case approach . . . is

understandably frustrating to an organization such as Respondent . . . But this is the traditional,

and remains the normal, mode of operation of the courts."); *see also, e.g., National Wildlife*

*Fed'n v. Caldera*, No. 00-cv-1031 (JR), 2002 WL 628649 (D.D.C. Mar. 26, 2002) (rejecting

attempt by three of the Plaintiffs in this case to challenge section 404 permitting in Florida over

claimed harms to the Florida panther through an omnibus challenge to section 404 permitting

rather than to specific, final individual permit decisions).

**B.    FDEP's ongoing review and prospective issuance of a section 404 permit for the Bellmar Project is not ripe for review.**

Even if the Plaintiffs' motion targeted *final* actions of *federal* agencies, it still would run afoul of Article III.  "[A]n Article III court cannot entertain the claims of a litigant unless they are "constitutionally and prudentially ripe." *Wyoming Outdoor Council v. US Forest Service*, 165 F. 3d 43, 48–50 (D.C. Cir. 1999).  "Allegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990).  Only after FDEP issues a section 404 permit for the Bellmar Project would that permit be ripe for review.  And even when that occurs, the appropriate forum is not this Court, but rather the tribunals specified by Florida law to review the actions of FDEP.

**II.    Plaintiffs' Motion is barred by the doctrine of laches.**

Plaintiffs may try to bypass these jurisdictional problems by recharacterizing their motion as one targeting the process for Florida's 404 permitting in general and not the specific permit actions it specifically mentions in its motion.  But that would only spotlight another problem with Plaintiffs' motion—it comes way too late.

The equitable doctrine of laches can operate as a complete bar to preliminary injunctive relief.  *See, e.g.*, *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 239 F. Supp. 3d 77, 84 (D.D.C. 2017) ("[A] court assessing whether to award the extraordinary remedy of preliminary-injunctive relief may determine whether laches renders that relief inappropriate." (internal quotation marks and citations omitted)).  The doctrine "is founded on the notion that equity aids the vigilant and not those who slumber on their rights" and aims to prevent scenarios where unjustifiable delay in seeking relief causes "equitable boundaries [to] blur as defendants invest capital and labor into their claimed property; and plaintiffs [to] gain the unfair advantage of hindsight, while defendants suffer the disadvantage of an uncertain future outcome."

*N.A.A.C.P. v. N.A.A.C.P. Legal Def. & Educ. Fund, Inc.*, 753 F.2d 131, 137 (D.C. Cir. 1985).

Application of the doctrine requires a showing of (1) lack of diligence by the movant in pursuing

injunctive relief; and (2) prejudice to the party invoking the doctrine. *Standing Rock*, 239 F.

Supp. 3d at 84, 87.

  In *Standing Rock*, the Cheyenne River tribe sought to preliminarily enjoin an easement

issued by the Corps, thereby halting additional construction—and, consequently, the operation—

of an oil pipeline nearing completion. *Id.* at 80–82. The court denied the requested preliminary

injunction under the doctrine of laches, because Cheyenne River had known "[f]or more than

two years" about the pipeline's "proposed route, construction, and operation" and yet "remained

silent" about the concerns the tribe raised in its motion. *Id.* at 86. The tribe had thus

"inexcusably delayed [] voicing its [] objection[]" to the pipeline. *Id.* at 87. In addition,

Cheyenne River's delay in moving for preliminary injunctive relief prejudiced the Corps and

Dakota Access, the third-party owner of the pipeline. *Id.* The court explained that the tribe

should have raised its objections earlier, as the pipeline was near completion and rerouting it

"would be more costly and complicated than it would have been months or years ago . . . ." *Id.*

  Here, as in *Standing Rock*, Plaintiffs delayed filing their motion far too long. EPA acted

in 2020. *See* 85 Fed. Reg. 83,553, 83,553. If, as Plaintiffs allege, FDEP's permitting process has

been inadequate since the program's inception, Plaintiffs should have moved for a preliminary

injunction to suspend EPA's approval of the program when they initiated this lawsuit three years

ago. *See* ECF No. 1. Instead, Plaintiffs waited while Collier and hundreds of other applicants

pursued section 404 permits with FDEP at significant time and expense.

  Nor is it any response that the potential effects of the Bellmar Project are some kind of

new revelation for Plaintiffs. Collier applied for its section 404 permit in 2020, and that

application and all related documentation have since been publicly available on FDEP's website.[9]  And Plaintiffs have been regular commenters in that permitting process.  *See supra* note 6.  To the extent Plaintiffs attempt to newly argue that the permitting process for Bellmar has revealed new harms previously unappreciated, that only underscores that the harm they allege is not based on federal agency actions taken in 2020 but on separate, ongoing state permitting processes not properly before this Court.  Regardless, Plaintiffs' delay is inexcusable. *See Standing Rock*, 239 F. Supp. 3d at 87; *see also Brink's, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 466 F. Supp. 112, 116 (D.D.C. 1979) (laches applied where plaintiffs waited two years to file motion).

That inexcusable delay is hugely consequential for Collier.  Had Plaintiffs diligently moved for the proper relief at the outset of this case and succeeded, Collier could have pursued the permitting process with the Corps.  Instead, Collier has spent over a million dollars working with FDEP.  Passarella Decl. ¶ 36.  Were the Court to grant Plaintiffs' request now, Collier would be forced to duplicate much of the time, effort, and expense it expended with FDEP for the last three years in a new process with the Corps of indeterminate length.

## **CONCLUSION**

For the reasons set forth above, the Court should deny Plaintiffs' motion.

---

[9] *See* The Wayback Machine, https://web.archive.org/web/20190105192700/ https://floridadep.gov/sec/sec/content/permits-applications-under-review (screen capturing FDEP's search tool for applications under review as of Jan. 5, 2019).

Date: January 12, 2024                     Respectfully submitted,

                                           /s/ George P. Sibley, III
                                           George P. Sibley, III (DC Bar No. 1011939)
                                           **HUNTON ANDREWS KURTH LLP**
                                           Riverfront Plaza, East Tower
                                           951 East Byrd Street
                                           Richmond, VA 23219
                                           (804) 788-8262
                                           gsibley@HuntonAK.com

                                           *Counsel for Defendant-Intervenor Tarpon*
                                           *Blue Silver King I, LLC d/b/a Collier*
                                           *Enterprises*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on January 12, 2024, I electronically filed the foregoing motion with the Clerk of the Court for the U.S. District Court for the District of Columbia via the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by that system.

<u>/s/ George P. Sibley, III</u>
George P. Sibley, III

*Counsel for Defendant-Intervenor Tarpon Blue Silver King I, LLC d/b/a Collier Enterprises*