**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, | |
| *Plaintiffs,* | |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*, | Civil Action No. 21-119 (RDM) |
| *Defendants,* | |
| and | Brief of *Amici Curiae* Supporting Defendants |
| STATE OF FLORIDA, *et al.*, | |
| *Defendant-Intervenors*. | |

**BRIEF OF *AMICI CURIAE*, CAMERATTA COMPANIES, LLC
AND CAM7-SUB, LLC IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

**Table of Contents**

INTERESTS OF THE *AMICI* ................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.    THERE ARE JURISDICTIONAL DEFICIENCIES THAT CANNOT BE OVERCOME ................................................................................................................ 2

        A.    The Kingston Project Is Not Properly Before this Court. ........................................... 2

        B.    Plaintiffs Are Not Challenging a Final Agency Action. ............................................ 2

        C.    Plaintiffs Have Not Engaged In The Administrative Process That They Seek to Challenge. ................................................................................................................ 3

        D.    Plaintiffs Are In The Wrong Court. ............................................................................ 4

    II.    PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF ................................ 4

        A.    Plaintiffs Are Unlikely to Succeed on the Merits With Respect to the Kingston Project. .................................................................................................................... 5

        B.    Plaintiffs Have Failed to Show Irreparable Harm From the Kingston Project. .......... 7

        C.    Balancing Of Equities Does Not Tip in Plaintiffs' Favor. ......................................... 8

        D.    Public Interest Will Not Be Furthered By Granting An Injunction. .......................... 9

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alion Sci. & Tech. Corp. v. U.S.*,
   74 Fed. Cl. 372 (2006) ................................................................................................................. 9

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
   988 F.2d 146 (D.C. Cir. 1993) ..................................................................................................... 2

*Amoco Prod. Co. v. Vill. of Gambell*,
   480 U.S. 531 (1987) ..................................................................................................................... 7

*Bennett v. Spear*,
   520 U.S. 154 (1997) ..................................................................................................................... 3

*D.C. v. Schramm*,
   631 F.2d 854 (D.C. Cir. 1980) ..................................................................................................... 4

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Com.*,
   928 F.3d 95 (D.C. Cir 2019) ........................................................................................................ 5

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*,
   415 U.S. 423 (1974) ..................................................................................................................... 5

*Louisiana v. Lee*,
   635 F. Supp. 1107 (E.D. La. 1986) .............................................................................................. 9

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ..................................................................................................................... 4

*Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*,
   280 F.3d 1364 (11th Cir. 2002) (vacated on other grounds and remanded for
   further proceedings, 541 U.S. 95 (2004) (citation omitted)) ....................................................... 4

*Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*,
   No. 15-cv-01582, 2016 WL 420470 (D.C. Cir. Jan. 22, 2016) ................................................... 7

*Pres. Endangered Areas of Cobb's History v. U.S. Army Corps of Eng'rs*,
   87 F.3d 1242 (11th Cir. 1996) ..................................................................................................... 4

*Sierra Club v. Georgia Power*,
   180 F.3d 1309-10 (11th Cir. 1999) .............................................................................................. 9

*Valley Cmty. Pres. Com'n v. Mineta*,
   373 F.3d 1078 (10th Cir. 2004) ................................................................................................... 8

*Vermont Yankee Nuclear Power v. Nat. Res. Def. Council*,
    435 U.S. 519 (1978) .................................................................................................... 3

*Wallace v. Lynn*,
    507 F.2d 1186 (D.C. Cir. 1974) .................................................................................. 5

*Western Watersheds Project v. U.S. Bureau of Land Mgmt.*,
    No. 3:11-cv-00053, 2011 WL 1630789 (D. Nev. Apr. 28, 2011) ............................. 7

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) .................................................................................................. 4, 7

**Statutes**

5 U.S.C. § 704 ...................................................................................................................... 3

5 U.S.C. § 706(2)(A) ........................................................................................................... 3

16 U.S.C. § 1532(19) .......................................................................................................... 6

Administrative Procedure Act ............................................................................................ 3

Endangered Species Act ................................................................................................. 5, 6

By and through their undersigned counsel, *Amici Curiae* Cameratta Companies, LLC and CAM7-SUB, LLC, the land contract purchaser and permit applicant (collectively, "*Amici*" or "Cameratta"), hereby submit this Brief of *Amici Curiae* in opposition to Plaintiffs Center for Biological Diversity and Sierra Club's Motion For A Temporary Restraining Order and Preliminary Injunction filed on December 2, 2023 (Dkt. No. 135) ("TRO/PI Motion"). This brief is supported by the attached declarations of Joseph Cameratta (Exhibit A) and Shane Johnson (Exhibit B).

