# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY, ET
AL.

             Plaintiffs,

      v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY, ET AL.

             Defendants.

**CASE NO.** 1:21-cv-00119 (RDM)

**DECLARATION OF JUSTIN WOLFE**

1.      My name is Justin Wolfe. I declare under penalty of perjury under the laws of the United States of America and the State of Florida that the following statements are true and correct to the best of my knowledge and belief.

2.      I serve as General Counsel to the Florida Department of Environmental Protection ("FDEP"). FDEP is the state agency in Florida authorized by law to "control and prohibit pollution of air and water…." Fla. Stat. § 403.061.

3.      Pursuant to Section 20.255(c), Florida Statutes, as General Counsel, I am responsible for all legal matters of FDEP. I have held this position for approximately five years. Before serving as the General Counsel for FDEP, I served as the Deputy General Counsel for the Water, Air, and State Lands Section of FDEP's Office of General Counsel.

4.      I am authorized by the Office of the Governor of the State of Florida, the Office of Attorney General of the State of Florida, and the Secretary of the FDEP to provide this declaration to this Court.

1

5.      I am aware that a coalition of seven (7) environmental organizations ("Plaintiffs") filed a Complaint in the U.S. District Court for the District of Columbia seeking, among other things, to invalidate and enjoin EPA's approval of Florida's Section 404 Program.

6.      I am aware that, on December 4, 2023, two national environmental organizations – Center for Biological Diversity and Sierra Club (collectively, "Movants") – filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") in this case.

7.      The TRO/PI Motion filed by these two organizations is not joined by the other five environmental organizations who are among the Plaintiffs in this case, including four organizations that are citizens of the State of Florida: Conservancy of Southwest Florida; Florida Wildlife Federation; Miami Waterkeeper; and St. Johns Riverkeeper.

8.      I have signed and submitted three sworn declarations in this case (Dkt. 4-2, Dkt. 102-1, and Dkt. 107-1), all of which I hereby re-affirm and incorporate by reference, subject to any additional information or clarifications provided herein.

9.      I am providing this additional declaration to provide sworn facts to this Court in response to certain statements in Movants' Motion and their new declarations on particular points that I believe are relevant to evaluating whether Movants are entitled to the emergency relief they have requested.

***Status of FDEP Section 404 Program***

10.      My prior declarations have extensively recounted the process that Florida and the FDEP followed to obtain Section 404 program approval.

11.      By early 2021, the U.S. Army Corps of Engineers transferred to FDEP approximately 400 pending applications for Section 404 individual permits in assumable waters,

and FDEP began to implement the Section 404 Program in Florida, subject to EPA oversight. The program has been operating for approximately three years.

12.    As of the end of December 2023, FDEP has completely stood up a comprehensive regulatory program and trained over 300 certified wetlands evaluators and other staff.

13.    FDEP has now received approximately 9,300 permit applications for individual permits, coverage under general or regional permits, and NPR determinations. Of those, over 3,600 applications have been withdrawn, often based on requests by FDEP for more information or other concerns. FDEP has issued approximately 703 individual 404 permits (including modifications). FDEP has denied approximately 302 applications (including individual, regional/general, and NPR requests).

14.    Three years into program implementation, Florida has a track record of compliance and enforcement assurance. To date, Florida has conducted over 470 compliance inspections for 404 permitted facilities. The state has issued over 190 warning letters, referred 57 matters for potential further state enforcement, executed 22 consent orders to resolve violations, and issued 3 formal notices of violation.

15.    FDEP administers the Section 404 Program, which applies to the "waters of the United States" that are assumable by the State of Florida, in conjunction with the state's longstanding Environmental Resource Permit (ERP) Program, which applies more broadly to all "waters of the state" and includes many of the same requirements and procedures as the Section 404 Program.

*Species Reviews*

16.    FDEP provides early Endangered Species Act (ESA) coordination engagement for all State 404 Program general and individual permit applications.

17.     The Memorandum of Understanding between FDEP, Florida Fish and Wildlife Conservation Commission (FWC), and U.S. Fish and Wildlife Service (FWS) describes the roles, responsibilities, and commitments of each agency in implementing the State 404 Program. Coordination procedures are further outlined in rule 62-331, F.A.C., and in the FWS's Programmatic Biological Opinion. These procedures ensure that endangered and threatened federally listed species and their critical habitats are protected as an integral part of the State 404 Program.

18.     The Endangered and Threatened Species Technical Team, comprised of FDEP, FWS, and FWC experts, convenes regularly to discuss specific projects and improvements to coordination procedures. The team has worked together to provide training to FDEP, FWC, and FWS staff regarding review procedures. Additionally, FWC and FDEP compile and share weekly reports on both pending and closed applications to provide general information needed for each agency's review.

19.     FWS and FWC review a proposed project's effect on listed species before a permit is issued. The outcomes of the effect determinations are incorporated into the State 404 Program permit file and included in the public notice. The coordination efforts result in a combination of determinations identifying projects as either "no effect" or "may affect." Projects that are determined to be in the "may affect" category are further identified as either "likely" or "not likely to adversely affect," and a determination of jeopardy is made (jeopardy or no jeopardy). For example, a determination of "may affect, likely to adversely affect" for a listed species indicates anticipated incidental take and requires additional review by FWS. If adequate protection measures are available, FWS's final conclusion would be "no jeopardy" or "may affect, not likely to adversely affect." If FWS's final conclusion is that the activities allowed by a potential permit will

"jeopardize the continued existence of a species," and no protection measures are available to address the adverse impacts, the permit would not be issued pursuant to the ESA and Rules 62-33.053(3)(a) 4, F.A.C., 62-331.201(3)(k), F.A.C. and 62-331.248(3)(j), F.A.C.

