**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br> v. <br> U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants. | Case No. 1:21-cv-0119 (RDM) |

**FEDERAL DEFENDANTS' POST-HEARING SUBMISSION ON REMEDY**

## I. INTRODUCTION

On January 30, 2024, the Court authorized supplemental submissions from the parties on the appropriate remedy if the Court were to identify errors with the U.S. Fish and Wildlife Service's ("FWS") November 17, 2020 programmatic Biological Opinion ("BiOp") and incidental take statement ("ITS"). With the caveat that Federal Defendants are submitting this memorandum without knowing how the Court intends to rule on any, let alone all, pending claims,[1] Federal Defendants submit that if the Court is inclined to invalidate the BiOp, it should remand without vacatur. If the Court is inclined to vacate the BiOp, Federal Defendants request that the Court issue a limited ruling to minimize the disruptive consequences of vacatur. Further, Federal Defendants request that the Court not vacate the Environmental Protection Agency's ("EPA") approval of Florida's assumption request.

## II. LEGAL STANDARD

In Administrative Procedure Act ("APA") cases, the reviewing court is not authorized to "'reach its own conclusions based on [a de novo] inquiry.'" *Immigr. & Naturalization Serv. v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (citation omitted).[2] Rather, if the Court finds error "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). And the Court has discretion to remand an agency decision without vacating it. *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1151 (D.C. Cir. 2005). The D.C.

---

[1] Federal Defendants renew their request—shared by all other parties—for the opportunity to provide a further submission on remedy following the Court's decision on the other claims pending before it.

[2] We note that questions have recently been raised about whether vacatur is an appropriate remedy at all under the APA, see *United States v. Texas*, 599 U.S. 670, 693–703 (2023) (Gorsuch, J., concurring), but the remedy analysis presented here is consistent with controlling Circuit precedent.

1

Circuit has "commonly remanded without vacating an agency's rule or order where the failure lay in lack of reasoned decisionmaking, . . . but also where the order was otherwise arbitrary and capricious[.]" *Int'l Union, United Mine Workers v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 966-67 (D.C. Cir. 1990) (citations omitted).

Remand without vacatur is available in cases involving agencies' compliance with Section 7 of the Endangered Species Act ("ESA"), including biological opinions and incidental take statements. *See, e.g.*, *Shafer & Freeman Lakes Env't Conservation Corp. v. FERC*, 992 F.3d 1071, 1096 (D.C. Cir. 2021); *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 188-89 (D.C. Cir. 2017). In this Circuit, the decision whether to vacate or remand without vacatur depends on: (1) "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)," and (2) "the disruptive consequences of an interim change that may itself be changed." *See Allied–Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (citation omitted). The balance of these factors "rests in the sound discretion of the court." *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 606 F.2d 1261, 1272 (D.C. Cir. 1979).

### III.   ARGUMENT

#### A.   Any Remand of the BiOp Should Be Without Vacatur.

When deciding whether to vacate or remand without vacatur, the Court first assesses the seriousness of the deficiencies. *Allied–Signal*, 988 F.2d at 150–51. If the Court remands the BiOp, it should do so without vacatur because this factor is in Federal Defendants' favor. Specifically, the ESA does not dictate one path to Section 7(a)(2) compliance, nor does it prohibit a programmatic approach. An action agency, such as EPA, must ensure its action does not cause jeopardy or adverse modification of listed species. However, it is free to choose *how* it meets these obligations, and a consulting agency, such as FWS, is free to choose *how* it conducts consultations.

2

The BiOp's programmatic approach and the technical assistance process under which FWS has reviewed permit applications to conduct site-specific and species-specific analyses were modeled on the approach reviewed and approved in *Cooling Water Intake Structures Coalition v. EPA*, 905 F.3d 49 (2d Cir. 2018). FWS has been providing technical assistance to the Florida Department of Environmental Protection ("FDEP") for over three years. Plaintiffs' concern that FWS would not engage in the technical assistance process has failed to materialize, nor have Plaintiffs established that any State 404 permits issued during this time have caused jeopardy to any listed species under FWS's jurisdiction. In short, FWS had a reasonable belief that its programmatic BiOp, accompanied by the technical assistance to be provided to Florida, complied with the law, and FWS has provided technical assistance as anticipated. On these facts, FWS clearly attempted to "[choose] correctly." *See Allied–Signal*, 988 F.2d at 150–51.

