# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ET AL.<br><br>           Plaintiffs,<br><br>      v.<br><br>MICHAEL S. REGAN, et al.,<br><br>           Defendants. | CASE NO. 1:21-cv-00119 (RDM) |

**DECLARATION OF JUSTIN WOLFE IN SUPPORT OF LIMITED STAY**

1.  My name is Justin Wolfe. I declare under penalty of perjury under the laws of the United States of America and the State of Florida that the following statements are true and correct to the best of my knowledge and belief.

2.  I serve as General Counsel to the Florida Department of Environmental Protection ("FDEP"). FDEP is the state agency in Florida authorized by law to "control and prohibit pollution of air and water…." Fla. Stat. § 403.061.

3.  I have signed and submitted five sworn declarations in this case (Dkt. 4-2, Dkt. 102-1, Dkt. 107-1, Dkt. 149-1, Dkt. 160-1), all of which I hereby re-affirm and incorporate by reference, subject to any additional information or clarifications provided herein.

4.  I am providing this additional declaration to provide sworn facts to this Court in support of Florida Intervenors' Motion for a Limited Stay (Motion). I have reviewed the Motion and affirm the facts therein.

6.  Upon receipt of this Court's February 15 order, FDEP promptly posted on its Section 404 website a statement, as follows:

1

> *"A federal court order was issued just before midnight on Feb. 15, 2024, divesting, at least for now, DEP of its authority to issue State 404 Program permits in Florida. Consequently, all activity under the State 404 Program is paused until further order of the court. DEP is currently evaluating any and all legal options in light of the court's order. As an initial step to limit the disruption to the State's 404 Program, DEP will seek a limited stay of the court's order."*[1]

7. As anticipated, vacatur of Florida's program has already begun to create enormously disruptive consequences and raise complex problems for the State and thousands of Floridians to navigate.

8. Well over 1,000 pending 404 individual and general permit applications – the vast majority of which have been in the Florida 404 permit review process for more than six months (with many far along toward a final decision) – are now in regulatory limbo with no clear timeline or expectation for a permit decision.

9. This includes pending permit applications for roads and bridges, hospital construction projects, school buildings and facilities, affordable housing, military base projects, power grid reliability projects (including construction of new power generation facilities and transmission lines), and various projects necessary to improve water quality in the Florida Everglades, just to name a few examples. Exhibit B, enclosed with Florida Intervenors' Motion for Limited Stay, provides a list of all permit applications for individual or general 404 permits currently pending before the FDEP for review.[2] This includes approximately 1,065 permit applications of a wide variety, including many projects that benefit the environment and/or the public, as described in the Motion for Limited Stay.

---

[1] https://floridadep.gov/water/submerged-lands-environmental-resources-coordination/content/state-404-program.

[2] In my declaration filed with Florida's post-hearing remedy brief, I noted that approximately 1,500 permit applications were then-pending with FDEP. That estimate included permittee requests for "No Permit Required" or other similar determinations, which are also essential to assisting the public with understanding compliance obligations.

10. After months (and in over 100 cases, more than two years) of permit review, many pending Florida 404 permit applications were at or near the conclusion of the Section 404 permit process when the Court's February 15 order was issued. Of those currently pending, over 840 permit applications have been in the permit review process for more than six months. Now all pending 404 permits in Florida are in some form of regulatory limbo, at least until a new regime can be established or further judicial orders alter the situation. Likewise, many of those permits would impose mitigation measures benefitting the environment and species conservation, but those beneficial actions are now similarly on hold as well.

11. The State of Florida and FDEP remain committed to administering the Section 404 program for all assumable waters in a manner consistent with law. The State of Florida intends to move forward on efforts to ensure that FDEP continues to implement the program to the fullest extent. Those details will take additional time to sort out.

12. FDEP would move forward with implementation of the Florida 404 program in compliance with this Court's order granting a limited stay under either of the approaches set forth in Florida's Motion (i.e., the "may affect" mechanism described in the Motion based on this Court's two conditions for a limited stay, or the approach based on the New Jersey/Michigan model).

13. Based on a review of the current program, FDEP currently estimates that approximately 15% of Florida 404 permit applications (including general permits and individual permits) trigger a "may affect" finding. (For clarity, a "may affect" finding is the first initial step; subsequent possible findings include "may affect, not likely to adversely affect" or "may affect, likely to adversely affect"; all of which are distinct from a possible later finding as to whether a

3

project would "jeopardize" the continued existence of listed species and/or adversely modify designated critical habitat).

14.     Various projects requiring a Florida 404 permit have been, are, or necessarily will be subject to a Section 7 consultation process (e.g., for a project requiring an additional federal action triggering Section 7 consultation procedures) or a Section 10 Incidental Take Permit process (e.g., for a project where the applicant has voluntarily decided to obtain a Section 10 permit).  For example, FDEP is currently processing various permits for road projects funded through the federal highway program. As federally-funded projects, the Florida Department of Transportation stands in the shoes of the Federal Highway Administration for purposes of obtaining permits and approvals for projects. These FDOT projects are able to undertake Section 7 consultation procedures. This is a category of projects that should be exempt from this Court's vacatur order because those projects already undergo separate Section 7 procedures (independent of any 404 process in Florida).

Executed on the 26th day of February, 2024.

_____
Justin Wolfe
General Counsel
Florida Department of Environmental Protection
3900 Commonwealth Blvd M.S. 35
Tallahassee, FL 32399