**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY,
*et al*.,

            *Plaintiffs*,

      v.

MICHAEL S. REGAN, *et al*.,

          *Defendants*.

Civil Action No. 21-119 (RDM)

---

**FLORIDA INTERVENORS' EXPEDITED MOTION**
**FOR ENTRY OF FINAL JUDGMENT**

---

On February 15, 2024, this Court granted summary judgment to Plaintiffs on their Endangered Species Act (ESA) claims. Dkt. 163, 164. The Court vacated the Programmatic Biological Opinion (BiOp) and Incidental Take Statement (ITS) that the U.S. Fish and Wildlife Service (FWS) rendered in conjunction with federal approval of Florida's Clean Water Act (CWA) Section 404 program application. Dkt. 164 at 1. And despite unified opposition from the United States and the State of Florida as to vacatur (Dkt. 158, Dkt. 160), this Court vacated the entirety of the Environmental Protection Agency's (EPA's) approval of Florida's program. Dkt. 164 at 1. This single judicial ruling, which gave complete relief to Plaintiffs, immediately placed over 1,000 projects across Florida (including permit applications for environmental restoration, roads and bridges, hospitals, schools, affordable housing, senior living facilities, and grid reliability, among many others) in regulatory limbo with no clear timeline or expectation for a permit decision. The situation was immediately urgent and becomes more so with each passing day.

Recognizing the severe disruptive consequences of its order, this Court invited "Defendants to seek a limited stay of that vacatur" within ten days. Dkt. 163 at 96. The State of Florida and the Florida Department of Environmental Protection (FDEP) (collectively, Florida Intervenors) filed such a limited stay motion on February 26, 2024. Dkt. 166. With that motion, Florida Intervenors provided sworn testimony about severe disruptive consequences of vacatur (Dkt. 166-1), along with a complete list of the pending permit applications (Dkt. 166-2). Florida Intervenors also asked this Court, at a minimum, to allow Florida to process Section 404 permits during a limited stay in the same manner as New Jersey and Michigan (without incidental take liability protection for state permittees). Dkt. 166 at 14-19. Florida requested an "expedited decision" on the stay motion. *Id.* at 19. Amici in Florida filed a brief in support of Florida Intervenors' stay request and further described the severe and urgent impacts arising from this Court's vacatur. Dkt. 168. On March 7, 2024, Plaintiffs filed an opposition to a limited stay, Dkt. 169,[1] which opposed any relief for Florida and Florida permittees yet conceded, for the first time in this case, that Plaintiffs were wrong about important details concerning New Jersey's 404 program. Dkt. 169 at 9 n.4.[2]

---

[1] Florida Intervenors have filed a reply in support of Florida's limited stay request addressing Plaintiffs' arguments opposing a stay. Dkt. 170.

[2] Contrary to Plaintiffs' repeated claims to this Court, the New Jersey program does not "federalize" permit applications that "may affect" species (*i.e.*, removed from state permitting and transferred to the Corps of Engineers). *See* Dkt. 98 at 16 and n.12; Dkt. 161 at 10; Dkt. 135 at 42; Tr. at 22, 131 (Oct. 19, 2023 Hr'g); Tr. at 11 (Jan. 30, 2024 Hr'g) (New Jersey "was not taking over any permitting actions that would affect species…"). Though Federal Defendants and Florida Intervenors had previously explained that such a "may affect" approach was tantamount to "partial assumption" in contravention of EPA regulations, this Court, in its February 15 ruling, took Plaintiffs' view that New Jersey federalized all permits that may affect listed species. *See* Dkt. 163 at 5 ("as in New Jersey, the EPA can federalize those applications likely to adversely affect listed species…"); *Id.* at 27 (stating that state programs can "federaliz[e] all state 404 permits that may impact species, as occurs in New Jersey …"); *Id.* at 23 ("the State [of New Jersey] has agreed to 'federalize' – that is, pass to the FWS and NMFS

The Court previously stated that it would allow Florida Intervenors to renew its request for entry of final judgment after the Court decided the stay motion (Dkt. 163 at 97), which further suggested prompt action on the stay request. Instead of deciding the pending motion, on March 8, 2024, the Court issued a minute order setting a status conference for **April 4, 2024** – almost one month from now – to "discuss next steps in the litigation." Thus, just as Florida's 404 pending permits remain in limbo, so is Florida's opportunity to seek review from the Court of Appeals. Florida Intervenors respectfully urge this Court to accelerate the process. While Florida Intervenors recognize that this Court stated that it would reconsider entry of judgment *after* deciding the stay motion (Dkt. 163 at 97), delaying that action for at least another month is untenable for the State of Florida.

