**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL
DIVERSITY, et al.,

      Plaintiffs,

      v.

U.S. ENVIRONMENTAL
PROTECTION AGENCY, et al.,

      Defendants.

**CASE NO.** 1:21-cv-00119 (RDM)

## PLAINTIFFS' RESPONSE TO FLORIDA'S MOTION FOR FINAL JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

    I.    Plaintiffs' Remaining Claims Preclude Entry of Final Judgment ...................................... 3

        A.    Plaintiffs' Remaining Claims Are Not Moot. ................................................... 3

        B.    Plaintiffs' Requests for Declaratory Relief Also Preclude Entry of Final Judgment. .. 10

        C.    Because Plaintiffs' Claims Are Not Moot, No Mootness Exception Need Apply. ....... 12

        D.    Plaintiffs' Claims Are Live Regardless of Whether the Court Grants a Limited Stay. 14

    II.    The Court Should Not Issue Partial Final Judgment on Plaintiffs' ESA Claims .............. 19

        A.    The Decided ESA Claims are Not Separable From Claims 1, 2, and 5 ....................... 21

        B.    There are Just Reasons to Delay Entry of Partial Judgment at This Time. .................. 28

CONCLUSION ................................................................................................................. 31

CERTIFICATE OF SERVICE ........................................................................................ 33

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

\* *Air Line Pilots Ass'n, Int'l v. UAL Corp.,*
   897 F.2d 1394 (7th Cir. 1990) ...............................................................6, 7, 9, 11

*Ala. Power Co. v. EPA,*
   40 F.3d 450 (D.C. Cir. 1994) ...........................................................................16, 17

*Alaska v. U.S. Dep't of Agriculture,*
   772 F.3d 899 (D.C. Cir. 2014) ...............................................................................18

*Am. Bar Ass'n v. FTC,*
   636 F.3d 641 (D.C. Cir. 2011) ...............................................................................13

*Am. Forest Res. Council v. Ashe,*
   301 F.R.D. 14 (D.D.C. 2014) .............................................................................26, 27

*Am. Hosp. Ass'n v. Becerra,*
   No. CV 18-2084, 2022 WL 4534617 (D.D.C. Sept. 28, 2022) ................................2

\* *Apprio, Inc. v. Zaccari,*
   No. CV 18-2180, 2021 WL 5799380 (D.D.C. Dec. 7, 2021) .................................22

\* *Attias v. CareFirst, Inc.,*
   969 F.3d 412 (D.C. Cir. 2020) ...................................................................20, 21, 29

*Baystate Med. Ctr. v. Leavitt,*
   587 F. Supp. 2d 44 (D.D.C. 2008) ........................................................................22

*Ben-Rafael v. Islamic Republic of Iran,*
   718 F. Supp. 2d 25 (D.D.C. 2010) ........................................................................22

\* *Bldg. Indus. Ass'n of Superior Calif. v. Babbitt,*
   161 F.3d 740 (D.C. Cir. 1998) ...................................................................20, 23, 28

*Brooks v. Dist. Hosp. Partners, L.P.,*
   606 F.3d 800 (D.C. Cir. 2010) ...............................................................................27

*Budinich v. Becton Dickinson & Co.,*
   486 U.S. 196 (1988) ...............................................................................................11

*Capital Transit Co. v. District of Columbia,*
   225 F.2d 38 (D.C. Cir. 1955) .................................................................................27

\* *Celtronix Telemetry, Inc. v. FCC,*
   272 F.3d 585 (D.C. Cir. 2001) .......................................................................*passim*

*Cincinnati Ins. Co. v. All Plumbing, Inc.*,
    812 F.3d 153 (D.C. Cir. 2016) ................................................................20, 29

\*   *Citizens Alert Regarding Env't v. EPA*,
    102 F. App'x 167 (D.C. Cir. 2004) ....................................................................18

*City of Hous. v. HUD*,
    24 F.3d 1421 (D.C. Cir. 1994) ..........................................................................11

*Clarke v. United States*,
    915 F.2d 699 (D.C. Cir. 1990) ..........................................................................15

*Coal River Mountain Watch v. Jewell*,
    No. 08-CV-02212, 2014 WL 12884029 (D.D.C. July 9, 2014) ......................8, 9

*Columbian Rope Co. v. West*,
    142 F.3d 1313 (D.C. Cir. 1998) ........................................................................16

\*   *Curtiss-Wright Corp. v. General Elec. Co.*,
    446 U.S. 1 (1980) ..........................................................................1, 15, 20, 28

\*   *In re Domestic Airline Travel Antitrust Litig.*,
    3 F.4th 457 (D.C. Cir. 2021) .............................................................................20

\*   *Forest Guardians v. Johanns*,
    450 F.3d 455 (9th Cir. 2006) ............................................................................10

\*   *Gerlich v. U.S. Dep't of Justice*,
    No. 08-1134, 2009 WL 10697582 (D.D.C. Dec. 4, 2009) .................................25

*Hewitt v. Helms*,
    482 U.S. 755 (1987) .........................................................................................11

*Lewis v. Becerra*,
    No. CV 18-2929, 2023 WL 3884595 (D.D.C. June 8, 2023) .......................4, 5, 13

*Lewis v. Cont'l Bank Corp.*,
    494 U.S. 472 (1990) .........................................................................................15

*Louie v. Dickson*,
    964 F.3d 50 (D.C. Cir. 2020) ...........................................................................15

*Melinta Therapeutics, LLC v. FDA*,
    No. 22-5288, 2022 WL 19723218 (D.C. Cir. Dec. 1, 2022) ...............................2

*Motor & Equip. Mfrs. Ass'n v. Nichols*,
    142 F.3d 449 (D.C. Cir. 1998) ...........................................................................3

*Nat. Res. Def. Council v. EPA*,
    489 F.3d 1250 (D.C. Cir. 2007) ...................................................................................17

*NBC-USA Hous., Inc., Twenty-Six v. Donovan*,
    674 F.3d 869 (D.C. Cir. 2012) ................................................................................10, 11

*Novella v. Winchester Cnty.*,
    661 F.3d 128 (2d Cir. 2011) ..............................................................................7, 8, 30

*In re Papst Licensing GmbH & Co. KG Litig.*,
    987 F. Supp. 2d 58 (D.D.C. 2013) ..........................................................................27, 31

*Petties v. District of Columbia*,
    227 F.3d 469 (D.C. Cir. 2000) .....................................................................................27

*Rhodes v. Stewart*,
    488 U.S. 1 (1988) .................................................................................................9, 10

*San Luis & Delta-Mendota Water Auth. v. Salazar*,
    No. 1:09-CV-407 OWW, 2009 WL 4884228 (E.D. Cal. Dec. 10, 2009) ..............................22

*Sandpiper Residents Ass'n v. HUD*,
    No. CV 20-1783, 2022 WL 1604717 (D.D.C. May 21, 2022) ..............................................3

*Seed Co. v. Westerman*,
    No. 08-355, 2019 WL 3222412 (D.D.C. July 17, 2019) ....................................................30

*Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Sci. & Com. Sys. Corp.*,
    249 F. Supp. 3d 130 (D.D.C. 2017) .............................................................................28

*Spirit of the Sage Council v. Norton*,
    411 F.3d 225 (D.C. Cir. 2005) .....................................................................................13

*  *Tolson v. United States*,
    732 F.2d 998 (D.C. Cir. 1984) ...............................................................................22, 27

*Tripoli Rocketry Ass'n, Inc. v. ATF*,
    No. 00-273, slip. op. (D.D.C. Dec. 21, 2004) ................................................................29

*Unified Sch. Dist. No. 259 v. Disability Rts. Ctr.*,
    491 F.3d 1143 (10th Cir. 2007) ...................................................................................13

*United States v. All Assets Held in Acct. No. XXXXXXXX*,
    314 F.R.D. 12 (D.D.C. 2015) .......................................................................................27

*  *Univ. of Colo. Health at Mem'l Hosp. v. Becerra*,
    No. CV 14-1220, 2023 WL 4999323 (D.D.C. Aug. 4, 2023) .........................................*passim*

\*      *Williams v. Walsh*,
          648 F. Supp. 3d 70 (D.D.C. 2022) ........................................................................12

*WorldCom, Inc. v. FCC*,
          246 F.3d 690 (D.C. Cir. 2001) ..............................................................................3

**Statutes**

28 U.S.C. § 1291 .................................................................................................................20

28 U.S.C. § 1292(b) ..............................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 54(b) ..........................................................................................................20

Order, *Miccosukee Tribe Indians of Fla. v. EPA*, No. 1:22-CV-22459-KMM, ECF
          No. 50 (Mar. 18, 2024) .........................................................................................31

*Program Update*, Corps, https://www.saj.usace.army.mil/Missions/Regulatory
          (last visited Mar. 18, 2024) ..................................................................................14

## INTRODUCTION

Plaintiffs' claims arise from the U.S. Environmental Protection Agency's ("EPA") approval of a state 404 program that is less stringent than the Clean Water Act requires and was based on EPA's unlawful reliance on actions by the U.S. Fish and Wildlife Service ("USFWS") and U.S. Army Corps of Engineers ("Corps") that violate the Endangered Species Act ("ESA") and Rivers and Harbors Act ("RHA").  On February 15, 2024, the Court ruled in Plaintiffs' favor on their ESA claims, Dkt. 163, and on March 11, 2024, Florida filed the present motion for expedited entry of final judgment on all of Plaintiffs' claims, Dkt. 171.

