# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,

    *Plaintiffs*,

v.

MICHAEL S. REGAN, *et al.*,

    *Defendants*.

Civil Action No. 21-119 (RDM)

_____

## FLORIDA INTERVENORS' REPLY IN SUPPORT OF EXPEDITED MOTION
## FOR ENTRY OF FINAL JUDGMENT
_____

The State of Florida and the Florida Department of Environmental Protection (FDEP) (collectively, Florida Intervenors) file this reply in support of expedited entry of final judgment and respectfully reiterate their request for expedited entry of a limited stay of this Court's February 15, 2024 vacatur order. This Court should reject Plaintiffs' zealous efforts to deprive Florida Intervenors of their right to appeal the February 15, 2024 ruling and vacatur order. One obvious irony here, among many, is that Plaintiffs themselves asked this Court to enter a preliminary injunction and temporary restraining order (PI/TRO) on the basis of the *same* Endangered Species Act (ESA) claims that this Court decided on February 15, 2024; and of course, an order granting the PI/TRO would have been *immediately appealable* irrespective of whether this Court had reached the merits of the remaining claims. Now, in this context, where the Court rendered a definitive final decision on the ESA claims with total vacatur of the entire program (instead of enjoining two targeted projects), Plaintiffs implausibly contend that an appealable final order

should *not* be entered yet. They are wrong for many reasons.[1] This Court has several clear paths to entry of an appealable order.

Before responding to Plaintiffs' specific arguments related to entry of judgment, Florida Intervenors respectfully remind this Court of the imperative to move forward as expeditiously as possible, for all of the reasons previously set forth in Florida Intervenors' earlier briefs and related declarations. The ongoing adverse impacts of vacatur are severe and a prompt ruling is necessary. Today, over 1,000 projects in Florida remain in a state of paralysis due to the vacatur, as has existed for almost 40 days. Dkt. 166-1 at 3. At least many hundreds of Florida 404 permittees are currently being forced to go back to the beginning of an expensive, time-consuming permit process (many of those permit applications were at or near the end of that process before vacatur). Projects that have been held in hiatus pending the Court's decisions include hospital expansions to provide critical medical services, road projects to reduce congestion and improve public safety, necessary school projects, post-hurricane rebuilding work, and many more. And the substantial expenditures by the State of Florida to develop, propose, implement, administer, and enforce the Section 404 Program are at risk, while over 300 FDEP staff (including 404 permit writers, compliance and enforcement personnel, certified wetlands evaluators, and others), who were hired and trained at the expense of the State of Florida for Florida's 404 program, Dkt 149-1 at 4, have been "pencils down" on 404 program activities since February 15, 2024. Florida's sworn declarations supporting a limited stay are on record with this Court; no sworn testimony opposes it.

---

[1] For the Court's awareness, on March 21, 2024, the U.S. House of Representatives passed the "Creating Confidence in Clean Water Permitting Act" (H.R. 7023). Section 14 of H.R. 7023 codifies EPA's approval of Florida's Section 404 Program. The measure is now before the U.S. Senate.

### I. Contrary to Plaintiffs' view, this Court obviously, at a minimum, has discretion to enter judgment under Rule 58(d).

Plaintiffs' primary argument is that their remaining claims are not, in a formal sense, "moot" and that they are entitled to additional relief beyond total vacatur of the program. They are incorrect for the reasons that Florida Intervenors and Federal Defendants have already explained. (Dkt. 171, 175). The Court *must* enter final judgment because complete relief has been granted and the remaining claims are now moot. Regardless of whether their remaining claims are formally "moot" or not, Plaintiffs cannot seriously dispute that this Court, at least, has *discretion* to enter final judgment at this point under Rule 58. The Court has vacated EPA's approval of Florida's Section 404 program, and Plaintiffs' remaining "claims" are really just alternative arguments in support of seeking that very same relief – i.e., the end of Florida's 404 program. Where, as here, a Court grants a plaintiff all the relief to which it is entitled, a district court may enter final judgment and permit an immediate appeal, even if the court declines to reach other arguments the plaintiff advanced in support of seeking that same relief. *Fund For Animals v. Norton*, 326 F. Supp. 2d 124, 127 (D.D.C. 2004) (holding that the district court need not reach alternative grounds for relief when the "ultimate relief" plaintiffs sought was granted.). That scenario, of course, happens routinely in the federal courts. *Id*. Indeed, it happened a few days ago.[2]

