```
 1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2

 3      CENTER FOR BIOLOGICAL
        DIVERSITY, et al,
 4                                              Civil Action
                     Plaintiff,                No. 1: 21-119
 5
            vs.                                Washington, DC
 6                                             April 4, 2024
        LEOPOLDO MIRANDA-CASTRO,
 7      et al,                                 3:06 p.m.

 8                   Defendants.
        _____/
 9

10                    TRANSCRIPT OF STATUS HEARING
               BEFORE THE HONORABLE RANDOLPH D. MOSS
11                  UNITED STATES DISTRICT JUDGE

12
        APPEARANCES:
13
        For the Plaintiff:      TANIA GALLONI
14                              CHRISTINA IRENE REICHERT
                                EARTH JUSTICE
15                              4500 Biscayne Boulevard, Suite 201
                                Miami, FL 33137
16
                                BONNIE MALLOY
17                              EARTH JUSTICE
                                11 S. Martin Luther King Jr. Blvd
18                              Tallahassee, FL 32301

19
        For the Defendant:      MICHAEL RICHARD EITEL
20                              U.S. DEPARTMENT OF JUSTICE
                                Environment & Natural Resources
21                              Division
                                999 18th Street
22                              South Terrace
                                Denver, CO 80202
23

24                  APPEARANCES CONTINUED ON NEXT PAGE

25
```

```
 1                      APPEARANCES CONTINUED

 2

 3    For the Defendant:      ANDREW S. COGHLAN
                              DOJ-ENRD
 4                            Eds
                              150 M Street NE
 5                            Suite 4.400
                              Washington, DC 20002
 6
      For the Intervenor:     JEFFREY HEATH WOOD
 7                            BAKER BOTTS LLP
                              700 K St. NW
 8                            Washington, DC 20001

 9                            GEORGE P. SIBLEY, III
                              HUNTON ANDREWS KURTH LLP
10                            951 East Byrd Street
                              Riverfront Plaza, East Tower
11                            Richmond, VA 23219

12                            ANDREW JACOB TURNER
                              RAFE PETERSON
13                            HUNTON ANDREW KURTH LLP
                              2200 Pennsylvania Avenue, N.W.
14                            Washington, DC 20037

15

16
      Court Reporter:         SHERRY LINDSAY
17                            Official Court Reporter
                              U.S. District & Bankruptcy Courts
18                            333 Constitution Avenue, NW
                              Room 6710
19                            Washington, DC 20001

20

21

22

23

24

25
```

1

2                    P R O C E E D I N G S

3          THE COURTROOM DEPUTY:  Civil case number 21-119,

4    *Center for Biological Diversity versus Leopoldo Miranda-Castro*,

5    *et al*.

6          Would counsel please approach the podium and state

7    their name for the record starting with plaintiff's counsel.

8          MS. GALLONI:  Good afternoon, Your Honor.  Would you

9    like me to introduce everyone?

10         THE COURT:  Yes.  I think that would be more

11   efficient.

12         MS. GALLONI:  Tania Galloni on behalf of the

13   plaintiffs.  I am here with Bonnie Malloy and Christina

14   Reichert.  Also with us at counsel table are plaintiffs, Center

15   for Biological Diversity, J.W. Glass; Defenders of Wildlife,

16   Daniel Franz.  And, Your Honor, if we may, Ms. Reichert will be

17   handling the motion to stay and I will be handling any

18   questions with the motion for final judgment.

19         THE COURT:  Okay.  That is fine.  Thank you.

20         MR. COUGHLAN:  Good afternoon, Judge Moss.  Andrew

21   Coughlan for Federal defendants.  With me at counsel table is

22   my DOJ colleague, Mike Eitel.  As well as Katherine Wainwright

23   from the Army Corps of Engineers.

24         THE COURT:  All right.  Thank you for being here.

25         MR. WOOD:  Good afternoon, Your Honor.  Jeff Wood on

1    behalf of Florida interveners.  And I am joined by my colleague

2    Linn Bumpers here at counsel table.

3            THE COURT:  All right.  Good afternoon to you.

4            MR. SIBLEY:  Good afternoon, Your Honor, George

5    Sibley for Collier Enterprises.  With me at counsel table is my

6    colleague, Andrew Turner.  Also at counsel table is Ray

7    Peterson for the Cameratta companies.

8            THE COURT:  All right.  Thank you.  Welcome to you as

9    well.  All right.  I think that is everybody.  We are here

10   today on the defendant intervener Florida's motion for a

11   limited stay as well as a motion for the entry of final

12   judgment or in the alternative for the entry of partial final

13   judgment.  And so, for a change, Mr. Wood, you get to go first.

14           MR. WOOD:  Thank you, Your Honor, good afternoon.

15           THE COURT:  Good afternoon.

16           MR. WOOD:  I would like to begin before turning to

17   both motions, just to provide the Court with a brief update on

18   the status of Florida 404 issues and to emphasize the urgency

19   from Florida's perspective of the need for granting both

20   motions, Your Honor.

21           Since February 15th when this Court vacated EPA's

22   approval of Florida's program and vacated the Biological

23   Opinion and Incidental Take Statement, over 1,000 Florida 404

24   permit applications have remained in the state of regulatory

25   paralysis or limbo.  Over 840 of those have been in the permit

1    process in Florida for over six months before this Court ruled.

2    Many of those projects are designed to benefit the public.

3    Over 200 public projects by state and local agencies -- these

4    are utility projects, road projects, including wildlife

5    crossings.  Four projects involve efforts to improve water

6    quality in the Florida Everglades.  There are dozens of

7    electric utility projects intended to improve gridlock

8    reliability.  There is a new medical facility planned for

9    construction with 144 beds as well as a new facility at the

10    Mayo Clinic.

11          There is hundreds of housing projects, including a

12    senior living center, as well as apartment buildings that are

13    held up because their permits are not currently being

14    processed.  There are many other forms of development, the

15    overwhelming vast minority of which have no effect on listed

16    species.  And these permit applicants are faced with the

17    dilemma currently of being required to go back to square one,

18    have their permits restarted at the Army Corps of Engineers, in

19    their Jacksonville District Office or await further relief from

20    this Court.

21          It represents the loss of tens of thousands of hours

22    of Florida 404 work by the 300 Florida DEP staff who were hired

23    to process 404 permits.  Those staff, including enforcement

24    personnel and certified wetlands evaluators have been pencils

25    down on the Florida 404 process since February 15th.  There is

1    enormous additional costs to Florida and its citizens in terms

2    of the loss of funds for the State that have been expended on

3    this program, as well as increased costs, financing costs and

4    other project delay costs incurred by Florida citizens.

5            Cumulatively we estimate that there is over 40,000

6    days of permit delay associated with the last 40 days of

7    inactivity on 404 permitting in Florida.  It is reasonable to

8    assume based on the last --

9            THE COURT:  I take it that at least anyone who wanted

10    to at that point could have gone to the Corps to seek a permit;

11    right?

12            MR. WOOD:  They could have gone back.  The Corps has

13    said they are open and will receive permits.  But for those who

14    have been pending for six months, they have already undertaken

15    extensive review, that means going back to square one in the

16    start of the process.  We estimate that based on the past two

17    years of Florida 404 processing of permits that at least 40

18    individual permits and permit modifications since February 15

19    would have been issued during that period of time, just based

20    on the past track record of last two years.

21            And the last thing I'd mention, Your Honor, is that

22    this implicates issues within the sovereign interests of the

23    State of Florida as it relates to the primary role of states in

24    managing water resources.  And the State is very interested in

25    getting back to work -- the very important work of processing

1    404 permits within the confines that this Court might allow.

2            Turning to the motion for limited stay, Your Honor,

3    first, this Court provided an invitation to Florida to request

4    a limited stay based on two conditions.  One would be that all

5    404 permit applications processed by Florida during the period

6    of the stay, could only -- would exclude any may affect kinds

7    of permits, those would be permits that would be deemed as may

8    affect species.  Those would need to be processed by the Corps,

9    according to this Court's condition.  And this Court also set a

10   condition that there must be a mechanism in place for

11   determining which applications may affect species.

12           Florida has proposed an approach.  We accepted the

13   Court's invitation.  We provided the best approach we could

14   develop to ensure that Florida could restore its program of

15   processing 404 permits.  And we also went through in some

16   detail explaining how this process would work.  We defined may

17   affect.  We provided a mechanism for making those decisions.

18   Under that mechanism all 404 -- Florida 404 permit applications

19   are available to the Fish and Wildlife Service and the Florida

20   Fish and Wildlife Conservation Commission, plus all of them as

21   is the case are posted immediately upon receipt on the public

22   website for people to look at.  And they can obviously comment

23   if they think there is a may affect.

24           It remains the case that any decision by Fish and

25   Wildlife Service on listed species would be determinative.  And

1    that any condition or requirement imposed by Fish and Wildlife

2    Service would be incorporated into Florida 404 permits.

3            THE COURT:  I guess, I was trying to understand

4    exactly what it was that you are proposing here.  Because a lot

5    of this sounded like what the old program was.  And that you

6    are just asking me to take the technical assistance agreement

7    and put it in the form of a court order.  But I may be

8    misunderstanding what you are suggesting.  Because what I had

9    in mind was something very different, was, I think -- maybe it

10   is not very different.  But what I had in mind was the

11   question -- I don't know the answer to it and as I indicated in

12   my opinion, I think this is an issue that is best addressed in

13   the first instance by the regulatory agency rather than the

14   Court.  But what I was wondering was whether there was a way in

15   which the may affect permits could be adjudicated or resolved

16   by the Corps and that Florida would handle those -- the other

17   vast number of other permits that are not may affect permits.

18   And this sounds to me like you are saying, no, Florida is going

19   to continue to handle the may affect permits pursuant to a

20   consultation process that looked a lot like what was in the

21   technical assistance agreement.

22           MR. WOOD:  Your Honor, in the first instance, we

23   proposed a mechanism that was very much in line with what this

24   Court has required, which is a may affect federalized

25   condition.  And that was our first proposal.  We accepted the

1    Court's invitation.  We believe it would be workable.  We

2    provided a mechanism that would provide that any permit that

3    was deemed to be a may affect permit would be handed off to the

4    Corps of Engineers.

5           There are some concerns with that approach.  And in

6    light of the concerns, including those raised by federal

7    defendants, that would be tantamount to a partial assumption of

8    the program.  We also provided an alternative approach that we

9    think actually works better.  The problem, Your Honor, is that

10   that would not align with this Court's condition for a may

11   affect/federalized requirement.  What we went to the extra

12   length to try to explain is that under the sort of baseline

13   federal regulatory framework that we all operate under -- this

14   applies to New Jersey, Michigan and Florida, under that

15   baseline federal review process, every permit that Florida

16   issues is reviewed for species impact by Fish and Wildlife

17   Service.  That is the baseline.

18          What Florida had was an additional layer of

19   protection derived from the BiOp and ITS.  We understand that

20   has been vacated.  But that provided additional procedures

21   above and beyond that sort of baseline-level decision.

22          THE COURT:  But the big difference and maybe what you

23   are proposing here addresses this.  But the big difference and

24   the underlying difference in my opinion -- and I know that you

25   made a big deal about suggesting that somehow the Court didn't

1    understand how what happened -- how things operated in New

2    Jersey.  And I will just simply say that you are wrong about

3    that, I did fully understand how it operated.  But the big

4    difference is the question about whether there is incidental

5    take protection.  And in New Jersey, you don't get incidental

6    take protection unless there is an individual review by the

7    Army Corps of the permit.  And I guess the question I have for

8    you here is what you are proposing as your second alternative,

9    one in which there would be incidental take protection or not?

10            MR. WOOD:  No, Your Honor.

11            THE COURT:  So who would do that?  I have got

12   companies here, are they just going to say, you know what, we

13   are just going to run the risk that we are going to jail, we'll

14   just do it.

15            MR. WOOD:  No, Your Honor.  They would obtain a

16   Florida 404 permit, as they do now.

17            THE COURT:  Right.

18            MR. WOOD:  It would not carry with it the benefit of

19   incidental take coverage because the incidental take statement

20   has been vacated by this Court.  We are not asking at this

21   stage for that to be resurrected.

22            THE COURT:  Right.  But why is that a solution then?

23   It is hard for me to imagine -- maybe you would have some

24   highly non-risk averse companies out there that are willing to

25   say, I am willing to run the risk that I could be criminally

1    prosecuted here, because I -- based on incidental take, I will

2    run that risk.  But my guess is that 99 percent of the

3    companies out there that are going to get these permits are

4    going to say, well, I can't go forward with the project anyway,

5    because I run the risk of criminal or civil liability.

6         MR. WOOD:  The vast majority of the projects in

7    Florida don't implicate incidental take.  And they would have

8    to make the decision for themselves.  Do they want to go the

9    additional step in getting incidental take coverage?  In many

10   projects -- we laid this out in our briefing, Your Honor.

11        THE COURT:  Right.

12        MR. WOOD:  Many of those projects do already go

13   through an incidental take process through Section 7 or through

14   Section 10.  For example, all of the highway projects we talked

15   about, those are projects that in and of themselves are funded

16   through Federal dollars, usually trigger a Federal review

17   process.

18        THE COURT:  Right.

19        MR. WOOD:  They have their own Section 7 mechanism at

20   their disposal, other projects trigger Section 7 for other

21   reasons, they might cross Federal lands, might be a

22   transmission line project, for example, and they cross Federal

23   lands.  They might have a Section 7 trigger anyway, but they

24   would have that decision.  So what we laid out in our

25   proposal -- again, we had two proposals responding to the

1    Court's conditions.  One was, may affect, Federalize, go to the

2    Corps.  That would, obviously, provide Section 7 coverage

3    because they would go through the Corps process.  We would give

4    the permit applicant the option, say do you want us to hold

5    your permit in abeyance, let it sit here and see where things

6    settle after a remand or appeal.  Do you want to have a

7    situation where the permit goes over to the Corps?  Of some of

8    them may very well want to pull their application back,

9    redesign their project to avoid any affect on species, which

10   can be done, in which case it could come back to Florida.

11   Florida could process it because it wouldn't have any affect.

12   That was under the may affect federalized mechanism.  We

13   also --

14            THE COURT:  I was going to say -- the question I was

15   going to ask you is that I know you said that the Federal

16   government has raised concerns about a bifurcated approach in

17   which there is what might be determined to be a partial

18   assumption.  What is Florida's position on the lawfulness of

19   that?

20            MR. WOOD:  Florida has shared the concern of federal

21   defendants that a partial assumption is prohibited under

22   existing regulations.  But we think that this Court has

23   flexibility in fashioning an equitable remedy in a sense to

24   allow for a period of stay where permits could be transferred.

25   We tried to accommodate this Court's condition.  We also have

1    explained, Your Honor -- we do think there was a

2    misunderstanding perpetrated by plaintiffs relative to what

3    happens, not just with New Jersey, but the baseline.  And, for

4    example, whether a permit is federalized is not the same thing

5    as Federal review.  And if a permit is under Federal review

6    under part 233, that does not mean that permit goes through

7    Section 7 consultation.  In this Court's opinion respectfully,

8    the very page before you set the conditions, you addressed New

9    Jersey's federalization and spoke of it in terms of federal

10   review and triggering consultation.  And we think --

11            THE COURT:  Right.  Fair enough.  I have to say, I

12   really think that you are pushing the bounds of fair argument

13   in accusing plaintiffs here of misleading the Court.  Because I

14   fully understood everything you are saying here.  And it is

15   true that I used the term federalize in a relatively colloquial

16   way at times in the opinion, which by the way is exactly --

17   where it originally comes from in my mind is from the

18   administrative record and the way the Federal record used the

19   word in describing New Jersey.  But I completely understand how

20   it works in New Jersey.  And none of this makes any difference

21   to the Court's decision, because I understand.

22            The ultimate question is one of whether there is an

23   appropriate incidental take statement and whether you can do it

24   at programmatic level.  And in New Jersey, I understand that if

25   you want that type of incidental take protection, there are one

1    of two mechanisms for it.  You can either get the Section 10

2    incidental take protection or under the New Jersey agreement,

3    you can, at times, if the Federal government objects to the

4    issuance of the permit, it can then be resolved by the Corps.

5            MR. WOOD:  But, Your Honor, that is the exact same

6    process that happens in Florida.  It is the exact --

7            THE COURT:  It is not.  It is not.

8            MR. WOOD:  The 233 process, the objection process, is

9    the same process that is used in Florida.  It is the baseline.

10   The BiOp and the ITS was above and beyond that baseline.

11           THE COURT:  But you may be right if there is not

12   incidental take protection.

13           MR. WOOD:  That is right.

14           THE COURT:  But you are the ones who went to the EPA

15   and said, you actually have to do a BiOp here and you actually

16   have to do an incidental take statement.  And I concluded based

17   on that that the BiOp and the incidental take statement were

18   not proper.

19           MR. WOOD:  That is right, Your Honor.  But the

20   Federal review procedures that protect species in the may

21   affect context is part of the baseline part 233 framework that

22   applies irrespective of whether there is a BiOp or ITS.  The

23   BiOp and ITS was additive.  It was additional.  Florida

24   committed to do a lot additional steps, including incorporating

25   every requirement of Fish and Wildlife Service and every --

1          THE COURT:  You stood in front of me and said,

2     Florida would not have sought the assumption, if it could not

3     have incidental take protection for the individuals.  You can

4     go back and look at the record.  You want to talk about

5     statements to the Court, you told me that.

6          MR. WOOD:  At the time, it was very important that

7     Florida have incidental take coverage.

8          THE COURT:  That is what motivated the whole thing.

9          MR. WOOD:  Right.  But, again, we respect and

10    understand this Court has ruled on February 15th and vacated

11    the BiOp and ITS.

12          THE COURT:  Right.

13          MR. WOOD:  What we are beseeching from this Court

14    today is in response to this Court's invitation to seek a

15    limited stay with two conditions.  We did seek a stay under the

16    two conditions.  We provided a mechanism.  That mechanism

17    provides no incidental take coverage and does require

18    federalization.  We also have a fallback position where we

19    said, Your Honor, with the species review process in place,

20    where every permit that is issued by Florida at the time of

21    application, goes before Fish and Wildlife Service for review.

22    And every condition that they give us, we put in the permits.

23    That if there is a need for jeopardy -- if there is a jeopardy

24    scenario, which is what triggers the objection process under

25    the regulations --

1            THE COURT:  Right.

2            MR. WOOD:  Then clearly we follow that.

3            THE COURT:  I'm sorry.  You said clearly we follow

4    that?

5            MR. WOOD:  Yes, Your Honor.

6            THE COURT:  What does that mean?

7            MR. WOOD:  That means in Florida if there is a

8    situation under the part 233 process and the 404(b)(1)

9    guidelines, if there is a scenario where a permit would be

10   issued that would jeopardize species, EPA, Fish and Wildlife

11   Service provide the objection.  Florida has to correct it to

12   make sure that doesn't happen.  And if they do, then there is

13   no -- there is no problem, because they can continue issuing

14   the permit under the part 233 framework.  That is what New

15   Jersey does.  That is not what Michigan does.

16           THE COURT:  That is not how the statute operates.

17   The statute operates is that you actually do the BiOp and the

18   incidental take if -- I don't have the words in front of me

19   right now.  But it is not the will jeopardize, but it is may

20   affect or words, something to that affect.  That is what then

21   triggers that process.

22           And the problem I have -- I mean, there is no point

23   in sort of rehashing my opinion, other than to say that to the

24   extent you are asserting that I didn't -- I was misled.  I

25   wasn't misled about anything.  And there is not a lot of point

1    in rehashing it.  But the point here is that you cannot sort of

2    create an alternative universe to the one that Congress

3    legislated.  And we are bound by the one that Congress

4    legislated.  It is not enough to say, well, don't worry, we

5    will separately protect animals and we will make sure they are

6    not jeopardized.

7            MR. WOOD:  Yes, Your Honor.  We fully understand

8    that.  We understand the Court's ruling.  This Court has set

9    side the BiOp and ITS.  We are living in a world where that is

10   set aside and we are looking only at the underlying part 233

11   and 404(b)(1) process.

12           THE COURT:  Right.

13           MR. WOOD:  That is the world we are living in.  What

14   we have proposed to you is a mechanism that would on one hand

15   comply with this Court's decisions; on the other hand, suggest

16   that because of the Federal review process that is in place,

17   the same process New Jersey uses, the same one that Michigan

18   uses, the same one that Florida uses at the baseline level,

19   that that accommodates this Court's concern and assures that no

20   permit would be issued that causes incidental take.