Plaintiffs' TRO/PI motion should be denied given that it is rife with jurisdictional deficiencies. There is no final agency action to challenge, Plaintiffs have never commented on the Kingston project, and in any event such a challenge would be in state court.

Plaintiffs also cannot meet their heavy burden under the four-factor injunction test. The potential impacts of the Kingston Project on endangered species and habitat have been rigorously and extensively analyzed by the United States Fish and Wildlife Service ("USFWS") and Florida Department of Environmental Projection ("FDEP"). The Project will be subject to stringent permit conditions, resulting in a binding mitigation package that exceeds the relevant environmental criteria for species protection and a net gain of restored habitat, wildlife enhancement, and future funding. Moreover, were it not for *Amici,* the land would have been developed as a massive limerock mine due to prior litigation. These benefits will not accrue if the Project is enjoined.

The injunction will cause significant harm to *Amici,* who are contract land purchasers that have invested millions of dollars in pursuit of this Project. *Amici* justifiably seeks to protect this investment and to avoid damages that will accrue daily if Plaintiffs' request is granted.

## **INTERESTS OF THE *AMICI***

*Amici*'s interests are directly tied to issuance of a 404 permit for the Kingston Project. CAM7-SUB, LLC is an affiliate of Cameratta Companies, LLC, and the permit applicant for the Kingston

1

Project. *Amici* has spent several years and invested millions of dollars in the Kingston Project – a 6,676-acre, environmentally-conscious, mixed-use development in Estero, Lee County, Florida.

## ARGUMENT

### I. THERE ARE JURISDICTIONAL DEFICIENCIES THAT CANNOT BE OVERCOME

This is a collateral attack on a project that is not properly before this Court. The multiple jurisdictional issues with this TRO/PI Motion cannot be cured.

#### A. The Kingston Project Is Not Properly Before this Court.

Plaintiffs filed this case to challenge the agencies' administration of the Federal 404 permitting program and did not raise any claims relating to the Kingston Project in their Complaint (Dkt. No. 1) or Amended Complaint (Dkt. No. 77). By challenging a new agency action (technical review of Kingston), Plaintiffs seek to avoid basic judicial and administrative procedure. Such a significant expansion of this case should not be allowed via motions practice.

Plaintiffs are also conflating success on the merits of their 404 assumption claims with success on the merits with respect to the Kingston Project. Even if the Court finds in Plaintiffs' favor on their 404 assumption claims, such a decision would not automatically vacate approved projects. *See Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993). Such relief would cause significant disruption of private property rights and administrative chaos. Any relief in this matter would have to carefully consider these disruptive consequences to existing projects and applications. The merits of Kingston should not be predetermined by an emergency motion.

#### B. Plaintiffs Are Not Challenging a Final Agency Action.

With this TRO/PI Motion, Plaintiffs challenge the administrative review of a 404 permit application for the Kingston Project – an agency process that is <u>not</u> a final agency action, that was still open for public comment at the time that Plaintiffs filed their TRO/PI Motion, and for which the

2

administrative record is still being compiled. To be abundantly clear, <u>the FDEP has not issued a 404 permit for the Kingston Project</u>. Hence, there is no ripe agency action for Plaintiffs to challenge.

A challenge to a federal action is reviewed under the Administrative Procedure Act ("APA") to determine whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Bennett v. Spear*, 520 U.S. 154, 174 (1997). Yet, as stated plainly in the APA, the action that the parties wish to challenge must be a "<u>final agency action</u> for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (emphasis added). An agency action is final when it: 1) "mark[s] the consummation of the agency's decision-making process – it must not be of a merely tentative or interlocutory nature"; and 2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78. The approval of Kingston meets neither of these criteria. The conclusion of the technical assistance process is but one component of the larger 404 permit review process, and is <u>not</u> the final action for permit issuance. Until the 404 permit is issued, the rights of the permittee have not been determined and are subject to change through the ongoing FDEP administrative process (which would be captured in further development of the administrative record). Plaintiffs are asking the Court for an improper advisory opinion halting 404 approval in the middle of the process.