20.    The process for issuing FDEP 404 permits ensures that FWS (and NMFS, where involved), FWC, and FDEP review the same species-related information using the same legal standards as in the Corps-led 404 program.

21.    FDEP works with the same FWS office and personnel on species reviews for Section 404 permit applications as the Corps would be working with for the same projects under a Corps-led 404 program. Unlike the Corps-led process, however, FDEP must accept *all terms and conditions* provided by FWS for species protection purposes (whereas the Corps *may* accept such terms and conditions under the Corps-led program).

22.    FDEP's Section 404 process routinely addresses species-related issues for projects. For example, during the July 2021 to June 2022 time period, 115 permit applications for Section 404 permits showed reasonable potential for affecting federally listed species. Those applications were reviewed by FWC and FWS, and appropriate conditions were included in the permits to ensure protection of species. Likewise, during the July 2022-June 2023 time period, the species review process involved approximately 500 species-specific "effect" determinations involving over 30 listed species. Again, those applications were reviewed by FWC (and FWS), and appropriate conditions were included in the permits to ensure protection of species.

***Bellmar and Kingston Permit Applications Remain under FDEP Review***

23.    To supports its Motion, Movants selected two permit applications (from among approximately thousands of pending applications). Because these two permits remain under FDEP review, it would be inappropriate for FDEP to express a position on the merits of these permit

applications or to pre-judge the outcome of the regulatory process. FDEP is committed to making a timely decision on all permit applications in accordance with applicable laws and based on the best available information.

24.    On December 5, 2023, Florida Intervenors submitted a notice to this Court enclosing two letters that FDEP sent to counsel for Plaintiffs prior to Movants filing their TRO/PI Motion. The first letter, which is dated November 17, 2023, provides an update on the status of FDEP's review of the Bellmar permit application. Dkt. 136-1. The second letter, which is dated December 1, 2023, provides an update on the status of FDEP's review of the Kingston permit application. Dkt. 136-2. I hereby affirm and incorporate by reference the content of both of these letters for purposes of this declaration. These letters are enclosed as **Attachment A** and **Attachment B**, respectively.

25.    With regard to the Bellmar Villages Project, as noted in FDEP's status update letter, FDEP scheduled a public meeting for December 7, 2023 in the community near the proposed project to hear comment on the permit application. FDEP held the public meeting as scheduled and received significant public comments, which have been posted to FDEP's Information Portal.[1] FDEP extended the timeframe to submit comments to December 12, 2023, and those additional comments have also been posted to the public portal. Plaintiffs in this case were among many commenters. Additionally, the Movants (Center for Biological Diversity and Sierra Club) submitted their own comments to FDEP opposing the Bellmar project. Notably, on December 12, 2023, Movants' declarations (as filed with their Motion in this Court) were submitted to FDEP for

---

[1] https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_396364/facility!search

purposes of the permit review process.[2] FDEP will consider the information in those declarations in determining whether to issue, modify, condition or deny a permit for the proposed project.

26.      With regard to the Kingston Project, which was the subject of FDEP's status update letter, FDEP received requests for a public meeting. FDEP has scheduled a public meeting on January 16, 2024 at a public library near the proposed Kingston project to hear comment on the permit application.[3] All comments received at that meeting or otherwise will be posted to FDEP's Information Portal.

27.      I understand that EPA has informed this Court that it would not complete its review of the Bellmar project before January 26, 2024, or its review of the Kingston project before February 9, 2024.

28.      Even if EPA elects to not "comment upon, object to, or make recommendations" on the Bellmar Project on January 26, 2024, FDEP will not be in a position to make a final determination on that application before February 5, 2024, at the earliest.

29.      Even if EPA elects to not "comment upon, object to, or make recommendations" on the Kingston Project on February 9, 2024, FDEP will not be in a position to make a final determination on that application before February 19, 2024, at the earliest.

30.      It is my understanding that the project applicant for the Bellmar Villages project intends to submit responses to comments to help inform FDEP's decision in this matter. FDEP

---

[2] https://prodenv.dep.state.fl.us/DepStaging/api/dms/45.105204.1;
https://prodenv.dep.state.fl.us/DepStaging/api/dms/45.105174.1.

[3] https://floridadep.gov/south/south/content/38896-public-meeting-kingston-state-404-permit-application

would review those responses before making determinations concerning next steps in the permit process.

31.    FDEP's potential next steps following the public meeting for the Bellmar project are outlined in the November 17, 2023 letter to Plaintiffs which has been filed with this Court.

32.    Both permit applications remain under review. FDEP has made no determinations whether to issue or deny the permit applications or to take other steps with regard to the processing of the permit applications at this time.

33.    The timeline of key events (to date) for the processing of the permit application for the Bellmar Villages Project is as follows:

     a.    December 28, 2020: FDEP received the permit application for the Bellmar Villages Project (as a transfer from the Corps of Engineers)

     b.    January 27, 2021: FDEP sent applicant a Request for Additional Information (RAI) (a separate RAI was submitted in March 2021 by the South Florida Water Management District)

     c.    January 29, 2021: FWC sent RAI

     d.    April 27, 2021: FDEP received applicant's RAI Response

     e.    July 23, 2021: Applicant submitted RAI Response with a Biological Assessment

     f.    August 20, 2021: FDEP submitted another RAI to applicant

     g.    April 14, 2022: FDEP received RAI responses from applicant including (among other things) revised Biological Assessment, species habitat maps, impacts analysis, etc.