If the Court finds that the BiOp is flawed, the severe consequences of vacatur here outweigh any errors that might be identified by the Court; thus, the Court should not vacate. That is, if the Court finds that the BiOp is arbitrary and capricious, a remand to FWS would prompt a reopening of the consultation with EPA, which would allow FWS to correct any errors or deficiencies identified by the Court under the ESA without vacatur. For example, FWS can clarify that the ESA obliges it to use the best available science in providing technical assistance to FDEP, or otherwise clarify the mandatory nature of the technical assistance process and the extent to which FWS is required to review permit applications, provide comments, and analyze take. Similarly, FWS can explain the ITS's terms and conditions to make clear that permittees must comply with all permit conditions, including any project-specific take limit articulated by FWS, or else risk liability for incidental take. In short, FWS could "offer better reasoning" on remand. *Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893, 929 (9th Cir. 2020) (citation omitted).

3

With respect to the second *Allied Signal* factor, vacatur would be highly disruptive. Vacating the BiOp entirely would introduce regulatory uncertainty in the State of Florida as to how to seek incidental take coverage under the ESA, particularly given the Florida laws codifying the process and successful implementation of the program for the past three years. Additionally, vacatur would cause confusion for permit holders who have already navigated the process. More specifically, vacatur could cause questions as to whether permit holders who had received incidental take authorization under the BiOp retain the benefit of that authorization and, if not, potentially subject them to citizen suits for unauthorized take despite having followed the required procedures. Future applicants could face similar uncertainty, lacking clarity about how to proceed under a rapidly changing legal landscape. *See also* Section III.B, *infra*. Federal Defendants further maintain that vacatur that invalidates or undermines the BiOp's programmatic approach would be overbroad and widely disruptive. *See supra*.

If the Court nonetheless intends to vacate any part of FWS's decision, Federal Defendants request that the Court limit vacatur and issue a targeted order that applies only prospectively to minimize the potential disruptions outlined above. For example, the Court could focus solely on vacating the ITS prospectively, consistent with the concerns the Court articulated during the hearing on January 30, 2024 regarding application of the ITS to permit applicants. A targeted and prospective vacatur would reduce uncertainty for permit holders who previously obtained permits and already underwent a species-specific and site-specific effects review. If the Court limited vacatur in this way, prospective permittees will not have exemption from liability under ESA Section 9 if take occurs. *See* 16 U.S.C. § 1536(o)(2) ("[A]ny taking that is in compliance with the terms and conditions specified in a written statement provided under subsection (b)(4)(iv) shall not be considered to be a prohibited taking of the species concerned."). Thus, Section 404 permit

4

applicants in Florida would have to decide whether to move forward on projects without incidental take coverage, seek incidental take coverage through ESA Section 10, or forego development.[3]

The severe consequences of vacatur outweigh any errors that might be identified by the Court; thus, the Court should not vacate. At a minimum, the Court should issue a prospective and limited vacatur to minimize disruptions that would ensue if the BiOp were vacated in its entirety.

B.     **The Court Should Not Vacate EPA's Approval of the Assumption Request.**

If the Court finds flaws in, and vacates, the BiOp, it does not follow that EPA's approval of Florida's assumption was likewise flawed, and it certainly does not follow that the assumption itself should be vacated.[4] EPA's approval action rested, in relevant part, on the agency's determination that Florida had "the authority" to "issue permits which . . . apply and ensure compliance with . . . the [404(b)(1)] [G]uidelines," 33 U.S.C. § 1344(h)(1)(A)(i), including the requirement that no permit shall issue that "[j]eopardizes the continued existence of" ESA-listed species or "results in likelihood of the destruction or adverse modification" of critical habitat, 40 C.F.R. § 230.10(5)(b)(3). EPA reached that determination based on its review of the regulations in Florida's program submittal, not in the BiOp. Dkt. 99 at 39–40, 42. An order vacating the BiOp would have no effect on Florida's procedures and standards, leaving intact the bases for EPA's determination. And if the Court finds errors with the BiOp, it could be for reasons having nothing

---

[3]  Seeking an incidental take permit is a voluntary action. *See* Habitat Conservation Planning & Incidental Take Permit Processing Handbook at 3-2 (available at https://www.fws.gov/sites/default/files/documents/habitat-conservation-planning-handbook-entire_0.pdf). If a project proponent chose not to seek an incidental take permit, there would be no ESA analysis.