Ultimately, this Court has already given Plaintiffs what they sought: vacatur of federal approval of Florida's program. That relief obviates all remaining claims. The logical (and required) next step in this litigation is for the Court to simply enter final judgment in accord with Rule 58(d) or enter partial final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. To defer ruling on the stay motion while also holding back final judgment would deprive the State of Florida of near-term relief from the severe disruptions caused by vacatur while also deferring indefinitely Florida's opportunity to seek appellate review for what is, in all respects, already a final decision. Indeed, even with the 13-count, kitchen-sink complaint filed by Plaintiffs, there can be no doubt as to propriety of entering final judgment. Stated simply, because this Court has already afforded complete relief to Plaintiffs in the form of vacatur of the BiOp/ITS *and* vacatur

---

for review – any permits that might affect protected species…"); *Id.* at 46-47 (describing a "process for federalizing permits that may affect listed species (as was done in New Jersey)"); *Id.* at 95 ("…without federalizing permits likely to adversely affect species (as in New Jersey)"). To be clear, permits in New Jersey that "may affect" or are "likely to adversely affect" species are not "federalized." Dkt. 166 at 3 n.2. This issue is addressed in more detail in Florida Intervenors' reply brief in support of a limited stay.

of EPA's approval of Florida's program, this Court need not and should not address the remaining claims. *Coal River Mountain Watch v. Jewell*, No. 08-CV-02212 (BJR), 2014 WL 12884029, at *2 (D.D.C. July 9, 2014) (explaining that "any opinion that this Court were to offer regarding whether the vacated rule violated the NEPA, CWA, and/or APA would necessarily be advisory, something a federal district court is prohibited from doing"). Instead, this Court should simply and immediately enter final judgment, which comports with Rule 58(d)'s purpose to "protect all needs for prompt commencement of the periods for … appeals …." *See* Fed. R. Civ. P. 58, Advisory Committee Notes for the 2002 Amendment.

If, however, this Court does not enter final judgment, this Court should exercise its discretion to enter a partial final judgment under Rule 54(b). *United States v. All Assets Held in Acct. No. XXXXXXXX*, 314 F.R.D. 12, 14 (D.D.C. 2015) (explaining that Rule 54(b) provides "flexibility" for "appellate review in complex cases") (citing *Blue v. D.C. Pub. Schs.*, 764 F.3d 11, 15 (D.C. Cir. 2014)).[3] The Court's definitive resolution of a central claim – one that this Court finds warrants total vacatur of federal approval of Florida's Section 404 program and thereby creates severe disruptive consequences across the entire state – leaves "no just reason for delay."

In terms of timing for a decision, Florida Intervenors respectfully suggest that a status conference is not necessary before final judgment should be issued. In the event the Court decides to hold a hearing or status conference on the limited stay motion or this motion for entry of judgment, Florida Intervenors respectfully request that the status conference be expedited to the

---

[3] Though Rules 58(d) and 54(b) provide clear avenues for entry of an appealable order, this Court could, in the alternative, certify a controlling question of law from the February 15 ruling for immediate appellate review under 28 U.S.C. § 1292(b). For that reason, if this Court were to deny the present motion, Florida Intervenors expressly reserve the option to seek § 1292(b) relief at an appropriate juncture. For the Court's awareness, Florida Intervenors also intend to move for a stay of the vacatur order pending appeal, and depending upon the nature of this Court's entry of an appealable order, Florida Intervenors may also seek a stay of the District Court proceedings pending appeal.

next earliest available date, preferably within the next 10 days, so that expedited appellate review can be sought forthwith given the extraordinary impact of the Court's February 15 order. Florida Intervenors also seek expedited consideration of this motion and respectfully suggest that Plaintiffs (and all other parties) should be afforded no more than seven (7) days to submit a response. Florida Intervenors sought the position of the other parties on this motion: Plaintiffs oppose the motion and intend to file a response in opposition; and Federal Defendants reserve their position.

## I.    Background

Plaintiffs filed their original nine-count complaint in this matter over three years ago, on January 14, 2021, challenging EPA's approval of Florida's application to assume the CWA Section 404 dredge-and-fill permit program for assumable waters in Florida. EPA's approval took effect on December 22, 2020. On April 19, 2022, Plaintiffs amended their complaint to add four additional claims, Dkt. 77, bringing the total number to thirteen, as follows:

- Claims 1, 2 and 5 allege violations of the CWA and/or Administrative Procedure Act (APA);
- Claim 7 alleges violations of the Rivers and Harbors Act (RHA) and APA;
- Claims 8 and 9 allege violations of the APA; and
- Claims 3, 4, 6, and 10 to 13 allege violations of the ESA Section 7 and/or APA.