Florida's motion is due to be denied because Plaintiffs' remaining claims are not moot and should be decided on the merits, particularly in light of the State's intention to appeal the Court's ruling on the ESA claims.  *Celtronix Telemetry, Inc. v. FCC*, 272 F.3d 585, 587 (D.C. Cir. 2001) (court retains jurisdiction over remaining claims where higher-level review might remove the first basis on which court granted relief).  Judicial economy would be served by deciding those claims now, rather than awaiting an appellate decision on the ESA claims, given that the remaining claims have been fully briefed and argued on summary judgment.  Regulatory certainty would also be served by deciding all legal claims now because EPA's approval of Florida's program remains subject to challenge (and vacatur again) on other grounds.  The Federal Defendants' argument that mootness depends on whether the Court grants a stay of vacatur, Dkt. 175 at 1, is untenable since a stay could be denied now and granted later (or vice versa), implausibly mooting and then un-mooting Plaintiffs' remaining claims.

Florida's alternate request for partial final judgment should be denied because the adjudicated claims are not "separable" from the remaining claims.  As Florida previously acknowledged, conclusion of this litigation as to all claims would also allow the parties to "determine next steps in totality, not piecemeal."  *See* Dkt. 160 at 2; *see also Curtiss-Wright*

1

*Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980) (describing "historic federal policy against piecemeal appeals"). Piecemeal appellate review would also threaten repeated disruptions with the potential of flip flopping 404 jurisdiction between the Corps and Florida, an outcome that would not serve regulatory certainty. *See, e.g.*, Dkt. 177 at 2 (Developer emphasizing desire for regulatory certainty); *see also* Dkt. 175 at 2 n.1 (Corps is now processing permits that would have been processed by Florida). Florida's desire to move an appeal quickly is "insufficient to meet the high standard for certification" of a partial final judgment. *Univ. of Colo. Health at Mem'l Hosp. v. Becerra*, No. CV 14-1220, 2023 WL 4999323, at *6 (D.D.C. Aug. 4, 2023).[1]

The Developers who intervened to defend against a preliminary injunction support Florida's motion, claiming delay and regulatory uncertainty. Dkts. 176, 177. But these interests are best served by resolving all claims now followed by an orderly, complete appeal.

Plaintiffs therefore respectfully request that the Court deny Florida's motion and proceed to rule on the remaining claims. Plaintiffs have no objection to Florida's request that resolution of those claims be expedited, so long as the claims are decided on the merits, as justice requires.[2]

---

[1] Florida is wrong to claim that the Court could, in the alternative, make its February 15, 2024, ruling immediately appealable under 28 U.S.C. § 1292(b). Dkt. 171 at 4 n.3. The Court's ruling did not make the findings required under that provision to certify the ruling for interlocutory appeal, nor would the Court's order have met the statutory criteria.

[2] Because the Court ordered vacatur and not injunctive relief, Florida's reservation of the "right" to seek appeal pursuant to Section 1292(a), Dkt. 171 at 7 n.5, is unavailing. Vacatur of agency action is not the equivalent of an injunction, which is only permitted in challenges to agency actions when plaintiffs "seek 'some agency action beyond that which was vacated.'" *Am. Hosp. Ass'n v. Becerra*, No. CV 18-2084, 2022 WL 4534617, at *4 (D.D.C. Sept. 28, 2022). Collier's argument that vacatur here is "functionally" equivalent to an injunction, Dkt. 177 at 3, fails. *See Melinta Therapeutics, LLC v. FDA*, No. 22-5288, 2022 WL 19723218, at *1 (D.C. Cir. Dec. 1, 2022) (Court of Appeals lacked Section 1292(a) jurisdiction to consider immediate appeal of district court order granting preliminary injunction where district court vacated agency action and injunction served no purpose beyond vacatur itself).

## ARGUMENT

### I.    Plaintiffs' Remaining Claims Preclude Entry of Final Judgment.

Although Florida styles the first portion of its motion as seeking entry of final judgment pursuant to Rule 58(d), Dkt. 171 at 8, its request is premised on the erroneous theory that Plaintiffs' remaining claims are moot.  *See Celtronix*, 272 F.3d at 587–88 (granting relief on one claim does not moot remaining claims).[3]  The "'heavy' burden" of establishing mootness rests on the party raising the defense.  *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998).  Florida has not met that burden.

### A.    Plaintiffs' Remaining Claims Are Not Moot.

The Court continues to have jurisdiction over Plaintiffs' remaining claims even though it ruled in Plaintiffs' favor on their ESA claims and vacated EPA's approval of the state 404 program on that basis.  *See Celtronix*, 272 F.3d at 587–88.  As this Circuit has noted:

> Compare a standard two-issue case: If a plaintiff presents two or more alternative grounds as routes to its hoped-for ultimate victory, a court does not lose jurisdiction over the second claim once it has ruled in the plaintiff's favor on the first claim; victory on the first claim doesn't moot the second.

*Id.* at 587.  The court's continuing jurisdiction "is based on a practical consideration" of the judicial economy that is achieved when a court disposes of remaining claims, since "higher-level review might remove the first basis for the outcome."  *Id.  Accord WorldCom, Inc. v. FCC*, 246 F.3d 690, 695 (D.C. Cir. 2001) (resolution of one issue does not moot second issue).

Florida argues that because the Court has granted Plaintiffs' hoped-for ultimate victory based on the Federal Defendants' violations of the ESA, the Court has lost jurisdiction over Plaintiffs' remaining claims under the Clean Water Act and Rivers and Harbors Act.  Dkt. 171 at

---

[3] A motion to dismiss claims as moot is properly brought under Rule 12(b)(1).  *Sandpiper Residents Ass'n v. HUD*, No. CV 20-1783, 2022 WL 1604717, at *6 (D.D.C. May 21, 2022) (Moss, J.), *reconsideration denied*, No. CV 20-1783, 2022 WL 16744906 (D.D.C. Nov. 4, 2022).

8–10.  But, since "higher-level review"—which Florida has clearly stated it will pursue—"might remove the first basis" for Plaintiffs' requested relief, the Court retains jurisdiction over Plaintiffs' remaining claims.  *Celtronix*, 272 F.3d at 587.  Plaintiffs therefore respectfully request that the Court deny Florida's implicit motion to dismiss as moot and deny Florida's motion for entry of final judgment as to all claims.

Florida's mischaracterization of various cases does not establish otherwise.  In *Lewis v. Becerra*, Dkt. 171 at 8–9, the plaintiffs challenged the denial of Medicare coverage for continuous glucose monitors ("CGMs") as well as the regulation defining covered durable medical equipment on which the Government relied to deny coverage.  *Lewis v. Becerra*, No. CV 18-2929, 2023 WL 3884595 (D.D.C. June 8, 2023), at *1–3.  The Government subsequently rescinded the challenged regulation, promulgated a new regulation classifying CGMs as durable medical equipment, issued a directive requiring that the new rule be applied retroactively, and directed payment of the plaintiffs' reimbursement claims.  *Id.* at *2–3.  At the Government's request, the court granted the plaintiffs' request for declaratory relief, holding that CGMs are durable medical equipment, and vacated the prior agency actions that had denied the plaintiffs coverage.  *Id.* at *4–6.  Grasping for an analogy with the facts of that case, Florida suggests that it was because of this vacatur that the court found the plaintiffs had been provided complete relief and therefore that their remaining claims were moot.  Dkt. 171 at 8–9.  But the language Florida attributes to the court's decision is from the Government's *argument*, not the court's ruling.  *Compare id.* at 8, *with Lewis v. Becerra*, 2023 WL 3884595, at *4.

Contrary to Florida's characterization, the court in *Lewis v. Becerra* ruled that the plaintiffs' remaining claims were moot because: (1) the court had granted the plaintiffs' request for declaratory relief holding that CGMs, including the specific CGMs used by the plaintiffs,

constituted durable medical equipment; (2) the Government had rescinded (and in fact superseded) the challenged regulation; and (3) the Government had provided coverage to the plaintiffs.  2023 WL 3884595, at *8.  Here, by contrast, the Court has not yet ruled on Plaintiffs' request for declaratory relief as to whether Florida's application to EPA was lawfully deemed "complete" when submitted (Claim 1); whether EPA violated the Clean Water Act and Administrative Procedure Act ("APA") by approving Florida's application, including by approving a program that lacks adequate enforcement authority, transfers authority to the State over non-assumable waters, and fails to ensure compliance with the 404(b)(1) Guidelines as to factual findings and avoiding jeopardy to ESA-listed species (Claim 2); and whether the Corps violated the Rivers and Harbors Act and APA when producing the retained waters list submitted with Florida's application (Claim 7).  Dkt. 77 at 56–57 (Am. Compl. Prayer for Relief (a), (b), (h)).  Plaintiffs' requests for relief also include vacatur of the EPA's completeness determination, vacatur of EPA's approval of Florida's program under the Clean Water Act, and vacatur of the Corps' retained waters list.  *Id.* (Am. Compl. Prayer for Relief (k), (l), (n)).