In urging the district court to delay entry of final judgment, Plaintiffs repeatedly advert to the possibility that their alternative arguments in support of invalidating the program might not be resolved unless and until the Court of Appeals reverses and remands this Court's order for further

---

[2] *See R.J. Reynolds Tobacco Co. v. Food & Drug Admin*., No. 23-40076, 2024 WL 1208111 (5th Cir. Mar. 21, 2024) (involving appeal where (1) district court vacated FDA rule on First Amendment ground and declined to reach APA and other statutory claims, and (2) the Fifth Circuit reversed the constitutional ruling with "remand [of] the remaining claims for initial consideration by the district court"). This happens so routinely in appellate cases it should require no citation.

proceedings. Plaintiffs are right to fear reversal on appeal, but their concern about piecemeal litigation rings hollow in light of the fact that Plaintiffs themselves sought a preliminary injunction based on the contention that Florida's permitting program was unlawful, which would have certainly teed up an *immediate* appeal had the Court granted that relief. If Plaintiffs wish to avoid piecemeal litigation—notwithstanding the serious possibility of reversal—the way to do so would be for them to urge the Court of Appeals to affirm the judgment on the alternative grounds that this Court declined to reach, not to insist that this Court sort out every single detail of their shotgun complaint before Florida can seek appellate review of this Court's massively consequential decision to vacate the program altogether.[3] This point eliminates Plaintiffs' concern that reversal on appeal would "un-moot" claims dismissed as moot. Here, this Court ruled definitively on one set of specific claims, granted total vacatur of the entire program, and opted to not yet rule on the remaining claims. In this context, the simple next step is to render final judgment.[4]

## II.   Plaintiffs give no good reason to forego entry of final judgment now.

Florida Intervenors and Federal Defendants agree that entry of final judgment is necessary here because this Court has granted complete relief to Plaintiffs.[5] Vacatur of the programmatic biological opinion and incidental take statement (BiOp/ITS) and vacatur of the entire program approval *is* complete relief and obviates all remaining claims. *Fund For Animals*, 326 F. Supp. 2d

---

[3] Again, this is almost so routine it warrants no citation; however, the Fifth Circuit decision cited above followed this basic path. *Id.* at *17-18.

[4] Plaintiffs' concern that their remaining claims might be "time barred" is obviously a question for another day, but it seems quite far-fetched here. Even if there was any validity to that concern, the D.C. Circuit will undoubtedly resolve Florida Intervenors' expedited appeal long before the statute of limitations would ever run here, and Plaintiffs will have ways in the meantime to protect their interests from that outcome.

[5] As previously noted, Florida Intervenors reserve all rights to later seek relief under 28 U.S.C. §§ 1292(a) and/or 1292(b) relief, as appropriate.

4

at 127. This Court need not and should not address the remaining claims. *Coal River Mountain Watch v. Jewell*, No. 08-CV-02212 (BJR), 2014 WL 12884029, at *2 (D.D.C. July 9, 2014); s*ee also* Fed. R. Civ. P. 58, Advisory Committee Notes for the 2002 Amendment (describing Rule 58(d)'s purpose to "protect all needs for prompt commencement of the periods for … appeals ….").

With regard to the cases cited by Florida Intervenors to support entry of judgment, Plaintiffs give no valid reason for this Court to ignore them. Plaintiffs give long-winded factual summaries of various cited cases and argue that Florida Intervenors' reliance on those cases is somehow "misplaced" due to differing facts and circumstances; yet Plaintiffs fail to provide contrary case law for their specious arguments. If Plaintiffs are looking for a case with identical facts and events in the Rule 58 context (or Rule 54 for that matter), they are likely to come up empty-handed; but the legal principles for which Florida Intervenors cited specific cases are obviously applicable here. For example, Florida Intervenors cited *Rhodes v. Stewart* for the general proposition, which Plaintiffs do not refute, about when claims are no longer justiciable.

Plaintiffs also criticize Florida Intervenors' reliance on *Novella v. Westchester County*, 661 F.3d 128, 149 (2d Cir. 2011), which was cited for the basic point that, where "a litigant asserts multiple arguments in support of the relief he seeks, and the court grants him complete relief based upon one contention, courts also sometimes use the word 'moot' ... to refer to an issue that need not be decided in light of the resolution by the court in the same opinion of another issue." Dkt. 171 at 8-9 (quoting *Novella*). Whether Plaintiffs characterized their claims here as "alternative" or "additional" claims is beside the point. Nothing in *Novella* undercuts Florida Intervenors' request for entry of judgment here.