21           THE COURT:  The concern I have about those proposals

22   now then is that either scenario, either the one in which the

23   permits that may affect a listed species go to the Corps or

24   the -- well, starting with that one, the -- you need the

25   cooperation of the EPA and Fish and Wildlife Service for that

1    to work.  And they have said that they think it is not

2    practical.  So that is the concern I have with that one.  And

3    the concern I have with the other alternative universe approach

4    is that it is either a version of that and reduces to a version

5    of that or I am sort of struggling with what purpose it serves,

6    because to the extent that you maintain the ability to approve

7    permits that actually may affect listed species, it is just

8    hard for me to believe that there are many, if any, developers

9    that are willing to run the risk of going forward with a

10   project that may affect a listed species without any type of

11   incidental take protection.

12          MR. WOOD:  With regard to practicability, it is the

13   process that works in New Jersey.  It works in Michigan.  It is

14   the process that work in Florida for three years.  We don't

15   think federal agencies would have a difficult time continuing

16   to participate in that process.  They simply would receive the

17   applications as they do currently.  They get every application.

18   They review it for whether it has an affect on species.  They

19   provide Florida with their views.  What Florida has said, if

20   Fish and Wildlife Service or EPA or National Marine Fisheries

21   Service or Florida Fish and Wildlife Coordinating Conservation

22   Commission raised a may affect concern, we would treat it that

23   way.  That is under the condition this Court has given us.

24          If we lived in the other world, which the baseline

25   condition -- which we understand you don't seem inclined to

1    want to grant, which we understand -- there would be the same

2    process that is used in the part 233.  It is the same as in

3    Michigan, New Jersey and Florida currently.  But, again, no one

4    gets incidental take coverage.  And that would be a decision

5    for the permit applicant.  What we propose is the opportunity

6    for them to say, okay, great, please hold our application in

7    abeyance, we don't want to move forward with it.  Or we want to

8    take it back and redesign the project to avoid any affect so

9    Florida can issue.  Or let us go to the Corps and we'll go and

10   apply for our permit that way.  Again, this is in the context

11   of a stay order issued by this Court fashioning a remedy that

12   minimizes severe disruptions of vacatur while also allowing the

13   agencies to chart a new source or seek appeal.

14            THE COURT:  But that sounds to me an awful lot like

15   the first option, because you are saying that they can go to

16   the Corps or they can redesign their project, which --

17            MR. WOOD:  I should be clear.  I misspoke.

18            THE COURT:  Go ahead.

19            MR. WOOD:  That was under the first condition this

20   Court has set.

21            Under the second approach, we would be using the same

22   Federal review process right now.  And they would basically run

23   through it.  If they do get a permit, they actually would hold

24   the permit.  It would be a Florida 404 permit as opposed to a

25   Corps permit under the Corps process.

1          THE COURT:  Right.  But if they get that Florida 404

2     permit and their project is one that may affect a listed

3     species, it is hard for me to think we ought to do backflips to

4     do this thing that no one is going to want to do.

5          MR. WOOD:  But may affect is coextensive with

6     incidental take.  May affect may be a beneficial affect.  May

7     affect may not be an adversely affect.  It certainly doesn't

8     mean jeopardy.  And it doesn't mean -- and its own take

9     statement is required.  Its own take statement is required

10    where a take is reasonably certain to occur.  It is not just a

11    may affect situation.  So a developer may want to come in and

12    say, we'll take our chances.  I doubt they will.  I think you

13    are right.

14         THE COURT:  But a BiOp is required if it may affect;

15    right?  Some sort of BiOp or that analysis is required; right?

16         MR. WOOD:  No.  Actually, Your Honor, that is not

17    correct.  So under the ESA consultation process, Section 7, in

18    formal consultation, which does not involve the Biological

19    Opinion at all, that is a may affect.

20         THE COURT:  Right.

21         MR. WOOD:  So the may affect, you do an initial

22    informal review.  It is only if it is likely to adversely

23    affect a listed species or modify designated critical habit

24    that you then go into a formal consultation.  Very few

25    projects -- very few projects actually go down that road.  This

1   has been fully briefed in this case, not just in Florida but

2   nationwide.

3          THE COURT:  Right.  I understand.

4          MR. WOOD:  So the developers, who might be an

5   apartment community, a school building, a transmission line, a

6   solar energy project, it doesn't matter.  They may very well

7   look at their project and say, this is not an incidental take

8   scenario.  And the agencies would probably agree and there

9   would be no need for take.  And Florida is saying, we can

10  continue to process those permits without any issue.  There

11  will be no harm to species, it would minimize severe

12  disruptions and allow a process to chart a new course or seek

13  appeal.

14          Thank you.

15          THE COURT:  All right.  Thank you.

16          MR. WOOD:  Should I go to the second motion?

17          THE COURT:  Yeah, why don't you.

18          MR. WOOD:  Can I get water just --

19          THE COURT:  Yes, of course.

20          MR. WOOD:  So on the second motion for entry of

21  judgment, Your Honor, there is an irony here that we have

22  flagged in our reply brief as plaintiffs have suggested some

23  prejudice from entry of judgment in this case at this stage.

24  It was plaintiffs that stood here just a few months ago and

25  urged this Court to enter PI and TRO on the same ESA claims

1     that this Court ruled on.  They sought to enjoin two specific

2     projects.  Instead this Court issued its February 15th ruling

3     and order and vacated the entire BiOp, ITS and the program.

4     That if you had granted their PI, TRO, that would have been

5     immediately appealable.  And that is the situation we would be

6     in today.

7               But instead because of this Court's decision, we have

8     now gone almost two months without the opportunity to have an

9     appealable order which we think is due in the case.  At a

10    minimum, this Court has discretion to enter judgment.  And this

11    Court should enter judgment.  You could do so under Rule 58(d).

12    We think that makes the most sense here, because this Court has

13    already granted complete relief.  This Court pulled the plug on

14    the Florida 404 program.  And what plaintiffs are advocating is

15    for this Court to continue pulling that plug further and

16    further away from the wall.  This Court has already pulled the

17    plug.  There is no more relief that this Court can grant the

18    plaintiffs.  And in that scenario, we think Rule 58(d) exists

19    for an entry of judgment.

20              THE COURT:  Before I did that then, wouldn't I have

21    to dismiss the remaining counts as moot?

22              MR. WOOD:  We think this Court should dismiss the

23    remaining claims as moot.  We think they are moot, because

24    there is no longer any decision this Court could issue that

25    would alter defendants' conduct in this case or defendants'

1    behavior.  There is no program that is approved right now,

2    program in place.

3            THE COURT:  What if I approve your stay?

4            MR. WOOD:  Federal defendants have raised that point.

5    In our view and we briefed this in our response is that under

6    this Court's equitable authority, you can fashion a remedy that

7    stays -- that alters your stay in some way, allows a limited

8    period of stay for Florida to continue operating permits.  And

9    that doesn't change the fact that there is still final or a

10   moot claim.  And the reason that is the case, Your Honor -- and

11   we think it happens routinely in other context, where a court

12   will decide to enter final judgment and go ahead and proceed

13   with also granting a stay at the same time -- a stay of the

14   remedy order or some other stay.  And the Court doesn't have to

15   actually necessarily rule on each of the independent claims.

16   We do think you should.  We think you should.  It would be fine

17   to dismiss the remaining claims as moot.  And they could

18   certainly resurrect those claims down the road if they needed

19   to.

20           THE COURT:  But don't I have to?  I don't know how I

21   could possibly enter final judgment without resolving the

22   claims.

23           MR. WOOD:  We have argued they are moot and we think

24   you should.  We think those claims are moot.  The Rivers and

25   Harbors Act claim, the Clean Water Act claim, those claims no

1    longer are live or viable or have no affect.  An opinion by

2    this Court would be advisory at best.  We think that this Court

3    rendered a definitive judgment, not just that the BiOp, ITS was

4    invalid, but you also vacated the entire program.  You pulled

5    the plug on the program.  They want you to keep pulling that

6    cable further and further from the wall.  We don't think that

7    is the role of this Court.  We think that a timely entry of

8    judgment under 58(d) would be sensible.  It would be the normal

9    course.  And courts routinely enter judgments and rulings

10   addressing just a handful of claims and not all of the claims.

11   We have briefed or cited the *Coal River* case, Your Honor, which

12   involved the 2008 Stream Buffer Rule.  That rule was challenged

13   under the SMCRA statute, the Surface Money Statute, as well as

14   Clean Water Act, NEPA and the APA.  And the 2008 rule was

15   invalidated and vacated on the basis of the SMCRA claims.  And

16   the Court never reached and essentially dismissed, entered

17   judgment allowing appeal on the other claims, Your Honor.  We

18   think that is the basic situation here.  And we think it makes

19   sense that given the Court's significant decision and the

20   significant -- essentially pulling the plug on the entire

21   program, that entry of judgment under 58(d) is the right way to

22   go.

23           Plaintiffs have argued that mootness exceptions might

24   apply.  We don't think this is capable of repetition and

25   evading review, because they would have the opportunity to seek

1    review of other issues, other claims later.  And we don't think

2    this is a situation where Florida is manipulating the program

3    or manipulating the situation to avoid judicial review as you

4    might have under the other exception to mootness.  So we think

5    that 58(d) is the right way to go.  We had previously asked the

6    Court for 54(b) relief.  That was in anticipation of a decision

7    we had not yet read.  And we didn't know the extent to which

8    this Court --

9            THE COURT:  That is why I denied that request as

10   premature.

11           MR. WOOD:  That is right.  But you invited us,

12   allowed us to seek an additional review of that decision, which

13   we appreciate.  And we have moved for that entry of partial

14   judgment under 54(b) as an alternative.  And we think that --

15   again we think that 58 is the right approach.  But if this

16   Court was not inclined to do 58, we would go with 54(b).  They

17   are separate and distinct claims.  We have the ESA claims that

18   this Court ruled on.  Those are separate and distinct from the

19   Clean Water Act and APA based claims and Rivers and Harbor Act

20   claims.  And we think that justice would support an entry of

21   judgment under 54(b) as well, given the very factors that we

22   have already talked about:  The urgency of the situation with

23   opportunities to rehabilitate and the like.

24           THE COURT:  I mean, I don't disagree with you on the

25   proposition that this case is one that should get to the Court

1    of Appeals.  I guess, I am a little less confident than you are

2    about the urgency.  Because even if the Court of Appeals were

3    to move with this with relative expedition, I think that we are

4    in a situation in which the Corps would need to, at least in

5    the interim, take it over.  And the Corps would have to start

6    processing the permits.  Because you are not going to get a

7    decision from the D.C. Circuit in the next six months I think

8    under the best of possible circumstances.  I think that under

9    those -- I think it is probably the universe in which the Corps

10   is going to have to start processing the permits again, which

11   is something that is not unanticipated under the statute, which

12   recognizes circumstances in which the EPA may rescind an

13   assumption.  And it is also understood there can be some

14   disruption when it passes from the Corps to the State.  And so

15   I think it is not something entirely unanticipated by Congress,

16   but I don't know how you avoid that situation in any event --

17              MR. WOOD:  In the scenario --

18              THE COURT:  -- absent a stay.

19              MR. WOOD:  In the scenario where a program is

20   transferred from the Corps to the State, there is lead in and

21   an opportunity -- and people know it is coming and they get

22   adjusted and they make -- and that even took time, as this

23   Court knows.  When Florida received the program, there was

24   delay.

25              But in the process of withdrawing a program, that

1    also takes time.  There is a process.

2              THE COURT:  Right.

3              MR. WOOD:  It would be done in a workable way.  Here

4    we had the program cut off immediately in one day, the day of.

5              THE COURT:  Maybe, but you have known for a couple

6    months now as well.  And people have known and the Corps, as I

7    understand, is ready to accept permit applications right now.

8              MR. WOOD:  We didn't expect the Court to vacate the

9    Biological --

10             THE COURT:  I am talking about since February 15th.

11             MR. WOOD:  Okay.  Yeah, that is right.

12             But we also think, Your Honor -- and I am just

13   telling you what I am hearing from people across the state of

14   Florida, leadership within the State of Florida government, as

15   well as state courts throughout the state that they want

16   Florida to continue operating the program.  They will do it

17   without affects to species.  They will follow the conditions

18   the Court has set.  But they also want their opportunity to get

19   an expedited appeal, because we think -- the State of Florida

20   believes that this Court's decision on February 15th was

21   incorrectly decided and they would like an opportunity to take

22   it up to the D.C. Circuit.  And we will ask the D.C. Circuit

23   for expedited review.  Granted, you may be right, they may not

24   do it as quickly as we wish.

25             THE COURT:  I have no idea what they will do and I

1    don't presume to opine on what they would do.  My point was

2    just that even if they did expedite it in a highly expedited

3    fashion, getting something decided in six months would be

4    quick.

5            MR. WOOD:  This gets to core of State water resources

6    management issues.  This goes to the heart of what states have

7    traditional responsibility over.  And Florida is going to move

8    as quickly as possible to seek relief.

9            THE COURT:  Okay.  Fair enough.  Anything else?

10           MR. WOOD:  No, Your Honor.  Thank you for your time

11   and thank you for being here.

12           THE COURT:  I guess I should hear from the United

13   States next and then I can hear from the plaintiffs.

14           Mr. Coughlin.

15           MR. COUGHLAN:  Good afternoon, Judge Moss.  I want to

16   start off by giving you the Corps' perspective about the state

17   of play of Section 404 permitting in Florida today.

18           THE COURT:  That would be helpful.  Thank you.

19           MR. COUGHLAN:  I think it is different from what you

20   just heard from Mr. Wood.  And I think those differences

21   between the Corps' perception and Florida's are important for

22   resolving certainly the motion for limited stay of the vacatur.

23           THE COURT:  Okay.

24           MR. COUGHLAN:  So as of February 15th, there were

25   about 1,000 permit applications pending before the State of

1    Florida.  The Corps has identified and allocated resources to

2    process those permits.  And it starts with the Jacksonville

3    District of the Corps, which is the office that has handed

4    Section 404 permitting in Florida since forever,

5    pre-assumption.  And I want the Court to understand there are

6    more people in the Jacksonville district today to process

7    section 404 permits than there were before state assumption.

8    And it is not just a couple more, it is a couple dozen more.

9    In addition to the Jacksonville district, there are four other

10   districts within the South Atlantic division.  And the Corps

11   has identified people in the other districts and the South

12   Atlantic division as well as Corps headquarters who can help

13   with the anticipated surge of permits given the number of

14   permits that were pending before Florida.

15           And I say the anticipated surge, Your Honor, because

16   Florida has not transferred permits to the Corps yet.  The

17   Corps is prepared to process those permits.  But if those

18   permits exist in a state of regulatory limbo today, I want the

19   Court to understand it is not because the Corps has not taken

20   steps to comply with the Court's order of February 15th.  The

21   Corps is ready to process those permits.

22           Now, notwithstanding the fact that we haven't gotten

23   permits from Florida yet.  We have had meetings at the Corps

24   with quite a few project proponents, including project

25   proponents who have permits that were pending before Florida as

1    of February 15th.  And a number of those entities have

2    congressionally approved agreements with the Corps to seek

3    expedited Corps review of Section 404 permit applications for

4    priority projects.

5         And I want to highlight that in particular, because

6    one of those entities is the South Florida Water Management

7    District.  And it has identified the Everglades Restoration

8    Projects that Florida mentions in its brief as projects for

9    which they want expedited Corps review and the Corps has agreed

10   to give expedited review to those projects.

11        THE COURT:  What is congressionally approved

12   expedited review?

13        MR. COUGHLAN:  So I don't know all of the details,

14   Your Honor, but my general understanding is that there are

15   congressionally approved agreements that some entities have

16   with the Corps that allow them to provide resources to the

17   Corps to help the Corps expedite review of those projects.

18        THE COURT:  Is it part of the appropriations process?

19        MR. COUGHLAN:  I couldn't tell you.

20        THE COURT:  Fair enough.

21        MR. COUGHLAN:  For those folks who don't have one of

22   the congressionally approved expedited review agreements, I

23   want to emphasize that a project will not go to the back of the

24   line just because the applicant had previously applied to

25   Florida.  The idea here is that the Corps will, as much as

1      possible, pick up where Florida left off, to the extent that

2      the information submitted to Florida satisfies the Corps'

3      requirements.  And I think the Corps' hope here is that a

4      project that got pretty close to the end of the line in

5      Florida, because of the work that went into preparing the

6      documents for Florida, will get through the Corps' process

7      faster.  That is the hope.  But I just want to emphasize again,

8      you are not the -- the Corps' intention here is not to make

9      people start from square one, it is to do this as efficiently

10     as possible.

11              THE COURT:  Thank you.

12              MR. COUGHLAN:  Backing up a little bit.  I mean, I

13     think the Corps is open for business today.  I don't want to

14     sugar coat the disruptive consequences of vacatur, but what I

15     want to emphasize is that the Corps has made a real effort to

16     minimize those disruptive consequences of vacatur by taking

17     steps to comply with the Court's February 15th order.  And we

18     don't think that the state of play in Florida right now is

19     regulatory limbo.  We think it is perhaps a transitionary

20     period.  But the state of play is the Corps processing permits.

21     It has done that for decades.  It is familiar to the regulated

22     community.  I think the efforts the Corps has made really cut

23     against granting the limited stay of the vacatur.

24              I think there are a number of other reasons why the

25     Court should not grant that motion.  I'd like to talk about

1    those as well if I could.

2            THE COURT:  Okay.

3            MR. COUGHLAN:  We have legal concerns with the relief

4    that Florida is seeking, by way of that motion, and we have

5    practical concerns.  I will start with the legal concerns.  I

6    think topline legal concern is that any order granting

7    Florida's limited stay of the vacatur is going to, in effect,

8    create a modified state Section 404 program.  I think that is

9    an unavoidable consequence of the relief that they have sought

10   here.  And it is a modified Section 404 program that EPA hasn't

11   approved.  We think that that outcome is just at odds with

12   bedrock principle of administrative law that in an EPA case

13   like this one, the Court's role is to point out the legal flaw

14   in an Agency action and then let the Agency fix the problem,

15   rather than try to fix the problem by creating a new regulatory

16   scheme by way of Court order.

17           Setting aside that general objection, we have a more

18   specific objection in this context, which is that a state

19   program in which Florida only processes no affect permits is a

20   partial assumption.  And we think that is flatly inconsistent

21   with the EPA's Section 404 assumption regulations and, in

22   particular, 40 CFR Section 23.1(b), which says flatly no

23   partial assumption.

24           Our third line legal objection here to the partial

25   stay of the vacatur is that we just don't see any statutory or

1    regulatory mechanism that would allow EPA and the Corps to sort

2    of jump in and assume authority over permits submitted by

3    Florida based only on the fact that that permit was a may

4    affect project.

5              I do want to talk a little bit about some of the

6    practical concerns we have with this kind of limited stay of

7    the vacatur and bifurcated state and federal program as well.

8    And I think, you know, big picture practical concern we have is

9    that it is just extremely inefficient and duplicative.  I think

10   the process that Florida contemplates has some regulator making

11   an initial no affect, may affect determination.  And that is

12   sort of a regulatory filter.  The person who makes that

13   decision is going to have to know a fair amount about that

14   project to make that call, because that is not going to be

15   obvious on the face of the permit application.  So they are

16   going to have to know something about the actions that are

17   contemplated, the timing of those actions, the site, read up on

18   any BiOps that govern that action area.

19             And that all of that is going to take time.  If you

20   are a project proponent or somebody who is a proponent of

21   efficient government, you are going to want the person who did

22   that initial review to be the person who processes the permit.

23   But in this system of bifurcated federal and state review,

24   there is a likelihood that that permit application after that

25   initial review just gets passed to somebody at a different

1    agency who has to pick it up cold and start from scratch.

2        The other thing I want to make sure the Court

3    understands is that the idea of a definitive initial screen

4    about may affect and no affect is a little bit artificial.  In

5    reality, these permit applications are dynamic.  They can

6    change over the course of the application process.  That might

7    be because of back and forth with the regulator, it might be

8    because of the business decision by the project proponent.  But

9    it is entirely foreseeable that you would have a situation

10   where a project that maybe looked like a no affect project on

11   day 1 may turn out to be a may affect project further down the

12   road.  And if that happens -- and may affect is sort of the

13   regulatory razor that, you know, sends a permit to Corps or to

14   the State.  Then you might have a situation where a permit

15   changes hands not once, but multiple times over its lifespan,

16   which just compounds that inefficiency.