**C.    Plaintiffs Have Not Engaged in The Administrative Process That They Seek to Challenge.**

A party challenging an agency's decision must have already raised its concerns to the agency during the comment period in order to allow the agency to address those concerns. *Vermont Yankee Nuclear Power v. Nat. Res. Def. Council*, 435 U.S. 519, 553 (1978). Here, FDEP's public comment period for the Project was <u>open</u> at the time that Plaintiffs filed their TRO/PI Motion. Yet, Plaintiffs did not submit any comments to FDEP on the 404 permit. Rather, Plaintiffs chose to file a TRO/PI Motion based entirely on one declaration that would have been more appropriately submitted as a public comment for FDEP's review and consideration. Plaintiffs should not be permitted to ignore

3

administrative procedure by asking the Court to make a decision based on a self-serving declaration that was never before the agency.[1]

### D. Plaintiffs Are in The Wrong Court.

Plaintiffs are attempting to challenge a state-issued 404 permit, which can only be challenged in state court. *D.C. v. Schramm*, 631 F.2d 854 (D.C. Cir. 1980). Plaintiffs know this, yet lament that they face many "barriers" to filing a suit in state court "because of restrictive standing requirements" and the "costs of bringing such actions there as compared to federal court." Mot. at 8, 31. Thus, rather than file a suit in the proper court, Plaintiffs attempt to artificially expand these proceedings. The Court should not condone such obvious attempts to avoid jurisdictional deficiencies.[2]

## II. PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

An injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). Indeed, "there is no power, the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction." *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 280 F.3d 1364, 1371 (11th Cir. 2002) (vacated on other grounds and remanded for further proceedings, 541 U.S. 95 (2004) (citation omitted)). An injunction "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion" on all four factors of the injunctive relief test. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Opposing parties bear no burden of presenting a case against an injunction.

---

[1] In applying the arbitrary and capricious standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court. *Pres. Endangered Areas of Cobb's History v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996).
[2] Movants, Center for Biological Diversity and Sierra Club, are but two of seven Plaintiffs in this case. The five other Plaintiffs did not join the TRO/PI Motion at issue. Such other Florida-based Plaintiffs may not have similar issues with standing. The fact that only two parties filed this motion should be viewed with skepticism.

*See, e.g., Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 443 (1974).

### A. Plaintiffs Are Unlikely to Succeed on the Merits with Respect to the Kingston Project.

At the outset, it must be noted that "the 'merits' on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Com.,* 928 F.3d 95, 104 (D.C. Cir 2019) (internal quotations omitted); *see also Wallace v. Lynn,* 507 F.2d 1186 (D.C. Cir. 1974). Thus, the jurisdictional deficiencies outlined above should result in a finding that Plaintiffs cannot show a likelihood of success on the merits.

Even assuming *arguendo* that Plaintiffs can challenge the technical assistance process for the Kingston Project, Plaintiffs fail to demonstrate that they are likely to succeed on the merits because Plaintiffs cannot show that the technical review of the Kingston Project violates the Endangered Species Act ("ESA"). Specifically, Plaintiffs cannot demonstrate that Kingston will result in "jeopardy" or "take" of species that is not avoided and minimized to the maximum extent practicable.

Plaintiffs are attempting to mislead the Court into believing that the Project site is pristine habitat that would be irreparably destroyed by the Kingston Project. This is simply not the case. While it is true that the Project site is located within the Primary and Secondary Florida panther zones, approximately 70% of the Project site (or 4,657.19± acres) has been heavily degraded by intensive agricultural uses that have been ongoing for decades, including distressed citrus grove operations, sod farming, and row crops. If *Amici* had not stepped in, the site was destined for intensive mining. Yet, the *Amici* proposes to improve and restore these degraded lands, among other beneficial steps. In fact, *Amici* have agreed to conditions that exceed the ESA's standards, resulting in a net benefit to listed species with land restoration, purchases of panther credits of $2,667,000 and wetland credits of $868,300, panther crossings, and newly established future funding to the Wildlife Foundation of

5

Florida in perpetuity. *See* Cameratta Decl. ¶¶ 14-16. 51% of the Kingston Project is dedicated to conservation.

The Project site contains a low to moderate amount of existing native habitat proportional to the degraded agricultural lands. The existing native habitats have been isolated and fragmented by past and current agricultural activities, and many of these areas contain high levels of exotic vegetation. Cameratta Decl. ¶ 13; Johnson Decl. ¶ 11. The removal of exotic vegetation and installation of supplemental plantings in these areas, combined with the extensive restoration of adjacent agricultural lands to native habitat types, significantly increases the high value habitats within the 3,273.62± acre conservation area. Cameratta also incorporated an east-west habitat linkage into the overall Project site design that will allow large wildlife species, such as the Florida Panther, to move between Imperial Marsh to the west and CREW lands to the east. Thus, the Project will create large-scale habitat connectivity between conservation areas that will provide significantly higher value habitat than the existing agricultural lands, and will directly benefit various listed wildlife species, including the Florida panther. In addition, the proposed on-site conservation areas will facilitate an ecosystem-wide connection of conservation lands with a direct connection to Lee County's Imperial Marsh to the west, Corkscrew Swamp Sanctuary to the south, and CREW lands to the south and east. This will provide significant benefits to the Florida panther and other wide-ranging wildlife species. The Project will re-establish a habitat *connection* for the Florida panther, not fragment habitat as Plaintiffs suggest. *See* Johnson Decl. ¶¶ 12-20.