     h.    May 25, 2022: FDEP received FWC response

     i.    August 16, 2022: FDEP issued public notice for the permit application

     j.    August 25, 2022: FDEP received comments from FWS

     k.    August 31, 2022: EPA requested 90-day period for review

     l.    September 7, 2022: FDEP received updated Biological Assessment

m.  September 2022: FDEP received multiple requests for a public meeting

n.  November 14, 2022: FDEP received FWS comments

o.  December 2022: FDEP received updated traffic analysis, habitat impacts analysis, and related information from applicant

p.  February 13, 2023: FDEP received additional documentation from the applicant including further information about conservation measures for listed species

q.  May 8, 2023: FDEP received comments from FWS

r.  September 18, 2023: FDEP received comments from FWC

s.  October 13, 2023: FDEP received additional information from applicant

t.  November 2, 2023: FDEP received permit review response from FWS

u.  November 6, 2023: FDEP provides another public notice for the project

v.  December 7, 2023: FDEP holds public meeting for Bellmar Project

34.  The timeline of key events (to date) for the processing of the permit application for the Kingston Project is as follows:

a.  June 28, 2022: FDEP received a Section 404 application for this project

b.  July 22, 2022: FWC requested additional information

c.  July 28, 2022: FDEP sent an RAI to the permit applicant

d.  December 9, 2022: FDEP received RAI Response from permit applicant

e.  March 13, 2023: FDEP sent another RAI to permit applicant

f.  May 24, 2023: FDEP received RAI Response to second RAI

g.  October 26, 2023: FDEP received FWS comments

h.  November 1, 2023: FDEP received FWC comments

i.  November 20, 2023: FDEP issued public notice

j.  December 4, 2023: EPA provided notice of 90-day review

      k.      December 15, 2023: FDEP scheduled public meeting for this permit application to occur on January 16, 2024

35.      Importantly, if FDEP ultimately decides to move forward with issuance of a permit for the Bellmar and/or Kingston projects, any such determination would occur with FDEP issuing a "Proposed Permit" that would not become "effective" unless and until (A) the permit is received and signed by both the FDEP and the permit applicant (a permit applicant has 60 days to review and sign a proposed permit); and (B) a petition for administrative proceeding under Sections 120.569 and 120.57, Fla. Stat., is not filed within 21 days of publication of the notice of FDEP's action. Permit recipients "cannot justifiably rely on the finality" of a permit decision unless notice of the decision and the right of substantially affected persons to challenge the decision has been "duly published or otherwise provided to all persons substantially affected by the decision." Fla. Admin. Code Ann. R. 62-110.106(1); *see also* Florida 404 Handbook at 8.3.4. Under Florida law, the administrative hearing process is designed to formulate final agency action, and as a result, FDEP may modify or take a different position than the proposed action.

36.      When a petition for administrative hearing is filed, FDEP has a standard practice of sending a form letter to the permit applicant advising that FDEP has "received a petition for administrative hearing under Sections 120.569 and 120.57, Florida Statutes, challenging the Department's permitting decision." The letter explains that "action on this matter is proposed agency action only, and no permit has been issued" and, accordingly, "no action may be taken based on the above permit application, until the Department enters a Final Order either issuing or denying the above permit..." FDEP also reminds the applicant that they "must demonstrate prima facie entitlement to the permit issuance in any administrative hearing held under the filing of the petition."

37.     In my prior declarations, I have explained why Plaintiffs are incorrect to claim that the Florida administrative law and judicial review processes place them at a disadvantage relative to the federal system. *E.g.*, Dkt. 107-1 at ¶¶ 21-26. This includes responding to their erroneous claims regarding Florida's de novo administrative hearing process and opportunities for judicial review. *Id.*

38.     While Movants argue yet again that Florida's approach to standing harms them, they only cite avenues for standing that are available to "citizens of the state." Yet Movants fail to discuss the first and most traditional path for standing, under the *Agrico* test, which remains available *irrespective of state citizenship*.

**Species Review**

39.     FDEP continues to administer the Section 404 program in assumable waters in accordance with all applicable requirements for protection of listed species and critical habitats. This includes compliance with the Programmatic Biological Opinion and Incidental Take Statement applicable to federal approval of the Florida Section 404 Program, as well as the Memorandum of Understanding between FDEP, FWS, and FWC and other applicable species-related laws and regulations under both federal and state law.

40.     To be clear, FDEP does not, and will not, issue Section 404 permits for these two projects that are less protective of species than permits resulting from the Corps-led 404 process. The process for issuing FDEP 404 permits ensures that the FWS, FWC, and FDEP review the *same species-related information* using the *same legal standards* as in the Corps-led 404 program.

41.     FDEP is working with the same FWS offices on species reviews for Section 404 permit applications as the Corps would be working with for the same projects under a Corps-led 404 program. It is not reasonable to believe that the same personnel using the same standards and

same information would reach materially different species protection outcomes simply because one process is federal-led and the other is state-led.

42.    The same incidental take measures that FWS personnel would recommend to the Corps for Corps-led 404 permits are recommended to FDEP for Florida-led permits; however, under the Florida-led program, FDEP *must* accept all terms and conditions provided by FWS for species protection purposes (whereas the Corps *may* accept such terms and conditions under the Corps-led program).

43.    The Florida-led process ensures *even more protection for species* and *even more public involvement* than the Corps-led process for at least three reasons: (A) FDEP *must* incorporate all FWS measures, terms, and conditions into the Section 404 permit (whereas the Corps *may* do so for their permits); (B) FDEP *must* deny a permit if FWS, NMFS, or FWC finds no protection measures are available to reduce the risk of jeopardy to an acceptable level (whereas the Corps *may* decide to issue a permit in such circumstances); and (C) the public has full access to review and comment on *all species-related information* before FDEP makes a final determination on the permit, which allows for FDEP, EPA, and the permit applicant to consider and respond to those concerns including with project and/or permit changes as warranted (whereas there is *no right of public review and comment* on the Biological Opinion/ITS under the Corps-led process).