[4]  As a general mater, courts can and frequently do exercise their equitable discretion to remand without vacating agency actions after concluding that those actions rested on flawed ESA review. *See, e.g.*, *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582, 601 (D.C. Cir. 2023); *Am. Fuel & Petrochemical Mfrs. v. EPA*, 937 F.3d 559, 598 (D.C. Cir. 2019); *Ctr. for Biological Diversity*, 861 F.3d at 188–89.

to do with EPA's approval action. For instance, a holding that the ITS sweeps too broadly—as the Court suggested during argument—would cast no doubt on EPA's underlying approval, which did not rest on the scope of incidental take liability protection afforded under the ITS. Such a holding would therefore do nothing to support a ruling for Plaintiffs on Claim 2, which attacks the reasonableness of EPA's approval action, not the adequacy of the BiOp.

The Court should not vacate EPA's approval action even if it finds for Plaintiffs on Claim 2. No one disputes that if the Court were to vacate the BiOp's ITS, then permit applicants would have to rely on ESA Section 10 to secure incidental take liability-protection for actions without any federal nexus. That outcome could have severe disruptive consequences for the regulated community, as noted above. But no one disputes that ESA Section 10 adequately safeguards species and habitat. Thus, even if the Court holds that EPA erred in concluding that Florida's proposed program satisfied the species and habitat-protection requirements of the 404(b)(1) Guidelines, as Plaintiffs allege in Claim 2, it would make little sense to vacate the program. Instead, the Court should remand without vacating EPA's approval action.

On remand, Florida could propose modifications to its Section 404 program in response to the Court's opinion. EPA would review any proposals, and its review of any "substantial" proposed modifications would follow the notice and hearing procedures set forth in 40 C.F.R. § 233.16(d). Alternatively, if, following the Court's order, Florida no longer wished to administer the Section 404 program, then it could provide the 180-day notice and "plan for the orderly transfer of all relevant program information" necessary to revert permitting authority to the U.S. Army Corps of Engineers ("Corps"). *Id.* § 233.53(a). Federal Defendants submit that either path would advance the public interest in an orderly Section 404 permitting program consistent with the judgements of this Court.

6

By contrast, an order vacating EPA's approval would have substantial disruptive consequences. As Federal Defendants noted previously, upon vacatur, Florida would need to transfer to the Corps, the roughly 1,500 applications pending before FDEP.[5] While continuing its review of the Section 404 permits already before it, the Corps would also have to review each transferred application for completeness. 33 C.F.R. § 325.2(a)(1). It would then have to initiate review and federal consultation processes that various statutes require for Corps-issued Section 404 permits, but not for state-issued permits. *See, e.g.*, 42 U.S.C. § 4332; 16 U.S.C. § 1855(b)(2); 54 U.S.C. § 306108. And because federal and state Section 404 processes differ, the Corps might need additional information from applicants who originally sought permits from Florida. The result of all this, and the reasonably foreseeable consequence of vacatur, is a prolonged delay in the issuance of individual Section 404 permits in Florida now pending with the State. That impact weighs against vacatur. If the Court ultimately decides to vacate EPA's approval, however, Federal Defendants request that it postpone the effective date of its vacatur by at least 180 days to allow time for Florida to ramp down, and the Corps to ramp up, their respective permitting programs in an orderly fashion.

IV.   **CONCLUSION**

This case involves complex issues associated with a one-time EPA action that has resulted in subsequent implementation actions whose impacts were unknown at the time of consultation. The BiOp navigated these issues in in a manner that was consistent with governing case law. If the Court identifies errors in the way that FWS proceeded, the proper remedy is to remand to FWS to correct those errors. The Court should do so without vacating the BiOp or EPA's approval action.

---

[5] Applications for Florida Section 404 permits are listed on the State's public database: https://fldep.dep.state.fl.us/parep/pa_query_pa_data.asp

Dated: February 4, 2024                              Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

 /s/  Alison C. Finnegan
Alison C. Finnegan (PA Bar 88519)
Wildlife & Marine Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: 202-305-0500
Email: Alison.C.Finnegan@usdoj.gov

Andrew S. Coghlan (CA Bar 313332)
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-9275
Fax: (202) 514-8865
Email: Andrew.Coghlan@usdoj.gov
*Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2024, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

/s/    Alison C. Finnegan