*Id.* Plaintiffs sought vacatur of (a) the BiOp/ITS, (b) EPA's approval of Florida's 404 Program, and (c) the Corps of Engineers' list of "retained waters" submitted in conjunction with Florida's application. *Id.* They also sought declaratory judgments that various federal agencies violated the CWA, RHA, ESA and APA, and an award of attorneys' fees. *Id.*

Near the outset of the case, the Court ordered the parties to file dispositive motions on Claims 8 and 9, pursuant to Plaintiffs' request. After extensive briefing, *see* Dkt. 31, 34-37, 43-48, 51-57, 59-60, 65-72, the Court dismissed Claim 9 in March 2022 and Claim 8 in August 2023. Dkt. 73, 119. The administrative records for the various agency actions under review were

certified, and the parties then proceeded to cross-move for summary judgment on all remaining claims. Dkt. 98-108, 111-12, 114, 119, 121, 123, 125-26. This Court held a summary judgment hearing on October 19, 2023, with additional post-hearing supplemental briefing occurring in October and November 2023. Dkt. 130, 133-34. On December 4, 2023, two of seven Plaintiffs filed a motion for preliminary injunction to enjoin FDEP and EPA from completing the State 404 permit process for two specific projects. Dkt. 135. After extensive briefing on that motion, *see* Dkt. 135-137, 139, 145-146, 148, 149, 153, 155, and 157-161, and a hearing on January 30, 2024, this Court issued an order on February 15, 2024 denying the motion for a preliminary injunction as moot but granting Plaintiffs' motion for summary judgment on Claims 3, 4, 6, and 10 to 13. Dkt. 163. As part of that decision, the Court vacated the BiOp/ITS and EPA's approval of Florida's Section 404 assumption application. The Court permitted Federal Defendants and Florida Intervenors to seek a limited stay of the vacatur of EPA's approval (subject to certain conditions) within 10 days. *Id.* at 93, 96. On February 26, 2024, Florida Intervenors moved for a limited stay. Dkt. 166.

Given the complexities of this case, all of the parties (including Plaintiffs) had previously sought comprehensive remedy briefing *after* the Court ruled on the pending cross motions for summary judgment. *See* Dkt. 98 at 15 n.2 ("Plaintiffs respectfully request the opportunity to brief the appropriate remedy *following* the Court's ruling on summary judgment.") (emphasis added). This Court decided at the TRO hearing on January 30, 2024 that, if the parties wished to be heard on the ultimate remedy in this case, the parties should submit remedy briefs within a week and limited to just seven (7) pages, and that they had to do so *in anticipation of a potential decision by the Court* (Tr. at 101-103). In its post-hearing remedy brief (filed Feb. 4, 2024), Florida Intervenors stated:

> To the extent the Court decides only some, but not all, pending claims in its forthcoming ruling, Florida Intervenors respectfully urge the Court to direct entry of final judgment as to those specific claims pursuant to Federal Rule of Civil Procedure 54(b). Given the consequences of such a ruling and the strong public interest in this case, "no just reason for delay" of entry of final judgment would exist. *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 1 (1980).

Dkt. 160 at 2 n.1. In response, this Court denied "that request as premature" while expressly stating that the Court "will permit the State to renew its request after the parties have reviewed this decision and have decided whether to seek a limited stay of the Court's vacatur of the assumption decision, and, if they seek a limited stay, the Court has decided how to proceed." Dkt. 163 at 97.[4]

On March 8, 2024, one day after Plaintiffs filed an opposition to the limited stay motion, the Court set a "status conference" for April 4, 2024 for the parties to discuss "next steps" in the litigation. Given the urgency of the situation, and because it is plain that Plaintiffs have been afforded complete relief, Florida Intervenors now renew their request for entry of judgment. And with the benefit of knowing the Court's views by virtue of the February 15 ruling, Florida Intervenors clarify that this Court should enter final judgment directly (as a matter of Rule 58(d)'s separate document requirement) or, in the alternative, based on Rule 54(b). Both are clear avenues to the same basic outcome: final judgment that is immediately appealable.[5]

---

[4] This Court's directive for Florida Intervenors to await a ruling on a limited stay request before seeking entry of judgment is, at least arguably, in tension with cases suggesting that such motions should be filed within 30 days of the ruling in question. *See, e.g., U.S. Liab. Ins. Co. v. Krawatsky*, 610 F. Supp. 3d 745, 749 (D. Md. 2022).