Also, unlike in *Lewis v. Becerra*, neither the Federal Defendants nor Florida have made concessions here (much less taken concrete action) that would obviate the need for judicial determinations on Plaintiffs' remaining claims.  To the contrary, Florida has specifically indicated that it will appeal the Court's ESA rulings.  Dkt. 171 at 3–4 & n.3, & 7 n.5.  And Florida has adhered to positions implicating Plaintiffs' remaining claims, including the position that even if the Court finds EPA's approval unlawful (as it has), Florida's program would be "deemed approved" by operation of law because more than 120 days have passed since EPA

deemed Florida's application complete.  Dkt. 102 at 45 n.25.[4]  *See also* Dkt. 127-1 at 6 (adhering to position on retained waters).

Florida's selective quotation of the Seventh Circuit's decision in *Air Line Pilots Association, International v. UAL Corporation*, Dkt. 171 at 8, is also unavailing.  Florida's description of that case omits key aspects of the court's decision (shown below in grey), which expresses skepticism as to the proposition quoted by Florida, and confirms that the Court retains jurisdiction to rule on Plaintiffs' remaining claims:

> This criterion might seem to imply that [W]hen a court decides that a challenged practice is unlawful on one ground, the question whether it is also unlawful on some other ground would generally be moot, because it can make little difference whether a practice is unlawful for one or for several reasons, provided only that it is indeed unlawful.  It is easy to imagine exceptions—for example, a case in which attorney's fees are available to the plaintiff only under an alternative ground.  But there might be a general rule that all but one of a set of alternative grounds of decision are moot.  Yet we observe that in a vast number of cases the court, having decided that the defendant's conduct is unlawful on ground A, goes on to decide that it is also unlawful on ground B.  Although the word "moot" is sometimes used to refer to an issue that need not be decided in light of the resolution in the same opinion of another issue, *e.g.*, *Bazemore v. Friday*, 478 U.S. 385, 387 n. 2, 106 S. Ct. 3000, 3002 n. 2, 92 L.Ed.2d 315 (1986) (per curiam), it has never been thought that a court that does decide it thereby violates Article III's implied prohibition against deciding moot cases.  *United States v. Leon*, 468 U.S. 897, 924–25, 104 S. Ct. 3405, 3421, 82 L.Ed.2d 677 (1984); 13A Wright, Miller & Cooper, Federal Practice and Procedure § 3533, at p. 214 (2d ed. 1984).

*Compare* Dkt. 171 at 8, *with Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 897 F.2d 1394, 1397 (7th Cir. 1990).  The Seventh Circuit went on to say that "[t]he conceptual reason" that Article III does not bar a court from deciding a case on multiple grounds is that "it is cases rather than reasons that become moot."  *Id.*  "Whether a court gives one or ten grounds for its result is not a

---

[4] The Court previously rejected Florida's "deemed approved" argument on the ground that Congress did not intend "such a drastic result," but noted that the argument would only be available to Florida in the first place if Claim 1, which remains pending, was resolved against Plaintiffs.  Dkt. 73 at 22–24 (noting that whether the 120-day clock was even lawfully triggered is a "hotly contested question" raised by Plaintiffs' completeness claim).

question to which Article III prescribes an answer." *Id.* The "practical reason" for this approach "is that the alternative grounds are ripe for decision and deciding them may help a higher or a subsequent court." *Id.* This is entirely consistent with this Circuit's observations in *Celtronix Telemetry*, which in fact cited *Air Line Pilots* for the same proposition. 272 F.3d at 587.

The circumstances presented in *Novella v. Westchester County*, Dkt. 171 at 8, also do not support Florida's argument. In that case, a disabled carpenter challenged the amount of his pension and sought class certification for similarly affected individuals. *Novella v. Winchester Cnty.*, 661 F.3d 128, 132–35 (2d Cir. 2011). The plaintiff alleged that the amount of his pension was impermissibly based on two different rates affecting different periods of service, contrary to the terms of the pension plan applicable to disability pensions. *Id.* at 135. The plaintiff presented additional claims "in the alternative" that were "premised on the assumption" that the pension plan authorized the two-rate calculation but that the pension amounts violated other provisions of the plan (relating to "accrued benefits"). *Id.* at 136.

The district court found that the pension plan did not authorize the two-rate calculation for disability pensions, granted summary judgment to the plaintiff on that claim, and then denied his "alternative" claims as moot. *Id.* at 135–37. The court certified a class on behalf of those receiving disability pensions but denied broader class certification based on the "accrued benefit" claims. *Id.* at 149. The plaintiff's appeal apparently challenged only the denial of the broader class certification. *Id.* at 139. On appeal, the circuit court acknowledged that the plaintiff's alternative claims were not moot in the "technical sense," but were claims that the district court declined to decide in an exercise of discretion after granting the plaintiff complete relief on his primary claim. *Id.* at 149. The court then affirmed the denial of certification to the broader

"accrued benefits" class because, having had those claims dismissed, the plaintiff was no longer an appropriate representative of that class. *Id.* at 149–50.

Here, Plaintiffs did not present their claims in the alternative.  Plaintiffs do not concede that any of their claims are moot.  And representation of a class is not at issue.  Moreover, the interests of justice, judicial efficiency, and regulatory certainty would not be served by declining to rule on the independent claims Plaintiffs have asserted for relief.  To the contrary, piecemeal litigation would be inefficient, disruptive, and prejudicial to Plaintiffs' rights.  For example, if Florida were to succeed on appeal in having vacatur reversed on the basis of Plaintiffs' ESA claims, this Court could reinstate vacatur on the basis of Plaintiffs' Clean Water Act claims, and Florida would presumably appeal again.  In this scenario, 404 authority would flip from the Corps (where it is now) to the State and back to the Corps (and possibly back to the State) over the next few years, which would be inefficient and creates confusion.  On the other hand, the relief Plaintiffs seek—for all claims to be adjudicated before the district court and for the Court of Appeals to review the matter once—would avoid this flip flopping.  Section 404 authority would remain with the Corps until all issues with Florida's program are resolved.  Should the Plaintiffs prevail, there would be no further disruption.  Should the State prevail, it would once again administer the program no longer under the cloud of legal challenge.[5]

Florida and the Federal Defendants cite the unreported decision in *Coal River Mountain Watch v. Jewell*, No. 08-CV-02212, 2014 WL 12884029 (D.D.C. July 9, 2014), for the

_____

[5] For these reasons, Collier's claim that regulatory certainty would be served by an immediate appealable order, Dkt. 177 at 2, does not withstand scrutiny.  An appealable order that addresses only Plaintiffs' ESA claims would prolong regulatory uncertainty because even if the Court's ruling were reversed, litigation would resume on Plaintiffs' Clean Water Act and Rivers and Harbors Act claims and could once again result in vacatur.  The best path to promote regulatory certainty is therefore a decision on Plaintiffs' remaining claims, which would allow the parties to proceed on appeal and decide other next steps "in totality" rather than piecemeal.

proposition that vacatur of a rule on one basis renders an opinion that the vacated rule violated other statutes "necessarily" advisory as there is no remaining case or controversy "for remaining claims to stand on." Dkt. 171 at 9. *Accord* Dkt. 175 at 3. But both Florida and the Federal Defendants neglect to mention that in that case, the Government admitted error, sought vacatur, and agreed to be bound by the court's ruling. *Cf. Coal River*, 2014 WL 12884029, at *2 n.1. Here, by contrast, Florida and the Federal Defendants have denied error and opposed vacatur. Florida has also made clear that it intends to appeal the Court's judgment.[6] There is therefore a live case and controversy on which Plaintiffs' remaining claims stand.

Again citing *Air Line Pilots*, Florida argues that "the test for mootness" turns on whether the relief sought would "make a difference to the legal interests of the parties." Dkt. 171 at 9. Here, there is no question that if granted, the relief sought would affect Plaintiffs' legal interests. Florida has demonstrated its intention to vigorously appeal the Court's ESA ruling and vacatur of the State program. Plaintiffs therefore retain a legal interest in the resolution of their additional claims that challenge EPA's approval of Florida's 404 program and that also support vacatur of Florida's 404 program. As the Seventh Circuit observed in *Air Line Pilots*, Article III does not preclude a court from resolving additional claims because "it is cases rather than reasons that become moot." 897 F.2d at 1397. And, as a practical matter, deciding the remaining claims "may help a higher or a subsequent court." *Id.*

Florida's reliance on *Rhodes v. Stewart*, Dkt. 171 at 9, is particularly peculiar because in that case, the court found that a favorable judgment ordering modification of prison policies was moot where one of the plaintiffs had died and the other was released from prison before the

---

[6] That both Florida and the Federal Defendants are complying with the Court's ruling does not mean that they have admitted error or agreed to be bound by it.

district court entered its order.[7]  *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988).  Here, the relief granted

continues to benefit live Plaintiffs (and their members), and the opposing parties' conduct

(including Florida's commitment to appealing) continues to threaten their rights and interests.