Likewise, Plaintiffs fail to distinguish *Coal River Mountain Watch v. Jewell*. Florida Intervenors and Federal Defendants both rely on *Coal River* as an example in this District where a court found that a case or controversy no longer existed where the court already vacated the rule and a subsequent determination "whether the vacated rule violated the NEPA, CWA, and/or APA would necessarily be advisory…." *Coal River Mountain Watch,* 2014 WL 12884029, at *2. Whether a party will appeal a vacatur decision is not determinative of whether complete relief has been granted or a case or controversy exists. While confessing error, capitulating to a vacatur order, or other similar steps more firmly demonstrates that a rule will not be resurrected, those situations are not necessary for entry of judgment in multi-claim actions.

For their part, to avoid dismissal for mootness, Plaintiffs rely on *Celtronix Telemetry, Inc. v. FCC*, 272 F.3d 585, 587 (D.C. Cir. 2001), as a controlling example where a "court retains jurisdiction over remaining claims where higher-level review might remove the first basis on which court granted relief." Dkt. 178 at 7, 9-10. Plaintiffs ignore a key fact: *Celtronix* did not involve a situation where resolution of the first claim provided *complete relief*. The paragraph from *Celtronix* that Plaintiffs rely upon is obviously dicta. The court simply wrote to "[c]ompare a standard two-issue case" with the situation at issue there. Nothing in *Celtronix* opposes entry of judgment here.[6]

Last, Plaintiffs erroneously contend that vacatur of EPA's approval *on the ESA grounds* does not provide complete relief. As Federal Defendants have explained (Dkt. 175 at 2), any other relief – such as a declaration that certain waters are not "assumable" or certain aspects of Florida's

---

[6] The facts there were also quite different. In *Celtronix*, the plaintiffs accepted an offer from the federal agency (i.e., election of amnesty) such that "there is a distinct chance that [the plaintiffs] would not benefit from a victory here." 272 F.3d at 587.

6

program are inadequate – is subsumed by total vacatur of the program. What other more complete relief is needed for Plaintiffs here? Clearly nothing.

### III.     Plaintiffs give no good reasons to avoid entry of judgment under Rule 54(b).

Plaintiffs are also wrong to oppose entry of judgment under Rule 54(b) as an alternative to Rule 58(b). *United States v. All Assets Held in Acct. No. XXXXXXXX*, 314 F.R.D. 12, 14 (D.D.C. 2015) (explaining that Rule 54(b) provides "flexibility" for "appellate review in complex cases") (citing *Blue v. D.C. Pub. Schs.*, 764 F.3d 11, 15 (D.C. Cir. 2014)). The Court's definitive resolution of a central claim – one that this Court finds warrants total vacatur of federal approval of Florida's Section 404 program and thereby creates severe disruptive consequences across the entire state – leaves "no just reason for delay." This Court has discretion to enter judgment on the ESA claims under Rule 54(b) where justice requires it.

On page 35 (of 39), Plaintiffs criticize Florida Intervenors as follows: "After having argued that the Court's decision on the ESA claims has mooted Plaintiffs' remaining claims, Florida here argues that a decision by the district court on the remaining claims would have no effect on the issues being appealed and 'certainly would not moot the need for review' of the ESA claims." Dkt. 178 at 35. Their point here is nonsensical. They ignore the obvious distinction between (A) a ruling by this Court that "moots" the remaining claims *before this Court* (which occurred under the February 15 ruling and is the relevant question for the Rule 58(d) analysis), versus (B) a *future* ruling by this Court on a remaining claim that might "moot" the D.C. Circuit's consideration of the appeal (as would be relevant in a Rule 54(b) partial judgment context where this Court continues to hear claims while the first ruled-upon claims are on appeal). Florida Intervenors' position is, contrary to Plaintiffs' suggestion, entirely consistent and logical. That distinction also easily explains why Plaintiffs misfire on *Tripoli Rocketry Association v. ATF*. Dkt. 178 at 35. As

Florida Intervenors previously explained in the context of the Rule 54(b) request, even if Plaintiffs' remaining claims are still considered justiciable, a ruling on the remaining claims by the district court at some point down the road would have no effect on the issues being appealed and certainly would not moot the need for appellate review of the ESA claims. To support that point, Florida Intervenors cited *Tripoli* for the proposition that "the decision on those counts will have no impact on the decision entered on [other counts]," correctly noting that the *Tripoli* court entered final judgment on a decision invalidating a rule because it would not affect pending challenges to related agency actions. Dkt. 171 at 17-18. That is basically the situation here.