17       I also want to make the Court understands the Corps

18   has operating procedures in place that don't contemplate this

19   process.  When the Corps gets a permit, the first thing it does

20   is it does a completeness determination that is driven in part

21   by its regs.  And to make a completeness determination, you are

22   going to look at a lot of things that aren't necessarily

23   germane to a may affect, no affect call.  I realize it might

24   sound easy to say, why don't you do the may affect, no affect

25   call first?

1          And I think that is easier said than done.  You have

2     got a big organization.  You have got standard operating

3     procedures that have been honed by decades of experience.  And

4     to just say, change the way you do it, it is not as simple as

5     that.  It is going to take time.  It is going to take

6     resources.  It is not going to be smooth.  And, I mean, all of

7     this in a service of a limited stay, when the Corps' time, we

8     submit, would be better spent processing the permits that it

9     has the authority to process now.

10          The last point I want to make on this is that I think

11    Florida and the Corps have very different views about the ratio

12    of no affect and may affect projects.  Florida has said in its

13    briefing it thinks that ratio is something like an 80/15 split.

14    I think, in the Corps' view, it is probably something closer to

15    the reverse.  In any event, I think the Corps thinks that the

16    vast majority of projects that it sees in the state of Florida

17    are what it would classify as may affect projects.  I think

18    that is important for two reasons.  The first is, it suggests

19    there will be disagreements between Florida and the Corps that

20    would just add friction to what is already an unwieldy, in our

21    view, an illegal bifurcated process.

22          And I think the other reason it is important to

23    acknowledge this is if the Corps is right about that split

24    between may affect and no affect, you are dealing with a

25    relatively small proportion of projects in Florida.  So you are

1    really getting spun up to create this gerrymandered custom

2    state program in the context of a partial stay of the vacatur.

3    And it might be not for that many --

4            THE COURT:  What happened to the other 5 percent in

5    the 80/15 split?

6            MR. COUGHLAN:  If I said 80/15, I meant 85/15.

7    Sorry.

8            THE COURT:  Thank you.

9            MR. COUGHLAN:  So for all of the reasons, Your Honor,

10   we would just urge the Court to deny the motion for the limited

11   stay of the vacatur.

12           THE COURT:  What are your views with respect to

13   whether I should enter final judgment or partial final judgment

14   or none of the above?

15           MR. COUGHLAN:  We think that the claims are moot as

16   of the Court's entry of vacatur.  We think the Court should

17   deny the motion for limited stay and dismiss without prejudice

18   the remaining claims as moot.  If you want to do it in the

19   other order, we have no problem with that.  But we have no

20   position on partial final judgment.

21           THE COURT:  Okay.  Thank you.  All right.  I will

22   leave it up to the plaintiffs which order you want to go in.

23           MS. REICHERT:  Good afternoon, Your Honor.

24           THE COURT:  Good afternoon.

25           MS. REICHERT:  As my colleague, Ms. Galloni,

1    mentioned, I will be speaking about Florida's motion for a

2    stay.  To start, Florida has failed to carry its burden to

3    demonstrate that a stay is appropriate and warranted here.  The

4    factors that we have identified applied with D.C. Circuit

5    include where the parties have agreed that a stay is

6    appropriate, where confusion would result from immediate

7    vacatur or where there is an implication of substantial rights

8    being deprived as a result of an extended remand before an

9    agency.  And none of those are present here.  As you have heard

10   from the Federal government today, they oppose a stay saying

11   that it would be unworkable and time would be better spent for

12   the Corps to just process permits.

13         Second, Florida's proposed stay would create more

14   confusion, likely the same disruption it claims it is trying to

15   prevent here.  And it perpetuates the ESA violations that this

16   Court has ruled upon.

17         Third, neither Florida nor the developers have really

18   identified any substantial rights that would be deprived during

19   vacatur.  The most that they can point to is the potential for

20   delay in issuance of permits.  And we have heard today from the

21   Federal defendants that the Corps is ready and up and running.

22   We know developers have already started resubmitting their

23   applications to the Corps even if Florida hasn't started

24   transferring those permits over.

25         If there are no further questions, Your Honor --

1          THE COURT:  All right.

2          MS. REICHERT:  -- I am happy to let Ms. Galloni

3    speak.

4          THE COURT:  All right.  I don't have any other

5    questions at this point, so let me hear from Ms. Galloni.

6          MS. GALLONI:  Thank you, Your Honor.

7          We would urge the Court to deny the motion for final

8    judgment, because plaintiffs' remaining claims are not moot.

9    The question is whether there is still a live case or

10   controversy.  And the fact that Florida intends to appeal the

11   decision, which it has made very clear means the case is not

12   moot, that the initial basis for relief that the Court has

13   found could be removed by reversal on appeal and that we would

14   be back to square one with all of the remaining claims

15   undecided.

16         THE COURT:  Are there cases that -- any cases that

17   say that and support that notion that, where there are multiple

18   claims in a case and the Court grants complete relief with

19   respect to some of the claims, that the Court should,

20   nonetheless I suppose, enter partial final judgment under Rule

21   54(b) to permit an appeal?  Because I can tell you that you are

22   not going to find a judge in the entire country who thinks that

23   they should have to rule on every, single claim asserted in

24   every, single case.  Because even when they have concluded that

25   someone is entitled to complete relief because those claims are

1     not moot and they have to be resolved before there can be an

2     appeal.  We do it every day.

3          MS. GALLONI:  Sure.  But I think while the Court has

4     vacated EPA's approval of Florida's program, it has not granted

5     complete relief.  Because if that changes, all of the other

6     bases that also warrant vacatur of Florida' program, the

7     inadequate criminal enforcement scheme, the failure to comply

8     404(b)(1)'s no jeopardy requirement, which Florida continues to

9     say, no, we are meeting that too, recognizing that is still an

10     adjudicated claim, all of these things can spring back to life.

11     And if the claims have been dismissed as moot because of a

12     premature final judgment, we also run the risk of preclusion

13     should there be a statute of limitations issue.

14          We understand that the Federal government has flagged

15     a case where it seems that the Circuit Court started the clock

16     over again.  But it is a six year statute of limitations for

17     challenges like this.  And a dismissal of our remaining claims

18     as moot, it is not clear that the clock would not continue to

19     run.  And that is an undue burden and risk to impose on the

20     plaintiffs that those timely filed claims would never be able

21     to be adjudicated.  The case comes back, all of those other

22     violations are still there.  We are still prejudiced and harmed

23     by them, but we have lost the opportunity to challenge them.

24          This Court has invested so much time and resources,

25     as have the parties, the claims are fully briefed.  They have

1    been argued on summary judgment.  There has been extensive

2    briefing.  There has been oral argument.  They are ripe for

3    decision.  What would serve judicial economy in the long run

4    and really avoid delay in the long run is to have all of the

5    claims adjudicated now.  Florida has previously said, this case

6    should be considered in its totality so the parties know what

7    the universe of things is that they are dealing with.  And the

8    same is true here because whatever happens with the ESA claims,

9    there are still all of these unresolved issues.  Florida is

10   intent on pursuing assumption -- and that has been clearly

11   shown today -- whatever way it can.

12           THE COURT:  I understand your point about the statute

13   of limitations.  I guess, I am not at all confident that I have

14   jurisdiction to consider claims on the possibility that maybe

15   the D.C. Circuit might reverse my decision someday.  I mean, as

16   things currently stand, I think I have granted all of the

17   relief I think I can grant in the case.  And it is possible

18   that something would happen down the road that might change

19   that, but that seems very speculative.  And I hope you are as

20   confident as I am that the D.C. Circuit will see things the way

21   I see them.  But as I said, I am not going to stand in the

22   shoes of the Court of Appeals.  They will give everything --

23   all of the arguments their careful consideration they deserve.

24   But it would seem very odd for me to adjudicate claims where I

25   have already issued an order that vacates the Agency actions

1    that are at issue.

2        MS. GALLONI:  I think if you look at this Court's

3    decision, the Circuit Court's decision in *Celtronix* and the *Air*

4    *Line Pilots Association* from the Seventh Circuit that Florida

5    cited, they both articulate the principle, this is not about

6    jurisdiction.  You have the jurisdiction to decide the

7    remaining claims because they are bases for relief.  It is

8    reasons for granting relief.  It is whether a case becomes moot

9    is the Article III consideration, not the reasons for the

10   relief and that reasons can change.

11       THE COURT:  That is an argument you might have more

12   forcefully made to me before I indicated that what I would like

13   to do is address the ESA issues first at this point.  I know

14   you wanted me to address everything.  But having actually

15   entered an order in which I am vacating the action, that

16   strikes me -- puts me in a very different posture than those

17   other cases.  It is true, judges all of the time, including

18   this judge, will say, I agree with you on this theory and if I

19   am wrong about that, I agree with you on that theory as well.

20   And so here are two reasons why you are entitled to relief.

21       But having granted you the relief you are seeking, I

22   think it is not in the same posture anymore.  And it is no

23   longer saying, well, I can give multiple reasons.  Because I

24   have already granted all of the relief and now for me to go

25   back and say, okay, now I am going to have further proceedings

1  and decide whether to do more, there is nothing for me to do at

2  this point.

3            MS. GALLONI:  Well, I think there is declaratory

4  relief, for one thing, that can be granted.  But I will also

5  say, even if the plaintiffs prevail on appeal, which we expect

6  that we would --

7            THE COURT:  Right.

8            MS. GALLONI:  -- Florida intends to continue pursuing

9  assumption.  And so these other issues are unresolved and they

10  are also grounds for vacating Florida's program.  So if they go

11  and they fix the ESA violations, we still have an unlawful

12  program, because they have committed -- there is nothing to

13  make them change and fix those other areas.

14            THE COURT:  I think at this point, unless the D.C.

15  Circuit or Supreme Court disagrees with what I have done in the

16  case, at this point, Florida would have to submit an amended or

17  superseding assumption application to the EPA.  The EPA would

18  have to evaluate that and decide whether to approve it or not.

19  And then that would be the Agency action that would be subject

20  to review based on whatever the Agency record is rather than

21  based on what may have happened in the past.

22            MS. GALLONI:  I think that may be true.  I think it

23  depends on what the Court of Appeals does.  If this becomes a

24  remand situation or if it is just a total vacatur, start from

25  scratch, I don't think it is entirely clear what kind of

1    posture that would take.  But I will also say that the

2    mootness -- the alternate basis, it is clear that the Court has

3    jurisdiction to address the other bases for relief.  And that

4    what is really at issue is the administration of justice and

5    judicial economy.

6         THE COURT:  I guess I am not sure that -- I know that

7    is true in the cases that you cited to in that posture before

8    the Court enters an order granting relief.  Having entered that

9    order granting relief at this point, and that order as far as I

10   am concerned is fully effective and it actually is what

11   presumably prevented the State from approving the permits for

12   where you were seeking a preliminary injunction, so it is

13   immediately effective, that order.  And under those

14   circumstances, I am just not sure that you have standing.  And

15   I have to evaluate standing in each and every stage of the

16   proceeding.  And I don't know that you have standing where I

17   can't grant any additional relief.  And I don't think it is an

18   answer to say, well, declaratory relief -- because if the

19   declaratory relief only goes to what I have already ordered,

20   then you don't have standing to have me simply reinforce what I

21   have already ordered I think.

22        And if it is with respect to something else or some

23   other theory, for example, the Harbors and Rivers Act or

24   whatever it might be, there is -- I have already granted the

25   ultimate relief.  And it may be that would be relevant down the

1    road, but only if the EPA decides to reimpose or to grant a

2    further assumption in the future, unless the D.C. Circuit

3    disagrees with me.

4          Which leads me back to I think the only real question

5    in my mind is whether there is any authority for the

6    proposition that where there are multiple grounds and an appeal

7    will be taken, whether the Court should nonetheless somehow

8    maintain a foothold on the remainder of the case through 54(b)

9    or whether the Court should simply enter final judgment.

10          And I suppose the protection you may have, to the

11   extent you are concerned about the statute of limitations, is

12   that you could also drop a footnote in whatever brief you file

13   in the D.C. Circuit and say, if you disagree with Judge Moss

14   and you think that his decision should be set aside, you should

15   remand the case back to him, because he dismissed these other

16   claims as moot.  And should remand it to him to consider

17   whether those claims are still moot in light of whatever you

18   have done in the case.  And the D.C. Circuit could send it back

19   to me, if that were the case.  And I could, if necessary,

20   reconsider and say now it is no longer moot and you are right,

21   I should reach those issues.

22          MS. GALLONI:  I will point out, Your Honor, that the

23   other cases where the Court considered -- the cases that

24   Florida cites, many of them are cases where the Court granted

25   complete relief and this was the issue.  But where the Court

1  found the other claims moot was when that relief was complete

2  and irrevocable.  And it usually was because the government

3  conceded error, was not going to appeal, agreed to be bound by

4  the judgment.  The *Coal River* case is one of those where the

5  government requested vacatur.  It is very different

6  circumstances.  Here it is not irrevocable at all, because

7  Florida is very intent on appealing.  And I think there is no

8  question -- I don't know that we can find a case that is on all

9  fours.  But certainly the principles that are derived where --

10  from the cases where the Court find the claims moot, *Lewis v.*

11  *Becerra*, where the government had taken actions to show that

12  this would not recur or there had been a statute passed by

13  Congress that showed this could not happen.

14          THE COURT:  Are you talking about the capable of

15  repetition yet evading review?

16          Because I am not sure that doctrine is one that

17  applies here, because it wouldn't evade review.  And it may be

18  capable of repetition.  And if the D.C. Circuit disagrees with

19  me and the case comes back down, at that point I think I

20  probably could ask that I reconsider the dismissal of the moot

21  claims at that point.

22          Or even if that weren't the case, and I still don't

23  think you would be evading review, you could still challenge

24  those actions, I suppose, subject to the statute of

25  limitations.  And if the statute of limitations became a

```
1    concern at some point --

2              Remind me what year it was that the --

3              MS. GALLONI:  2020.

4              THE COURT:  2020.

5              MS. GALLONI:  We are in 2024.

6              THE COURT:  So you would have until '30 or '26 I say,

7    right.  Yeah.

8              So, I mean, I truly don't know -- I have to say I do

9    believe that the right answer is that this case should go to

10   the D.C. Circuit.  And we can talk about Rule 54(b), but I am

11   not convinced, in any event, that the claims are so intertwined

12   that it shouldn't be under Rule 54(b).  I just don't know as a

13   technical matter whether the right answer -- and that is one of

14   the reasons I wanted to have the status conference here was to

15   talk about this, whether the right answer was to just enter

16   final judgment and dismiss the other claims without prejudice

17   as moot.  And then allow you to simply say to the D.C. Circuit

18   if you want to, if you remand -- or if you disagree with Judge

19   Moss, remand to him because there are still other claims there

20   that he would have to consider on remand.  Or whether the right

21   answer is to do a 54(b) and --

22             The concern I have is 54(b) is in part

23   jurisdictional.  And I would hate for the case to get up to the

24   D.C. Circuit and the D.C. Circuit to say, this should have been

25   58 and not 54(b).  And therefore, well -- I don't imagine they
```

1    would say, we don't have jurisdiction because they would then

2    simply say it should have been 58.  I suppose they might remand

3    it to me to then say 58 and then take the appeal again, which

4    would just be a waste of six months.  So at this point, I am

5    trying to figure out as a purely technical matter, what the

6    right answer is here.  And I have to say, my instinct is that

7    Rule 58 is the right answer and the claims are moot at this

8    point.  And I am sympathetic to your concern about the statute

9    of limitations.  I think there is a way to manage that.

10              MS. GALLONI:  I am not so sure.  And I think it is a

11    big risk to impose on the plaintiffs, because it is

12    jurisdictional, the statute of limitations.  I think that is a

13    big risk to put on the plaintiffs.  I will say on the capable

14    of repetition, but evading judicial review, we make an argument

15    why that exception would apply.  But we don't rely on it

16    primarily because, as a matter of law, we believe the claims

17    are not moot.  This complete relief question, again, has come

18    up where the relief that has been granted is irrevocable.  This

19    Circuit has said, if a higher court of review might remove the

20    first reason for that relief, that means the other bases are

21    still live.  So that is exactly the principle here.  They may

22    remove that.  We have other bases where vacatur is appropriate.

23    We do think the claims are intertwined.  You know, Claim 2 has

24    to do with whether EPA could approve Florida's program based on

25    the TA process that was in the BiOp, which is very tied

1   obviously to the ESA claims that you have just ruled on.  Claim

2   2 is also connected to Claim 1, which is about the completeness

3   determination.

4           It is a notice in comment violation that itself is a

5   motion for vacatur because we weren't given adequate notice of

6   how Florida claimed it would meet its ESA and

7   404(b)(1)obligations.

8           THE COURT:  Right.  I mean, I suppose to the extent

9   that I ruled against you on some of the other issues in the

10  case, you can cross appeal on those as well.  And if I do enter

11  either partial final judgment or final judgment, it should be

12  done I presume in a way that would allow you to appeal my

13  decisions with respect to the rule making notice in comment

14  issues in the case.

15          MS. GALLONI:  I will also, if I could, Your Honor,

16  just say that the ultimate question I think here is one of

17  judicial economy.  And we agree that the case should go to the

18  Court of Appeals.  But we believe it should go to the Court of

19  Appeals on all of the merits.  Because if it doesn't, we are

20  going to run into a situation of piecemeal litigation,

21  sequential review, which is against, you know, the interest of

22  judicial administration.  It is also against federal policy.

23  It is going to require the additional expenditure of recourses,

24  not just by the parties, but by the Court.  So in the interest

25  of judicial --

1          THE COURT:  Unless I was right.

2          MS. GALLONI:  Well, if you are right, they will come

3  back.  And those other issues will remain unresolved, so we

4  will be back again.

5          THE COURT:  But with a new agency action though.

6          MS. GALLONI:  But the agencies have committed, for

7  instance, on the criminal intent issue that we have raised

8  under Claim 2 and Florida's inadequate enforcement scheme, the

9  government has committed -- they are trying to codify that

10  position right now through rule making.  They are trying to

11  codify the process they undertook here as to retained waters

12  through rule making.  So they are committed to those positions.

13  They will come back.  It will be inefficient.  We will all have

14  to refresh our memories.  Once we prevail in the Court of

15  Appeals and all of this comes back, to start from scratch on

16  all of those claims that are ripe and ready for review now.

17          And as we said, we don't think it is a jurisdictional

18  issue.  We think it is a discretionary issue.  And we think

19  that discretion in the case weighs in favor of judicial economy

20  and of resolving the claims on the merits.

21          THE COURT:  Okay.  Anything else?

22          MS. GALLONI:  Unless you have questions about 54(b),

23  I think that is --

24          THE COURT:  I don't think so.  As I said, I

25  understand your argument on that.  I am not convinced that the

1    claims are intertwined in the way that preclude entry of

2    partial final judgment under Rule 54(b), but I understand your

3    point.  They do deal with the same universe.  But I think they

4    are distinct claims.  That is one of the reasons I adjudicated

5    in this order as distinct claims.

6             MS. GALLONI:  I will only point that your order also

7    addresses facts and legal issues, your February 15th order that

8    relate to those claims.  And we have cited some of that also in

9    our briefing.

10            THE COURT:  All right.  Thank you.

11            MS. GALLONI:  Thank you.

12            THE COURT:  Mr. Coughlin, I noticed you seemed like

13   maybe you disagreed on some of the final judgment issues, so --

14            I will give you, Mr. Wood, you will get your chance.

15   I will let you go last, but let me hear from Mr. Coughlin

16   first.

17            MR. COUGHLAN:  I will be very brief, Your Honor.  So

18   just a couple of points on the statute of limitations.

19            THE COURT:  Yes.

20            MR. COUGHLAN:  It is not jurisdictional.  D.C.

21   Circuit held that in the 2020 decision.  I don't have the pin

22   cite for you.  But it is the general six-year statute of

23   limitations under Section 2401, non-jurisdictional.  So

24   equitable tolling is always an option.

25            But I also want to note here that the statute of

1  limitations will run in 2026.  But it is the last days of 2026,

2  so we are 32 months out from there even being a possibility of

3  a statute of limitations issue.  D.C. Circuit might not rule in

4  six months, but I think we can reasonably expect it in 32.

5           THE COURT:  I think that is a fair point.

6           Mr. Wood.

7           MR. WOOD:  Thank you, Your Honor.  While we are

8  talking dates --

9           THE COURT:  Yes.

10          MR. WOOD:  -- it shouldn't be overlooked that today

11 is April 4th, which would make it 4/04.