Also, Plaintiffs are incorrectly theorizing that the number of panther *takes* estimated in FWC's technical assistance letter represents the number of panther *deaths* that will occur from the Project. First, this is a deceiving misinterpretation of the term "take" under the ESA, which includes habitat modification that will "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). A "take" does not automatically mean

6

death. Second, the amount of takes is an *estimate* based on the methodology set forth in FWC's letter, that takes into account significant uncertainty by using a conservative approach in favor of the species. This amount of take is not certain to occur from the Project, nor is it likely given the significant steps that Cameratta is taking to minimize panther harm and the lack of correlation between increased vehicular traffic and panther deaths (*see* Johnson Decl. ¶¶ 21-24).

Also, the 404 permit has yet to be issued for the Kingston Project. Plaintiffs cannot plausibly demonstrate that the Project will result in irreparable harm to listed species if permit conditions to prevent and mitigate any such potential harm have yet to be finalized. Plaintiffs' logic is fundamentally flawed and fails to demonstrate a likelihood of success on the merits.

**B.     Plaintiffs Have Failed to Show Irreparable Harm from the Kingston Project.**

A preliminary injunction may not be entered "based only on a 'possibility' of irreparable harm." *Winter*, 555 U.S. at 21-22. Rather, Plaintiffs have the burden of demonstrating that they are likely to suffer irreparable harm before a decision on the merits can be heard. *Id.* at 22. Plaintiffs have not met this burden. Any harm from the challenged process is in the abstract.

Cases dealing with alleged violations of environmental laws are not subject to a lower standard of proof of irreparable injury. If no appreciable harm threatens the environment, then the violation of a statute designed to protect the environment is not necessarily an irreparable injury. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 541-42 (1987). When evaluating whether harm is irreparable, courts must view the anticipated harm in light of any proffered mitigation measures to ameliorate such harm. *See Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*, No. 15-cv-01582, 2016 WL 420470 at *10 (D.C. Cir. Jan. 22, 2016); *Western Watersheds Project v. U.S. Bureau of Land Mgmt.*, No. 3:11-cv-00053, 2011 WL 1630789 at *5 (D. Nev. Apr. 28, 2011). Here, Plaintiffs' likelihood of suffering irreparable harm from the development of private property is speculative at best, and completely ignores the fact that the USFWS and FWCC thoroughly reviewed the Kingston Project

7

and provided permit conditions that the applicant has already agreed to. For the reasons discussed above, Plaintiffs have not shown that the Kingston Project is likely to cause irreparable harm to endangered species, and their indefinite interests in species protection does not automatically provide an interest in the Kingston Project. Once the 404 permit is issued, the mitigation conditions will become binding terms, resulting in a net gain of functional species habitat and other benefits to the species (road crossings, funding etc.). The process would be no different under ESA Section 7.

    C.        **Balancing Of Equities Does Not Tip in Plaintiffs' Favor.**

The environmental and economic injury that a preliminary injunction would inflict on *Amici* and the public outweighs the fictional injury to the environment conjured by Plaintiffs. First, granting Plaintiffs' requests will delay the much-needed environmental restoration in this area, and perpetuate the existence of the degraded lands that make less suitable habitat for panthers and other listed species. The habitat connectivity that the Project seeks to achieve will also be delayed, amongst other environmental benefits. In sum, granting Plaintiffs' request to avoid harm to the environment will actually cause greater environmental harm to the public by perpetuating existing unsatisfactory environmental conditions.

Second, it is relevant that *Amici* will incur significant financial harm if either of Plaintiffs' requests is granted. *Amici* have already invested millions of dollars in the Project, and *Amici* will incur thousands of dollars in damages per day if the Project is delayed. *Valley Cmty. Pres. Com'n v. Mineta*, 373 F.3d 1078, 1087 (10th Cir. 2004). This is in addition to the harm that *Amici* will incur from delays to obtaining requisite permits and approvals, commencing construction, and ultimately operating the developed project, all of which will also have monetary and other repercussions.