44.    In my experience, the volume of species-related information available to the public for review and comment as part of the Florida 404 permitting process is substantially greater than under the Corps-led program. This is illustrated by the vast information available in real-time via the FDEP Information Portal for the Bellmar Project. The public file for this project includes many thousands of pages of documentation and analysis. Among those are the USFWS Technical

Assistance Process response documentation, which contains an opinion of the FWS concerning the biological status of species impacted by the project along with an analysis of the effects of the project on those species, with a set of "Special Conditions" and "Additional Commitments." Other relevant documents in the FDEP Information Portal file also address species impacts issues, such as (among other materials):

- Comments, recommendations, and permit conditions provided by the Florida Fish & Wildlife Conservation Commission;

- Proposed Wildlife Crossing Plans;

- Listed Species Management and Human-Wildlife Coexistence Plan;

- Applicant-prepared Biological Assessment with Revised BA Part 1 and Revised BA Part 2, along with a Listed Species Survey Report (July 2021); and

- Request for Additional Information Response – Biological Assessment.

Altogether, the FDEP permit file currently contains extensive species-related information and analysis, including information related to the Florida panther and Audubon crested caracara.

***Impacts of TRO/PI on Florida***

45.    Movants have asked this Court to enter Proposed Orders (Dkt. 135-11 and Dkt. 135-12) that would enjoin FDEP from "further action in furtherance of issuing state 404 permits for the Bellmar and Kingston projects" and "issuing state 404 permits for the Bellmar and Kingston projects."  Movants also seek an order enjoining the EPA and FWS from "further action in furtherance of issuing state 404 permits for the Bellmar and Kingston projects" and enjoining EPA "from waiving its authority over, or otherwise allowing the issuance of, state 404 permits for these projects."  Dkt. 135-11 and Dkt. 135-12.

46.    Any such orders would adversely and severely impact the State of Florida and the FDEP in a variety of ways. The status quo is Florida's implementation of the Section 404 program; far from preserving the status quo through a preliminary injunction at the outset of litigation, Movants seek a dramatic change in the status quo by asking this Court to mandate certain specific actions by the State of Florida and the federal agencies.

47.    First, an order of that nature would infringe upon Florida's authority to implement the Section 404 program consistent with the cooperative federalism framework of the Clean Water Act. Congress invited all states to undertake implementation of the Section 404 program, and Florida has accepted that invitation in compliance with applicable law. FDEP officials are under a legal duty to process permits in accordance with law, and an injunction from a federal court prohibiting FDEP from processing 404 permits would interfere with performing those legal duties.

48.    Second, an order of that nature would severely undermine the ongoing implementation of the Florida Section 404 program. FDEP has hired and trained hundreds of employees to serve as Section 404 permitting staff, who have collectively spent countless hours over the course of three years working on the review of these two permit applications. FDEP staff have held public meetings and reviewed extensive comments from a wide range of stakeholders, including other agencies (federal, state and local) and the public. FDEP has conducted public meetings and developed extensive analysis of the various issues relevant to a determination on these permit applications.

49.    Third, an order of that nature would deprive the State of Florida of the combined efficiencies obtained in processing Florida ERP permits (for impacts to wetlands that constitute "waters of the state") in conjunction with Florida 404 permits (for impacts to wetlands that constitute "waters of the United States").

50.    Fourth, though Movants target two projects for their injunction, an order granting the injunction would likely have a severe chilling effect on the entire FDEP Section 404 permit program. Regulatory chaos could ensue with permit applicants lacking certainty as to whether FDEP could continue processing their applications or whether their applications, if granted, could be lawfully relied upon.

51.    Fifth, the injunctive relief sought by Movants would also lead to worse environmental outcomes, including delaying or depriving the state and the public of the environmental protection benefits obtained through the State 404 program that exceed those of the federal program; diverting and wasting of limited federal and state resources for environmental protection that are currently being utilized in a more efficient manner through the Florida 404 program; and undermining regulatory clarity and consistency, potentially leading to fewer activities that seek permits for projects.

52.    Sixth, because Florida law authorized FDEP to develop a Section 404 permit program and because the State of Florida has incurred many millions of dollars to develop and administer FDEP's Section 404 program, an injunction against the implementation of the program by Florida would deprive the State of Florida, the FDEP, and the citizens of Florida of the just benefits of those expenditures and investments, including the environmental protection benefits. For example, as part of the Florida 404 program, the permit applicants have made *more* legally enforceable commitments for the protection and enhancement of listed species than required under federal law.

53.    On the other hand, Movants will not suffer irreparable harm from the absence of an injunction here because, as already explained, FDEP will not issue Section 404 permits for these two projects that are less protective of species than permits resulting from the Corps-led 404

process. The FDEP process is specifically designed to ensure that the agencies review the same species-related information using the same legal standards as in the Corps-led 404 program, and FDEP is committed to adopting any species-related measures provided by FWS.

Executed on the 12th day of January, 2024.

Justin Wolfe
General Counsel
Florida Department of Environmental Protection
3900 Commonwealth Blvd M.S. 35
Tallahassee, FL 32399

Attachment A



# FLORIDA DEPARTMENT OF
# Environmental Protection

Ron DeSantis
Governor

Jeanette Nuñez
Lt. Governor

Shawn Hamilton
Secretary

South District
PO Box 2549
Fort Myers FL  33902-2549
SouthDistrict@FloridaDEP.gov

November 17, 2023

<u>Via E-Mail</u>

Tania Galloni
Managing Attorney
Earthjustice
4500 Biscayne Blvd., Suite 201
Miami, Florida 33137

Dear Ms. Galloni:

Thank you for your letter of November 9, 2023 requesting that the Florida Department of Environmental Protection (FDEP) postpone the public meeting for the Bellmar Villages Project (DEP Application No. 396364-001). Your letter sought a response by November 14; however, as your e-mail providing the letter was sent at business hours on Thursday, November 9 and, due to the Veterans Day holiday on Friday, November 10, FDEP did not receive and begin to review your request until Monday, November 13.