[5] Plaintiffs sought an injunction to block two specific projects; instead of granting that injunction, this Court vacated the entire program and then found the injunction motion "moot." Obviously, an order by this Court granting the injunction would have been immediately appealable under § 1292(a), but this Court's approach also makes that path less clear. That said, Florida expressly reserves the right to also seek appeal via § 1292(a) if necessary as this Court's order clearly has the effect of an injunction in this context.

**II.    This Court Should Enter Final Judgment Because Complete Relief Has Already Been Provided to Plaintiffs.**

Federal courts render final judgments when a case is finally decided. But the point at which a case is decided with finality is, at times, unclear. Rule 58(d) addresses that situation and allows a party to "request that judgment be set out in a separate document as required by Rule 58(a)." The purpose of Rule 58(d) is to ensure timely issuance of an appealable order. In its February 15 order, this Court provided Plaintiffs with complete relief. Plaintiffs themselves stated in the very first sentence of their complaint: "[t]his action arises from the [EPA's] approval of a state application to assume jurisdiction over the Clean Water Act's Section 404 permitting program" Dkt. 1 at 3. On February 15, 2024, when this Court vacated EPA's approval, "the vacatur of the final agency decisions from which [plaintiffs] appealed, provides them with all the judicial relief to which they are entitled …" *Lewis v. Becerra*, No. 18-2929 (RBW), 2023 WL 3884595, at *4 (D.D.C. June 8, 2023). Accordingly, because Plaintiffs have been provided complete relief, their remaining claims are now moot or otherwise non-justiciable at this time, and final judgment should be entered in recognition of that reality.

**A.    Complete relief renders additional claims moot.**

"[W]hen a court decides that a challenged practice is unlawful on one ground, the question whether it is also unlawful on some other ground would generally be moot, because it can make little difference whether a practice is unlawful for one or for several reasons, provided only that it is indeed unlawful." *Air Line Pilots Ass'n, Int'l v. UAL Corp*., 897 F.2d 1394, 1397 (7th Cir. 1990). In those circumstances, remaining claims are moot in the sense that they "refer to an issue that need not be decided in light of the resolution by the court in the same opinion of another issue." *Novella v. Westchester Cnty.,* 661 F.3d 128, 149 (2d Cir. 2011) (internal quotes omitted). Where "a litigant asserts multiple arguments in support of the relief he seeks, and the court grants him

complete relief based upon one contention, courts also sometimes use the word 'moot' ... to refer to an issue that need not be decided in light of the resolution by the court in the same opinion of another issue." *Id*. (internal quotes omitted).

In other words, where vacatur provides all the judicial relief to which a plaintiff is entitled and effectively resolves the underlying action, there remains no "case or controversy" for remaining claims to stand on. *See Coal River Mountain Watch*, 2014 WL 12884029, at *2 ("this Court has already vacated the 2008 Rule, and any opinion that this Court were to offer regarding whether the vacated rule violated the NEPA, CWA, and/or APA would necessarily be advisory, something a federal district court is prohibited from doing"); *Lewis*, 2023 WL 3884595, at *4 (agreeing with federal agency that "proposed partial judgment in the plaintiffs' favor, and vacatur of the final agency decisions from which they appealed, provides them with all the judicial relief to which they are entitled, and therefore, the plaintiffs' remaining claims should be dismissed as moot") (internal citations omitted).

In these contexts, the test for mootness involves "whether the relief sought would, if granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation)." *Air Line Pilots Ass'n*, 897 F.2d at 1396. That is because the "real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant ....*" *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (internal citation omitted). Here, vacatur of EPA's approval on ESA grounds has, for all

intents and purposes, obviated any need for this Court to decide other claims, such as counts arising under the CWA, RHA, or the APA that seek identical relief.[6]

### B. Mootness exceptions do not apply here.

Nor do the typical exceptions to the mootness doctrine – "capable of repetition yet evading review" and "voluntary cessation" – apply here. *Lewis*, 2023 WL 3884595, at \*9-14. Plaintiffs have the burden of showing that one of the mootness exceptions apply. *Id.* While it is true that Florida's Section 404 program could be resurrected from vacatur (e.g., appellate review or changes on remand), the remaining claims would not "evade review" as Plaintiffs could certainly pursue additional APA-based challenges later. *Id.* at \*9-10 (explaining that, "because the 'capable of repetition, yet evading review' test 'requires that the challenged action be <u>both</u> capable of repetition <u>and</u> evading review") (emphasis in original).