**B.     Plaintiffs' Requests for Declaratory Relief Also Preclude Entry of Final Judgment.**

Additionally, Plaintiffs' remaining requests for relief (including for declaratory

judgment) also preclude entry of final judgment.  Declaratory relief on Plaintiffs' remaining

claims would "ensure that similar violations would not occur in the future."  *Forest Guardians v.

Johanns*, 450 F.3d 455, 462 (9th Cir. 2006) (declaratory judgment finding Forest Service's

failure to monitor utilization levels of cattle grazing in forest violated the ESA and triggered re-

initiation of consultation "provide[d] effective relief by governing [the agency's] actions for the

remaining permit term and by prohibiting it from continuing to violate the law").  Florida and the

Federal Defendants' arguments to the contrary, Dkt. 171 at 11; Dkt. 175 at 3, again rest on the

erroneous premise that Plaintiffs' remaining claims are moot.  And, again, the cases on which

Florida and the Federal Defendants rely do not support the theory.

In *NBC-USA Housing, Inc., Twenty-Six v. Donovan*, Dkt. 171 at 11, the plaintiff sought

to enjoin the Government's foreclosure sale of an apartment complex.  *NBC-USA Hous., Inc.,

Twenty-Six v. Donovan*, 674 F.3d 869, 872 (D.C. Cir. 2012).  After the district court denied

relief, the plaintiff appealed without seeking a stay of the district court's ruling or an injunction

pending appeal.  *Id.* at 872.  The Government then proceeded to sell the apartment complex to a

---

[7] The real issue in *Rhodes* was whether a declaratory judgment constituted relief for purposes of attorneys' fees, a question the Court found turned on whether that declaratory judgment "affects the behavior of the defendant toward the plaintiff."  488 U.S. at 4.  Since any change in the defendant prison's behavior could not benefit either the deceased or released plaintiff, the Court found that the declaratory judgment in plaintiffs' favor did not constitute relief to a prevailing party for purposes of qualifying for an award of attorneys' fees.  *Id.*

third party that was not before the court. *Id.* It was on the basis of this intervening event—the sale of the property—that the Court of Appeals found the action moot. *Id.* at 873. The court held that because the sale had occurred, declaratory relief could no longer affect the behavior of the defendant toward the plaintiff. *Id.* Here, there has been no intervening event to render declaratory relief meaningless. Moreover, the declaratory (and other relief) Plaintiffs seek on their remaining claims can affect the Federal Defendants' behavior toward Plaintiffs, including by determining whether other aspects of Florida's program (its enforcement and permit review schemes and the scope of assumable waters) are lawful should the Court's ESA rulings and/or vacatur decision be reversed on appeal.[8]

In *City of Houston v. Department of Housing & Urban Development*, Dkt. 171 at 11, the court considered the availability of declaratory relief to challenge a disputed policy *after determining the action was otherwise moot*. *City of Houston v. HUD*, 24 F.3d 1421, 1429 (D.C. Cir. 1994). Again, since Plaintiffs' remaining claims are not moot, the Court need not consider this question. But even if it did, the principle articulated in *City of Houston* also supports

---

[8] In *Hewitt v. Helms*, Dkt. 171 at 11, the Supreme Court held that a court's legal conclusion in favor of the plaintiff that does not alter the defendants' conduct toward the plaintiff does not constitute a declaratory judgment so as to render the plaintiff a "prevailing party" for purposes of an attorneys' fee award. *Hewitt v. Helms*, 482 U.S. 755, 761 (1987). The Court did not consider the issue Florida is raising, which is whether the Court should proceed to judgment on Plaintiffs' remaining claims.

Florida's reliance on *Budinich v. Becton Dickinson & Co.*, Dkt. 171 at 11 n.7, is similarly misplaced as that case addressed whether litigants should have to wait for a determination on attorneys' fees before final decisions on the merits are treated as final for purposes of appeal. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988). The case did not hold, as Florida erroneously suggests, that the Court should enter final judgment on unresolved claims simply because attorneys' fees litigation need not delay entry of final judgment (when entry of final judgment is otherwise appropriate). *See also Air Line Pilots*, 897 F.2d at 1397 (observing that one situation where remaining claims should not be deemed moot after granting relief could include "a case in which attorney's fees are available to the plaintiff only under an alternative ground").

Plaintiffs' position.  Plaintiffs' entire case—including Plaintiffs' remaining claims—is a facial challenge (in other words, a challenge to disputed policies).  Plaintiffs' remaining claims, and the associated requests for relief, seek to forbid the Federal Defendants from imposing these disputed policies in the future.  As demonstrated in the briefing on Plaintiffs' Motion for Summary Judgment, Dkts. 98, 104, Plaintiffs have standing to bring their remaining claims and their requests for declaratory relief are ripe.

### C.  Because Plaintiffs' Claims Are Not Moot, No Mootness Exception Need Apply.

As shown above, Florida has failed to show that Plaintiffs' claims are moot, in the "technical sense," and failed to provide any persuasive reasons why the Court should decline to rule on the remaining claims, as failing to do so would be inefficient, disruptive, and prejudicial. Because Florida has not met its initial "heavy" burden, the Court need not consider whether any exception to mootness would apply.  *Cf.* Dkt. 171 at 10–11.

But even if Florida had met its initial burden (which it has not), Plaintiffs' remaining claims would qualify for the "capable of repetition yet evading judicial review" exception to mootness.  *Contra id.* at 10.  For the exception to apply, Plaintiffs need only show that the controversy is "*capable* of repetition," and not that its occurrence is "more probable than not." *Williams v. Walsh*, 648 F. Supp. 3d 70, 86 (D.D.C. 2022).[9]  As Florida and the Federal Defendants acknowledge, the State 404 program "could be resurrected from vacatur" on appeal. Dkt. 171 at 10.  *Accord* Dkt. 175 at 4.  An appellate reversal of vacatur would reinstate the

---

[9] Whether this mootness exception would apply were the Federal Defendants and Florida only to make changes to the State program on remand, Dkt. 171 at 10, is less clear since that may depend on whether EPA would be required to take additional action (i.e., approve a new program) which would start a new clock on a statute of limitations.  Regardless, since reversal on appeal could reinstate the Florida program after the statute of limitations has run, and without a determination on Plaintiffs' remaining claims, the violations that are the subject of those claims are capable of repetition and evading judicial review.

Florida 404 program without Plaintiffs' remaining claims on the unlawfulness of that program having been resolved.

This is more than a "theoretical possibility" that "peculiar circumstances" might recur, because it is the relief that Florida seeks. *Cf. Spirit of the Sage Council v. Norton*, 411 F.3d 225, 230 (D.C. Cir. 2005) (exception to mootness not met where probability of peculiar circumstances recurring was too low to decide issues where no relief can be granted); *Unified Sch. Dist. No. 259 v. Disability Rts. Ctr.*, 491 F.3d 1143, 1150 (10th Cir. 2007) (finding action moot based on withdrawal of challenged records request where likelihood that violation would recur was only "theoretical" and would likely stem, if at all, from different facts and context); Dkt. 175 at 3.  In fact, if the program is reinstated, the remaining violations challenged by the Plaintiffs would not have to "recur" because they would simply resume.  The Federal Defendants' argument that the violations would not evade review because of their duration, Dkt. 175 at 3, fails given that dismissal would at a minimum delay resolution of those claims and, given the statute of limitations, could result in complete evasion of review.

Plaintiffs agree with Florida and the Federal Defendants that the "voluntary cessation" exception to the mootness doctrine does not apply, Dkt. 171 at 10–11; Dkt. 175 at 3, but only because neither Florida nor the Federal Defendants have voluntarily ceased any of the unlawful conduct underlying Plaintiffs' claims.[10]  *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011) (voluntary cessation not at "play" where action moot due to legislative change, not agency

---

[10] For the same reasons Plaintiffs have shown that their remaining claims are not moot, Plaintiffs do not agree with Florida's contention that the "voluntary cessation" exception would not apply because they have received "complete relief."  Dkt. 171 at 11.  The Court in *Lewis v. Becerra* did not hold otherwise.  2023 WL 3884595, at *13 (finding relief prong of "voluntary cessation" exception was not met where defendants' actions had "completely and irrevocably eradicated" effects of alleged violation).

action).  Plaintiffs reserve the right to brief whether the voluntary cessation exception applies

should the opposing parties take voluntary action regarding Plaintiffs' claims in the future.

### D.    Plaintiffs' Claims Are Live Regardless of Whether the Court Grants a Limited Stay.

Plaintiffs agree with Florida that any ruling on Florida's stay request does not affect the

issue of whether final judgment is appropriate before the Court has ruled on the merits of all of

Plaintiffs' claims.  *See* Dkt. 171 at 10 n.6.[11]  The Federal Defendants cite no authority that

supports their untenable theory to the contrary.  *See* Dkt. 175 at 1.