Plaintiffs are also wrong to suggest that "Florida's reliance on *Seed Co. v. Westerman*" is "misplaced." Dkt. 178 at 36 n.20. Florida Intervenors correctly relied on *Seed Co.* for the proposition that, in the context of a Rule 54(b) partial judgment, it would be unlikely that this Court's ruling on the "remaining claims" would inform the ESA claims on appeal, a point that "heavily favors certification of final judgment on the latter claims." Dkt. 171 at 18. Plaintiffs' attempt to distinguish *Seed Co.* on its facts is beside the point. Contrary to Plaintiffs' prognostication, Florida's approach under Rule 54(b) would not "set up the very real possibility of parallel litigation in [this Court and the D.C. Circuit]" involving the same overlapping claims, nor would it create "two out-of-step appeals progressing in the D.C. Circuit (and potentially beyond)." Dkt. 178 at 36.

Furthermore, Plaintiffs incorrectly conflate the Clean Water Act (CWA) Section 404(b)(1) requirements with obligations under ESA Section 7 by providing a string of citations to Florida Intervenors' and Federal Defendants' earlier statements. Dkt. 178 at 23-24. These claims are not intertwined for purposes of the Rule 54(b) analysis. Those prior statements merely reflect the basic notion that the CWA Section 404(b)(1) process and ESA Section 7 requirements involve *similar*

8

standards, but that does not change the clear fact that these are *different claims* under *different statutes*, which is a key point for Rule 54(b) purposes. But, for Rule 58(d) purposes, both claims have received "complete relief" insofar as this Court vacated the BiOp/ITS *and also vacated EPA's approval of Florida's Section 404 program.*

### IV.   Entry of judgment is unaffected by a stay of the vacatur order.

Plaintiffs erroneously contend that this Court cannot enter judgment if a stay of the vacatur order is also granted.[7] They argue that "a stay could be denied now and granted later (or vice versa), implausibly mooting and then un-mooting Plaintiffs' remaining claims." That concern is misplaced for the reasons already explained above. Courts routinely rule upon fewer than all claims and enter final judgment if it has granted the plaintiff complete relief; and the parties remain free to argue for affirmance on other grounds at the appellate stage. Likewise, whether the Court has granted complete relief as a *matter of law* is unaffected by the Court's exercise of *equitable* discretion to grant a stay (or even limited stay). Again, Plaintiffs' uninformed view would turn basic federal appellate procedures on its head. Federal district courts often stay remedy orders pending appeal while also entering final judgment, and the judgment remains final even if a stay pending appeal is granted.

---

[7] A natural tension exists between entry of judgment under Rule 58(d) (which involves consideration of whether a court has granted complete relief) and partial judgment under Rule 54(b) (which involves consideration of whether there are separate and distinct claims). Florida Intervenors believe Rule 58 judgment is the best and appropriate course here and Rule 54(b) is available as alternate relief. But the tension between these two avenues to an appealable order does *not* foreclose relief under Rule 54(b) here because, among other things, the remaining claims are *separate and distinct* for purposes of the Rule 54(b) analysis, while also being covered by the *same complete relief* for purposes of the Rule 58(d) analysis. Of course, Plaintiffs must navigate the same tension in the opposite direction (*i.e.*, they argue that their remaining claims overlap with the ruled-upon claims for purposes of their Rule 54(b) analysis but then argue that they are not covered by the same relief for Rule 58(b) purposes).

Florida Intervenors disagree with any suggestion that a limited stay in this case might alter the calculus on entry of judgment. As already explained, district courts routinely enter final judgment while also staying action under those decisions pending appeal (or for other reasons). Doing so certainly does not change the fact that complete relief, as a matter of law, has been granted. Final judgment can be entered irrespective of whether a court exercises its equitable discretion to stay a remedy order so that an appeal of a serious legal issue can go forward while maintaining the status quo.