12          THE COURT:  And what should I take from that?

13          MR. WOOD:  You should take that you should rule on

14 the expedited --

15          THE COURT:  Set my decision aside.

16          MR. WOOD:  No, Your Honor.  We respect your decision.

17 We respect the analysis this Court went through and understand

18 that it was a complicated case, Your Honor.  We appreciate your

19 time today.

20          We do request expedited decision making on the entry

21 of judgment.  Florida is --

22          THE COURT:  I will do that.  I understand.

23          MR. WOOD:  Thank you.

24          And I do want to just briefly address the comments

25 from counsel for the Corps.  The State of Florida has submitted

1    sworn testimony as it relates to the urgency and the impact.

2    No other party has submitted any sworn testimony to this Court.

3    The Army Corps of Engineers may very well have added a couple

4    of dozen new staff to work on 404 issues in the Jacksonville

5    District and they may have added some additional -- but they

6    don't -- in the South Atlantic Division, which would be outside

7    of Florida probably.  But they don't have 300 certified

8    wetlands evaluators and 404 staff that Florida hired and

9    trained.  And they literally are pencils down as of

10   February 15th.  They have complied with your order.  And they

11   are ready to get back to work.  And they can issue permits that

12   avoid the concerns that this Court has cited with regard to

13   incidental take issues and the severe disruptive consequences

14   of the Court's decision can be mitigated and also allow for

15   Florida to resume its operation consistent with this Court's

16   stay order.

17            I did also want to say, Your Honor, with regard to

18   the practical effect, for the last three years the federal

19   agencies, not the Corps -- the Corps is not involved in Florida

20   404 process.  It is EPA, Fish and Wildlife Service, they have

21   been doing this.  It worked well.  They do regular meetings.

22   They continued to stay in touch.  EPA reviews every permit that

23   they -- that Florida wants to issue.  It is done permit by

24   permit.  If there is an issue, a concern that is raised.  It is

25   done collaboratively, cooperatively, consistent with what

1    Congress has intended for these federal, state -- how they are

2    supposed to work.  And it has worked.  There has only been a

3    couple situations so far where Florida has not accommodated a

4    condition that EPA wanted, that didn't deal with species that

5    dealt with the scope of waters of the US, which has been an

6    intractable issue, one that the Supreme Court has ruled on

7    recently.  Setting that aside, everything has worked well.

8              On the 8515 issue, the declaration that we submitted

9    on February 26, Your Honor, 166-1, paragraph 13 provides sworn

10   testimony that when you look at the general permits and the

11   individual permits and the permit decisions that are made by

12   people operating the 404 program, 85 percent of them don't deal

13   with effects to species.  And the reason for that is people who

14   come to the state, have small projects, medium-size projects,

15   large projects.  The very large projects, they have a hard time

16   avoiding impact to species.  But the vast majority, the

17   85 percent of the projects are projects that can avoid habitat

18   and they can avoid effects.  That is basically -- I think you

19   will see that in the record of this case, Your Honor, that

20   tracks with the history of the Corps' operation previous to

21   Florida and it tracks with operations in Michigan, New Jersey

22   and other states.  And ultimately, Your Honor --

23             THE COURT:  I think Michigan and New Jersey are very

24   different, because the number of endangered or other listed

25   species in those jurisdictions is just fundamentally different

1    than Florida.

2              MR. WOOD:  Yeah.  Florida has some of the highest

3    number of species and highest number of wetland area, that is

4    true.  But we also are able to manage projects, design and

5    develop them to avoid impact to species.  That is really what

6    it comes down to.  The vast majority of projects, 85 percent

7    can be processed without affects to species.  And Florida is

8    here asking you today, beseeching you to modify your vacatur

9    order to allow Florida to be on equal footing with New Jersey

10   and Michigan.  We understand Your Honor disagrees with BiOp and

11   ITS.  But the baseline Federal review statute and regulations

12   still applies in Florida the same way it does in New Jersey and

13   Michigan.  And Florida will abide by that and ensure that the

14   species review process works and that they aren't processing

15   permits and giving incidental take coverage to permittees that

16   this Court has said it will not allow.

17             THE COURT:  Okay.  Thank you.

18             MR. WOOD:  Thank you so much.

19             THE COURT:  Anyone else have anything?

20             Yes.  Ms. Galloni.

21             MS. GALLONI:  Thank you, Your Honor.

22             Just briefly, I wanted to point out the Federal

23   government's position in their briefing, that if a stay were

24   granted, our remaining claims would not be moot.  I think that

25   this flags for us again why we don't believe the claims are

1   moot.  We don't think it turns on the vagaries of a stay.  But

2   it is true, even if this Court denies a stay, the Court of

3   Appeals could grant a stay.  We could be in the very awkward

4   position of having been afforded complete relief on paper and

5   have the program operating on the ground.  I just would ask you

6   to consider that as well in terms of the mootness question.

7           THE COURT:  All right.  Thank you.

8           MS. GALLONI:  Thank you.

9           THE COURT:  All right.  Well, thank you all, I will

10  consistent with Mr. Wood's urging, do my best to get you a

11  decision on this as promptly as I can, so thank you.

12          (Proceedings concluded at 4:15 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3              I, SHERRY LINDSAY, Official Court Reporter, certify

4    that the foregoing constitutes a true and correct transcript of

5    the record of proceedings in the above-entitled matter.

6

7

8

9

10              Dated this 10th day of April, 2024

11

12                                                    _____
                                                 Sherry Lindsay, RPR
13                                               Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

MR. COUGHLAN: **[14]**   3/20 28/15
28/19 28/24 30/13 30/19 30/21
31/12 32/3 36/6 36/9 36/15 50/17
50/20

MR. SIBLEY: **[1]**   4/4

MR. WOOD: **[52]**   3/25 4/14 4/16
6/12 8/22 10/10 10/15 10/18 11/6
11/12 11/19 12/20 14/5 14/8 14/13
14/19 15/6 15/9 15/13 16/2 16/5
16/7 17/7 17/13 18/12 19/17 19/19
20/5 20/16 20/21 21/4 21/16 21/18
21/20 22/22 23/4 23/23 25/11
26/17 26/19 27/3 27/8 27/11 28/5
28/10 51/7 51/10 51/13 51/16
51/23 54/2 54/18

MS. GALLONI: **[20]**   3/8 3/12 38/6
39/3 41/2 42/3 42/8 42/22 44/22
46/3 46/5 47/10 48/15 49/2 49/6
49/22 50/6 50/11 54/21 55/8

MS. REICHERT: **[3]**   36/23 36/25
38/2

THE COURT: **[90]**

THE COURTROOM DEPUTY: **[1]**   3/3

---

'

'26 **[1]**   46/6
'30 **[1]**   46/6
's **[1]**   39/8

---

0

04 **[1]**   51/11

---

1

1,000 **[2]**   4/23 28/25
10 **[2]**   11/14 14/1
10th **[1]**   56/10
11 **[1]**   1/17
119 **[2]**   1/4 3/3
13 **[1]**   53/9
144 **[1]**   5/9
15 **[5]**   6/18 35/13 36/5 36/6 36/6
150 **[1]**   2/4
15th **[12]**   4/21 5/25 15/10 22/2
27/10 27/20 28/24 29/20 30/1
31/17 50/7 52/10
166-1 **[1]**   53/9
18th **[1]**   1/21

---

2

200 **[1]**   5/3
20001 **[2]**   2/8 2/19
20002 **[1]**   2/5
20037 **[1]**   2/14
2008 **[2]**   24/12 24/14
201 **[1]**   1/15
2020 **[3]**   46/3 46/4 50/21
2024 **[3]**   1/6 46/5 56/10
2026 **[2]**   51/1 51/1
21-119 **[2]**   1/4 3/3
2200 **[1]**   2/13
23.1 **[1]**   32/22
23219 **[1]**   2/11
233 **[7]**   13/6 14/8 14/21 16/8
16/14 17/10 19/2
2401 **[1]**   50/23
26 **[1]**   53/9

---

3

300 **[2]**   5/22 52/7
32 **[2]**   51/2 51/4
32301 **[1]**   1/18
33137 **[1]**   1/15
333 **[1]**   2/18
3:06 **[1]**   1/7

---

4

4.400 **[1]**   2/5
4/04 **[1]**   51/11
40 **[3]**   6/6 6/17 32/22
40,000 **[1]**   6/5

---

404 **[32]**   4/18 4/23 5/22 5/23 5/25
6/4 6/13 7/15 7/18 7/25 8/1
8/2 10/16 16/8 17/11 19/24 20/1
22/14 28/17 29/4 29/7 30/3 32/8
32/10 32/21 39/8 48/7 52/4 52/8
52/12 53/12
4500 **[1]**   1/15
4:15 **[1]**   55/12
4th **[1]**   51/11

---

5

54 **[13]**   25/6 25/14 25/16 25/21
38/21 44/8 46/10 46/12 46/21
46/22 46/25 49/22 50/2
58 **[11]**   22/11 22/18 24/8 24/21
25/5 25/15 25/16 46/25 47/2 47/3
47/7

---

6

6710 **[1]**   2/18

---

7

700 **[1]**   2/7

---

8

80/15 **[3]**   35/13 36/5 36/6
80202 **[1]**   1/22
840 **[1]**   4/25
85 percent **[3]**   53/12 53/17 54/6
85/15 **[1]**   36/6
8515 **[1]**   53/8

---

9

951 **[1]**   2/10
99 percent **[1]**   11/2
999 **[1]**   1/21

---

A

abeyance **[2]**   12/5 19/7
abide **[1]**   54/13
ability **[1]**   18/6
able **[2]**   39/20 54/4
about **[31]**   9/25 10/2 10/4 11/15
12/16 15/4 16/25 17/21 25/22 26/2
27/10 28/16 28/25 31/25 33/5
33/13 33/16 34/4 35/11 35/23 37/1
40/12 41/5 41/19 44/11 45/14
46/10 46/15 47/8 48/2 49/22
above **[4]**   9/21 14/10 36/14 56/5
above-entitled **[1]**   56/5
absent **[1]**   26/18
accept **[1]**   27/17
accepted **[2]**   7/12 8/25
accommodate **[1]**   12/25
accommodated **[1]**   53/3
accommodates **[1]**   17/19
according **[1]**   7/9
accusing **[1]**   13/13
acknowledge **[1]**   35/23
across **[1]**   27/13
Act **[6]**   23/25 23/25 24/14 25/19
25/19 43/23
action **[6]**   1/4 32/14 33/18 41/15
42/19 49/5
actions **[5]**   33/16 33/17 40/25
45/11 45/24
actually **[11]**   9/9 14/15 14/15
16/17 18/7 19/23 20/16 20/25
23/15 41/14 43/10
add **[1]**   35/20
added **[2]**   52/3 52/5
addition **[1]**   29/9
additional **[10]**   6/1 9/18 9/20
11/9 14/23 14/24 25/12 43/17
48/23 52/5
additive **[1]**   14/23
address **[4]**   41/13 41/14 43/3
51/24
addressed **[2]**   8/12 13/8
addresses **[2]**   9/23 50/7
addressing **[1]**   24/10

---

adequate **[1]**   48/5
adjudicated **[1]**   48/25
adjudicated **[5]**   8/15 39/10 39/21
40/5 50/4
adjusted **[1]**   26/22
administration **[2]**   43/4 48/22
administrative **[2]**   13/18 32/12
adversely **[2]**   20/7 20/22
advisory **[1]**   24/2
advocating **[1]**   22/14
affect **[54]**   7/6 7/8 7/11 7/17
7/23 8/15 8/17 8/19 8/24 9/3 9/11
12/1 12/9 12/11 12/12 14/21 16/20
16/20 17/23 18/7 18/10 18/18
18/22 19/8 20/2 20/5 20/6 20/6
20/7 20/7 20/11 20/14 20/19 20/21
20/23 24/1 32/19 33/4 33/11 33/11
34/4 34/4 34/10 34/11 34/12 34/23
34/23 34/24 34/24 35/12 35/12
35/17 35/24 35/24
affect/federalized **[1]**   9/11
affects **[2]**   27/17 54/7
afforded **[1]**   55/4
after **[2]**   12/6 33/24
afternoon **[10]**   3/8 3/20 3/25 4/3
4/4 4/14 4/15 28/15 36/23 36/24
again **[12]**   11/25 15/9 19/3 19/10
25/15 26/10 31/7 39/16 47/3 47/17
49/4 54/25
against **[4]**   31/23 48/9 48/21
48/22
agencies **[6]**   5/3 18/15 19/13 21/8
49/6 52/19
agency **[9]**   8/13 32/14 32/14 34/1
37/9 40/25 42/19 42/20 49/5
ago **[1]**   21/24
agree **[4]**   21/8 41/18 41/19 48/17
agreed **[3]**   30/9 37/5 45/3
agreement **[3]**   8/6 8/21 14/2
agreements **[3]**   30/2 30/15 30/22
ahead **[2]**   19/18 23/12
Air **[1]**   41/3
al **[3]**   1/3 1/7 3/5
align **[1]**   9/10
all **[40]**   3/24 4/3 4/8 4/9 7/4
7/18 7/20 9/13 11/14 20/19 21/15
24/10 30/13 33/19 35/6 36/9 36/21
38/1 38/4 38/14 39/5 39/10 39/21
40/4 40/9 40/13 40/16 40/23 41/17
41/24 45/6 45/8 48/19 49/13 49/15
49/16 50/10 55/7 55/9 55/9
allocated **[1]**   29/1
allow **[10]**   7/1 12/24 21/12 30/16
33/1 46/17 48/12 52/14 54/9 54/16
allowed **[1]**   25/12
allowing **[2]**   19/12 24/17
allows **[1]**   23/7
almost **[1]**   22/8
already **[12]**   6/14 11/12 22/13
22/16 25/22 35/20 37/22 40/25
41/24 43/19 43/21 43/24
also **[31]**   3/14 4/6 7/9 7/15 9/8
12/13 12/25 15/18 19/12 23/13
24/4 26/13 27/1 27/12 27/18 34/17
39/6 39/12 42/4 42/10 43/1 44/12
48/2 48/15 48/22 50/6 50/8 50/25
52/14 52/17 54/4
alter **[1]**   22/25
alternate **[1]**   43/2
alternative **[6]**   4/12 9/8 10/8
17/2 18/3 25/14
alters **[1]**   23/7
always **[1]**   50/24
am **[24]**   3/13 4/1 10/25 18/5 26/1
27/10 27/12 27/13 38/2 40/13
40/20 40/21 41/15 41/19 41/25
43/6 43/10 43/14 45/16 46/10 47/4
47/10 47/10 49/25
amended **[1]**   42/16
amount **[1]**   33/13
analysis **[2]**   20/15 51/17
ANDREW **[5]**   2/3 2/12 2/13 3/20 4/6

## A

**ANDREWS [1]** 2/9
**animals [1]** 17/5
**answer [8]** 8/11 4/13 46/9 46/13 46/15 46/21 47/6 47/7
**anticipated [2]** 29/13 29/15
**anticipation [1]** 25/6
**any [25]** 3/17 7/6 7/24 8/1 9/2 12/9 12/11 13/20 18/8 18/10 19/8 21/10 22/24 26/16 32/6 32/25 33/18 35/15 37/18 38/4 38/16 43/17 44/5 46/11 52/2
**anymore [1]** 41/22
**anyone [2]** 6/9 54/19
**anything [4]** 16/25 28/9 49/21 54/19
**anyway [2]** 11/4 11/23
**APA [2]** 24/14 25/19
**apartment [2]** 5/12 21/5
**appeal [15]** 12/6 19/13 21/13 24/17 27/19 38/10 38/13 38/21 39/2 42/5 44/6 45/3 47/3 48/10 48/12
**appealable [2]** 22/5 22/9
**appealing [1]** 45/7
**Appeals [8]** 26/1 26/2 40/22 42/23 48/18 48/19 49/15 55/3
**APPEARANCES [3]** 1/12 1/24 2/1
**applicant [2]** 12/4 19/5 30/24
**applicants [1]** 5/16
**application [8]** 12/8 15/21 18/17 19/6 33/15 33/24 34/6 42/17
**applications [10]** 4/24 7/5 7/11 7/18 18/17 18/17 27/7 28/25 30/3 34/5 37/23
**applied [2]** 30/24 37/4
**applies [4]** 9/14 14/22 45/17 54/12
**apply [3]** 19/10 24/24 47/15
**appreciate [2]** 25/13 51/18
**approach [9]** 3/6 7/12 7/13 9/5 9/8 12/16 18/3 19/21 25/15
**appropriate [4]** 13/23 37/3 37/6 47/22
**appropriations [1]** 30/18
**approval [2]** 4/22 39/4
**approve [4]** 18/6 23/3 42/18 47/24
**approved [6]** 23/1 30/2 30/11 30/15 30/22 32/11
**approving [1]** 43/11
**April [3]** 1/6 51/11 56/10
**April 4th [1]** 51/11
**are [126]**
**area [14]** 33/18 54/3
**areas [1]** 42/13
**aren't [2]** 34/22 54/14
**argued [3]** 23/23 24/23 40/1
**argument [5]** 13/12 40/2 41/11 47/14 49/25
**arguments [1]** 40/23
**Army [4]** 3/23 5/18 10/7 52/3
**Article [1]** 41/9
**articulate [1]** 41/5
**artificial [1]** 34/4
**as [84]**
**aside [5]** 17/10 32/17 44/14 51/15 53/7
**ask [4]** 12/15 27/22 45/20 55/5
**asked [1]** 25/5
**asking [3]** 8/6 10/20 54/8
**asserted [1]** 38/23
**asserting [1]** 16/24
**assistance [2]** 8/6 8/21
**associated [1]** 6/6
**Association [1]** 41/4
**assume [2]** 6/8 33/2
**assumption [14]** 9/7 12/18 12/21 15/2 26/13 29/5 29/7 32/20 32/21 32/23 40/10 42/9 42/17 44/2
**assures [1]** 17/19
**Atlantic [3]** 29/10 29/12 52/6

## B

**authority [4]** 23/6 33/2 35/9 44/5
**avoidance [3]** 36/8 36/17 49/4
**Avenue [2]** 2/13 2/18
**averse [1]** 10/24
**avoid [9]** 12/9 19/8 25/3 26/16 40/4 52/12 53/17 53/18 54/5
**avoiding [1]** 53/16
**await [1]** 5/17
**away [1]** 22/16
**awful [1]** 19/14
**awkward [1]** 55/3

**back [23]** 5/17 6/12 6/15 6/25 12/8 12/10 15/4 19/8 30/23 34/7 38/14 39/10 39/21 41/25 44/4 44/15 44/18 45/19 49/3 49/4 49/13 49/15 52/11
**backflips [1]** 20/3
**Backing [1]** 31/12
**BAKER [1]** 2/7
**Bankruptcy [1]** 2/17
**based [11]** 6/8 6/16 6/19 7/4 11/1 14/16 25/19 33/3 42/20 42/21 47/24
**baseline [11]** 9/12 9/15 9/17 9/21 13/3 14/9 14/10 14/21 17/18 18/24 54/11
**baseline-level [1]** 9/21
**bases [5]** 39/6 41/7 43/3 47/20 47/22
**basic [1]** 24/18
**basically [2]** 19/22 53/18
**basis [3]** 24/15 38/12 43/2
**be [94]**
**became [1]** 45/25
**because [52]** 5/13 8/4 8/8 10/19 11/1 11/5 12/3 12/11 13/13 13/21 16/13 17/16 18/6 19/15 22/7 22/12 22/23 24/25 26/2 26/7 27/19 29/15 29/19 30/5 30/24 31/5 33/14 34/7 34/8 38/8 38/21 38/24 38/25 39/5 39/11 40/8 41/7 41/23 42/12 43/18 44/15 45/2 45/6 45/16 45/17 46/19 47/1 47/11 47/16 48/5 48/19 53/24
**Becerra [1]** 45/11
**becomes [2]** 41/8 42/23
**bedrock [1]** 32/12
**beds [1]** 5/9
**been [23]** 4/25 5/24 6/2 6/14 6/19 9/20 10/20 21/1 22/4 35/3 39/11 40/1 40/1 40/2 40/10 45/12 46/24 47/2 47/18 52/21 53/2 53/5 55/4
**before [14]** 1/10 4/16 5/1 13/8 15/21 22/20 28/25 29/7 29/14 29/25 37/8 39/1 41/12 43/7
**begin [1]** 4/16
**behalf [5]** 2/3 2/4 2/5 2/6 2/7
**behavior [1]** 23/1
**being [6]** 3/24 5/13 5/17 28/11 37/8 51/2
**believe [6]** 9/1 18/8 46/9 47/16 48/18 54/25
**believes [1]** 27/20
**beneficial [1]** 20/6
**benefit [2]** 5/2 10/18
**beseeching [2]** 15/13 54/8
**best [5]** 7/13 8/12 24/2 26/8 55/10
**better [3]** 9/9 35/8 37/11
**between [3]** 28/21 35/19 35/24
**beyond [2]** 9/21 14/10
**bifurcated [4]** 12/16 33/7 33/23 35/21
**big [8]** 9/22 9/23 9/25 10/3 33/8 35/2 47/11 47/13
**BIOLOGICAL [6]** 1/3 3/4 3/15 4/22 20/18 27/9
**BiOp [15]** 9/19 14/10 14/15 14/17 14/22 14/23 15/11 16/17 17/9 20/14 20/15 22/3 24/3 47/25 54/10
**BiOps [1]** 33/18