Plaintiffs also seek to avoid filing a bond in this matter despite the significant risk to the Kingston project investments. Mot. at 41. Indeed, they seek to inflict economic pain without consequences. Yet, Plaintiffs have not presented any compelling argument or reasons why a bond is

8

not merited given the possibility of extraordinary harm to *Amici's* interests. Plaintiffs should not on one hand be able to argue that financial harm is not irreparable, and on the other hand assert that they should be excused from posting a bond to guarantee against such injury.

Thus, equity weighs strongly in favor of denying Plaintiffs' TRO/PI Motion, given the significant harm that would be caused by granting Plaintiffs' request, and the relative lack of harm to Plaintiffs if their requests are denied.

### D.     Public Interest Will Not Be Furthered by Granting an Injunction.

Plaintiffs would have the Court believe that their interests are automatically aligned with the public interest. This is simply untrue. The Kingston Project will provide habitat restoration and infrastructure improvements that will benefit the site and other developments in the area, and a source of tax revenue, all of which will unquestionably serve the public interest. *See* Cameratta Decl. ¶ 6. Plaintiffs' short-sighted view of the public interest would only preserve the status quo – and leave the possibility of this land being mined or developed piecemeal, which would likely lead to greater, unmitigated impacts to the listed species that Plaintiffs seek to protect. In fact, maintaining the status quo would delay significant public benefits. Thus, there is a strong public interest in the economic development of the area from the Project that would be damaged by granting Plaintiff's stay request. *See, e.g., Sierra Club v. Georgia Power*, 180 F.3d 1309-10 (11th Cir. 1999); *Louisiana v. Lee*, 635 F. Supp. 1107, 1126 (E.D. La. 1986). An injunction that would deprive the public of these Project benefits (along with increased tax revenues) cannot be condoned.

Furthermore, Plaintiffs seek to halt a project before it is even approved and to punish a permit applicant who has exceeded the relevant requirements. Public interest requires that the federal government consistently apply its laws in order to instill confidence in the public that any member of the public who properly engages with the government through prescribed procedures will receive a fair result. *Cf. Alion Sci. & Tech. Corp. v. U.S.,* 74 Fed. Cl. 372, 376 (2006). A permittee must be able

to reasonably rely on the extensive scrutiny of a project by the expert agencies, and a permit should not be stayed without very serious consideration. Here, Plaintiffs have not even allowed the agencies to complete their expert reviews of the Project before asking the Court to shut it down.

Finally, under the relevant environmental laws, USFWS's role is to balance the need for the Project, as defined by the permit applicant, against the environmental harm. The Supreme Court has determined that the expert agency is in the best position to determine which impacts are relevant to performing the balance. *Kleppe*, 427 U.S. at 414. Plaintiffs are improperly asking the Court to usurp that role from USFWS and render a different decision on the public's interest in the Project. The Kingston development 404 permit application submission has been found sufficient by the expert agencies, and will result in significant environmental improvements. While the 404 permit itself has not yet been issued, the existing administrative record reflects that the relevant reviewing agencies believe, based on their expert opinion and after significant review, that this Project is in the public interest, and the administrative record being developed clearly supports this belief.

## CONCLUSION

Cameratta has extensive history, qualifications, and experience in constructing enhanced environmentally-designed residential developments that have been toured by Federal, state, and local environmental agencies and NGOs, who have acknowledged and commended Cameratta's work and results. Cameratta, as a private family business, has not only adhered to agency rules, standards, and regulations, but has exceeded such standards where possible to achieve an environmentally conscious project with net environmental benefits. The 404 permitting process followed for the Kingston Project included the same data, reports, studies, surveys, maps and drawings that would have been provided to the Army Corps of Engineers if the state 404 permitting program did not exist. Cameratta should not be punished or delayed in obtaining a deserved 404 permit from FDEP. For the aforementioned reasons, Plaintiffs' TRO/PI Motion should be denied.

Respectfully Submitted this __12th__ day of January, 2024.

HOLLAND & KNIGHT LLP


By: /s/ *Rafe Petersen*
Rafe Petersen (DC Bar #465542)
Alexandra E. Ward (DC Bar #1688003)
800 17th Street NW, #1100
Washington, D.C. 20006
(202) 419-2481

Chené M. Thompson (*pro hac* pending)
Fla. Bar No. 0541540
Pavese Law Firm
1833 Hendry Street
Fort Myers, FL 33901

*Attorneys for Cameratta Companies, LLC and CAM7-SUB, LLC*