**Public Comment Process for the Bellmar Villages Project**

FDEP received the Section 404 permit application for the Bellmar Villages Project almost three years ago. Since receipt of the application, FDEP has submitted several requests for additional information (RAIs) to the permit applicant and engaged in extensive permit review procedures including, for example, the Technical Assistance Process set forth in FDEP's Memorandum of Understanding with the U.S. Fish and Wildlife Service (USFWS). FDEP's permit file for this project contains over 800 individual records and is fully accessible to the public on a real-time basis. For Section 404 permit records related to the Bellmar Villages Project, please refer to FDEP's Information Portal.[1]

FDEP issued its first public notice[2] for this permit application on August 16, 2022, and after an additional year of review and consultation with state and federal agencies and other stakeholders, FDEP issued its second public notice on November 6, 2023 (as shown on the Information Portal), which invites additional comments from the public.  Comments should be submitted in writing through the FDEP business portal (fldepportal.com) or by submittal to Toby Schwetje at FDEP's South District Office, PO Box 2549, Fort  Myers, Florida 33902-2549. FDEP has

---

[1] https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_396364/facility!search
[2] https://prodenv.dep.state.fl.us/DepStaging/api/dms/45.62700.1

scheduled the public meeting for December 7, 2023 from 4 p.m. to 7 p.m. EST at the Collier Public Library in Naples, Florida.[3] As shown in the Information Portal, a public meeting had been requested by many citizens.

FDEP is soliciting comments from the public; federal, state, and local agencies and officials; Indian Tribes; and other interested parties in order to consider and evaluate the impacts of this proposed activity. Comments are used to assess impacts to endangered species, historic properties, water quality, general environmental effects, and other public interest factors.

Please note that all written comments will be made part of the record. Any comments received will be considered by FDEP to determine whether to issue, modify, condition, or deny a permit.  The determination whether a permit will be issued is based on an evaluation of all relevant factors, including the public comments received and the effects of the proposed project on the public interest, including, but not limited to, fish, wildlife, historical resources, and pollution. The specific permit decision criteria can be found in Chapter 62-331, Florida Administrative Code (F.A.C.).  All comments received will be carefully reviewed and taken into consideration as FDEP takes final action on the permit application. Comments should be submitted before the conclusion of the public meeting.

**Additional Steps Following the Public Meeting**

Your letter requests information about "any other events that will or must take place before the Bellmar permit could issue…" The end of the public meeting is *not* the end of the Section 404 permitting process. For example, pursuant to rule 62-331.060(3)(c), F.A.C., the "public notice comment period shall automatically be extended to the close of any public meeting, if one is held. The presiding officer may also extend the comment period at the public meeting." Moreover, FDEP may request additional information as necessary during its review of any information that FDEP receives during the public comment period, at a public meeting, or during federal review. Rule 62-331.052(1)(c), F.A.C.

Likewise, the federal review process would need to be completed prior to FDEP final action on the permit, per rule 62-331.052(3), F.A.C., and the Florida 404 Handbook, Section 5.2.5. EPA may request to comment on the permit application. As explained in FDEP-EPA Memorandum of Agreement for the Section 404 Program, EPA reserves the right to object within 90 days based upon information received during the public comment period. If FDEP has been so notified, the permit shall not be issued until after the receipt of such comments or 90 days of EPA's receipt of the public notice, draft general permit or FDEP's response (40 C.F.R. § 233.31(a)), whichever comes first. If, during the federal review process, FDEP receives an EPA objection or requirement for a permit condition, FDEP will not issue the permit unless the steps required by EPA to eliminate the objection or condition the permit have been taken. Rule 62-331.052(3)(b)2., F.A.C. Additionally, within 90 days after FDEP receives an EPA objection or requirement for a permit condition, FDEP or any interested party may request that the EPA hold its own separate public meeting on the objection or requirement.

---

[3] https://floridadep.gov/file/35225/download?token=NLHEVb8x ;
https://www.flrules.org/gateway/notice_Files.asp?ID=27749292

Moreover, as part of the EPA-led federal review process, EPA provides a copy of each public notice and other information needed for review of the application to the U.S. Army Corps of Engineers, the USFWS, and NMFS within 10 days of receipt. If these agencies wish to comment, they so notify EPA within 15 days, and submit their comments to EPA within 50 days of such receipt. EPA will then determine whether to comment, object, or to require permit conditions, as noted above.

To be clear, FDEP has made no decision at this time whether to grant or deny the permit for the Bellmar Villages Project. FDEP will continue to review and consider all comments received during the ongoing public notice and comment process and subsequent review periods. When a determination is made whether to grant or deny a permit request, FDEP's determination is subject to challenge in an administrative hearing before the Florida Division of Administrative Hearings. As such, FDEP's issuance or denial of a permit is not final agency action if an administrative challenge is timely filed. *See* Fla. Stat. § 120.569, § 120.57. The "administrative hearing process is designed to formulate agency action" so FDEP's "final action may be different from the proposed agency action and may result in the issuance of a permit as requested by the applicant or as modified in the course of the [administrative] proceeding or by settlement." Rule 62-110.106(7)(e)(2), F.A.C.