The "voluntary cessation" exception to the mootness doctrine also clearly does not apply. That exception "prevent[s] a private defendant from manipulating the judicial process by voluntarily ceasing the complained of activity, and then seeking a dismissal of the case, thus securing freedom to return to his old ways." *Id.* at \*10 (internal citation omitted) (explaining that the D.C. Circuit "has been skeptical of applying this exception to agency actions") (citing *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1227 (D.C. Cir. 2021). Because of this Court's February 15 ruling and vacatur order, the "challenged" agency action cannot be reinstituted in the same form absent appellate reversal or significant changes. *Id.* at \*11 (citing cases on this point). And as is

---

[6] A limited or full stay of a vacatur would not affect whether a final judgment may be entered. Courts frequently grant stays of orders in cases where a final judgement is being entered. *See, e.g., Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 153 F. Supp. 3d 93, 95 (D.D.C. 2016), *rev'd on other grounds*, 650 F. App'x 13 (D.C. Cir. 2016) (involving case where district court vacated DHS work permit rule but "stayed the effect of vacatur for six months to allow DHS enough time to promulgate a replacement rule," and while stay was in effect a final judgment was entered and appeal taken to the D.C. Circuit).

the case with the mootness doctrine generally, the "voluntary cessation" exception does not apply where the plaintiff already received complete relief. *Id.* at *13 (refusing to apply "voluntary cessation" exception where plaintiffs "already obtained all the relief that they sought" (cleaned up)). That is certainly the case here.

### C.    Plaintiffs' Declaratory Judgment Claims Do Not Prevent Entry of Final Judgment.

Alongside their vacatur requests, Plaintiffs also sought "declaratory judgment" that EPA violated the CWA and that the Corps violated the RHA and APA, among other things. But declarations as to the state of the law in this context would have no practical effect on the "behavior of the defendant towards the plaintiff," and would be tantamount to mere advisory opinions. *NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 674 F.3d 869, 873 (D.C. Cir. 2012) ("Where an intervening event renders the underlying case moot, a declaratory judgment can no longer "affect [ ] the behavior of the defendant towards the plaintiff,") (quoting *Hewitt v. Helms*, 482 U.S. 755, 761, (1987). Nor would Plaintiffs have standing for separate forward-looking declaratory judgment claims at this time. *City of Houston, Tex. v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994) ("[T]his circuit's case law provides that if a plaintiff's specific claim has been mooted, it may nevertheless seek declaratory relief forbidding an agency from imposing a disputed policy in the future, *so long as the plaintiff has standing to bring such a forward-looking challenge and the request for declaratory relief is ripe*" (emphasis added)).[7]

---

[7] Plaintiffs' remaining claim for attorney's fees does not prevent entry of final judgment. The Supreme Court has adopted "a uniform rule that an unresolved issue of attorney's fees for the litigation in question [did] not prevent [the earlier] judgment on the merits from being final." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988).

Accordingly, because the Court has granted complete relief to Plaintiffs, rendering the remaining claims moot, this Court should proceed with entering final judgment in a separate appealable order as required by Rule 58(d).

**III.    In the Alternative, This Court Should Enter a Partial Final Judgment under Rule 54(b) as to the Endangered Species Act Section 7 Claims.**

Under Federal Rule of Civil Procedure 54(b), "when an action presents more than one claim for relief… the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Rule 54(b) may be properly used to "meet the demonstrated need for flexibility in providing for appellate review in complex cases," *United States v. All Assets Held in Acct. No. XXXXXXX*, 314 F.R.D. at 14 (citing *Blue v. D.C. Public Schools*, 764 F.3d 11, 15 (D.C. Cir. 2014)), and to "mediate[ ] between the sometimes antagonistic goals of avoiding piecemeal appeals and giving parties timely justice." *Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 760 (D.C. Cir.1997).