According to the Federal Defendants' theory, if the Court denies the limited stay, then the

Court should dismiss Plaintiffs' remaining claims as moot and enter final judgment because

Plaintiffs have been afforded complete relief.  But what, then, if the Court of Appeals imposes a

stay pending appeal?  Are Plaintiffs' dismissed-as-moot claims then revived?  And, if so, would

Plaintiffs have to re-file and initiate new litigation based on the same claims?  Or, what if the

Court grants the stay but the Court of Appeals lifts it on appeal?  Are Plaintiffs' claims then

rendered moot on appeal?  The fluidity of this situation (which nobody denies)[12] demonstrates

---

[11] Florida and the Developers lean on Plaintiffs' earlier descriptions of the New Jersey program to urge the Court to return jurisdiction over 404 permitting to the State and to enter final judgment, arguing that the New Jersey process is "akin" to the process in Florida.  Dkt. 177 at 1 n.1. *See also* Dkt. 171 at 2 & n.2; Dkt. 176 at 1, 5.  But Plaintiffs have explained in detail why that is not at all the case.  *See* Dkt. 169 at 12–15.  And critically, the Federal Defendants' ESA violations as to Florida's program are not affected by how the program in New Jersey (or Michigan, for that matter), which were never challenged in court, may have been designed. Florida has also acknowledged that the error was not brought to Plaintiffs' (or the Court's) attention by any party until after the Court's ruling, Dkt. 170 at 3, which came years into this litigation after extensive summary judgment briefing and oral argument.

[12] *See, e.g.*, *State 404 Program Update*, Corps, https://www.saj.usace.army.mil/Missions/Regulatory (last visited Mar. 21, 2024) ("The [Corps] recognizes that either the District Court or an Appellate Court may issue a full or partial stay of the February 15th order at some point.").

precisely why Plaintiffs' claims are, in fact, not moot, and why, for the sake of judicial economy and efficiency, the Court should reject this novel approach.

The Federal Defendants rely on cases that merely re-state general principles relating to mootness and that arise from situations that are clearly inapposite, *id.* at 2, where Congress or the agency took conclusive action mooting the plaintiffs' claims.  *See, e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478–79 (1990) (parties must retain interest in litigation; finding claim mooted by legislative amendment of applicable statute); *Clarke v. United States*, 915 F.2d 699, 700–01 (D.C. Cir. 1990) (claim may be mooted by subsequent events; finding challenge to statutory funding condition mooted by expiration of statute); *Louie v. Dickson*, 964 F.3d 50, 54–55 (D.C. Cir. 2020) (mootness determined claim by claim; finding claim moot where *agency* withdrew challenged action).

The Federal Defendants' argument that the Court "cannot vacate EPA's decision twice," Dkt. 175 at 3, ignores that the Court in fact could find other bases for vacatur, should the Court of Appeals reverse and remand for consideration of Plaintiffs' remaining claims, which also seek vacatur as one (but not the only) form of relief.  The opposing parties' theory would mean that any time a district court determines relief is warranted on the basis of one claim it would immediately lose jurisdiction to decide the remaining claims—even in the same decision.  There is no legal support for this proposition, which would throw the adjudication of cases alleging multiple bases for relief into disarray by allowing a court to decide only one claim at a time, await a decision on appeal on that claim, and if reversed on the first claim, then return to decide the next claim.  This sort of sequential litigation would not only be incredibly inefficient, time-consuming, and costly, it also conflicts with federal policy.  *See Curtiss-Wright*, 446 U.S. at 8.

In *Columbian Rope Company v. West*, Dkt. 175 at 3, for example, the Court of Appeals held that a challenge to the Small Business Administration's determination that a rival bidder was eligible for a particular government contract was rendered moot on appeal after all work on the contract was completed and all options to extend the contract had expired. *Columbian Rope Co. v. West*, 142 F.3d 1313, 1316–18 (D.C. Cir. 1998). In other words, there was nothing more that *any* court could do with regard to that contract, because the contract was completed. That is not the case here, where Florida remains intent on seeking review of the Court's ruling, which (everyone agrees) could revive Florida's program. In *Columbia Rope Company*, the Court of Appeals noted in a footnote that the plaintiff's request for declaratory relief as to the competitor's eligibility for future contracts could not save the action from mootness. *Id.* at 1317 n.3. But that is not the case here because this action is not moot.

The Federal Defendants also cite two circuit court decisions, Dkt. 175 at 3, where it was the circuit court (not a district court) on a petition for review (not a complaint) that vacated the rule in question and then declined to consider other issues that were in fact moot. Those decisions are completely distinguishable. In *Alabama Power Company v. EPA*, 40 F.3d 450, 456 (D.C. Cir. 1994), coal interests challenged EPA's rule implementing a 1990 amendment to the Clean Air Act that would limit emissions of nitrogen oxide particles. The petitioners alleged that EPA had exceeded its authority in promulgating the rule and that the agency's delay in promulgating the rule should postpone the companies' obligations past the January 1, 1995, statutory deadline. *Id.* at 451. On November 29, 1994 (just a month before the statutory compliance deadline), the Court of Appeals granted the petition, vacated the rule, and deemed the compliance deadline claim moot. *Id.* at 456. In so doing, the Court of Appeals observed that its vacatur of the rule suspended any compliance obligation "pending further rulemaking" and

recognized that any new rule would "undoubtedly take effect after the statutory deadline of January 1, 1995." *Id.* There is no similar deadline that renders Plaintiffs' claims here moot.

In *Natural Resources Defense Council v. EPA*, 489 F.3d 1250, 1261 (D.C. Cir. 2007), the Court of Appeals vacated an EPA rule defining "solid waste incineration unit" as well as the "Boilers Rule" that relied on that definition. Recognizing that the Boilers Rule would require significant revision as a result of these rulings, the Court of Appeals dismissed the petitioners' other challenges to the Boilers Rule as both "premature" and "moot." *Id.* But in that case, dismissal was reasonable and efficient because the new rule would likely look very different from the challenged rule. *Id.* In this case, nothing in the Court's vacatur of Florida's 404 program on the basis of Plaintiffs' ESA claims requires the opposing parties to "re-write" the portions of Florida's program that are the subject of Plaintiffs' remaining claims, aside from a portion of Claim 2. In other words, although EPA's approval of Florida's 404 program has been vacated, none of the other components that Plaintiffs challenge have been invalidated. Thus, if the Court of Appeals were to reverse, Florida's program would be revived intact and without the Court having addressed the merits of Plaintiffs' remaining claims. This sort of dismissal would be unreasonable and inefficient because the lawfulness of the remainder of the program is almost entirely intact, the controversy is on-going, the claims have been fully briefed and argued, and a reversal by the Court of Appeals would bring Plaintiffs back to square one, but potentially years from now, having to re-litigate the claims at great expense of time and other resources.

Nor have the Federal Defendants established that Plaintiffs would not be prejudiced by a dismissal without prejudice to renew their claims. Dkt. 175 at 3–4. To the contrary, dismissal of Plaintiffs' remaining claims as "moot" could unjustly deprive them of the ability to ever litigate those claims given the length of time it may take for all appeals to be exhausted. Were Florida to

secure reversal of the Court's ESA ruling in the coming years, Plaintiffs' ability to bring a new action to challenge EPA's approval of Florida's program (and the underlying agency actions) as violating the Clean Water Act could very well be deemed barred by the statute of limitations. *Citizens Alert Regarding Env't v. EPA*, 102 F. App'x 167, 168–69 (D.C. Cir. 2004) (facial challenge to EPA's approval of state environmental review process was time-barred by six-year statute of limitations for actions against the United States).[13]  It would be manifestly unjust for Plaintiffs to lose the right to prosecute what are now timely filed claims based on the theory that those claims should be denied as "moot" so that Florida can pursue a premature appeal while the clock runs on the statute of limitations.

The case on which the Federal Defendants rely to claim the contrary, *Alaska v. U.S. Department of Agriculture*, Dkt. 175 at 4, is inapposite.  In *Alaska*, the Forest Service argued that the State's 2011 challenge to a 2001 rule that the agency had repealed in 2005, but that had been reinstated by a district court in 2006, was barred by the six-year statute of limitations.  772 F.3d 899, 900 (D.C. Cir. 2014).  Under those unusual circumstances, the Court of Appeals held that Alaska's challenge to the rule accrued not when it was first issued, but when it was resurrected by the district court.  In so ruling, the Court of Appeals specifically observed that the "case has an unusual procedural background" and that the court's "holding is accordingly narrow."  *Id.*

Here, there has been no challenge based on the statute of limitations because the Plaintiffs timely filed their case in 2021 challenging agency actions from 2020.  But in 2024, Florida and the Federal Defendants are asking to separate Plaintiffs' ESA claims for purposes of

---

[13] In raising this issue, Plaintiffs do not concede that a later challenge would be time-barred but acknowledge that there is Circuit case law suggesting that it could be so deemed by the Court.

appeal.  The Federal Defendants claim that these dismissed-without-prejudice as moot[14] claims would not be barred by the six-year statute of limitations, Dkt. 175 at 3–4, but that is far from clear.  It is true that if the Court of Appeals hears only Plaintiffs' ESA claims it could revive *EPA's approval of the state program*.  But the Federal Defendants have cited no authority to show that such a decision could also revive Plaintiffs' *remaining claims* if they are dismissed.