### V. Plaintiffs fail to justify their significant misstatements to this Court.

Florida Intervenors previously alerted this Court to Plaintiffs' repeatedly false assertions to this Court about "may affect" procedures used in the New Jersey program and the federal review process under 40 C.F.R. Part 233. (Dkt. 171 at 2 n.2; *see also* Dkt. 170 at 3-9.). In their opposition, Plaintiffs again bury (in a footnote deep in their brief) their admission of a significant "error" (Dkt. 178 at 20 n.11; *see also* Dkt. 169 at 9 n.4) which was subsequently reflected in this Court's February 15 ruling on the merits and remedy order (specifically, the conditions for a limited stay. Plaintiffs entirely fail to account for their inexplicable confusion over the basic procedural requirements for species reviews under 40 C.F.R. Part 233 and their emphatic and repeated misstatements regarding the approaches for "may affect" situations in New Jersey and Michigan. In doing so, Plaintiffs deflect any responsibility for that error and fail to acknowledge that, because they got it so severely wrong on the nature of federal review versus federalization for "may affect" permits, this Court's February 15th opinion and vacatur order reflected an incorrect understanding of those central points. Dkt 178 at 21 n.11. They simply say that the "error" was "not brought to Plaintiffs' (or the Court's) attention by any party until after the Court's ruling...which came years into this litigation...," without acknowledging that "the error" was one perpetuated by Plaintiffs,

10

that the other parties contested their incorrect view, and that this issue was most directly raised by Plaintiffs during the January 30, 2024 hearing (and then *not corrected by them* after the hearing before the Court ruled on February 15). Dkt 170 at 5. This Court should expect more from litigants when pushing for such severe remedies as total vacatur of statewide environmental programs. Certainly, at a minimum, the two "conditions" set by this Court for a "limited stay" were at least informed by Plaintiffs' misunderstanding. To avoid lifting of the "may affect/federalize" condition set by this Court (as would be just under the circumstances), Plaintiffs seem to contend that this Court cannot allow Florida to continue processing Section 404 permits that "may affect" listed species because that would, they say, violate the ESA. Not so. This Court has full authority to stay its vacatur order (especially in the limited manner proposed by Florida). Any equitable or legal concerns in that situation are fully mitigated by implementation of the federal species review process already set forth in 40 C.F.R. Part 233, which Florida Intervenors (like New Jersey and Michigan) already follow and would continue to follow during a period of limited stay. And under a limited stay, Florida has made it clear that, because this Court has vacated the BiOp/ITS, no Florida 404 permits issued during the period of limited stay would receive the benefit of incidental take liability protection. In other words, during the period of limited stay, FDEP and the federal agencies would continue to implement the Part 233 federal review process *plus the additional protective procedures agreed to by Florida that go beyond the requirements of Part 233*. As Florida has extensively explained, this goes beyond what would be required for compliance.

### VI.   Entry of judgment with a limited stay is necessary and urgent.

With regard to timing, Florida Intervenors again respectfully request that the status conference currently set for April 4, 2024 be expedited to the next earliest available date. Florida Intervenors also seek expedited consideration of this motion. As Florida Intervenors have raised

in earlier briefs and related declarations, the adverse impacts of vacatur are severe and a prompt ruling is necessary to address the urgent issues at hand. Florida Intervenors reiterate that over 1,000 projects remain in a state of paralysis due to the vacatur, which has put all projects in limbo for almost 40 days now. Dkt. 166-1 at 3.

This Court has questioned whether the situation is truly "urgent." *See* Minute Order (Mar. 14, 2024). It is. Individual projects of significant public concern are undeniably harmed by the direct upshot of this Court's vacatur order. Like a bad game of chutes and ladders, hundreds of Florida 404 permittees are forced to go back to the beginning of an expensive, time-consuming permit process when they were, at least for many of them, nearing the end of that process. Almost a decade ago, the Supreme Court specifically observed the very high cost and burdens associated with the federal CWA Section 404 process, explaining that the federal 404 "permitting process can be arduous, expensive, and long" and citing "one study [that] found that the average applicant" for individual 404 permits "spends 788 days and $271,596 in completing the process,' without 'counting costs of mitigation or design changes.'" *U.S. Army Corps of Eng'rs v. Hawkes Co.,* 136 S. Ct. 1807, 1811-12 (2016) (internal citations omitted).