## C

**Biscayne [1]** 1/15
**Blountville [3]** 2/12 2/14 2/19
**Blvd [1]** 1/17
**BONNIE [2]** 1/16 3/13
**both [3]** 4/17 4/19 41/5
**BOTTS [1]** 2/7
**Boulevard [1]** 1/15
**bound [2]** 17/3 45/3
**bounds [1]** 13/12
**brief [6]** 4/17 21/22 30/8 44/12 50/17
**briefed [4]** 21/1 23/5 24/11 39/25
**briefing [5]** 11/10 35/13 40/2 50/9 54/23
**briefly [2]** 51/24 54/22
**Buffer [1]** 24/12
**building [1]** 21/5
**buildings [1]** 5/12
**Bumpers [1]** 4/2
**burden [2]** 37/2 39/19
**business [2]** 31/13 34/8
**Byrd [1]** 2/10

**cable [1]** 24/6
**call [3]** 33/14 34/23 34/25
**Cameratta [1]** 4/7
**can [38]** 7/22 12/10 13/23 14/1 14/3 14/4 15/3 16/13 19/9 19/15 19/16 21/9 21/18 22/17 23/6 26/13 28/13 29/12 34/5 37/19 38/21 39/1 39/10 40/11 40/17 41/10 41/23 42/4 45/8 46/10 48/10 51/4 52/11 52/14 53/17 53/18 54/7 55/11
**can't [2]** 11/4 43/17
**cannot [1]** 17/1
**capable [4]** 24/24 45/14 45/18 47/13
**careful [1]** 40/23
**carry [2]** 10/18 37/2
**case [38]** 3/3 7/21 7/24 12/10 21/1 21/22 22/9 22/25 23/10 24/11 25/25 32/12 38/9 38/11 38/18 38/24 39/15 39/21 40/5 40/17 41/8 42/16 44/8 44/15 44/18 44/19 45/4 45/8 45/19 45/22 46/9 46/23 48/10 48/14 48/17 49/19 51/18 53/19
**cases [8]** 38/16 38/16 41/17 43/7 44/23 44/23 44/24 45/10
**CASTRO [2]** 1/6 3/4
**causes [1]** 17/20
**Celtronix [1]** 41/3
**center [4]** 1/3 3/4 3/14 5/12
**certain [1]** 20/10
**certainly [4]** 20/7 23/18 28/22 45/9
**certified [2]** 5/24 52/7
**certify [1]** 56/3
**CFR [1]** 32/22
**challenge [2]** 39/23 45/23
**challenged [1]** 24/12
**challenges [1]** 39/17
**chance [1]** 50/14
**chances [1]** 20/12
**change [7]** 4/13 23/9 34/6 35/4 40/18 41/10 42/13
**changes [2]** 34/15 39/5
**chart [2]** 19/13 21/12
**CHRISTINA [2]** 1/14 3/13
**Circuit [21]** 26/7 27/22 27/22 37/4 39/15 40/15 40/20 41/3 41/4 42/15 44/2 44/13 44/18 45/18 46/10 46/17 46/24 46/24 47/19 50/21 51/3
**circumstances [4]** 26/8 26/12 43/14 45/6
**cite [1]** 50/22
**cited [5]** 24/11 41/5 43/7 50/8 52/12
**cites [1]** 44/24
**citizens [2]** 6/1 6/4
**civil [3]** 1/4 3/3 11/5

**C**

claim [9]  25/10 23/25 23/25 38/23 39/10 47/23 48/1 48/2 49/8
claimed [1]  48/6
claims [54]  21/25 22/23 23/15 23/17 23/18 23/22 23/23 24/25 24/10 24/10 24/15 24/17 25/1 25/17 25/17 25/19 25/20 36/15 36/18 37/14 38/8 38/14 38/18 38/19 38/25 39/11 39/17 39/20 39/25 40/5 40/8 40/14 40/24 41/7 44/16 44/17 45/1 45/10 45/21 46/11 46/16 46/19 47/7 47/16 47/23 48/1 49/16 49/20 50/1 50/4 50/5 50/8 54/24 54/25
classify [1]  35/17
Clean [3]  23/25 24/14 25/19
clear [5]  19/17 38/11 39/18 42/25 43/2
clearly [3]  16/2 16/3 40/10
Clinic [1]  5/10
clock [2]  39/15 39/18
close [1]  31/4
closer [1]  35/14
CO [1]  1/22
Coal [2]  24/11 45/4
coat [1]  31/14
codify [2]  49/9 49/11
coextensive [1]  20/5
COGHLAN [1]  2/3
cold [1]  34/1
collaboratively [1]  52/25
colleague [4]  3/22 4/1 4/6 36/25
Collier [1]  4/5
colloquial [1]  13/15
COLUMBIA [1]  1/1
come [6]  12/10 20/11 47/17 49/2 49/13 53/14
comes [5]  13/17 39/21 45/19 49/15 54/6
coming [1]  26/21
comment [3]  7/22 48/4 48/13
comments [1]  51/24
Commission [2]  7/20 18/22
committed [5]  14/24 42/12 49/6 49/9 49/12
community [2]  21/5 31/22
companies [4]  4/7 10/12 10/24 11/3
complete [8]  22/13 38/18 38/25 39/5 44/25 45/1 47/17 55/4
completely [1]  13/19
completeness [3]  34/20 34/21 48/2
complicated [1]  51/18
complied [1]  52/10
comply [4]  17/15 29/20 31/17 39/7
compounds [1]  34/16
conceded [1]  45/3
concern [12]  12/20 17/19 17/21 18/2 18/3 18/22 32/6 33/8 46/1 46/22 47/8 52/24
concern I [1]  46/22
concerned [2]  43/10 44/11
concerns [8]  9/5 9/6 12/16 32/3 32/5 32/5 33/6 52/12
concluded [3]  14/16 38/24 55/12
condition [11]  7/9 7/10 8/1 8/25 9/10 12/25 15/22 18/23 18/25 19/19 53/4
conditions [6]  7/4 12/1 13/8 15/15 15/16 27/17
conduct [1]  22/25
conference [1]  46/14
confident [3]  26/1 40/13 40/20
confines [1]  7/1
confusion [2]  37/6 37/14
Congress [5]  17/2 17/3 26/15 45/13 53/1
congressionally [4]  30/2 30/11 30/15 30/22
connected [1]  48/2

consequence [1]  32/9
consequences [4]  31/1 31/13 52/13
Conservation [2]  7/20 18/21
consider [4]  40/14 44/16 46/20 55/6
consideration [2]  40/23 41/9
considered [2]  40/6 44/23
consistent [3]  52/15 52/25 55/10
constitutes [1]  56/4
Constitution [1]  2/18
construction [1]  5/9
consultation [6]  8/20 13/7 13/10 20/17 20/18 20/24
contemplate [1]  34/18
contemplated [1]  33/17
contemplates [1]  33/10
context [5]  14/21 19/10 23/11 32/18 36/2
continue [8]  8/19 16/13 21/10 22/15 23/8 27/16 39/18 42/8
continued [3]  1/24 2/1 52/22
continues [1]  39/8
continuing [1]  18/15
controversy [1]  38/10
convinced [2]  46/11 49/25
cooperation [1]  17/25
cooperatively [1]  52/25
Coordinating [1]  18/21
core [1]  28/5
Corps [59]
Corps' [9]  28/16 28/21 31/2 31/3 31/6 31/8 35/7 35/14 53/20
correct [3]  16/11 20/17 56/4
costs [4]  6/1 6/3 6/3 6/4
Coughlan [1]  3/21
Coughlin [3]  28/14 50/12 50/15
could [27]  6/10 6/12 7/6 7/13 7/14 8/15 10/25 12/10 12/11 12/24 15/2 22/11 22/24 23/17 23/21 32/1 38/13 44/12 44/18 44/19 45/13 45/20 45/23 47/24 48/15 55/3 55/3
couldn't [1]  30/19
counsel [8]  3/6 3/7 3/14 3/21 4/2 4/5 4/6 51/25
country [1]  38/22
counts [1]  22/21
couple [6]  27/5 29/8 29/8 50/18 52/3 53/3
course [4]  21/12 21/19 24/9 34/6
court [92]
Court's [24]  7/9 7/13 9/1 9/10 12/1 12/25 13/7 13/21 15/14 17/8 17/15 17/19 22/7 23/6 24/19 27/20 29/20 31/17 32/13 36/16 41/2 41/3 52/14 52/15
courts [3]  2/17 24/9 27/15
coverage [7]  10/19 11/9 12/2 15/7 15/17 19/4 54/15
create [4]  17/2 32/8 36/1 37/13
creating [1]  32/15
criminal [3]  11/5 39/7 49/7
criminally [1]  10/25
critical [1]  20/23
cross [3]  11/21 11/22 48/10
crossings [1]  5/5
Cumulatively [1]  6/5
currently [5]  5/13 5/17 18/17 19/3 40/16
custom [1]  36/1
cut [2]  27/4 31/22

**D**

D.C [17]  26/7 27/22 27/22 37/4 40/15 40/20 42/14 44/2 44/13 44/18 45/18 46/10 46/17 46/24 46/24 50/20 51/3
Daniel [1]  3/16
Dated [1]  56/10
dates [1]  51/8
day [5]  27/4 27/4 34/11 39/2 56/10

days [3]  6/6 6/6 51/1
deal [5]  27/6 27/7 27/14 2/19
deal [4]  25/20 50/3 53/4 53/12
dealing [2]  35/24 40/7
dealt [1]  53/5
decades [2]  31/21 35/3
decide [4]  23/12 41/6 42/1 42/18
decided [2]  27/21 28/3
decides [1]  44/1
decision [27]  7/24 9/21 11/8 11/24 13/21 19/4 22/7 22/24 24/19 25/6 25/12 26/7 27/20 33/13 34/8 38/11 40/3 40/15 41/3 41/3 44/14 50/21 51/15 51/16 51/20 52/14 55/11
decisions [4]  7/17 17/15 48/13 53/11
declaration [1]  53/8
declaratory [3]  42/3 43/18 43/19
deemed [2]  7/7 9/3
defendant [3]  1/19 2/3 4/10
defendants [6]  1/8 3/21 9/7 12/21 23/4 37/21
defendants' [2]  22/25 22/25
Defenders [3]  3/15
defined [1]  7/16
definitive [2]  24/3 34/3
delay [5]  6/4 6/6 26/24 37/20 40/4
demonstrate [1]  37/3
denied [1]  25/9
denies [1]  55/2
Denver [1]  1/22
deny [3]  36/10 36/17 38/7
DEP [1]  5/22
DEPARTMENT [1]  1/20
depends [1]  42/23
deprived [2]  37/8 37/18
derived [2]  9/19 45/9
describing [1]  13/19
deserve [1]  40/23
design [1]  54/4
designated [1]  20/23
designed [1]  5/2
detail [1]  7/16
details [1]  30/13
determination [4]  33/11 34/20 34/21 48/3
determinative [1]  7/25
determined [1]  12/17
determining [1]  7/11
develop [2]  7/14 54/5
developer [2]  20/11
developers [4]  18/8 21/4 37/17 37/22
development [1]  5/14
did [6]  10/3 15/15 22/20 28/2 33/21 52/17
didn't [5]  9/25 16/24 25/7 27/8 53/4
difference [5]  9/22 9/23 9/24 10/4 13/20
differences [1]  28/20
different [9]  8/9 8/10 28/19 33/25 35/11 41/16 45/5 53/24 53/25
difficult [1]  18/15
dilemma [1]  5/17
disagree [3]  25/24 44/13 46/18
disagreed [1]  50/13
disagreements [1]  35/19
disagrees [4]  42/15 44/3 45/18 54/10
discretion [2]  22/10 49/19
discretionary [1]  49/18
dismiss [5]  22/21 22/22 23/17 36/17 46/16
dismissal [2]  39/17 45/20
dismissed [3]  24/16 39/11 44/15
disposal [1]  11/20
disruption [2]  26/14 37/14
disruptions [2]  19/12 21/12

**D**

disruptive **[3]** 31/14 31/18 52/13
distinct **[4]** 25/17 25/18 50/4 50/5
district **[10]** 1/1 1/1 1/11 2/17 5/19 29/3 29/6 29/9 30/7 52/5
districts **[2]** 29/10 29/11
DIVERSITY **[3]** 1/3 4/4 3/15
division **[4]** 1/21 29/10 29/12 52/6
do **[47]** 10/11 10/14 10/16 11/8 11/12 12/4 12/6 13/1 13/23 14/15 14/16 14/24 16/12 16/17 18/17 19/23 20/3 20/4 20/4 20/21 22/11 23/16 25/16 27/16 27/24 27/25 28/1 31/9 33/5 34/24 35/4 36/18 39/2 41/13 42/1 42/1 46/8 46/21 47/23 47/24 48/10 50/3 51/20 51/22 51/24 52/21 55/10
doctrine **[1]** 45/16
documents **[1]** 31/6
does **[10]** 13/6 15/17 16/6 16/15 16/15 20/18 34/19 34/20 42/23 54/12
doesn't **[7]** 16/12 20/7 20/8 21/6 23/9 23/14 48/19
doing **[1]** 52/21
DOJ **[2]** 2/3 3/22
DOJ-ENRD **[1]** 2/3
dollars **[1]** 11/16
don't **[44]** 8/11 10/5 11/7 16/18 17/4 18/14 18/25 19/7 21/17 23/20 23/20 24/6 24/24 25/1 25/24 26/16 28/1 30/13 30/21 31/13 31/18 32/25 34/18 34/24 38/4 42/25 43/16 43/17 43/20 45/8 45/22 46/8 46/12 46/25 47/1 47/15 49/17 49/24 50/21 52/6 52/7 53/12 54/25 55/1
done **[9]** 12/10 27/3 31/21 35/1 42/15 44/18 48/12 52/23 52/25
doubt **[1]** 20/12
down **[9]** 5/25 20/25 23/18 34/11 40/18 43/25 45/19 52/9 54/6
dozen **[2]** 29/8 52/4
dozens **[1]** 5/6
driven **[1]** 34/20
drop **[1]** 44/12
due **[1]** 22/9
duplicative **[1]** 33/9
during **[3]** 6/19 7/5 37/18
dynamic **[1]** 34/5

**E**

each **[2]** 23/15 43/15
EARTH **[2]** 1/14 1/17
easier **[1]** 35/1
East **[2]** 2/10 2/10
easy **[1]** 34/24
economy **[4]** 40/3 43/5 48/17 49/19
Eds **[1]** 2/4
effect **[3]** 5/15 32/7 52/18
effective **[2]** 43/10 43/13
effects **[2]** 53/13 53/18
efficient **[2]** 3/11 33/21
efficiently **[1]** 31/9
effort **[1]** 31/15
efforts **[2]** 5/5 31/22
EITEL **[2]** 1/19 3/22
either **[5]** 14/1 17/22 17/22 18/4 48/11
electric **[1]** 5/7
else **[4]** 28/9 43/22 49/21 54/19
emphasize **[4]** 4/18 30/23 31/7 31/15
end **[1]** 31/4
endangered **[1]** 53/24
energy **[1]** 21/6
enforcement **[3]** 5/23 39/7 49/8
Engineers **[4]** 3/23 5/18 9/4 52/3
enjoin **[1]** 22/1

enormous **[1]** 6/1
enough **[1]** 17/4
ENRD **[1]** 2/3
ensure **[2]** 7/14 54/13
enter **[11]** 21/25 22/10 22/11 23/12 23/21 24/9 36/13 38/20 44/9 46/15 48/10
entered **[3]** 24/16 41/15 43/8
Enterprises **[1]** 4/5
enters **[1]** 43/8
entire **[4]** 22/3 24/4 24/20 38/22
entirely **[2]** 26/15 34/9
entirety **[1]** 42/25
entities **[3]** 30/1 30/6 30/15
entitled **[3]** 38/25 41/20 56/5
entry **[12]** 4/11 4/12 21/20 21/23 22/19 24/7 24/21 25/13 25/20 36/16 50/1 51/20
Environment **[1]** 1/20
EPA **[15]** 14/14 16/10 17/25 18/20 26/12 32/10 32/12 33/1 42/17 42/17 44/1 47/24 52/20 52/22 53/4
EPA's **[3]** 4/21 32/21 39/4
equal **[1]** 54/9
equitable **[3]** 12/23 23/6 50/24
error **[1]** 45/3
ESA **[9]** 20/17 21/25 25/17 37/15 40/8 41/13 42/11 48/1 48/6
essentially **[2]** 24/16 24/20
estimate **[2]** 6/5 6/16
et **[3]** 1/3 1/7 3/5
evade **[1]** 45/17
evading **[4]** 24/25 45/15 45/23 47/14
evaluate **[2]** 42/18 43/15
evaluators **[2]** 5/24 52/8
even **[9]** 26/2 26/22 28/2 37/23 38/24 42/5 45/22 51/2 55/2
event **[3]** 26/16 35/15 46/11
Everglades **[2]** 5/6 30/7
every **[11]** 9/15 14/25 14/25 15/20 15/22 18/17 38/23 38/24 39/2 43/15 52/22
everybody **[1]** 4/9
everyone **[1]** 3/9
everything **[4]** 13/14 40/22 41/14 53/7
exact **[2]** 14/5 14/6
exactly **[3]** 8/4 13/16 47/21
example **[4]** 11/14 11/22 13/4 43/23
exception **[2]** 25/4 47/15
exceptions **[1]** 24/23
exclude **[1]** 7/6
exist **[1]** 29/18
existing **[1]** 12/22
exists **[1]** 22/18
expect **[3]** 27/8 42/5 51/4
expedite **[2]** 28/2 30/17
expedited **[10]** 27/19 27/23 28/2 30/3 30/9 30/10 30/12 30/22 51/14 51/20
expedition **[1]** 26/3
expended **[1]** 6/2
expenditure **[1]** 48/23
experience **[1]** 35/3
explain **[1]** 9/12
explained **[1]** 13/1
explaining **[1]** 7/16
extended **[1]** 37/8
extensive **[2]** 6/15 40/1
extent **[6]** 16/24 18/6 25/7 31/1 44/11 48/8
extra **[1]** 9/11
extremely **[1]** 33/9