**Species Review**

Your letter also raises concerns about the species review process for the Bellmar Villages Project. FDEP has been involved in closely reviewing potential impacts, including species impacts, for this permit application. For Section 404 permits, FDEP "shall incorporate as permit conditions all recommended impact avoidance and minimization measures (protection measures) provided by the Florida Fish & Wildlife Conservation Commission (FWC), USFWS, or NMFS under their respective authorities...." Florida 404 Handbook, Section 5.2.3. In all respects related to impacts to federally-protected species or habitat, the position of the USFWS always controls: "With regard to conclusions about the potential effects of a project on ESA-listed species, their critical habitats, or the effectiveness of proposed protection measures, the final USFWS position is determinative." BiOp at 41. The BiOp/ITS repeats this point to make it abundantly clear: "...final FWS conclusions regarding effects to species are determinative" and "USFWS conclusions regarding potential impacts and necessary measures to address impacts are determinative." BiOp at 40. The Memorandum of Understanding between FDEP, Florida Fish & Wildlife Conservation Commission, and USFWS also expressly states that "the final FWS position" is "determinative" for purposes of "potential effects on ESA-listed species or the effectiveness of proposed mitigation measures." As such, FDEP administers the 404 program fully committed to the requirement that any such determinations by USFWS are binding.

For awareness, the publicly accessible FDEP permit file for the Bellmar Villages Project contains the USFWS Technical Assistance Process Response report.[4] As shown in the response, USFWS conducted an in-depth review whether the Bellmar Villages Project had "adequate protection measures to avoid and minimize any incidental take that is reasonably certain to

---

[4] *See* FDEP Information Portal, "20231031_404PROJECT REVIEW MEMO BELLMAR COMMUNITY ST404_396364 CORRECTED WITH ENCLOSURE_SIGNED," https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_396364/facility!search.

occur." As such, USFWS provided a list of "necessary avoidance and minimization measures (AMMs)" that FDEP must adopt in order to "ensure that the permitted activity is not likely to jeopardize any species, adversely modify or destroy critical habitat or to ensure that any incidental take is avoided or minimized."

In that response, USFWS also "provide[d] questions, comments, or any other appropriate information to assist FDEP and FWC in processing the permit application." In particular, the USFWS response provides "Additional and Necessary Avoidance and Minimization Measures" for species and critical habitat that are likely to be adversely affected by the project, including the Florida panther, the Florida bonneted bat, Audubon's crested caracara, and the tricolored bat. Among other measures, USFWS requires construction of wildlife crossings within the geographic region for the benefit of the Florida panther to provide and preserve a wildlife movement corridor. Pages 6 to 24 of the USFWS response provides analysis of the action area, status of species, effects of the action, cumulative effects, amount of take (including numeric estimates), and jeopardy assessment. USFWS determined that, "[u]pon FDEP's incorporation of the necessary avoidance and minimization measures as permit conditions, the USFWS concludes the issuance of the State 404 permit is not likely to jeopardize any federally listed species or adversely modify or destroy any critical habitat and complies with the USFWS programmatic biological opinion addressing Florida's assumption of the CWA 404 program. This is based on the information in the permit application, as well as the status of the affected species, and any cumulative effects within the permit applications' action area." The final 10 pages of the USFWS response contains a set of "Special Conditions" and "Additional Commitments."

Other relevant documents in the FDEP Information Portal file also address species impacts issues, such as (among other materials):
- Comments, recommendations, and permit conditions provided by the Florida Fish & Wildlife Conservation Commission[5];
- Proposed Wildlife Crossing Plans[6];
- Listed Species Management and Human-Wildlife Coexistence Plan[7];
- Applicant-prepared Biological Assessment[8] with Revised BA Part 1[9] and Revised BA Part 2,[10] along with a Listed Species Survey Report (July 2021); and
- Request for Additional Information Response – Biological Assessment.[11]

Altogether, the FDEP permit file currently contains extensive species-related information and analysis, including information related to the Florida panther. FDEP received a letter dated October 25, 2023 from several organizations regarding the status of an ongoing USFWS

[5] *See* FDEP Information Portal, "FWC'S COMMENTS FOR BELLMAR_43152_09182023," https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_396364/facility!search.
[6] *See* FDEP Information Portal, "PROPOSED WILDLIFE CROSSING PLANS," https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_396364/facility!search.
[7]*See* FDEP Information Portal, "LISTED SPECIES MANAGEMENT AND HUMAN-WILDLIFE COEXISTENCE PLAN," https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_396364/facility!search
[8] https://prodenv.dep.state.fl.us/DepStaging/api/dms/45.53826.1
[9] https://prodenv.dep.state.fl.us/DepStaging/api/dms/45.53823.1
[10] https://prodenv.dep.state.fl.us/DepStaging/api/dms/45.53824.1
[11] https://prodenv.dep.state.fl.us/DepStaging/api/dms/45.20239.1

cumulative impacts analysis. FDEP will consider any information provided by USFWS in the permit review process.

**Request for Postponement**

FDEP has considered your request for postponement of the public meeting. FDEP received the permit application for the Bellmar Villages Project almost three years ago and has undertaken a lengthy permit review process in close coordination with state and federal agencies and other stakeholders. FDEP received many requests for a public meeting to hear views and concerns from the public about the permit application. Consistent with Rule 62-331.060(4), F.A.C., FDEP may hold a public meeting for a proposed project "if it is determined that there is a significant degree of public interest in the application." FDEP has discretion to hold a public meeting when it is "useful to a decision on the permit application." To the extent new information becomes available, FDEP reserves the right to take that information into consideration as part of its determination. FDEP may also reevaluate the circumstances and conditions of a permit at any time if sufficient cause exists, including but not limited to significant new information. Rule 62-331.080(2)(e), F.A.C.  Accordingly, FDEP does not intend to postpone the December 7, 2023 public meeting at this time.