Courts apply a three-step test to certify an otherwise interlocutory order as a final judgment under Rule 54(b): "(1) the order must resolve a distinct 'claim for relief'; (2) the order must be 'final' with respect to that claim; and (3) the district court must permissibly determine that there is 'no just reason for delay...'" *Attias v. CareFirst, Inc*., 969 F.3d 412, 417 (D.C. Cir. 2020). In considering all three factors, a Rule 54(b) determination "weighs both justice to the litigants and the interest of sound judicial administration." *Brooks v. Dist. Hosp. Partners, L.P.*, 606 F.3d 800, 806 (D.C. Cir. 2010) (internal quotations omitted). "The factors affecting 'justice to the parties' will inevitably differ from case to case, but the factors pertaining to judicial administration include 'whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court [will] have to decide the same issues more than once even if there [are] subsequent appeals.'" *Id.* (internal

citation omitted). Ultimately, the decision whether to grant a Rule 54(b) motion rests with the district court. *See Petties v. District of Columbia*, 227 F.3d 469, 472 (D.C. Cir. 2000) (internal citation and quotations omitted) ("[T]he district court [functions] as a dispatcher, determining in its sound discretion when a claim should proceed on to appellate resolution and when it should await its fellows."). Here, all three factors support entry of judgment under Rule 54(b).

### A.    Final Judgment for the ESA Section 7 Claims Satisfies the First Two Steps of the Rule 54(b) Analysis.

The first two steps in the Rule 54(b) analysis, "whether the district court [(1)] finally resolved [(2)] one or more distinct claims for relief," are frequently assessed together. *Attias*, 969 F.3d at 417. These steps require a court to determine whether the judgment is "final [in that it constitutes] an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Bldg. Indus. Ass'n of Superior Cal. v. Babbitt*, 161 F.3d 740, 744 (D.C. Cir. 1998) (internal citations omitted). Regarding finality, "[t]he issue is not whether every claim filed has been finally adjudicated but rather whether any single claim distinct from the others has been." *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Sci. & Com. Sys. Corp.*, 249 F. Supp. 3d 130, 133–34 (D.D.C. 2017); *Capital Transit Co. v. District of Columbia*, 225 F.2d 38, 40 (D.C. Cir. 1955) ("There must be multiple claims of which at least one has been adjudicated.") (internal citation omitted).

The first two steps in the Rule 54(b) analysis are met in this case because the Court has granted summary judgment to Plaintiffs on the ESA Section 7 claims (Counts 3, 4, 6, 10–13). This Court's February 15 ruling is an "ultimate disposition of [] individual claim[s] entered in the course of a multiple claims action." *Bldg. Indus. Ass'n*, 161 F.3d at 744 (internal citation omitted). And

the remaining claims (Counts 1, 2, 5, and 7) are substantively distinct from the ESA Section 7 claims.[8]

This Court's February 15 ruling centered on ESA Section 7-based claims (Counts 3, 4, 6, and 10–13) that are separate and distinct from other claims in this case, which are focused on compliance with the CWA and RHA. On one hand, the third, fourth, and tenth claims allege that the BiOp and ITS violate ESA Section 7 (Dkt. 77 at 35-42, 49-52); the sixth and thirteenth claims challenge the "technical assistance process" as violating ESA Section 7 (Dkt. 77 at 44-45); and the eleventh and twelfth claims allege that EPA violated ESA Section 7 by failing to consult with NMFS and/or FWS in various respects (e.g., with regard to sea turtles) (Dkt. 77 at 55). The fifth claim is a narrow procedural claim based on a lack of Section 7 consultation with NMFS. Thus, all of these distinct claims involve alleged non-compliance with ESA Section 7.

On the other hand, the four remaining counts in this case are distinct and separate from the ESA Section 7 claims. The first claim alleges that Florida's program application was not "complete" for purposes of Section 404 compliance. The second claim alleges that EPA's approval of Florida's program violated the Clean Water Act's requirements for a state program. And the seventh claim alleges that the Corps of Engineers violated the Rivers and Harbors Act in adopting a list of retained waters that, according to Plaintiffs, allows Florida to assume 404 authority over too many waters. Again, these claims are separate from the ESA Section 7 claims ruled upon in the February 15 opinion, all of which focus on ESA Section 7 compliance. At their core, the adjudicated claims focus on the BiOp/ITS issues, while the remaining claims focus on CWA and RHA compliance. Thus, with regard to the ESA Section 7 claims, this Court has rendered "an ultimate disposition" of those claims in the course of a "multiple claims action."

---

[8] This Court dismissed Claim 8 on August 23, 2023 and Claim 9 on March 30, 2022. *See* Dkt. 119 and 73.