It would be manifestly unjust to impose this risk of preclusion on the Plaintiffs.  And contrary to the Federal Defendants' argument, *id.* at 3, Plaintiffs would be prejudiced even if the claims were dismissed without prejudice, such that Plaintiffs would have to re-file should the same program be reinstated.  Dismissal would create judicial inefficiency and impose undue additional burden and expense on the Plaintiffs by requiring them to re-file claims and re-litigate matters that have already been fully briefed and argued on summary judgment.

## II.    The Court Should Not Issue Partial Final Judgment on Plaintiffs' ESA Claims.

Florida's request for partial final judgment should also be denied.  Despite Florida's conclusory argument to the contrary, Plaintiffs' ESA claims overlap considerably with remaining Claims 1, 2, and 5.  These claims involve the same parties, the same transaction and occurrence, and share cross-cutting legal issues and facts with the claims the Court has already resolved.  Immediate partial judgment on those claims would result in the exact scenario courts seek to avoid when weighing Rule 54(b) motions: piecemeal appeals and judicial inefficiency.  It would therefore be contrary to the intent and standards of Rule 54(b) for the Court to enter partial judgment here.

---

[14] This designation is based on the Federal Defendants' internally inconsistent arguments.  Of course, if Plaintiffs' remaining claims were truly moot, Plaintiffs would have nothing to re-file. This argument thus confirms that Plaintiffs' remaining claims are not, in fact, moot at all.

As a general matter, when district court orders do not terminate all the claims and all the parties, the appellate court has no jurisdiction to review them. *In re Domestic Airline Travel Antitrust Litig.*, 3 F.4th 457, 459 (D.C. Cir. 2021). Rule 54(b) provides a limited exception for cases with multiple claims against multiple parties, which allows a court to certify partial final judgment on fewer than all claims or parties "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). "Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Curtiss-Wright*, 446 U.S. at 8. It is left to the district court's discretion to determine "when each final decision in a multiple claims action is ready for appeal," and the district court should exercise this discretion "in the interest of sound judicial administration." *Id.* (internal citations and quotation marks omitted).

Only "exceptional cases" qualify for partial final judgment pursuant to Rule 54(b), meaning only a "small number of cases" are reviewed by the Court of Appeals under this rubric. *Bldg. Indus. Ass'n of Superior Calif. v. Babbitt*, 161 F.3d 740, 743–44 (D.C. Cir. 1998). "This approach avoids piecemeal appellate review." *Curtiss-Wright*, 446 U.S. at 8. Allowing appeals of only final decisions that end litigation on the merits, 28 U.S.C. § 1291, "also protects the district court's independence, prevents multiple, costly, and harassing appeals, and advances efficient judicial administration." *Cincinnati Ins. Co. v. All Plumbing, Inc.*, 812 F.3d 153, 156 (D.C. Cir. 2016) (internal citation and quotation marks omitted).

When deciding whether to certify partial final judgment, three conditions must be satisfied: (1) the order must resolve a distinct claim; (2) the order must be "final" as to that claim; and (3) the district court must determine that there is no just reason for delay in entering partial judgment. *Attias v. CareFirst, Inc.*, 969 F.3d 412, 417 (D.C. Cir. 2020). "The party

seeking entry of final judgment has the burden of showing the three conditions are met." *Univ. of Colo.*, 2023 WL 4999323, at \*3 (D.D.C. Aug. 4, 2023) (internal citation omitted).  Florida has failed to carry that burden here because the ESA claims are not distinct from Claims 1, 2, and 5, and there are just reasons to delay entry of judgment until the Court has ruled on the merits of all of Plaintiffs' claims.

### A.    The Decided ESA Claims are Not Separable From Claims 1, 2, and 5.

A central issue in this case has always been whether the federal agencies lawfully found that EPA's approval of Florida's program, and state 404 permits issued pursuant to that program, would not jeopardize ESA-listed species under the jurisdiction of USFWS and the National Marine Fisheries Service ("NMFS").  That issue, however, is central not only to the decided ESA claims, but also to remaining Claims 1, 2, and 5 under the Clean Water Act.[15]  For this reason, the ESA claims cannot be certified for separate appeal.

"The permissibility of a Rule 54(b) certification depends in significant part on the relationship between the certified claims finally resolved by the district court and the uncertified claims that remain pending before it." *Attias*, 969 F.3d at 417 (claims were inseparable when they arose from the same transaction and occurrence).  Although courts have been unable to settle on a single test for determining when claims are "separate," the D.C. Circuit has established a "rule of thumb" that claims cannot be separated for purposes of final judgment if they arise out of the same transaction such that the plaintiff could not have litigated to judgment one action involving the remaining claims and another action involving those that have been

---

[15] Although Claim 7 implicates different legal issues, Dkt. 77 at 45 (Am. Compl. ¶¶ 222–27), it also arises from the same transaction and occurrence and is tied directly to EPA's approval of the state 404 program.  *See* Dkt. 175 at 2 (Federal Defendants conceding that "*all claims* in this case address (or seek to redress) alleged harms flowing from EPA's approval").  Moreover, even if Claim 7 were separable from the ESA claims, that would not render partial judgment appropriate because Claims 1, 2, and 5 are not separable.

decided.  *Tolson v. United States*, 732 F.2d 998, 1001 (D.C. Cir. 1984).  As a result, district

courts certify partial judgment where the resolved claims involve different parties, request

different forms of relief, and rely on different legal and factual issues.  *Cf. Ben-Rafael v. Islamic*

*Republic of Iran*, 718 F. Supp. 2d 25, 33 (D.D.C. 2010).

The claims at issue here are inextricably linked and are not separable.  EPA is a

Defendant for both the decided ESA claims (Claims 6, and 10–12) and remaining Claims 1, 2,

and 5.  Dkt. 77 at 25–35, 42–43, 49–55 (Am. Compl. ¶¶ 104–61, 202–12, 249–94).  The

requested forms of relief are also parallel because Plaintiffs seek vacatur and declaratory

judgment of EPA's unlawful approval, in addition to other remedies.

Importantly, both the decided and remaining Claims 1, 2, and 5 depend largely on the

same legal issues based on the same facts: whether EPA lawfully approved Florida's program by

ensuring that its approval of the program, and that state 404 permits issued pursuant to that

program, would not jeopardize ESA-listed species.  "While each claim may involve some

different facts and distinguishable law, that is far from sufficient to make the claims legally

'distinct.'"  *Apprio, Inc. v. Zaccari*, No. CV 18-2180, 2021 WL 5799380, at *4 (D.D.C. Dec. 7,

2021).[16]  These claims "arise from a nexus of fact and law so intertwined that if [the appellate

court were to] decide the one now, [the court] may nonetheless face many of the same questions

---

[16] By contrast, claims have been deemed legally distinct where they (1) involved different legal
and factual issues (for example, an APA challenge to an agency action and to the withholding of
documents pursuant to an administrative subpoena and the Freedom of Information Act); and
(2) requested different forms of relief (for example, the release of records versus relief from the
agency action).  *Baystate Med. Ctr. v. Leavitt*, 587 F. Supp. 2d 44, 46–47 (D.D.C. 2008) (cited
by Florida, Dkt. 171 at 17).  *Accord San Luis & Delta-Mendota Water Auth. v. Salazar*, No.
1:09-CV-407 OWW, 2009 WL 4884228, at *2 (E.D. Cal. Dec. 10, 2009) (Commerce Clause
claim was legally and factually distinct from ESA claims because it turned on a narrow set of
largely undisputed facts).  Moreover, resolution of Plaintiffs' ESA claims on appeal would not
likely be dispositive of the merits of Plaintiffs' remaining claims, which address additional
matters, including the adequacy of Florida's enforcement scheme.  *Cf. id.*

in determining the other later." *Bldg. Indus. Ass'n*, 161 F.3d at 745 (finding ESA listing decision inseparable from ESA designation of critical habitat). *Accord Univ. of Colo. Health*, 2023 WL 4999323, at *6 (denying Rule 54(b) motion because there were "legal issues shared" across the remaining and decided claims).

The ESA claims on which the Court has ruled (Claims 3–4, 6, 10, and 12–13) revolved around the unlawful manner by which USFWS concluded through a programmatic biological opinion ("BiOp") that EPA's approval of Florida's 404 program and the implementation of that program would not jeopardize ESA-listed species: relying entirely on the non-statutory and inadequate technical assistance process rather than undertaking the analyses, making the determinations, and abiding by the guardrails required by law.  Dkt. 161 at 8 (citing briefing); Dkt. 163 at 56–71.  They also involved EPA's unlawful reliance on the programmatic BiOp to approve the State 404 program.  Dkt. 161 at 12–13 (citing briefing); Dkt. 163 at 81–85.  These same legal questions are at issue for Claims 1 and 2.