Furthermore, over the course of the last 40 days under this Court's vacatur order, Floridians have experienced, cumulatively, over 35,000 days of permitting delays. Projects that have been held in hiatus pending the Court's decisions include hospital expansions to provide critical medical services, road projects to reduce congestion and improve public safety, necessary school projects, post-hurricane rebuilding work, and many more. *Id.* Time is money; but time is also opportunity, and the window to complete projects is severely impacted already. For some projects, further delays will impair commencement of construction (or prevent them from happening altogether).

12

The millions of dollars that the State of Florida has spent on standing up and administering its Section 404 program is now at risk as well.

And during this period of uncertainty, the Corps of Engineers has merely stated that it will accept Section 404 applications for projects in Florida's assumable waters, but the Corps has not given any assurances that the over 1,000 permittees with pending Florida applications will not be required to start the process at "square one." In effect, by restarting the permit process, Floridians would be losing, collectively, the benefit of *hundreds of thousands* (if not millions) of hours of permit processing work and time, including the significant time spent on federal review procedures for species protection purposes that already occurred. Florida also loses the benefit of various environmentally beneficial projects that FDEP was requiring in order for permit acceptance. And, in the meantime, over 300 FDEP staff (including 404 permit writers, compliance and enforcement staff, certified wetlands evaluators, and others), who were hired and trained at the expense of the State of Florida for the express purpose of administering Florida's 404 program, Dkt 149-1 at 4, have been "pencils down" on 404 program activities since February 15, 2024.[8] The Corps may have some staff to process permits originally filed with FDEP, but there is no sworn testimony in this Court suggesting that the Corps has staffed up to a level that comes anywhere close to that which FDEP already has on hand dedicated to the important work of processing 404 permits in assumable waters in Florida.

Beyond these clear and immediate harms, the State of Florida also continues to experience irreparable harm to the State's sovereign interests in the conservation and management of water

---

[8] Plaintiffs cite *Univ. of Colo. Health at Mem'l Hosp. v. Becerra*, No. 14-1220, 2023 WL 4999323, at *6 (D.D.C. Aug. 4, 2023), to oppose expedited entry of judgment. Their reliance is misplaced. Judge Contreras made it clear that the claims in that case were "closely intertwined with claims that will not be certified" and there was "little reason to select an arbitrary set of claims for entry of final judgment." There is nothing arbitrary about the specific set of ESA claims that would be certified for review in Florida's Rule 54(b) request.

resources and wildlife – both areas of traditional state responsibility. By returning responsibility to the Corps of Engineers over three years after the transfer of program authority occurred, the state is experiencing unique and ongoing injury to its sovereignty interests, in addition to the loss of state investment in administering the program discussed above, whereby the hundreds of permittees with pending applications must return to 'square one' with the Corps' process.

## CONCLUSION

For all of the reasons presented by Florida Intervenors, the Court should immediately enter final judgment and grant a limited stay.

Dated: March 25, 2024

Respectfully submitted,

BAKER BOTTS L.L.P.

*/s/ Jeffrey H. Wood*
Jeffrey H. Wood (D.C. Bar No. 1024647)
700 K Street, NW
Washington, D.C. 20001
Phone: (202) 639-7700
jeff.wood@bakerbotts.com

Lily N. Chinn (D.C. Bar No. 979919)
101 California Street
San Francisco, CA 94111
Phone: (415) 291-6200
lily.chinn@bakerbotts.com

Aaron M. Streett (TX Bar No. 24037561)
Harrison Reback (TX Bar No. 24012897)
(*pro hac vice*)
910 Louisiana Street
Houston, TX 77002-4995
Phone: (713) 229-1234
aaron.streett@bakerbotts.com
harrison.reback@bakerbotts.com

**CERIFICATE OF SERVICE**

I hereby certify that on this the 25th day of March 2024, I electronically filed the foregoing document using the CM/ECF system. Service was accomplished by the CM/ECF system.

    Respectfully submitted,
    BAKER BOTTS L.L.P.

    */s/ Jeffrey H. Wood*
    Jeffrey H. Wood (D.C. Bar No. 1024647)
    700 K Street, NW
    Washington, D.C. 20001
    Phone: (202) 639-7700
    jeff.wood@bakerbotts.com