**F**

face **[1]** 33/15
faced **[1]** 5/16
facility **[2]** 5/8 5/9
fact **[4]** 23/9 29/22 33/3 38/10
factors **[2]** 25/21 37/4

facts **[1]** 50/7
failed **[1]** 39/7
failure **[1]** 39/7
fair **[6]** 13/11 13/12 28/9 30/20 33/13 51/5
fallback **[1]** 15/18
familiar **[1]** 31/21
far **[2]** 43/9 53/3
fashion **[2]** 23/6 28/3
fashioning **[2]** 12/23 19/11
faster **[1]** 31/7
favor **[1]** 49/19
February **[14]** 4/21 5/25 6/18 15/10 22/2 27/10 27/20 28/24 29/20 30/1 31/17 50/7 52/10 53/9
February 15th **[12]** 4/21 5/25 15/10 22/2 27/10 27/20 28/24 29/20 30/1 31/17 50/7 52/10
February 26 **[1]** 53/9
federal **[30]** 3/21 9/6 9/13 9/15 11/16 11/16 11/21 11/22 12/15 12/20 13/5 13/5 13/9 13/18 14/3 14/20 17/16 18/15 19/22 23/4 33/7 33/23 37/10 37/21 39/14 48/22 52/18 53/1 54/11 54/22
federalization **[2]** 13/9 15/18
federalize **[2]** 12/1 13/15
federalized **[4]** 8/24 9/11 12/12 13/4
few **[4]** 20/24 20/25 21/24 29/24
figure **[1]** 47/5
file **[1]** 44/12
filed **[1]** 39/20
filter **[1]** 33/12
final **[18]** 3/18 4/11 4/12 23/9 23/12 23/21 36/13 36/13 36/20 38/7 38/20 39/12 44/9 46/16 48/11 48/11 50/2 50/13
financing **[1]** 6/3
find **[3]** 38/22 45/8 45/10
fine **[2]** 3/19 23/16
first **[13]** 4/13 7/3 8/13 8/22 8/25 19/15 19/19 34/19 34/25 35/18 41/13 47/20 50/16
Fish **[12]** 7/19 7/20 7/24 8/1 9/16 14/25 15/21 16/10 17/25 18/20 18/21 52/20
Fisheries **[1]** 18/20
fix **[4]** 32/14 32/15 42/11 42/13
FL **[2]** 1/15 1/18
flagged **[2]** 21/22 39/14
flags **[1]** 54/25
flatly **[2]** 32/20 32/22
flaw **[1]** 32/13
flexibility **[1]** 12/23
Florida **[110]**
Florida' **[1]** 39/6
Florida's **[12]** 4/10 4/19 4/22 12/18 28/21 32/7 37/1 37/13 39/4 42/10 47/24 49/8
folks **[1]** 30/21
follow **[3]** 16/2 16/3 27/17
foothold **[1]** 44/8
footing **[1]** 54/9
footnote **[1]** 44/12
forcefully **[1]** 41/12
foregoing **[1]** 56/4
foreseeable **[1]** 34/9
forever **[1]** 29/4
form **[1]** 8/7
formal **[2]** 20/18 20/24
forms **[1]** 5/14
forth **[1]** 34/7
forward **[3]** 11/4 18/9 19/7
found **[2]** 38/13 45/1
four **[2]** 5/5 29/9
fours **[1]** 45/9
framework **[3]** 9/13 14/21 16/14
Franz **[1]** 3/16
friction **[1]** 35/20
front **[2]** 15/1 16/18
fully **[6]** 10/3 13/14 17/7 21/1

**F**

fully... [2]  39/25 43/10
fundamentally [1]  53/25
funded [1]  11/15
funds [1]  6/2
further [9]  5/19 22/15 22/16 24/6 24/6 34/11 37/25 41/25 44/2
future [1]  44/2

**G**

GALLONI [6]  1/13 3/12 36/25 38/2 38/5 54/20
general [4]  30/14 32/17 50/22 53/10
GEORGE [2]  2/9 4/4
germane [1]  34/23
gerrymandered [1]  36/1
get [17]  4/13 10/5 11/3 14/1 18/17 19/23 20/1 21/18 25/25 26/6 26/21 27/18 31/6 46/23 50/14 52/11 55/10
gets [4]  19/4 28/5 33/25 34/19
getting [4]  6/25 11/9 28/3 36/1
give [6]  5/13 15/22 30/10 40/22 41/23 50/14
given [5]  18/23 24/19 25/21 29/13 48/5
giving [2]  28/16 54/15
Glass [1]  3/15
go [28]  4/13 5/17 11/4 11/8 11/12 12/1 12/3 15/4 17/23 19/9 19/9 19/15 19/18 20/24 20/25 21/16 23/12 24/22 25/5 25/16 30/23 36/22 41/24 42/10 46/9 48/17 48/18 50/15
goes [5]  12/7 13/6 15/21 28/6 43/19
going [30]  6/15 8/18 10/12 10/13 10/13 11/3 11/4 12/14 12/15 18/9 20/4 26/6 26/10 28/7 32/7 33/13 33/14 33/16 33/19 33/21 34/22 35/5 35/5 35/6 38/22 40/21 41/25 45/3 48/20 48/23
gone [3]  6/10 6/12 22/8
good [10]  3/8 3/20 3/25 4/3 4/4 4/14 4/15 28/15 36/23 36/24
got [4]  10/11 31/4 35/2 35/2
gotten [1]  29/22
govern [1]  33/18
government [10]  12/16 14/3 27/14 33/21 37/10 39/14 45/2 45/5 45/11 49/9
government's [1]  54/23
grant [7]  19/1 22/17 31/25 40/17 43/17 44/1 55/3
granted [12]  22/4 22/13 27/23 39/4 40/16 41/21 41/24 42/4 43/24 44/24 47/18 54/24
granting [7]  4/19 23/13 31/23 32/6 41/8 43/8 43/9
grants [1]  38/18
great [1]  19/6
gridlock [1]  5/7
ground [1]  55/5
grounds [2]  42/10 44/6
guess [7]  8/13 10/7 11/2 26/1 28/12 40/13 43/6
guidelines [1]  16/9

**H**

habit [1]  20/23
habitat [1]  53/17
had [12]  8/8 8/10 9/18 11/25 22/4 25/5 25/7 27/4 29/23 30/24 45/11 45/12
hand [2]  17/14 17/15
handed [2]  9/3 29/3
handful [1]  24/10
handle [2]  8/16 8/19
handling [2]  3/17 3/17
hands [1]  34/15

happen [3]  16/12 40/18 45/13
happened [3]  36/7 46/22 47/6
happens [5]  13/3 14/6 23/11 34/12 40/8
happy [1]  38/2
Harbor [1]  25/19
Harbors [2]  23/25 43/23
hard [4]  10/23 18/8 20/3 53/15
harm [1]  21/11
harmed [1]  39/22
has [65]
hasn't [2]  32/10 37/23
hate [1]  46/23
have [145]
haven't [1]  29/22
having [4]  41/14 41/21 43/8 55/4
he [2]  44/15 46/20
headquarters [1]  29/12
hear [4]  28/12 28/13 38/5 50/15
heard [3]  28/20 37/9 37/20
hearing [1]  1/10 27/13
heart [1]  28/6
HEATH [1]  2/6
held [2]  5/13 50/21
help [2]  29/12 30/17
helpful [1]  28/18
here [39]  3/13 3/24 4/2 4/9 8/4 9/23 10/8 10/12 11/1 12/5 13/13 13/14 14/15 17/1 21/21 21/24 22/12 24/18 27/3 28/11 30/25 31/3 31/8 32/10 32/24 37/3 37/9 37/15 40/8 41/20 45/6 45/17 46/14 47/6 47/21 48/16 49/11 50/25 54/8
higher [1]  47/19
highest [1]  54/2 54/3
highlight [1]  30/5
highly [1]  10/24 28/2
highway [1]  11/14
him [3]  44/15 44/16 46/19
hired [2]  5/22 52/8
his [1]  44/14
history [1]  53/20
hold [3]  12/4 19/6 19/23
honed [1]  35/3
Honor [44]  3/8 3/16 3/25 4/4 4/14 4/20 6/21 7/2 8/22 9/9 10/10 10/15 11/10 13/1 14/5 14/19 15/19 16/5 17/7 20/16 21/21 23/10 24/11 24/17 27/12 28/10 29/15 30/14 36/9 36/23 37/25 38/6 44/22 48/15 50/17 51/7 51/16 51/18 52/17 53/9 53/19 53/22 54/10 54/21
HONORABLE [1]  1/10
hope [3]  31/3 31/7 40/19
hours [1]  5/21
housing [1]  5/21
how [10]  7/16 10/1 10/1 10/3 13/19 16/16 23/20 26/16 48/6 53/1
hundreds [1]  5/11
HUNTON [2]  2/9 2/13

**I**

I have [1]  16/22
I'd [2]  6/21 31/25
I'm [1]  16/3
idea [3]  27/25 30/25 34/3
identified [5]  29/1 29/11 30/7 37/4 37/18
III [2]  2/9 41/9
illegal [1]  35/21
imagine [2]  10/23 46/25
immediate [1]  37/6
immediately [4]  7/21 22/5 27/4 43/13
impact [4]  9/16 52/1 53/16 54/5
implicate [1]  11/7
implicates [1]  6/22
implication [1]  37/7
important [5]  6/25 15/6 28/21 35/18 35/22
impose [2]  39/19 47/11
imposed [1]  8/1

improve [2]  5/5 5/7
inactivity [1]  6/8
inadequate [2]  39/7 49/8
incidental [27]  4/23 10/4 10/5 10/9 10/19 10/19 11/1 11/7 11/9 11/13 13/23 13/25 14/2 14/12 14/16 14/17 15/3 15/7 15/17 16/18 17/20 18/11 19/4 20/6 21/7 52/13 54/15
inclined [1]  18/25 25/16
include [1]  37/5
including [7]  5/4 5/11 5/23 9/6 14/24 29/24 41/17
inconsistent [1]  32/20
incorporated [1]  8/2
incorporating [1]  14/24
incorrectly [1]  27/21
increased [1]  6/3
incurred [1]  6/4
independent [1]  23/15
indicated [2]  8/11 41/12
individual [3]  6/18 10/6 53/11
individuals [1]  15/3
inefficiency [1]  34/16
inefficient [2]  33/9 49/13
informal [1]  20/22
information [1]  31/2
initial [6]  20/21 33/11 33/22 33/25 34/3 38/12
injunction [1]  43/12
instance [3]  8/13 8/22 49/7
instead [2]  22/2 22/7
instinct [1]  47/6
intended [2]  5/7 53/1
intends [2]  38/10 42/8
intent [3]  40/10 45/7 49/7
intention [1]  31/8
interest [2]  48/21 48/24
interested [1]  6/24
interests [1]  6/22
interim [1]  26/5
intertwined [3]  46/11 47/23 50/1
intervener [1]  4/10
interveners [1]  4/1
Intervenor [1]  2/6
intractable [1]  53/6
introduce [1]  3/9
invalid [1]  24/4
invalidated [1]  24/15
invested [1]  39/24
invitation [4]  7/3 7/13 9/1 15/14
invited [1]  25/11
involve [2]  5/5 20/18
involved [2]  24/12 52/19
IRENE [1]  1/14
irony [1]  21/21
irrespective [1]  14/22
irrevocable [3]  45/2 45/6 47/18
is [307]
issuance [2]  14/4 37/20
issue [17]  8/12 19/9 21/10 22/24 39/13 41/1 43/4 44/25 49/7 49/18 49/18 51/3 52/11 52/23 52/24 53/6 53/8
issued [7]  6/19 15/20 16/10 17/20 19/11 22/2 40/25
issues [16]  4/18 6/22 9/16 25/1 28/6 40/9 41/13 42/9 44/21 48/9 48/14 49/3 50/7 50/13 52/4 52/13
issuing [1]  16/13
it [185]
its [22]  6/1 7/14 9/19 14/10 14/22 14/23 15/11 17/9 20/8 20/9 22/2 22/3 24/3 30/8 34/15 34/21 35/12 37/2 40/6 48/6 52/15 54/11
itself [1]  48/4

**J**

J.W [1]  3/15
Jacksonville [5]  5/19 29/2 29/6 29/9 52/4
JACOB [1]  2/12

**J**

jail [1]  10/13
Jeff [1]  3/25
JEFFREY [1]  2/6
jeopardize [2]  16/10 16/19
jeopardized [1]  17/6
jeopardy [4]  15/23 15/23 20/8
  39/8
Jersey [16]  9/14 10/2 10/5 13/3
  13/19 13/20 13/24 14/2 16/15
  17/17 18/13 19/3 53/21 53/23 54/9
  54/12
Jersey's [1]  13/9
joined [1]  4/1
Jr [1]  1/17
judge [7]  1/11 3/20 28/15 38/22
  41/18 44/13 46/18
judges [1]  41/17
judgment [31]  3/18 4/12 4/13
  21/21 21/23 22/10 22/11 22/19
  23/12 23/21 24/3 24/8 24/17 24/21
  25/14 25/21 36/13 36/13 36/20
  38/8 38/20 39/12 40/1 44/9 45/4
  46/16 48/11 48/11 50/2 50/13
  51/21
judgments [1]  24/9
judicial [8]  25/3 40/3 43/5 47/14
  48/17 48/22 48/25 49/19
jump [1]  33/2
jurisdiction [5]  40/14 41/6 41/6
  43/3 47/1
jurisdictional [5]  46/23 47/12
  49/17 50/20 50/23
jurisdictions [1]  53/25
just [43]  4/17 6/19 8/6 10/2
  10/12 10/13 10/14 13/3 18/7 20/10
  21/1 21/18 21/24 24/3 24/10 27/12
  28/2 28/20 29/8 30/24 31/7 32/11
  32/25 33/9 33/25 34/16 35/4 35/20
  36/10 37/12 42/24 43/14 46/12
  46/15 47/4 48/1 48/16 48/24 50/18
  51/24 53/25 54/22 55/5
justice [5]  1/14 1/17 1/20 25/20
  43/4

**K**

Katherine [1]  3/22
keep [2]  24/5
kind [2]  33/6 42/25
kinds [1]  7/6
King [1]  1/17
know [23]  8/21 9/24 10/12 12/15
  23/20 25/7 26/16 26/21 30/13 33/8
  33/13 33/16 34/13 37/22 40/6
  41/13 43/6 43/16 45/8 46/8 46/12
  47/23 48/21
known [2]  27/5 27/6
knows [1]  26/23
KURTH [2]  2/9 2/13

**L**

laid [2]  11/10 11/24
lands [2]  11/21 11/23
large [2]  53/15 53/15
last [8]  6/6 6/8 6/20 6/21 35/10
  50/15 51/1 52/18
later [1]  25/1
law [2]  32/12 47/16
lawfulness [1]  12/18
layer [1]  9/18
lead [1]  26/20
leadership [1]  27/14
leads [1]  44/4
least [3]  6/9 6/17 26/4
leave [1]  36/22
left [1]  31/1
legal [6]  32/3 32/5 32/6 32/13
  32/24 50/7
legislated [2]  17/3 17/4
length [1]  9/12
LEOPOLDO [2]  1/6 3/4

**M**

less [1]  26/1
let [30]  13/9 32/7 34/10 48/4
  50/15 50/15
level [3]  9/21 13/24 17/18
Lewis [1]  45/10
liability [1]  11/5
life [1]  39/10
lifespan [1]  34/15
light [2]  9/6 44/17
like [5]  3/9 4/16 8/5 8/18 8/20
  19/14 25/23 27/21 31/25 32/13
  34/10 35/13 39/17 41/12 50/12
likelihood [1]  33/24
likely [2]  20/22 37/14
limbo [3]  4/25 29/18 31/19
limitations [12]  39/13 39/16
  40/13 44/11 45/25 45/25 47/9
  47/12 50/18 50/23 51/1 51/5
limited [12]  4/11 7/2 7/4 15/15
  23/7 28/22 31/23 32/7 33/6 35/7
  36/10 36/17
LINDSAY [3]  2/16 56/3 56/12
line [7]  8/23 11/22 21/5 30/24
  31/4 32/24 41/4
Linn [1]  4/2
listed [8]  5/15 7/25 17/23 18/7
  18/10 20/2 20/23 53/24
literally [1]  52/9
litigation [1]  48/20
little [4]  26/1 31/12 33/5 34/4
live [3]  24/1 38/9 47/21
lived [1]  18/24
living [3]  5/12 17/9 17/13
LLP [3]  2/7 2/9 2/13
local [1]  5/3
long [2]  40/3 40/4
longer [4]  22/24 24/1 41/23 44/20
look [6]  7/22 15/4 21/7 34/22
  41/2 53/10
looked [2]  8/20 34/10
looking [1]  17/10
loss [2]  5/21 6/2
lost [1]  39/23
lot [6]  8/4 8/20 14/24 16/25
  19/14 34/22
Luther [1]  1/17

**M**

made [6]  9/25 31/15 31/22 38/11
  41/12 53/11
maintain [2]  18/6 44/8
majority [4]  11/6 35/16 53/16
  54/6
make [13]  11/8 16/12 17/5 26/22
  31/8 33/14 34/2 34/17 34/21 35/10
  42/13 47/14 51/11
makes [4]  13/20 22/12 24/18 33/12
making [6]  7/17 33/10 48/13 49/10
  49/12 51/20
MALLOY [2]  1/16 3/13
manage [2]  47/9 54/4
management [2]  28/6 30/6
managing [1]  6/24
manipulating [2]  25/2 25/3
many [7]  5/2 5/14 11/9 11/12 18/8
  36/3 44/24
Marine [1]  18/20
Martin [1]  1/17
matter [5]  21/6 46/13 47/5 47/16
  56/5
may [57]
maybe [7]  8/9 9/22 10/23 27/5
  34/10 40/14 50/13
Mayo [1]  5/10
me [28]  3/9 3/21 4/5 8/6 8/18
  10/23 15/1 15/16 18/8 19/14
  20/3 38/5 40/24 41/12 41/14 41/16
  41/16 41/24 42/1 43/20 44/3 44/4
  44/19 45/19 46/2 47/3 50/15
mean [11]  13/6 16/6 16/22 20/8
  20/8 25/24 35/6 40/15 46/8 46/8
  48/8

**M**

means [4]  6/15 16/7 38/11 47/20
meant [1]  ...
mechanism [11]  7/10 7/17 7/18
  8/23 9/2 11/19 12/12 15/16 15/16
  17/14 33/1
mechanisms [1]  14/1
medical [1]  5/8
medium [1]  53/14
medium-size [1]  53/14
meet [1]  48/6
meeting [1]  39/9
meetings [2]  29/23 52/21
memories [1]  49/14
mention [1]  6/21
mentioned [1]  37/1
mentions [1]  30/8
merits [2]  48/19 49/20
Miami [1]  1/15
MICHAEL [1]  1/19
Michigan [9]  9/14 16/15 17/17
  18/13 19/3 53/21 53/23 54/10
  54/13
might [20]  7/1 11/21 11/21 11/23
  12/17 21/4 24/23 25/4 34/6 34/7
  34/14 34/23 36/3 40/15 40/18
  41/11 43/24 47/2 47/19 51/3
Mike [1]  3/22
mind [4]  8/9 8/10 13/17 44/5
minimize [2]  21/11 31/16
minimizes [1]  19/12
minimum [1]  22/10
minority [1]  5/15
MIRANDA [2]  1/6 3/4
MIRANDA-CASTRO [2]  1/6 3/4
misleading [1]  13/13
misled [2]  16/24 16/25
misspoke [1]  19/17
misunderstanding [2]  8/8 13/2
mitigated [1]  52/14
modifications [1]  6/18
modified [2]  32/8 50/24
modify [2]  20/23 54/8
Money [1]  24/13
months [10]  5/1 6/14 21/24 22/8
  26/7 27/6 28/3 47/4 51/2 51/4
moot [26]  22/21 22/23 22/23 23/10
  23/17 23/23 23/24 36/15 36/18
  38/8 38/12 39/1 39/11 39/18 41/8
  44/16 44/17 44/20 45/1 45/10
  45/20 46/17 47/7 47/17 54/24 55/1
mootness [4]  24/23 25/4 43/2 55/6
more [9]  3/10 22/17 29/6 29/8
  29/8 32/17 37/13 41/11 42/1
MOSS [5]  1/10 3/20 28/15 44/13
  46/19
most [2]  22/12 37/19
motion [15]  3/17 3/18 4/10 4/11
  7/2 21/16 21/20 28/22 31/25 32/4
  36/10 36/17 37/1 38/7 48/5
motions [2]  4/17 4/20
motivated [1]  15/8
move [3]  19/7 26/3 28/7
moved [2]  25/13
Mr [1]  28/20
Mr. [7]  4/13 28/14 50/12 50/14
  50/15 51/6 55/10
Mr. Coughlin [3]  28/14 50/12
  50/15
Mr. Wood [3]  4/13 50/14 51/6
Mr. Wood's [1]  55/10
Ms [3]  36/25 38/5 54/20
Ms. [2]  3/16 38/2
Ms. Galloni [1]  38/2
Ms. Reichert [1]  3/16
much [4]  8/23 30/25 39/24 54/18
multiple [4]  34/15 38/17 41/23
  44/6
must [1]  7/10
my [17]  3/22 4/1 4/5 8/12 9/24
  11/2 13/17 16/23 28/1 30/14 36/25
  40/15 44/5 47/6 48/12 51/5 55/10