Thank you for your interest in this matter.

Sincerely,

Jennifer Carpenter
District Director
South District Office

cc:    Justin Wolfe, General Counsel (FDEP)

Attachment B



**FLORIDA DEPARTMENT OF**
**Environmental Protection**

South District
PO Box 2549
Fort Myers FL 33902-2549
SouthDistrict@FloridaDEP.gov

Ron DeSantis
Governor

Jeanette Nuñez
Lt. Governor

Shawn Hamilton
Secretary

December 1, 2023

<u>Via E-Mail</u>

Tania Galloni
Managing Attorney
Earthjustice
4500 Biscayne Blvd., Suite 201
Miami, Florida 33137

Dear Ms. Galloni:

Thank you for your email of November 21, 2023 requesting that the Florida Department of
Environmental Protection (FDEP) "postpone acting" on the permit application for the Kingston
Project (DEP Application No. 423130-001). You requested a response within two business days
(taking into account the intervening state holidays for Thanksgiving). We have endeavored to
prepare a response within a reasonable timeframe. The referenced project remains under review
and is part of an ongoing public notice and comment process. FDEP has made no decision at this
time whether to grant or deny a Section 404 permit for the Kingston Project.

**Public Comment Process for the Kingston Project**

FDEP received the Section 404 permit application for the Kingston Project in June 2022. Since
receipt of the application, FDEP has submitted requests for additional information (RAIs) to the
permit applicant and engaged in extensive permit review procedures including, for example, the
Technical Assistance Process set forth in FDEP's Memorandum of Understanding with the U.S.
Fish and Wildlife Service (USFWS). FDEP's permit file for this project contains individual
records and is fully accessible to the public on a real-time basis. For Section 404 permit records
related to the Kingston Project, please refer to FDEP's Information Portal.[1]

FDEP issued its first public notice for this permit application on November 20, 2022 (as shown
on the Information Portal), which invites comments from the public.  As stated in the Public
Notice announcing the comment period for this project, any person may request a public meeting
(which should be submitted to Jonathan Guinn at P.O. Box 2549, Fort Myers, FL. 33902, or by
electronic mail at SD[1]ERPcomments@dep.state.fl.us within the designated comment period).
During the ongoing public comment process, FDEP is soliciting comments from the public;
federal, state, and local agencies and officials; Indian Tribes; and other interested parties in order
to consider and evaluate the impacts of this proposed activity. Comments are used to assess

---

[1] https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_423130/facility!search

impacts to endangered species, historic properties, water quality, general environmental effects, and other public interest factors.

Please note that all written comments will be made part of the record. Any comments received will be considered by FDEP to determine whether to issue, modify, condition, or deny a permit. The determination whether a permit will be issued is based on an evaluation of all relevant factors, including the public comments received and the effects of the proposed project on the public interest, including, but not limited to, fish, wildlife, historical resources, and pollution. The specific permit decision criteria can be found in Chapter 62-331, Florida Administrative Code (F.A.C.). All comments received will be carefully reviewed and taken into consideration as FDEP takes final action on the permit application.

**Additional Steps Before Permit Action**

Similar to your other recent letter regarding the Bellmar Project, your e-mail requests information about "any other events (e.g., public hearing) that will occur before FDEP acts on the Kingston permit." FDEP will consider requests for a public meeting. If a public meeting is held, that decision will be announced via public notice. Importantly, the end of the public meeting is *not* the end of the Section 404 permitting process. For example, pursuant to rule 62-331.060(3)(c), F.A.C., the "public notice comment period shall automatically be extended to the close of any public meeting, if one is held. The presiding officer may also extend the comment period at the public meeting." Moreover, FDEP may request additional information as necessary during its review of any information that FDEP receives during the public comment period, at a public meeting, or during federal review. Rule 62-331.052(1)(c), F.A.C.

Likewise, the federal review process would need to be completed prior to FDEP final action on the permit, per rule 62-331.052(3), F.A.C., and the Florida 404 Handbook, Section 5.2.5. EPA may request to comment on the permit application. As explained in FDEP-EPA Memorandum of Agreement for the Section 404 Program, EPA reserves the right to object within 90 days based upon information received during the public comment period. If FDEP has been so notified, the permit shall not be issued until after the receipt of such comments or 90 days of EPA's receipt of the public notice, draft general permit or FDEP's response (40 C.F.R. § 233.31(a)), whichever comes first. If, during the federal review process, FDEP receives an EPA objection or requirement for a permit condition, FDEP will not issue the permit unless the steps required by EPA to eliminate the objection or condition the permit have been taken. Rule 62-331.052(3)(b)2., F.A.C. Additionally, within 90 days after FDEP receives an EPA objection or requirement for a permit condition, FDEP or any interested party may request that the EPA hold its own separate public meeting on the objection or requirement.

Moreover, as part of the EPA-led federal review process, EPA provides a copy of each public notice and other information needed for review of the application to the U.S. Army Corps of Engineers, the USFWS, and NMFS within 10 days of receipt. If these agencies wish to comment, they so notify EPA within 15 days, and submit their comments to EPA within 50 days of such receipt. EPA will then determine whether to comment, object, or to require permit conditions, as noted above.

**To be clear, FDEP has made no decision at this time whether to grant or deny the permit for the Kingston Project**. As with other projects, FDEP will continue to review and consider all comments received during the ongoing public notice and comment process and subsequent review periods. When a determination is made whether to grant or deny a permit request, FDEP's determination is subject to challenge in an administrative hearing before the Florida Division of Administrative Hearings. As such, FDEP's issuance or denial of a permit is not final agency action if an administrative challenge is timely filed. *See* Fla. Stat. § 120.569, § 120.57. The "administrative hearing process is designed to formulate agency action" so FDEP's "final action may be different from the proposed agency action and may result in the issuance of a permit as requested by the applicant or as modified in the course of the [administrative] proceeding or by settlement." Rule 62-110.106(7)(e)(2), F.A.C.