Plaintiffs may contend that Claim Two is not "distinct" because it somehow overlaps with ESA Section 7. Claim Two contains a long list of various contentions that EPA's approval violates the CWA in regard to general permits, notice and comment procedures, enforcement authority, emergency permits, information requirements, definitions, water quality standards, mitigation requirements, among other things. Dkt. 77 at 27-35. One of the points within Claim Two is Plaintiffs' argument that EPA's approval of Florida's program violates the "404(b)(1) Guidelines." Section 404(h)(1)(A)(i) requires 404 permits to "assure compliance with" the "guidelines established under [Section 404(b)(1)]." 33 U.S.C. § 1344(h)(1)(A)(i). In turn, the "Section 404(b)(1) Guidelines" cover a variety of requirements for protecting water quality and species. *See* 40 C.F.R. Part 230. One of those "Guidelines" is the requirement that "[n]o discharge of dredged or fill material shall be permitted if it … [j]eopardizes the continued existence of [listed] species" or "results in likelihood of the destruction or adverse modification of [designated critical] habitat." 40 C.F.R. § 230.10(b)(3). State programs, including New Jersey, Michigan, and Florida, satisfy this requirement for purposes of CWA compliance by (1) establishing in their own state regulations that 404 permits will not be issued if they would jeopardize listed species or adversely modify critical habitat; and (2) subjecting permit applications to the federal "review" process set forth in 40 C.F.R. Part 233. *See* 40 C.F.R.§§ 233.50-.51. As fully explained by Federal Defendants and Florida Intervenors in this case, the fact that Section 404(b)(1) requires consideration of impacts to species as part of the 404 assumption process is one reason why Section 7 consultation was triggered for purposes of Florida's program. But that does not convert a 404(b)(1) claim into a Section 7 claim. To put a finer point on it, formal consultation is triggered under ESA Section 7 where federal agency action (such as EPA approval of a state 404 program application) is "likely to adversely affect" listed species or designated critical, *and not on the basis of the "jeopardy"*

*analysis*. When states like New Jersey, Michigan, and Florida provide 404 permit applications to

FWS for "federal review," they are doing so for purposes of 404(b)(1), not for ESA Section 7.

Thus, they remain "distinct" claims for purposes of Rule 54(b).

Plaintiffs may also contend that Claim One (i.e., the "complete application" claim) is not

"distinct" because it overlaps with ESA Section 7 claims due to the lack of availability of a final

BiOp/ITS at the time of EPA's "completeness" determination. Prior briefing showed why Claim

One should be dismissed for a host of reasons (*see, e.g.*, Dkt. 99 at 38-45; Dkt. 102 at 42-44), but

even so, that claim is obviously distinct from an ESA Section 7 claim. Whether a Section 404

program application is complete is an entirely distinct claim from whether the federal agency

action complies with ESA Section 7.

### B.    As to the Third Step in the Rule 54(b) Analysis, No "Just Reason" Exists for Further Delay of Entry of an Immediately Appealable Final Judgment.

The third step addresses whether there is "no just reason" for delay. *Curtiss–Wright Corp.,*

446 U.S. at 7. Several factors influence that determination, including:

(1) the relationship between the adjudicated and unadjudicated claims;

(2) the possibility that the need for review might or might not be mooted by future developments in the district court;

(3) the possibility that the reviewing court might be obliged to consider the same issue a second time;

(4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; [and]

(5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Serv. Emps. Int'l Union,* 249 F. Supp. 3d at 133. Although these factors are not all-inclusive, they

"represent the main considerations courts focus on in making Rule 54(b) determinations." *Id.*

Here, the relevant factors show that there is no "just reason" for delaying entry of final

16

judgment on the ESA Section 7 claims. "District courts have "substantial discretion" in determining whether there is no just reason for delay." *In re Papst Licensing GmbH & Co. KG Litig*., 987 F. Supp. 2d 58, 61 (D.D.C. 2013), *vacated on unrelated grounds* (internal citation omitted).

The first factor - "the relationship between the adjudicated and unadjudicated claims" – supports entry of final judgment because, as already explained above, these are distinct and separate claims, and the disposition of the other remaining claims will not impact the ESA Section 7 claims. Although "there is some relationship between [the resolved counts] and the counts still pending," where claims are "factually and legally distinct" entry of final judgment as to the resolved counts is appropriate. *Baystate Med. Ctr. v. Leavitt*, 587 F. Supp. 2d 44, 47 n.1 (D.D.C. 2008). Indeed, even where two sets of claims against a federal agency involve the same subject and arise under the same statute, where the actual resolution of the claims on which certification is sought turns on separate agency findings or actions, they are distinct. *Am. Forest Res. Council v. Ashe*, 301 F.R.D. 14, 18 (D.D.C. 2014) ("To be sure, all of AFRC's claims involve the marbled murrelet and the Endangered Species Act—that is why they were brought in the same action… But beyond that high-level overlap, the actual resolution of the delisting claims bears minimal factual or legal similarity to the resolution of the habitat claims."). Here, the remaining claims and the ESA claims are even more distinct than those in *American Forest Resource Council* in that they arise under different statutes.