In Claim 2, Plaintiffs allege that EPA unlawfully approved the state 404 program for many reasons, including that the State had failed to demonstrate that state 404 permits would not jeopardize ESA-listed species, as required by the Clean Water Act's 404(b)(1) Guidelines.  Dkt. 98 at 55–70, 66; Dkt. 104 at 53–86, 73.  As Plaintiffs have already shown, in making that decision pursuant to the Clean Water Act, EPA relied on the non-statutory technical assistance process and inadequate programmatic BiOp that are central to the ESA claims.  Dkt. 98 at 66; Dkt. 104 at 73; Dkt. 161 at 12–13.  In briefing summary judgment, the Federal Defendants and Florida agreed that these claims were intertwined.  Dkt. 99 at 49–50 (Federal Defendants explaining that "interagency coordination," i.e., the technical assistance process, was the basis for EPA's determination that Florida's program met the Clean Water Act's no-jeopardy

404(b)(1) Guideline); Dkt. 106 at 16 n.3 (Federal Defendants responding to Plaintiffs' arguments

on the Clean Water Act's 404(b)(1) Guideline with the same arguments they raised in opposition

to Plaintiffs' ESA claims); Dkt. 102 at 11 ("Florida fully agrees with Federal Defendants on the

merits."); Dkt. 107 at 7 (Florida relying on Federal Defendants' briefs on the merits); Oct. 19,

2023, Hr'g Tr. 54:9–13 (counsel for Federal Defendants explaining that Claim 2, in part,

involves the adequacy of the technical assistance process and is "really a cross-reference to

[Plaintiffs'] ESA argument"); *id.* at 108:25–109:10 (responding to Court's question about the

intersection of the Clean Water Act and ESA, counsel for the Defendants explaining that the

ESA's "jeopardy" standard is cross-referenced in the Clean Water Act's 404(b)(1) Guideline).[17]

Claim 1 alleges that EPA unlawfully deemed the State's application complete (which

triggered the ninety-day comment period and 120-day decision clock) because the State failed to

demonstrate that state permits would result in no jeopardy to ESA-listed species as required

under the Clean Water Act.  Dkt. 98 at 72–75; Dkt. 104 at 87–90.  As with Claim 2, the unlawful

technical assistance process is central to Plaintiffs' allegations in Claim 1.  Plaintiffs

demonstrated that the technical assistance process the State and EPA relied on for approving

Florida's program was outlined in the programmatic BiOp, and that the programmatic BiOp was

---

[17] Florida's current motion and stay reply seek to impermissibly introduce new merits arguments
on what is required to satisfy the Clean Water Act's 404(b)(1) Guideline, Dkt. 171 at 15–16;
Dkt. 170 at 3–9.  The Court should disregard these untimely arguments which were never raised
during summary judgment and are wrong as a matter of law: namely, that the State program need
only say it will not issue permits that would jeopardize species and establish a federal "review"
process to satisfy the Clean Water Act, neglecting to mention that the Court has already
determined that EPA and USFWS failed to comply with their obligations under the ESA and that
Florida's "review" process is unlawful under the ESA, Dkt. 163 at 56–85.  Florida and the
Federal Defendants consistently conceded on summary judgment that Plaintiffs' ESA and Clean
Water Act claims overlap.

not included as part of Florida's application (and indeed, was not completed until after the comment period closed).  Dkt. 98 at 72–75; Dkt. 104 at 87–90.  *See also* Dkt. 163 at 29–32.

Claim 5, which remains pending, is also intertwined with Claim 11, which the Court has adjudicated, as to preclude partial final judgment.  In Claim 11, Plaintiffs argued that EPA's decision not to consult with the NMFS on species under that agency's jurisdiction before approving Florida's program was unlawful.  Dkt. 98 at 52–55; Dkt. 104 at 51–53.  As the Court has now ruled as to Claim 11, EPA relied on an unlawful construction of the applicable "action area" to exclude species under NMFS' jurisdiction and therefore unlawfully failed to consult with NMFS to ensure that its approval of Florida's program (and state-issued permits) would not jeopardize NMFS species, in violation of the ESA.  Dkt. 163 at 85–88.  Claim 5 similarly centers on EPA's unlawful "no effect" determination, alleging that EPA's "no effect" determination was arbitrary and capricious in violation of the Clean Water Act and APA and failed to ensure that its approval and the resulting state 404 permits would not jeopardize ESA-listed species under NMFS' jurisdiction.  Dkt. 77 at 42–43 (Am. Compl. ¶¶ 202–12); Dkt. 98 at 52–55.  *See also* Dkt. 163 at 31, 85–88 (concluding that EPA's "no effect" determination was arbitrary and capricious under the ESA).

Florida argues that Plaintiffs' remaining claims are different merely because they deal with Clean Water Act and Rivers and Harbors Act compliance, Dkt. 171 at 14, but that alone is insufficient to render claims legally distinct for purposes of final judgment.  *See, e.g.*, *Gerlich v. U.S. Dep't of Justice*, No. 08-1134, 2009 WL 10697582, at *2 (D.D.C. Dec. 4, 2009) (rejecting Rule 54(b) certification where the same factual issues animated claims under different statutes).  But Florida fails to acknowledge, much less dispute, that both Claims 1 and 2 are tied to the question of whether the technical assistance process contained in the programmatic BiOp was

25

sufficient to demonstrate that Florida met the statutory criteria for EPA's approval by showing

that the program approval, and state 404 permits issued pursuant to it, would not jeopardize

ESA-listed species, which was a central issue to the decided ESA claims.  *See* Dkt. 163 at 56–71.

And Florida does not even attempt to distinguish Claim 5 in any way.  Indeed, Florida

erroneously included Plaintiffs' "fifth claim" when describing the ESA claims that have been

decided, Dkt. 171 at 14, demonstrating that the State too recognizes that Claim 5 is closely tied

to the decided NMFS claim (Claim 11).  *See* Dkt. 163 at 7, 88 (deferring ruling on Claim 5;

ruling in Plaintiffs' favor on Claim 11).

Florida's reliance on *American Forest Resource Council v. Ashe*, Dkt. 171 at 17, is

misplaced because that case dealt with claims that involved vastly different legal issues, facts,

and events.  In *Ashe*, the plaintiff challenged two separate USFWS decisions: (1) USFWS'

decision not to delist a distinct population of marbled murrelet; and (2) USFWS' designation of

critical habitat for the marbled murrelet.  *Am. Forest Res. Council v. Ashe*, 301 F.R.D. 14, 16

(D.D.C. 2014).  The court ruled in favor of USFWS on the delisting claims and voluntarily

remanded the critical habitat issue back to USFWS.  *Id.*  Because remand decisions are not final

appealable orders, the plaintiff moved for partial final judgment on the delisting claims pursuant

to Rule 54(b).  *Id.*  The court found that the claims were distinct because (1) the delisting claims

depended on factual determinations as to whether the population was "discrete" and "significant"

as well as whether it "interbreeds when mature;" whereas (2) the habitat claims turned on the

physical characteristics of the relevant geographical area as well as specific flaws in the

rulemaking process.  *Id.* at 18.  As the court explained, "[o]ther than the marbled murrelet, these

two sets of claims [had] little in common."  *Id.*  Here, by contrast, Plaintiffs' remaining claims

deal with the same, or intertwined, factual and legal issues that intersect and cross-reference each other, as explained above.

The court in *Ashe* also relied on additional factors to certify final judgment, including that (1) no party opposed the request, 301 F.R.D. at 18; (2) the remanded claims would likely never return to that court because the agency would resolve the factual and legal flaws through new rulemaking, *id.*; (3) the plaintiff would be prejudiced by having to wait at least three years until USFWS completed the critical habitat rulemaking, *id.* at 19; and (4) USFWS could also be prejudiced if partial judgment were denied, because resolution of the delisting issue on appeal would determine whether USFWS needed to designate critical habitat for the marbled murrelet at all, *id.* None of these additional factors are present here.[18]

"If the relevant criteria for defining a 'separate' claim within the meaning of Rule 54(b) are," as Florida claims, "the necessity for proof of some different facts, and the application of distinguishable law, a host of pre-trial substantive rulings would be swept within the Rule's domain." *Tolson*, 732 F.2d at 1001. This would effectively "erode the final decision rule." *See id.* The Court should therefore deny Florida's request.