**N**

name [1]  3/7
National [1]  18/20
nationwide [1]  21/2
Natural [1]  1/20
NE [1]  2/4
necessarily [2]  23/15 34/22
necessary [1]  44/19
need [6]  4/19 7/8 15/23 17/24
21/9 26/4
needed [1]  23/18
neither [1]  37/17
NEPA [1]  24/14
never [2]  24/16 39/20
new [24]  5/8 5/9 9/14 10/1 10/5
13/3 13/8 13/19 13/20 13/24 14/2
16/14 17/17 18/13 19/3 19/13
21/12 32/15 49/5 52/4 53/21 53/23
54/9 54/12
next [3]  1/24 26/7 28/13
no [41]  1/4 5/15 8/18 10/10 10/15
15/17 16/13 16/13 16/22 17/19
19/3 20/4 20/16 21/9 21/11 22/17
22/24 23/1 23/25 24/1 27/25 28/10
32/19 32/22 33/11 34/4 34/10
34/23 34/24 35/12 35/24 36/19
36/19 37/25 39/8 39/9 41/22 44/20
45/7 51/16 52/2
non [2]  10/24 50/23
non-jurisdictional [1]  50/23
non-risk [1]  10/24
none [3]  13/20 36/14 37/9
nonetheless [2]  38/20 44/7
normal [1]  24/8
not [83]
note [1]  50/25
nothing [2]  42/1 42/12
notice [3]  48/4 48/5 48/13
noticed [1]  50/12
notion [1]  38/17
notwithstanding [1]  29/22
now [17]  10/16 16/19 17/22 19/22
22/8 23/1 27/6 27/7 29/22 31/18
35/9 40/5 41/24 41/25 44/20 49/10
49/16
number [8]  3/3 8/17 29/13 30/1
31/24 53/24 54/3 54/3
NW [2]  2/7 2/18

**O**

objection [6]  14/8 15/24 16/11
32/17 32/18 32/24
objects [1]  14/3
obligations [1]  48/7
obtain [1]  10/15
obvious [1]  33/15
obviously [3]  7/22 12/2 48/1
occur [1]  20/10
odd [1]  40/24
odds [1]  32/11
off [4]  9/3 27/4 28/16 31/1
office [1]  5/19 29/3
Official [3]  2/17 56/3 56/13
okay [10]  3/19 19/6 27/11 28/9
28/23 32/2 36/21 41/25 49/21
54/17
old [1]  8/5
once [2]  34/15 49/14
one [32]  5/17 6/15 7/4 10/9 12/1
13/22 13/25 17/2 17/3 17/14 17/17
17/18 17/22 17/24 18/2 19/3 20/2
20/4 25/25 27/4 30/6 30/21 31/9
32/13 38/14 42/4 45/4 45/16 46/13
48/16 50/4 53/6
ones [1]  14/14
only [10]  7/6 17/10 20/22 32/19
33/3 43/19 44/1 44/4 50/6 53/2
open [2]  6/13 31/13
operate [1]  9/13
operated [2]  10/1 10/3
operates [2]  16/16 16/17

operating [6]  23/8 27/16 34/18
35/3 39/2 54/11
operation [2]  52/15 53/20
operations [1]  53/21
opine [1]  28/1
opinion [8]  4/23 8/12 9/24 13/7
13/16 16/23 20/19 24/1
opportunities [1]  25/23
opportunity [7]  19/5 22/8 24/25
26/21 27/18 27/21 39/23
oppose [1]  37/10
opposed [1]  19/24
option [3]  12/4 19/15 50/24
oral [1]  40/2
order [23]  8/7 19/11 22/3 22/9
23/14 29/20 31/17 32/6 32/16
36/19 36/22 40/25 41/15 43/8 43/9
43/9 43/13 50/5 50/6 50/7 52/10
52/16 54/9
ordered [2]  43/19 43/21
organization [1]  35/2
originally [1]  13/17
other [43]  5/14 6/4 8/16 8/17
11/20 11/20 16/23 17/15 18/3
18/24 23/11 23/14 24/17 25/1 25/1
25/4 29/9 29/11 31/24 34/2 35/22
36/4 36/19 38/4 39/5 39/21 41/17
42/9 42/13 43/3 43/23 44/15 44/23
45/1 46/16 46/19 47/20 47/22 48/9
49/3 52/2 53/22 53/24
ought [1]  20/3
our [15]  8/25 11/10 11/24 19/6
19/10 20/12 21/22 23/5 23/5 32/24
35/20 39/17 49/14 50/9 54/24
out [10]  10/24 11/3 11/10 11/24
32/13 34/11 44/22 47/5 51/2 54/22
outcome [1]  32/11
outside [1]  52/6
over [13]  4/23 4/25 5/1 5/3 6/5
12/7 26/5 28/7 33/2 34/6 34/15
37/24 39/16
overlooked [1]  51/10
overwhelming [1]  5/15
own [3]  11/19 20/8 20/9

**P**

p.m [2]  1/7 55/12
page [2]  1/24 13/8
paper [1]  55/4
paragraph [1]  53/9
paralysis [1]  4/25
part [10]  13/6 14/21 14/21 16/8
16/14 17/10 19/2 30/18 34/20
46/22
partial [14]  4/12 9/7 12/17 12/21
25/13 32/20 32/23 32/24 36/2
36/13 36/20 38/20 48/11 50/2
participate [1]  18/16
particular [2]  30/5 32/22
parties [4]  37/5 39/25 40/6 48/24
party [1]  52/2
passed [2]  33/25 45/12
passes [1]  26/14
past [3]  6/16 6/20 42/21
pencils [1]  5/24 52/9
pending [4]  6/14 28/25 29/14
29/25
Pennsylvania [1]  2/13
people [9]  7/22 26/21 27/6 27/13
29/6 29/11 31/9 53/12 53/13
percent [5]  11/2 36/4 53/12 53/17
54/6
perception [1]  28/21
perhaps [1]  31/9
period [5]  6/19 7/5 12/24 23/8
31/20
permit [47]  4/24 4/25 5/16 6/6
6/10 6/18 7/5 7/18 9/2 9/3 9/15
10/7 10/16 12/4 12/5 12/7 13/4
13/5 13/6 14/4 15/20 16/9 16/14
17/20 19/5 19/10 19/23 19/24
19/24 19/25 20/2 27/7 28/25 30/3

33/3 33/15 33/22 33/24 34/5 34/13
34/14 35/8 36/17 46/22 52/23
52/24 53/11
permits [46]  5/13 5/18 5/23 6/13
6/17 6/18 7/1 7/7 7/7 7/15 8/2
8/15 8/17 8/17 8/19 11/3 12/24
15/22 17/23 18/7 21/10 23/8 26/6
26/10 29/2 29/7 29/13 29/14 29/16
29/17 29/18 29/21 29/23 29/25
31/20 32/19 32/22 35/8 37/12 37/20
37/24 43/11 52/11 53/10 53/11
54/15
permittees [1]  54/15
permitting [3]  6/7 28/17 29/4
perpetrated [1]  13/2
perpetuates [1]  37/15
person [3]  33/12 33/21 33/22
personnel [1]  5/24
perspective [2]  4/19 28/16
PETERSON [2]  2/12 4/7
PI [2]  21/25 22/4
pick [2]  31/1 34/1
picture [1]  33/8
piecemeal [1]  48/20
Pilots [1]  41/4
pin [1]  50/21
place [5]  7/10 15/19 17/16 23/2
34/18
Plaintiff [2]  1/4 1/13
plaintiff's [1]  3/7
plaintiffs [15]  3/13 3/14 13/2
13/13 21/22 21/24 22/14 22/18
24/23 28/13 36/22 39/20 42/5
47/11 47/13
plaintiffs' [1]  38/8
planned [1]  5/8
play [3]  28/17 31/18 31/20
Plaza [1]  2/10
please [2]  3/6 19/6
plug [5]  22/13 22/15 22/17 24/5
24/20
plus [1]  7/20
podium [1]  3/6
point [26]  6/10 16/22 16/25 17/1
23/4 28/1 32/13 35/10 37/19 38/5
40/12 41/13 42/2 42/14 42/16 43/9
44/22 45/19 45/21 46/1 47/4 47/8
50/3 50/6 51/5 54/22
points [1]  50/18
policy [1]  48/22
position [6]  12/18 15/18 36/20
49/10 54/23 55/4
positions [1]  49/12
possibility [2]  40/14 51/2
possible [5]  26/8 28/8 31/1 31/10
40/17
possibly [1]  23/21
posted [1]  7/21
posture [4]  41/16 41/22 43/1 43/7
potential [1]  37/19
practicability [1]  18/12
practical [5]  18/2 32/5 33/6 33/8
52/18
pre [1]  29/5
pre-assumption [1]  29/5
preclude [1]  50/1
preclusion [1]  39/12
prejudice [3]  21/23 36/17 46/16
prejudiced [1]  39/22
preliminary [1]  43/12
premature [2]  25/10 39/12
prepared [1]  29/17
preparing [1]  31/5
present [1]  37/9
presumably [1]  43/11
presume [2]  28/1 48/12
pretty [1]  31/4
prevail [2]  42/5 49/14
prevent [1]  37/15
prevented [1]  43/11
previous [1]  53/20
previously [3]  25/5 30/24 40/5

**P**

primarily [1]   47/16
primary [1]   6/23
principle [3]   32/12 41/5 47/21
principles [1]   45/9
priority [1]   30/4
probably [5]   21/8 26/9 35/14
45/20 52/7
problem [6]   9/9 16/13 16/22 32/14
32/15 36/19
procedures [4]   9/20 14/20 34/18
35/3
proceed [1]   23/12
proceeding [1]   43/16
proceedings [3]   41/25 55/12 56/5
process [49]   5/1 5/23 5/25 6/16
7/16 8/20 9/15 11/13 11/17 12/3
12/11 14/6 14/8 14/8 14/9 15/19
15/24 16/8 16/21 17/11 17/16
17/17 18/13 18/14 18/16 19/2
19/22 19/25 20/17 21/10 21/12
26/25 27/1 29/2 29/21 29/21
30/18 31/6 33/10 34/6 34/19 35/9
35/21 37/12 47/25 49/11 52/20
54/14
processed [4]   5/14 7/5 7/8 54/7
processes [2]   32/19 33/22
processing [8]   6/17 6/25 7/15
26/6 26/10 31/20 35/8 54/14
program [30]   4/22 6/3 7/14 8/5
9/8 22/3 22/14 23/1 23/2 24/4
24/5 24/21 25/2 26/19 26/23 26/25
27/4 27/16 32/8 32/10 32/19 33/7
36/2 39/4 39/6 42/10 42/12 47/24
53/12 55/5
programmatic [1]   13/24
prohibited [1]   12/21
project [21]   6/4 11/4 11/22 12/9
18/10 19/8 19/16 20/2 21/6 21/7
29/24 29/24 30/23 31/4 33/4 33/14
33/20 34/8 34/10 34/10 34/11
projects [33]   5/2 5/3 5/4 5/4 5/5
5/7 5/11 11/6 11/10 11/12 11/14
11/15 11/20 20/25 20/25 22/2 30/4
30/8 30/8 30/10 30/17 35/12 35/16
35/17 35/25 53/14 53/14 53/15
53/15 53/17 53/17 54/4 54/6
promptly [1]   55/11
proper [1]   14/18
proponent [3]   33/20 33/20 34/8
proponents [2]   29/24 29/25
proportion [1]   35/25
proposal [2]   8/25 11/25
proposals [2]   11/25 17/21
propose [1]   19/5
proposed [4]   7/12 8/23 17/14
37/13
proposing [3]   8/4 9/23 10/8
proposition [2]   25/25 44/6
prosecuted [1]   11/1
protect [2]   14/20 17/5
protection [10]   9/19 10/5 10/6
10/9 13/25 14/2 14/12 15/3 18/11
44/10
provide [6]   4/17 9/2 12/2 16/11
18/19 30/16
provided [7]   7/3 7/13 7/17 9/2
9/8 9/20 15/16
provides [2]   15/17 53/9
public [3]   5/2 5/3 7/21
pull [1]   12/8
pulled [3]   22/13 22/16 24/4
pulling [3]   22/15 24/5 24/20
purely [1]   47/5
purpose [1]   18/5
pursuant [1]   8/19
pursuing [2]   40/10 42/8
pushing [1]   13/12
put [3]   8/7 15/22 47/13
puts [1]   41/16

**Q**

quality [1]   5/6
question [11]   8/11 10/4 10/7
12/14 13/22 38/9 44/4 45/8 47/17
48/16 55/6
questions [4]   3/18 37/25 38/5
49/22
quick [1]   28/4
quickly [2]   27/24 28/8
quite [1]   29/24

**R**

RAFE [1]   2/12
raised [6]   9/6 12/16 18/22 23/4
49/7 52/24
RANDOLPH [1]   1/10
rather [3]   8/13 32/15 42/20
ratio [2]   35/11 35/13
Ray [1]   4/6
razor [1]   34/13
reach [1]   44/21
reached [1]   24/16
read [2]   25/7 33/17
ready [5]   27/7 29/21 37/21 49/16
52/11
real [2]   31/15 44/4
reality [1]   34/5
realize [1]   34/23
really [7]   13/12 31/22 36/1 37/17
40/4 43/4 54/5
reason [4]   23/10 35/22 47/20
53/13
reasonable [1]   6/7
reasonably [2]   20/10 51/4
reasons [11]   11/21 31/24 35/18
36/9 41/8 41/9 41/10 41/20 41/23
46/14 50/4
receipt [1]   7/21
receive [6]   6/13 18/16
received [1]   26/23
recently [1]   53/7
recognizes [1]   26/12
recognizing [1]   39/9
reconsider [2]   44/20 45/20
record [8]   3/7 6/20 13/18 13/18
15/4 42/20 53/19 56/5
recourses [1]   48/23
recur [1]   45/12
redesign [1]   12/9 19/8 19/16
reduces [1]   18/4
refresh [1]   49/14
regard [3]   18/12 52/12 52/17
regs [1]   34/21
regular [1]   52/21
regulated [1]   31/21
regulations [4]   12/22 15/25 32/21
54/11
regulator [2]   33/10 34/7
regulatory [9]   4/24 8/13 9/13
29/18 31/19 32/15 33/1 33/12
34/13
rehabilitate [1]   25/23
rehashing [2]   16/23 17/1
REICHERT [3]   1/14 3/14 3/16
reimpose [1]   44/1
reinforce [1]   43/20
relate [1]   50/8
relates [2]   6/23 52/1
relative [2]   13/2 26/3
relatively [2]   13/15 35/25
relevant [1]   43/25
reliability [1]   5/8
relief [32]   5/19 22/13 22/17 25/6
28/8 32/3 32/9 38/12 38/18 38/25
39/5 40/17 41/7 41/8 41/10 41/20
41/21 41/24 42/4 43/3 43/8 43/9
43/17 43/18 43/19 43/25 44/25
45/1 47/17 47/18 47/20 55/4
rely [1]   47/15
remain [1]   49/3
remainder [1]   44/8

remained [1]   4/24
remaining [6]   22/23 23/17
36/18 38/8 38/14 39/17 41/7 54/24
remains [1]   7/24
remand [9]   12/6 37/8 42/24 44/15
44/16 46/18 46/19 46/20 47/2
remedy [4]   12/23 19/11 23/6 23/14
Remind [1]   46/2
remove [2]   47/19 47/22
removed [1]   38/13
rendered [1]   24/3
repetition [3]   24/24 45/15 45/18
47/14
reply [1]   21/22
Reporter [4]   2/16 2/17 56/3 56/13
represents [1]   5/21
request [3]   7/3 25/9 51/20
requested [1]   45/5
require [2]   15/17 48/23
required [6]   5/17 8/24 20/9 20/9
20/14 20/15
requirement [4]   8/1 9/11 14/25
39/8
requirements [1]   31/3
rescind [1]   26/12
resolved [3]   8/15 14/4 39/1
resolving [3]   23/21 28/22 49/20
resources [1]   1/20 6/24 28/5 29/1
30/16 35/6 39/24
respect [7]   15/9 36/12 38/19
43/22 48/13 51/16 51/17
respectfully [1]   13/7
responding [1]   11/25
response [2]   15/14 23/5
responsibility [1]   28/7
restarted [1]   5/18
Restoration [1]   30/7
restore [1]   7/14
resubmitting [1]   37/22
result [2]   37/6 37/8
resume [1]   52/15
resurrect [1]   23/18
resurrected [1]   10/21
retained [1]   49/11
reversal [1]   38/13
reverse [2]   35/15 40/15
review [38]   6/15 9/15 10/6 11/16
13/5 13/5 13/10 14/20 15/19 15/21
17/16 18/18 19/22 20/22 24/25
25/1 25/3 25/12 27/23 30/3 30/9
30/10 30/12 30/17 30/22 33/22
33/23 33/25 42/20 45/15 45/17
45/23 47/14 47/19 48/21 49/16
54/11 54/14
reviewed [1]   9/16
reviews [1]   52/22
RICHARD [1]   1/19
Richmond [1]   2/11
right [56]   3/24 4/3 4/8 4/9 6/11
10/17 10/22 11/11 11/18 13/11
14/11 14/13 14/19 15/9 15/12 16/1
16/19 17/12 19/22 20/1 20/13
20/15 20/15 20/20 21/3 21/15 23/1
24/21 25/5 25/11 25/15 27/2 27/7
27/11 27/23 31/18 35/23 36/21
38/1 38/4 42/7 44/20 46/7 46/9
46/13 46/15 46/20 47/6 47/7 48/8
49/1 49/2 49/10 50/10 55/7 55/9
rights [2]   37/7 37/18
ripe [2]   40/2 49/16
risk [10]   10/13 10/24 10/25 11/2
11/5 18/9 39/12 39/19 47/11 47/13
River [2]   24/11 45/4
Riverfront [2]   2/10
Rivers [3]   23/24 25/19 43/23
road [6]   5/4 20/25 23/18 34/12
40/18 44/1
role [3]   6/23 24/7 32/13
Room [1]   2/18
routinely [2]   23/11 24/9
RPR [1]   56/12
rule [17]   22/11 22/18 23/15 24/12

**R**

rule... [13]   24/12 24/14 38/20
38/23 46/10 46/12 47/7 48/13
49/10 49/12 50/2 51/3 51/13
ruled [8]   5/1 15/10 22/1 25/18
37/16 48/1 48/9 53/6
ruling [2]   17/8 22/2
rulings [1]   24/9
run [12]   10/13 10/25 11/2 11/5
18/9 19/22 39/12 39/19 40/3 40/4
48/20 51/1
running [1]   37/21

**S**

said [17]   6/13 12/15 14/15 15/1
15/19 16/3 18/1 18/19 35/1 35/12
36/6 40/5 40/21 47/19 49/17 49/24
54/16
same [16]   13/4 14/5 14/9 17/17
17/17 17/18 19/1 19/12 19/21 21/25
23/13 37/14 40/8 41/22 50/3 54/12
satisfies [1]   31/2
say [35]   10/2 10/12 10/25 11/4
12/4 12/14 13/11 16/23 17/4 19/6
20/12 21/7 29/15 34/24 35/4 38/17
39/9 41/18 41/25 42/5 43/1 43/18
44/13 44/20 46/6 46/8 46/17 46/24
47/1 47/2 47/3 47/6 47/13 48/16
52/17
saying [6]   8/18 13/14 19/15 21/9
37/10 41/23
says [1]   32/22
scenario [7]   15/24 16/9 17/22
21/8 22/18 26/17 26/19
scheme [3]   32/16 39/7 49/8
school [1]   21/5
scope [1]   53/5
scratch [3]   34/1 42/25 49/15
screen [1]   34/3
second [5]   10/8 19/21 21/16 21/20
37/13
section [18]   11/13 11/14 11/19
11/20 11/23 12/2 13/7 14/1 20/17
28/17 29/4 29/7 30/3 32/8 32/10
32/21 32/22 50/23
see [5]   12/5 32/25 40/20 40/21
53/19
seek [9]   6/10 15/14 15/15 19/13
21/12 24/25 25/12 28/8 30/2
seeking [3]   32/4 41/21 43/12
seem [2]   18/25 40/24
seemed [1]   50/12
seems [2]   39/15 40/19
sees [1]   35/16
send [1]   44/18
sends [1]   34/13
senior [1]   5/12
sense [1]   12/23 22/12 24/19
sensible [1]   24/8
separate [2]   25/17 25/18
separately [1]   17/5
sequential [1]   48/21
serve [1]   40/3
serves [1]   18/5
service [12]   7/19 7/25 8/2 9/17
14/25 15/21 16/11 17/25 18/20
18/21 35/7 52/20
set [8]   7/9 13/8 17/8 17/10 19/20
27/18 44/14 51/15
Setting [2]   32/17 53/7
settle [1]   12/6
Seventh [1]   41/4
severe [3]   19/12 21/11 52/13
shared [1]   12/20
SHERRY [3]   2/16 56/3 56/12
shoes [1]   40/22
should [31]   19/17 21/16 22/11
22/22 23/16 23/16 24/20 25/25
28/12 31/25 36/13 36/16 38/19
38/23 39/13 40/6 44/7 44/9 44/14
44/14 44/16 44/21 46/9 46/24 47/2