**Species Review**

Your letter also raises concerns about the species review process for the Kingston Project. That process is ongoing, as shown in the public records provided in the FDEP Information Portal. FDEP has been involved in closely reviewing potential impacts, including species impacts, for this permit application. For Section 404 permits, FDEP "shall incorporate as permit conditions all recommended impact avoidance and minimization measures (protection measures) provided by the Florida Fish & Wildlife Conservation Commission (FWC), USFWS, or NMFS under their respective authorities…." Florida 404 Handbook, Section 5.2.3. In all respects related to impacts to federally-protected species or habitat, the position of the USFWS always controls: "With regard to conclusions about the potential effects of a project on ESA-listed species, their critical habitats, or the effectiveness of proposed protection measures, the final USFWS position is determinative." BiOp at 41. The BiOp/ITS repeats this point to make it abundantly clear: "…final FWS conclusions regarding effects to species are determinative" and "USFWS conclusions regarding potential impacts and necessary measures to address impacts are determinative." BiOp at 40. The Memorandum of Understanding between FDEP, Florida Fish & Wildlife Conservation Commission, and USFWS also expressly states that "the final FWS position" is "determinative" for purposes of "potential effects on ESA-listed species or the effectiveness of proposed mitigation measures." As such, FDEP administers the 404 program fully committed to the requirement that any such determinations by USFWS are binding.

For awareness, the publicly accessible FDEP permit file for the Kingston Project contains the **USFWS Technical Assistance Process Response report**.[2] As shown in the response, USFWS conducted an in-depth review whether the Kingston Project had "adequate protection measures to avoid and minimize any incidental take that is reasonably certain to occur." As such, USFWS provided a list of "necessary avoidance and minimization measures (AMMs)" that FDEP must adopt in order to "ensure that the permitted activity is not likely to jeopardize any species, adversely modify or destroy critical habitat or to ensure that any incidental take is avoided or minimized." The USFWS response provides "Additional and Necessary Avoidance and Minimization Measures" for species and critical habitat that are likely to be adversely affected by the project, including the Florida panther, the Florida bonneted bat, Audubon's crested caracara,

---

[2] *See* FDEP Information Portal, "001 USFWS STATE 404 PERMIT REVIEW," https://prodenv.dep.state.fl.us/DepNexus/public/electronic-documents/ST404_423130/facility!search.

the tricolored bat, and the Eastern indigo snake. The USFWS response also provides analysis of the action area, status of species, effects of the action, cumulative effects, amount of take (including numeric estimates), and jeopardy assessment. As shown in the FDEP Information Portal, FWC has coordinated with USFWS in the review of measures necessary to ensure the conservation of Florida's federally and state-listed wildlife and their habitats,[3] and has identified conditions and other provisions related to conservation of the Florida panther, Florida bonneted bat, Everglade snail kite, Red-cockaded woodpecker, Audubon's crested caracara, Florida scrub-jay, and other species.

Other relevant documents currently available via the FDEP Information Portal file also address species impacts issues, such as (among other materials):

- Comments, recommendations, and permit conditions provided by the Florida Fish & Wildlife Conservation Commission in coordination with the U.S. Fish and Wildlife Service, including "Species Conditions for the Kingston State 404 Permit," other "Special Conditions" resulting from "completion of technical assistance between the U.S. Fish and Wildlife Service and the Florida Department of Environmental Protection," and other similar items;
- Applicant-prepared Biological Assessment (containing 550 pages of documentation), including Species Survey, and the Revised Biological Assessment submitted in December 2022;
- Applicant-prepared Environmental Supplement (containing over 600 pages of documentation); and
- Various other requests for additional information (with responses) addressing species-specific issues.

Altogether, the FDEP permit file currently contains extensive species-related information and analysis, including information related to the Florida panther. FDEP received a letter dated October 25, 2023 from several organizations regarding the status of an ongoing USFWS cumulative impacts analysis. FDEP will consider any information provided by USFWS in the permit review process.

**Request for Postponement**

FDEP has considered your request that FDEP "postpone acting" on this permit application. As you are aware, FDEP is in the midst of an ongoing public notice and comment process for this permit application. To be clear, the public comment process is still ongoing. All comments received will be evaluated and considered by FDEP and will help to inform further agency consideration and actions related to the application. FDEP has undertaken a lengthy permit review process in close coordination with state and federal agencies and other stakeholders. Consistent with Rule 62-331.060(4), F.A.C., FDEP may hold a public meeting for a proposed project "if it is determined that there is a significant degree of public interest in the application." FDEP has discretion to hold a public meeting when it is "useful to a decision on the permit application." If FDEP decides to hold a public meeting, FDEP will issue a public notice announcing the date, time, and location. To the extent new information becomes available, FDEP reserves the right to take that information into consideration as part of its determination. FDEP

---

[3] *See* FDEP Informational Portal, "FWC REVISED PUBLIC NOTICING COMMENTS."

may also reevaluate the circumstances and conditions of a permit at any time if sufficient cause exists, including but not limited to significant new information. Rule 62-331.080(2)(e), F.A.C.

FDEP welcomes your participation in the public comment process for this permit application. As that process remains ongoing and FDEP continues to evaluate information related to the permit, FDEP is not in a position to announce action, including action to postpone a decision, on this permit application at this time.

Thank you for your interest in this matter.

Sincerely,

Jennifer Carpenter
District Director
South District Office

cc:    Justin Wolfe, General Counsel (FDEP)