The second factor – potential mootness concerns – also favors entry of judgment. Even if the remaining claims are still considered live cases and controversies, a ruling on the remaining claims by the district court would have no effect on the issues being appealed and certainly would not moot the need for review. Indeed, "the decision on those counts will have no impact on the

decision entered on count[s 3, 4, 6, 10–13]." *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 00-273, slip op. at 4 (D.D.C. Dec. 21, 2004) (entering final judgment on decision invalidating rule because it would not affect pending challenges to related agency actions). The "unlikelihood that a trial on [the remaining claims] will inform a subsequent appeal of [the ESA claims] heavily favors certification of final judgment on the latter claims." *Seed Co. v. Westerman*, No. 08-355 (RJL), 2019 WL 3222412, at *4 (D.D.C. July 17, 2019). Here, if this Court were to resolve the remaining claims, it would have no impact on the appeal of the ESA claims: for example, if this Court resolves the remaining claims in Defendants' favor, Florida Intervenors will still appeal the decision on the ESA claims, and if the Court resolves the remaining claims in Plaintiffs' favor, Florida Intervenors' appeal of that decision will address completely separate agency actions and will appeal a separate kind of relief. *Id.* "The two are separate issues and there is thus no possibility of mootness in review." *Serv. Emps. Int'l Union*, 249 F. Supp. 3d at 135.

The third factor – possible consideration of the "same issue a second time" – supports Rule 54(b) entry because the ESA claims are distinct, and none of the remaining claims request a vacatur of the BiOp or ITS. This Court would not be obliged to consider the same issues again. If the Court of Appeals affirms this Court's decision, the ESA claims will be resolved and "no court need address them further." *Id.* (internal citation omitted). If the Court of Appeals reverses, and the remaining claims are appealed, the D.C Circuit will have to address separate claims and separate requested relief.

The fourth factor – claims/counterclaims requiring a "set-off" against the judgment – is not relevant to this APA action where there is no "set-off" concern.

The last "catch-all" factor strongly supports Rule 54(b) entry for all of the reasons already set forth

in Florida Intervenors' Motion for Limited Stay, including adverse consequences from further delay. *See* Dkt. 166, 166-1. Delaying entry of a final judgment would likely result in further delays in issuance of an appealable order, which in turn will further delay resolution of the complex legal issues raised in this litigation.

## IV.    CONCLUSION

For the foregoing reasons, the Court should enter final judgment as a separate document at this time (in accord with Rule 58(d)) or, in the alternative, the Court should enter a partial final judgment under Rule 54(b) as to the ESA Section 7 claims. To the extent the Court finds that a status conference is necessary before taking action on this motion (or on the pending motion for limited stay), Florida Intervenors respectfully request that this Court schedule a status conference within ten days and order expedited responses from the parties.


Dated: March 11, 2024                              Respectfully submitted,

                                                   BAKER BOTTS L.L.P.


                                                   */s/ Jeffrey H. Wood*
                                                   Jeffrey H. Wood (D.C. Bar No. 1024647)
                                                   700 K Street, NW
                                                   Washington, D.C. 20001
                                                   Phone: (202) 639-7700
                                                   jeff.wood@bakerbotts.com

                                                   Lily N. Chinn (D.C. Bar No. 979919)
                                                   101 California Street
                                                   San Francisco, CA 94111
                                                   Phone: (415) 291-6200
                                                   lily.chinn@bakerbotts.com

                                                   Aaron M. Streett (TX Bar No. 24037561)
                                                   Harrison Reback (TX Bar No. 24012897)
                                                   (*pro hac vice*)
                                                   910 Louisiana Street

Houston, TX 77002-4995
Phone: (713) 229-1234
aaron.streett@bakerbotts.com
harrison.reback@bakerbotts.com

**CERIFICATE OF SERVICE**

I hereby certify that on this the 11th day of March 2024, I electronically filed the foregoing

document using the CM/ECF system. Service was accomplished by the CM/ECF system.

<div style="margin-left: 40%;">

Respectfully submitted,
BAKER BOTTS L.L.P.

*/s/ Jeffrey H. Wood*
Jeffrey H. Wood (D.C. Bar No. 1024647)
700 K Street, NW
Washington, D.C. 20001
Phone: (202) 639-7700
jeff.wood@bakerbotts.com

</div>