---

[18] The remaining cases cited by Florida are similarly unavailing. *Petties v. District of Columbia*, 227 F.3d 469, 472 (D.C. Cir. 2000) (separability of claim for attorneys' fees); *Brooks v. Dist. Hosp. Partners, L.P.*, 606 F.3d 800, 806 (D.C. Cir. 2010) (claims separated pursuant to Rule 42(b) and involved the total adjudication of claims for some but not all parties); *Capital Transit Co. v. District of Columbia*, 225 F.2d 38, 40 (D.C. Cir. 1955) (remaining claim involved third party indemnity); *United States v. All Assets Held in Acct. No. XXXXXXXX*, 314 F.R.D. 12, 14 (D.D.C. 2015) (efficiency in having the dismissed party appeal because they may be reinstated on appeal, and be able to join the pending litigation alongside the remaining claimants); *In re Papst Licensing GmbH & Co. KG Litig.*, 987 F. Supp. 2d 58, 62 (D.D.C. 2013), *vacated and remanded sub nom. In re Papst Licensing Digital Camera Pat. Litig.*, 778 F.3d 1255 (Fed. Cir. 2015) (undecided claimants consented because their claims were added to multi-district litigation on eve of the court's decision, were stayed, and had not progressed past the pleading stage).

**B.      There are Just Reasons to Delay Entry of Partial Judgment at This Time.**

The Court should also deny Florida's motion because there are just reasons to delay entry of partial judgment.  When determining if there is no just reason to delay entry of partial judgment, a district court uses its discretion considering judicial administrative interests as well as the equities involved.  *Curtiss-Wright*, 446 U.S. at 8.  As the Supreme Court has explained, in exercising this discretion, a district court should consider such factors as (1) whether the claims under review were separable from the others remaining to be adjudicated; and (2) whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.  *Id.*  Other courts have added factors for consideration, including (3) the possibility that the need for review might be mooted by future developments; (4) the presence of claims that could result in a set-off; (5) delay; (6) economic and solvency considerations; (7) shortening the time of trial; (8) the frivolity of competing claims; and (9) expense.  *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Sci. & Com. Sys. Corp.*, 249 F. Supp. 3d 130, 133–36 (D.D.C. 2017) (granting partial judgment because decided claim was the sole cause of action in the complaint, only claims by third parties remained, and there was no just reason for delay).  Here, the applicable factors weigh against entry of partial judgment.

As Plaintiffs have shown, the ESA claims and remaining claims are not separable.  They both involve the same parties, the same transaction and occurrence, and cross-cutting legal and factual issues.  *See Bldg. Indus. Ass'n*, 161 F.3d at 745; *Univ. of Colo. Health*, 2023 WL 4999323, at *6.  Additionally, the nature of the claims at issue is such that an appellate court would likely have to decide the same issues more than once even if there are subsequent appeals, an outcome that is contrary to federal policy.  *Curtiss-Wright*, 446 U.S. at 8 (federal policy disfavors "piecemeal appeals.").

Ensuring that all claims are resolved on the merits "avoids piecemeal appellate review and also 'protects the district court's independence, prevents multiple, costly, and harassing appeals, and advances efficient judicial administration.'" *Cincinnati Ins. Co.*, 812 F.3d at 156. On appeal, the appellate court will likely be required to address (1) whether the technical assistance process could lawfully support a finding of no jeopardy; (2) whether EPA properly found no jeopardy for ESA-listed species; (3) whether any of Florida's justiciability claims have merit; and (4) whether vacatur is the appropriate remedy.[19]  If the Court rules in Plaintiffs' favor on Claims 1, 2, and 5, and those claims are later appealed, the appellate court will likely be faced with the same issues a second time.  *See Attias*, 969 F.3d at 418 (partial judgment would likely result in a piecemeal appeal because of overlapping factual and legal issues, therefore, the case should be reviewed in its entirety).

After having argued that the Court's decision on the ESA claims has mooted Plaintiffs' remaining claims, Florida here argues that a decision by the district court on the remaining claims would have no effect on the issues being appealed and "certainly *would not* moot the need for review" of the ESA claims.  Dkt. 171 at 17 (emphasis added).  Florida relies on *Tripoli Rocketry Association, Inc. v. ATF*, to argue that the decision invalidating a rule would not affect remaining challenges to related agency actions.  No. 00-273, slip. op. at 4 (D.D.C. Dec. 21, 2004) (attached as Exhibit).  Plaintiffs agree that a decision on the remaining claims would not moot the ESA claims (and vice versa).  However, *Tripoli* is otherwise distinguishable because that case involved a claim as to whether ATF could regulate the rocket motors at issue at all and remaining claims challenging ATF's regulation on administrative and regulatory grounds.  *Id.* at 2.  The claims would therefore have no impact on each other.  *Id.* at 4.  Moreover, ATF was

---

[19] Florida's conclusory assertion to the contrary has no basis in law or fact.  Dkt. 171 at 18.

currently engaged in two rulemakings to correct those errors and could give no timeline for when the rules would be completed.  *Id.* at 2–4.

Florida also claims that it is unlikely that a decision on the remaining claims would inform a subsequent appeal of the ESA claims.  Dkt. 171 at 17–18.[20]  But this argument is premised on the erroneous notion that any subsequent appeal of the remaining claims would "address completely separate agency actions and will appeal a separate kind of relief."  *Id.* at 18. As Plaintiffs have shown above, the issues underlying the remaining claims overlap considerably with the issues in the decided claims (jeopardy and the technical assistance process), involve the same agency action (EPA's approval of the state program), and request the same remedy (vacatur of EPA's decision and declaratory relief).  Notably, if the Court rules in Plaintiffs' favor on the remaining claims, the appropriate remedy, in addition to declaratory relief, would also be vacatur of EPA's approval of Florida's program.

Florida's central motivation for seeking partial judgment is to accelerate its appeal of the Court's decision, and to this end Florida claims that an immediate appeal would more quickly resolve this case.  Dkt. 171 at 18–19.  But the opposite is true.  Florida's proposal would set up the very real possibility of parallel litigation in the district and appellate courts or two out-of-step appeals progressing in the D.C. Circuit (and potentially beyond).  This would only delay the ultimate resolution of this case and threaten future disruption.  As explained above, piecemeal litigation over EPA's approval of the state 404 program (and the Court's vacatur) could lead to

---

[20] Florida's reliance on *Seed Co. v. Westerman* to support this argument, Dkt. 171 at 18, is misplaced.  There, the court addressed separable contingent attorney malpractice claims against different parties that would become live only if the other malpractice claims were dismissed. *Seed Co. v. Westerman*, No. 08-355, 2019 WL 3222412, at *2 (D.D.C. July 17, 2019).  Here, the remaining and decided claims are both live, involve cross-cutting issues, the same defendants, and the same requested remedy.

the program being passed back and forth between the Corps and Florida, resulting in true regulatory chaos. Moreover, here, any delay at this point would be relatively short because Plaintiffs' remaining claims have been briefed and argued and are ripe for the Court's decision. *Cf. Papst*, 987 F. Supp. 2d at 62 (remaining claims had not passed the pleading stage). Given the stage of this litigation, judicial economy and the parties' interests would be served by the Court reaching its merits decisions on the remaining claims rather than allowing piecemeal appeals. While Florida may have an interest in a quick appeal, that is an "insufficient" basis to prematurely issue final partial judgment. *See Univ. of Color. Health*, 2023 WL 4999323, at *6.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Florida's motion, Dkt. 171, and proceed to resolution of Plaintiffs' remaining claims (Claims 1, 2, 5, and 7).[21]

Dated: March 21, 2024

Respectfully submitted,

/s/ Tania Galloni
TANIA GALLONI*
Fla. Bar No. 619221
CHRISTINA I. REICHERT*
Fla. Bar No. 114257
Earthjustice
4500 Biscayne Blvd., Ste 201
Miami, FL 33137
T: 305-440-5432
F: 850-681-0020
tgalloni@earthjustice.org

---

[21] Plaintiffs note that the Federal Defendants recently requested, and obtained, a temporary stay of the challenge to EPA's approval of Florida's program filed by the Miccosukee Tribe of Indians in the Southern District of Florida, claiming that if the Court's ruling and vacatur remains intact, the Tribe's case would be rendered moot. Order, *Miccosukee Tribe Indians of Fla. v. EPA*, No. 1:22-CV-22459-KMM, ECF No. 50 (Mar. 18, 2024). But in this case, it is clear that the Court retains jurisdiction over Plaintiffs' remaining claims as "higher-level review might remove the first basis" for the Court's ruling here. *Celtronix Telemetry, Inc.*, 272 F.3d at 587.

creichert@earthjustice.org

/s/ Bonnie Malloy
BONNIE MALLOY*
Fla. Bar No. 86109
Earthjustice
111 S. Martin Luther King Jr. Blvd
Tallahassee, FL 32301
T: 850-681-0031
F: 850-681-0020
bmalloy@earthjustice.org

/s/ Anna Sewell
ANNA SEWELL
D.C. Bar No. 241861
Earthjustice
1001 G St., Ste 1000
Washington, DC 20001
T: 202-667-4500
asewell@earthjustice.org

Counsel for Plaintiffs

* Appearing pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of March 2024, I electronically filed the foregoing

document using the CM/ECF system. Service was accomplished by the CM/ECF system.

Respectfully submitted,

/s/ Tania Galloni
TANIA GALLONI
Fla. Bar No. 619221
Earthjustice
4500 Biscayne Blvd., Ste 201
Miami, FL 33137
T: 305-440-5432
F: 850-681-0020
tgalloni@earthjustice.org

33