48/11 48/17 48/18 51/12 51/13
53/2 53/18 53/18
shouldn't [2]   46/12 51/10
show [1]   45/11
showed [1]   45/13
shown [1]   40/11
SIBLEY [2]   2/9 4/5
side [1]   17/9
significant [2]   24/19 24/20
simple [1]   35/4
simply [6]   10/2 18/16 43/20 44/9
46/17 47/2
since [5]   4/21 5/25 6/18 27/10
29/4
single [2]   38/23 38/24
sit [1]   12/5
site [1]   33/17
situation [14]   12/7 16/8 20/11
22/5 24/18 25/2 25/3 25/22 26/4
26/16 34/9 34/14 42/24 48/20
situations [1]   53/3
six [8]   5/1 6/14 26/7 28/3 39/16
47/4 50/22 51/4
six-year [1]   50/22
size [1]   53/14
small [2]   35/25 53/14
SMCRA [2]   24/13 24/15
smooth [1]   35/6
so [42]   4/13 10/11 11/24 18/2
19/8 20/11 20/17 20/21 21/4 21/20
22/11 25/4 26/14 28/24 30/13
33/15 35/25 36/9 38/5 39/24 40/6
41/20 42/9 42/10 43/12 46/6 46/8
46/11 47/4 47/10 47/21 48/24 49/3
49/12 49/24 50/13 50/17 50/23
51/2 53/3 54/18 55/11
solar [1]   21/6
solution [1]   10/22
some [20]   7/15 9/5 10/23 12/7
20/15 21/22 23/7 23/14 26/13
30/15 33/5 33/10 38/19 43/22 46/1
48/9 50/8 50/13 52/5 54/2
somebody [2]   33/20 33/25
someday [1]   40/15
somehow [1]   9/25 44/7
someone [1]   38/25
something [10]   8/9 16/20 26/11
26/15 28/3 33/16 35/13 35/14
40/18 43/22
sorry [2]   16/3 36/7
sort [9]   9/12 9/21 16/23 17/1
18/5 20/15 33/1 33/12 34/12
sought [3]   15/2 22/1 32/9
sound [1]   34/24
sounded [1]   8/5
sounds [2]   8/18 19/14
source [1]   19/13
South [5]   1/22 29/10 29/11 30/6
52/6
sovereign [1]   6/22
speak [1]   38/3
speaking [1]   17/13
species [25]   5/16 7/8 7/11 7/25
9/16 12/9 14/20 15/19 16/10 17/23
18/7 18/10 18/18 20/3 20/23 21/11
27/17 53/4 53/13 53/16 53/25 54/3
54/5 54/7 54/14
specific [2]   22/1 32/18
speculative [1]   40/19
spent [2]   35/8 37/11
split [3]   35/13 35/23 36/5
spoke [1]   13/9
spring [1]   39/10
spun [1]   36/1
square [4]   5/17 6/15 31/9 38/14
St [1]   2/7
staff [4]   5/22 5/23 52/4 52/8
stage [3]   10/21 21/23 43/15
stand [2]   40/16 40/21
standard [1]   35/2
standing [4]   43/1 43/15 43/16
43/20

4/11 7/9 13/8 17/8 17/10 19/20
5/14 42/24 49/15
start [10]   6/16 26/5 26/10 28/16
31/9 32/22 37/23 39/15 42/24 49/15
started [3]   37/22 37/23 39/15
starting [2]   3/7 17/24
starts [1]   29/2
state [31]   3/6 4/24 5/3 6/2 6/23
6/24 26/14 26/20 27/13 27/14
27/15 27/15 27/19 28/5 28/16
28/25 29/7 29/18 31/18 31/20 32/8
32/18 33/7 33/23 34/14 35/16 36/2
43/11 51/25 53/1 53/14
statement [7]   4/23 10/19 13/23
14/16 14/17 20/9 20/9
statements [1]   15/5
states [6]   1/1 1/11 6/23 28/6
28/13 53/22
status [3]   1/10 4/18 46/14
statute [19]   16/16 16/17 24/13
24/13 26/11 39/13 39/16 40/12
44/11 45/12 45/24 45/25 47/8
47/12 50/18 50/22 50/25 51/3
54/11
statutory [1]   32/25
stay [36]   3/17 4/11 7/2 7/4 7/6
12/24 15/15 15/15 19/11 23/3 23/7
23/8 23/13 23/13 23/14 26/18
28/22 31/23 32/7 32/25 33/6 35/7
36/2 36/11 36/17 37/2 37/3 37/5
37/10 37/13 52/16 52/22 54/23
55/1 55/2 55/3
stays [1]   23/7
step [1]   11/9
steps [3]   14/24 29/20 31/17
still [13]   23/9 38/9 39/9 39/22
39/22 40/9 42/11 44/17 45/22
45/23 46/19 47/21 54/12
stood [2]   15/1 21/24
Stream [1]   24/12
Street [3]   1/21 2/4 2/10
strikes [1]   41/16
struggling [1]   18/5
subject [2]   42/19 45/24
submit [2]   35/8 42/16
submitted [5]   31/2 33/2 51/25
52/2 53/8
substantial [2]   37/7 37/18
sugar [1]   31/14
suggest [1]   17/15
suggested [1]   21/22
suggesting [2]   8/8 9/25
suggests [1]   35/18
Suite [2]   1/15 2/5
summary [1]   40/1
superseding [1]   42/17
support [2]   25/20 38/17
suppose [5]   38/20 44/10 45/24
47/2 48/8
supposed [1]   53/2
Supreme [2]   42/15 53/6
sure [8]   16/12 17/5 34/2 39/3
43/6 43/14 45/16 47/10
Surface [1]   24/13
surge [2]   29/13 29/15
sworn [3]   52/1 52/2 53/9
sympathetic [1]   47/8
system [1]   33/23

**T**

TA [1]   47/25
table [5]   3/14 3/21 4/2 4/5 4/6
take [44]   4/23 6/9 8/6 10/5 10/6
10/9 10/19 10/19 11/1 11/7 11/9
11/13 13/23 13/25 14/2 14/12
14/16 14/17 15/3 15/7 15/17 16/18
17/20 18/11 19/4 19/8 20/6 20/8
20/9 20/10 20/12 21/7 21/9 26/5
27/21 33/19 35/5 35/5 43/1 47/3
51/12 51/13 52/13 54/15
taken [3]   29/19 44/7 45/11
takes [1]   27/1
taking [1]   31/16
talk [5]   15/4 31/25 33/5 46/10

**T**

talk... **[1]**  46/15
talked **[2]**  11/14 25/22
talking **[3]**  27/10 45/14 51/8
Tallahassee **[1]**  1/18
TANIA **[2]**  1/13 3/12
tantamount **[1]**  9/7
technical **[4]**  8/6 8/21 46/13 47/5
tell **[2]**  30/19 38/21
telling **[1]**  27/13
tens **[1]**  5/21
term **[1]**  13/15
terms **[3]**  6/1 13/9 55/6
Terrace **[1]**  1/22
testimony **[3]**  52/1 52/2 53/10
than **[9]**  8/13 16/23 26/1 29/7
32/15 35/1 41/16 42/20 54/1
thank **[24]**  3/19 3/24 4/8 4/14
21/14 21/15 28/10 28/11 28/18
31/11 36/8 36/21 38/6 50/10 50/11
51/7 51/23 54/17 54/18 54/21 55/7
55/8 55/9 55/11
that **[444]**
their **[17]**  3/7 5/13 5/18 5/19
11/19 11/20 12/8 12/9 18/19 19/16
20/2 21/7 22/4 27/18 37/22 40/23
54/23
them **[11]**  7/20 12/8 19/6 30/16
39/23 39/23 40/21 42/13 44/24
53/12 54/5
themselves **[2]**  11/8 11/15
then **[17]**  10/22 14/4 16/2 16/12
16/20 17/22 20/24 22/20 28/13
32/14 34/14 42/19 43/20 46/17
47/1 47/3 47/3
theory **[3]**  41/18 41/19 43/23
there **[75]**
therefore **[1]**  46/25
these **[9]**  5/3 5/16 11/3 34/5
39/10 40/9 42/9 44/15 53/1
they **[101]**
thing **[7]**  6/21 13/4 15/8 20/4
34/2 34/19 42/4
things **[7]**  10/1 12/5 34/22 39/10
40/7 40/16 40/20
think **[98]**
thinks **[3]**  35/13 35/15 38/22
third **[2]**  32/24 37/17
this **[118]**
those **[49]**  4/25 5/2 5/23 6/13 7/7
7/8 7/17 8/16 9/6 11/12 11/15
17/21 21/10 23/18 23/24 23/25
25/18 26/9 28/20 29/2 29/17 29/17
29/21 30/1 30/6 30/10 30/17 30/21
31/16 32/1 33/17 37/9 37/24 38/25
39/20 39/21 41/16 42/13 43/13
44/17 44/21 45/4 45/24 48/10 49/3
49/12 49/16 50/8 53/25
though **[1]**  49/5
thousands **[1]**  5/21
three **[2]**  18/14 52/18
through **[13]**  7/15 11/13 11/13
11/13 11/16 12/3 13/6 19/23 31/6
44/8 49/10 49/12 51/17
throughout **[1]**  27/15
tied **[1]**  47/25
time **[16]**  6/19 15/6 15/20 18/15
23/13 26/22 27/1 28/10 33/19 35/5
35/7 37/11 39/24 41/17 51/19
53/15
timely **[2]**  24/7 39/20
times **[3]**  13/16 14/3 34/15
timing **[1]**  33/17
today **[13]**  4/10 15/14 22/6 28/17
29/6 29/18 31/13 37/10 37/20
40/11 51/10 51/19 54/8
told **[1]**  15/5
tolling **[1]**  50/24
too **[1]**  39/9
took **[1]**  26/22
topline **[1]**  32/6

total **[1]**  42/24
totally **[1]**  25/24
touch **[1]**  52/22
Tower **[1]**  2/10
track **[1]**  6/20
tracks **[3]**  53/20 53/21
traditional **[1]**  28/7
trained **[1]**  52/9
transcript **[2]**  1/10 56/4
transferred **[3]**  22/24 26/20 29/16
transferring **[1]**  37/24
transitionary **[1]**  31/19
transmission **[2]**  11/22 21/5
treat **[1]**  18/22
tried **[1]**  12/25
trigger **[3]**  11/16 11/20 11/23
triggering **[1]**  13/10
triggers **[2]**  15/24 16/21
TRO **[2]**  21/25 22/4
true **[8]**  13/15 40/8 41/17 42/22
43/7 54/4 55/2 56/4
truly **[1]**  15/6
try **[2]**  9/12 32/15
trying **[5]**  8/3 37/14 47/5 49/9
49/10
turn **[1]**  34/11
TURNER **[2]**  2/12 4/6
turning **[2]**  4/16 7/2
turns **[1]**  55/1
two **[11]**  6/16 6/20 7/4 11/25 14/1
15/15 15/16 22/1 22/8 35/18 41/20
type **[2]**  13/25 18/10

**U**

U.S **[2]**  1/20 2/17
ultimate **[3]**  13/22 43/25 48/16
ultimately **[1]**  53/22
unanticipated **[2]**  26/11 26/15
unavoidable **[1]**  32/9
undecided **[1]**  38/15
under **[35]**  7/18 9/12 9/13 9/14
12/12 12/21 13/5 13/6 14/2 15/15
15/24 16/8 16/14 18/23 19/19
19/21 19/25 20/17 22/11 23/5 24/8
24/13 24/21 25/4 25/14 25/21 26/8
26/8 26/11 38/20 43/13 46/12 49/8
50/2 50/23
underlying **[2]**  9/24 17/10
understand **[23]**  8/3 9/19 10/1
10/3 13/19 13/21 13/24 15/10 17/7
17/8 18/25 19/1 21/3 27/7 29/5
29/19 39/14 40/12 49/25 50/2
51/17 51/22 54/10
understanding **[1]**  30/14
understands **[2]**  34/3 34/17
understood **[2]**  13/14 26/13
undertaken **[1]**  6/14
undertook **[1]**  49/11
undue **[1]**  39/19
UNITED **[3]**  1/1 1/11 28/12
universe **[5]**  17/2 18/3 26/9 40/7
50/3
unlawful **[1]**  42/11
unless **[5]**  10/6 42/14 44/2 49/1
49/22
unresolved **[3]**  40/9 42/9 49/3
until **[1]**  46/6
unwieldy **[1]**  35/20
unworkable **[1]**  37/11
up **[11]**  5/13 27/22 31/1 31/12
33/17 34/1 36/1 36/22 37/21 46/23
47/18
update **[1]**  4/17
upon **[2]**  7/21 37/16
urge **[2]**  36/10 38/7
urged **[1]**  21/25
urgency **[4]**  4/18 25/22 26/2 52/1
urging **[1]**  55/10
us **[9]**  3/14 12/4 15/22 18/23 19/9
25/11 25/12 53/5 54/25
used **[4]**  13/15 13/18 14/9 19/2
uses **[3]**  17/17 17/18 17/18

using **[1]**  19/21
usually **[1]**  24/7
utility **[2]**  5/4 5/7

**V**

VA **[1]**  2/11
vacate **[1]**  27/8
vacated **[9]**  4/21 4/22 9/20 10/20
15/10 22/3 24/4 24/15 39/4
vacates **[1]**  40/25
vacating **[2]**  41/15 42/10
vacatur **[19]**  19/12 28/22 31/14
31/16 31/23 32/7 32/25 33/7 36/2
36/11 36/16 37/7 37/19 39/6 42/24
45/5 47/22 48/5 54/8
vagaries **[1]**  55/1
vast **[6]**  5/15 8/17 11/6 35/16
53/16 54/6
version **[2]**  18/4 18/4
versus **[1]**  3/4
very **[25]**  6/24 6/25 8/9 8/10 8/23
12/8 13/8 15/6 20/24 20/25 21/6
25/21 35/11 38/11 40/19 40/24
41/16 45/5 45/7 47/25 50/17 52/3
53/15 53/23 55/3
viable **[1]**  24/1
view **[3]**  23/5 35/14 35/21
views **[3]**  18/19 35/11 36/12
violation **[1]**  48/4
violations **[3]**  37/15 39/22 42/11
vs **[1]**  1/5

**W**

Wainwright **[1]**  3/22
wall **[2]**  22/16 24/6
want **[34]**  11/8 12/4 12/6 12/8
13/25 15/4 19/1 19/7 19/7 20/4
20/11 24/5 27/15 27/18 28/15 29/5
29/18 30/5 30/9 30/23 31/7 31/13
31/15 33/5 33/21 34/2 34/17 35/10
36/18 36/22 46/18 50/25 51/24
52/17
wanted **[5]**  6/9 41/14 46/14 53/4
54/22
wants **[1]**  52/23
warrant **[1]**  39/6
warranted **[1]**  37/3
was **[46]**  8/3 8/4 8/5 8/9 8/9 8/10
8/14 8/14 8/14 8/20 8/23 8/25 9/3
9/18 12/1 12/12 12/14 12/14 13/1
14/10 14/23 14/23 15/6 16/24
19/19 21/24 24/3 24/12 24/14 25/6
25/16 26/23 27/20 28/1 33/3 44/25
45/1 45/1 45/2 45/3 46/2 46/14
46/15 47/25 49/1 51/18
Washington **[5]**  1/5 2/5 2/8 2/14
2/19
wasn't **[1]**  16/25
waste **[1]**  47/4
water **[8]**  5/5 6/24 21/18 23/25
24/14 25/19 28/5 30/6
waters **[2]**  49/11 53/5
way **[19]**  8/14 13/16 13/16 13/18
18/23 19/10 23/7 24/21 25/5 27/3
32/4 32/16 35/4 40/11 40/20 47/9
48/12 50/1 54/12
we **[171]**
we'll **[3]**  10/13 19/9 20/12
website **[1]**  7/22
weighs **[1]**  49/19
Welcome **[1]**  4/8
well **[30]**  3/22 4/9 4/11 5/9 5/12
6/3 11/4 12/8 17/4 17/24 21/6
24/13 25/21 27/15 27/15 29/12 32/1
33/7 41/19 41/23 42/3 43/18 46/25
48/10 49/2 52/3 52/21 53/7 55/6
55/9
went **[5]**  7/15 9/11 14/14 31/5
51/17
were **[10]**  5/22 14/17 26/2 28/24
29/7 29/14 29/25 43/12 44/19

**were... [1]**  54/23
**weren't [2]**  45/22 48/5
**wetland [1]**  54/3
**wetlands [2]**  5/24 52/8
**what [58]**
**whatever [6]**  40/8 40/11 42/20
43/24 44/12 44/17
**when [8]**  4/21 26/14 26/23 34/19
35/7 38/24 45/1 53/10
**where [34]**  12/5 12/7 12/24 13/17
15/18 15/20 16/9 17/9 20/10 23/11
25/2 26/19 31/1 34/10 34/14 37/5
37/6 37/7 38/17 39/15 40/24 43/12
43/16 44/6 44/23 44/24 44/25 45/4
45/9 45/10 45/11 47/18 47/22 53/3
**whether [20]**  8/14 10/4 13/4 13/22
13/23 14/22 18/18 36/13 38/9 41/8
42/1 42/18 44/5 44/7 44/9 44/17
46/13 46/15 46/20 47/24
**which [44]**  5/15 7/11 8/15 8/24
10/9 12/9 12/10 12/17 13/16 15/24
17/22 18/24 18/25 19/1 19/16
20/18 22/9 24/11 25/7 25/12 26/4
26/9 26/10 26/11 26/12 29/3 30/9
32/18 32/19 32/22 34/16 36/22
38/11 39/8 41/15 42/5 44/4 47/3
47/25 48/2 48/21 51/11 52/6 53/5
**while [3]**  19/12 39/3 51/7
**who [16]**  5/22 6/9 6/13 10/11
14/14 21/4 29/12 29/25 30/21
33/12 33/20 33/21 33/22 34/1
38/22 53/13
**whole [1]**  15/8
**why [8]**  10/22 21/17 25/9 31/24
34/24 41/20 47/15 54/25
**wildlife [14]**  3/15 5/4 7/19 7/20
7/25 8/1 9/16 14/25 15/21 16/10
17/25 18/20 18/21 52/20
**will [48]**  3/16 3/17 6/13 10/2
11/1 16/19 17/5 17/5 20/12 21/11
23/12 27/16 27/17 27/22 27/25
30/23 30/25 31/6 32/5 35/19 36/21
37/1 40/20 40/22 41/18 42/4 43/1
44/7 44/22 47/13 48/15 49/2 49/3
49/4 49/13 49/13 49/13 50/6 50/14
50/14 50/15 50/17 51/1 51/22
53/19 54/13 54/16 55/9
**willing [3]**  10/24 10/25 18/9
**wish [1]**  27/24
**withdrawing [1]**  26/25
**within [4]**  6/22 7/1 27/14 29/10
**without [8]**  18/10 21/10 22/8
23/21 27/17 36/17 46/16 54/7
**wondering [1]**  8/14
**WOOD [6]**  2/6 3/25 4/13 28/20
50/14 51/6
**Wood's [1]**  55/10
**word [1]**  13/19
**words [2]**  16/18 16/20
**work [10]**  5/22 6/25 6/25 7/16
18/1 18/14 31/5 52/4 52/11 53/2
**workable [2]**  9/1 27/3
**worked [3]**  52/21 53/2 53/7
**works [5]**  9/9 13/20 18/13 18/13
54/14
**world [3]**  17/9 17/13 18/24
**worry [1]**  17/4
**would [104]**
**wouldn't [3]**  12/11 22/20 45/17
**wrong [2]**  10/2 41/19

**Y**

**Yeah [4]**  21/17 27/11 46/7 54/2
**year [3]**  39/16 46/2 50/22
**years [4]**  6/17 6/20 18/14 52/18
**Yes [7]**  3/10 16/5 17/7 21/19
50/19 51/9 54/20
**yet [4]**  25/7 29/16 29/23 45/15
**you [167]**
**your [61]**